UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

ACCENT DELIGHT INTERNATIONAL
LTD. and XITRANS FINANCE LTD.,

                     Plaintiffs,

      -against-

SOTHEBY'S and SOTHEBY'S, INC.,

                     Defendants.

_____

Case No. 18-cv-09011 (JMF)

## DECLARATION OF SAVERIO LEMBO

I, Saverio Lembo, declare as follows:

1.     I am an attorney licensed to practice law in Geneva, Switzerland.  I am a partner in the law firm of Bär & Karrer.

2.     I submit this declaration in support of Sotheby's motion to dismiss on the grounds of *forum non conveniens* and international comity.

3.     My firm represents Defendant Sotheby's, Inc. and three affiliated entities—Sotheby's, of the United Kingdom ("Sotheby's UK"); Sotheby's SA, of Switzerland; and Sotheby's Kunstauktionen Gesellschaft M.B.H., of Austria (collectively, the "Sotheby's Entities")—as well as Sotheby's UK's London-based employee Samuel Valette in a civil action currently pending before the Tribunal of First Instance of the Canton of Geneva, Switzerland (the "Swiss Civil Suit").  The Sotheby's Entities and Valette filed the Swiss Civil Suit along with Yves Bouvier and related entities.

1

4.      The Sotheby's Entities are wholly-owned indirect subsidiaries of Defendant
Sotheby's.

**The Nature of the Swiss Civil Suit**

5.      On November 17, 2017, the Sotheby's Entities filed the Swiss Civil Suit with the
court in Geneva seeking a declaration that the Sotheby's Entities and Valette bear no liability to
Plaintiffs or others affiliated with Plaintiffs regarding Bouvier's alleged fraud against them. As
required by Swiss law, the Sotheby's Entities commenced the Swiss Civil Suit by filing a notice
of conciliation.

6.      A notice of conciliation is the predicate first step required to commence a
litigation in Switzerland. *"[L]e principe est que la conciliation est obligatoire"* (in English:
*"[T]he rule is that conciliation is mandatory"*). *See* D. Hofmann/C. Luscher, Le Code de
procedure civile, 2d ed., 2015, p. 161; *see also* Decision of the Swiss Supreme Court dated
January 14, 2013, 4A_413/2012, ¶ 7; BSK ZPO-Infanger, Art. 197/198, N 1.[1] It is, in many
respects, analogous to the filing of a complaint in U.S. federal court. *Compare* Swiss Civil
Procedure Code, art. 202(1) ("Proceedings are initiated by an application for conciliation."), *with*
Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

7.      The Swiss Civil Suit was validly initiated and is duly pending with the Geneva
Tribunal, and it is an active and ongoing litigation. I understand that Plaintiffs acknowledged as
much when, two weeks after the Sotheby's Entities commenced the Swiss Civil Suit, they
represented to this Court that "the dispute between [Plaintiffs] and Sotheby's is active and

---

[1] True and correct copies of the two above-referenced authorities are attached hereto as Exhibits
A and B, as well as English translations of those documents.

public, and foreign proceedings concerning the merits of that dispute are happening now." ECF No. 121, at 6, No. 16-mc-00125-JMF (S.D.N.Y. Nov. 28, 2017).

8.      It is my understanding that, in filings with this and other U.S. courts, Plaintiffs have characterized the Swiss Civil Suit as a "mere invitation to participate in alternative dispute resolution" and "not a merits action." Appellees' Br. 23, No. 18-1755 (2d Cir. Nov. 14, 2018); *see also, e.g.*, ECF No. 179, at 1 (describing the notice of conciliation as an "invitation to mediate the dispute"). As described above, Plaintiffs' characterizations of the Swiss Civil Suit are incorrect, because the filing of a notice of conciliation formally commences civil litigation and is in fact a compulsory step to litigating in Switzerland (unless the parties have agreed to renounce that step under the conditions set forth under Art. 199(1) SCCP, which did not take place here).

9.      Indeed, the filing of a notice of conciliation is a necessary step to receive authorization from the tribunal to thereafter formally file a statement of claim and to advance to an adjudication on the merits. Absent any conciliation being achieved before the conciliating judge, the tribunal then grants the claimant with an authorization to proceed to the merits of the dispute, after which the claimant must file its statement setting out the basis for its claims within three months (Art. 209(3) SCCP). Absent such an authorization, a statement of claim filed on the merits would be declared inadmissible and the case could not continue.

**The Sotheby's Entities' Prosecution of their Claims**

10.     The Sotheby's Entities have continued to prosecute their claims against Plaintiffs and related parties for a declaration that they owe Plaintiffs no liability. Since the filing of the Sotheby's Entities' notice of conciliation on November 17, 2017, the Swiss Civil Suit has

3

proceeded in the normal course consistent with Swiss practice and procedure and under the management of the Geneva court.

11.    Following the Sotheby's Entities' filing of their notice of conciliation, the Geneva court scheduled a conciliation hearing for April 11, 2018 and duly served Plaintiffs' counsel with a copy of the notice of conciliation. Attached hereto as Exhibit C is a true and correct copy of the Swiss court's notice to all parties of the scheduled April 11, 2018 hearing, as well as an English translation of that document.

12.    The conciliation hearing took place on April 11, 2018 as scheduled and was attended by all parties, including counsel for Plaintiffs. At the hearing, the Swiss court provided the Sotheby's Entities with the required authorization to proceed with their claims against Plaintiffs. Attached hereto as Exhibit D is a true and correct copy of the minutes from the Geneva court's conciliation hearing memorializing that court's authorization for the litigation to proceed, as well as an English translation of that document. Attached hereto as Exhibit E is a true and correct copy of the separate "Authorization to Proceed" issued by the Geneva court that same day, as well as an English translation of that document.

13.    In accordance with the Swiss Code of Civil Procedure ("SCCP"), the Sotheby's Entities were required to submit a substantiated statement of claim setting forth the evidentiary and legal bases for their claims by July 11, 2018, or three months from the date of the granting of the authorization to proceed delivered at the parties' conciliation hearing. *See* Article 209 ¶ 3 SCCP. A true and correct copy of the relevant provisions of Article 209 of the SCCP is attached hereto as Exhibit F, as well as an English translation of that document.

14.    The preparation and filing of a statement of claim is a substantial undertaking. Unlike civil complaints in the United States, which are more akin to a notice of conciliation, a

4

statement of claim must set forth in detail the factual basis for a party's claim. For each factual allegation, a party must identify with specificity the witness(es) and document(s) that support the allegation (Art. 221(1)(e) SCCP). The party must also file with the Swiss court copies of all documents cited as evidentiary support in the statement of claim (Art. 221(2)(c) SCCP).

15.     As parties to the Swiss Civil Suit, Valette, Dmitry Rybolovlev, and Bouvier can all be compelled to give testimony in Switzerland. In particular, according to Art. 168(1)(f) SCCP, the testimony of the parties is a key method of obtaining and introducing evidence. Further, the parties are under a duty to collaborate (unless they have a valid reason to deny such collaboration in the limited circumstances detailed under Art. 163 SCCP) with the evidence gathering process, in particular by providing testimony if so requested (Art. 160 SCCP).

16.     On July 11, 2018, pursuant to the SCCP, the Sotheby's Entities and Valette duly filed a 129-page statement of claim with the Geneva court setting forth the evidentiary and legal bases for their entitlement to a declaration of no liability to Plaintiffs and related parties. The statement of claim also cited to and attached 97 documentary exhibits in support of the Sotheby's Entities' allegations. Attached hereto as Exhibit G is a true and correct copy of my law firm's July 11, 2018 letter delivering the Sotheby's Entities' statement of claim to the Geneva Tribunal of First Instance, as well as an English translation of that document. Attached hereto as Exhibit H is a true and correct copy of the Sotheby's Entities' 133-page statement of claim, as well as an English translation of that document.

17.     Because of the confidential and sensitive nature of many of the facts set forth in the statement of claim, the Sotheby's Entities have petitioned the Swiss court for confidential treatment of the document together with its exhibits (*i.e.*, documentary evidence filed with the statement of claim). According to that request, the Sotheby's Entities in particular requested that

5

the defendants to the Swiss Civil Suit be directed to keep the statement of claim's contents (including the underlying evidence) confidential.

18.     In accordance with Article 156 SCCP, the Swiss court may take appropriate measures to ensure that the taking of evidence does not infringe the legitimate interests of any parties or third party, such as, *inter alia*, disclosing business secrets, commercial documents, customer files, know-how, and customer identification. Art. 156 SCCP; BSK ZPO-Guyan, Article 156, N 2. This provision covers interests of any kind, may they be private or public; provided they are worthy of protection. BSK ZPO-Guyan, Article 156, N 2; CR CPC-Schweizer, Article 156, N 6. The court is not limited in the type of measures it may take; such measures shall, however, be appropriate to protect the aforementioned legitimate interests. BSK ZPO-Guyan, Article 156, N 5; CR CPC-Schweizer, Article 156, N 11. A Court may thus totally or partially limit the consultation of certain exhibits (*e.g.*, a court may order that a party's access to certain documents filed within the proceedings shall be only granted to its counsel, while prohibiting the latter to subsequently communicate to its client any sensitive information they may have become aware of as a result of the proceedings). Supreme Court Decision dated of January 18, 2017, 4A_390/2016, §B.b.

19.     The Swiss court has not yet ruled on that request. I understand that U.S. counsel for Sotheby's will be requesting similar treatment from this Court, and I respectfully request that the Court give this document the same confidential treatment as the Sotheby's Entities have requested from the Swiss court (or at least provide such treatment until the Swiss court has ruled on the Sotheby's Entities' request).

20.     On July 23, 2018, following the Sotheby's Entities' filing of their statement of claim, the Geneva Tribunal issued an order requiring the Sotheby's Entities to pay an advance on

6

costs in the amount of 240,000 Swiss francs, in accordance with Swiss procedural requirements that a claimant advance costs of suit in an amount depending on the ultimate amount in controversy. Attached hereto as Exhibit I is a true and correct copy of the Geneva Tribunal's July 23, 2018 decision on Sotheby's costs advance, as well as an English translation of that document. Given the declaratory nature of the Sotheby's Entities' claims, however, in which the Sotheby's Entities as nominal claimants seek only a declaration of non-liability and not any monetary award, the Sotheby's Entities on August 6, 2018 filed a challenge to the Geneva Tribunal's costs order. Attached hereto as Exhibit J is a true and correct copy of the Sotheby's Entities' August 6, 2018 challenge to the Geneva Tribunal's costs order, as well as an English translation of that document. On November 8, 2018, the Swiss Court of Justice denied the Sotheby's Entities' challenge to the Geneva Tribunal's costs decision, ruling that the Sotheby's Entities must advance costs. Attached hereto as Exhibit K is a true and correct copy of the Swiss Court of Justice's November 8, 2018 decision on the Sotheby's Entities' costs challenge, as well as an English translation of that document. On December 6, 2018, consistent with the Swiss Court of Justice's ruling, the Sotheby's Entities advanced the required advance on costs to the Geneva Tribunal.

21.    Now that the Sotheby's Entities' challenge to the Geneva Tribunal's costs decision has been resolved, and in accordance with the SCCP, the Geneva Tribunal will serve Plaintiffs with the statement of claim and direct them to file a responsive statement of defense, and the Swiss Civil Suit will continue to advance in due course. This is routine practice in Geneva since the Tribunal only serves a statement of claim on a defendant following receipt of the payment of the costs advance.

7

22.    As far as I am aware, the statement of claim has not yet been served on Plaintiffs' counsel.[2]

## The Swiss Court's Jurisdiction over Plaintiffs' Claims against Defendants and over the Sotheby's Entities' Claims

23.    I believe that there are here several reasons for the Swiss Courts to assume jurisdiction over the Swiss Civil Suit and over Plaintiffs' claims against the Sotheby's U.S. Defendants. According to Swiss law, Swiss courts have jurisdiction over claims against domiciliaries or habitual residents of Switzerland and over claims in which an allegedly wrongful act took place in Switzerland. Art. 129 PILA; ATF 131 III 153, ¶ 4 and 6.2.

24.    Where several actions have all contributed to the damage, the court of the place of one of these actions has jurisdiction to hear all the claims of the injured party. Supreme Court Decision dated of 10 December 2014, 4A_28/2014, §4.1; BSK IRPG-Umbricht/Rodrigez/Krüsi, Article 129, N 19 and 20; CR LDIP-Bonomi, Article 129, N 30; A. Buhr/S. Gabriel/D. Schramm, Handkommentar zum Schweizer Privatrecht IRPG, Art. 129, N 17.

25.    However, according to the Swiss Supreme Court: "*[S]ous réserve de simples actes préparatoires, tout lieu dans lequel est survenu un événement causal pour le résultat dommageable peut être considéré comme un lieu de l'acte, et créer autant de fors au choix du demandeur*" (in English: "*Aside from solely preparatory acts, any place in which an event occurred having a causal link to the harm done may be considered a place where the act occurred, and thus create as many places of jurisdiction for the Claimant*"). ATF 131 III 153, ¶ 6.2; *see also* ATF 125 III 346, § 4c./aa; Supreme Court Decision dated of 10 December 2014,

---

[2] As noted above, however, Plaintiffs *have* been served with the Sotheby's Entities' notice for conciliation, and are therefore well aware of the nature of the Sotheby's Entities' claims against Plaintiffs and related parties.

4A_28/2014, §4.1; BSK IRPG-Umbricht/Rodrigez/Krüsi, Article 129, N 19 and 20; CR LDIP-Bonomi, Article 129, N 30; A. Buhr/S. Gabriel/D. Schramm, Handkommentar zum Schweizer Privatrecht IRPG, Art. 129, N 18. A true and correct copy of excerpts of this authority is attached hereto as Exhibit L, as well as an English translation of that document.

26. Here, several independent bases for jurisdiction may be taken into consideration: (1) several of the agreements governing the sales of the works of art from the Sotheby's Entities to Bouvier that serve as the basis for Plaintiffs' allegations against the Sotheby's Entities were— at least partially—negotiated and executed in Switzerland; (2) many of the transactions central to this dispute were facilitated by, and involved shipments of artworks to, Bouvier's Swiss-based "'freeport' businesses," Am. Compl. ¶ 34; *see also id.* ¶¶ 57, 81, 116, 131, 139, 141-42; *Rappo* Singapore Ruling ¶¶ 4-6, 18; (3) Sotheby's SA, a domiciliary of Switzerland, handled the sale of the first work of art from a Sotheby's entity to Yves Bouvier that was later allegedly resold to Plaintiffs, *see* Am. Compl. ¶ 50; (4) the sales of several of the works of art to Plaintiffs by Bouvier, against whom Plaintiffs also assert allegations of wrongdoing and who is also a claimant in the Swiss Civil Suit, were executed in Geneva, Switzerland;[3] (5) as Plaintiffs allege in their criminal complaint filed on March 8, 2017 against Bouvier in Switzerland, each of their art acquisitions from Bouvier had "at least one link with [S]witzerland, because the sale prices for the art works purchased by the claimants all passed through Swiss bank accounts," *see* ECF No. 149 (Mar. 13, 2018 Levy Declaration), Ex. A ¶¶ 152-61; (6) Bouvier's employees gave the

---

[3] I understand that of the four written agreements signed between Plaintiffs and Bouvier governing Plaintiffs' acquisitions of art from Bouvier, all four of those agreements contained clauses stating that Swiss law would govern those agreements and that any disputes arising therefrom would be subject to the exclusive jurisdiction of the courts of the Republic and Canton of Geneva. *See* ECF No. 115-5 (*Rappo v. Accent Delight Int'l Ltd.*, [2017] SGCA 27, ¶ 18 (Sing.).

9

due diligence report to Plaintiffs in Geneva, Switzerland; and (7) the original certificates of deposit of at least several of the works of art were delivered to Plaintiffs in Geneva, Switzerland.

27.     I also understand that Plaintiffs have suggested to the Court that "[i]t will take years to resolve whether jurisdiction even exists in Switzerland, let alone begin hearing the merits of the dispute." ECF No. 179 at 1. Plaintiffs' assertion is incorrect. First, the Swiss Tribunal's jurisdiction will only become an issue in this case if Plaintiffs raise an objection to the Tribunal's jurisdiction. Absent any challenge from Plaintiffs, proceedings on the merits will then immediately begin, and there will be no preliminary ruling on jurisdiction since the Tribunal will accept its jurisdiction without any further examination. As a consequence, it is entirely at the discretion of Plaintiffs to decide whether they wish to challenge the jurisdiction of the Swiss courts. By contrast, if Plaintiffs are concerned about the timing of these proceedings, they may elect to proceed on the merits without raising any jurisdictional objections.

28.     In addition, Swiss legal proceedings are known to be efficient. In 2018, the European Commission for the Efficiency of Justice ("CEPEJ") ranked Switzerland as one of the most efficient judicial systems in Europe with respect to case dispositions. Attached as Exhibit M is a true and correct copy of the CEPEJ's 2018 Report, within which the CEPEJ notes that Switzerland is one of two European jurisdictions that "have continuously improved and/or maintained stable their positive Clearance Rate." Ex. M at 52.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed at _____Geneva_____ on the 18ᵗʰ day of January, 2019.

S. LL
_____
Saverio Lembo

11