UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ACCENT DELIGHT INTERNATIONAL
LTD. and XITRANS FINANCE LTD.,

|  |
|---|

Case No. 18-cv-09011 (JMF)

**\*ORAL ARGUMENT REQUESTED\***

                              Plaintiffs,

          -against-

SOTHEBY'S and SOTHEBY'S, INC.,

                              Defendants.

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SOTHEBY'S AND SOTHEBY'S INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY THE ACTION

ARNOLD & PORTER KAYE SCHOLER LLP

250 West 55th Street
New York, NY 10019-9710
T: 212.836.8000
F: 212.836.8689

*Attorneys for Defendants Sotheby's and
Sotheby's, Inc.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ....................................................................................................3

    A.    Plaintiffs' Civil and Criminal Litigation in Monaco, Singapore, France, and Switzerland....................................................................................4

    B.    Sotheby's Swiss Civil Suit............................................................................5

    C.    Corruption Charges Against Rybolovlev in Switzerland and Monaco..............7

    D.    Plaintiffs' New York Action.........................................................................8

        1.    The Fraud and Breach of Fiduciary Duty Claims (the "Bouvier Claims")................................................................................9

        2.    The Tolling Agreement Claims ........................................................10

ARGUMENT .......................................................................................................11

I.    THE COURT SHOULD DISMISS THE COMPLAINT ON THE GROUNDS OF *FORUM NON CONVENIENS*...................................................................11

    A.    Plaintiffs' Choice of Forum Is Entitled to Little Deference .........................12

    B.    Switzerland Is an Adequate Alternative Forum...............................................17

    C.    The Balance of Private and Public Interest Factors Favors Dismissal ...........19

        1.    The private interest factors weigh in favor of dismissal....................19

        2.    The public interest factors weigh in favor of dismissal. ...................25

II.    IN THE ALTERNATIVE, THE COURT SHOULD STAY OR DISMISS THIS CASE IN DEFERENCE TO THE PENDING SWISS CIVIL SUIT .........................26

    A.    The Substantial Similarity of the Parties and Issues......................................27

    B.    The Temporal Sequence of the Parallel Actions..............................................30

    C.    The Adequacy of the Swiss Forum.................................................................30

    D.    Considerations of Potential Prejudice and Inconvenience to the Parties.........31

    E.    This Litigation's Close Connection with Switzerland .....................................32

III.   THE TOLLING AGREEMENT CLAIMS SHOULD BE DISMISSED FOR
       FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE
       GRANTED ...............................................................................................33

       A.   The Tolling Agreement Terminated Prior to Sotheby's Filing in
            Switzerland .................................................................................34

            1.   Tolling Agreement Provisions ...........................................34

            2.   Plaintiffs' October 2017 Notice of Suit ...............................35

            3.   Plaintiffs' October 2017 Notice of Suit Terminated the Tolling
                 Agreement ........................................................................36

       B.   Plaintiffs Fail to Allege Facts Showing That They Are Entitled to
            Damages or An Injunction .............................................................38

       C.   Plaintiffs' Tolling Agreement Claims Should be Dismissed Under the
            Doctrine of Laches .......................................................................39

CONCLUSION ........................................................................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                        Page(s)

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)...................................................................................4

*In re Alcon S'holder Litig.*,
   719 F. Supp. 2d 263 (S.D.N.Y. 2010)..............................................14, 16, 20, 23

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
   994 F.2d 996 (2d Cir. 1993)........................................................................24, 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................33, 34

*Base Metal Trading SA v. Russian Aluminum*,
   253 F. Supp. 2d 681 (S.D.N.Y. 2003)................................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................33

*Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*,
   No. 13-CV-4348 JMF, 2014 WL 3439620 (S.D.N.Y. July 15, 2014)....................34

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
   837 F.2d 33 (2d Cir. 1987)..................................................................................39

*Chirag v. MT Marida Marguerite Schiffahrts*,
   604 F. App'x 16 (2d Cir. 2015) ..........................................................................25

*Cont'l Time Corp. v. Swiss Credit Bank*,
   543 F. Supp. 408 (S.D.N.Y. 1982) ..............................................28, 29, 30, 31

*Credicom N.V. v. Colony Credicom L.P.*,
   No. 99 CIV. 10486 (MBM), 2000 WL 282968 (S.D.N.Y. Mar. 16, 2000).......................26, 28

*Cromer Fin. Ltd. v. Berger*,
   158 F. Supp. 2d 347 (S.D.N.Y. 2001)................................................................13

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
   773 F.2d 452 (2d Cir. 1985)...............................................................................13

*DeWitt Stern Grp., Inc. v. Eisenberg*,
   257 F. Supp. 3d 542 (S.D.N.Y. 2017)..........................................................15, 29

*Do Rosario Veiga v. World Meteorological Organisation*,
   486 F. Supp. 2d 297 (S.D.N.Y. 2007)..........................................................24, 25

*Donnelly v. FAA,*
    411 F.3d 267 (D.C. Cir. 2005) ......................................................................13

*Gertskis v. E.E.O.C.,*
    No. 11 CIV. 5830 JMF, 2013 WL 1148924 (S.D.N.Y. Mar. 20, 2013) ................................36

*Goldberg v. Danaher,*
    599 F.3d 181 (2d Cir. 2010)..........................................................................33

*Golden Horn Shipping Co. v. Volans Shipping Co.,*
    No. 14-CV-2168 (JPO), 2017 WL 3535002 (S.D.N.Y. Aug. 16, 2017) ....................14, 16, 17

*Gross v. British Broad. Corp.,*
    386 F.3d 224 (2d Cir. 2004)..........................................................................11

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947)......................................................................................11

*Hilton v. Guyot,*
    159 U.S. 113 (1895)......................................................................................13

*ICC Chem. Corp. v. TCL Indus. (Malaysia) SDN,*
    206 F. App'x 68 (2d Cir. 2006) .....................................................................13

*Ikelionwu v. U.S.,*
    150 F.3d 233 (2d Cir. 1998)..........................................................................39

*Iragorri v. United Techs. Corp.,*
    274 F.3d 65 (2d Cir. 2001) (en banc).............................................. *passim*

*Ives v. Mars Metal Corp.,*
    196 N.Y.S.2d 247 (Sup. Ct. 1960) ................................................................38

*Kestrel Coal Pty. Ltd. v. Joy Glob., Inc.,*
    362 F.3d 401 (7th Cir. 2004) ........................................................................21

*Kitaru Innovations Inc. v. Chandaria,*
    698 F. Supp. 2d 386 (S.D.N.Y. 2010)......................................................11, 27

*LaGares v. Good Commander Shipping Co.,*
    487 F. Supp. 1243 (S.D.N.Y. 1980)..............................................................39

*LaSala v. UBS, AG,*
    510 F. Supp. 2d 213 (S.D.N.Y. 2007)......................................................17, 30

*MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.,*
    46 F. Supp. 2d 249 (S.D.N.Y. 1999).....................................................28, 30, 31

*MyPlayCity, Inc. v. Conduit Ltd.*,
   No. 10 CIV. 1615 CM, 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) ..................................37

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*,
   392 F.3d 520 (2d Cir. 2004)...........................................................................................34, 38

*N.Y. Life Ins. Co. v. U.S.*,
   724 F.3d 256 (2d Cir. 2013)..................................................................................................34

*90-92 Wadsworth Ave. Tenants Ass'n v. City of New York*
   *Dep't of Hous. Pres. & Dev.*,
   656 N.Y.S.2d 8 (1st Dep't 1996) ..........................................................................................40

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   416 F.3d 146 (2d Cir. 2005)...................................................................................12, 17, 19

*Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*,
   No. 12 CIV. 7249 (PAE), 2013 WL 2531277 (S.D.N.Y. June 10, 2013) ........................26, 29

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
   830 F.3d 152 (2d Cir. 2016)..................................................................................................36

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004)..................................................................................................39

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979).............................................................................................................18

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981).......................................................................................................12, 19

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003)..............................................................................................14, 17

*PT United Can Co. v. Crown Cork & Seal Co.*,
   138 F.3d 65 (2d Cir. 1998)...................................................................................................17

*Rappo v. Accent Delight Int'l Ltd.*,
   [2017] SGCA 27 (Sing.) ........................................................................................... *passim*

*Republic of Colombia v. Diageo N. Am. Inc.*,
   531 F. Supp. 2d 365 (E.D.N.Y. 2007) .................................................................................28

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
   949 F. Supp. 2d 546 (S.D.N.Y. 2013)............................................................................. *passim*

*Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
   466 F.3d 88 (2d Cir. 2006).............................................................................................26, 27

*Schertenleib v. Traum*,
   589 F.2d 1156 (2d Cir. 1978)...............................................................................23, 24

*Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*,
   81 F.3d 1224 (2d Cir. 1996)...........................................................................23, 24, 25

*Shuttlesworth v. City of Birmingham*,
   394 U.S. 147 (1969)........................................................................................................36

*Sicav v. Wang*,
   No. 12 CIV. 6682 PAE, 2014 WL 2624753 (S.D.N.Y. June 12, 2014)..................................20

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
   No. 02-CV-8881 (JPO), 2018 WL 4682783 (S.D.N.Y. Sept. 28, 2018).........................15, 29

*Suarez v. Ingalls*,
   723 N.Y.S.2d 380 (App. Div. 2001).............................................................................37

*Tarazi v. Truehope Inc.*,
   958 F. Supp. 2d 428 (S.D.N.Y. 2013)......................................................................27, 33

*Televisa, S.A. de C.V. v. Koch Lorber Films*,
   382 F. Supp. 2d 631 (S.D.N.Y. 2005).........................................................................31

*Thornton Tomasetti, Inc. v. Anguillan Dev. Corp.*,
   No. 14-CV-7040 JPO, 2015 WL 7078656 (S.D.N.Y. Nov. 13, 2015)...........................29, 32

*United States v. U.S. Currency in Amount of $294,600*,
   No. CV-91-2567, 1992 WL 170924 (E.D.N.Y. July 2, 1992).......................................13

*Wakeman v. Wheeler & Wilson Mfg. Co.*,
   4 N.E. 264 (N.Y. 1886)..................................................................................................38

*Zamora-Leon v. United of Omaha Life Ins. Co.*,
   No. 15-CV-9206 (JMF), 2017 WL 4155403 (S.D.N.Y. Sept. 18, 2017)...........................36

**Statutes & Rules**

28 U.S.C. § 1782.................................................................................................6, 11, 35

Fed. R. Civ. P. 8(a)(2).....................................................................................................34

Fed. R. Civ. P. 12(b)(6)..........................................................................................3, 33, 34

Defendants Sotheby's ("Sotheby's Delaware") and Sotheby's, Inc. (collectively, "Sotheby's") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint or, in the alternative, to stay this action pending resolution of a related civil suit in Switzerland.

## PRELIMINARY STATEMENT

Plaintiffs' suit stems from their dissatisfaction with the prices they paid—at the direction of their principal and affiliate Dmitry Rybolovlev—to an art dealer, Yves Bouvier, for 38 masterworks, and Sotheby's alleged involvement with 14 of those 38 works. The claims against Sotheby's are baseless, and Sotheby's would vigorously dispute them were the action to proceed to the merits. This action, however, should be dismissed or stayed in deference to the pending civil suit in Switzerland, where all the core issues will be litigated and where, unlike here, all the relevant players—including Bouvier, who committed the alleged fraud and breach of fiduciary duty, and Rybolovlev, who allegedly was wronged by Bouvier's conduct—are parties.

Almost a year before Plaintiffs filed this action, Sotheby's, Inc., together with three foreign affiliates—Sotheby's SA ("Sotheby's Switzerland"), Sotheby's ("Sotheby's UK"), and Sotheby's Kunstauktionen Gesellschaft M.B.H. ("Sotheby's Austria")—and an employee of Sotheby's UK, Samuel Valette (collectively, the "Sotheby's Claimants"), filed suit in Switzerland seeking a declaratory judgment that they have no liability to Plaintiffs in connection with Plaintiffs' allegations against Bouvier (the "Swiss Civil Suit"). All of the Amended Complaint's claims based on Bouvier's alleged fraud and breach of fiduciary duty (alleged in Counts One and Two, collectively the "Bouvier Claims") are being litigated in the Swiss Civil Suit.

As detailed below, the Court should dismiss the Amended Complaint on the grounds of *forum non conveniens* or international comity, or, in the alternative, stay the action pending

resolution of the Swiss Civil Suit.  Switzerland is the proper forum given a multitude of factors, including that the pending civil litigation in Switzerland will resolve all the issues presented by the Bouvier Claims; Switzerland is where the key events occurred; Plaintiffs themselves elected to pursue charges against Bouvier in Switzerland; most of the key evidence and witnesses are in Switzerland or in nearby European countries; the vast majority of the documents at issue are in French, which (unlike in Switzerland) would need to be translated for use in a U.S. court to address factual issues that Plaintiffs claim turn on nuances in the French language; key legal issues—such as whether Bouvier was Plaintiffs' agent and whether he defrauded them—will be decided under Swiss law; and Bouvier and Rybolovlev, whose conduct forms the basis for Plaintiffs' claims (because aiding and abetting cannot be established unless the underlying fraud or breach of duty are proven), are both parties to that proceeding.  In contrast, there is no reason to burden a U.S. court and jury by litigating the case in New York, a jurisdiction with minimal, immaterial connections to the dispute.  Because Plaintiffs are foreign entities with no alleged or actual U.S. connections, their choice of forum should be afforded little deference and is far outweighed by the public and private interests served by adjudicating the case in Switzerland.

The Singapore Court of Appeal—that country's court of last resort—previously rejected Plaintiffs' effort to litigate the same issues of fraud and breach of fiduciary duty in Singapore's courts.  It granted Bouvier's *forum non conveniens* motion, holding, *inter alia*, that "the tenor, form and substance of the parties' dealings were intimately tied up with Switzerland and Swiss law"; that there were "no substantial connections between those dealings and any other jurisdiction, be it Singapore or otherwise"; that Switzerland "has the closest connection" to the Bouvier-Rybolovlev relationship; and that the witnesses' personal connections with the dispute "similarly point towards Switzerland as the forum with the closest and most real connection with

the dispute." *Rappo v. Accent Delight Int'l Ltd.*, [2017] SGCA 27, ¶¶ 82, 88-89 (Sing.) (Asner Decl. Ex. A, previously filed in 16-mc-00125, ECF No. 115-5); *see also id.* ¶ 104.  Sotheby's respectfully submits that this Court should likewise reject Plaintiffs' efforts to litigate this Swiss dispute outside of Switzerland.

Plaintiffs' claims that Sotheby's breached a Tolling Agreement (Claims Three, Four and Five, collectively, the "Tolling Agreement Claims") fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs' selective quotations from the Tolling Agreement tellingly omit key language—language that establishes that the Tolling Agreement had terminated and no longer was in force at the time the Sotheby's Claimants filed the Swiss Civil Suit.  Plaintiffs' breach of contract claims also fail for the additional reason that they allege no facts showing that Plaintiffs would be entitled to damages or an injunction for any breach.

## BACKGROUND

This action arises from a longstanding dispute between a Russian oligarch, Dmitry Rybolovlev, and a Swiss art dealer, Yves Bouvier.  The two businessmen forged their relationship, the legal nature of which is at the heart of this dispute, after they were introduced by an acquaintance, Tania Rappo, in 2003.  Am. Compl. ¶ 13.  Also in 2003, Bouvier was introduced to Mikhail Sazonov, "Mr. Rybolovlev's agent," who served as "the primary representative of [Plaintiffs] and Mr. Rybolovlev in their dealings with Mr. Bouvier."  *Rappo*, [2017] SGCA 27, ¶ 78; *see also* Am. Compl. ¶ 146 (describing alleged communications between Bouvier and Sazonov).  The dealings central to this dispute largely occurred in Switzerland, where Rybolovlev, Bouvier, and Sazonov all resided at that time, and almost nothing—certainly nothing of any significance—occurred in the United States.  *See Rappo*, [2017] SGCA 27, ¶¶ 4, 8, 90.  Bouvier, Rappo, and Sazonov are Swiss nationals.  *Id.* ¶¶ 4, 7, 90.

Plaintiffs are companies incorporated in the British Virgin Islands; they are owned by trusts settled "by and for the benefit of members of the family of Dmitry Rybolovlev." Am. Compl. ¶¶ 5-6. They are instrumentalities of Rybolovlev, through which he acquired an art collection worth at least a billion dollars. *See* Am. Compl. ¶¶ 5-6, 16. Neither is registered to do business in New York, *see Corporation and Business Entity Database*, N.Y. Dep't of State, https://www.dos.ny.gov/corps/bus_ entity_search.html (last visited Jan. 18, 2019), and neither claims to be engaged in any meaningful conduct in New York or have any U.S. connections.

**A.     Plaintiffs' Civil and Criminal Litigation in Monaco, Singapore, France, and Switzerland**

Since 2015, Plaintiffs have been engaged in criminal and civil litigation against Bouvier in multiple jurisdictions. *See* Am. Compl. ¶¶ 20-24. In January 2015, Plaintiffs initiated criminal proceedings against Bouvier in Monaco, where Rybolovlev resided at the time. *Id.* ¶ 20; *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 124-25 (2d Cir. 2017). In March 2015, Plaintiffs sued Bouvier in Singapore, where Bouvier now resides. Am. Compl. ¶ 22. The Singapore Court of Appeal thereafter granted Bouvier's *forum non conveniens* motion, reasoning that Switzerland was the most appropriate forum. *Rappo*, [2017] SGCA 27, ¶¶ 81-82, 88-89, 127. In September 2015, Plaintiff Accent Delight joined criminal proceedings against Bouvier in Paris, which case alleged that Bouvier had handled stolen goods. Am. Compl. ¶¶ 20-21. And, in March 2017, Plaintiffs filed a criminal complaint in Switzerland against Bouvier, Rappo, and Jean-Marc Peretti (a French national domiciled in Geneva), asserting that Bouvier and others committed commercial fraud against Plaintiffs when he acquired 38 works of art on Plaintiffs'

behalf.  *See* Am. Compl. ¶ 23; Swiss Criminal Complaint at 4, 26 (Asner Decl. Ex. B, previously

filed in 16-mc-00125, ECF No. 149-1).[1]

Plaintiffs' Swiss criminal complaint asserts that jurisdiction in Switzerland is proper for

their claims against Bouvier.  *See id.* at 20-21, 24-26.  Specifically, it asserts that "[t]his

commercial fraud took place in" Switzerland; that viewings of artworks, visits, and meetings

between Bouvier and Rybolovlev occurred in Switzerland, including visits in which Rybolovlev

authorized Bouvier to buy certain art; and that "each [underlying instance] of commercial fraud

[that is, each sale to Rybolovlev] committed by the investigated persons includes at least one link

with [S]witzerland, because the sale prices for the art works purchased by the claimants all

passed through Swiss bank accounts."  *Id.* at 21; *see also id.* at 24-26.  Plaintiffs also alleged that

Bouvier had committed fraud with "[p]ossible collaboration by Sotheby's."  *Id.* at 22.  The Swiss

criminal case is currently pending.  *See* ECF No. 163, at 3-4.

## B.    Sotheby's Swiss Civil Suit

On October 27, 2017, Plaintiffs notified Sotheby's, Inc. in writing that they intended to

file suit in London against Sotheby's UK, Valette, and Bouvier.  October 27, 2017 Letter (Asner

Decl. Ex. C, previously filed in 16-mc-00125, ECF No. 101).[2]  As Plaintiffs asserted in their

Swiss criminal complaint, and as the Singapore Court of Appeal found in its *forum non*

*conveniens* ruling, the key events underlying Plaintiffs' claims took place in, and have a

substantial connection to, Switzerland.  *See supra* Section A.  Accordingly, on November 17,

2017, the Sotheby's Claimants, along with Bouvier and affiliated entities, filed the Swiss Civil

Suit with the Tribunal of First Instance of Geneva against Plaintiffs and related entities and

---

[1] All ECF citations to refer to *In re Accent Delight Int'l Ltd.*, Case No. 16-mc-125 (S.D.N.Y.).
[2] As explained *infra* at Point III, Plaintiffs' written notice terminated a Tolling Agreement
Plaintiffs previously had entered into with Sotheby's, Inc. and its three foreign affiliates.

persons, including Rybolovlev, his now ex-wife Elena Rybolovleva, and his daughter Ekaterina Rybolovleva.  *See* Statement of Claim ¶ 437 (Lembo Decl. Ex. H); Notice of Conciliation (Asner Decl. Ex. D, previously filed in 16-mc-00125, ECF Nos. 115-10 to -12).  Subsequently, based on their contention that "the dispute between [Plaintiffs] and Sotheby's is active and public, and foreign proceedings concerning the merits of that dispute are happening now," Plaintiffs sought and received permission from the Court to use documents Plaintiffs had obtained from Sotheby's under 28 U.S.C. § 1782 in the Swiss Civil Suit.  ECF Nos. 121, 128.

The Swiss Civil Suit seeks a declaratory judgment that, *inter alia*, the Sotheby's Claimants "have no liability of any sort in th[e] dispute" between Bouvier, Rybolovlev, and Plaintiffs regarding Bouvier's alleged fraud and breach of duty.  Notice of Conciliation at 4, 6. The Swiss Civil Suit will determine, among other issues, whether Bouvier had an "agency relationship of any sort" with Rybolovlev and Plaintiffs, and whether Bouvier owed Rybolovlev and Plaintiffs "any duties as an agent."  *Id.* at 5.  Unlike the instant civil action, which Plaintiffs filed nearly a year later, the Swiss Civil Suit includes all of the art transactions that are claimed to form the basis of the alleged agency relationship at the core of this matter, as well as all the parties relevant to this dispute:  Bouvier and related entities; Sotheby's Switzerland, Sotheby's UK, Sotheby's, Inc. (United States), Sotheby's Austria and Valette; and Rybolovlev, his now ex-wife Elena Rybolovleva, his daughter Ekaterina Rybolovleva, Plaintiff Xitrans Finance Ltd., Plaintiff Accent Delight International Ltd., and other entities.  *See id.* at 1-2.[3]

Since its filing, the Swiss Civil Suit has proceeded in a timely fashion at the direction of the Swiss court and pursuant to the Swiss Code of Civil Procedure ("SCCP").  *See* Lembo Decl.

---

[3] Plaintiffs' contemplated UK proceeding also would have lacked relevant parties other than Sotheby's UK, Valette, and Bouvier, unlike the Swiss Civil Suit.  *See* October 27, 2017 Letter.

¶ 10.  Copies of the Sotheby's Claimants' November 17, 2017 filing were promptly served on Plaintiffs and related parties, and the Swiss court held a conciliation hearing (designed to resolve the dispute if possible) with all parties, including Plaintiffs, on April 11, 2018.  *See id.* ¶¶ 11-12. Pursuant to the SCCP, the Swiss court then authorized the Sotheby's Claimants to proceed with the litigation and directed them to file their statement of claim by July 11, 2018.  *See id.* ¶¶ 12-13.  On July 11, 2018, the Sotheby's Claimants filed a 129-page Statement of Claim setting forth the evidentiary bases for their claims seeking a declaration of non-liability.  *See id.* ¶ 16; *see generally* Statement of Claim.  On November 8, 2018, the Swiss court resolved the question of whether Sotheby's and Bouvier were required as nominal claimants to advance costs, as is generally required in Swiss litigation, finding that advancement of costs was required.  *See id.* ¶ 20.  Pursuant to the SCCP, the Swiss court next will serve Plaintiffs with the Statement of Claim and direct them to file a responsive statement of defense.  *See id.* ¶ 21.

> ### C.    Corruption Charges Against Rybolovlev in Switzerland and Monaco

As noted, Plaintiffs and Rybolovlev to date have participated in the Swiss Civil Suit as it proceeded in due course, appearing at the April 11, 2018 conciliation hearing, and seeking and receiving permission from this Court to use in Switzerland documents Plaintiffs previously had obtained from Sotheby's.  *See* Lembo Decl. ¶ 12; *see also* ECF Nos. 121, 128.  They also previously relied upon the courts of both Switzerland and Monaco in their efforts to pursue criminal charges against Bouvier and others.  Their efforts to obtain an advantageous adjudication of this dispute in Switzerland and Monaco recently came under a cloud, however, which may explain their most recent effort to look for yet another forum to litigate the issues, this time in New York.

First, on September 5, 2018, the First Prosecutor of Geneva issued a ruling detailing an alleged effort by Rybolovlev to bribe judges in Switzerland in connection with the then-pending

divorce between Rybolovlev and Elena Rybolovleva. *See* Asner Decl Ex. F. The investigation revealed that, in October 2014, a few months after a Swiss court ordered Rybolovlev to pay 4 billion Swiss francs to his ex-wife, Rybolovlev's attorney, Tetiana Bersheda, provided Bouvier with a list of judges overseeing the divorce, in an effort to have Bouvier either bribe or intimidate the judges through blackmail. *Id.* In its ruling, the prosecutor credited the allegations, but closed the investigation, noting that the "preparatory" acts undertaken were insufficient to bring a criminal case under Swiss law. *Id.* The prosecutor nevertheless described Rybolovlev's and Bersheda's conduct as "morally particularly objectionable and shocking" and referred Bersheda to the Geneva Bar Commission. *Id.*

Meanwhile, Monaco officials opened an investigation into Rybolovlev, Bersheda, and others in connection with an alleged scheme to bribe Monaco's justice minister, Philippe Narmino (and other officials), leading up to Bouvier's arrest in Monaco in 2015. *See* ECF No. 115-9 (Asner Decl. Ex. H). The investigation disclosed multiple text messages detailing Rybolovlev's lavish gifts to Narmino, including an all-expenses-paid trip to Rybolovlev's Swiss residence in Gstaad, and led to Narmino being forced to resign his position. *See id.; see also* ECF No. 150, at 20 (Asner Decl. Ex. G). The investigation also led to Rybolovlev's arrest on November 6, 2018, as well as a search of his Monaco home. ECF No. 188, at Ex. A (Asner Decl. Ex. I). The case against Rybolovlev remains ongoing. Asner Decl. Ex. H.

### D. Plaintiffs' New York Action

On October 2, 2018, almost a year after the Swiss Civil Suit was filed, Plaintiffs initiated the instant suit. *See* Am. Compl. ¶¶ 7, 9. As discussed in Section D.1., *infra*, apart from the Tolling Agreement Claims (discussed in Section D.2, *infra*), the allegations concern the very same issues currently being litigated in Switzerland. In particular, Plaintiffs' claims are based on

Plaintiffs' acquisitions of 14 of the 38 works from Bouvier, 12 of which Plaintiffs allege Bouvier first acquired from Sotheby's entities.

### 1.   The Fraud and Breach of Fiduciary Duty Claims (the "Bouvier Claims")

Plaintiffs assert that "Bouvier defrauded Plaintiffs of over $1 billion" when he served as their "art advisor" and acquired masterworks on their behalf.  Am. Compl. ¶¶ 1-2.  At an unspecified time, Plaintiffs and Bouvier allegedly "agreed that [Bouvier] would act as their agent."  *Id.* ¶ 14; *see also id.* ¶ 16 (asserting, conclusorily, that Bouvier was not acting "as a dealer entitled to the markups he could generate on the open market").  In the 12 years following their meeting, Bouvier "worked to acquire art masterworks on Plaintiffs' behalf."  *Id.* ¶ 14. "Bouvier acquired 38 masterworks for Plaintiffs . . . in 37 transactions," for which Plaintiffs generally paid Bouvier a commission for his services.  *Id.* ¶¶ 15, 16.[4]

Plaintiffs claim that, in connection with these sales, and "[f]or more than ten years"— from 2003 to 2015—Bouvier was "selling [the artworks] to Plaintiffs at markups as high as 145%," "pocketing the difference for himself," and "pa[ying] Rappo about $100 million in kickbacks," all allegedly in violation of his fiduciary duties to Plaintiffs.  Am. Compl. ¶¶ 2, 19. According to the Amended Complaint, Bouvier perpetrated the alleged fraud through emails he sent to Plaintiffs' representatives.  *See, e.g., id.* ¶¶ 46, 96-97, 104, 122, 126, 137, 144, 172.

The Amended Complaint does not allege that Sotheby's played any role in Bouvier's dealings with Plaintiffs from 2003 to 2011, or that any Sotheby's employee communicated

---

[4] The first four sales were executed by formal written agreements that "contained clauses stating that Swiss law was to govern the agreements, and that any disputes related to the agreements were to be subject to the exclusive jurisdiction of the courts of the Republic and Canton of Geneva."  *Rappo*, [2017] SGCA 27, ¶ 18.  "Thereafter, the parties dispensed with the need for formal written agreements and transacted only on the basis of invoices. . . .  The vast majority of the invoices . . . directed payment to be made into Swiss bank accounts."  *Id.* ¶ 19.

directly with Rybolovlev, Sazonov, or any other representative of Plaintiffs.  Indeed, it does not contain a single allegation of conduct by Sotheby's prior to 2011.  Prior to any alleged involvement of Sotheby's, Plaintiffs acquired 20 of the 38 works from Bouvier.  *See* Notice of Conciliation at 8 (detailing acquisitions of all 38 works).

The Amended Complaint's focus on Sotheby's in and after 2011 concerns communications between Bouvier; his "associate" Peretti, a French national domiciled in Geneva; and London-based Valette.  *See, e.g.*, Am. Compl. ¶¶ 29-30, 42, 53, 61; *see also* Swiss Criminal Complaint at 22-23.  The Amended Complaint alleges that Sotheby's, acting through Valette, aided and abetted Bouvier's alleged scheme.  Plaintiffs allege that two other Sotheby's employees, Alexander Bell and Bruno Vinciguerra, "also dealt with Bouvier," Am. Compl. ¶ 32, but their contacts as alleged in the Amended Complaint were even more sparse than Valette's. Bell, like Valette, is based in London and is employed by Sotheby's UK, not by either of the U.S. defendants here.  And Vinciguerra, a former employee of Sotheby's, Inc., is not alleged to have been involved with any sales to Bouvier.

## 2.    The Tolling Agreement Claims

The Amended Complaint contains one issue that is not currently part of the Swiss Civil Suit.  Plaintiffs allege in Claims Three, Four, and Five (the Tolling Agreement Claims) that Sotheby's breached a December 16, 2016 Tolling Agreement, which required "at least 14 days' written notice . . . prior to filing or commencing any litigation or other legal proceeding against any other party" based on claims or defenses "arising out of the direct or indirect involvement of Sotheby's with Yves Bouvier."  *Id.* ¶ 222 (citing Dec. 16, 2016 Tolling Agreement ¶ 3 (Asner Decl. Ex. E)).  Plaintiffs' cropped quotation from the Agreement omits to mention, however, that the Agreement also includes a *termination* provision, and that the Agreement no longer was in

force when the Sotheby's Claimants filed the Swiss Civil Suit in Switzerland on November 17, 2017.

Paragraph 4(a) of the Tolling Agreement provided that the agreement terminates "14 days after any Party serves a 'Notice of Suit' on any other Party." *See also id.* ¶ 3 (defining "Notice of Suit" as "written notice"). On October 27, 2017, Plaintiffs filed a letter with this Court, served on counsel for Sotheby's, Inc. via ECF, "request[ing] permission to use documents previously obtained in [a] 28 U.S.C. § 1782 action in new foreign proceedings soon to be commenced in the United Kingdom against Sotheby's UK, one of its employees, and Yves Bouvier." October 27, 2017 Letter.

The Tolling Agreement terminated 14 days later, and was no longer in force when the Sotheby's Claimants filed their declaratory action in Switzerland on November 17, 2017.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE COMPLAINT ON THE GROUNDS OF *FORUM NON CONVENIENS*

"The doctrine of *forum non conveniens* allows a district court to refuse to entertain jurisdiction of a case 'even when jurisdiction is authorized by the letter of a general venue statute.'" *Gross v. British Broad. Corp.*, 386 F.3d 224, 229 (2d Cir. 2004) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947)). A court "may decline jurisdiction" where "doing so would 'best serve the convenience of the parties and the ends of justice.'" *Id.* The decision "lies wholly within the broad discretion of the district court." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (citation omitted). In deciding a motion to dismiss on the grounds of *forum non conveniens*, a court "may consider affidavits, affirmations and exhibits submitted in connection with the motion." *Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 389 (S.D.N.Y. 2010).

The *forum non conveniens* analysis follows the three-part test outlined in *Iragorri*:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 551 (S.D.N.Y. 2013) (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)), *aff'd*, 559 F. App'x 58 (2d Cir. 2014). As discussed below, the Amended Complaint should be dismissed on *forum non conveniens* grounds because Plaintiffs' choice of forum is entitled to little deference, Switzerland is an adequate alternative forum, and all of the private and public interest factors weigh in favor of dismissal.

### A.   Plaintiffs' Choice of Forum Is Entitled to Little Deference

The Court should not defer to Plaintiffs' choice of forum because Plaintiffs are foreign companies and the factual allegations of the Amended Complaint (other than those relating to the Tolling Agreement Claims) have little if any bona fide connection to the United States.

When determining the "degree of deference to be accorded Plaintiffs' choice of forum," *id.*, courts may consider, among other factors, "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district," and "[any] other reasons relating to convenience or expense." *Iragorri*, 274 F.3d at 72. The more diminished "plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice," and the less it appears "that considerations of convenience favor the conduct of the lawsuit in the United States," the more likely a court will dismiss on *forum non conveniens* grounds. *Id.* (footnote omitted). "[W]hen a foreign plaintiff chooses a U.S. forum, it 'is much less reasonable' to presume that the choice was made for convenience. In such circumstances, a plausible

likelihood exists that the selection was made for forum-shopping reasons." *Id.* at 71 (quoting

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)); *see also Piper*, 454 U.S. at 252 & n.18

(describing reasons foreign plaintiffs are drawn to U.S. courts, including that "discovery is more

extensive in American than in foreign courts").  "Even if the U.S. district was not chosen for

such forum-shopping reasons, there is nonetheless little reason to assume that it is convenient for

a foreign plaintiff." *Iragorri*, 274 F.3d at 71.  Where the plaintiffs are "entirely foreign," courts

"apply a substantially reduced level of deference." *Cromer Fin. Ltd. v. Berger*, 158 F. Supp. 2d

347, 355 n.8 (S.D.N.Y. 2001).

Plaintiffs are "entirely foreign" and this Court should give little deference to their choice

of forum.  *Id.*  They are "incorporated in the British Virgin Islands" and "owned by a trust settled

by and for the benefit of members of the family of Dmitry Rybolovlev."  Am. Compl. ¶¶ 5-6.

The trust is "governed by Cypriot law." *Rappo*, [2017] SGCA 27, ¶ 9.[5]  Prior to settlement of

the trust, Plaintiff Xitrans "was held directly by Mr. Rybolovlev." *Id.*  Even today, Plaintiffs

"are in substance controlled by Mr. Rybolovlev." *Id.* ¶ 74.  Plaintiffs are not alleged to be

engaged in any conduct in the United States and are not registered to do business here.

---

[5] The Singapore Court of Appeal judgment "should be given weight as prima facie evidence of
the facts underlying it." *Donnelly v. FAA*, 411 F.3d 267, 270-71 (D.C. Cir. 2005); *Hilton v.
Guyot*, 159 U.S. 113, 123 (1895) (decision of a "competent [foreign] court" is "prima facie
evidence . . . of the truth of the matter adjudged"); *United States v. U.S. Currency in Amount of
$294,600*, No. CV-91-2567, 1992 WL 170924, at *5 (E.D.N.Y. July 2, 1992) ("[A foreign]
judgment *and the facts that support it* find an estoppel-like approval in our courts." (emphasis
added)).  "Comity should be withheld only when its acceptance would be contrary or prejudicial
to the interest of the nation called upon to give it effect," and is given presumptively where, as
here, "the foreign court is a court of competent jurisdiction." *Cunard S.S. Co. v. Salen Reefer
Servs. AB*, 773 F.2d 452, 457 (2d Cir. 1985) (internal quotation marks omitted); *see also, e.g.*,
*ICC Chem. Corp. v. TCL Indus. (Malaysia) SDN*, 206 F. App'x 68, 70 (2d Cir. 2006) (summary
order) (granting comity to a Singapore judgment because the plaintiff "had the opportunity to
fully and fairly litigate the . . . issue before the Singapore Court," including "the opportunity to
appeal").

*Corporation and Business Entity Database*, N.Y. Dep't of State,

https://www.dos.ny.gov/corps/bus_ entity_search.html (last visited Jan. 18, 2019).

Plaintiffs' decision to sue in Sotheby's "home forum" does not tip the scales in their favor, but instead it further diminishes any deference to their chosen forum.  As the Circuit has explained, "litigants rarely are concerned with promoting their adversary's convenience at their own expense," and a decision to pursue U.S. litigation "over other fora where defendant is amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy."  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003).

Deference to Plaintiffs' choice of forum would be particularly misplaced here because "the core operative facts upon which the litigation is brought bear little connection to the chosen forum."  *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 269 (S.D.N.Y. 2010).  The mere existence of some U.S. contacts does not alter this calculus where, as here, "the vast majority of the activities alleged in the complaint were committed by foreign nationals on foreign soil."  *Golden Horn Shipping Co. v. Volans Shipping Co.*, No. 14-CV-2168 (JPO), 2017 WL 3535002, at *3 (S.D.N.Y. Aug. 16, 2017) (citation omitted); *see also RIGroup*, 949 F. Supp. 2d at 552 (deference to plaintiff's choice of forum "is significantly diminished where the lawsuit arises from business that the plaintiff conducted abroad").

The crux of Plaintiffs' suit is their relationship and dealings with Bouvier.  *See* Am. Compl. ¶ 1.  Plaintiffs allege that Bouvier charged them more than what Bouvier had paid and that Bouvier—and Bouvier alone—"pocket[ed] the difference."  *Id.* ¶ 2.[6]  The core issues are

---

[6] Sotheby's did not realize any financial benefit from these markups, and the Amended Complaint does not allege otherwise.

whether Bouvier was legally entitled to do so and whether Sotheby's was complicit in Bouvier's alleged scheme.  As the Singapore Court explained, "[t]he critical issue is whether Mr. Bouvier was engaged as an agent of the Respondents [*i.e.*, Plaintiffs here]/Mr Rybolovlev, or whether he was an independent seller of artworks to them, with the parties dealing with one another as principals."  *Rappo*, [2017] SGCA 27, ¶ 75.  Plaintiffs' claims hinge on this central issue, because an essential element of the aiding and abetting claims is proof of the underlying fraud or breach.  *See, e.g.*, *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, No. 02-CV-8881 (JPO), 2018 WL 4682783, at *4 (S.D.N.Y. Sept. 28, 2018) (fraud); *DeWitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 587-88 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 48 (2d Cir. 2018) (breach of fiduciary duty).

But Bouvier's relationship with Plaintiffs and Rybolovlev, as well as his relationship to Sotheby's, has nothing to do with the United States.  The Amended Complaint alleges that Bouvier perpetrated the purported fraud through emails he sent to Plaintiffs' representatives. *See, e.g.*, Am. Compl. ¶¶ 46, 97, 104-05, 122, 126, 137, 144, 172.  It is undisputed that these emails were exchanged between foreign nationals outside the United States.  Bouvier was introduced to Rybolovlev in 2003, *id.* ¶ 13, when both men were living in Geneva, *see Rappo*, [2017] SGCA 27, ¶ 78.  That same year, Bouvier met Sazonov, "Mr. Rybolovlev's agent," who served as "the primary representative of [Plaintiffs] and Mr. Rybolovlev in their dealings with Mr. Bouvier."  *Id.*  Sazonov is Swiss and resides in Switzerland.  *Id.*  ¶ 90.  As the Singapore Court of Appeal held, "the personal connections of the witnesses to the dispute . . . point towards Switzerland as the forum with the closest and most real connection with the dispute."  *Id.* ¶ 89.

Sotheby's alleged involvement took the form of "emails to Bouvier and his associate Jean Marc Peretti" from Valette.  Am. Compl. ¶ 30.  Plaintiffs allege that "Sotheby's subsidiaries,

Vinciguerra, Valette, and Bell were instrumentalities of Sotheby's wrongful conduct." *Id.* ¶ 203. Plaintiffs previously acknowledged to this Court, however, that Valette is a London-based employee of Sotheby's UK. *See* ECF No. 108, at 4. So was Alexander Bell, Sotheby's Co-Chairman of Old Master Paintings. Am. Compl. ¶ 32. Therefore, the "core operative facts upon which the litigation is brought" bear a strong connection to Switzerland and other foreign countries. *Alcon*, 719 F. Supp. 2d at 269.

By contrast, any connections to the United States "are insubstantial." *Golden Horn Shipping Co.*, 2017 WL 3535002, at *3 (citation omitted). Vinciguerra is a former employee of Sotheby's, Inc., but the allegations about him focus on efforts to have Bouvier *sell* works through Sotheby's entities, not acquire them for resale to Plaintiffs, which is how Plaintiffs claim they were defrauded. *See* Am. Compl. ¶¶ 110, 149-50. There are no allegations against Sotheby's Delaware, and Sotheby's, Inc.—which Plaintiffs refer to as the "New York office"—signed only 2 of the 12 sales contracts between Sotheby's entities and Bouvier. *Id.* ¶¶ 56, 64. And, as discussed, the alleged facts underlying the purported fraud and breach of fiduciary duty took place outside the United States.[7]

Finally, the absence of any bona fide connections to the United States is underscored by Plaintiffs' previous filings. In 2017, supported by a sworn declaration from their UK counsel, Plaintiffs told this Court that the defendants in their threatened UK lawsuit would include "Sotheby's London," Valette ("an employee of Sotheby's London"), and Bouvier. Edwards

---

[7] The scant U.S.-specific allegations do not involve any acts that could be considered part of the alleged aiding and abetting. For example, the Amended Complaint alleges that the sales contracts for Maillol's *La Méditerranée* and Rodin's *Le Baiser* were signed by "Sotheby's New York [*i.e.*, Sotheby's, Inc.]" and that those works were located in New York at the time of the sales, Am. Compl. ¶¶ 56, 64, but that has nothing to do with any alleged representations made to Plaintiffs. The same is true of the viewing of Leonardo da Vinci's *Christ as Salvator Mundi* held in New York, at which Valette is not even alleged to have interacted with Rybolovlev. *Id.* ¶ 168.

Decl. ¶ 6, ECF No. 131, at 2.  Yet neither Sotheby's UK, nor Valette, nor Bouvier is a named defendant here, perhaps because Plaintiffs doubt whether this Court could exercise personal jurisdiction over them, further underscoring this litigation's paucity of U.S. contacts.

In sum, "[t]he connections to the United States alleged by plaintiffs [here] . . . are insubstantial in light of the fact that the vast majority of the activities alleged in the complaint were committed by foreign nationals on foreign soil." *Golden Horn Shipping Co.*, 2017 WL 3535002, at *3 (alteration in original) (citation omitted).  Indeed, *all* of the communications and transactions constituting the alleged fraud and breach of fiduciary duty were made between foreign nationals located outside of the United States.  Because there is "no 'bona fide reason for the plaintiffs to have sued in this Court,'" their "choice of this forum 'deserves little deference.'" *RIGroup*, 949 F. Supp. 2d at 552 (citation omitted).

### B.       Switzerland Is an Adequate Alternative Forum

Plaintiffs cannot seriously dispute that Switzerland, where parallel civil litigation has been pending for over a year, and where Plaintiffs themselves have elected to pursue criminal charges against Bouvier, is not an adequate alternative forum.  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75.  Further, "'[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies." *Norex*, 416 F.3d at 158 (quoting *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998)); *accord LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 222 (S.D.N.Y. 2007) (holding Switzerland is adequate alternative forum even though Swiss law "does not recognize a cause of action for aiding and abetting a breach of fiduciary duty parallel to that brought by plaintiffs").

- 17 -

Defendants are amenable to service of process in Switzerland with respect to any Swiss civil proceeding involving the disputes at issue in this action. Sotheby's, Inc. is already a party to the Swiss Civil Suit, and Sotheby's Delaware will submit to Swiss jurisdiction if Plaintiffs wish to join them. *See* Asner Decl. ¶ 3. Defendants also will submit to jurisdiction in any other Swiss civil proceeding Plaintiffs wish to bring involving this dispute. *See id.*

The Swiss courts have jurisdiction. Lembo Decl. ¶¶ 23-26. Although Plaintiffs have suggested that the Swiss courts will not have jurisdiction under the Swiss Federal Act on Private International Law ("PILA"), *see* ECF No. 179, at 7 (citing PILA, art. 129), Plaintiffs previously litigated this issue up to the Singapore Court of Appeal and lost, *see Rappo*, [2017] SGCA 27, ¶ 96 (rejecting the argument "that under the PILA, the Swiss courts will not have jurisdiction over the parties' dispute"). That question therefore already has been decided against Plaintiffs, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331-32 (1979), and in any event the Court should reach the same conclusion here. As explained in the Lembo Declaration, Swiss courts generally have jurisdiction over claims against domiciliaries or habitual residents of Switzerland and over claims in which an allegedly wrongful act took place or caused harm in Switzerland. *See* Lembo Decl. ¶ 23 (citing PILA, art. 129 and Swiss Supreme Court precedent). Here, jurisdiction is proper because, among other things, (1) agreements governing the sales from Sotheby's entities to Bouvier that serve as the basis for Plaintiffs' allegations were—at least partially—negotiated and performed in Switzerland; (2) many of the transactions central to this dispute were facilitated by, and involved shipments of artworks to, Bouvier's Swiss-based "'freeport' businesses"; (3) and Sotheby's SA, a domiciliary of Switzerland, handled the first sale of art from a Sotheby's entity to Bouvier that was later allegedly resold to Plaintiffs. *Id.* ¶ 26 (describing additional independent bases for Swiss court's jurisdiction).

**C.      The Balance of Private and Public Interest Factors Favors Dismissal**

Finally, the private and public interest factors weigh in favor of dismissal.  In the final step of the *forum non conveniens* analysis, courts balance the private and public interest factors "to ascertain whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum proposed by the defendant." *Iragorri*, 274 F.3d at 73.  Courts "focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Id.* at 74.  "'[T]he central purpose of any *forum non conveniens* inquiry' is, after all, 'to ensure that the trial is convenient.'" *Norex*, 416 F.3d at 154 (quoting *Piper*, 454 U.S. at 256).

**1.      *The private interest factors weigh in favor of dismissal***

The relevant private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *RIGroup*, 949 F. Supp. 2d at 555-56.  These factors "concern the convenience of the litigants," and the first three "are especially significant." *Id.*  "Indeed, courts have regularly concluded that '[w]here most of the witnesses and documentary evidence reside in a foreign country, conducting trial in the United States could impose such significant burdens on the parties that dismissal is favored.'" *Id.* at 556 (alteration in original) (citation omitted).

Most of the relevant documents are likely to be located in Switzerland or England, and elsewhere outside the United States.  This evidence is also likely "to be in the hands of third parties . . . and thus beyond the power of this Court to compel." *Id.*  For example, the emails constituting the alleged fraud appear to have been sent from Bouvier, a Swiss national who lived in Switzerland until at least 2009, and Sazonov, "a Swiss national who resided in Geneva at the

material time and continues to reside there." *Rappo*, [2017] SGCA 27, ¶ 90 (explaining Sazonov "was the primary representative of the Respondents [*i.e.*, Plaintiffs] and Mr Rybolovlev in their dealings with Mr Bouvier"). The relevant emails sent to Plaintiffs are presumably in the possession of Sazonov, a third party. Sazonov and his documents are beyond the subpoena power of this Court. *See, e.g.*, *Alcon*, 719 F. Supp. 2d at 276 (dismissing on *forum non conveniens* grounds because "non-party witnesses whose testimony would be necessary, as well as related documentary evidence, is largely in Switzerland, and thus beyond the reach of this Court's power to compel").

Proof of damages—the allegedly "inflated prices" Plaintiffs paid to Bouvier, *see* Am. Compl. ¶¶ 209-10, 215-16, and the "legal fees" they allegedly incurred in the Swiss Civil Suit, *id.* ¶ 231—is also undoubtedly located in Switzerland. The proof, for example, will require financial records showing what Plaintiffs actually paid, most of which are in Switzerland. *See Rappo*, [2017] SGCA 27, ¶ 19 ("The vast majority of the invoices . . . directed payment to be made into Swiss bank accounts."); *see, e.g.*, *Iragorri*, 274 F.3d at 74 ("The court should consider . . . where the parties will have better access to the evidence relating to [the] damages.").

As to Sotheby's alleged involvement, it primarily took the form of emails from Valette to Bouvier and Peretti. Those emails will be found in Switzerland or the UK, or both. To the extent those emails were forwarded to Sazonov, they likely are in his possession in Switzerland. Otherwise, those emails are located on a UK server belonging to Sotheby's UK. *See* Scillieri Decl. ¶ 8, ECF No. 153 (explaining that emails between an employee of Sotheby's UK and an external party "would all be stored exclusively on the company's electronic e-mail servers located in the UK"); *cf.* Mem. Op. & Order 3 n.2, ECF No. 171 (suggesting that electronic documents "located on servers outside the United States" can properly be "considered to be

located abroad").  In addition, it is not clear that the Court could order the Sotheby's defendants to produce documents on a foreign server in the possession of a non-party foreign subsidiary. *See, e.g.*, *Sicav v. Wang*, No. 12 CIV. 6682 PAE, 2014 WL 2624753, at *4-5 (S.D.N.Y. June 12, 2014) (explaining that, as a general rule, "a document held by a subsidiary is not within the control of the parent, and therefore a parent cannot be legally obligated at the threat of sanction to produce it," and noting that courts "engage in a factual inquiry into practical control, of which ownership is but one part"); *accord Kestrel Coal Pty. Ltd. v. Joy Glob., Inc.*, 362 F.3d 401, 404-05 (7th Cir. 2004) (explaining that a court ordinarily could not require a U.S. parent to produce documents in the custody of its foreign subsidiaries, which were not parties to the proceedings).

"[C]ompounding matters, most, if not all, of the relevant documents are in [French], which supports a finding that [Switzerland] is more convenient than this forum for litigation of Plaintiffs' claims."  *RIGroup*, 949 F. Supp. 2d at 556; *see also Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 712 (S.D.N.Y. 2003) ("The need for extensive document translation supports a finding that this forum is inconvenient.").  Most if not all of the communications between Valette and Bouvier, as well as between Bouvier and Sazonov, were in French.  *See* Am. Compl. ¶ 41 n.1 ("Unless otherwise indicated, the quotes from emails are translations from the original French.").[8]  Indeed, Sazonov "became Mr Rybolovlev's primary intermediary" precisely because the latter did not speak French.  *Rappo*, [2017] SGCA 27, ¶ 14; *see also id.* ¶ 78 (noting that Sazonov became Plaintiffs/Rybolovlev's primary representative dealing with Bouvier "owing to the language barrier between" Rybolovlev and Bouvier).

This language issue is an exceptionally weighty consideration here because the

---

[8] Of the scores of emails quoted in the Amended Complaint, it appears that just one—a January 9, 2015 email from Vinciguerra discussing the possibility of selling at public auction a work it had previously sold to Bouvier—was in English.  *See* Am. Compl. ¶ 110 & n.2.

allegations hinge on the language Valette used with Bouvier.  Plaintiffs allege that the formal emails and appraisal certificates were intended by Valette to be forwarded by Bouvier to Plaintiffs to convince them to buy at the inflated prices Bouvier was trying to convince them were legitimate.  They allege that the formal tone was designed to mislead Plaintiffs into thinking that Bouvier and Valette had an arms-length relationship and that Sotheby's valuations and appraisals of the works could be trusted.  Am. Compl. ¶ 51.  Indeed, the Amended Complaint contains dozens of characterizations of the "tone" or "style" of Valette's communications as "formal" or "informal," many of which Sotheby's disputes.  *E.g.*, *id.* ¶¶ 41-42, 45-46, 51, 55, 57, 65, 67, 75, 77, 91-95, 101-03, 120-21, 134, 142-43, 163-64.  The need to parse a plethora of French documents and determine the legal significance, if any, of these linguistic nuances will be far less burdensome for Swiss lawyers proceeding before a Swiss judge, all of whom regularly conduct business in French.

The power to compel the attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses also favor dismissal.  Sazonov, "a Swiss national who resided in Geneva at the material time and continues to reside there[,] . . . will be a key witness at . . . trial, given that he was the primary representative of [Plaintiffs] and Mr Rybolovlev in their dealings with Mr Bouvier."  *Rappo*, [2017] SGCA 27, ¶ 90; *see also* Am. Compl. ¶ 146.  As noted, Peretti—Bouvier's associate and a recipient of numerous emails from Valette, according to the Amended Complaint, *see, e.g.*, Am. Compl. ¶ 30—is a French national who resides in Geneva.  Mrs. Elena Rybolovleva, Rybolovlev's ex-wife, "is believed to reside in Switzerland" and "Rybolovlev himself has given evidence that Elena acted as a translator for some of the artwork transactions, and also assisted in dealing with intermediaries and vendors of artworks that he considered purchasing."  *Rappo*, [2017] SGCA 27, ¶ 90.  Indeed, after June 2005, it was

Rybolovlev's practice "to communicate his purchasing decisions either to Elena . . . or to Mr Sazonov." *Id.*  Mrs. Rybolovleva is a party to the pending Swiss Civil Suit.  In addition, Tetiana Bersheda, Swiss counsel to Plaintiffs and Rybolovlev, is a witness to discussions between Rybolovlev, Sazonov, and Bouvier, "as she was present at some of the meetings between the parties in Geneva." *Id.*  None of these witnesses has any meaningful connection to the United States, and all of them are located in Switzerland outside the subpoena power of this Court.  *See, e.g.*, *Alcon*, 719 F. Supp. 2d at 276 (dismissing on grounds of *forum non conveniens* because "non-party witnesses whose testimony would be necessary, as well as related documentary evidence, is largely in Switzerland, and thus beyond the reach of this Court's power to compel").

The other key witnesses also have ties to Switzerland, but not the United States.  Valette (a UK resident) and Bouvier (a Swiss national domiciled in Singapore) are both parties to the pending Swiss Civil Suit.  Rybolovlev (a resident of Monaco) is also party to that pending litigation.  Valette, Bouvier, and Rybolovlev are also beyond the reach of this Court's subpoena power.  *See id.* ("There is also substantial risk that other key third-party witnesses, who reside in Switzerland or elsewhere in Europe, would not be within this Court's subpoena power.").  By contrast, all three can be compelled to give testimony in Switzerland.  Lembo Decl. ¶ 15.

The location of these witnesses, and the absence of any bona fide connection between them and the United States, weighs in favor of dismissal even if they were within subpoena power or would otherwise voluntarily appear.  As the Second Circuit explained in affirming a dismissal on *forum non conveniens* grounds, "the difficulty, cost, and disruption of requiring the attendance of such witnesses in New York—whether they were willing to appear or not—would be considerable." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1233 (2d Cir. 1996); *see also, e.g.*, *Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978) (finding

Geneva to be a more convenient forum where "[a]ll of the prospective witnesses, apart from [the defendant] himself, either are Swiss or reside in European countries").  Moreover, "[m]uch of [the] evidence, both documentary and of live witnesses, would likely have to be translated for any effective use in proceedings in this Court." *Do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 306 (S.D.N.Y. 2007).  Thus, "[t]he costs, inconvenience, and impracticalities of subjecting those witnesses to participate at trial in this District, even if voluntary, would be substantially higher relative to comparable costs and other burdens they would incur in Switzerland." *Id.*; *accord Schertenleib*, 589 F.2d at 1165 ("The expense of translation [of documents and witnesses' testimony from French into English], which is potentially substantial, would be totally avoided if trial is in Geneva.").

All of these legal and practical obstacles to obtaining live testimony from the critical witnesses weigh decisively in favor of dismissal.  The Second Circuit repeatedly has held that, where plaintiffs "have alleged fraud, live testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor." *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1001 (2d Cir. 1993); *accord Scottish Air*, 81 F.3d at 1233 (explaining that, in *Allstate*, the Second Court "deemed such testimony necessary for the jury to assess the witnesses' credibility").  Moreover, it is undisputed that whatever duties Bouvier may have owed to Plaintiffs—which Plaintiffs must establish to prove any underlying fraud or breach of fiduciary duty—arose from an "*oral* agreement" between Bouvier and Rybolovlev that was entered into "in Geneva sometime in 2002 or 2003," at which time both men were living in Geneva. *Rappo*, [2017] SGCA 27, ¶¶ 77-78, 82 (emphasis added).  Permitting this case to proceed would force

- 24 -

Sotheby's potentially to go to trial without live testimony from the three most critical witnesses in this case—Bouvier, Rybolovlev, and Sazonov.[9]

### 2. *The public interest factors weigh in favor of dismissal.*

The relevant public interest factors to be considered are: "(1) the administrative burden on the congested court being asked to handle a dispute arising from another forum; (2) the burden of jury duty on the 'people of a community which has no relation to the litigation'; (3) the 'local interest in having localized controversies decided at home'; and (4) the burden of applying foreign law." *RIGroup*, 949 F. Supp. 2d at 558 (quoting *Iragorri*, 274 F.3d at 74). Each of these factors also favors dismissal.

This case will place a significant burden on the Court. It is highly likely that the case would need to proceed to trial without live testimony from key witnesses, significantly impairing the trier of fact's ability to assess credibility. As noted, the Second Circuit has held that "the live testimony of key witnesses was necessary where the plaintiffs alleged that the defendants had conspired to defraud them." *Scottish Air*, 81 F.3d at 1233 (citing *Allstate*, 994 F.2d at 1001). Further, even if the Court foregoes live testimony, virtually all depositions and most of the documentary evidence will implicate the Hague Convention procedures, resulting in substantial expense and delay. Ultimately, "this case will place heavy administrative burden on the court and present a difficult task for the jury because the heart of the dispute is essentially foreign." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 21 (2d Cir. 2015).

---

[9] Nor can this issue be cured by depositions. It is unlikely that Bouvier, Rybolovlev, and Sazonov will consent to be deposed, and therefore deposing them "would implicate proceedings under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, a prospect that entails significant amounts of time even in ordinary cases." *Do Rosario Veiga*, 486 F. Supp. 2d at 306. This "would cause not only greater financial hardships, but significant delays in preparing the case for trial before this Court, and ultimately in resolving the merits of the dispute." *Id.*

The burden on the jury pool and the "local interest" factor also strongly favor Switzerland.  The two defendants are U.S. entities, but otherwise, the community and the New York jury pool have "no relation to the litigation."  *RIGroup*, 949 F. Supp. 2d at 558 (quoting *Iragorri*, 274 F.3d at 74).  Instead, as discussed, "the tenor, form and substance of the parties' dealings were intimately tied up with Switzerland and Swiss law," and there are "no substantial connections between those dealings and any other jurisdiction."  *Rappo*, [2017] SGCA 27, ¶ 82.  Finally, the foreign law factor weighs in favor of Switzerland.  Plaintiffs' claims are governed, entirely or at least primarily, by foreign law, most likely Swiss law, given that, among other things, Bouvier's interactions with Rybolovlev and Sazonov occurred there.  *Cf. Rappo*, [2017] SGCA 27, ¶ 88 ("[I]t is likely that that relationship [*i.e.*, between Bouvier and Rybolovlev/Plaintiffs] is governed by Swiss law.").  "This Court is certainly competent to apply foreign law, but a [Swiss] court would indisputably be more familiar with, and competent to apply," Swiss law.  *RIGroup*, 949 F. Supp. 2d at 558.

Switzerland, unlike the United States, thus has a strong public interest in adjudicating this dispute.  Plaintiffs can point to no valid reason why this case should not be resolved in the Swiss Civil Suit, because there is none.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD STAY OR DISMISS THIS CASE IN DEFERENCE TO THE PENDING SWISS CIVIL SUIT

"A court has the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction."  *Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc*., No. 12 CIV. 7249 (PAE), 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013); *see also id.* at *6 (stay); *Credicom N.V. v. Colony Credicom L.P.*, No. 99 CIV. 10486 (MBM), 2000 WL 282968, at *2-4 (S.D.N.Y. Mar. 16, 2000) (dismissal).  In exercising this discretion, courts are to "be guided by the principles upon which international comity is based:  the proper respect for

litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006).

In determining whether "exceptional circumstances" exist that justify dismissing or staying in favor of a parallel foreign proceeding, *id.* at 93, courts consider "the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." *Id.* at 94. However, "[t]his list is not exhaustive, and a district court should examine the 'totality of the circumstances'" to determine whether the facts justify abstention. *Id.* In doing so, in addition to the pleadings, the Court "may consider affidavits, affirmations[,] and exhibits submitted in connection" with a motion to dismiss on abstention grounds. *Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 389 (S.D.N.Y. 2010). Here, the balance of factors weighs in favor of dismissal or, alternatively, staying the litigation pending resolution of the Swiss Civil Suit.

### A.    The Substantial Similarity of the Parties and Issues

A dismissal or stay in deference to the pending Swiss Civil Suit is appropriate because the parties and issues are substantially similar. The only party here that is not in the pending Swiss action is Sotheby's Delaware, *see* Am. Compl. ¶ 7, the ultimate parent company of the UK, U.S., and Austrian Sotheby's subsidiaries who are all parties in Switzerland, *see id.* ¶ 195. But, as noted, Sotheby's Delaware will submit to Swiss jurisdiction if Plaintiffs wish to join them. *See* Asner Decl. ¶ 3. In any event, the absence of the ultimate parent in the Swiss action is immaterial because the "parties . . . need not be identical" for "proceedings to be deemed parallel"; they need only be "substantially the same." *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 434 (S.D.N.Y. 2013); *see also id.* at 434-35 (staying case in deference to prior pending

action in Canada in part because of similarity of parties and issues).  Moreover, both actions

include one or more subsidiaries, which share substantially similar interests with the ultimate

parent.  *See, e.g.*, *id.* at 434 ("Generally, parties in two cases are 'substantially similar' for the

purposes of this analysis when they are affiliates or have a similarly close relationship.");

*Republic of Colombia v. Diageo N. Am. Inc*., 531 F. Supp. 2d 365, 415 (E.D.N.Y. 2007) ("Courts

have found that two parties are 'similar' for purposes of international comity when one party is a

subsidiary of the other or one party has a substantial ownership interest in the other."); *Credicom*

*N.V.*, 2000 WL 282968, at *2 (finding difference "not material" where parent company of

subsidiary named in both actions was named in domestic action but not foreign action).  Further,

the Swiss Civil Suit includes parties who are conspicuously absent from the New York action,

including Rybolovlev and Bouvier.  *See* Notice of Conciliation at 1; *cf. Cont'l Time Corp. v.*

*Swiss Credit Bank,* 543 F. Supp. 408, 410 (S.D.N.Y. 1982) (dismissal in favor of parallel foreign

proceedings where foreign action "has the potential of including all parties necessary for the

resolution of the claims").

  The issues in the New York and Swiss actions are also substantially similar.  The pending

Swiss Civil Suit encompasses every issue alleged in this suit except for the alleged breach of the

Tolling Agreement (which claims should be dismissed in any event, as detailed below).  The

Swiss suit seeks a declaratory judgment that, *inter alia*, the Sotheby's Claimants "have no

liability *of any sort* in [the] dispute" between Bouvier, Rybolovlev, and Plaintiffs regarding

Bouvier's alleged fraud.  Notice of Conciliation at 6 (emphasis added); *see also* Statement of

Claim at 9.  The claims in the Amended Complaint arise from the same underlying dispute, set of

transactions, and "essential controversies" that are "squarely before the [Swiss] court."  *MLC*

*(Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 252 (S.D.N.Y. 1999).

Those include whether Bouvier had an "agency relationship of any sort" with, or owed "any duties as an agent" to, Rybolovlev and Plaintiffs; whether the compensation to be earned by Bouvier was limited in any manner; and whether Bouvier committed any "crime or any other type [of] tortuous act that might make [him] liable to" Rybolovlev and Plaintiffs, Notice of Conciliation at 5, the resolution of which will have significant bearing on, and could be dispositive of, Plaintiffs' claims against Sotheby's in this action, *see Ole Media Mgmt.*, 2013 WL 2531277, at *4 (finding substantial similarity where determination of key issue by foreign court was likely "instructive on the ultimate resolution" of New York action).  That is so because to prevail on their aiding and abetting claims, Plaintiffs must prove the underlying fraud and breach, *see, e.g.*, *Silvercreek Mgmt.*, 2018 WL 4682783, at *4  (fraud); *Dewitt Stern Grp.*, 257 F. Supp. 3d at 587-88 (breach of fiduciary duty).

This action raises only one issue not present in the Swiss action:  Plaintiffs' allegation that Sotheby's breached the Tolling Agreement by filing the Swiss suit.  *See* Am. Compl. ¶¶ 219-35.  As detailed *infra* at Point III, the Tolling Agreement Claims fail to state a claim.  In any event, the presence of a single additional issue in the domestic action does not, by itself, defeat a request to dismiss or stay the action based on the pendency of a related foreign proceeding.  *See, e.g.*, *Ole Media Mgmt.*, 2013 WL 2531277, at *4 (granting stay where domestic suit included issue not present in pending foreign action and noting that stay "[would] not prevent the additional issue from being litigated before this Court" but rather would "permit an underlying dispute to be resolved first . . . which [was] likely . . . to prove either 'instructive on the ultimate resolution' of this action [] or largely dispositive" (citation omitted)); *Cont'l Time Corp.*, 543 F. Supp. at 410-11 (dismissing in deference to pending Swiss action, even though case raised issues not present in foreign action, and rejecting contention that only domestic action could "fully

resolve the relevant issues").  The issues at the core of the Swiss Civil Suit and the instant suit
are identical, and that overlap warrants dismissing or staying this case.

>    **B.**    **The Temporal Sequence of the Parallel Actions**

The order in which the Swiss and New York actions were filed weighs in favor of a
dismissal or stay.  *See Thornton Tomasetti, Inc. v. Anguillan Dev. Corp.*, No. 14-CV-7040 JPO,
2015 WL 7078656, at *4 (S.D.N.Y. Nov. 13, 2015).  The Swiss action was filed nearly a year
before Plaintiffs filed this case.  The Swiss proceedings have progressed in the normal course
consistent with Swiss practice and procedure.  *See* Lembo Decl. ¶ 12; ECF Nos. 121, 128.

By Plaintiffs' own admission, "the dispute between Petitioners and Sotheby's is active
and public, and foreign proceedings concerning the merits of that dispute are happening now."
ECF No. 121, at 2; *see also id.* (identifying "two foreign proceedings"—"the imminent suit in
the U.K." and "the conciliation proceedings filed in Switzerland").  Plaintiffs in fact sought and
received permission from this Court to use Sotheby's documents in the Swiss Civil Suit.  ECF
Nos. 121, 128.  But Plaintiffs nevertheless filed the instant action, knowing full well that "most
of the allegations that [they] subsequently raised in [their] suit here would be addressed in the
previously-filed [Swiss] action."  *MLC (Bermuda) Ltd.*, 46 F. Supp. 2d at 254.  Because the
Swiss proceedings are underway and provide the most appropriate forum to litigate the instant
dispute, the order-of-filing factor strongly supports dismissal or a stay of this action.

>    **C.**    **The Adequacy of the Swiss Forum**

Dismissal or a stay of this action is appropriate because Switzerland is an adequate forum
for litigating Plaintiffs' claims.  *See* discussion *supra* Point I.B.  Plaintiffs cannot dispute that
Swiss courts offer an adequate alternative forum.  *See Cont'l Time Corp.*, 543 F. Supp. at 410
(dismissing in deference to pending Swiss action raising similar claims and issues); *LaSala*, 510
F. Supp. 2d at 222 (finding Switzerland is adequate alternative forum for tort dispute, even

though forum did not have identical causes of action).  Indeed, Plaintiffs availed themselves of

Switzerland's legal system by initiating criminal proceedings there against Bouvier in connection

with the same underlying events.  *See* Am. Comp. ¶ 23.  Plaintiffs, moreover, have alleged in

those criminal proceedings the "[p]ossible collaboration by Sotheby's."  Swiss Criminal

Complaint at 22.  Given Plaintiffs' successful request to use Sotheby's documents in

Switzerland, and their representation that the Swiss Civil Suit presented "a parallel occasion for

Petitioners to use [Sotheby's] documents," ECF No. 121 at 7, Plaintiffs should not be heard to

argue that the same forum is inadequate.  The adequacy of the alternative forum favors a

dismissal or stay of this action.

### D.    Considerations of Potential Prejudice and Inconvenience to the Parties

Considerations of prejudice and convenience also strongly support dismissal or stay of

this action.  For the reasons discussed above, most significantly the location of witnesses and

evidence, Switzerland is a far more convenient forum to litigate this dispute.  *See supra* Point

I.A.; *see also, e.g.*, *MLC (Bermuda) Ltd.*, 46 F. Supp. 2d at 253-54 (London most convenient

forum where "a preponderance of the key documents and witnesses [were] located in London,"

even though "important events at the heart of" plaintiff's claims "took place in New York").

Sotheby's also will be prejudiced in litigating the same issues concerning the same underlying

events in two different fora on two different continents, subjecting it to duplicative costs and the

risk of inconsistent decisions.  *See Cont'l Time Corp.*, 543 F. Supp. at 410 (dismissing in

deference to pending Swiss proceeding where, *inter alia*, defendant "would be faced with having

to defend its actions in two fora with the attendant risk of inconsistent decisions").

In contrast, Plaintiffs cannot argue that they would be prejudiced by litigating in

Switzerland, given that they waited nearly a year after the Swiss action had begun to commence

this action.  Further, Plaintiffs are offshore entities incorporated in the British Virgin Islands with

no alleged (or actual) connection to the United States. *See* Am. Comp. ¶¶ 5-6. "While there is ordinarily a 'strong presumption in favor of the plaintiff's choice of forum,' a foreign plaintiff's choice of forum 'deserves less deference,' particularly where [as here] the forum has little connection to the events underlying the dispute." *Televisa, S.A. de C.V. v. Koch Lorber Films*, 382 F. Supp. 2d 631, 634-35 (S.D.N.Y. 2005) (citation omitted).

>    **E.      This Litigation's Close Connection with Switzerland**

Finally, this action should be dismissed or stayed because this dispute has a far greater connection to Switzerland, and Europe generally, than the United States. *See Thornton Tomasetti*, 2015 WL 7078656, at *5 (finding litigation's "significant connection to [the foreign forum], and only a tenuous connection to the United States," supported deferring to pending foreign proceeding). Plaintiffs' own allegations support this conclusion. Many of the pertinent agreements between Sotheby's and Bouvier were negotiated and performed in Switzerland and involved shipments of art to Geneva. *See* Am. Comp. ¶¶ 50, 57, 81, 116, 131, 139, 141-42. And many of the same and other transactions are alleged to have had a connection to other EU countries, including the UK, France, and Austria, rather than the United States. *See id.* ¶¶ 74, 80, 87, 100, 117, 123-25, 163, 171.

Further, in the criminal complaint in Switzerland, Plaintiffs went to great lengths to argue that jurisdiction in Switzerland was proper for their claims against Bouvier and others in connection with Bouvier's role in acquiring 38 works of art for Plaintiffs. *See* Swiss Criminal Complaint at 22. Plaintiffs alleged that "[t]his commercial fraud took place in" Switzerland, that several meetings between Bouvier and Rybolovlev occurred in Switzerland, and that "each [underlying instance] of commercial fraud committed by the investigated persons includes at least one link with [S]witzerland, because the sale prices for the art works purchased by the claimants all passed through Swiss bank accounts." *See id.* at 20-21, 24-26.

Those facts are in line with the finding by the Singapore Court of Appeal that the alleged fiduciary relationship between Bouvier and Rybolovlev was formed (if at all) in Switzerland and would likely be governed by Swiss law. *Rappo*, [2017] SGCA 27, ¶¶ 78-82, 88. As the Singapore Court explained, "the tenor, form and substance of [Bouvier and Rybolovlev's] dealings were intimately tied up with Switzerland and Swiss law. Indeed, we see no substantial connections between those dealings and *any other jurisdiction*, be it Singapore or otherwise." *Id.* ¶ 82 (emphasis added); *cf. Tarazi*, 958 F. Supp. 2d at 436 (noting that where an agreement "that lies at the foundation of [the parallel actions] has a close connection with the foreign forum," in part because it was "negotiated and [partly] executed. . . in [the foreign jurisdiction]," it is "appropriate to defer to that forum").

In sharp contrast, the present litigation's connection to the United States is tenuous at best. Plaintiffs point to just three connections between their purchases from Bouvier and the United States. *See* Am. Compl. ¶¶ 56, 64 (asserting that two sales contracts with Bouvier were signed by "Sotheby's New York [*i.e.*, Sotheby's, Inc.]" and that those two artworks were in New York); *id.* ¶ 168 (describing viewing of *Christ as Salvator Mundi* in New York). Those slim connections are heavily outweighed by the overwhelming reality that the conduct at the center of this dispute took place almost exclusively in Switzerland. Because the parallel actions have a strong connection to the Swiss forum and only a weak connection to the United States, this factor strongly supports abstention in favor of the Swiss proceedings.

## III.   THE TOLLING AGREEMENT CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Tolling Agreement Claims (Claims Three, Four and Five) should be dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion "presents a pure legal question, based on allegations contained within the four corners of the complaint."

*Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010).  To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level," requiring a plaintiff to allege "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

To survive a motion to dismiss for breach of contract, a plaintiff must plead:  "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach."  *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004).  Here, Plaintiffs allege that Sotheby's breached the parties' Tolling Agreement by filing the declaratory judgment action against Plaintiffs in Switzerland without first providing notice of suit.  Am. Compl. ¶¶ 224-26.  Plaintiffs' claims should be dismissed because they have not pled a breach of the Tolling Agreement, damages resulting therefrom, or their entitlement to monetary or injunctive relief.  Moreover, their inexcusable delay in pursuing their purported contract claim provides a further justification for dismissing the Tolling Agreement Claims under the doctrine of laches.

### A. The Tolling Agreement Terminated Prior to Sotheby's Filing in Switzerland

#### 1. *Tolling Agreement Provisions*

As alleged in the Amended Complaint, "[i]n December 2016, Plaintiffs and Sotheby's (including its New York, English, Swiss and Austrian subsidiaries) entered into a one-year

written Tolling Agreement."  Am. Compl. ¶ 220.[10]  Paragraph 4 of that agreement, which

Plaintiffs tellingly omit to mention, provides as follows:

> *This Agreement shall terminate* (a) 14 days after any Party serves a "Notice of
> Suit" on any other Party; (b) 14 days after any Party serves written notice of
> termination on the other Parties, as provided in paragraph 8 below; or (c) one year
> after the Effective Date, whichever is earliest (the "Termination Date").

Tolling Agreement ¶ 4 (emphasis added).

Paragraph 3 of the Tolling Agreement, the section upon which Plaintiffs rely, states:

"Each Party shall provide at least 14 days' written notice ('Notice of Suit'), as provided in

Paragraph 8, prior to filing or commencing any litigation or other legal proceeding against any

other Party [arising out of the involvement between Sotheby's and Bouvier]."  *Id.* ¶ 3.

Finally, Paragraph 8 states:  "All notices required hereunder shall be in writing and shall

be deemed duly given one (1) business day after being sent to the recipient at the address given

below by a reputable overnight courier service (charges prepaid) as follows:  If to the Collectors:

c/o Daniel J. Kornstein, Esq., Emery Celli Brinckerhoff & Abady LLP, 600 Fifth Avenue, 10th

Floor, New York, NY 10020.  If to Sotheby's:  c/o Marcus A. Asner, Esq., Arnold & Porter LLP,

399 Park Avenue, New York, NY 10022."  *Id.* ¶ 8.

## 2.    *Plaintiffs' October 2017 Notice of Suit*

On October 27, 2017, Plaintiffs filed a letter with the Court in their first § 1782

proceeding.  That letter, served on Sotheby's, Inc. via ECF, stated as follows:

---

[10] The Court may consider the Tolling Agreement because it is integral to and is incorporated by
reference in the Amended Complaint.  *See N.Y. Life Ins. Co. v. U.S.*, 724 F.3d 256, 258 n.1 (2d
Cir. 2013) ("[On a Rule 12(b)(6) motion], the court may consider any written instrument . . .
incorporated in the complaint by reference, as well as documents upon which the complaint
relies and which are integral to the complaint."); *Brown Rudnick, LLP v. Surgical Orthomedics,
Inc.*, No. 13-CV-4348 JMF, 2014 WL 3439620, at *9 (S.D.N.Y. July 15, 2014) (on motion to
dismiss, engagement letter incorporated by reference into complaint as it established choice of
law rules); Am. Compl. ¶¶ 219-35 (describing and basing claims on Tolling Agreement).

> Petitioners write pursuant to paragraph 5.2 of the Protective Order
> (ECF No. 84) to request permission to use documents previously
> obtained in this 28 U.S.C. § 1782 action *in new foreign*
> *proceedings soon to be commenced in the United Kingdom* against
> Sotheby's UK, one of its employees, and Yves Bouvier.

October 27, 2017 Letter (emphasis added).  The alleged basis for the "soon to be commenced"

suit was that "Sotheby's UK and its agents aided and abetted Bouvier's fraud on Petitioners."

*Id*.[11]

Fourteen days after Plaintiffs' October 27, 2017 notice fell on November 10, 2017.  The

Sotheby's Claimants filed their declaratory action in Switzerland on November 17, 2017.

Lembo Decl. ¶ 5.

### 3.    *Plaintiffs' October 2017 Notice of Suit Terminated the Tolling Agreement*

Plaintiffs triggered the termination provision of Paragraph 4(a) on October 27, 2017,

when they filed their letter notifying the Court and the parties that "Sotheby's UK and its agents

aided and abetted Bouvier's fraud on Petitioners" and therefore "new foreign proceedings"

would "soon . . . be commenced in the United Kingdom against Sotheby's UK, one of its

employees, and Yves Bouvier."  October 27, 2017 Letter.  "Notice of Suit" is defined in the first

clause of Paragraph 3 as "written notice."  Under the plain terms of Paragraph 4(a), the October

27, 2017 letter constituted Notice of Suit.  *See Zamora-Leon v. United of Omaha Life Ins. Co.*,

No. 15-CV-9206 (JMF), 2017 WL 4155403, at *3 (S.D.N.Y. Sept. 18, 2017) ("[Under] the

normal rules of contract interpretation[,] words and phrases should be given their plain meaning

---

[11] The Court may take judicial notice of and consider the October 27, 2017 Letter.  *See Gertskis v. E.E.O.C.*, No. 11 CIV. 5830 JMF, 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013) (explaining that, on a Rule 12(b)(6) motion, the court can "consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits"), *aff'd*, 594 F. App'x 719 (2d Cir. 2014); *see also, e.g., Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157 (1969) ("[W]e may properly take judicial notice of the record in [a prior] litigation between the same parties who are now before us.").

and a contract should be construed so as to give full meaning and effect to all of its provisions."
(quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir.
2016)).  Accordingly, the Tolling Agreement terminated on November 10, 2017 (14 days later),
which was 7 days before the Swiss Civil Suit was filed on November 17, 2017.  Plaintiffs cannot
state a claim for breach of the Tolling Agreement because, by the time the Swiss Civil Suit was
filed, the Tolling Agreement as a matter of law was no longer in effect.

   Plaintiffs appear to suggest that Notice of Suit was not formally provided because they
did not send their notice to Sotheby's counsel by "overnight courier service," a form of service
that would have been "deemed" adequate pursuant to Paragraph 8 of the Tolling Agreement.
That argument fails.  Sotheby's counsel received actual delivery of the Notice of Suit via ECF
and the delivery was therefore effective.  Paragraph 8 contains two basic provisions:  First, it
requires that "[a]ll notices required hereunder shall be in writing."  Plaintiffs' October 27, 2017
letter meets that requirement.  The second provision of Paragraph 8 provides the parties both
with a method for service that the parties agreed would be *deemed* adequate and with a way of
calculating *when* that notice would be deemed to have been effected:  it states that notice "shall
be deemed duly given one (1) business day after being sent to the recipient at the address given
below by a reputable overnight courier service (charges prepaid)" to the addressees listed.  While
a Notice of Suit *must* be in writing, there is *no* requirement in Paragraph 8 that service *must* be
by overnight courier service.  So, while serving Sotheby's counsel by overnight courier would
have been adequate service of the Notice of Suit, nothing in Paragraph 8 *requires* that the Notice
of Suit triggering Paragraph 4(a) *only* could be given by overnight courier service.

   Moreover, to the extent Plaintiffs assert some technical failure in the manner in which
they provided written Notice of Suit, that argument fails.  The law in New York is clear that

"[s]trict compliance with contract notice provisions is not required . . . when the contracting party receives actual notice and suffers no detriment or prejudice by the deviation."  *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 CIV. 1615 CM, 2012 WL 1107648, at *10 (S.D.N.Y. Mar. 30, 2012); *accord Suarez v. Ingalls*, 723 N.Y.S.2d 380, 381 (App. Div. 2001) ("Strict compliance with the contract notice provisions was not required because the plaintiff does not claim that she did not receive actual notice, or was prejudiced by the deviation."); *Ives v. Mars Metal Corp.*, 196 N.Y.S.2d 247, 249 (Sup. Ct. 1960) (holding that, where there is actual notice of termination, "the form is of little import," even where the form violates the contract, as "it would be hypertechnical in the extreme to hold otherwise").

### B.     Plaintiffs Fail to Allege Facts Showing That They Are Entitled to Damages or An Injunction

Plaintiffs also fail to allege facts sufficient to establish that any alleged breach caused Plaintiffs to incur damages.  Damages "cannot be allowed" if they are "so remote as not to be directly traceable to the breach."  *Nat'l Mkt. Share, Inc.*, 392 F.3d at 526 (quoting *Wakeman v. Wheeler & Wilson Mfg. Co.*, 4 N.E. 264, 266 (N.Y. 1886)).

Plaintiffs cannot allege damages flowing from Sotheby's alleged failure to provide 14 days' Notice of Suit pursuant to Paragraph 3 of the Tolling Agreement.  As acknowledged in the Amended Complaint, the Sotheby's Claimants filed the Swiss Civil Suit along with co-claimants Bouvier and various Bouvier entities.  Plaintiffs have not, and could not have, pled that Bouvier and the Bouvier entities would not have filed the suit without the Sotheby's Claimants, and therefore cannot establish that the harm allegedly incurred in defending against the Swiss Civil Suit would not have arisen regardless of whether Notice of Suit was required or given. Moreover, if Sotheby's had provided 14 days' Notice of Suit under Paragraph 3 of the Tolling Agreement (as Plaintiffs suggest it should have), that simply would mean that the parties still

- 38 -

would have been engaged in litigation 14 days later, either in Switzerland or in London.  Either way, Plaintiffs still would have incurred the expense of litigating this dispute.

Nor have Plaintiffs pled facts sufficient to support their claim for the extraordinary relief of enjoining the Swiss Civil Suit.  *See* Am. Compl. ¶¶ 145-46, 235.  "[P]rinciples of comity counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'"  *Paramedics Electromedicina Comercial*, *Ltda. v. GE Med. Sys. Info. Techs., Inc*., 369 F.3d 645, 652 (2d Cir. 2004) (quoting *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987)).  This is because "such an injunction in terms is leveled against the party bringing the suit, it nonetheless 'effectively restricts the jurisdiction of the court of a foreign sovereign.'"  *Id.* at 655 (quoting *China Trade*, 837 F.2d at 35).  Plaintiffs can offer no support for the issuance of such restraint based on an alleged breach of a Tolling Agreement.  They have not pled facts sufficient to show that an adequate remedy at law does not exist; indeed, Plaintiffs' position is belied by their claim to have suffered monetary damages in the form of the expenditure of funds to hire counsel to defend themselves in the Swiss Civil Suit.

### C.   Plaintiffs' Tolling Agreement Claims Should be Dismissed Under the Doctrine of Laches

Finally, the Tolling Agreement Claims also should be barred under the doctrine of laches. Laches bars a claim in a case, such as this, where:  (1) the plaintiff was aware of the claim; (2) the plaintiff inexcusably delayed in taking action; and (3) the delay prejudiced the defendant. *Ikelionwu v. U.S.*, 150 F.3d 233, 237 (2d Cir. 1998).  All of these elements are clear on the face of the Amended Complaint.  First, Plaintiffs became immediately aware of the Sotheby's Claimants' Swiss filing on November 17, 2017, as reflected in their request (11 days later) to use Sotheby's documents in that very proceeding.  *See* ECF No. 121 at 1.  Second, Plaintiffs took no steps to remedy Sotheby's alleged breach of the Tolling Agreement until the filing of the instant

suit, almost a year later.  Finally, "[i]t is self-evident that the passing of time will almost

inevitably be prejudicial to any defendant." *LaGares v. Good Commander Shipping Co.*, 487 F.

Supp. 1243, 1245 (S.D.N.Y. 1980).  Here, where the Sotheby's entities have been expending

time and resources pursuing their claims in the Swiss courts for more than a year, *see* Lembo

Decl. ¶¶ 10-16, and Plaintiffs have inexcusably delayed in raising any argument as to a purported

breach of the Tolling Agreement, dismissal of the Tolling Agreement Claims is warranted.  *90-*

*92 Wadsworth Ave. Tenants Ass'n v. City of New York Dep't of Hous. Pres. & Dev.*, 656

N.Y.S.2d 8, 10 (1st Dep't 1996) (action challenging approval of loan barred by laches where

tenants "knew or should have known the loan closed" almost a year and a half before filing suit).

## <u>CONCLUSION</u>

For the foregoing reasons, Sotheby's respectfully requests that the Court (1) dismiss the

Complaint on the grounds of *forum non conveniens*, (2) in the alternative, dismiss the Complaint

or stay the litigation in favor of the pending Swiss civil proceeding, and (3) dismiss the Tolling

Agreement Claims for failure to state claims upon which relief can be granted.

Dated:    New York, New York
          January 18, 2019

ARNOLD & PORTER KAYE SCHOLER LLP


By:    */s/ Marcus A. Asner*
       _____
       Marcus A. Asner
       Sara L. Shudofsky
       250 W. 55th Street
       New York, NY 10019-9710
       Tel: 212.836.8000
       Fax: 212.836.8689
       marcus.asner@arnoldporter.com
       sara.shudofsky@arnoldporter.com

       *Attorneys for Defendants Sotheby's and*
       *Sotheby's, Inc.*