UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ACCENT DELIGHT INTERNATIONAL LTD.
and XITRANS FINANCE LTD.,

                    Plaintiffs,

        -against-

SOTHEBY'S and SOTHEBY'S, INC.,

                    Defendants.

**18 Civ. 9011 (JMF)**

---

## DECLARATION OF SANDRINE GIROUD

Sandrine Giroud, under penalty of perjury, pursuant to 28 U.S.C. § 1746, declares that the following is true and correct:

1.      I am an attorney licensed to practice law in Geneva, Switzerland. I am a partner in the law firm Lalive, in Geneva, Switzerland.

2.      My firm represents the plaintiffs Accent Delight International Ltd. and Xitrans Finance Ltd. (together, the "New York Plaintiffs") and other entities and persons related to Dimitry Rybolovlev (together, the "Swiss Defendants") in the civil action currently pending before the Tribunal of First Instance in Geneva, Switzerland, referred to by Swiss counsel to Sotheby's as the "Swiss Civil Suit" (*see* Lembo Decl., ECF No. 41, ¶ 3) which was initiated by Yves Bouvier, Mei Invest Limited, Arrow Fine Art LLC, Kinsride Finance Ltd, The Eagle Overseas Co Ltd, Art Family Pte Ltd, Blancaflor Investments Ltd, Sotheby's SA, Sotheby's, Kunstauktionen Gesellschaft m.b.H, Sotheby's, Sotheby's Inc., and Samuel Valette (the "Swiss Claimants") which include Yves Bouvier and several related individuals and entities ("Bouvier et al.").

1

3.      I make this declaration in opposition to Sotheby's and Sotheby's Inc. (together, "Sotheby's" or the "New York Defendants") motion to dismiss.

*Summary*

4.      I believe that Sotheby's Swiss case is the result of forum-shopping and should be dismissed by the Swiss court on grounds of "inadmissibility" for at least three reasons: (i) Sotheby's and the related claimants in the Swiss proceedings have yet to pay the necessary security for party costs in favour of the Swiss Defendants, including the New York Plaintiffs, which are substantial, (ii) it suffers from "lack of legal interest" and represents an "abuse of right," and (iii) it is unlikely that the Swiss court will accept jurisdiction over the matter.

5.      None of the Swiss Defendants and none of the key witnesses reside in Switzerland, the Swiss courts have no ability to compel the testimony of non-residents, few (if any) of the documents are in Switzerland, and the Geneva courts would have to proceed through mutual legal assistance to take evidence abroad (as foreseen by applicable bilateral or multilateral agreements such as the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, or through diplomatic channels in the absence of any bi- or multi-lateral agreements) which will greatly complicate and delay the proceedings. Moreover, an adverse party is under no obligation to be forthcoming if requested to testify or provide documents, even if they are identified with specificity; as a result of non-compliance or lack of cooperation, the Swiss courts would only take the refusal into account when assessing the weight of the evidence submitted. In addition, the majority of the conduct occurred in New York and in countries such as the United Kingdom, Monaco, and France—not Switzerland. In my view, Sotheby's Swiss Civil Suit is a tactical forum-shopping attempt to force this dispute into Switzerland, despite the lack of nexus to Switzerland.

6.      I believe that Sotheby's has engaged in delay tactics and that considering the specificities of the matter and the Geneva legal system, such a complex case will likely take years to be processed in Geneva.

***Sotheby's Swiss Case Is Likely to Be Dismissed on Grounds of Inadmissibility***

7.      Seven months after the filing of Sotheby's statement of claim in the Swiss proceedings, the Swiss Defendants have not yet been served with Sotheby's Swiss statement of claim. This is unusual by Swiss civil procedural law standards. The first time we saw the statement of claim was when it was filed with this Court, in support of Sotheby's motion to dismiss. *See* Lembo Decl., ECF No. 41, Ex. H.

8.      Once the Swiss Defendants are served with the statement of claim, they will move to dismiss Sotheby's Swiss Civil Suit because we believe it is inadmissible and lacks merit under Swiss law.

9.      Under Swiss procedural law, a Swiss court shall only consider the merits of an action or an application provided that the preliminary procedural requirements are satisfied (Article 59 Swiss of the Code of Civil Procedure, "SCCP"). Procedural requirements include in particular, but not exhaustively: (A) that the plaintiff or applicant has paid the advance on court costs and security for party costs, (B) the plaintiff or applicant has a legitimate interest, and (C) the court has subject matter and territorial jurisdiction. It is my opinion that the New York Defendants will not meet these requirements and the Swiss Civil Suit should thus be declared inadmissible.

A.  Sotheby's Must Provide an Advance on Court Costs and Pay Substantial Security for Party Costs to be Allowed to Proceed

10.     Among the procedural requirements for admissibility of an action set out in Article 59 Swiss Code of Civil Procedure are the payment of (i) an advance on court costs and (ii) security for party costs.

11.     On 23 July 2018, the Geneva court issued a decision requesting the Sotheby's entities to pay CHF 240,000 as an advance on court costs (*see* Lembo Decl. Ex. I). Sotheby's contested this decision (*see* Lembo Decl. Ex. J). Sotheby's only paid this advance on court costs on 6 December 2018 after it was ordered to do so on appeal (*see* Lembo Decl. ¶ 20). In so doing, Sotheby's not only delayed the ordinary course of the proceedings, but also demonstrated its reluctance to pay procedural costs.

12.     That is particularly relevant because it suggests Sotheby's may be similarly reluctant to pay security for party costs. Under Swiss civil procedural law, such security is required for a non-resident corporation claimant, absent an exception to the contrary, and is far more substantial in amount than court costs. Pursuant to Article 99 SCCP: "[a]*t the request of the defendant, the plaintiff must provide security for party costs: a. if he or she has no residence or registered office in Switzerland (...).*" Security for party costs is automatically granted when the claimant is incorporated in a non-exempted State and the Swiss court has no discretion to deny security for costs when the conditions are met. *See* Legal literature CR CPC, Article99 N 52. The Swiss court has however some discretion to set the amount of security for costs within the limits provided by applicable law.

13.     The quantum of party costs is generally determined according to cantonal tariffs based on the value in dispute. In Geneva, security for party costs for claims above CHF 10,000,000 is approximately CHF 100,000, plus 0.5% of the amount in excess of

CHF 10,000,000, increased by 10% in complex cases (Article 85 of the Geneva Tariff on

Judicial Cost). The overall amount must be further increased by 3% to cover sundry expenses

(Article 25 of the Geneva law implementing the Swiss Civil Code and other federal laws in civil

matters). As a result, for an amount in dispute of approximately USD 380 million, security for

party costs would be of approximately CHF 2.2 million, to be paid by each Claimant

incorporated in a non-exempted State to each Swiss Defendant (Ex. K ¶ 2.2).

14.     This means that each of the three Sotheby's claimants in the Swiss civil

proceedings who are not Swiss residents and incorporated in a State not bound to Switzerland by

a treaty providing for an exemption (*i.e.* Sotheby's Inc., Sotheby's UK and Samuel Valette) will

be ordered to pay security for costs up to CHF 2.2 million, for a total of up to approximately

CHF 6.6 million. If Sotheby's Inc., Sotheby's UK and Samuel Valette fail to pay this security,

the Swiss Civil Suit will be dismissed against them (Article 101(3) SCCP). Although Swiss

courts have some discretion to adjust the amount of security for costs to be ordered, as already

mentioned, Swiss Courts have no discretion to deny security for costs when the conditions are

met.

15.     Sotheby's has not made any commitment to pay these substantial costs and its

prior reluctance to pay the lower advance on court costs strongly suggests it will likely contest

the Swiss Defendants' request for security for costs and, given the substantial amount, may not

be willing to pay it. The decision on security for costs can be appealed within 10 days of receipt.

Sotheby's can request a stay of the proceedings pending a decision on appeal, thus delaying in

turn the whole process pending a decision on appeal which can take several months.

B.   Sotheby's Lacks a Legitimate Interest

16.     Sotheby's Swiss case contains only one claim: a claim for negative declaratory

relief. Pursuant to Article 88 SCCP "[b]*y filing an action for declaratory judgment, the plaintiff*

*demands that the court establish that a right or legal relationship exists or does not exist.*"

17.     Under Article 59 SCCP, a claimant or applicant to any kind of civil action,

including an action for declaratory judgment, must have a "sufficient legitimate interest"

("*schutzwürdiges Interesse*" / "*simple intérêt digne de protection*").

18.     It is also of note that under Swiss civil procedural law, actions for declaratory

judgment are strictly subsidiary to other forms of actions such as action for performance (Article

84 SCCP) or action to modify a legal relationship (Article 87 SCCP). *See* Case law ATF 135 III

378, para. 2.2. Accordingly, they must meet a higher standard to be admissible. In fact, a

claimant in an action for declaratory judgment must not only have a "sufficient legitimate

interest" ("*schutzwürdiges Interesse*" / "*simple intérêt digne de protection*") as provided by

Article 59 SCCP, but also an "important legitimate interest" ("*erhebliches schutzwürdiges*

*Interesse*" / "*intérêt important et digne de protection*"). *See* Case law ATF 141 III 68, para. 2.2

and 2.3.

19.     Until recently, filing negative declaratory relief proceedings in Switzerland was

insufficient on its own for the claimant-debtor to establish an "important legitimate interest" in

the sense of Article 88 SCCP, especially if the defendant-creditor was expected to commence

proceedings in the near future. *See* Legal literature, CR CPC article 88 N 4, 6 ,13, 34; case law

ATF 136 III 523, para. 6.4 and 6.5. On 14 March 2018—*after* Sotheby's initiated the Swiss Civil

Suit with its notice of conciliation in November 2017—the Swiss Federal Supreme Court ruled

in a case called the "*Swatch* case" that negative declaratory relief proceedings were sometimes

appropriate in a cross-border context to secure a forum in Switzerland, but only when such an action was not an abuse of right. *See* Legal literature, CR- CPC 88 N 34; case law ATF 144 III 175, para. 5.4.

20.     Considering the facts of the *Swatch* case and the Swiss Federal Supreme Court's observations on the abuse of right, I believe that Sotheby's Swiss Civil Suit will be deemed an abuse of right. Indeed, the *Swatch* case can be distinguished from the Swiss Civil Suit on several critical aspects: (i) in the *Swatch* case, the claimants filed their action directly on the merits (*i.e.* without prior conciliation), whereas in the Swiss Civil Suit the Swiss Claimants elected to apply for non-mandatory conciliation against the plaintiffs, which is a typical torpedo tactic; (ii) the *Swatch* case was judged in the Canton of Bern where a specialized commercial court rules on such matters as sole cantonal instance, whereas there is no such commercial court in Geneva which is the cantonal jurisdiction seized of the Swiss Civil Suit (see also ¶ 48), (iii) in the *Swatch* case, the claim was filed in Switzerland, country of the seat of two out of the three claimants, i.e. at their natural forum, whereas in the Swiss Civil Suit only Sotheby's SA is incorporated in Switzerland (in Zurich, not even in Geneva where it only has a branch) out of the five Sotheby's entities which are Swiss Claimants, and (iv) whereas in the *Swatch* case, there was no prior dispute pending between the parties before the commencement of proceedings in Switzerland, here there was a pending section 1782 disclosure proceeding between the New York Plaintiffs and the New York Defendants before the filing of the Swiss Civil Suit. Against this background, I believe that by initiating the Swiss Civil Suit, the New York Defendants moved to prevent the New York Plaintiffs from litigating in the United States or the United Kingdom and to force them to litigate in Switzerland without the benefit of additional discovery to prove their claims. Indeed, as explained by Sotheby's counsel in his declaration (*see* Lembo Decl. ¶ 14), Swiss civil

claims, unlike civil complaints in the United States, must at the very beginning of the case set

forth in detail the factual basis for a party's claim and present for each factual allegation, the

witness(es) and/or document(s) that support the allegation (Article 221(1)(e) SCCP). Knowing

this, the New York Defendants rushed to Switzerland to initiate legal proceedings and to force

the New York Plaintiffs to litigate in Switzerland, where all facts and evidence must be filed at

the outset of the proceedings, while simultaneously refusing to produce additional documents

sought by the New York Plaintiffs in the 1782 proceedings. All this appears to be a bad faith

attempt to secure a forum Sotheby's seems to deem more favorable.

21.     In light of the above, it is my opinion that Sotheby's Swiss Civil Suit should

characterized as an abuse of right and thus lacks the necessary legal interest with the

consequence that the Swiss court should declare their action for declaratory judgment

inadmissible.

### C.  The Jurisdiction of the Geneva Courts Over Sotheby's Claims is Highly Uncertain

22.     Based on the Lembo Declaration and the New York Defendants' statement of

claim in the Swiss Civil Suit, we note that Sotheby's is trying to assert the jurisdiction of the

Geneva courts based on a fabricated forum (i) arising from the Swiss domicile of Elena

Rybolovleva, the ex-wife of Dmitry Rybolovlev, (ii) by asserting it can benefit from Bouvier's

alleged ties to Switzerland and (iii) by arguing that Switzerland is the best forum for the New

York Plaintiffs' claims against Sotheby's. For the reasons set out below, it is my opinion that all

of these arguments should fail under Swiss law.

23.     As a preliminary note, contrary to Sotheby's misleading assertion (*see* Lembo

Decl. ¶ 27), Swiss courts must examine admissibility requirements *ex officio*, including

jurisdiction (Article 60 SCCP). The fact that the conciliation authority admitted the conciliation

request does not mean that Swiss courts will find they have jurisdiction. Since the goal of conciliation proceedings is to allow the parties to find an agreement to avoid further litigating their dispute, potential admissibility objections must not easily jeopardize this process and, as a consequence, are very rarely admitted at the conciliation stage.

> i.  Sotheby's Cannot Establish Swiss Jurisdiction Based on the Domicile of Only One Defendant

24.     Only one Swiss Defendant is a resident of Switzerland, namely, Elena Rybolovleva, the ex-wife of Dmitry Rybolovlev (Lembo Decl. Ex. H at 2).

25.     Ms. Rybolovleva has already stated on the record at the conciliation hearing that she has no claim against Sotheby's or any of the other claimants in the Swiss Civil Suit (*see* Lembo Decl. Ex. D at 8). Ms. Rybolovleva will therefore most likely cease to be a party to the Swiss Civil Suit at an early stage of the proceedings. As a side note, the Swiss proceedings may be limited at first only to the resolution of this issue, which may delay the proceedings with regard to the other Swiss Defendants, including the New York Plaintiffs.

26.     Under Swiss law, Swiss courts must rely on an independent statutory ground for jurisdiction over each claim against each defendant (Article 8*a*(1) of the Swiss Private International Law Act, "PILA"). As a result, the Geneva court cannot assert jurisdiction over the other Swiss Defendants simply based on extension of its jurisdiction against Ms. Rybolovleva. A separate ground for jurisdiction must instead exist over each claim against each of the Swiss Defendants, which I however believe is not the case here.

27.     As a result, regardless of whether the Geneva court ultimately asserts jurisdiction against Ms. Rybolovleva, that is not enough to give the Geneva court jurisdiction over Sotheby's claims against any of the other Swiss Defendants, including the New York Plaintiffs.

ii.     Sotheby's Cannot Assert Jurisdiction Based on Bouvier's Acts

28.     A review of Sotheby's statement of claim reveals that Sotheby's relies almost entirely on its co-plaintiff Bouvier's conduct in Switzerland to assert that a basis exists for Geneva jurisdiction over Sotheby's dispute with the New York Plaintiffs (*see Lembo* Decl. Ex. H at p.123 and 124 of the English versions).

29.     However, even if Geneva courts may have jurisdiction over the New York Plaintiffs' dispute with Bouvier, an independent basis has to exist for the Geneva courts to have jurisdiction over the dispute with Sotheby's and its related entities and individuals. For example, whether the New York Plaintiffs and *Bouvier* negotiated contracts in Switzerland (Lembo Decl. ¶ 26) is irrelevant and insufficient to give the Swiss courts jurisdiction over *Sotheby's* and related entities and individuals.

30.     Similarly, the fact that New York Plaintiffs' payments to *Bouvier* "passed through Swiss bank accounts" (Lembo Decl. ¶ 26) does not suffice to confer jurisdiction over *Sotheby*'s claims. As a general matter, some payments passing through Swiss bank accounts or some artworks passing through the Geneva freeport—common features of many transactions in the world today—are not enough on their own to confer jurisdiction in Switzerland.

31.     The mere fact that Sotheby's chose to file the Swiss claim jointly as co-plaintiffs with Bouvier et al. does not allow Sotheby's to claim jurisdiction based solely on Bouvier et al.'s acts. In other words, Sotheby's cannot piggyback on Bouvier et al.'s alleged Swiss jurisdiction.

32.     Lembo does not pretend otherwise in his declaration, where he never alleges that Swiss courts could assert jurisdiction against several tortfeasors as soon as one of them has acted on Swiss territory. Rather, Lembo refers to the situation where "*several actions have all contributed to the damage*" and goes on to explain that, in this case, "*the* [Swiss] *court of the*

*place of one of these actions has jurisdiction to hear all the claims of the injured party*" (Lembo Decl., ECF No. 41, ¶ 24). That is incorrect. In his declaration, Lembo does not point to any tortious action independent from those of Bouvier that the New York Defendants would have carried out in Switzerland and that would have contributed to the New York Plaintiffs' damage.

iii. <u>In reality, Sotheby's Actions Took Place Outside of Switzerland.</u>

33.     In reality, the Sotheby's entities mainly acted from the UK, where Samuel Valette was based and where Sotheby's UK is incorporated, and from New York, where the company headquarters and centralized executive departments are located. It is also in New York that Mr. Rybolovlev, acting as an agent of the New York Plaintiffs, viewed the *Salvator Mundi* in presence of Samuel Valette, and where other facts set forth in the Declaration of Daniel J. Kornstein occurred.  Sotheby's actions are more connected to New York than to Switzerland.

34.     Given the lack of connections to Switzerland, I also believe that it is unlikely that the Swiss courts would apply Swiss law to adjudicate this dispute. Even if Swiss law would arguably apply to the dispute between Bouvier and the New York Plaintiffs – the issue of applicable law being strongly debated among the parties – it does not follow that Swiss law would also apply to the dispute between Sotheby's and the New York Plaintiffs. According to Article 133(2) PILA, "[i]*f the tortfeasor and the injured party do not have their place of habitual residence in the same State, the claims shall be governed by the law of the State in which the tort was committed. If the injury occurs in another State than the State where the act that caused injury arose, the law of that State shall be applicable if the tortfeasor should have foreseen that the injury would occur there.*" According to Article 140 PILA, "[i]*f several persons have taken part in the commission of a tort, the applicable law shall be determined separately for each one of them regardless of their role.*" Given the lack of connection of Sotheby's actions to

11

Switzerland, it is unlikely that Swiss courts would apply Swiss law in deciding the dispute

between Sotheby's and the New York Plaintiffs. I believe that Swiss courts are more likely to

apply UK or New York law (*i.e.* the places where most of Sotheby's conduct took place) or the

law of the British Virgin Islands (*i.e.* the place where the New York Plaintiffs are incorporated).

35.    As a result of the lack of connections of the matter to Switzerland, the taking of

evidence process in support of the Swiss Civil Suit would be extremely complicated and

burdensome which will deprive the New York Plaintiffs of the opportunity to fairly plead their

case. Of the key witnesses identified in Sotheby's statement of claim, <u>none</u> reside in Switzerland.

For example, contrary to Sotheby's assertion, Mikhail Sazonov lives in France, not Switzerland.

That means that Sazonov (like Alexander Bell, Bruno Vinciguerra, and other third-parties) is not

subject to the jurisdiction of the Geneva courts.

36.    In the same vein, Swiss proceedings are conducted in the official language of the

canton in which the case is heard (Article 129 SCCP). In Geneva, the proceedings are conducted

in French so that all the documents to be used in the Geneva proceedings will have to be

translated into French, including English documents.

### *Sotheby's Has Engaged in Forum Shopping*

37.    As set forth in detail in the accompanying declaration of Daniel J. Kornstein,

Sotheby's has made clear that its Swiss Civil Suit is forum-shopping. I believe Sotheby's is

trying to derive tactical advantage from several features of Swiss law.

38.    Pre-trial discovery as Americans understand the term does not exist in

Switzerland and Switzerland has no equivalent. When a party files its case, it must set out all the

facts and provide all its evidence at the outset of the proceedings (*see* Lembo Decl. ¶ 14). This

requirement makes it difficult to prove civil fraud and similar claims because, as is the case here,

such conduct is often concealed from the victims. As Sotheby's has previously told this Court, Swiss procedure allows no depositions, and document discovery must be highly specific. In essence, you must know in advance and be able to precisely describe the specific documents you are seeking (*see* Lembo Decl. ¶ 14 and Declaration of Saverio Lembo (ECF No. 155), *In re Application of Accent Delight Int'l*, No. 16-MC-125 (S.D.N.Y. Mar. 13, 2018) ¶¶ 5, 7-8) which makes it very difficult for victims of fraud to prove the same in civil proceedings.

39.     Moreover, contrary to Sotheby's counsel misleading statement that "*Valette, Dmitry Rybolovlev, and Bouvier can all be compelled to give testimony in Switzerland*" (*see* Lembo Decl. ¶ 15), an adverse party is under no obligation to be forthcoming if requested to testify or provide documents, even if they are identified with specificity (Articles 163-164 SCCP). If a party refuses to produce documents or testify, the court will only take this refusal into account when assessing the evidence (Article 164 SCCP). However, a Swiss court cannot order the use of public force or impose a fine if a party does not comply with a request for documents/testimony (Article 164 SCCP *a contrario*).

40.     Furthermore, as a general principle, written witness statements are inadmissible under Swiss procedural law. Witnesses must appear in person before the court to give testimony. In my experience, the Geneva courts refuse to serve a notice of hearing to compel witnesses domiciled abroad to appear through mutual assistance channels. Instead, the courts require that the parties themselves attempt to reach out to the witnesses domiciled abroad, including hostile witnesses, and request that they voluntarily travel to Geneva to testify. In rare cases, if a witness refuses to appear voluntarily, the Geneva courts will agree to send written questions to witnesses domiciled abroad through a letter rogatory (pursuant to applicable mutual legal assistance provisions), but this process is complicated, slow, and frequently unsuccessful. In addition, the

execution of a letter rogatory remains subject to the legislation of the country where the witness resides.

41.     By filing the Swiss Civil Suit, I believe that the New York Defendants have run to the Swiss court, knowing it would be more difficult for the New York Plaintiffs to argue their case in Switzerland and gather the necessary evidence.

### Sotheby's Has Engaged in Delay Tactics

42.     I also believe that Sotheby's has engaged in various tactics to delay ordinary course of the Swiss Civil Suit.

43.     For example, Sotheby's triggered conciliation in the Swiss Civil Suit even though it was not compulsory in that case. Indeed, contrary to what Sotheby's Swiss counsel's assertion could suggest (*see* Lembo Decl. ¶ 8), conciliation is only mandatory when a named defendant is a Swiss resident (Article 199(2) SCCP); the claimant may unilaterally waive conciliation if the defendant's registered office or domicile is abroad. The only reason why conciliation was in part mandatory in the Swiss Civil Suit is because Sotheby's named Swiss resident Ms. Rybolovleva as a defendant. It has however always been clear that she is not a real party in interest, as illustrated by the fact that she immediately conceded she had no claims against the Swiss Claimants (*see* Lembo Decl. Ex. D at p. 8). Her lawyer indeed declared before the conciliation judge: "*My client acknowledges that the plaintiffs have no liability or debt of any kind to her*" (*see* Lembo Decl. Ex. D at p. 8). In any event, Sotheby's could easily have applied for a conciliation hearing against only Ms. Rybolovleva and simultaneously filed directly an action on the merits against all the other Swiss Defendants. Sotheby's instead chose to voluntarily to include Ms. Rybolovleva in the Swiss Civil Suit, although, to my knowledge, she has never been

a party to any of the proceedings concerning the present matter and has never had any dealings with Sotheby's.

44.     In addition, Sotheby's filed its statement of claim in July 2018 and we have still not been served with it. That is highly unusual.

45.     Sotheby's also delayed the Swiss case by petitioning the Swiss court for the confidential treatment of the statement of claim together with its exhibits (*see* Lembo Decl. ¶ 17). Such blanket confidentiality requests are very rare and are only awarded in very exceptional cases if it is considered proportionate after the weighing of the different parties' conflicting interests. It is an exception, rarely applied by Swiss courts, to the right to a fair and public trial provided for notably by Article 6 of the European Convention on Human Rights. The party applying for confidentiality must precisely state its interests in obtaining the measure and specify why these interests are legitimate and should override the adverse party's interest in having full access to the exhibits. *See* Legal literature: CR CPC 156 N 1, 4. In addition, the moving party must convince the court with concrete elements of its alleged need for protection. The fact that a party merely alleges non-specified secrets in its request for protection is the most frequent reason for Geneva court to deny such requests. If Sotheby's request is indeed to keep the entire statement of claim and exhibits confidential, we expect that the Geneva court will most likely largely deny the same on the ground that it is disproportionate. But unless the court rejects this unusual request outright without even hearing us, which is unlikely, I believe that the Swiss court will not serve us with the statement of claim and the case will not proceed pending resolution of this ancillary issue on confidentiality which will likely take months to resolve.

46.     In addition, contrary to Lembo Decl. ¶ 21, it is our opinion that the confidentiality request must be treated as a preliminary issue before turning to the merits. Sotheby's could also

appeal an adverse decision on the confidentiality request and seek a stay of the entire case

pending a decision on the appeal. It could therefore take months before the court serves the

Swiss Defendants with Sotheby's statement of claim.

***Duration of the Swiss Civil Suit***

47.     In my experience, I believe that once the merits phase of the Swiss Civil Suit has

actually begun, it will take approximately five to ten years for the case to be finally completed at

first instance level.

48.     I also believe that Sotheby's assertions that cases move quickly in Switzerland is

misleading as it is based on a general estimate of clearance rate of Swiss courts which includes

many inadmissibility decisions which are taken within days upon filing for various procedural

reasons. As a result, the statistics provided by Sotheby's do not reflect the reality of court process

and duration in Switzerland generally and more importantly omit the important fact that the

administration of justice is done at the cantonal level and is not a federal matter, except at the

level of the Swiss Federal Supreme Court (third level instance).

49.     Cantons are for instance free to set up a specialized commercial court ruling as

sole cantonal instance, thus depriving parties of one appellate instance and leaving them only

with an appeal directly to the Swiss Federal Supreme Court. The canton of Geneva did not do so.

Instead, it created a special chamber within the Tribunal of first instance in 2011 to handle

complex cross-border cases. *See* Report on the activity of the Geneva Judicial Power in 2015, p.

29. However, in 2015, this special chamber was dissolved due to an excessive workload of the

Tribunal of first instance (*i.e.* the court handling the negative declaratory action in Switzerland).

This situation still prevails and the government of Geneva even recently suggested to repeal the

legal basis allowing the theoretical existence of these chambers. This illustrates the fact that

Geneva courts are not best equipped to handle rapidly complex cross-border high value matters.

50.     Furthermore, the Swiss Civil Suit is not a typical matter. To the contrary, it is a

very complex case in part because of the unusual nature of Sotheby's claim (negative declaratory

relief), which is very rare in practice. In addition, it involves numerous parties, each of which

having a different degree of involvement in the matter. The facts at issue are spread out over time

and location, thus requiring a heavy evidentiary phase. Different (foreign) laws may apply to the

merits so that the Geneva court will need external support of legal experts to determine their

content and rule on the party's conflicting views, apply them to the facts and eventually reach a

verdict. All these factors will inevitably prolong the proceedings far beyond the average duration

of Swiss civil proceedings.

51.     Attached here as Exhibit A are true and correct copies of the relevant portions of

the cited statutes and their translations into English.

52.     I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct to the best of my knowledge and belief.

Dated: February  15 , 2019
Geneva, Switzerland

_____
SANDRINE GIROUD