# Exhibit L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of ACCENT DELIGHT INTERNATIONAL LTD. AND XITRANS FINANCE LTD. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Consolidated Case No. 16-mc-125 (JMF)  **\*ORAL ARGUMENT REQUESTED\*** |

**SOTHEBY'S CONSOLIDATED MEMORANDUM OF LAW:**

**(1) IN OPPOSITION TO PETITIONERS' MOTION FOR LEAVE TO CONDUCT ADDITIONAL DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FOR USE IN SWISS AND MONÉGASQUE CRIMINAL PROCEEDINGS**

**(2) IN OPPOSITION TO PETITIONERS' MOTION FOR LEAVE TO USE DISCOVERY ALREADY IN THEIR POSSESSION IN SWISS CRIMINAL PROCEEDINGS**

**(3) IN SUPPORT OF ITS APPLICATION FOR CERTAIN MATERIALS RELATING TO THE NEW § 1782 PETITION TO REMAIN UNDER SEAL**

ARNOLD & PORTER KAYE SCHOLER LLP

250 West 55th Street
New York, NY 10019-9710
T: 212.836.8000
F: 212.836.8689

*Attorneys for Respondent Sotheby's, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .........................................................................................................2

I.      The Initial § 1782 Proceeding ...........................................................................2

II.     Petitioners' Allegations of Complicity Against Sotheby's ....................................4

III.    Petitioners' November 2017 Application and the Notice of Conciliation in Switzerland ........................................................................................................5

IV.    Status of the Swiss Criminal Proceeding ...........................................................5

V.     The Additional Request and the New § 1782 Petition..........................................6

ARGUMENT ...............................................................................................................7

I.      The New § 1782 Petition Should Be Denied .......................................................7

        A.     Petitioners Are Barred from Seeking Discovery Outside the United States ....................................................................................................8

        B.     The Statutory Requirements of 28 U.S.C. § 1782 Have Not Been Met....11

        C.     The Court Should Also Exercise Its Discretion to Deny the New Petition..................................................................................................12

              1.     The New Petition Seeks Discovery for Use Against Sotheby's....13

              2.     The New Petition Circumvents the Foreign Proof-Gathering Restrictions and Policies of Switzerland and the United Kingdom....................................................................................16

              3.     The New Petition is Burdensome and Intrusive..........................18

II.     The Court Should Exercise Its Discretion to Deny the Additional Request........24

III.    Certain Documents Submitted in Connection with the New Petition Should Remain Under Seal and Subject to the Terms of the Protective Order ................25

        A.     Legal Standard .........................................................................................26

        B.     The Materials at Issue Are Not Judicial Documents.................................26

C.    The Presumption of Access Is Low and Competing Considerations Weigh Heavily Against Public Disclosure ............................................. 28

CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andover Healthcare, Inc. v. 3M Co.,*
   817 F.3d 621 (8th Cir. 2016) ................................................................. 16

*In re Accent Delight Int'l Ltd.,*
   869 F.3d 121 (2d Cir. 2017) .............................................................. 7, 11

*In re Apotex Inc.,*
   Misc. No. M12-160, 2009 WL 618243 (S.D.N.Y. 2009) ......................... 19

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf,*
   No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ............... 9, 21

*In re Godfrey,*
   526 F. Supp. 2d at 419 ..................................................................... 9, 13

*In re Kreke Immobilien KG,*
   No. 13 Misc. 110 (NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) .......... 9, 15, 20

*In re Microsoft,*
   428 F. Supp. 2d 188 (S.D.N.Y. 2006) ........................................................ 9

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH &*
*Co. KG,*
   No. 15 . 319, 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ........................ 18

*In re Nieri,*
   No. Civ. A. M12-329, 2000 WL 60214 (S.D.N.Y. Jan. 24, 2000) .............. 9

*In re Okean B.V.,*
   60 F. Supp. 3d 419, 428 (S.D.N.Y. 2014) ............................................. 22

*In re Okean B.V.,*
   No. 12 Misc. 104 (PAE) , 2013 WL 4744817 (S.D.N.Y. Sept. 4, 2013) ................ 22

*In re OOO Promnefstroy,*
   No. M 19–99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ............ 20

*In re Mare Shipping Inc.,*
   No. 13 Misc. 238, 2013 WL 5761104 (S.D.N.Y. Oct. 23, 2013),
   *aff'd sub nom. Mare Shipping Inc. v. Squire Sanders (US) LLP,*
   574 F. App'x 6 (2d Cir. 2014) ............................................................... 16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004). ........................................................................................ 11, 13, 16

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ....................................................................................... 26, 27

*Martindell v. Int'l Tel. & Tel. Corp.*,
594 F.2d 291 (2d Cir. 1979) ............................................................................................... 28

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ....................................................................................... 13, 24

*Newsday LLC v. Cty. of Nassau*,
730 F.3d 156 (2d Cir. 2013) ....................................................................................... 26, 28

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) ................................................................................................................ 28

*Pinchuk v. Chemstar Prods. LLC*,
No. 13-MC-306-RGA, 2014 WL 2990416 (D. Del. June 26, 2014) ......................... 13

*Rappo v. Accent Delight Int'l Ltd.*,
[2017] SGCA 27 (Sing.) ............................................................................................... 3, 8

*In re Sarrio S.A.*, No. 9-372, 1995 WL 598988 (S.D.N.Y. Oct. 11, 1995),
*remanded*, 119 F.3d 143 (2d Cir. 1997) ........................................................... 8, 9, 10

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
376 F.3d 79 (2d Cir. 2004) ............................................................................................... 15

*SEC v. TheStreet.Com*,
273 F.3d 222 (2d Cir. 2001) ....................................................................................... 27, 28

*Skyline Steel, LLC v. PilePro, LLC*,
101 F. Supp. 3d 394, 412-13 (S.D.N.Y. 2015), *modified in part on
reconsideration on other grounds*, No. 13-CV-8171 (JMF), 2015 WL
3739276 (S.D.N.Y. June 15, 2015) ................................................................................... 29

*United States v. Amodeo (Amodeo II)*,
71 F.3d 1044 (2d Cir. 1995) ............................................................................... 26, 28, 29

*United States v. Amodeo (Amodeo I)*,
44 F.3d 141 (2d Cir. 1995) ....................................................................................... 27, 28

*Winfield v. N.Y.C. (Winfield II)*,
No. 15-CV-05236 (LTS) (KHP), 2017 WL 5054727,
(S.D.N.Y. Nov. 2, 2017) ................................................................................................... 27

*Winfield v. N.Y.C. (Winfield I)*,
   No. 15-CV-05236 (LTS) (KHP), 2017 WL 2880556 (S.D.N.Y. July 5,
   2017) ............................................................................................................ 26, 27

**STATUTES**

28 U.S.C. § 1782 ............................................................................................. *passim*

Misc. No. M12-160, 2009 .............................................................................. 19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45 .......................................................................................... 18

Rule 30(b)(6) ........................................................................... 2, 7, 8, 11, 17, 18, 21

S. Rep. No. 88–1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782 ................................. 9

Sotheby's, Inc. respectfully submits this memorandum in opposition to (1) Petitioners' new § 1782 application ("New Petition") seeking additional discovery from Sotheby's purportedly for use in criminal proceedings pending against Yves Bouvier in Switzerland (the "Swiss Criminal Investigation") and Monaco (the "Monaco Criminal Investigation"), and (2) their motion ("Additional Request") seeking to use documents previously obtained from Sotheby's in the Swiss Criminal Investigation. We also ask that certain documents and information that Petitioners have filed remain under seal.

## PRELIMINARY STATEMENT

Petitioners once again are trying to use the United States judicial system to get discovery for the multiple civil and criminal cases they are pursuing overseas, all the while avoiding the processes available in the foreign jurisdictions in which proceedings are pending or threatened. While Petitioners claim that they seek documents and information solely for use against Bouvier, that representation is false. As we detail below, Petitioners' actual course of conduct here and abroad makes plain that they plan to use the documents against Sotheby's as well. Petitioners' applications should be denied.

As a threshold matter, the New Petition should be denied to the extent it seeks discovery from outside the United States, which is beyond the reach of § 1782. Nor have Petitioners met the requirements of § 1782, as they fail to show that they are interested parties who have the practical ability to use the requested documents in the foreign criminal proceedings. Further, the discretionary *Intel* factors weigh heavily against Petitioners: they seek discovery for use against Sotheby's, a party and a threatened party in foreign proceedings; they are attempting to obtain discovery that they would not be allowed to obtain in civil litigations in Switzerland and the United Kingdom, thereby circumventing the proof-gathering restrictions of those jurisdictions; and their requests—

for a broad-reaching array of documents and a Rule 30(b)(6) deposition—would be extremely burdensome and intrusive, far outweighing the purported need.

The Additional Request also fails. As detailed below, Petitioners have abused the discovery process and circumstances now are ripe to deny their request on that basis.

For these reasons, and as detailed below, Petitioners' motions should be denied.

## **BACKGROUND**

### I.     **The Initial § 1782 Proceeding**

On March 25, 2016, Petitioners filed their first § 1782 petition, seeking a wide variety of materials from Sotheby's for use in proceedings against Bouvier in Monaco, France, and Singapore. ECF Nos. 1-3.[1] Petitioners contend that Bouvier defrauded them with regard to 37 works of art (the "Works"), and requested "[a]ll Documents (including Communications)" relating to the Works,[2] as well as "[a]ll Documents concerning or including Communication[s]" with Bouvier. ECF No. 3-1.

Petitioners and Sotheby's thereafter negotiated a more limited production, giving Petitioners the information they claimed they actually need to pursue their claims against Bouvier: all documents and communications concerning the Works exchanged between Bouvier and Samuel Valette (Sotheby's Vice President of Private Sales and Bouvier's primary contact at Sotheby's for art acquisitions and sales, *see* Scillieri Decl. ¶ 4), and any transactional documents exchanged between Sotheby's and Bouvier concerning the Works. Petitioners agreed that such production would fully satisfy their petition, while

---

[1] Unless otherwise specified, docket references herein refer to Case No. 16-mc-125.

[2] Although Petitioners sought (and currently seek) information concerning 37 Works (amounting to 38 transactions), Sotheby's was in fact involved with Bouvier with only 15 of the Works. Sotheby's facilitated the sale of only 12 of the 37 Works to Bouvier, consigned for auction 2 of the Works on Bouvier's behalf (1 of which it previously sold him), and conducted valuations for 4 of the Works (2 of which it previously sold him). *See* Scillieri Declaration, dated March 13, 2018 ("Scillieri Decl."), ¶ 3.

reserving the right to initiate a new § 1782 proceeding, with Sotheby's reserving all of its rights to oppose any new proceeding.  *See* ECF No. 34, at 3-5.

Petitioners and Sotheby's presented their negotiated settlement to the Court in a Proposed Stipulation and Order and Proposed Stipulated Protective Order on May 20, 2016.  ECF No. 34.  As agreed, in exchange for the limited production, Sotheby's did not oppose Petitioners' application.  ECF No. 41 at 29:12-21, 34:23 - 35:7.  Intervenors, however, asserted that Petitioners' application failed to meet the statutory factors required under § 1782.  ECF No. 21.  At the hearing, the Court deferred entry of the Proposed Stipulation and Order until Petitioners could provide information demonstrating that the Monaco and Singapore proceedings had developed to a stage at which Petitioners could be considered interested parties with the ability to submit evidence.  *See id.* at 35:16-25.

On September 6, 2016, Petitioners notified the Court that the Monaco Criminal Investigation had progressed such that Petitioners held the status of civil parties.[3]  ECF No. 43.  Intervenors disputed Petitioners' characterization of the Monaco Criminal Investigation, while Sotheby's, in exchange for the agreed-to limited production, did not oppose it.  On October 5, 2016, the Court determined that Petitioners' evidence of its status in the Monaco case was sufficient to meet the statutory factors of § 1782, and that the § 1782 discretionary factors similarly supported granting discovery.  ECF No. 51-52.  Following the Court's decision, Petitioners attempted to back out of their agreement with Sotheby's, and promptly served their original, broader subpoenas.  *See* ECF No. 54 at 1.

---

[3] As for the Singapore proceeding, the Singapore Court of Appeal granted Bouvier's motion for *forum non conveniens* on April 18, 2017, concluding that Singapore was an inappropriate jurisdiction for the dispute between Bouvier and Rybolovlev, and further noting its view that Switzerland was the appropriate jurisdiction for the dispute.  ECF No. 115-5 (*Rappo v. Accent Delight Int'l Ltd.*, [2017] SGCA 27, ¶ 82 (Sing.)) ("In our view, the tenor, form and substance of the parties' dealings were intimately tied up with Switzerland and Swiss law.  Indeed, we see no substantial connections between those dealings and any other jurisdiction, be it Singapore or otherwise.").

When Sotheby's requested that the Court enter the parties' Proposed Stipulation and Order, Petitioners opposed the request, claiming that the agreement had been "overtaken by events," and that the prior agreement should no longer be enforced. *See id.* at 2.

Although the Court initially denied Sotheby's request, the Court reconsidered and, on November 1, 2016, ruled that fairness required that the Court enforce the terms of the parties' agreement. *See* ECF Nos. 56, 68 at 24:11 - 25:15, 83. Sotheby's made its negotiated production—comprised of 972 documents and 2,622 pages of discovery material—on November 16, 2016. Scillieri Decl. ¶ 9.

## II. Petitioners' Allegations of Complicity Against Sotheby's

On October 27, 2017, Petitioners requested to use Sotheby's production in the UK to initiate proceedings against Bouvier *and Sotheby's and Valette.* ECF No. 101. As detailed below, Sotheby's since has learned that Petitioners much earlier had sought to draw Sotheby's into the conflict with Bouvier in the Swiss criminal proceedings.

On March 8, 2017, Petitioners, along with a related entity, Jolly Times, Inc., filed a criminal complaint in Berne, Switzerland, against Bouvier, while also asserting that Bouvier committed fraud against Petitioners with "[p]ossible [c]ollaboration by Sotheby's." Levy Declaration, dated March 13, 2018 ("Levy Decl."), Ex. A ¶152-61. Petitioners' complaint alleges, for example, that Sotheby's and Valette provided Bouvier with allegedly fabricated insurance valuations in order to justify to Petitioners the inflated prices at which they acquired the Works—and further suggests that Sotheby's own documents will either prove or disprove those allegations. *Id.* ¶¶160-61.[4]

---

[4] Sotheby's submits that the allegations against it and Valette are categorically false and will not survive scrutiny under the facts or the law, and repeats those allegations here only to demonstrate that Petitioners clearly view Sotheby's productions as relevant to their allegations against Sotheby's and Valette.

### III. Petitioners' November 2017 Application and the Notice of Conciliation in Switzerland

In their October 27, 2017 letter, ECF. No.101, Petitioners summarized their proposed allegations against Sotheby's in the UK: "Sotheby's UK and its agents aided and abetted Bouvier's fraud on Petitioners by, among other things, assisting Bouvier in misleading Petitioners as to the true value of the masterpieces and working in concert with Bouvier to create fraudulent records that lent credence to the artificially inflated prices Bouvier claimed to Petitioners he was paying for the art." *Id.* at 2. On November 6, 2017, Petitioners filed a formal motion, as directed by the Court. ECF Nos. 106-08.

Because Petitioners had formally announced that they would pursue fraud allegations against Sotheby's, and since Switzerland is the appropriate forum for resolution of any such claims (as the Court of Appeal of Singapore has noted; *see supra* p. 3 n.3), on November 17, 2017, Sotheby's and Valette filed in Geneva a Notice of Conciliation (the "Swiss Civil Proceeding"), along with Bouvier, against Dmitry Rybolovlev and Petitioners. ECF No. 115-10 to -12. That proceeding seeks a declaration that Sotheby's and Valette bear no liability. *See* ECF No. 115-12 at 11.

On December 22, 2017, the Court granted Petitioners' application to use Sotheby's previously produced documents in Petitioners' contemplated proceeding in the United Kingdom, as well as in the Swiss Civil Proceeding. ECF No. 128.

### IV. Status of the Swiss Criminal Proceeding

Although Petitioners describe the status of the Swiss Criminal Investigation in their memorandum of law, *see* Pet'rs New Pet. Mem. at 8-9, 12-13, that description is incomplete. Petitioners elected not to include the following facts, which are critical to this Court's analysis of both the Additional Request and the New Petition.

Since Petitioners filed their Swiss criminal complaint in March 2017, the Swiss prosecutor repeatedly has called into question Petitioners' status as "parties plaignantes." In particular, on October 16, 2017, the Swiss prosecutor notified Petitioners that he was undertaking a review of whether Petitioners have standing under Swiss law to participate as civil parties in the Swiss Criminal Investigation. Levy Decl., Ex. D. As summarized by Petitioners' Swiss counsel at an October 30, 2017 hearing, the Swiss prosecutor asked Petitioners to provide details concerning the names of Petitioners' shareholders, the sources of their funding, and their roles in the facts alleged in their criminal complaint, and whether Petitioners are linked to Rybolovlev. Levy Decl., Ex. G at 2. Petitioners' Swiss counsel acknowledged that, "once in possession of those documents [the prosecutor] will be able to give a ruling concerning the claimant companies' *locus standi* as claimant parties, if necessary after summoning [Petitioners] again should [he] require further information." *Id.* Sotheby's understands that Petitioners, despite the passage of time, still have been unable to provide the requested information to the Swiss prosecutor. Indeed, on March 8, 2018, the Swiss prosecutor again wrote to counsel for Petitioners, seeking the long requested information and giving Petitioners a final deadline of March 30, 2018 to submit it. Levy Decl., Ex. I. As a result, the Swiss prosecutor has yet to issue a ruling concerning Petitioners' *locus standi* under Swiss law.

## V.   The Additional Request and the New § 1782 Petition

To Sotheby's knowledge, Petitioners have not yet commenced suit in the United Kingdom, as they threatened in their request of November 2017. Instead, Petitioners have now returned to the U.S. court seeking two additional forms of relief. On February 8, 2018, in Case No. 16-mc-125, Petitioners filed the Additional Request, seeking permission to use the documents previously obtained from Sotheby's in the Swiss

Criminal Investigation against Bouvier.  ECF Nos. 132-35.  Then, on February 12, 2018,

Petitioners commenced the New Petition, Case No. 18-mc-50, seeking additional

discovery from Sotheby's—a wide array of documents and a Rule 30(b)(6) deposition—

for purported use in the Swiss and Monaco Criminal Investigations against Bouvier.

Case No. 18-mc-50, ECF Nos. 4-7.  The New Petition seeks:  (1) all "Communications"

between any Sotheby's employee and Bouvier concerning the Works; (2) all

"Documents, including Communications" concerning Bouvier and the Works (*e.g.*,

Sotheby's internal and third-party correspondence); and (3) all "Documents" concerning

the value of the Works bought or sold in a transaction involving Sotheby's and Bouvier.

ECF No. 6-1 at 10.  Petitioners further seek testimony relating to the following topics:

the structure and substance of the transactions for the Works; Bouvier's relationship with

his affiliated entities, Petitioners (and Dmitry Rybolovlev), Sotheby's, and Jean-Marc

Peretti; the viewing of *Christ as Salvator Mundi* in March 2013; and valuations that

Bouvier obtained from Sotheby's for any of the Works.  *Id.* at 16.

## ARGUMENT

### I.  The New § 1782 Petition Should Be Denied

Petitioners assert that "[t]he Second Circuit has spoken:  Petitioners satisfy the

requirements for § 1782 discovery."  Pet'rs' New Pet. Mem. at 2.  That is not so.  In *In re*

*Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017), the Second Circuit addressed only

the limited discovery that Sotheby's produced in response to the first §1782 petition.

Sotheby's retained all rights to oppose any future §1782 petition.  ECF No. 84 ¶ 1.4.

Neither this Court nor the Second Circuit has addressed the New Petition, which seeks

different and more expansive categories of documents, similar to the initial subpoena, as

well as a Rule 30(b)(6) deposition, which is new. Accordingly, to obtain what they seek,

Petitioners must satisfy the § 1782 requirements, which they cannot do.

### A.   Petitioners Are Barred from Seeking Discovery Outside the United States

As a threshold matter, the New Petition should be denied to the extent it seeks

documents located overseas. Although the Second Circuit has not yet decided whether §

1782 permits discovery located outside the United States, *see Accent Delight*, 696 F.

App'x at 539 (2d Cir. 2017), the case law strongly suggests that documents and

information located abroad are beyond the reach of § 1782.

In *Sarrio*, the court held that documents stored abroad and brought to the U.S. for

delivery to legal counsel were not subject to § 1782 discovery, because the statute did not

reach documents located overseas, and the only copies in the U.S. had been brought here

by counsel and therefore were protected from disclosure by the attorney-client privilege.

*See In re Sarrio S.A.*, No. 9-372, 1995 WL 598988, at *2-3. (S.D.N.Y. Oct. 11, 1995),

*remanded*, 119 F.3d 143 (2d Cir. 1997). The court noted that, while "the language of

Section 1782 does not indicate that discovery of documents is limited to evidence located

in the United States," the "legislative history . . . reflects that the primary intent of the

1964 amendments to Section 1782 was 'to clarify and liberalize existing U.S. procedures

for assisting foreign and international tribunals and litigants in obtaining *oral* and

*documentary evidence in the United States*.'"  *Id.* at *2 (quoting S. Rep. No. 88–1580,

(1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788 (first emphasis added)). On appeal,

the Second Circuit did not need to decide the geographic reach of § 1782, as the

respondent had chosen to withdraw its claim of privilege over the documents at issue.

*Sarrio*, 119 F.3d at 147. In *dicta*, however, the court noted that, "despite the statute's

unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States." *Id.*

A majority of courts in this district have concluded that § 1782 does not reach documents stored overseas. In *In re Godfrey*, for example, the court held that "for purposes of § 1782(a), a witness cannot be compelled to produce documents located outside of the United States," noting that "use of § 1782 for evidence located outside of the United States could turn American courts into clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world." *In re Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007) (citing *In re Microsoft*, 428 F. Supp. 2d 188, 194 n.5 (S.D.N.Y. 2006); *In re Nieri*, No. Civ.A. M12-329, 2000 WL 60214, at *1 (S.D.N.Y. Jan. 24, 2000)); *see also In re Kreke Immobilien KG*, No. 13 Misc. 110, 2013 WL 5966916, at *4, *7 (S.D.N.Y. Nov. 8, 2013) ("[A] § 1782 respondent cannot be compelled to produce documents located abroad").[5]

Petitioners' document requests ask for *all* documents regardless where they are stored. In fact, the overwhelming majority of the documents Petitioners seek are located not in the U.S., but in several of Sotheby's affiliates around the world. Scillieri Decl. ¶ 7. More specifically, an e-mail communication that includes a Sotheby's employee automatically is stored on the servers of the particular office at which that employee works. *Id.* This is true even when the employee is visiting the U.S. (or elsewhere) when she sends or receives the e-mail, and even if she e-mails someone who is located in the U.S. (or elsewhere), but that individual is *not* an employee of Sotheby's. *Id.*

---

[5] Even in *In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006), where the court concluded that § 1782 permits overseas discovery, the court still considered the location of the documents as part of its discretionary analysis.

For example, if a Sotheby's UK employee is in New York and sends an e-mail to another UK employee, or to an external party, those communications all would be stored exclusively on the company's electronic e-mail servers located in the UK. *Id.* ¶ 8. If the UK employee included a Sotheby's Vienna employee on those communications, those communications also would be stored on the company's electronic e-mail servers in Austria (as well as the UK). *Id.* Only if the Sotheby's UK employee included *a Sotheby's employee based in the U.S.* would those e-mail communications be stored here. *Id.*

Of the 19 transactions between Sotheby's and Bouvier concerning the Works (which number includes Bouvier's acquisitions, consignments, and valuations), every such transaction was facilitated primarily by Sotheby's non-U.S. offices, and managed primarily by employees who are not located in the United States. *Id.* ¶ 6. Only 4 were conducted according to agreements governed under U.S. (New York) law, while the remaining 15 transactions are governed by foreign laws. *Id.* Simply put, the requested material—whether hard copy or in electronic form—for the most part is not located here.[6]

Petitioners' request for a deposition under Rule 30(b)(6) is no more grounded upon information found in the U.S. As explained, every sale at issue was coordinated primarily by employees from one or more of Sotheby's non-U.S. offices, such that the documents *and witnesses* with relevant information are located abroad. Because the Court should find that § 1782 does not authorize the collection and production of material located overseas, there is similarly no basis to require a U.S.-based Sotheby's employee

---

[6] To the extent documents or communications are located within the United States solely by virtue of the fact that they were retrieved and sent to legal counsel in the United States, those documents were sent for the purpose of obtaining legal advice and in anticipation of litigation, and are therefore protected from disclosure by the attorney-client and work product privileges. *See Sarrio*, 1995 WL 598988, at *3. While Sotheby's considers these documents to be privileged, its claim of privilege would become relevant only if the Court grants Petitioners' motion for discovery under § 1782 but finds that its reach is limited to documents located within the United States.

to collect and review those overseas documents, or meet with overseas witnesses, to teach himself or herself about transactions involving European customers, European employees, and European offices. That information, like the material Petitioners seek, is found outside of the U.S. and, as such, is beyond the reach of § 1782.

### B. The Statutory Requirements of 28 U.S.C. § 1782 Have Not Been Met

In *Intel Corp. v. Advanced Micro Devices, Inc.*, the Supreme Court described three "statutory requirements" that an applicant must establish under § 1782:

> (1) the person from whom discovery is sought must reside or be found in the district in which the application was made; (2) the discovery must be "for use in a foreign proceeding before a foreign tribunal"; and (3) the applicant must be either a foreign tribunal or an "interested person."

*Accent Delight*, 869 F.3d at 128. Petitioners have failed to establish that the requested material is "for use in" foreign criminal investigations in which they are "interested parties." *Id.* at 132.

Specifically, Petitioners' assertion that they are civil parties to the Swiss Criminal Investigation and therefore are able to inject discovery obtained from Sotheby's into those proceedings is belied by the record in that matter. In fact, it appears that Petitioners have no standing to participate in those proceedings at all. As discussed *supra* at p. 6, the Swiss prosecutor has explicitly requested that Petitioners provide support that they have *locus standi* as claimant parties, and has indicated that he will issue a ruling on that point. Whether Petitioners are interested parties to the Swiss Criminal Investigation, and whether they possess the right or ability to use discovery from Sotheby's in that proceeding, is an open issue that must be resolved before this Court determines whether

11

Petitioners have satisfied the threshold requirements of § 1782.[7] With respect to the

Monaco Criminal Investigation, there is strong reason to conclude, as set forth in

Intervenors' Memorandum of Law in Opposition to Petitioners' Requests, *see* ECF No.

150, at 28, that Petitioners have largely abandoned their advocacy there and that

Petitioners are using it as a pretext to obtain the requested discovery from Sotheby's for

use *against* Sotheby's.

 Petitioners' failure to establish that they are interested parties in the Swiss

Criminal Investigation in position to submit the requested information to the foreign

courts is a sufficient basis to deny the New Petition. At the very least, however,

Sotheby's requests that the Court defer decision until Petitioners are able to establish that

they can, in fact, use the discovery in the manner described in the requests.

 **C.** **The Court Should Also Exercise Its Discretion to Deny the New Petition**

 In addition to the § 1782 statutory requirements, *Intel* identified four discretionary

factors for courts to consider:

> (1) whether "the person from whom discovery is sought is a
> participant in the foreign proceeding"; (2) "the nature of the
> foreign tribunal, the character of the proceedings underway
> abroad, and the receptivity of the foreign government or the
> court or agency abroad to U.S. federal-court judicial
> assistance"; (3) "whether the § 1782(a) request conceals an
> attempt to circumvent foreign proof-gathering restrictions
> or other policies of a foreign country or the United States";
> and (4) whether the request is "unduly intrusive or
> burdensome."

*Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (quoting *Intel*, 542 U.S. at 264-65).

---

[7] In their memorandum of law in support of the New Petition, Petitioners make the conclusory assertion
that "[b]ecause [they] filed a criminal complaint as persons suffering harm, they are parties to those
proceedings under Swiss law" and "[a]s such, [they] can submit documents to the Public Prosecutor."
Pet'rs New Pet. Mem. at 12.

Other circumstances also militate against permitting discovery under § 1782. *See, e.g.*, *Pinchuk v. Chemstar Prods. LLC*, No. 13-MC-306-RGA, 2014 WL 2990416, at *3 (D. Del. June 26, 2014) ("The factors articulated by *Intel* are non-exhaustive." (citing *In re Godfrey*, 526 F. Supp. 2d at 419)). A petitioner's bad faith is one such circumstance. *E.g.*, *Mees*, 793 F.3d at 302 n.18 ("[I]f a § 1782 application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application *in toto*, just as it can if discovery was sought in bad faith in domestic litigation." (quoting *Euromepa SA v. Esmerian Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995)).

### 1. The New Petition Seeks Discovery for Use Against Sotheby's

The first *Intel* factor alone provides a sufficient basis to deny the New Petition. As the Court explained, "when the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad," since "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782." *Id.*

Here, Petitioners assert that "Sotheby's is not a party to the criminal proceedings in Switzerland or Monaco" and that this "weighs in favor of granting discovery." Pet'rs' New Pet. Mem. at 19. But there is much more to the story. The proceedings here and those abroad make abundantly clear that Petitioners have filed the New Petition with the aim—at least in part—to obtain discovery for use *against Sotheby's and Valette* in proceedings in which Sotheby's and Valette presently are, or likely will be, a party.

13

Petitioners intend to pursue their allegations that Sotheby's and Valette aided and abetted Bouvier's alleged fraud, and in fact already have asked to use the documents previously produced by Sotheby's in a contemplated United Kingdom proceeding and in the Swiss Civil Proceeding. *See* ECF No. 101 at 2; ECF No. 131 ¶¶ 6, 10-11; ECF No. 130 at 5.

But Petitioners have gone much further. In their Swiss criminal complaint against Bouvier, they went to great lengths to cast a negative light on Sotheby's, alleging, for example, that "[t]he facts exposed [in the complaint] give rise to the suspicion that Samuel Valette, and possibly other employees of Sotheby's, may have colluded in issuing false certificates to Yves Bouvier, and as consideration may have personally profited from his purchases of art works at Sotheby's." *See also supra* at p. 4 (describing the allegations). Petitioners also stated that "Sotheby's business documents relating to the sale of the paintings acquired by the claimants would surely be able to confirm," or contradict, their suspicions about Sotheby's role. *See* Levy Decl., Ex. A ¶¶160-61.

In short, Petitioners' disingenuous claim that the New Petition is aimed only at obtaining additional discovery from Sotheby's to use against *Bouvier* is belied by their own filings here and abroad. Indeed, in the New Petition itself, Petitioners lay out in detail the very facts and documents they claim alerted them to *Sotheby's* alleged intent to defraud Petitioners. *See generally* Pet'rs New Pet. Mem. at 3-9. Although these allegations are false and will not survive scrutiny, any suggestion by Petitioners that they would obtain information from Sotheby's internal files and correspondence with third parties and then *not* return to this Court to request permission to use those documents in the pending (or new) foreign proceedings *against Sotheby's* is not credible.

That Petitioners elected to withhold from the Court that they intend to use the requested discovery against Sotheby's is telling—by remaining silent, and referencing only the Monaco and Swiss Criminal Investigations, Petitioners are trying to maintain a charade that the first *Intel* factor weighs in their favor because "Sotheby's is not a party" to those proceedings. *See* Pet'rs' New Pet. Mem. at 19. But § 1782 is not designed as a backdoor to get discovery against a current or intended adversary, and Petitioners are wrong to assume that the Court must ignore proceedings in which Sotheby's and Petitioners are (or will be) parties and for which Petitioners are plainly interested in using any discovery they obtain. Relying on Petitioners' disingenuous statement that they seek the discovery only against Bouvier would effectively give Petitioners § 1782 discovery against Sotheby's without satisfying the legal standard applicable to obtaining that discovery as against Sotheby's itself.

The first factor—whether the person from whom discovery is sought is a participant in the foreign proceeding—thus weighs in favor of denying the petition. *See*, *e.g.*, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("The court's decision to deny discovery also finds support in the first [*Intel*] factor. [F]or all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation."); *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 ("To the extent that the petitioner seeks documents from Oppenheim—and is only doing so through Deutsche Bank because Oppenheim is now its wholly-owned subsidiary— discovery is fundamentally being sought from a participant in the German proceeding."); *In re Mare Shipping Inc.*, No. 13 Misc. 238, 2013 WL 5761104, at *4-5 (S.D.N.Y. Oct. 23, 2013) ("Considering that, 'for all intents and purposes,' . . . the real subject of the

subpoena is Applicants' opponent in the foreign proceeding and the failure of Applicants to seek the requested material through Spanish proof-mechanisms, the Court denies Applicants' motion." (citation omitted)), *aff'd sub nom. Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014).

Finally, Petitioners do not—and indeed cannot—contend that a United Kingdom or Swiss court would be unwilling or unable to administer discovery in proceedings involving Sotheby's, and there are compelling comity-based reasons to allow those courts to manage their own dockets. *See, e.g.*, *Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 624 (8th Cir. 2016) ("The German court is in a position to order the requested discovery if the information is needed, and the German court is best positioned to assess whether any disclosure can be accomplished without jeopardizing the sensitive trade secrets involved."). Petitioners are already involved in proceedings with, or have threatened to bring new proceedings against, Bouvier or Sotheby's in venues across Europe. But instead of pursuing discovery in one of these foreign forums, Petitioners continue to return to this Court for discovery that they should be pursuing abroad. The Court should exercise its discretion to say that, at this point, enough is enough.

> **2.** **The New Petition Circumvents the Foreign Proof-Gathering Restrictions and Policies of Switzerland and the United Kingdom**

The third *Intel* discretionary factor considers whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States[.]" *Intel*, 542 U.S. at 265. Petitioners are currently pursuing, or have pursued, Bouvier in four foreign forums: Monaco, France, Singapore, and Switzerland. Petitioners intend to pursue Bouvier and Sotheby's in the UK as well, and as a result of that threat, Petitioners and Sotheby's are also adversaries in

the Swiss Civil Proceeding filed in November 2017. But instead of seeking discovery in Switzerland or the UK, Petitioners continue to return to this Court for discovery from Sotheby's for use in the pending and threatened litigations across the globe. Petitioners apparently believe that they can access more information (and more quickly) through the U.S. judicial system than they could in the Swiss or the UK courts. The evidentiary restrictions of the Swiss and UK courts, where Petitioners could (but have chosen not to) pursue discovery, are therefore highly relevant to the Court's analysis.

With respect to Switzerland, deposition testimony typically is inadmissible. Lembo Declaration, dated March 13, 2018, ¶¶ 5-6, 10-12. Petitioners would be unable to obtain a deposition in a Swiss criminal proceeding, unless the corporation itself was an accused party, which Sotheby's is not. *Id.* ¶¶ 10-12. Further, although any person or legal entity who is not a party in a civil case may testify on matters directly witnessed, that testimony occurs in person and at a hearing before a Swiss judge. *Id.* Where a legal entity is a party to the proceeding, testimony also must be given in person, at a hearing, and before the Swiss civil judge. *Id.* ¶ 5. In other words, the Swiss civil system does not provide for a deposition akin to a pre-hearing Rule 30(b)(6) deposition of a corporate entity, as Petitioners now seek. *Id.* ¶ 6. As for obtaining documentary discovery in a Swiss civil proceeding, the requesting party would need to demonstrate that the documents are necessary to its case and will be relevant to the outcome of the proceeding. *Id.* ¶ 7. Moreover, the request must be made with specificity. *Id.* Thus, a blanket request for "all" documents and communications, like Petitioners have requested here, would not be permissible, in either a Swiss civil or criminal proceeding. *Id.* ¶¶ 8, 13.

Petitioners' New Request also appears designed to circumvent prohibitions they face under English civil procedure in pleading their threatened claim against Sotheby's in the UK and in obtaining testimony from witnesses. While Petitioners have not to date filed a proceeding in England against Sotheby's UK and Valette, their stated intention to do so is particularly relevant to their New Petition given that much of the information they seek can be found there and would be used by Petitioners in their English suit against Sotheby's UK and Valette. England requires that allegations of fraud be pled with specificity, a standard that Petitioners do not—and have not even attempted to— meet. *See* Michael Declaration, dated March 13, 2018, ¶¶ 5-7. Further, English rules requires that parties meet these heightened pleading standards before obtaining testimony from persons accused of fraud. *Id.* ¶¶ 6, 12. Moreover, the English civil system does not allow parties to conduct a deposition akin to a pre-hearing Rule 30(b)(6) deposition of a corporate entity under the United States' Federal Rules of Civil Procedure. *Id.* ¶ 12. By attempting to obtain pre-action deposition testimony from Sotheby's in New York, Petitioners seek discovery that they are prohibited from obtaining directly from witnesses in England.

Because Petitioners are attempting to obtain discovery that they otherwise would be prohibited from obtaining in Switzerland and the UK for use against Sotheby's and Valette, this factor also weighs in favor of denying the New Petition.

### 3. The New Petition is Burdensome and Intrusive

Finally, the fourth *Intel* factor, whether the requested discovery would be unduly burdensome or intrusive, also warrants denial of the New Petition. When considering whether a petition under § 1782 is unduly burdensome or intrusive, courts apply the principles applicable to Fed. R. Civ. P. 45. It is well within the Court's discretion to

reject an applicant's request for discovery where, as here, the burden of producing the discovery at issue would be disproportionate to the relevance of the materials sought and their importance in the foreign proceeding. *See, e.g.*, *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15 Misc. 319, 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) (denying § 1782 application in large part based on fourth *Intel* factor, and noting that the request "sweeps far too broadly"); *In re Apotex Inc.*, Misc. No. M12-160, 2009 WL 618243, *4, n.1 (S.D.N.Y. Mar. 9, 2009) (same, and noting that the request had amounted to a "fishing expedition"). The burden here is evident on multiple levels.[8]

As an initial matter, the information requested in Petitioners' subpoena is far broader than the issues in the Monaco Criminal Investigation. As the Singapore Court of Appeal noted in its decision of March 17, 2016, Petitioners' expert witness in that proceeding represented to the Singapore courts that the Monaco Criminal Investigation is "limited" since it focused only on Petitioners' acquisition of *three* Works with ties to Monaco. *See* ECF No. 20-1 ¶¶ 20, 29. Here, however, Petitioners seek for use in that proceeding much broader discovery, involving *every* document or communication about *every* transaction entered into between Sotheby's and Bouvier over the course of their eight-year relationship. Such discovery would extend far beyond the relevant issues as Petitioners themselves have described them.

---

[8] Sotheby's raises the following considerations of burden as discretionary grounds upon which this Court should deny Petitioners' application outright, and does not set out a comprehensive set of objections to each discovery request encompassed by Petitioners' proposed subpoena. Sotheby's recognizes that the appropriate opportunity to raise these request-specific objections would be after service of the subpoena at issue, if in fact the Court determines that Petitioners have established their entitlement to any discovery under § 1782 (which it should not).

Second, in addition to seeking all communications between Bouvier and his agents and any employee of Sotheby's, Petitioners also seek all of Sotheby's *internal* communications concerning the Works.  As described above, Sotheby's, over the course of its eight-year relationship with Bouvier, was involved in the sales to Bouvier of 12 of the 37 Works, auctioned 2 of the works on his behalf, and provided valuations for 5 of the Works.  Scillieri Decl. ¶ 3.  It would be unduly burdensome to review eight years of internal correspondence on the chance that those communications *might* somehow provide a clue into Bouvier's allegedly criminal intent (more than the actual communications with Bouvier that Sotheby's already produced to Petitioners), and this burden far outweighs any potential benefit to Petitioners in the pursuit of their claims against Bouvier.[9]  *See In re Kreke Immobilien*, 2013 WL 5966916, at *7 ("Recent cases suggest that courts should be more inclined to grant applications that seek either *a single document* or only those documents relating to *a particular event*."); *In re OOO Promnefstroy*, No. M 19–99, 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (finding proposed subpoena seeking categories of documents from 2005 to 2009 to be "broad by any standard" and to bear "little resemblance to those cases in which such applications were routinely approved—cases requesting a single document or report, or even those documents relating to a single transaction or event").

---

[9] Petitioners are wrong when they assert that the New Petition is not burdensome because "Sotheby's has already identified many, if not all, of the responsive documents."  Pet'rs' New Pet. Mem. at 20.  While Petitioners refer to the declaratory judgment action that Sotheby's filed against the original owners of the *Salvator Mundi* sellers as evidence for this statement—notwithstanding that Sotheby's litigation with those sellers concerned only *one* of the 12 sales to Bouvier in which Sotheby's was involved (and was also the final sale in their 8-year business relationship)—their assertion is far from accurate.  Assuredly, Sotheby's has undertaken a thorough examination of its business relationship with Bouvier, with the assistance of counsel, and is confident that it will prevail against Petitioners' allegations of wrongdoing against it.  But it has not undertaken, nor has it been obligated to undertake, a comprehensive collection and review of *all* documents relating to the Works within each Sotheby's employee's files, as Petitioners' broad discovery requests would purportedly obligate Sotheby's to do.

Third, the burden imposed by the requested discovery is not just a function of the broad time frame of the request or the likely volume of the document review and production.  As described above, *supra* at p. 9-11, the vast bulk of the responsive documents and information is located outside of the Sotheby's office to which the discovery requests are directed.  As discussed, as a threshold matter, § 1782 does not extend to documents located overseas.  But it also is well within the Court's discretion to consider the location of the documents and information when considering whether the requests are too burdensome to warrant § 1782 discovery.  *See, e.g.*, *In re Gemeinshcaftspraxis*, 2006 WL 3844464, at *5.

Petitioners' request for a Rule 30(b)(6) deposition presents a similar burden.  That request would obligate Sotheby's to appoint one of its U.S.-based employees to testify concerning facts and events—the overwhelming majority of which took place in its European offices involving its European customers and employees—notwithstanding that those events lack almost any connection to the Company's operation in the United States.

Fourth, the burden here is compounded because Petitioners seek documents between Sotheby's and third parties.  These documents, unlike Sotheby's earlier production, contain the personally-identifying information of third-party vendors and contractors and, of particular significance, of the original owners of the Works consigned by Sotheby's and sold to Bouvier.  Scillieri Decl. ¶¶ 13, 16.  Because this discovery will involve the production of data maintained almost exclusively within the jurisdiction of the European Union and its member states, the European Union's Data Privacy Directive as implemented by those states will also govern any disclosure.  *See* Michael Decl. ¶ 13. The same is true with respect to data stored in jurisdictions with national data privacy

protection regimes, such as Switzerland. *See* Lembo Decl. ¶ 14. Depending on the particular jurisdiction in which particular communications or documents are stored, Sotheby's would be required to redact any information considered "personal" by either Swiss or United Kingdom law (to identify only two), necessarily requiring a document-by-document review for required redactions, followed by implementation of those redactions. *See* Lembo Decl. ¶¶ 15-18; Michael Decl. ¶¶ 14-17.[10]

Fifth, the requested documents also contain Sotheby's highly proprietary information and trade secrets, disclosure of which could result in great competitive harm. Scillieri Decl. ¶¶ 12-14, 16. With regard to communications with, or information concerning, the original owners of the Works, Sotheby's owes such owners express contractual obligations of confidentiality, such that the disclosure of information learned from those individuals (or even the identities of these individuals) would, under Sotheby's views of its obligations to those clients, require advance notice and an opportunity for them to be heard prior to any production. *Id.* ¶¶ 13, 17. Further still, many of these agreements are governed by different foreign laws. *Id.* ¶¶ 6, 17.

Finally, the disproportionate burden of Petitioners' request is evidenced by Petitioners' inability even to articulate a non-speculative basis for their request and their need for the discovery. Sotheby's already has produced those categories of documents most likely to reflect Bouvier's alleged criminal intent, and that therefore could conceivably be relevant to the Swiss and Monégasque criminal proceedings.

---

[10] *See, e.g.*, *In re Okean B.V.*, 60 F. Supp. 3d 419, 428 (S.D.N.Y. 2014) (denying § 1782 discovery in part on grounds that production of documents would violate Russian and Ukrainian "personal data privacy laws"); *In re Okean B.V.*, No. 12 Misc. 104 (PAE), 2013 WL 4744817, at *2, *4 (S.D.N.Y. Sept. 4, 2013) (ruling, upon motion for reconsideration, that foreign data privacy protection laws protected documents from disclosure even where protected information was accessible at respondent's U.S. offices).

Petitioners nevertheless assert that Bouvier held himself out to Valette as Petitioners' agent, and speculate that he likely held himself out the same way to other Sotheby's employees. Pet'rs' New Pet. ¶ 51. To begin with, the assertion that he held himself out to Valette as Petitioners' agent is incorrect, as is demonstrated perhaps most clearly by the facts that Bouvier took title to the pieces in the names of his own companies and that the vast majority of the pieces sold to Bouvier were never sold to Petitioners. Scillieri Decl. ¶ 3. Petitioners' further assumption that Bouvier had meaningful engagement concerning the Works with other employees, *see* Pet'rs' New Pet. ¶ 51, also is pure speculation (and incorrect).[11] Scillieri Decl. ¶¶ 4-5. And while Petitioners claim to want to understand how Sotheby's conducted the various valuations at issue (a highly proprietary business secret, *see* Scillieri Decl. ¶¶ 13-14, 16), at no point do Petitioners actually assert that the insurance valuations were incorrect in any way or that they paid above-market for the pieces at issue.[12] *See* Pet'rs' New Pet. ¶ 53. Rather, the heart of Petitioners' claim against Bouvier is that Bouvier managed to pay much *less* for the pieces, and that he "repeatedly lied to Petitioners about the purchase price of the Works and the circumstances under which they were acquired." *See* Pet'rs' New Pet. ¶ 7.

Sotheby's has already produced all communications between Valette and Bouvier, and the transactional documents relating to the sales. Their pure guess that Sotheby's may be able to "provide more evidence incriminating Bouvier," Pet'rs' New Pet. ¶ 49,

---

[11] Petitioners' request that Sotheby's be ordered to search for communications between Bouvier and his agents or related entities and any Sotheby's employee, while not grounded in fact, would only add to the burden of complying with Petitioners' requests in light of the wholly unrelated art transport and storage services Bouvier has provided to Sotheby's over the years. *See* Scillieri Decl. ¶ 5.

[12] Indeed, Petitioners would be hard pressed to make such an argument in light of recent events, considering that they appear to have resold one of the works for which Sotheby's issued insurance valuations—*Salvator Mundi* by Leonardo Da Vinci—for a hammer price that exceeded Sotheby's insurance valuation estimate by roughly $337 million.

provides slim to non-existent support for the fishing expedition that Petitioners are asking Sotheby's to undertake and does not come close to justifying the burden imposed.

## II.     The Court Should Exercise Its Discretion to Deny the Additional Request

Petitioners have filed suit and pursued criminal charges in multiple foreign jurisdictions: there are civil and criminal proceedings either ongoing or threatened in five such venues. But Petitioners continue to return to the United States to obtain discovery for use in those proceedings, all the while avoiding the process of the foreign tribunals.

Petitioners' extended § 1782 campaign, including their original petition, their November 2017 request, and their recently-filed Additional Request and New Petition, make plain what Petitioners' game plan truly is—an abuse of process. Petitioners believe that they can access more information from Sotheby's through the U.S. courts, and more quickly, and so they are before this Court yet again. Not only are Petitioners seeking to use the documents that they already have from Sotheby's in yet another criminal proceeding, but if the current applications are granted, Petitioners surely will be before this Court seeking to use that discovery elsewhere in short order—not only against Bouvier, the stated target of the current requests, but also against Sotheby's.

At bottom, Petitioners have proffered no rationale for why they cannot seek discovery from Sotheby's in any of the many foreign tribunals in which matters, civil or criminal, are currently pending. And Petitioners are disingenuous in their request about how they intend to use the requested discovery, as their Swiss criminal complaint illustrates. *See supra* pp. 13-15. They also withheld the current status of the Swiss Criminal Investigation—failing to disclose that there is a pending decision on whether they are even valid parties to that proceeding.

The Court has the discretion to deny a § 1782 application for bad faith. *See, e.g.*, *Mees*, 793 F.3d at 303 n.18. Sotheby's respectfully submits that the time has come for the Court to halt Petitioners' abuse of the U.S. discovery process and deny the Additional Request. Petitioners should instead seek access to documents that are located primarily in Europe through the European tribunals before which the various criminal and civil proceedings are currently pending.

## III. Certain Documents Submitted in Connection with the New Petition Should Remain Under Seal and Subject to the Terms of the Protective Order

In support of the New Petition, Petitioners filed nine documents under seal: specifically, Exhibits C-E, G-I, K-M to the Kornstein Declaration, dated February 12, 2018. ECF No. 6.[13] These documents were all produced to Petitioners on November 16, 2016 under the Protective Order entered by the Court on November 1, 2016. *See* ECF No. 84. Five of the nine documents (specifically, Exhibits C, D, G, H, I) were submitted by Petitioners in support of their November 2017 application requesting permission to use Sotheby's production in the United Kingdom and Switzerland and were thus the subject of the Court's prior Order, dated December 22, 2017, that the documents remain under seal. *See* ECF Nos. 110, 128. The other four documents (Exhibits E, K, L, M) are of the same type as the five previously submitted to the Court.

Because the purpose for which the documents are being submitted is identical to the prior submission (and the documents are either identical or in kind), the rationale for maintaining them under seal applies with equal force now. As discussed below, the documents at issue are, once again, the subject of what is fundamentally a discovery dispute and therefore are not "judicial documents" to which a presumption of access

---

[13] References to these confidential materials appear on pages 4 through 8 of the New Petition, as well as on pages 4 through 8 of Petitioners' Memorandum of Law in Support of the New Petition. ECF Nos. 4, 7.

applies. In addition, the weight of the public access presumption is low and the competing considerations also weigh strongly against disclosure.

### A. Legal Standard

For the presumption of access to apply, "a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1048 (2d Cir. 1995)). If judicial documents are at issue, the next step is to "determine the weight of that presumption." *Id.* "[T]he weight . . . must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quoting *Amodeo II*, 71 F.3d at 1049). Finally, "the court must 'balance competing considerations against [the presumption].'" *Id.* at 120 (quoting *Amodeo II*, 71 F.3d at 1050). In doing so, "factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050).

### B. The Materials at Issue Are Not Judicial Documents

"In determining whether a document is a judicial record, the Court must evaluate the 'relevance of the document's specific contents to the nature of the proceeding' and the degree to which 'access to the [document] would materially assist the public in understanding the issues before the . . . court, and in evaluating the fairness and integrity of the court's proceedings.'" *Winfield v. N.Y.C.* (*Winfield I*), No. 15-CV-05236 (LTS) (KHP), 2017 WL 2880556, at *3 (S.D.N.Y. July 5, 2017) (quoting *Newsday LLC v. Cty.*

*of Nassau*, 730 F.3d 156, 166-67 (2d Cir. 2013)).  It is well settled that "[t]he mere filing

of a paper or document with the court . . . is insufficient to render it a judicial document."

*Id.* (quoting *United States v. Amodeo* (*Amodeo I*), 44 F.3d 141, 145 (2d Cir. 1995)); *see*

*also Lugosch*, 435 F.3d at 119.

 As relevant here, "documents filed with the court in connection with discovery-

related disputes are [categorically] not judicial documents."  *Winfield v. N.Y.C. (Winfield*

*II)*, No. 15-CV-05236 (LTS) (KHP), 2017 WL 5054727, at *2 (S.D.N.Y. Nov. 2, 2017)

(alteration in original) (quoting *Winfield I*, 2017 WL 2880556, at *4).  This is because

"documents used in support of discovery motions are not immediately relevant to the

exercise of Article III judicial power because information produced through the resultant

discovery may never be proffered in support of an adjudication of the merits of a case,

either at trial or in support of a dispositive motion."  *Id.* at *3 (quoting *Winfield I*, 2017

WL 2880556, at *4).[14]

 Thus, just as in Petitioners' prior application, the exhibits at issue were filed in

connection with a discovery dispute.  Petitioners brought their original §1782 proceeding,

Sotheby's agreed to produce certain documents in reliance on the Protective Order, and

ultimately the Court ordered Sotheby's to produce those limited documents.  The New

Petition now seeks additional discovery from Sotheby's for use in other foreign

proceedings.  Although Petitioners have attached the exhibits to support the New Petition,

they could do so only because they had the production from the original § 1782 petition.

---

[14] *See also SEC v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001) (rejecting the defendant's contention
that confidential deposition testimony became "a 'judicial document' because the Court reviewed it in
order to decide whether or not to enter [a] protective order" and noting that to hold otherwise "would
transform every document that a court reviews into a 'judicial document' presumptively open to the public,
despite well-settled law to the contrary").

Accordingly, although the Court will adjudicate whether Petitioners are entitled to additional discovery, the particular documents at issue—similar to the cases above—are akin to documents requested in civil litigation during discovery that are now the subject of a dispute between the parties. As such, access to the documents would not "materially assist the public in understanding the issues before the district court, and in evaluating the fairness and integrity of the court's proceedings." *Newsday*, 730 F.3d at 167 ("The mere fact that a dispute exists about whether a document should be sealed or disclosed . . . cannot *ipso facto* create a presumption of access.").

Moreover, where non-judicial documents "have been placed under seal pursuant to a protective order . . . the rule of *Martindell* [*v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979)] establishes a strong presumption *against* public access where it is established that the party claiming privacy has reasonably relied on the protective order." *TheStreet.Com*, 273 F.3d at 234.[15] Here, Sotheby's agreed to produce documents, now at issue, in reliance on the Protective Order. Having reasonably relied on that order to protect its business interests, Sotheby's should benefit from the presumption.

### C. The Presumption of Access Is Low and Competing Considerations Weigh Heavily Against Public Disclosure

Even if judicial documents are at issue, that "does not mean that access . . . cannot be restricted." *Amodeo I*, 44 F.3d at 146. "Unlimited access to every item turned up in the course of litigation would be unthinkable. Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information." *Amodeo II*, 71 F.3d at 1048-49. "[T]he common-law right of inspection has bowed before the power of a court to insure that its records are not . . .

---

[15] "Though *Amodeo I* did not refer to *Martindell*, it left the general rule of *Martindell* undisturbed." *TheStreet.Com*, 273 F.3d at 231.

[used] as sources of business information that might harm a litigant's competitive

standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

Here, any presumption of public access would be low. "Documents that play no

role in the performance of Article III functions, such as those passed between the parties

in discovery, lie beyond the presumption's reach and 'stand[ ] on a different footing than

. . . a motion filed by a party seeking action by the court,' or, indeed, than any other

document which is presented to the court to invoke its power or affect its decisions."

*Amodeo II*, 71 F.3d at 1050 (alterations in original) (citations omitted). So too here.

Competing considerations also weigh heavily against public disclosure. The

information at issue is "Confidential Material" as defined by Paragraph 2.4 of the

Protective Order because it constitutes the "trade secrets, proprietary business

information, competitively sensitive information, or other information the disclosure of

which would, in the good faith judgment of [Sotheby's], be detrimental to the conduct of

[Sotheby's] business or the business of [Sotheby's] customers or clients." ECF No. 84 ¶

2.4. Specifically, these discovery materials contain information about Sotheby's business

practices with regard to *private* sales of art, a highly competitive industry in which

confidentiality is critical to an art dealer's business, and include the views of a Sotheby's

specialist and expert in contemporary art that were shared with a client of the company

(the contact itself also being proprietary). Scillieri Decl. ¶¶ 10-15. Thus, disclosure to

the public at large, which includes both competitors and clients, could result in great

competitive harm to Sotheby's. *Id.* ¶ 13-15. Competitors and clients alike could seek to

use this type of information to gain an unfair advantage over Sotheby's in the marketplace with regard to other private sales of art.[16]  *Id.* ¶13-14.

Moreover, any use of these documents is subject to the Protective Order.  Scillieri Decl. ¶ 12; ECF No. 84 ¶¶ 5.1-6.3.  For example, in permitted foreign proceedings, Petitioners "shall not provide or disclose Discovery Material to the general public, including any reporter or member of the press."  *Id.* ¶ 5.1.  Further, "Confidential Material" may be shared only with "those persons identified as Qualified Persons" under the Protective Order.  *Id.* ¶ 6.1.

## CONCLUSION

For the reasons set forth herein, Respondent Sotheby's respectfully requests that the Court deny the New Petition and the Additional Request.  Sotheby's further respectfully requests that the court maintain under seal Exhibits C-E, G-I, and K-M to the Kornstein Declaration as well as the redacted portions of Petitioners' Application for an Order under § 1782 and Memorandum of Law in Support of Petitioners' Application, and direct the redaction of the portions of any other papers filed by Petitioners that reference Exhibits C-E, G-I, and K-M or other confidential materials.

---

[16] *See, e.g.*, *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412-13 (S.D.N.Y. 2015) (sealing exhibits where they consisted "largely of 'highly confidential sales information, including pricing information,' which is not available to the public, and emails revealing confidential negotiations between Skyline and one of its customers"), *modified in part on reconsideration on other grounds*, No. 13-CV-8171 (JMF), 2015 WL 3739276 (S.D.N.Y. June 15, 2015).

Dated:    New York, New York
             March 13, 2018

ARNOLD & PORTER KAYE SCHOLER LLP


By:    */s/ Marcus A. Asner*
       Marcus A. Asner
       Sara L. Shudofsky
       250 W. 55th Street
       New York, NY 10019-9710
       Tel: 212.836.8000
       Fax: 212.836.8689
       marcus.asner@arnoldporter.com
       sara.shudofsky@arnoldporter.com

       *Attorneys for Respondent Sotheby's, Inc.*