# Exhibit M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re Application of ACCENT DELIGHT INTERNATIONAL LTD. and XITRANS FINANCE LTD. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings. | Civil Action No. 16 Misc. 125 (JMF)<br><br>Civil Action No. 18 Misc. 50 (JMF) |

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS'
MOTION TO AMEND THE PROTECTIVE ORDER TO ALLOW USE OF
DISCOVERY IN GENEVA, IN OPPOSITION TO PETITION FOR
FURTHER DISCOVERY, AND IN SUPPORT OF CONTINUED SEALING**

Oral Argument Requested

MCKOOL SMITH, P.C.
Daniel W. Levy
Alyssa M. Pronley
One Bryant Park
47th Floor
New York, New York  10036
Telephone: (212) 402-9400
Telecopier: (212) 402-9444

Counsel for Intervenors
Yves Bouvier and MEI Invest Ltd.

# TABLE OF CONTENTS

I. Preliminary Statement ............................................................................................................1

II. Factual Background ...............................................................................................................5

    A. Developments in Singapore and Switzerland ...............................................................5

        1. Petitioners File A Criminal Case in Switzerland *Before* the Singapore Court has Ruled on the *Forum Non Conveniens* Appeal ........................................................................................................5

        2. Petitioners' Standing in Switzerland Is Questioned.....................................9

        3. Petitioners Target Sotheby's in the Swiss Criminal Complaint.....................................................................................................15

    B. Developments in Monaco Taints Petitioners' Case ....................................................16

        1. Petitioners Submit the Discovery in Monaco and Do Nothing Else.....................................................................................................16

        2. Corruption Taints Petitioners' Case in Monaco.........................................18

    C. The Recently Filed Conciliation Action in Geneva ....................................................21

III. Argument ..............................................................................................................................21

    A. Legal Standard ............................................................................................................21

    B. The Court Should Deny the New 1782 Application.....................................................22

        1. Petitioners Do Not Satisfy the Statutory Factors for Switzerland.................................................................................................22

        2. The Discretionary Factors Weigh Heavily Against the Application...............................................................................................23

    C. The Court Should Deny the Application to Use the Previously Obtained Discovery in the Geneva Criminal Proceeding.....................................27

    D. In the Alternative, The Court Should Defer Ruling on This Motion Until the Geneva Prosecutor Has Determined Whether Petitioners Have Standing..........................................................................................................28

    E. Redacted and Sealed Materials Filed by Petitioners Should Remain As Such ........................................................................................................................28

IV. Conclusion ...........................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

*Allco Fin. Ltd. v. Klee*,
   861 F.3d 82 (2d Cir. 2017), *cert. denied*, 138 S.Ct. 926 (2018) ...............................11

*Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp.
L.L.C. v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015) ......................................................................... 21, 22

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017) ...............................................................17, 18, 22

*In re Accent Delight Int'l Ltd.*,
   No. Misc 125 (JMF), 2017 WL 6568059 (S.D.N.Y. Dec. 22, 2017) .........................19, 27, 29

*In re Appl. of Accent Delight Int'l Ltd.*,
   16 Misc. 125 (JMF), 2016 WL 5818597 (S.D.N.Y. Oct. 5, 2016) ........................17

*In re Application of Caratube Int'l Oil Co., LLP*,
   730 F. Supp. 2d 101 (D.D.C. 2010) .....................................................................26

*In re Application of Elvis Presley Enterprises LLC for an Order to Take Discovery
Pursuant to 28 U.S.C. § 1782*,
   No. 15 Misc. 386, 2016 WL 843380 (S.D.N.Y. Mar. 1, 2016) ...............................24

*In re Application of Operacion y Supervision de Hoteles, S.A. de C.V.*,
   No. 14 Misc. 82 (PGG), 2015 WL 82007 (S.D.N.Y. Jan. 6, 2015) ........................19

*In re Appl. of XPO Logistics, Inc.*,
   No. 15 Misc. 205, 2016 WL 3528195 (S.D.N.Y. June 22, 2016), *appeal
   dismissed*, 673 F. App'x. 85 (2d Cir. Dec. 15, 2016) ............................................28

*In re Babcock Borsig AG*,
   583 F. Supp. 2d 233 (D. Mass. 2008) ..................................................................26

*In re Digitechnic*,
   No. C07-414-JCC, 2007 WL 1367697 (W.D. Wash. May 8, 2007) ......................26

*In re IPC Do Nordeste, LTDA, For an Order Seeking Discovery Under 28 U.S.C. 1782*,
   No. 12-50624, 2012 WL 4448886 (E.D. Mich. Sept. 25, 2012) ............................25

*In re Sargeant*,
   278 F. Supp. 3d 814 (S.D.N.Y. 2017) .............................................................22, 23

ii

*In re WinNet R CJSC*,
    No. 16 Misc. 484, 2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017)............................................25

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)........................................................................................................22, 23

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006)..........................................................................................29, 30

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015).........................................................................................22, 24

*Saleem v. Corporate Transp. Grp. Ltd.*,
    No. 12 Civ. 8450 (JMF), 2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013) ...............................30

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004)...................................................................................................22

*United States v. Amodeo*,
    44 F.3d 141 (2d Cir. 1995)...................................................................................................29

Intervenors Yves Bouvier and MEI Invest Ltd. respectfully submit this Memorandum of Law: (a) in opposition to Petitioners' motion to amend the Protective Order entered on November 1, 2016, to permit Petitioners to use discovery previously obtained in criminal proceedings initiated in Geneva; (b) in opposition to Petitioners' newly filed application under 28 U.S.C. § 1782 for discovery that they propose to use in criminal proceedings in Monaco and Geneva; and (c) in support of the continued sealing of various documents or portions of documents filed in connection with the newly filed Section 1782 application.

I.    **Preliminary Statement**

The Court should deny the newly filed Section 1782 application.

First, Petitioners' ability to participate in the Geneva criminal proceeding has been seriously questioned by the Geneva prosecutor -- a fact that Petitioners entirely fail to mention in their moving papers. Nearly five months ago, the Geneva prosecutor asked Petitioners to justify their standing in the Geneva criminal proceeding. To date, they have not responded to the Geneva prosecutor's specific inquiries for information. The questions raised by the Geneva prosecutor and Petitioners' failure to respond render them unable to satisfy two of the three statutory requirements under Section 1782, the "for use" and "interested person" requirements with respect to the Geneva criminal proceeding. And their failure to disclose the serious questions raised about their standing as private claimants in the Geneva criminal proceeding betrays their utter bad faith in proceeding before this Court.

Second, the discretionary factors required to be considered under Section 1782 weigh heavily in favor of denying the newly filed Section 1782 application. The Monaco criminal proceeding is the result of astounding acts of corruption involving Petitioners and the Monaco judicial authorities are now investigation these acts of corruption. Beyond providing the Minister of Justice of Monaco with significant benefits and engaging with the police in a manner

1

implicating Monaco criminal law regarding influence trafficking, Petitioners' representative illegally recorded another person in order to manufacture jurisdiction in Monaco.

Beyond that, Petitioners have made virtually no use in Monaco of the documents that they obtained from Respondent Sotheby's, Inc. ("Sotheby's") in November 2016, strongly indicating that the documents sought by their new Section 1782 application are not for use in Monaco. This is all the more shocking in light of their breathless claims in September 2016 of a virtually immediate need for the documents and their subsequent promises to the Monaco investigating magistrate that they would use the documents to advance their case against Bouvier and MEI. Having generated a tremendous amount of work for all concerned to obtain these documents from Sotheby's and the Leonardo da Vinci sellers, one would have expected them to engage in extensive advocacy before the Monaco investigating magistrate about the meaning of the documents that they obtained, much like what they have done before this Court in connection with their new Section 1782 application. But that is not remotely what happened. Other than sending the Monaco investigating magistrate the documents obtained from Sotheby's and the sellers of the Leonardo da Vinci painting, they have done nothing with them.

The failure to use the documents that they obtained at great trouble and expense betrays what is increasingly obvious about their newly filed Section 1782 application. Now that corruption in Monaco has been revealed, Petitioners have largely abandoned use of the Sotheby's documents in Monaco and their appetite for pressing forward with any Sotheby's documents in Monaco has entirely dissipated. At the end of the day, Petitioners' claim of a need for discovery from Sotheby's and that they will put them to use in Monaco is pretextual.

And with respect to Switzerland, it is as plain as day that Petitioners seek to make Sotheby's a party to the Geneva criminal proceeding, a fact that weighs strongly against the Court's exercising its discretion to grant Section 1782 relief. Sotheby's had no knowledge of the

2

prices that Bouvier and MEI charged in any re-sale of any painting to Petitioners and derived no financial benefit whatsoever from any such re-sales.  Undeterred, Petitioners are so anxious to make Sotheby's a party to the Geneva criminal proceeding that, earlier this month and at one of the first hearings in the Geneva criminal case after Bouvier learned the nature of the allegations filed against him, Petitioners asked the Geneva prosecutor to direct Bouvier to produce a large quantity of documents relating to Sotheby's.  The Geneva prosecutor declined to do so, deeming the request premature, and directed Petitioners to make their request in writing.  Although Section 1782 does not impose a requirement that an applicant exhaust efforts to obtain discovery in the foreign litigation, where the applicant has started to do so, the Court, in exercising its discretion, should permit Petitioners to complete the process that they initiated, lest the grant of relief under Section 1782 circumvent any decision of the Geneva prosecutor by which he might reject Petitioners' request.

Lastly, the Court should exercise its discretion to deny the newly filed Section 1782 application because of the sheer breadth and intrusiveness of the discovery requested from Sotheby's, as Sotheby's points out in its brief.

As for the request to use the previously obtained documents in the Geneva criminal proceeding, there is compelling evidence of bad faith and abuse of process, such that the standard set by the Court in its December 2017 opinion has been satisfied.  Perhaps the most egregious example is the manner in which Petitioners filed their Swiss criminal complaint, but then failed to disclose the filing to the Singapore Court of Appeal, the Second Circuit, and this Court.

In Singapore, Petitioners appeared before the Court of Appeal and repeatedly denied that Switzerland was an available forum because, among other reasons, Swiss courts could not exercise jurisdiction over Petitioners' claims against Bouvier and MEI.  What they failed to

1354917

disclose is that, a week after the oral argument before the Singapore Court of Appeal on Bouvier's *forum non conveniens* appeal and long before that court's decision, Petitioners had *already* filed a criminal complaint in Switzerland.

But that was not the last stop on this train of omissions. Days after the Singapore Court of Appeal decided the *forum non conveniens* appeal in favor of Bouvier and MEI, Petitioners wrote to the United States Court of Appeals to inform it of the Singapore court decision. They argued that they "will now pursue damages against Bouvier in some other forum" and that the "forthcoming change in forum" was irrelevant to the appeal. In doing so, they failed to disclose that, in fact, Petitioners had *already* filed a new criminal case in Switzerland. Petitioners improperly hid this fact and cannot be heard to argue now that the omission did not matter.

Even now, Petitioners' falsely claim as part of their new Section 1782 application that Petitioners filed their criminal complaint in Switzerland "[i]n response" to the Singapore Court of Appeal's decision on *forum non conveniens.* That cannot be true. Petitioners filed it on March 8, 2017, nearly six weeks *before* the Singapore Court of Appeal ruled on April 18, 2017.

Additional examples of Petitioners' bad faith and abuse of process in their global terror campaign against Bouvier include:

- Petitioners' repeated false statements that Bouvier has been charged with crimes in Switzerland, Monaco, and Paris, which Petitioners' took great pains to disseminate in the media;

- The corruption in Monaco and the manner in which the Minister of Justice and the Monaco police were coopted to do Petitioners' bidding; and

- Petitioners' failure to disclose to this Court that their standing has been questioned in the Geneva criminal proceeding.

The Court should put a stop to this long train of abuses and should deny Petitioners' request to modify the Protective Order and their newly filed Section 1782 application.

Finally, the Court should maintain various exhibits filed by Petitioners and portions of

other documents purporting to describe those exhibits under seal because they are not judicial documents. The exhibits, the characterization by Petitioners of the exhibits, and the inferences that they attempt to draw from these documents need not be considered in ruling on the newly filed Section 1782 application.

Bouvier and MEI join in the arguments set out by Sotheby's in its Memorandum of Law.

## II.     Factual Background

The contours of the worldwide dispute between, on the one hand, Intervenors Yves Bouvier ("Bouvier") and MEI Invest Ltd. ("MEI"), and, on the other, Petitioners Accent Delight International Ltd ("Accent Delight") and Xitrans Finance Ltd. ("Xitrans"), and the proceedings in Switzerland, Monaco, Singapore, Paris, and Hong Kong arising out of that dispute are described in various documents previously filed with the Court. *See especially* 16 Misc. 125, Docket Entry No. 16 at 2-12; Docket Entry No. 35 at 2; Docket Entry No. 47 at 1-2.

The remainder of this section summarizes the more pertinent aspects of the foreign proceedings and developments in those cases that bear on the pending applications.

### A.     Developments in Singapore and Switzerland

#### 1.     Petitioners File A Criminal Case in Switzerland *Before* the Singapore Court Has Ruled on the *Forum Non Conveniens* Appeal

On March 12, 2015, Petitioners commenced civil litigation in Singapore against Bouvier and MEI (the "Singapore Proceeding"). Petitioners principally asserted claims against Bouvier for breach of fiduciary duty and fraudulent misrepresentation and similar claims against MEI. As part of instituting the Singapore Proceeding, Appellees also sought an *ex parte*, worldwide, pre-judgment injunction (the "*Mareva* injunction" or the "injunction") that prevented Bouvier and MEI from disposing of any assets up to $500 million. The lower court granted the injunction. *See* 16 Misc. 125, Docket Entry No. 3-12. On August 21, 2015, the Singapore Court of Appeal, that country's highest court set aside, the injunction. *Id.* at ¶¶ 5, 165.

5

One of several reasons that the Singapore Court of Appeal set aside the *Mareva* injunction was Petitioners' extensive litigation misconduct. Indeed, the Singapore Court of Appeal described at great length Petitioners' litigation misconduct. *Id.* at ¶¶ 107-31.

After the setting aside of the *Mareva* injunction, the Singapore Proceeding continued in the lower court. Because Petitioners, at the time, had only initiated criminal proceedings in Monaco, Bouvier and MEI sought to require Petitioners to select one forum to litigate their claims (either Monaco or Switzerland). Bouvier and MEI further argued that Singapore was not a convenient forum to hear the dispute and that Petitioners should be required to select a forum that was not inconvenient. Bouvier and MEI's request (referred to here generally as the *forum non conveniens* motion) was for the parties' dispute to be adjudicated in Switzerland -- the natural forum and the one jurisdiction that actually governed the underlying business relationship between the parties. On March 17, 2016, the lower court denied the motion. *See* 16 Misc. 125, Docket Entry No. 15-2.

Bouvier and MEI took an appeal of the decision of the lower court to deny the motion. In general, Petitioners took the position that Switzerland was not an available forum for its claims against Bouvier and MEI because the Swiss courts did not have jurisdiction over the dispute and that Singapore was the more convenient forum. The Singapore Court of Appeal heard oral argument on March 1, 2017. *See* 16 Misc. 125, Docket Entry No. 115-5.

On March 8, 2017 -- a week after the oral argument, but weeks *before* the decision of the Singapore Court of Appeal -- Respondents filed a criminal complaint in the Swiss canton of Bern. That is, after litigating the issue of *forum non conveniens* for more than a year and having won before the lower court by contesting that Switzerland would not have jurisdiction, Petitioners nonetheless filed their case in Switzerland and did so *before* the Singapore Court of Appeal had even decided Bouvier and MEI's appeal. Petitioners did not inform the court in

6

Singapore, or Intervenors for that matter, of this significant development that would likely have

borne on the Singapore Court of Appeal's decision-making process.  *See* Letter from Public

Prosecutor of the Canton of Geneva, dated Feb. 15, 2018; Criminal Complaint, dated Marc. 8,

2017 (relevant pages attached hereto as Exh. A to the Declaration of Daniel W. Levy, sworn to

on Mar. 13, 2018 ("Levy Decl.")).

On April 18, 2017, the Singapore Court of Appeal decided Bouvier and MEI's appeal in

their favor.  The Singapore court held that Switzerland was "clearly or distinctly a more

appropriate forum than Singapore" and stayed litigation in Singapore.  Finally, the court

concluded that "it is now for [Appellees] to choose their forum."  *See* 16 Misc. 125, Docket

Entry No. 115-5 at ¶¶ 104, 126.  Of course, the Singapore Court of Appeal was unaware that

Petitioners had already done so.

Two days later, Petitioners filed a Rule 28(j) letter with the United States Court of

Appeals before which Bouvier and MEI's appeal was then pending.  Petitioners wrote:

> The [Singapore Court of Appeal decision's] determination that Singapore is not a
> convenient forum is irrelevant to the legal issues presented here.  When the
> Petition was filed, the Singapore action satisfied § 1782 because Petitioners
> sought discovery "to be used at some stage of a foreign proceeding that was
> within reasonable contemplation at the time of the proceedings below."
> ***Petitioners will now pursue damages against Bouvier in some other forum.  The
> forthcoming change in forum does not affect whether the Monaco proceedings
> satisfy § 1782 or whether, as Bouvier claims, § 1782 imposes a per se bar to the
> use of discovery in other proceedings.***

*See* Letter from Daniel J. Kornstein, dated April 20, 2017 (emphasis added) (attached as Exh. B

to Levy Decl.).  Far from indicating that a new Swiss criminal case had been filed, Petitioners

suggested to the contrary ("will now pursue damages . . . in some other forum"; "[t]he

forthcoming change in forum").

During oral argument on May 17, 2017, Petitioners' counsel had plenty of opportunity to

disclose that Petitioners had already filed a new criminal complaint in Switzerland.  Petitioners

went out of their way to omit that fact. When asked what Petitioners would try to do with the

documents if the Court of Appeals lifted the stay on their use that had been granted in December

2016, Petitioners said:

> The documents will be commented on and talked about in Monaco, beyond that, and in Paris, in that proceeding. Beyond that, we have no right under the protective order to use them. We would have to go back to Judge Furman and make an application *if there is another proceeding.*

> Singapore is out of the question now. Although it's not dismissed; it's stayed depending on what happens.

> But, *if and when there is another proceeding*, and if we want to use the documents, we would make an application to Judge Furman.

Recording of Oral Argument, dated May 17, 2017, at 24:23-25:00 (emphasis added) (available at

http://www.ca2.uscourts.gov/decisions/isysquery/091abf11-e32a-4234-9121-

78cac7bfc9ff/445/doc/16-3655%202.mp3).

    Nowhere in Petitioners' 28(j) letter or during oral argument did Petitioners tell the Court

of Appeals that, in fact, Petitioners had *already* instituted a criminal proceeding in Switzerland

and that it had done so even before the Singapore Court of Appeal had ruled on the *forum non*

*conveniens* appeal. However Petitioners may now seek to contort these words, it is impossible to

conclude that Petitioners' omission was anything other than both misleading and intentionally so.

    Bouvier and MEI did not find out about the filing of the Swiss criminal complaint until

late May 2017, after oral argument before the United States Court of Appeals. It was then that

Petitioners' Swiss counsel communicated with the Singapore Court of Appeal in an effort to

postpone a determination of damages owed to Bouvier and MEI as a result of the improperly

obtained *Mareva* injunction. *See* 16 Misc. 125, Docket Entry No. 115-6; 16 Misc. 125, Docket

Entry No. 115-7 at ¶¶ 4-5. Their argument was that the inquiry on damages sustained by

Bouvier and MEI should be deferred until after resolution of the Swiss criminal and civil

proceedings, which they suggested would be reasonably speedy. *Id.*

But even then, Petitioners did not disclose, and Bouvier and MEI did not find out, the date on which the Swiss criminal complaint had been filed. Nor, of course, did they disclose that the Swiss criminal complaint had actually been filed nearly six weeks *before* the Singapore Court of Appeal had ruled on Bouvier and MEI's appeal.

In the fuller light of recent revelations, the letter from Petitioners' Swiss counsel seeking to postpone the determination of damages is telling:

> Mr Bouvier would not be able under Swiss law to obtain a copy of [the] document containing the criminal proceedings and civil complaints until the preliminary secret investigation is completed, and the coercive measures are ordered, and after the first interview of the defendants. We would therefore respectfully request that Mr Bouvier not be allowed to circumvent the processes under Swiss law and ask for a copy of the document through this Honourable Court.

16 Misc. 125, Docket Entry No. 115-6 at 1.

Indeed, Petitioners doubled-down on their efforts to prevent Bouvier from finding out more about the Swiss criminal complaint, including the date when they filed it. Petitioners went so far as to claim that they "are constrained by Swiss law from disclosing to [Bouvier and MEI] copies of the documents filed in Switzerland in relation to the criminal proceedings and related civil claims (the 'Swiss Proceedings') referred to in paragraph 4 of our letter dated 29 May 2017." *See* Letter from Drew & Napier, dated June 7, 2017, at 1 (attached as Exh. C to Levy Decl.). There is no such constraint under Swiss law.

## 2. Petitioners' Standing in Switzerland Is Questioned

In or about late January 2018, Bouvier and MEI finally obtained a copy of the criminal complaint and other documents in the prosecutor's file. By that point, the case (the "Geneva Criminal Proceeding") had been transferred from the canton of Bern, where it was originally filed, to the canton of Geneva, where virtually everything important between Bouvier and MEI and Petitioners occurred. *See* Levy Decl., Exh. A.

9

It was only then that Bouvier and MEI finally learned that Petitioners had filed the Swiss criminal complaint in March 2017, *i.e.*, *before* the Singapore Court of Appeal rendered its *forum non conveniens* decision.

Bouvier and MEI also learned that, for months, the Geneva prosecutor had been calling into question Petitioners' standing in the Geneva criminal proceeding. Specifically, several months after Petitioners filed the Geneva Criminal Proceeding, the public prosecutor for the canton of Geneva (the "Geneva Prosecutor") requested that Petitioners provide further information about themselves. He did so on October 16, 2017, and in advance of a hearing scheduled for October 30, 2017. *See* Letter from Public Prosecutor of the Canton of Geneva, dated Oct. 16, 2017 (attached as Exh. D to Levy Decl.). Among other things, the Geneva Prosecutor requested:

> documents concerning [Petitioners'] incorporation (deed of incorporation, settlor, beneficiaries, trustee, protector and letter of wishes)

The Geneva Prosecutor also requested bank statements to show Petitioners' "funding and of the dealings with Yves Bouvier, the company Mei [sic] Invest and any other entity involved in the purchases/sales of the paintings concerning which the complaint has been made." *Id.*

In the context of these proceedings, the plain import of this request was that the Geneva Prosecutor had questions regarding Petitioners' standing in the Swiss criminal case. The Swiss criminal complaint does not explain how Petitioners directly suffered harm as a result of Bouvier's actions. Thus, the Geneva Prosecutor was directly calling into question whether Accent Delight and Xitrans were "persons suffering harm" within the meaning of Section 115(1) of the Swiss Criminal Procedure Code. *See* Swiss Criminal Procedure Code § 115(1) ("A person suffering harm is a person whose rights have been directly violated by the offence.") (relevant sections attached as Exh. E to Levy Decl.).

In order to be a private claimant in a Swiss criminal case and, thereby have participatory rights in the proceeding, a person must first be a "person suffering harm." *Id.* § 118(1) ("A private claimant is a person suffering harm who expressly declares that he or she wishes to participate in the criminal proceedings as a criminal or civil claimant"); *see also id.* § 107(1) (setting out rights that parties have); *id.* § 104 (defining parties to include private claimants).

The Swiss criminal law concept of "person suffering harm" is roughly equivalent to two of the three requirements for Article III standing: injury ("a person whose rights have been . . . violated"); and causation ("a person whose rights have been *directly* violated by the offence"). *See Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 95 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 926 (2018) (Article III standing requires "(1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief").

Petitioners' Swiss counsel responded to the Geneva Prosecutor's inquiry about standing on October 26, 2017, by providing basic corporate formation documents. *See* Letter from Carlo Lombardini, dated Oct. 26, 2017 (attached to Levy Decl. as Exh. F). He did not provide any of the requested banking information necessary to trace any funds from the entities that filed the Geneva Criminal Proceeding to any Bouvier entity that sold the works of art.

This information was plainly insufficient to satisfy the Geneva Prosecutor's concerns. At the October 30, 2017, hearing, Petitioners' Swiss counsel recognized as such. Petitioners' Swiss counsel noted that the Geneva Prosecutor had already requested various documents concerning the companies who had filed the Geneva Criminal Proceeding, specifically:

The shareholders' names

Their method of funding

11

> Their role in the facts, concerning which the complaint is lodged,
>
> Whether the companies are owned by trusts directly or indirectly linked to Dmitri RYBOLOVLEV, information that we [Accent Delight, Xitrans, and Jolly Times] had previously been asked for in a letter dated 16 October 2017.

See Minutes of Proceeding, dated Oct. 30, 2017 (attached as Exh. G. to Levy Decl.).  Petitioners' Swiss counsel also noted that "[i]f you [the Geneva Prosecutor] require additional documents, you [the Geneva Prosecutor] will request them by letter and we [Accent Delight, Xitrans, and Jolly Times] will try to produce them as soon as possible."  *Id.*

Petitioners' Swiss counsel then noted that the banking information that the Geneva Prosecutor had requested had not yet been provided:

> We [Accent Delight, Xitrans, and Jolly Times] are also in the process of drawing up a detailed list of all the transactions, invoices, payments and other matters related to the dealings in respect of which the complaint has been made.

*Id.*  Finally, Petitioners' Swiss counsel acknowledged that the issue of Petitioners' standing in the Geneva Criminal Proceeding is under consideration by the Geneva Prosecutor:

> You [the Geneva Prosecutor] state that once in possession of those documents you [the Geneva Prosecutor] will be able to give a ruling concerning the claimant companies' capacity to be claimant parties, if necessary after summoning us [Accent Delight, Xitrans, and Jolly Times] again should you require further information.

*Id.*

Only when Bouvier and MEI received a copy of the Geneva Prosecutor's case file did they learn of the questions that the Geneva Prosecutor was asking about Petitioners' standing in the Geneva Criminal Proceeding.  And surely nowhere in their most recent two applications before this Court have Petitioners disclosed anything of the sort.  Indeed, in light of the repeated inquiries about Petitioners' standing, the Declaration of Petitioners' Swiss counsel, Carlo Lombardini, filed in connection with both their recently filed Section 1782 application and their application to use the previously obtained discovery in Geneva, is all the more striking.

Lombardini asserts that Petitioners are "persons suffering harm" without noting in any respect that Petitioners' standing as such is under review by the Geneva Prosecutor. *See* Declaration of Carlo Lombardini, dated Feb. 8, 2018, ¶ 7 (16 Misc. 125, Docket Entry No. 134; 18 Misc. 50, Docket Entry No. 5).

On February 8, 2018, Bouvier appeared before the Geneva Prosecutor. He was not charged with any crimes. Rather, Bouvier was informed that *Petitioners*, not the Geneva Prosecutor, were accusing him of various criminal offenses. *See* Minutes of February 8, 2018, Proceeding (attached as Exh. E to Declaration of Daniel J. Kornstein, dated Feb. 8, 2018 (the "Kornstein Protective Order Declaration")).[1]

At the February 8, 2018, hearing, Petitioners' Swiss counsel orally requested that the Geneva Prosecutor direct Bouvier to produce a large volume of documents relating to Sotheby's. The Geneva Prosecutor responded that such requests would not be entertained orally and that, deeming Petitioner's request premature, Petitioners should make such a request in writing. *See* Letter from David Bitton, dated Feb. 23, 2018, ¶ 29 (attached as Exh. H to Levy Decl.).

On the same day, Petitioners filed their application to modify the Protective Order entered in this case on November 1, 2016, to permit them to use the previously obtained discovery in the Geneva Criminal Proceeding (the "Protective Order Modification Motion"). In the accompanying Memorandum of Law, Petitioners falsely claim that:

### THE GENEVA PUBLIC PROSECUTOR CHARGES BOUVIER

Memorandum of Law in Support of Motion Pursuant to the Protective Order to Use Documents in Swiss Criminal Proceedings, dated Feb. 8, 2018, at 3 (emphasis in original) (16 Misc. 125, Docket Entry No. 135) ("Pet. Protective Order Mem."); *id.* at 5 (referring to the Geneva

---

[1] Petitioners have not filed the original French language version of this document and, as a result, the accuracy of their translation cannot be determined on the present record.

Prosecutor's "charging decision" as having "resolve[d]" "any lingering doubts about Petitioners' good faith in filing their criminal charges in Switzerland"). In truth and in fact, the Geneva Prosecutor did not charge, and has not charged, Bouvier with any crime. He has merely been accused by *Petitioners*, who claim that they are victims. The timing of the false statement that Bouvier had been "charge[d]" and Petitioners' efforts to publicize the false claim were notable. *See* Levy Decl., Exh. H at ¶¶ 15-32.

Petitioners also falsely claim that, "*[i]n response* [to the decision of the Singapore Court of Appeal], Petitioners filed a criminal complaint in Switzerland." Pet. Protective Order Mem. at 3 (emphasis added). In truth and in fact, the criminal complaint was filed almost six weeks *before* the Singapore Court of Appeal's decision and emphatically *not* "in response" to it.

A few days later, Petitioners filed their new application for further discovery of Sotheby's under Section 1782 (the "New 1782 Application"). They repeated the false statement that they filed the Swiss criminal complaint "in response" to the Singapore Court of Appeal decision, which occurred almost six weeks later. *See* Petitioners' Memorandum of Law in Support of Their Application under 28 U.S.C. § 1782, dated Feb. 12, 2018, at 9 ("In response, Petitioners filed a criminal complaint in Switzerland against Bouvier to determine whether the Swiss authorities would accept jurisdiction over the matter.") ("Pet. 1782 Mem.") (18 Misc. 50, Docket Entry No. 7); Application for An Order under 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings, dated Feb. 12, 2018, ¶ 34 ("New 1782 App.") (18 Misc. 50, Docket Entry No. 4) (same). They also repeated the false statement that "**The Swiss Prosecutor Accuses Bouvier of Fraud**." *Id.* at 13 (emphasis in original).[2]

---

[2] Petitioners also falsely assert that Bouvier was charged with various crimes in Monaco and Paris. New 1782 Application at ¶ 31 ("An investigating magistrate was appointed, and he brought charges against Bouvier for fraud and complicity in money laundering."); *id.* ¶ 32 ("The appointed magistrate brought charges against Bouvier for repeated handling of stolen goods.");

14

Following the February 8, 2018, hearing before the Geneva Prosecutor, Bouvier requested that the Geneva Prosecutor force Petitioners to provide the standing-related documents that the Geneva Prosecutor had requested in October 2016 and that, after giving Bouvier an opportunity to be heard, the Geneva Prosecutor give a final judgment regarding the standing of Petitioners in the Geneva Criminal Proceeding. Levy Decl., Exh. H at ¶¶ 10-12, 33 & p.6.

On March 8, 2018, the Geneva Prosecutor wrote to Petitioners' Swiss counsel:

> I give your clients a final deadline of March 30, 2018 by which to reply to the requests made by the prosecution by letter dated 16 October 2017 and during the hearing of 30 October 2017.
>
> Within the same timeframe your principals are invited to justify themselves about their alleged capacity as claimant parties.

*See* Letter from Public Prosecutor of the Canton of Geneva, dated Mar. 8, 2018 (attached as Exh. I to Levy Decl.). As of the date of this Memorandum of Law, Bouvier and MEI are unaware that Petitioners have responded to the Geneva Prosecutor's demands.

### 3. Petitioners Target Sotheby's in the Swiss Criminal Complaint

The Swiss criminal complaint filed in Switzerland names Bouvier and Tania Rappo, as well as a third person, as accused parties. It also identifies as parties "any other possible party."

The Swiss criminal complaint is littered with allegations of criminal conduct by Sotheby's and Samuel Valette, Sotheby's Senior Director and Senior International Specialist in Impressionist and Modern Art ("Valette"). For example, the complaint asserts:

> There is consequently a strong presumption that Yves Bouvier is guilty of collaborating with various art experts such as Samuel Valette of Sotheby's . . . in order to persuade the claimants to purchase works of art through private expert reports, which suited Yves Bouvier.

Levy Decl., Exh. A at ¶ VI.15.

---

Pet. 1782 Mem. at 1 ("Foreign authorities have charged him with offenses ranging from complicity in money laundering to handling of stolen goods.").

And there is an entire section entitled "Possible collaboration by Sotheby's," in which Petitioners recount various e-mail and other exchanges substantially similar to the ones that they attach to the New 1782 Application.  On the basis of these exchanges, they allege, in sum, that:

> The facts exposed above are sufficient grounds to give rise to the suspicion that Samuel Valette, and possibly other employees of Sotheby's, may have colluded in issuing false certificates to Yves Bouvier, and as consideration may have personally profited from his purchases of art works at Sotheby's.

*Id.* at ¶ X.160.  They then go on to suggest that the Geneva Prosecutor search "Sotheby's business documents relating to the sale of the paintings acquired by the claimants," which they contend "would surely be able to confirm, or otherwise, these suspicions." *Id.* at ¶ X.161.[3]

As part of their Swiss criminal complaint, Petitioners sought to justify filing of their criminal complaint in Bern.  The basis for jurisdiction in the canton of Bern, in comparison to jurisdiction in the canton of Geneva, is laughably thin.  The Swiss criminal complaint includes discussions about how some of the works of art purchased were proposed to be hung in Rybolovlev's Gstaad ski chalet, which is in the canton of Bern, a couple of conversations in Gstaad and purportedly about purchases of art, and a meeting in Gstaad with Rybolovlev's decorator that Bouvier is alleged to have attended.  *Id.* at ¶¶ X.164-76.

### B. Developments in Monaco Taints Petitioners' Case

#### 1. Petitioners Submit the Discovery in Monaco and Do Nothing Else

In September 2016, Petitioners breathlessly told this Court that they could not countenance any delay in the progress of the resolution of their dispute and that they would be prejudiced without the discovery from Sotheby's that they were seeking.  *See* 16 Misc. 125, Docket Entry 43 at 2.

---

[3] As noted above, Sotheby's had no knowledge of the prices that Petitioners paid for the works and derived no financial benefit from the sales to Petitioners.  16 Misc 125, Docket Entry No. 115-12 at ¶ 73.

On October 5, 2016, this Court decided Petitioners' initial Section 1782 Application substantially in their favor. *See In re Appl. of Accent Delight Int'l Ltd.*, 16 Misc. 125 (JMF), 2016 WL 5818597 (S.D.N.Y. Oct. 5, 2016).

On November 1, 2016, this Court entered the Protective Order limiting use of any discovery obtained by Petitioners to the specifically identified proceedings in Singapore, Monaco, and Paris. *See* Kornstein Protective Order Decl., Exh. A at §§ 2.1, 5.1.

Thereafter, Bouvier and MEI sought from the Court of Appeals an emergency stay of various Orders of the Court. On November 15, 2016, the Court of Appeals granted a temporary stay of this Court's order that permitted use of the discovery in Singapore and Paris. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 127 (2d Cir. 2017). As a result, Petitioners obtained discovery from Sotheby's and were permitted to use that discovery in Monaco.

What they did next is telling. On November 25, 2016, Petitioners submitted the documents to the Monaco investigating magistrate. Petitioners did so in electronic form because of the volume of documents. When Petitioners provided the documents to the Monaco investigating magistrate, Petitioners' Monaco counsel noted:

> Some of these documents being in English, I will not fail to provide you with a sworn translation, as well as any comments from my clients.

*See* Letter from Geraldine Gazo, dated Nov. 25, 2016 (attached as Exh. J to Levy Decl.). A few days later, on December 6, 2016, Petitioners resubmitted the documents because of a technical difficulty with the storage medium by which they had originally provided the documents. When she did, Petitioners' Monaco counsel again promised that Petitioners would follow up with sworn translations of the documents and their comments. *See* Letter from Geraldine Gazo, dated Dec. 6, 2016 (attached as Exh. J to Levy Decl.).

1354917

About a week later, the Court of Appeals granted Bouvier's application for a full stay of the Court's various Orders, thereby precluding Petitioners from making any further use of the discovery until the appeal was decided. *In re Accent Delight Int'l Ltd.*, 869 F.3d at 127.

The appeal was decided substantially in Petitioners' favor on August 28, 2017, and the mandate issued on September 19, 2017.

Since then and contrary to their promises, Petitioners have never submitted to the Monaco investigative magistrate a single solitary translation of any of the many English language documents that Sotheby's produced. Nor have they taken any steps to make further use of these documents in Monaco, *e.g.*, to draw any particular documents to the attention of the investigating magistrate or engage in any advocacy about what the documents might mean and what inferences the Monaco investigating magistrate might draw from them. Having great pains to obtain these documents from Sotheby's, one would have expected them to engage in extensive advocacy before the Monaco investigating magistrate about the meaning of the documents that they obtained, much like what they have done before this Court in connection with their new Section 1782 application. Such advocacy never occurred.

Whatever Petitioners' said about the importance of these documents for their criminal case in Monaco cannot have been true. After all, Petitioners have done *nothing* with the documents other than merely providing this large repository of documents to the Monaco investigating magistrate.

### 2. Corruption Taints Petitioners' Case in Monaco

There is a very clear reason why Petitioners have lost their appetite for using the Sotheby's documents to press their criminal complaint in Monaco. In the Summer of 2017, what appears, based on public reporting, to be significant corrupt conduct by Monégasque government officials in connection with this case came to light.

18

In its December 22, 2017, Order permitting Petitioners to use the discovery previously obtained in a new action threatened to be brought in the United Kingdom, the Court appeared to suggest that Bouvier and MEI's failure to allege bad faith should render their complaints about Petitioners' conduct without force for having failed to be advanced previously. *See In re Accent Delight Int'l Ltd.*, No. Misc. 125 (JMF), 2017 WL 6568059, *2 (S.D.N.Y. Dec. 22, 2017) ("Moreover, the Court previously authorized use of the discovery materials in three of those four fora [France, Monaco, Singapore, and Switzerland] and, when it did so, Intervenors made no claim of bad faith."). But there is a very good reason that Bouvier and MEI did not complain previously about the corruption in Monaco, for example, before the Court of Appeals. Bouvier did not learn about this corruption until around the time it was revealed in the press in Summer 2017, months after oral argument on Bouvier and MEI's appeal was heard by the Second Circuit.

The revelations of corruption in Monaco arose out of a criminal complaint initiated by Tania Rappo, Bouvier and MEI's co-defendant in the Singapore and a subject of Petitioners' complaints in the Monaco and Swiss criminal proceedings. Rappo's criminal complaint, in sum, concerned the allegation that a lawyer who works for Rybolovlev and who represents Petitioners in the Swiss criminal and civil proceedings, Tetiana Bersheda ("Bersheda"), had illegally recorded Rappo without Rappo's knowledge and on Bersheda's mobile phone and, thereby, invaded Rappo's privacy, a crime under the law of Monaco. Rappo was not named in Petitioners' original criminal complaint in Monaco and the motive behind the illegal recording was Petitioners' attempt to establish jurisdiction in Monaco because of the very tenuous connections between most of the art at issue in the case and Monaco. *See* 16 Misc. 125, Docket Entry No. 3-9; Docket Entry No. 15-2 at ¶¶ 20, 29 (noting Petitioners' position that Monaco case concerns only three paintings).

As part of the investigation of the allegation of illegal recording, the investigating magistrate obtained access to Bersheda's mobile phone and recovered a large volume of deleted text messages. Among other things and as extensively reported by the press beginning in Summer 2017, the deleted text messages revealed that:

(1)     Philippe Narmino, the Monégasque Minister of Justice at the time, had accepted various benefits and gifts from Rybolovlev in advance of the arrest of Bouvier. Within hours of the publication of the text messages by French newspaper *Le Monde*, Narmino resigned and, upon doing so, announced that he had decided to take "early retirement."

(2)     Bersheda was deeply involved in luring Bouvier to be arrested in Monaco and extending his detention in Monaco for days. In this regard, Section 271 of the Swiss Penal Code, in general, makes it a crime to lure a person from Switzerland to be arrested outside of Switzerland.

(3)     Bersheda was also extensively involved in strategizing with the Monégasque police regarding their investigation of Bouvier in a manner implicating questions of Monégasque criminal law prohibiting influence trafficking.[4]

Since these revelations in the press occurred, Rybolovlev and Bersheda were summoned for questioning about the illegal recording of Rappo by a Monaco investigating magistrate, according to the minutes of that proceeding. Relatedly, Rybolovlev and Bersheda were placed under investigation as part of the invasion of privacy investigation initiated by Rappo's criminal complaint against Bersheda. When they appeared in late February 2018, both refused to make any substantive statements in response to the questions about the relevant events, as they were permitted to do in the context of a criminal case in Monaco. There is now an ongoing corruption investigation in Monaco.

---

[4] Except where otherwise noted, the facts set out above are derived from publicly available reporting by *Bloomberg*, *The Daily Mail*, *The Times*, *Le Monde*, *Artnet News*, and *Bilan*. The articles from which the facts in this section are derived, together with translations of original French language material, are contained in 16 Misc. 125, Docket Entry 115-9.

C.     **The Recently Filed Conciliation Action in Geneva**

Because of the continued threats and harassment of Bouvier by Rybolovlev and his vexatious multiplication of the proceedings, on November 17, 2017, Bouvier and various entities associated with him brought a *requête de conciliation*, an application for conciliation, seeking the Swiss equivalent of a declaratory judgment action, against Rybolovlev and various persons and entities associated with him.  Sotheby's, various entities associated with Sotheby's, including its U.K. subsidiary, and Sam Valette joined the action as co-claimants.  The action was filed in the Court of First Instance of the Canton of Geneva, Switzerland.  *See* 16 Misc. 125, Docket Entry Nos. 150-10 through 12.

In general, the relief sought by all of the claimants is a declaration that they have no liability or debt of any sort to Petitioners, Rybolovlev, and others.

Petitioners and the other defendants in the Swiss conciliation have accepted service of the action and the hearing is scheduled for April 11, 2018.  *See* Invitation to Appear, dated Mar. 2, 2018 (attached as Exh. K to Levy Decl.); Letter from Carlo Lombardini, dated Feb. 26, 2018 (attached as Exh. K to Levy Decl.).

III.     **Argument**

A.     **Legal Standard**

Section 1782 creates three statutory requirements to obtain relief: (1) the person from whom discovery is sought must reside or be found in the district in which the application is made; (2) the discovery must be "for use" in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or "any interested person."  *Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015).

21

Even if the Section 1782 statutory requirements are met, Section 1782 only "*authorizes* but *does not require*, a federal district court to provide judicial assistance." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (emphasis in original). There are four discretionary factors that a district court must consider in determining whether to grant Section 1782 discovery. A district court is required to consider: (1) whether the respondent from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign tribunal to U.S. court assistance; (3) whether the request is an attempt to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) .

### B. The Court Should Deny the New 1782 Application

#### 1. Petitioners Do Not Satisfy the Statutory Factors for Switzerland

Petitioners cannot satisfy the "for use" and "interested person" requirements for the Geneva Criminal Proceeding.

The "for use" requirement in Section 1782 should be interpreted according to its ordinary meaning, *i.e.*, "that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" *See generall*y *Accent Delight*, 869 F.3d at 131-32 (discussing *Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015), and *KPMG*, 798 F.3d 113).

The "interested person" requirement focuses on the participatory rights of a Section 1782 applicant. The Supreme Court has held that one who has significant "participation rights" in a proceeding "possesses a reasonable interest in obtaining judicial assistance, and therefore qualifies as an interested person within any fair construction of that term." *Intel*, 542 U.S. at 256-57; *see, e.g.*, *In re Sargent*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) ("Sargent has not

22

shown any such right to direct LAIL's consideration of this evidence or any recognized relationship between LAIL and him that would permit him to do so.").

Here, Petitioners cannot satisfy their burden to demonstrate satisfaction of either the "for use" or "interested person" requirements. At the present time, their participatory rights with respect to the Geneva Criminal Proceeding, and their right to inject evidence into the proceeding in a way that would work to their advantage, are in substantial question and have not yet been decided upon by the Geneva Prosecutor. Petitioners were asked in late October 2017 to provide documents and information that would justify their standing under Swiss law. In the more than four months since then, they have failed to support their status as "persons suffering harm," within the meaning of Section 115(1) of the Swiss Criminal Procedure Code, a status that could support an ability to participate in the Geneva Criminal Proceeding, within the meaning of Section 107. *See* Levy Decl. Exh. E. Under these circumstances, Petitioners cannot show that the requested discovery can be used to their advantage, such that it would be "for use." Nor can Petitioners show that they are "interested persons."

## 2. The Discretionary Factors Weigh Heavily Against the Application

Beyond the failure to satisfy the statutory requirement for the Geneva Criminal Proceeding, the discretionary factors compel denial of the New 1782 Application.

**Petitioners' Bad Faith With Respect to Monaco.** Despite contending that they needed documents for use in Monaco, they needed them fast, and they would be prejudiced without them, *see* 16 Misc. 125, Docket Entry 49 at 3; Docket Entry No. 43 at 2, once Petitioners got them, Petitioners did nothing with them beyond handing them in bulk electronic form to the Monaco investigating magistrate. At the time that they did so, they promised -- twice -- to provide to the Monaco investigating magistrate both translations of English language documents and commentary on the Sotheby's documents. Levy Decl., Exh. J. One would expect that,

23

having gone to the great trouble of obtaining them in the face of tremendous resistance, they would engage in fierce advocacy about what these documents mean, much like they have done with respect to the New 1782 Application. But they did nothing of the sort. The reasons why Petitioners have largely abandoned use of the Sotheby's documents in Monaco are obvious, now that the corruption that initiated their case and resulted in Bouvier's arrest and detention for several days have been revealed. Yet, they are now back before this Court seeking still more discovery from Sotheby's, a request that, in light of their past, can only be pretextual. Based on this course of conduct -- a claim of great need for discovery from Sotheby's, failure to do anything meaningful with those documents, followed by a claim of a great need for still more documents -- the Court should find that Petitioners have not acted in good faith and should exercise its discretion to deny the New 1782 Application. *See Mees*, 793 F.3d at 301 n.18 (court can deny 1782 application in made in bad faith or for purposes of harassment).

And beyond the sheer bad faith in Monaco is Petitioners' delay. Petitioners have had the initial discovery from Sotheby's since mid-November 2016. The Court of Appeals denied Bouvier and MEI's appeal on August 28, 2017. In the more than six months since the Court of Appeals permitted them to use the discovery in Monaco, Petitioners did nothing to use the previously obtained Sotheby's documents in Monaco and waited those same six months before coming back for more discovery. Their delay, when combined with their bad faith in Monaco, weighs against granting the New 1782 Application. *See, e.g.*, *In re Application of Elvis Presley Enterprises LLC for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, No. 15 Misc. 386, 2016 WL 843380, \*4 (S.D.N.Y. Mar. 1, 2016) (delay of eight months weighed against granting the discovery sought).

**Petitioners' Bad Faith With Respect to Switzerland.** In their New 1782 Application, Petitioners repeatedly make false statements about how Bouvier has been charged with various

criminal offenses in Geneva, statements that were designed to be disseminated to the media. Nothing of the sort has occurred. Levy Decl., Exh. H at ¶¶ 21-26.

And they falsely contend that the Geneva Criminal Proceeding was "in response" to the decision of the Singapore Court of Appeal when that simply could not have occurred.

And perhaps most egregiously, they failed to disclose that their participatory rights in the Geneva Criminal Proceeding are under review and subject to substantial doubt.

These facts evince bad faith on their part and should result in denial of the New 1782 Application. *See, e.g.*, *In re WinNet R CJSC*, No. 16 Misc. 484, 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (granting respondents' motion to quash, in part, due to applicant's bad faith where applicant was not candid, did not inform the court of adverse rulings that undermined its application, and did not provide full and fair description of foreign litigation).

**Circumventing Foreign Proof-Gathering Restrictions.** Petitioners asked the Geneva Prosecutor to direct Bouvier to provide documents concerning Sotheby's. The Geneva Prosecutor deemed the request premature and directed Petitioners to submit a written request. *See* Levy Decl., Exh. H at ¶ 30. Now that this is a live issue that the Geneva Prosecutor directed be litigated in Switzerland, this Court should not permit Petitioners to interfere with whatever decision the Geneva Prosecutor eventually makes on this issue.

While there, for sure, is no requirement that Petitioners exhaust efforts to obtain the documents in Switzerland first, the Court may properly consider Petitioners' efforts overseas to obtain the same documents in exercising its discretion. *See, e.g.*, *In re IPC Do Nordeste, LTDA, For an Order Seeking Discovery Under 28 U.S.C. 1782*, No. 12-50624, 2012 WL 4448886, at *8-9 (E.D. Mich. Sept. 25, 2012) (granting motion to quash because district court may, in its discretion, properly consider a party's failure to first attempt discovery measures in foreign jurisdiction and must be alert for potential abuses that would warrant a denial of an application,

25

such as a party seeking discovery in a federal district court that it could obtain in the foreign jurisdiction, thus gratuitously forcing his opponent to proceed in two separate court systems); *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 107 (D.D.C. 2010) (denying Section 1782 application after considering applicant's failure to first attempt discovery in a foreign jurisdiction because the evidence suggested that applicant was using § 1782 in an attempt to circumvent the foreign tribunal's control over proceeding); *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008) ("district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction"); *In re Digitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007) ("Digitechnic has not even tried to obtain any of the discovery sought here by way of French discovery tools. . . . While [there is no "exhaustion requirement" under 1782,] . . . there is nevertheless no reason that this Court should overlook Digitechnic's failure to attempt any discovery measures in France in making the discretionary decision now before it.") (emphasis omitted).

This is especially true when, as a result of the Swiss conciliation proceeding, Petitioners, Sotheby's, and Sotheby's relevant non-U.S. affiliates are all parties to a pending case in which Petitioners can readily seek specific documents from Sotheby's. Sotheby's and its relevant non-U.S. affiliates have submitted to the jurisdiction of a Swiss court.

**Section 1782 Discovery from a Party.** Petitioners' Swiss criminal complaint makes Sotheby's a party to that case in all but name. The Swiss criminal complaint is replete with allegations that Sotheby's employees participated in the fraud that Petitioners claim Bouvier perpetrated. *See* Levy Decl., Exh. A. Petitioners should not be permitted an easy end-run around this discretionary factor by intentionally delaying making Sotheby's a party to the Geneva Criminal Proceeding, seeking discovery from Sotheby's, and then turning around and

26

using the discovery obtained to make Sotheby's a party.  As Sotheby's sets out in greater detail,

allowing discovery under these circumstances would render this *Intel* factor a virtual nullity.

**Breadth of the Requested Discovery.**  As set out in Sotheby's brief, the discovery

sought is shockingly broad and seeks, among other things, a host of documents relating to

Bouvier, but that have nothing to do with Petitioners, a factor that weighs against granting the

New 1782 Application.

### C. The Court Should Deny the Application to Use the Previously Obtained Discovery in the Geneva Criminal Proceeding

The Court should deny Petitioners' request to use the document previously obtained from

Sotheby's and the sellers of the Leonardo da Vinci picture in the Geneva Criminal Proceeding.

The Court has previously held that a request to use previously obtained discovery should

be denied if there is evidence of bad faith, an abuse of process, or some other chicanery.  *See*

*Accent Delight*, 2017 WL 6568059 at *3 (permitting use of discovery in other litigation "unless

Intervenors and Sotheby's can establish bad faith or some other abuse of process.").

Bouvier and MEI submit that there is more than sufficient evidence of bad faith, abuse of

process, and other chicanery to justify denial of the request, including:

- Petitioners' repeated false statements that Bouvier has been charged with crimes in Switzerland, Monaco, and Paris, which they took great pains to disseminate in the media.  *See* Levy Decl., Exh. H at ¶¶ 15-29

- The corruption in Monaco and the manner in which Petitioners have improperly co-opted the Minister of Justice and the police there to do their bidding.  *See* 16 Misc. 125, Docket Entry. 115-9.

- Petitioners' failure to disclose to this Court that their standing has been questioned in the Geneva Criminal Proceeding.  *See* Levy Decl., Exh. D-I.

- Petitioners' advancing the argument before the Singapore Court of Appeal that Switzerland was *forum non conveniens*, even though Petitioners had filed a criminal complaint in Switzerland a week after the Singapore Court of Appeal heard oral argument on the *forum non conveniens* issue, a fact which they failed to disclose in Singapore.  *See* Levy Decl., Exh. A; 16 Misc. 125, Docket Entry. 115-5.

- Petitioners' failure to disclose to the United States Court of Appeals that they had filed a criminal case in Switzerland either before or during oral argument on Bouvier and MEI's appeal.  *See* Levy Decl., Exh. B.

- Petitioners' falsely claiming before this Court that Petitioners filed their criminal complaint in Switzerland "[i]n response" to the Singapore Court of Appeal decision on *forum non conveniens*, when, in truth and in fact, Petitioners filed it nearly six weeks *before* the Singapore Court of Appeal ruled on the appeal.  *See, e.g.*, App. at ¶ 34; Pet. Prot. Order Mem. at 3; Pet. 1782 Mem. at 9.

Under the standard set by the Court in its December 22, 2016, Order, Bouvier and MEI have shown more than sufficient indicia of bad faith, abuse of process, and other chicanery to justify denial of the request to modify the Protective Order.

### D. In the Alternative, The Court Should Defer Ruling on This Motion Until the Geneva Prosecutor Has Determined Whether Petitioners Have Standing

In the event that the Court is not inclined to deny the pending applications on the record before it, the Court should defer their resolution until the Geneva Prosecutor has determined whether Petitioners have standing in the Geneva Criminal Proceeding.  The Geneva Prosecutor has set a deadline of March 30, 2018, for Petitioners to justify its status.  Levy Decl., Exh. I.

The Court took this sensible approach to Petitioners' original request for Section 1782 discovery and should do so again.  *See* 16 Misc. 125, Docket Entry No. 115-14 at 2-3, 35-36; Docket Entry No. 39; *see In re Appl. of XPO Logistics, Inc.*, No. 15 Misc. 205, 2016 WL 3528195, at *3 (S.D.N.Y. June 22, 2016) (staying Section 1782 discovery until foreign proceedings "advance sufficiently to consider foreign discoverability (along with many other factors)"), *appeal dismissed,* 673 F. App'x. 85 (2d Cir. Dec. 15, 2016).

### E. Redacted and Sealed Materials Filed by Petitioners Should Remain As Such

The Court should maintain under seal: (1) the redacted portions of Petitioners' Application (18 Misc. 50, Docket Entry No. 4); (2) Exhibits C through E, G through I, and K through M to the Declaration of Daniel J. Kornstein, dated Feb. 12, 2018 (the "Kornstein 1782

Declaration") (18 Misc. 50, Docket Entry Nos. 6-3, 6-5, and 6-7); and (3) the redacted portions

of Petitioners' Memorandum of Law (18 Misc. 50, Docket Entry No. 7). All of these materials

were filed in connection with the New 1782 Application. The redacted portions of Petitioners'

Application and Memorandum of Law purport to describe what Petitioners contend is evidenced

in various Exhibits to the Kornstein Declaration.

       The Court previously ruled on a substantially similar issue and held that various

documents (exhibits and an attorney's declaration purporting to describe the exhibits and the

inferences to be drawn from them) should be maintained under seal or filed in redacted form.

Indeed, the Court previously considered some of the very same exhibits as are at issue now. The

Court permitted this relief because "the Court did not need to reference or otherwise rely on the"

sealed or redacted material. *See Accent Delight*, 2017 WL 6568059 at *3.

       The Court should apply the standard set out in *Lugosch v. Pyramid Co. of Onondaga*, 435

F.3d 110 (2d Cir. 2006), and reach the same result here. "Before [the] common law right [of

public access to judicial documents] can attach . . . a court must first conclude that the documents

at issue are indeed 'judicial documents.' . . . In order to be designated a judicial document, 'the

item filed must be relevant to the performance of the judicial function and useful in the judicial

process.'" *Id.* at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)).

       Even when discovery material is filed as part of a discovery dispute, it does not

automatically become a judicial document. *Id.* at 119 ("mere filing of a paper or document with

the court is insufficient to render that paper a judicial document subject").

       For the purposes of the New 1782 Application, Petitioners assert that the discovery

previously obtained contains the evidence summarized in the Application and their

Memorandum of Law. The Court need not rule on whether Petitioners have accurately described

the sealed Exhibits, whether Petitioners have accurately summarized the circumstances in which

29

these materials were created, or whether Petitioners have drawn proper inferences about the meaning of these documents. *See* Application ¶¶ 14-19, 21-27, 29; Pet. Mem. at 4-8. In short, the content of these documents and the accuracy of Petitioners' characterization of these documents are not relevant to the issues before this Court. As such, the Court should maintain these exhibits and the portions of the documents describing them under seal. *See, e.g.*, *Saleem v. Corporate Transp. Grp., Ltd.*, No. 12 Civ. 8450 (JMF), 2013 WL 6061340, at *8 (S.D.N.Y. Nov. 15, 2013) (sealing exhibits that court did not rely upon in rendering decision).

Indeed, if the content of the Exhibits mattered to ruling on Petitioners' application, Petitioners would have included translations of the French language material that comprises Exhibits C through E, G through I, and K through L.

If the Court does find that these Exhibits and the Application and Petitioners' Memorandum of Law referring to them are judicial documents, then the Court should nonetheless maintain them under seal for the reasons set forth in Sotheby's Memorandum of Law. *See generally* Sotheby's Mem. at Part III.

**IV.** <u>**Conclusion**</u>

For the foregoing reasons, the Court should deny Petitioners' request to amend the protective order to allow use of the documents already obtained in discovery in Geneva. The Court should also deny the New 1782 Application. In the alternative, the Court should defer resolution of both of Petitioners' pending requests until the prosecutor has decided whether Petitioners are properly parties to the Geneva criminal proceeding. Finally, the Court should maintain under seal Exhibits C through E, G through I, and K through M of the Kornstein 1782 Declaration and the redacted portions of Petitioners' Application and Memorandum of Law.

Dated:  New York, New York
       March 13, 2018

                                  Respectfully submitted,

                                  MCKOOL SMITH, P.C.

                                    /s/

By:   _____
                      Daniel W. Levy
                      dlevy@mckoolsmith.com
                      Alyssa M. Pronley
                      apronley@mckoolsmith.com
                      One Bryant Park
                      47th Floor
                      New York, New York 10036
                      Telephone: (212) 402-9400
                      Telecopier: (212) 402-9444

                      Attorneys for Yves Bouvier
                      and MEI Invest. Ltd.

1354917

## CERTIFICATE OF SERVICE

DANIEL W. LEVY, pursuant to Title 28, United States Code, Section 1746, declares under the penalty of perjury:

1.      I am an attorney licensed to practice law in the State of New York and admitted to practice before this Court.  I am principal in the law firm of McKool Smith P.C. and counsel of record for Intervenors Yves Bouvier and MEI Invest Ltd.

2.      On March 13, 2018, I caused a true and correct copy of the foregoing MEMORANDUM OF LAW and the accompanying DECLARATION OF DANIEL W. LEVY, dated March 13, 2018, together with the exhibits thereto, to be served via ECF upon the following attorneys, who are filing users in connection with this case:

> Daniel J. Kornstein, Esq.
> Douglas E. Lieb, Esq.
> O. Andrew F. Wilson, Esq.
> Emery Celli Brinckerhoff & Abady LLP
> 600 Fifth Avenue, 10th Floor
> New York, New York  10020
>
> Attorneys for Petitioners Accent Delight
> International Ltd. and Xitrans Finance Ltd.
>
> Marcus A. Asner, Esq.
> Sara L. Shudofsky, Esq.
> Mitchell R. Stern, Esq.
> Arnold & Porter Kaye Scholer LLP
> 250 West 55th Street
> New York, New York  10019-9710
>
> Attorneys for Respondent Sotheby's, Inc.

1354917

Steven J. Comen, Esq.
Henry C. Dinger, Esq.
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, Massachusetts  02109

Attorneys for Respondents in 16 Misc. 125 (JMF)
Warren Adelson, Alexander Parish, and Robert Simon

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 13, 2018, at New York, New York.

/s/
_____
Daniel W. Levy