UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                                     :
ACCENT DELIGHT INTERNATIONAL LTD, et al.,        :
                                                                     :
                                        Plaintiffs,          :
                                                                     :
                        -v-                                  :        18-CV-9011 (JMF)
                                                                     :
SOTHEBY'S, et al.,                                   :        OPINION AND ORDER
                                                                     :
                                        Defendants.          :
                                                                     :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       This case is a small part of a larger international saga involving Plaintiffs Accent Delight

International Ltd. and Xitrans Finance Ltd. and their principal, Dmitry Rybolovlev, and

Defendants Sotheby's and Sotheby's, Inc. (collectively "Sotheby's").  At the heart of the saga is

Plaintiffs' claim that Yves Bouvier, an art dealer who is not a party to this case, defrauded them

of approximately one billion dollars in connection with the purchase of a world-class art

collection.  The dispute has spawned civil and criminal litigation in at least five jurisdictions

around the world — Singapore, Switzerland, France, Monaco, and the United States.

       In this case, Plaintiffs allege that Sotheby's aided and abetted Bouvier's fraud and breach

of fiduciary duty.  They also allege that Sotheby's, which filed a lawsuit against Plaintiffs in

Switzerland in November 2017, breached a contract that required Sotheby's to give Plaintiffs

notice before filing suit.  Sotheby's now moves, pursuant to Rule 12(b) of the Federal Rules of

Civil Procedure, to dismiss the case on *forum non conveniens* and international comity grounds.

Sotheby's also contends that Plaintiffs fail to state a contract claim.  Finally, Sotheby's seeks to

keep certain materials under seal.  For the reasons stated below, Sotheby's motion to dismiss is

largely denied, and the request to seal is granted in part and denied in part.

## BACKGROUND

The following facts — drawn primarily from the Amended Complaint and the materials referenced therein[1] — are assumed to be true for the purposes of this motion.  *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001).  Plaintiffs hired Bouvier in or about 2003 to assist them and Rybolovlev in purchasing a world-class art collection.  *See* Docket No. 29 ("Amended Compl.") ¶¶ 13-15.  Plaintiffs allege that, over the next twelve years, although Bouvier purported to act as their agent, he was also, improperly and secretly, acting as a dealer, buying the art himself and selling it to Plaintiffs at a higher price.  *See id.* ¶¶ 17-19.  The focus of this suit is Sotheby's role in these transactions.  Plaintiffs allege that "Sotheby's brokered the sales to Bouvier at the discounted prices Bouvier wanted; at Bouvier's request, Sotheby's repeatedly created and modified appraisals and other documents about respective artworks designed to assist Bouvier in duping Plaintiffs into paying inflated prices; and Sotheby's concealed the

---

[1]      In addition to the allegations in the Amended Complaint, the Court may consider "documents attached to the [c]omplaint, statements or documents incorporated into the Complaint by reference, and matters of which judicial notice may be taken" in evaluating Sotheby's motion to dismiss.  *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, No. 14-MD-2589 (JMF), 2019 WL 2269929, at *1 (S.D.N.Y. May 28, 2019).  With respect to Sotheby's *forum non conveniens* arguments, however, the Court must "accept the facts pleaded in the plaintiff's complaint as true," *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 150 (2d Cir. 2005), and "view[] all facts in the light most favorable to the non-moving party," *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011), but it may also look beyond the complaint to factual allegations in affidavits and motions papers, *see Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009); *see also Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir. 1980) (en banc) ("The district court took the motion to dismiss on submission, based on the pleadings, affidavits and briefs of the parties — a practice long recognized as acceptable and followed from time immemorial . . . in determining *forum non conveniens* motions.").  Similarly, because the type of abstention based on international comity raised here is "[s]ubsumed" within — or at least practically similar to — the general category of venue, *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016), a motion to dismiss on that ground is best understood as one brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.  Accordingly, when considering such a motion, "[a] court may . . . consider facts and documents outside the complaint."  *Blakely v. Lew*, No. 13-CV-2140 (JMF), 2013 WL 6847102, at *1 (S.D.N.Y. Dec. 30, 2013), *aff'd*, 607 Fed. App'x 15 (2d Cir. 2015).

evidence that Bouvier had in fact purchased the artworks at much lower prices by omitting the sales to Bouvier from the works' transaction histories." *Id.* ¶ 37.

This is not the first lawsuit involving these parties in this District.  In March 2016, after initiating suits against Bouvier in Switzerland, Monaco, France, and Singapore, *see id.* ¶¶ 20-23, Plaintiffs filed an application pursuant to 28 U.S.C. § 1782 for discovery to use in the latter three of those proceedings.  *See In re Application of Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2016 WL 5818597, at *1 & n.1 (S.D.N.Y. Oct. 5, 2016) ("*Accent Delight I*") (Docket No. 51), *aff'd*, 869 F.3d 121 (2d Cir. 2017), and 696 Fed. App'x 537 (2d Cir. 2017).  Plaintiffs sought discovery from Sotheby's, which they believed — but could not know with certainty due to Bouvier's secrecy — was involved in the relevant transactions.  *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 125 (2d Cir. 2017).  In May 2016, Sotheby's provided Plaintiffs with "certain limited discovery, primarily concerning" one of the transactions.  *Id.* at 125-26; *see* 16-MC-125, Docket No. 34.

Based in part on the "new facts" Plaintiffs learned "about Sotheby's conduct" from the § 1782 discovery, Plaintiffs prepared to file suit against Sotheby's in the United Kingdom.  *See In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2017 WL 6568059, at *2 (S.D.N.Y. Dec. 22, 2017) ("*Accent Delight II*") (Docket No. 128).  In connection with those plans, on October 27, 2017, Plaintiffs sought leave from this Court — in a letter filed on the public docket, *see* Docket No. 42 ("Asner Decl.") Ex. C ("Oct. 2017 Ltr.") (originally filed at 16-MC-125, Docket No. 101) — to use the § 1782 discovery in that U.K. proceeding.  *See Accent Delight II*, 2017 WL 6568059, at *2.  But before Plaintiffs filed a U.K. suit, on November 17, 2017, Sotheby's filed a "Notice of Conciliation" against Plaintiffs and others in a Swiss court.  *See* Asner Decl. Ex. D ("Notice of Conciliation"), at 1.  Sotheby's sought a declaration from the Swiss court that Sotheby's "ha[d] no liability or debt of any sort" to Plaintiffs.  *Id.* at 3.  Sotheby's did not

provide Plaintiffs with advance notice of the Swiss lawsuit, *see* Amended Compl. ¶ 226, and, to date, have not served Plaintiffs with the substantive case-initiating document, called the Statement of Claim. *See* Docket No. 53 ("Giroud Decl.") ¶ 7. Blocked by the Swiss suit and the Lugano Convention from filing suit in the U.K., *see* Amended Compl. ¶ 224,[2] Plaintiffs filed this suit in the Southern District of New York on October 2, 2018, *see* Docket No. 1.

Sotheby's Swiss civil suit is important to the pending motion to dismiss for two reasons. First, Sotheby's primary argument is that this Court must dismiss or stay the suit out of deference to the Swiss suit — and the success of that argument depends largely on the circumstances of the Swiss suit. *See* Docket No. 39; Docket No. 44 ("MTD Mem."), at 11-32. Second, three of Plaintiffs' claims are based on Sotheby's failure to provide Plaintiffs with advance notice of the Swiss suit. In December 2016, the parties signed a Tolling Agreement that required each party to provide fourteen days' notice before filing related litigation. *See* Amended Compl. ¶ 222; Asner Decl. Ex. E ("Tolling Agreement").[3] Plaintiffs allege that Sotheby's breached the Tolling Agreement by filing the Swiss suit without giving them the required fourteen days' notice. *See* Amended Compl. ¶¶ 220-234. As discussed below, Sotheby's contends that the Tolling Agreement had been terminated when the Swiss suit was filed. *See* MTD Mem. 33-39.

---

[2]     The Lugano Convention provides that, if a suit is filed in a signatory country (here, Switzerland) and a second suit involving the same causes of action and parties is later filed in another signatory country (here, the United Kingdom), the second country must stay proceedings until jurisdiction is established in the first country, after which the second country must dismiss the second suit. *See* Amended Compl. ¶ 224. In a Securities and Exchange Commission filing, Sotheby's stated that it filed the Swiss suit "in response to the stated intent of [Plaintiffs] to initiate litigation in the U.K." and noted that "the Lugano Convention effectively precludes [Plaintiffs] from sustaining an action in the U.K." *Id.* ¶ 225; Docket No. 55 ("Kornstein Decl.") Ex. T, at 36.

[3]     Although the Tolling Agreement is neither attached to the Amended Complaint nor incorporated into it by reference, the Court may consider it in connection with this motion to dismiss because the Amended Complaint "relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted); *see* Amended Compl. ¶¶ 220-234.

## MOTION TO DISMISS

Sotheby's moves to dismiss in whole or in part on three grounds.  First and second, it contends that the suit should be dismissed on *forum non conveniens* or international comity grounds in light of the Swiss litigation.  And third, it asserts that Plaintiffs fail to state a contract claim because the Tolling Agreement had been terminated.  The Court will address each in turn.

### A.   *Forum Non Conveniens*

The *forum non conveniens* doctrine is "a discretionary device that permits a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim."  *Carey v. Bayerische Hypo-und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (internal quotation marks omitted).  Three steps guide the Court's exercise of discretion over a *forum non conveniens* claim:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd.*, 416 F.3d at 153 (citations omitted).  The "'central purpose'" of the inquiry is "'to ensure that the trial is convenient.'"  *Id.* at 154 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)).  Ultimately, an action should be dismissed on the grounds of *forum non conveniens* "only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74-75 (2d Cir. 2001) (en banc).  The burden here is on Sotheby's to demonstrate that dismissal is warranted.  That is because, although the burden is first on Plaintiffs to make a *prima facie* showing that venue is proper, *see, e.g.*, *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005), there is no dispute that Plaintiffs have made such a showing.  Thus, to prevail, Sotheby's must establish that the three steps weigh in favor of dismissal.  *See Bank of Credit & Commerce*

*Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001) ("The defendant bears the burden of proof on all elements" in the *forum non conveniens* analysis).

Turning to the merits, at step one, "[a]ny review of a *forum non conveniens* motion starts with a strong presumption in favor of the plaintiff's choice of forum." *Norex Petroleum*, 416 F.3d at 154 (internal quotation mark omitted). But "the degree of deference given to a plaintiff's forum choice can vary with the circumstances," with reduced deference afforded to a choice motivated less "by genuine convenience" and more by "forum shopping." *Id.* at 154-55 (alteration and internal quotation marks omitted). Factors "relevant to determining whether a forum choice was likely motivated by genuine convenience" are "[1] the convenience of the plaintiff's residence in relation to the chosen forum, [2] the availability of witnesses or evidence to the forum district, [3] the defendant's amenability to suit in the forum district, [4] the availability of appropriate legal assistance, and [5] other reasons relating to convenience or expense." *Id.* (internal quotation marks omitted). By contrast, factors relevant to determining whether a forum choice was motivated by forum shopping are "[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum." *Id.* (internal quotation marks omitted).

Applying those factors here, the Court concludes that Plaintiffs' choice of forum is entitled to some deference. Weighing against such deference is the fact that Plaintiffs are residents of the British Virgin Islands and operate on a foreign citizen's behalf, *see* Amended Compl. ¶¶ 5-6; *Iragorri*, 274 F.3d at 71 ("[T]he choice of a United States forum by a foreign plaintiff is entitled to less deference."), and the fact that, because there is already litigation in Switzerland and Singapore, *see* Amended Compl. ¶¶ 22, 23, 28, it is expensive for Sotheby's to

also litigate in New York.  Weighing in favor of deference is the fact that Sotheby's principal place of business and center of control is New York, *see id.* ¶¶ 7, 194-197; Korenstein Decl. ¶ 5, and that Plaintiffs sued in New York only after being blocked from bringing suit in a superior forum, *see* Docket No. 52 ("Pls.' Opp'n."), 1-2, 34; *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006) (noting that it can be "perfectly reasonable" for Plaintiffs to "choos[e] to bring [a] suit in defendants' own country" when they cannot bring suit in a different, superior forum); *cf. Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003) ("[P]laintiff's choice to initiate suit in the defendant's home forum . . . only merits heightened deference to the extent that the plaintiff and the case possess bona fide connections to, and convenience factors favor, that forum.).  Also weighing in favor of deference is the fact that Plaintiffs cannot intend to exploit the generosity of American juries because they have waived any right to a jury trial. *See* Amended Compl.; Pls.' Opp'n. 15, 23; *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 307 (2d Cir. 1986) (holding that the plaintiff waived his right to a jury trial by disclaiming the right in a brief to the trial court); *see also Conboy v. AT&T Corp.*, 241 F.3d 242, 250 (2d Cir. 2001) (holding that the plaintiffs' statement that they had "'not alleged emotional distress or similar damages' . . . constitutes an express and binding abandonment of plaintiffs' claim for such damages.").[4]  The remaining factors (Plaintiffs' global popularity or lack thereof, the parties' access to legal counsel in all the relevant forums, and the availability and lack of availability of witnesses in all the relevant forums across the world) are basically neutral.  *See* Amended Compl. ¶¶ 50, 81, 116, 131, 141 (sale and receipt of art in Geneva); *id.* ¶¶ 56, 64, 149, 151, 168, 188 (viewing, auction, and sale of art in New York); *id.* ¶¶ 74, 80, 87, 100, 117 (sales in

---

[4]     Sotheby's says that if it is "required to file an Answer, it presently intends to demand a jury trial."  Docket No. 58 ("Reply"), 8 n.7.  But *Defendants'* (possible) jury demand cannot be evidence of *Plaintiffs'* forum shopping.

London); Docket No. 54 ("Sazonov Decl.") ¶ 1.  On balance, therefore, the Court finds that Plaintiffs' choice is entitled to some, but not strong, deference.

As for step two, there is no dispute that Sotheby's has established that there is an adequate alternative forum: Switzerland.  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75.  Sotheby's is amenable to service in Switzerland because it has agreed to "submit to jurisdiction" in this or a related suit.  Asner Decl. ¶ 3; *see Norex Petroleum*, 416 F.3d at 157; *Pollux Holding*, 329 F.3d at 75.  The Swiss court will likely (although not certainly) exercise jurisdiction over the dispute because Sotheby's Geneva signed at least one sale at issue.  *See* Amended Compl. ¶ 50; Docket No. 41 ("Lembo Decl.") ¶ 26; *but see* Giroud Decl. ¶¶ 22-36.  And the Swiss court would permit litigation of the core issues — claims of fraud, breach of fiduciary duty, and breach of contract — whether it applies New York or Swiss law because Swiss law provides causes of action for these types of claims.  *See, e.g.*, *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd*., 806 F. Supp. 2d 712, 715, 726 (S.D.N.Y. 2011) (finding Switzerland to be an adequate forum for claims of fraud, breach of fiduciary duty, and breach of contract); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 257 (S.D.N.Y. 2011) (finding Switzerland to be an adequate forum for fraud and breach of duty claims).

Thus, the Court turns to step three: balancing private and public interests.  *See Norex Petroleum*, 416 F.3d at 158.  The private factors, which "pertain[] to the convenience of the litigants," *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 500 (2d Cir. 2002), are as follows:

> the interests of the litigants in having the case tried in a particular forum; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of a view of relevant premises, if such a view would be appropriate to the action; and, all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Carey*, 370 F.3d at 237.  The "[p]ublic interest factors include: court congestion; the interest of

forums in having local disputes decided at home; and, the interest in having issues of law

decided by courts of the nation whose law is involved." *Id.*  The proper balance of these factors

is context-specific and "a single factor is rarely dispositive." *DiRienzo*, 294 F.3d at 29.

Moreover, to prevail, Sotheby's showing that the balance of factors calls for dismissal must be

strong because, "even where the degree of deference is reduced, the action should be dismissed

only if the chosen forum is shown to be genuinely inconvenient and the selected forum

significantly preferable." *Bigio*, 448 F.3d at 179 (alteration and internal quotation marks

omitted); *see also DiRienzo*, 294 F.3d at 30 (stating that the plaintiffs should not be "deprived of

their choice of forum except upon defendants' clear showing that a trial in the United States

would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs'

convenience").

Sotheby's fails to carry its burden of showing that New York is "genuinely inconvenient"

and that Switzerland is "significantly preferable." *Bigio*, 448 F.3d at 179.  With respect to the

private factors, there is no one place where all the premises, witnesses, and evidence are.  In any

event, because "the subject matter of this suit is not like a real property action with a physical

connection to a particular location . . . , the convenience of the parties," rather than the location

of the premises, is "the primary consideration." *Gross*, 386 F.3d at 233.  And although "[l]ive

testimony is especially important in a fraud action" and witnesses outside of the United States

"cannot be compelled to testify in American courts as they would be in [their home] courts,"

*DiRienzo*, 294 F.3d at 30, "to the extent there are witnesses abroad who are beyond the court's

subpoena power, their testimony can be provided by depositions taken pursuant to letters

rogatory," *Bigio*, 448 F.3d at 179.  In terms of convenience, it is likely to be less expensive for

Sotheby's to litigate in its home forum of New York and, regardless, the expense factor does not

9

weigh heavily here.  *See Carey*, 370 F.3d at 238 ("[F]or a large business organization —

especially one maintaining a business presence in foreign countries," the "obligation to litigate in

a foreign country" may not be a large obstacle.).  The public interest factors also weigh against

dismissal because Sotheby's does not dispute Plaintiffs' assertion that "it is unlikely that the

Swiss courts would apply Swiss law to adjudicate this dispute."  *See* Giroud Decl. ¶ 34; Docket

No. 60 ("Lembo Reply Decl.") ¶¶ 3-20 (including no statement of what law would apply).  In

short, Sotheby's does not show that a *forum non conveniens* dismissal is appropriate here.

## B.    International Comity

In a related vein, Sotheby's next argues that the Court should dismiss or stay this suit

under the doctrine of international comity.  The type of international comity invoked here,

"adjudicative comity," "asks whether" in the presence of otherwise valid jurisdiction, a U.S.

court "should nonetheless abstain from exercising jurisdiction in deference to a foreign nation's

courts that might be a more appropriate forum for adjudicating the matter."  *In re Picard, Tr. for*

*Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 101 (2d Cir. 2019).  Adjudicative

international comity is based on "respect for litigation in and the courts of a sovereign nation,

fairness to litigants, and judicial efficiency."  *Royal & Sun All. Ins. Co. of Canada v. Century*

*Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006).  It is an "amorphous" and "fuzzy" doctrine that

"is not an imperative obligation of courts but rather is a discretionary rule of practice,

convenience, and expediency."  *Id.* at 92 (internal quotation marks omitted).

Because "[t]he mere existence of parallel foreign proceedings does not negate the district

courts' virtually unflagging obligation to exercise the jurisdiction given them," a court should

dismiss a case on grounds of international comity only if "exceptional circumstances . . . justify

the surrender of that jurisdiction."  *Id.* at 92-93 (internal quotation marks and alteration omitted).

"[E]xceptional circumstances . . . must, of course, raise considerations which are not generally

present as a result of parallel litigation." *Id.* at 92; *see also Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 191 (2d Cir. 2018) ("The general rule is that concurrent proceedings regarding the same question are tolerated." (alteration and internal quotation marks omitted)).  In evaluating the "totality of the circumstances," as the Court must, the relevant factors include:

> [1] the similarity of the parties, [2] the similarity of the issues, [3] the order in which the actions were filed, [4] the adequacy of the alternate forum, [5] the potential prejudice to either party, [6] the convenience of the parties, [7] the connection between the litigation and the United States, and [8] the connection between the litigation and the foreign jurisdiction.

*Leopard Marine*, 896 F.3d at 190 (internal quotation marks omitted).

Applying those factors here, although there is parallel litigation ongoing in Switzerland, Sotheby's fail to establish that there are "exceptional circumstances" justifying dismissal.  The suits are "parallel" because "substantially the same parties are contemporaneously litigating substantially the same issue in another forum."  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (internal quotation marks omitted). Sotheby's parent company is the only party to this suit that is not a party to the Swiss suit, *see* Amended Compl. ¶¶ 5, 6, 7, 9; Notice of Conciliation 1, 4, and it is amenable to joining the Swiss suit, *see* Asner Decl. ¶ 3.  And the Swiss suit will need to resolve the allegations of fraud and breach of fiduciary duty to decide if Sotheby's "ha[s] no liability or debt of any sort" to Plaintiffs.  *See* Notice of Conciliation 3-5; Amended Compl. ¶¶ 2, 12, 209-211, 214-216; *see also* MTD Mem. 28-29.  The convenience factors are neutral because, as explained above, both New York and Swiss courts can adequately resolve these claims; there is no one forum most convenient for, and connected to, the suits; and "[a]lthough it can be expensive and time consuming for parties to have to litigate similar conduct in different forums," that fact alone does not "give rise to exceptional circumstances."  *NovaSparks SA v. EnyxFPGA*, 344 F. Supp. 3d 666, 679 (S.D.N.Y. 2018) (internal quotation marks omitted).  The remaining factors,

meanwhile, weigh against dismissal.  Dismissal would prejudice Plaintiffs because this is the only suit that includes the Tolling Agreement claims.  *Compare* Amended Compl. ¶¶ 220-235 (breach of contract claims); *with* Notice of Conciliation 3; *see, e.g.*, *C.D.S., Inc. v. Zetler*, 198 F. Supp. 3d 323, 332 (S.D.N.Y. 2016) (holding that dismissal was not appropriate when issues were similar, but the foreign court case would not resolve all the issues in U.S. case).  And "[w]hile the order of filing is relevant" — and the Swiss suit was filed before the New York suit, *see* Notice of Conciliation 1 (filed November 17, 2017); Lembo Decl. ¶ 16 (Statement of Claim filed July 11, 2018); Docket No. 1 (filed October 2, 2018) — "[t]his factor does not turn exclusively on the sequence in which the cases were filed," but rather involves a comparison of "how much progress has been made in the two actions." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (internal quotation marks omitted).  This suit, with its fully briefed (and now decided) motion to dismiss, appears to have made more progress than the Swiss suit, which has yet to be served on Plaintiffs.  *Cf.* Giroud Decl. ¶ 7.

Nor is a temporary stay appropriate.  *See* MTD Mem. 40.  Although "the Supreme Court has cautioned that 'a stay is as much a refusal to exercise federal jurisdiction as a dismissal' . . . , a measured temporary stay . . . might permit the district court a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties." *Royal & Sun*, 466 F.3d at 96 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).  Here, however, the Court cannot conclude at this stage that the Swiss suit even *could* resolve "all of the rights of the parties."  Even if Sotheby's might eventually be able to show that the Swiss suit will "have preclusive effect on this action," the facts that would establish that preclusion "are not apparent from the pleadings," and "a motion to dismiss is not an occasion for the court to make findings of fact." *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 445-46 (S.D.N.Y. 2014).  In any event, it would be

premature to decide the preclusion issue before there is a final judgment in the Swiss suit

(indeed, before the suit has even substantively begun) and without full briefing on the issue.  *See*

*id.* at 446 (denying a stay when it did "not appear that significantly more progress ha[d] been

made" in the foreign suit); *see generally* Wright & Miller, Federal Practice & Procedure § 4473

(2019 Update) (discussing the complexity of giving preclusive effect to foreign judgments).  In

short, Sotheby's fails to show that there are exceptional circumstances that justify dismissal or a

stay based on international comity.

## C.        Tolling Agreement

Finally, Sotheby's moves to dismiss Plaintiffs' Tolling Agreement claims.  *See* MTD

Mem. 34.  Its primary argument is that Plaintiffs had already terminated the Tolling Agreement

when it filed the lawsuit in Switzerland.  *See* MTD Mem. 36.  That argument turns on the

provisions of the Tolling Agreement relating to notice, Paragraphs 3, 4, and 8.  They provide:

> 3. Each Party shall provide at least 14 days' written notice ("Notice of Suit"), as provided
> in paragraph 8, prior to filing or commencing any litigation or other legal proceeding
> against any other Party based on the Claims or Defenses or otherwise asserting any of the
> Claims or Defenses against any other Party.
>
> 4. This Agreement shall terminate (a) 14 days after any Party serves a "Notice of Suit" on
> any other Party; (b) 14 days after any Party serves written notice of termination on the
> other Parties, as provided in paragraph 8 below; or (c) one year after the Effective Date,
> whichever is earliest (the "Termination Date").
>
> . . . .
>
> 8. All notices required hereunder shall be in writing and shall be deemed duly given one
> (1) business day after being sent to the recipient at the address given below by reputable
> overnight courier service (charges prepaid), as follows . . . .

Tolling Agreement ¶¶ 3, 4, 8.  The question here is whether Plaintiffs' October 27, 2017 letter —

requesting permission to use the § 1782 discovery "in new foreign proceedings soon to be

commenced in the United Kingdom against Sotheby's UK, one of its employees, and Yves

Bouvier" — qualifies as a "Notice of Suit" even though it was filed on the Court's electronic

case filing system and not "sent . . . by reputable overnight courier service."  Sotheby's argues that it does, as a matter of law, because the Tolling Agreement requires only that a "Notice of Suit" be written, not that it also be sent by overnight courier service.  MTD Mem. 36-37.

The Court disagrees.  By its terms, Paragraph 3 of the Tolling Agreement is most reasonably read to require written notice "as provided in paragraph 8."  Paragraph 8, in turn, provides that Notice "shall be in writing *and* shall be deemed duly given one (1) business date after being sent . . . by reputable overnight courier service."  *Id.* (emphasis added).  This is most reasonably read to require service by overnight courier.  Indeed, to read "as provided in paragraph 8" to require only that the notice be "in writing" would render the phrase "as provided in paragraph 8" superfluous because Paragraph 3 already requires "14 days' *written* notice."  *See id.* ¶¶ 4, 8; *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016) ("[A] contract should be construed so as to give full meaning and effect to all of its provisions."  (internal quotation marks omitted)).  Sotheby's argument to the contrary — that Paragraph 8 merely describes an optional "way of calculating *when* . . . notice would be deemed to have been effected," MTD Mem. 37 — is unpersuasive when viewed in the context of the whole Agreement because timing and the measurement of time are the central points of the Agreement.  *See Orchard Hill*, 830 F.3d at 156 (observing that a contract's meaning must be discerned as "viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement" (internal quotation marks omitted)); *see, e.g.*, Tolling Agreement ¶¶ 1, 3 ("Each Party shall provide at least 14 days' written notice . . ."); *id.* ¶ 4 ("This Agreement shall terminate . . . 14 days after any Party serves a 'Notice of Suit' . . ."), *id.* ¶ 8.  At most, the relevant provisions of the Tolling Agreement are ambiguous, which is enough to deny Sotheby's motion.  *See, e.g.*, *Orchard Hill*, 830 F.3d at 156 ("At the motion to dismiss stage, a

14

district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous.").

Sotheby's launches three other attacks on the Tolling Agreement claims, the first two of which also fall short.  First, Sotheby's argues that Plaintiffs fail to plausibly allege that any breach resulted in damages or that their alleged damages — legal fees incurred in defending the Swiss suit and in filing suit in New York — are speculative.  *See* MTD Mem. 38-39.  But Plaintiffs plausibly allege that their filing suit in the United Kingdom could have prevented the Swiss suit and obviated any need for a New York suit, thus reducing their legal fees.  *See* Amended Compl. ¶ 231; Pls.' Opp'n 29-30.  More fundamentally, "nominal damages are always available in breach of contract actions" under New York law, so even if the proposed damages are "too speculative to support [their] claims, [Plaintiffs] would have plausible claims for nominal damages."  *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (internal quotation marks omitted); Tolling Agreement ¶ 9 (specifying that New York law applies to the Tolling Agreement).  Second, Sotheby's invokes the doctrine of laches, but a latches defense "requires proof of . . . prejudice to the party asserting the defense," *see Oneida Indian Nation of N.Y. v. Cty. of Oneida*, 617 F.3d 114, 127 (2d Cir. 2010) (internal quotation marks omitted); *see also Ivani Contracting Corp. v. City of N.Y.*, 103 F.3d 257, 259 (2d Cir. 1997), and Sotheby's does not demonstrate prejudice here.  A single clause stating that Sotheby's has "been expending time and resources pursuing their claims in the Swiss courts for more than a year," MTD Mem. 40, without more, particularly considering Sotheby's failure to serve Plaintiffs with the Statement of Claim, is entirely insufficient to show prejudice.

By contrast, Sotheby's final argument for partial dismissal — that Plaintiffs' claim for an "injunction directing Sotheby's . . . to withdraw the improperly brought Swiss civil proceeding"

must be dismissed — has merit.  *See* Amended Compl. ¶ 233.  Plaintiffs argue that an injunction

is the only remedy that would compensate them for the "depriv[ation] . . . of their choice of

jurisdiction."  *See id.* ¶ 234.  But "principles of comity counsel that injunctions restraining

foreign litigation be used sparingly and granted only with care and great restraint" and "[a]n anti-

suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in

both matters, and (B) resolution of the case before the enjoining court is dispositive of the action

to be enjoined."  *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs.,*

*Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) (internal quotation marks omitted); *see also Hapag-Lloyd*

*Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 154 (2d Cir. 2016).  Because the

scope of the Swiss suit is broader than that of the New York suit, resolution of the New York

case would not be dispositive of the Swiss suit, making an anti-suit injunction improper.

Accordingly, Plaintiffs' fifth claim must be and is dismissed.

## MOTION TO SEAL

That leaves Sotheby's motion to seal (while filing publicly redacted versions of) several

documents: the Amended Complaint, *see* Docket No. 32 ("Compl. Mot."), 1; the Statement of

Claim in the Swiss proceeding, filed here as Exhibit H to the Lembo Declaration, *see* Docket No.

46 ("Ex. H Mot."), 1; Docket No. 41-8 ("Exhibit H"); Plaintiffs' brief in opposition to the motion

to dismiss, as well as three exhibits — Exhibits N, O, and S — to the Kornstein Declaration filed

in connection with it.  *See* Docket No. 56 ("Pls.' Mot."), 1; Docket No. 55-14 ("Exhibit N");

Docket No. 55-15 ("Exhibit O"); Docket No. 55-19 ("Exhibit S").[5]

---

[5]      Plaintiffs sought to file the relevant documents under seal, but only because they were
"compelled to" by the Protective Order — which they argue is "improper."  *See* Pls.' Mot. 1;
*see also* Docket No. 30; Docket No. 33 ("Compl. Opp'n"), at 3.  Sotheby's argues that
Plaintiffs' objections are all objections to confidentiality designations made pursuant to the
Protective Order and, as such, are untimely.  *See* Compl. Mot. 4.  These arguments are largely
irrelevant,

Consideration of these requests must begin with evaluation of whether the documents are "judicial document[s]." *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016). "A 'judicial document' or 'judicial record' is a filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). "A finding that a document is a 'judicial document' triggers a presumption of public access." *Id.* at 141 (alteration and internal quotation marks omitted). That presumption is secured by both the First Amendment and the common law. *See id.* But if the documents "are subject to a First Amendment right of access, which is stronger and can only be overcome under more stringent circumstances than the common law presumption," the Court "need not . . . engage in . . . a common law analysis." *United States v. Erie Cty.*, 763 F.3d 235, 241 (2d Cir. 2014).

Under the First Amendment analysis, there are "two different approaches for determining whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents." *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). "The first approach considers 'experience and logic': that is, whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process." *Bernstein*, 814 F.3d at 141 (internal quotation marks omitted). "The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of" the ability to attend proceedings. *Id.* (internal quotation marks omitted). To overcome a First Amendment right of access, "the proponent of sealing must demonstrate that [sealing] is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 144 (alteration and internal

---

however, because the Court must satisfy itself of the propriety of sealing court documents regardless of the validity of any confidentiality agreements between the parties.

quotation marks omitted).  "Broad and general findings and conclusory assertions are insufficient . . . ; specific, on-the-record findings are required."  *Id.* at 144-45 (alteration and internal quotation marks omitted).  These determinations must be made on a document-by-document basis.  *See, e.g.*, *id.* at 139 (noting that courts must evaluate "the document's specific contents").

Applying the foregoing standards to the documents at issue here, the Court holds first that the Amended Complaint must be filed publicly in unredacted form.  As an initial matter, the Amended Complaint is plainly "a judicial document subject to a presumption of access."  *Id.*  Thus, Sotheby's must demonstrate that redaction is "essential to preserve higher values."  *Id.* at 144-45 (internal quotation marks omitted).  It fails to do so.  That "[e]ach redaction discloses private information about art transactions that Sotheby's . . . facilitated . . . , the details of which it is obligated to keep confidential,"  Compl. Mot. 2, does not, without more, justify redaction, *see, e.g.*, *United States v. Wells Fargo Bank N.A.*, No. 12-CV-7527 (JMF), 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015) (citing cases); *see also Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 471 (S.D.N.Y. 2017) ("[T]he preservation of . . . bargained-for confidentiality does not overcome the presumption of access to judicial documents."); *Church Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, No. 10-CV-698 (RJS), 2010 WL 3958791, at *3 (S.D.N.Y. Sept. 23, 2010) ("The mere existence of a confidentiality agreement[] . . . does not demonstrate that sealing is necessary." (internal quotation marks omitted)).  And, although courts may be hesitant to require disclosure of confidential pricing information, when, as here, "[t]he details of the working relationship and arrangement between the parties lie at the very heart of the litigation," and those details revolve around allegedly inflated prices, courts will not generally seal the allegations and evidence about that relationship.  *Under Seal*, 273 F. Supp. 3d at 472; *see* Amended Compl. ¶¶ 42-190, 209, 214.  In such situations, the public cannot "have confidence in the [Court's] administration of justice" without being able to see the specific allegations underlying the case.

*See Bernstein*, 814 F.3d at 139 (internal quotation marks omitted).  Accordingly, Sotheby's

motion to keep an unredacted version of the Amended Complaint under seal is DENIED.

       Turning to Exhibits N, O, and S to the Kornstein Declaration, the crucial inquiry

concerns the "relevance of the document[s'] specific contents" to the current proceeding.  *See id*.

That is because the exhibits are "judicial documents" only if they are *currently* relevant to the

judicial function, not if they "could later become relevant to the judicial function."  *United States*

*v. HSBC Bank USA, N.A.*, 863 F.3d 125, 140 (2d Cir. 2017).  Under this standard, Exhibit N is a

judicial document because it illustrates the connection between Sotheby's New York and one of

the contested transactions, which is relevant to the *forum non conveniens* and international

comity analyses above.  *See* Pls.' Opp'n 22.  So too are Exhibits O and S, even though the Court

did not rely on them at all, because they have been brought to the Court's attention in connection

with a contested matter.  *See Lugosh*, 435 F.3d at 121 (Under the common law, "documents

submitted to a court for its consideration in a summary judgment motion are — as a matter of

law — judicial documents to which a strong presumption of access attaches.").  And, because

Sotheby's provides no reason other than protection of confidentiality for keeping the exhibits

under seal, it fails to rebut the presumption of access.  *See* Pls.' Mot.  Accordingly, the motion to

seal Exhibits N, O, and S is DENIED.

       The next document, Exhibit H, is also a judicial document.  It contains the Swiss

Statement of Claim, *see* Ex. H, upon which both parties rely in briefing, *see* MTD Mem. 6-7, 28;

Pls.' Opp'n 7-9, 12, 14, 25, 30, 35, and which Sotheby's concedes is "relevant to the Court's

determination of Sotheby's motion to dismiss . . . on the [] ground of international comity, as [it]

helps substantiate the similarity of the issues and the progression of the Swiss Civil Suit."  Ex. H.

Mot. 2.  Under other circumstances, that might well justify unsealing.  But whether to keep the

document sealed is (apparently) under advisement by the Swiss Court, and the Court agrees with

19

Sotheby's that, as a matter of international comity, the Swiss Court should be allowed to rule on the issue in the first instance.  *See, e.g.*, *Royal & Sun*, 466 F.3d at 96.  It is true another court in this district has rejected just such an argument, holding that "even if [foreign] law . . . would require sealing, considerations of international comity do not . . . override the strong presumption in favor of public access to judicial documents."  *Redeemer Comm. of Highland Credit Strategies Funds v. Highland Capital Mgmt., LP*, 182 F. Supp. 3d 128, 130 (S.D.N.Y. 2016).  But that reasoning is not entirely applicable here because the Court is not adopting Swiss law; it is merely giving the Swiss court the first opportunity to rule on a request that was first made to the Swiss court.  *See* Ex. H. Mot. 4.  Thus, to allow the Swiss court the opportunity to do so, Exhibit H may be maintained under seal temporarily.  Sotheby's shall inform the Court no later than two weeks after the Swiss court has ruled on its sealing request.

Finally, Sotheby's seeks to seal Plaintiffs' opposition brief to the extent that it incorporates or quotes materials from the foregoing exhibits.  In accordance with the discussion above, the redaction of material taken from the Amended Complaint and Exhibits N, O, and S does not pass muster, but the redaction of material from Exhibit H does.

## CONCLUSION

For the reasons stated above, Sotheby's motion to dismiss is GRANTED in part and DENIED in part.  Specifically, the motion is denied, except insofar as it seeks dismissal of Plaintiffs' fifth claim — for injunctive relief — as to which it is GRANTED.

Additionally, the motion to seal the Amended Complaint is DENIED; the motion to seal Exhibit H is temporarily GRANTED; and the motion to seal Plaintiffs' brief and Exhibits N, O, and S is GRANTED in part and DENIED in part.  The parties shall file unredacted or re-redacted versions of the relevant documents within **two weeks of this Order**.  Sotheby's shall file a letter

with this Court within **two weeks** of any ruling by the Swiss court on the sealing request pending before it.

By separate order, the Court will schedule an initial pretrial conference at which the parties will finalize a case management plan to govern further proceedings in this case. Unless the Court orders otherwise, Sotheby's shall answer the Amended Complaint within **fourteen days** of this Opinion and Order.

The Clerk of Court is directed to terminate Docket Nos. 32, 39, 46, and 56.


SO ORDERED.

Dated: June 25, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge