UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACCENT DELIGHT INTERNATIONAL LTD.
and XITRANS FINANCE LTD.,

          Plaintiffs,

   -against-

SOTHEBY'S and SOTHEBY'S, INC.,

          Defendants.

No. 18 Civ. 9011 (JMF)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO SOTHEBY'S MOTION TO DISMISS OR STAY

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiffs*

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................iii-vi

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .......................................................................................................................2

ARGUMENT .............................................................................................................................4

I.    SOTHEBY'S FAILS TO OVERCOME THE SUBSTANTIAL DEFERENCE
      OWED PLAINTIFFS' LEGITIMATE CHOICE OF FORUM..............................4

      A.   Plaintiffs' Legitimate Choice of Forum Deserves Substantial
           Deference ....................................................................................................4

           1.   Sotheby's Fails to Address the Relevant Factors...........................4

           2.   The Convenience Factors Support Plaintiffs' Choice of New
                York ..................................................................................................6

                a.   Convenience of Residence ..................................................6

                b.   Availability of Witnesses and Evidence ............................6

                c.   Defendants' Amenability to Suit .......................................11

                d.   Availability of Appropriate Legal Assistance...................12

                e.   Other Issues Relating to Convenience and Expense..........12

           3.   The Forum-Shopping Factors Show that Plaintiffs Filed in New
                York for Legitimate Purposes........................................................14

                a.   Tactical Advantage from Local Laws................................15

                b.   Generosity of Juries ..........................................................15

                c.   Parties' Relative Popularity in Chosen Forum..................16

                d.   Inconvenience or Expense to Defendant............................16

      B.   New York Is a More Convenient Forum than Switzerland for This
           Dispute ....................................................................................................17

           1.   Private Interest Factors Favor New York ......................................17

                a.   Availability of Evidence ...................................................18

          b.      Compulsory Process for Unwilling Witnesses and Cost to Willing Witnesses ...................................................19

        2.      Public Interest Factors Favor New York .......................................23

    C.      Sotheby's Jurisdictional Games Show the Swiss Forum's Unsuitability ..................................................................................25

II.    THE AMENDED COMPLAINT STATES CLAIMS FOR BREACH OF THE TOLLING AGREEMENT ......................................................................................26

    A.      Sotheby's Fails to Give Effect to the Language of the Tolling Agreement ....................................................................................26

    B.      Plaintiffs State a Claim for Damages and for an Injunction .....................29

    C.      Laches Does Not Apply ............................................................................31

III.   NO "EXCEPTIONAL CIRCUMSTANCES" EXIST TO WARRANT INTERNATIONAL COMITY ABSTENTION ...................................................33

    A.      Sotheby's Improper Swiss Filing Is Entitled to No Deference .................34

    B.      None of the Factors Cited by Sotheby's Amount to Exceptional Circumstances ..........................................................................................36

CONCLUSION ...............................................................................................................38

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Alpha Cap. Anstalt v. Oxysure Sys., Inc.*,
    216 F. Supp. 3d 403 (S.D.N.Y. 2016)................................................................. 31

*Ancile Inv. Co. v. Archer Daniels Midland Co.*,
    No. 08-CV-9492, 2009 WL 3049604 (S.D.N.Y. Sept. 23, 2009)........................ 11, 19, 24

*Base Metal Trading S.A. v. Russian Aluminum*,
    No. 00-CV-9627, 2002 WL 987257 (S.D.N.Y. May 14, 2002) ........................................ 9

*Bolanos v. Norwegian Cruise Lines Ltd.*,
    No. 01 Civ.4182, 2002 WL 1465907 (S.D.N.Y. July 9, 2002) ........................................ 31

*Burns v. Del. Charter Guarantee & Tr. Co.*,
    805 F. Supp. 2d 12 (S.D.N.Y. 2011)........................................................................ 15, 24

*Byrne v. British Broad. Corp.*,
    132 F. Supp. 2d 229 (S.D.N.Y. 2001)............................................................................ 19

*Chigirinskiy v. Panchenkova*,
    No. 14-CV-4410, 2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015)..................... 5, 6, 16, 23

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
    837 F.2d 33 (2d Cir. 1987)........................................................................................ 31, 33

*Chirag v. MT Marida Marguerite Schiffahrts*,
    983 F. Supp. 2d 188 (D. Conn. 2013)............................................................................ 12

*Colo. River Water Conserv. Dist. v. United States*,
    424 U.S. 800 (1976)....................................................................................................... 33

*Compania Sud Americana de Vapores S.A. v. Global Terminal & Container Servs., Inc.*,
    509 F. App'x 97 (2d Cir. 2013) ..................................................................................... 32

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*,
    801 F. Supp. 2d 211 (S.D.N.Y. 2011)........................................................................... 17

*Cromer Finance Ltd. v. Berger*,
    158 F. Supp. 2d 347 (S.D.N.Y. 2001)............................................................................. 6

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002)......................................................................... 17, 18, 23, 24

*Duling v. Gristede's Operating Corp.*,
265 F.R.D. 91 (S.D.N.Y. 2010) ............................................................ 32

*Foundry, A Print Commc'ns Co. v. Trade Secret Web Printing, Inc.*,
No. 11-CV-9553, 2012 WL 3031149 (S.D.N.Y. July 25, 2012) ...................................... 6

*Fournier v. Starwood Hotels & Resorts Worldwide, Inc.*,
908 F. Supp. 2d 519 (S.D.N.Y. 2012) .......................................... 15

*Guardian Music Corp. v. James W. Guercio Enters., Inc.*,
459 F. Supp. 2d 216 (S.D.N.Y. 2006) .......................................... 33

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ........................................................ 4, 17

*In re Assicurazioni Gen. S.p.A. Holocaust Ins. Litig.*,
228 F. Supp. 2d 348 (S.D.N.Y. 2002) .......................................... 18

*In re General Motors, LLC Ignition Switch Litig.*,
202 F. Supp. 3d 362 (S.D.N.Y. 2016) .......................................... 14

*In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, MDL
No. 1428, 2006 WL 1328259 (S.D.N.Y. May 16, 2006) .......................... 10, 18

*Int'l Equity Invest., Inc. v. Cico*,
427 F. Supp. 2d 503 (S.D.N.Y. 2006) .......................................... 24

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001) ...................................................... 4, 17, 25

*Ivani Contracting Corp. v. City of New York*,
103 F.3d 257 (2d Cir. 1997) ...................................................... 32

*Ives v. Mars Metal Corp.*,
23 Misc. 2d 1015 (Sup. Ct. N.Y. Cty. 1960) .................................... 29

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
500 F.3d 111 (2d Cir. 2007) .................................................... 31

*Kitaru Innovations, Inc. v. Chandaria*,
698 F. Supp. 2d 386 (S.D.N.Y. 2010) .......................................... 37

*Klonis v. Nat'l Bank of Greece*,
487 F. Supp. 2d 351 (S.D.N.Y. 2006) .......................................... 37

*Kronos, Inc. v. AVX Corp.*,
81 N.Y.2d 90 (1993) .......................................................... 31

*Lee v. Marvel Enters., Inc.*,
  386 F. Supp. 2d 235 (S.D.N.Y. 2005) ............................................................ 28

*Lopez v. JetBlue Airways*,
  662 F.3d 593 (2d Cir. 2011) ......................................................................... 30

*Maniolos v. United States*,
  741 F. Supp. 2d 555 (S.D.N.Y. 2010) ............................................................ 29

*Metito (Overseas) Ltd. v. Gen. Elec. Co.*,
  No. 05-CV-9478, 2006 WL 3230301 (S.D.N.Y. Nov. 7, 2006) ............................ 24

*Motorola Credit Corp. v. Uzan*,
  No. 02-CV-666, 2013 WL 6098388 (S.D.N.Y. Nov. 20, 2013) ............................ 10

*MyPlayCity, Inc. v. Conduit Ltd.*,
  No. 10 Civ. 1615, 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) ......................... 29

*Norex Petroleum Ltd. v. Access Indus., Ltd.*,
  416 F.3d 146 (2d Cir. 2005) ............................................................. 4, 5, 6, 15

*O'Connor v. U.S. Fencing Ass'n*,
  260 F. Supp. 2d 545 (E.D.N.Y. 2003) ............................................................ 24

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
  830 F.3d 152 (2d Cir. 2016) .................................................................... 26, 28

*Osuna v. Citigroup, Inc.*,
  No. 17-CV-1434, 2018 WL 6547205 (S.D.N.Y. Sept. 28, 2018) ......................... 12

*Paramedics Electromedicina Comercial, Ltda. V. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004) ......................................................................... 31

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014) ................................................................................... 32

*Rio Tinto PLC v. Vale S.A.*,
  No. 14-CV-3042, 2014 WL 7191250 (S.D.N.Y. Dec. 17, 2014) ......................... 19

*Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006) ............................................................. 1, 33, 36, 37

*RST (2005) Inc. v. Research in Motion*,
  No. 07 Civ. 3737, 2008 WL 5416379 (S.D.N.Y. Dec. 17, 2008) ......................... 33

*Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*,
  7 F.3d 1091 (2d Cir. 1993) ........................................................................... 27

*Suarez v. Ingalls*,
    282 A.D.2d 599 (2d Dep't 2001) ................................................................... 29

*Taub v. Marchesi di Barolo S.p.A.*,
    No. 09-CV-599, 2009 WL 4910590 (S.D.N.Y. Dec. 10, 2009) ...................................... 37

*Themis Cap., LLC v. Democratic Republic of Congo*,
    881 F. Supp. 2d 508 (S.D.N.Y. 2012)............................................................. 16

*Weltover, Inc. v. Republic of Argentina*,
    753 F. Supp. 1201 (S.D.N.Y. 1991)........................................................... 8, 20

**Statutes**

CPLR § 213................................................................................................ 32

## PRELIMINARY STATEMENT

This dispute is properly before the Court, and the Court should exercise its power to decide it. "[C]oncurrent jurisdiction in the United States courts and the courts of a foreign sovereign does not result in conflict." *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006). Plaintiffs' choice of forum, where Sotheby's has its head office, merits substantial deference. Sotheby's fails to overcome that deference with any meaningful showing of convenience. Nor does Sotheby's demonstrate exceptional circumstances justifying abstention.

No one perfect place exists to resolve the dispute between Plaintiffs and Sotheby's. That dispute spans the globe. It touches at least New York, London, Paris, Geneva, Vienna, Monaco, Singapore, the British Virgin Islands, and Cyprus.

One sensible forum might be England. The Sotheby's employee most intimately involved in enabling Yves Bouvier's billion-dollar fraud, Samuel Valette, lives and works in London. Plaintiffs wanted to litigate this case there.

But Sotheby's blocked them from doing so by joining forces with Bouvier and rushing to court to file a "request for conciliation" in Switzerland. Sotheby's tactical gambit violated the Tolling Agreement between the parties. It manufactured delay by improperly naming as a defendant Dmitry Rybolovlev's ex-wife, who had no potential claims against Sotheby's.

Sotheby's has admitted to forum-shopping designed to bar Plaintiffs from the English courts. In a U.S. securities filing, Sotheby's explained that it filed in Switzerland "in response to the stated intent of Mr. Rybolovlev's counsel to initiate litigation in the U.K." and boasted that "the Lugano Convention effectively precludes Mr. Rybolovlev from sustaining an action in the U.K."

1

Blocked from one logical place to pursue their claims against Sotheby's, Plaintiffs filed this case here. In contrast to Sotheby's gamesmanship in starting proceedings in Switzerland, Plaintiffs filed this case here for legitimate reasons. New York is a more sensible forum than Switzerland. Sotheby's world headquarters is here. Its New York office brokered the sale of three of the twelve artworks that Bouvier bought through Sotheby's and later resold one of the works at auction in New York without Plaintiffs' consent. Its Geneva office only arranged the sale of one artwork. Sotheby's is an integrated global business centrally run from New York. Sotheby's has identified five New York-based current and former employees as witnesses, but none based in Geneva. Key third-party witnesses live here. None of Plaintiffs' witnesses live in Switzerland. All of Sotheby's relevant documents worldwide are subject to discovery here in this case; few if any documents are in Switzerland.

The Court should deny Sotheby's motion and hear this case.

## BACKGROUND

In October 2016, the Court authorized Plaintiffs to get documents from Sotheby's under 28 U.S.C. § 1782 for use in foreign proceedings against Yves Bouvier. Sotheby's produced communications between Bouvier and Valette, but no communications between Bouvier and other Sotheby's employees or internal Sotheby's documents. The Court entered a protective order limiting Plaintiffs' use of the documents to three pending foreign proceedings against Bouvier and prohibiting use in other cases without its permission. The Second Circuit affirmed.

The documents led Plaintiffs to conclude that they had potential claims against Sotheby's for aiding and abetting Bouvier's fraud. In December 2016, the parties entered into a Tolling Agreement. Declaration of Marcus A. Asner dated January 18, 2019 ("Asner Decl.", Dkt. #42) Ex. E. In late 2017, after the Second Circuit's ruling, Plaintiffs sought leave under the § 1782

2

protective order to use the documents to "plead" claims against Sotheby's in a contemplated lawsuit in England. Declaration of Daniel J. Kornstein dated February 15, 2019 ("Kornstein Decl.") Ex. A at 3.

Sotheby's got an extension from the Court to respond to Plaintiffs' motion on false pretenses. Sotheby's claimed to need the adjournment "[b]ecause of a number of competing commitments of both Sotheby's and its counsel." *Id.* Ex. B. But the real, undisclosed reason was forum-shopping. The day before its § 1782 response was due in this Court, Sotheby's filed a "request for conciliation" in Switzerland, thereby triggering the Lugano Convention and blocking Plaintiffs from suing in England. Asner Decl. Ex. D. Sotheby's named Elena Rybolovleva, Dmitry Rybolovlev's ex-wife, as a defendant despite her having no potential claim against Sotheby's. Naming a Swiss resident made conciliation a prerequisite to suit under Swiss law, allowing Sotheby's to rush to court and invoke the Lugano Convention without having to prepare its claim against Plaintiffs.

After conciliation failed, Sotheby's had until July 11, 2018 to file a claim against Plaintiffs. On July 11, Sotheby's filed its claim for a negative declaratory judgment. It refused to give Plaintiffs' Swiss counsel a copy.

Plaintiffs filed this case on October 2, 2018. Sotheby's agreed to let Plaintiffs use the previously produced § 1782 documents to amend the complaint; Plaintiffs agreed to a stay of all other discovery. Plaintiffs filed the operative First Amended Complaint ("FAC," Dkt. #29) on November 21, 2018. Material taken from the § 1782 documents has been temporarily redacted from the Amended Complaint while the Court resolves Sotheby's request for sealing. Plaintiffs still have not been served with Sotheby's Swiss statement of claim.

## ARGUMENT

## I.   SOTHEBY'S FAILS TO OVERCOME THE SUBSTANTIAL DEFERENCE OWED PLAINTIFFS' LEGITIMATE CHOICE OF FORUM

Sotheby's does not meet its heavy burden to overcome the deference owed to Plaintiffs' legitimate choice of forum. "[A] court reviewing a motion to dismiss for *forum non conveniens* should begin with the assumption that the plaintiff's choice of forum will stand . . . ." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The case may be dismissed "only if the chosen forum is shown to be *genuinely inconvenient* and the [alternative] forum *significantly preferable*." *Iragorri*, 274 F.3d at 74-75 (emphasis added).

Sotheby's fails to overcome the deference owed to Plaintiffs' choice of forum because it does not show that New York is "genuinely inconvenient" or that Switzerland is "significantly preferable." *Id*. New York is more convenient than Switzerland.

### A.   Plaintiffs' Legitimate Choice of Forum Deserves Substantial Deference

The Court should start its analysis by determining the amount of deference owed to Plaintiffs' choice of forum. *See Norex Petroleum Ltd. v. Access Indus., Ltd.*, 416 F.3d 146, 153 (2d Cir. 2005). Legitimate reasons, not improper forum-shopping, drive Plaintiffs' choice. The Court should therefore give it substantial deference.

#### 1.   Sotheby's Fails to Address the Relevant Factors

Courts measure the deference owed a plaintiff's choice of forum on a "flexible sliding scale," considering "the totality of [the] circumstances." *Norex*, 416 F.3d at 154. Courts generally afford strong deference to a plaintiff's choice of its home forum because it is

presumptively convenient. *See id.* A foreign plaintiff's choice of forum will be entitled to more deference when it appears to have been "dictated by reasons that the law recognizes as valid," rather than tactical forum-shopping. *Chigirinskiy v. Panchenkova*, No. 14-CV-4410, 2015 WL 1454646, at *7 (S.D.N.Y. Mar. 31, 2015); *see Norex*, 416 F.3d at 154.

Two sets of non-exhaustive factors guide courts in determining whether a foreign plaintiff's choice of forum was motivated by legitimate reasons or forum-shopping. *See Norex*, 416 F.3d at 155. The first are the "convenience factors": (1) convenience of the plaintiff's residence in relation to the chosen forum; (2) availability of witnesses or evidence to the forum district; (3) defendant's amenability to suit in the forum district; (4) availability of counsel; and (5) other reasons of convenience or expense. *See id.*; *Chigirinskiy*, 2015 WL 1454646, at *7.

The second are the "forum-shopping factors": (1) attempts to win a tactical advantage from local laws that favor the plaintiff's case; (2) habitual generosity of juries in the United States or in the forum district; (3) plaintiff's popularity or the defendant's unpopularity in the chosen forum; and (4) inconvenience and expense to the defendant resulting from litigation in the chosen forum. *See Norex*, 416 F.3d at 155; *Chigirinskiy*, 2015 WL 1454646, at *7.

 Applying the correct standard, the Court should give substantial deference to Plaintiffs' choice of New York. Sotheby's argument against deference to Plaintiffs' choice of forum improperly rests on two points alone: that Plaintiffs are foreign entities controlled by foreign persons, *see* Sotheby's Mem. of Law in Supp. of Mot. to Dismiss or Stay ("Sotheby's Br.") 12-14, and the purported lack of connection between New York and the merits of the dispute, *see id.* at 14-17. But Plaintiffs' foreign status is just the beginning, not the end, of the deference inquiry

under Second Circuit law.[1] *See Norex*, 416 F.3d at 154-55; *Chigirinskiy*, 2015 WL 1454646, at *7. And Sotheby's is wrong to assert that the dispute lacks bona fide ties to New York. Significant connections to New York exist.

Beyond these two points, Sotheby's utterly fails to apply the two sets of relevant factors—with good reason, as both tests favor Plaintiffs.

### 2.  The Convenience Factors Support Plaintiffs' Choice of New York

The convenience factors show that Plaintiffs' choice of New York deserves deference.

### a.  Convenience of Residence

Plaintiffs are incorporated in the British Virgin Islands (BVI), which are closer to New York than to Switzerland, albeit not very close to either. *See Foundry, A Print Commc'ns Co. v. Trade Secret Web Printing, Inc.*, No. 11-CV-9553, 2012 WL 3031149, at *7 (S.D.N.Y. July 25, 2012) (considering convenience of corporate plaintiff's residence based on place of incorporation). This factor slightly favors Plaintiffs' choice.

### b.  Availability of Witnesses and Evidence

Witnesses and documents are more available in New York than in Switzerland.

Witnesses. Contrary to Sotheby's assertion, Mikhail Sazonov—Plaintiffs' principal witness—lives in France, not Switzerland.[2] Declaration of Mikhail Sazonov dated February 5,

---

[1]     Sotheby's is wrong to rely on *Cromer Finance Ltd. v. Berger*, 158 F. Supp. 2d 347, 355 n.8 (S.D.N.Y. 2001), for the supposed principle that foreign plaintiffs are automatically entitled to "substantially reduced" deference. Sotheby's Br. 13. *Cromer* precedes the Second Circuit's articulation of the relevant factors in *Iragorri* and *Norex*. If *Cromer* suggests that a foreign plaintiff's choice of forum cannot be entitled to significant deference, it is bad law.

[2]     Sotheby's attempt to give preclusive effect to the Singapore Court of Appeal's stay decision is misguided. *See* Sotheby's Br. 13. The cases cited by Sotheby's involve final judgments, but the Singapore Court of Appeal granted a stay of proceedings, not final judgment.

2019 ("Sazonov Decl.") ¶ 1. He intends to participate in litigating this case, including by providing testimony in English and in the United States. *Id.* ¶¶ 2-3. He is not a party to the Swiss proceedings filed by Sotheby's. Declaration of Saverio Lembo dated January 28, 2019 ("Lembo Decl.", Dkt. #41) Ex. H at 1-2. He is not subject to compulsory process in Switzerland because he does not live there; that he is of Swiss nationality is irrelevant. *See* Declaration of Sandrine Giroud dated February 15, 2019 ("Giroud Decl.") ¶ 5.

Dmitry Rybolovlev resides in Monaco, by Sotheby's own admission. *See* Lembo Decl. Ex. H ¶ 22. He intends to participate in Plaintiffs' prosecution of their case. Rybolovlev, as a non-resident, is also not subject to compulsory process in Switzerland. Giroud Decl*.* ¶ 5.

Samuel Valette, Sotheby's Vice Chairman for Private Sales Worldwide, is the Sotheby's employee most involved with the artworks at issue. According to his Sotheby's bio, he "plays an active role in the organisation of Sotheby's Impressionist & Modern Art sales in London, Paris *and New York*." Kornstein Decl. Ex. C (emphasis added). Sotheby's cannot deny that Valette regularly travels to New York to perform his duties. *See id.* If it refuses to produce Valette— which would be a dubious position, considering its repeated admissions that he acts on behalf of Sotheby's, Inc., *see id.* Ex. D ¶ 25-26; *id.* Ex. E ¶¶ 1, 4—Plaintiffs can subpoena him on one of his regular trips here. Conspicuously absent from Valette's bio and Sotheby's motion is any suggestion that he regularly works in Switzerland.

Alexander Bell is also based in London. Sotheby's Br. 10. He leads auctions in New York at least periodically and, as Sotheby's Co-Chairman Worldwide of Old Master Paintings, also appears likely to come to New York headquarters on a regular basis. Kornstein Decl. Ex. F.

---

In any event, the Singapore Court of Appeal's decision reflected the facts as of the time it was decided. It does not and cannot establish where witnesses live now, for instance.

Sotheby's does not suggest that Bell has any ties to Switzerland. He is not subject to compulsory process there.

During the parties' negotiations over an ESI protocol in the § 1782 proceedings, Sotheby's identified five U.S.-based persons who would likely have relevant information about the relationship between Bouvier and Sotheby's: Alena Grahn, Nita Khaitani, Kelly Pecore, Marina Phelan, and Bruno Vinciguerra. *Id.* Ex. G. To the best of Plaintiffs' knowledge, all five live in the New York area. At least Grahn and Vinciguerra, and possibly Phelan, are former employees over whom Sotheby's has no control and for whom compulsory process may be needed. *See id.* Exs. H-J.

In contrast, Sotheby's fails to identify even a single Switzerland-based Sotheby's employee as a witness in this case. *See Weltover, Inc. v. Republic of Argentina*, 753 F. Supp. 1201, 1209 (S.D.N.Y. 1991) (defendant seeking *forum non conveniens* dismissal must identify the purportedly inconvenienced witnesses). In its statement of claim, Sotheby's pleads that it ██████████████████████████████████████████████████████████████ ██████████████████████████████████████ *See* Lembo Decl. Ex. H ¶¶ 101-03. According to Sotheby's website, its Geneva office focuses largely on "jewellery and watches." Kornstein Decl. Ex. K.

The New York-based sellers of da Vinci's *Salvator Mundi*—Warren Adelson, Alexander Parish, and Robert Simon—are also important witnesses. *See id.* Ex. V (no dispute on § 1782 petition that da Vinci sellers were found in New York). Sotheby's claims to have been ignorant of Dmitry Rybolovlev's identity when it organized a viewing of *Salvator Mundi* for Rybolovlev at an apartment on Central Park West that was widely reported to belong to Rybolovlev family members. *Id.* Ex. E ¶¶ 34-35. Plaintiffs believe this claim to be false—an important falsehood

that shows Sotheby's lack of credibility and culpable mental state. Two days after the viewing, Valette told one of the da Vinci sellers that "the Russian" wanted to pay less than $100 million for the painting. FAC ¶ 169. The da Vinci sellers also memorialized other conversations with Valette in contemporaneous notes and emails. *Id.* ¶ 170. The testimony of the da Vinci sellers may be crucial to this case. All are found in New York, and none is subject to compulsory process in Switzerland. The same is true of any New York-based Sotheby's employees who were present at the *Salvator Mundi* viewing.

Only two genuine fact witnesses are even arguably more available in Switzerland than in New York: Bouvier and his henchman Jean-Marc Peretti.[3] Bouvier lives in Singapore, and his status as a party to the Swiss proceeding does not obligate him to testify. Giroud Decl. ¶ 39. If Sotheby's wants Bouvier or Peretti to participate in this case, it cannot complain that they are "unavailable." Sotheby's and Bouvier are co-claimants in the Swiss proceedings, Lembo Decl. Ex. H at 2-3, and have visibly coordinated their legal strategy in the § 1782 proceedings here, *see* Kornstein Decl. Exs. L, M (Sotheby's and Bouvier dividing up arguments in opposition to Plaintiffs' second § 1782 petition). That Bouvier and Sotheby's have a joint defense or other cooperation agreement providing for mutual assistance seems all but certain.[4]

---

[3]     Neither Elena Rybolovleva nor Tetiana Bersheda has knowledge of Sotheby's alleged conduct, and Sotheby's does not claim otherwise. *Cf.* Sotheby's Br. 22-23. Any involvement by Rybolovleva in Plaintiffs' dealings with Bouvier stopped when she filed for divorce from Dmitry Rybolovlev in December 2008. Kornstein Decl. ¶ 16. All of the Sotheby's transactions at issue in this case occurred in 2011 and after. *See* FAC ¶ 40.

[4]     The Court should certainly not dismiss the case based on Bouvier's or Peretti's purported unavailability in this forum without, at minimum, authorizing discovery into any agreements between Sotheby's and Bouvier that might call for his or his associate Peretti's cooperation. *See, e.g.*, *Base Metal Trading S.A. v. Russian Aluminum*, No. 00-CV-9627, 2002 WL 987257, at *3-5 (S.D.N.Y. May 14, 2002) (authorizing limited discovery necessary to resolve *forum non conveniens* motion).

Evidence. Documents are also more accessible here than in Switzerland. Sotheby's assertion that "emails from Valette to Bouvier and Peretti" will be found in "Switzerland or the UK, or both" is fictitious. Sotheby's Br. 20. Plaintiffs already have those emails because Sotheby's produced them under § 1782. According to Sotheby's own prior filings with this Court, few if any of its documents are likely located in Switzerland. *See* Kornstein Decl. Ex. E ¶¶ 7-8 (explaining Sotheby's documents are stored on servers in the country where the Sotheby's employee is based). Sotheby's has never identified any Swiss document custodians.

Plaintiffs will produce any responsive materials in the possession of Mikhail Sazonov, who will cooperate with Plaintiffs in litigating this case. *See* Sazonov Decl. ¶¶ 2-3. In any Swiss proceeding, however, Sazonov would be a third party who resides in France and is not subject to compulsory process. *See id.* ¶ 1; *cf.* Sotheby's Br. 20 (erroneously asserting that Sazonov lives in Switzerland).

All other relevant documents in Sotheby's possession, including internal communications, are discoverable here, but likely not in Switzerland. Sotheby's will be required to produce documents in the control of its wholly owned foreign subsidiaries in this case because it has the "practical ability" to obtain them. *Motorola Credit Corp. v. Uzan*, No. 02-CV-666, 2013 WL 6098388, at *3 (S.D.N.Y. Nov. 20, 2013). Sotheby's does not dispute that it functions as a single global business run from New York. FAC ¶¶ 194-202. "[T]he only reasonable conclusion to draw is that if [Sotheby's] needed the assistance or cooperation of [its subsidiaries] in a matter of concern to the company, it would receive such assistance." *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, MDL No. 1428, 2006 WL 1328259, at *8 (S.D.N.Y. May 16, 2006). On the other hand, analogous document discovery does not exist in Switzerland, *see*

10

Giroud Decl. ¶ 38, and Sotheby's provides no basis to conclude that documents held by American or English custodians would be within the reach of the Swiss courts.

Sotheby's assertion that proof of damages is "undoubtedly located in Switzerland" has no significance. Sotheby's Br. 20. Bouvier did send invoices directing Plaintiffs to make payments to Swiss bank accounts. *See* Asner Decl. Ex. A ¶ 19. But documents showing what Plaintiffs paid Bouvier are in Plaintiffs' possession, custody, or control, and no need exists to subpoena Swiss banks for such evidence. The bank accounts that paid out Plaintiffs' funds are in Cyprus and Monaco. *See* Kornstein Decl. ¶ 8. For five of the twelve artworks acquired through Sotheby's, Plaintiffs' payments to Bouvier passed through New York banks. *Id.* ¶ 20. And when Sotheby's helped Bouvier sell Modigliani's *Tête* from Plaintiffs' collection without their consent, Bouvier received payment from New York bank accounts. *Id.*

Documents relating to damages are found in numerous jurisdictions around the world, including New York and Switzerland, but Plaintiffs will provide the proof necessary to substantiate their damages in any jurisdiction.

### c.    Defendants' Amenability to Suit

Both Defendants, Sotheby's (or "Sotheby's Delaware") and Sotheby's Inc., are undisputedly amenable to suit here. Sotheby's Inc. is incorporated in New York. New York is Sotheby's worldwide headquarters and the center of its operations, including its centralized compliance and legal departments. FAC ¶ 196. This factor therefore supports deference to Plaintiffs' choice of forum. *See Ancile Inv. Co. v. Archer Daniels Midland Co.*, No. 08-CV-9492, 2009 WL 3049604, at *5 (S.D.N.Y. Sept. 23, 2009).

Sotheby's Delaware's consent to jurisdiction in Switzerland does not change the analysis. When Plaintiffs filed this case, they had no reason to believe Sotheby's Delaware would consent

11

to suit in Switzerland. It was not a party to the Swiss conciliation proceeding started by Sotheby's and is not a party to Sotheby's claim. *See* Lembo Decl. Ex. H. The apparent unavailability of jurisdiction over Sotheby's Delaware in Switzerland at the time this case was filed further supports deference to Plaintiffs' choice of forum. *See Osuna v. Citigroup, Inc.*, No. 17-CV-1434, 2018 WL 6547205, at *7 (S.D.N.Y. Sept. 28, 2018) (unlikelihood of establishing jurisdiction over defendant in foreign forum at time of filing supported deference to plaintiff's choice, even though concern was later "obviated" by consent).

### d.      Availability of Appropriate Legal Assistance

This factor is neutral because all parties are equipped to find capable counsel in any relevant jurisdiction. *See Chirag v. MT Marida Marguerite Schiffahrts*, 983 F. Supp. 2d 188, 195 (D. Conn. 2013) (explaining that this factor concerns ability to obtain representation and pursue available remedies).

### e.      Other Issues Relating to Convenience and Expense

Sotheby's repeated insistence that the facts of the case have no tie to New York is wrong. *Cf.* Sotheby's Br. 14-16. The underlying events have significant connections to New York— more than to Switzerland. Sotheby's concedes as much by lumping together "Switzerland *and other foreign countries*" in its analysis. *Id.* at 16 (emphasis added).

The Court should consider the context that shapes the record before it. Sotheby's knows everything its employees around the world did for Bouvier. Despite that knowledge, it identifies not a single Switzerland-based employee as a witness to this case. At this pre-discovery stage, Plaintiffs only know what they observed, what is in the public domain, and what Sotheby's disclosed in the § 1782 documents it chose to provide. The § 1782 documents hint at more connections to New York—emails with the legal department in New York, solicitations of Jean-

12

Marc Peretti by senior New York executives—about which Plaintiffs can only now guess. *See, e.g.*, Kornstein Decl. Exs. N, O. The internal documents that Sotheby's refused to produce are likely to reveal more evidence of New York involvement. Even on that imbalanced record, this case's connections to New York are significant.

Sotheby's facilitated the sale of 12 of the 38 artworks that Bouvier acquired for Plaintiffs. FAC ¶ 26. Of those 12 artworks, Sotheby's Inc., the New York subsidiary, signed the contract of sale for three, or one-quarter of the total. Kornstein Decl. ¶ 2. Sotheby's SA, the wholly owned Geneva subsidiary, signed the contract of sale for only one artwork. *Id*. This fact alone tilts the balance to New York.

Sotheby's arranged a viewing of *Salvator Mundi* at a Rybolovlev family apartment on Central Park West. FAC ¶¶ 167-70. The viewing is a crucial event in this case, especially because of Sotheby's later misrepresentations about it, which bear on its credibility and its culpable state of mind. *See supra* at 8-9 (discussing Sotheby's false claims about Valette's knowledge at the time of the viewing and the importance of New York-based third-party witnesses).

Sotheby's also collaborated with Bouvier to sell Modigliani's *Tête* from Plaintiffs' collection at auction in New York without their knowledge. FAC ¶¶ 147-53. Plaintiffs were attempting to finance their purchase of Rothko's *No. 6*; Bouvier claimed that the sellers of the Rothko would accept €80 million plus *Tête*, valued at €60 million. *Id.* ¶ 147. That was a fabrication: the sellers never expressed any interest in *Tête*. *Id.* ¶ 148. Bouvier bought the Rothko for $83.5 million; flipped it to Plaintiffs for €80 million plus *Tête*; never gave *Tête* to the Rothko sellers as instructed by Plaintiffs; and instead consigned *Tête* to sale at auction by Sotheby's. *Id.*

¶¶ 148-49. The auction occurred in New York on November 4, 2014, where *Tête* sold for a hammer price of $63 million. *Id.* ¶ 151. Bouvier pocketed the proceeds.

Sotheby's Swiss statement of claim alleges that  *See* Lembo Decl. Ex. H ¶¶ 99, 227. Sotheby's does not allege that ███████████████████████████ *See* Lembo Decl. Ex. H.

Taken together, the convenience factors support substantial deference to Plaintiffs' choice of forum. Sotheby's is headquartered here, and both Defendants are amenable to suit here. Sotheby's employee witnesses and key third-party witnesses reside here. No Sotheby's witnesses live in Switzerland. Nor do Mikhail Sazonov or Dmitry Rybolovlev. Sotheby's relevant documents are all discoverable here. And more of Sotheby's underlying conduct occurred in New York than in Switzerland.

### 3. The Forum-Shopping Factors Show that Plaintiffs Filed in New York for Legitimate Purposes

Sotheby's makes no argument that Plaintiffs engaged in forum-shopping by choosing New York. *See* Sotheby's Br.[5] Sotheby's has waived any such argument. *See In re General Motors, LLC Ignition Switch Litig.*, 202 F. Supp. 3d 362, 374 (S.D.N.Y. 2016) (Furman, J.). That failure alone compels the conclusion that Plaintiffs' choice of forum "merits deference." *Fournier v. Starwood Hotels & Resorts Worldwide, Inc.*, 908 F. Supp. 2d 519, 523 (S.D.N.Y.

---

[5]    It only uses the word "forum-shopping" twice; both references are generic quotations from the case law. *See* Sotheby's Br. 13.

2012). Applying the forum-shopping factors confirms that Plaintiffs filed this case in New York for legitimate reasons, not improper tactical advantage.[6]

### a.    Tactical Advantage from Local Laws

Sotheby's suggestion that Swiss law would govern this case if it proceeded here is wrong. *See* Sotheby's Br. 26. That incorrect assertion is based entirely on an irrelevant Singaporean choice-of-law analysis of the dispute between Plaintiffs and *Bouvier*. *See id.* The Singapore analysis focused largely on oral contracts allegedly made between Plaintiffs and Bouvier in Geneva. *See* Asner Decl. Ex. A. ¶¶ 77-82. Sitting in diversity, this Court will apply New York conflict-of-laws principles to determine what jurisdiction's law governs the dispute between Plaintiffs and *Sotheby's*. *See Burns v. Del. Charter Guarantee & Tr. Co.*, 805 F. Supp. 2d 12, 22 (S.D.N.Y. 2011). No contracts or other contacts tie the dispute between Plaintiffs and Sotheby's to Switzerland. But even under Sotheby's erroneous view of the case, Plaintiffs derive no "tactical advantage . . . from local laws" by filing here. *Norex*, 416 F.3d at 155. And the Swiss courts would likely not apply Swiss law to the dispute. *See* Giroud Decl. ¶ 34.

### b.    Generosity of Juries

No evidence supports any inference that Plaintiffs filed in New York to benefit from American juries' reputed generosity. Plaintiffs do not demand a jury trial. *See* FAC. Plaintiffs' damages are pecuniary in nature anyway, and their theory of damages is objective: the difference

---

[6]    Sotheby's speculation that Plaintiffs' selection of New York has something to do with recent developments in Monaco and Switzerland is wrong. Sotheby's Br. 7. Worse, it seems little more than a pretext to launch irrelevant, *ad hominem* attacks against Rybolovlev. The criminal cases against Bouvier in Switzerland and Monaco are moving forward; Bouvier has a €10 million bail in Monaco, and his recent attempts to have that bail lifted were denied. The Swiss criminal investigation against Rybolovlev was dismissed. The Monaco criminal investigation against Rybolovlev is in its earliest stages, no charges have been filed, and Rybolovlev asserts he is innocent of any wrongdoing. No bail was set for Rybolovlev.

between the inflated prices they paid to Bouvier and the prices that willing sellers in the marketplace accepted from Bouvier, to which Plaintiffs were entitled. *See, e.g.*, *id.* ¶ 3.

### c.      Parties' Relative Popularity in Chosen Forum

Perhaps more than any other, this factor demonstrates the legitimacy of Plaintiffs' choice to sue in New York. Plaintiffs are entities associated with the Rybolovlev family. *See* FAC ¶¶ 5, 6, 13. Rybolovlev is a successful businessman of Russian nationality who is often labelled by the press—and by Sotheby's here—as a "Russian oligarch." Sotheby's Br. 3; Kornstein Decl. Ex. P. Plaintiffs filed this case in October 2018, in the midst of growing anti-Russian sentiment in the United States and intense public interest in the Special Counsel's investigation into any improper ties between the Trump presidential campaign and the Russian government. Kornstein Decl. Exs. Q, R. The press has falsely accused Rybolovlev of impropriety because of an old real estate transaction with Trump. The Court can take judicial notice of these widely known facts. *See, e.g.*, *Themis Cap., LLC v. Democratic Republic of Congo*, 881 F. Supp. 2d 508, 531 (S.D.N.Y. 2012) (taking judicial notice of political climate in foreign country). Any suggestion that Plaintiffs chose to sue a prominent American public company in its home city of New York for reasons of popularity would be absurd.

### d.      Inconvenience or Expense to Defendant

This factor again weighs "decidedly" in Plaintiffs' favor. *Chigirinskiy*, 2015 WL 1454646, at *10. Sotheby's cannot claim inconvenience from litigating in federal court in Manhattan, a short subway ride from its global headquarters, particularly since more of its employee witnesses are in New York than in Geneva.

Because Plaintiffs did not forum-shop and filed in New York for reasons that the law recognizes as legitimate, their choice of forum merits substantial deference.

16

**B.    New York Is a More Convenient Forum than Switzerland for This Dispute**

Sotheby's motion should be denied unless it can overcome the substantial deference

owed to Plaintiffs' choice of forum by showing that New York is "genuinely inconvenient" and

that Switzerland is "significantly preferable." *Iragorri*, 274 F.3d at 74-75. Sotheby's shows

neither.

Applying the relevant factors that weigh the private interests of the parties and the public

interests of the two jurisdictions demonstrates that New York is a more convenient forum than

Switzerland.

**1.    Private Interest Factors Favor New York**

The "private interest factors," which take into account the convenience of the litigants,

include: (1) relative ease of access to evidence; (2) availability of compulsory process for

unwilling witnesses and the costs of attendance for willing witnesses; and (3) any other practical

problems that might affect the cost and convenience of trial—here, language. *See id* at 73-74. In

weighing these factors, the Court should focus pragmatically on the "precise issues that are likely

to be actually tried." *Id*.

Unless the balance of the private interest factors "strongly favors defendant, plaintiffs'

choice of forum 'should rarely be disturbed.'" *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30-

31 (2d Cir. 2002) (quoting *Gilbert*, 330 U.S. at 508). Where witnesses and documents are

dispersed around the world but "are not concentrated" in the proposed alternative forum, "the

private-interest factors . . . , *at most*, weakly favor" the alternative forum. *Constellation Energy

Commodities Grp. Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 220 (S.D.N.Y. 2011)

(emphasis added).

Here, not only do the private interest factors fail to "strongly favor" Sotheby's, but they favor Plaintiffs. *DiRienzo*, 294 F.3d at 30. Documents concerning Sotheby's knowledge and state of mind are more available in New York. Most of the witnesses identified by the parties live in New York. Most of the remaining witnesses either travel to New York regularly or intend to cooperate with litigating the case in New York. And translation will be needed in any forum.

### a.     Availability of Evidence

"Less weight" should be afforded to the location of documentary evidence in an electronic age, and it rarely provides a basis for *forum non conveniens* dismissal absent special circumstances. *Id.*; *see In re Assicurazioni Gen. S.p.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 361 (S.D.N.Y. 2002).

Regardless, this factor favors New York. Each category of documents identified by the parties will be available in New York, but some will likely be unavailable in Switzerland (*see supra* at 10-11):

| Category of Documents | New York | Switzerland |
|---|---|---|
| **"Emails from Valette to Bouvier and Peretti"** *Sotheby's Br. 20* | Already in Plaintiffs' possession. | Already in Plaintiffs' possession. |
| **Documents in the possession of Mikhail Sazonov** *See Sotheby's Br. 20* | Sazonov will cooperate with Plaintiffs' case in New York, and Plaintiffs will produce relevant documents in his possession, custody, or control. Sazonov Decl. ¶¶ 2-3. | Lives in France; non-party witness not subject to compulsory process. Sazonov Decl. ¶ 1. |
| **All other relevant documents in the possession, custody, or** | Subject to production here because Sotheby's does not dispute centralized control from New York and practical | Generally not subject to plenary discovery in Switzerland. *See* Giroud Decl. ¶ 38. |

| control of Sotheby's worldwide | ability to get them. FAC ¶¶ 194-202; *In re Ski Train Fire*, 2006 WL 1328259, at *8. | |
| Documents showing Plaintiffs' damages *See Sotheby's Br. 20* | Plaintiffs must produce to prove their damages. Unnecessary third-party bank records located in both Switzerland and New York. | Plaintiffs must produce to prove their damages. Unnecessary third-party bank records located in both Switzerland and New York. |

### b.    Compulsory Process for Unwilling Witnesses and Cost to Willing Witnesses

With respect to witnesses, Sotheby's again falls well short on both the law and the facts of showing that Switzerland is significantly preferable.

"[W]here potential witnesses reside in both potential forums as well as in other locations, the hardship of procuring witnesses generally does not favor dismissal." *Ancile Invest. Co.*, 2009 WL 3049604, at *7; *accord Byrne v. British Broad. Corp.*, 132 F. Supp. 2d 229, 238 (S.D.N.Y. 2001). Sotheby's provides no evidence or argument concerning costs for willing witnesses, and any such argument would have little weight in a $380 million dispute between a publicly traded multinational company and entities associated with one of the world's wealthiest families. *See Rio Tinto PLC v. Vale S.A.*, No. 14-CV-3042, 2014 WL 7191250, at *14 (S.D.N.Y. Dec. 17, 2014) (finding "*de minimis*" impact of travel costs in light of parties' resources); *Byrne*, 132 F. Supp. 2d at 238 (denying *forum non conveniens* motion in absence of any "showing that the cost of obtaining the attendance of willing witnesses would be significantly greater for either side in either forum").

Plaintiffs' key witnesses, Mikhail Sazonov and Dmitry Rybolovlev, intend to cooperate with this action. Sazonov lives in France, is not a party to the Swiss proceedings, and is not

subject to Swiss compulsory process. The relevant Sotheby's employees are all based in either London or New York, and those based in London regularly visit New York. Sotheby's does not identify even a single current or former Sotheby's employee who lives in Switzerland as a witness. *Cf. Weltover*, 753 F. Supp. at 1209 (Sotheby's obligation to identify witnesses at issue on its motion). In contrast, Sotheby's has identified five employee witnesses in New York, and Plaintiffs have identified three more important third-party witnesses here (*see supra* at 6-9):

| Witness | New York | Switzerland |
|---------|----------|-------------|
| **Mikhail Sazonov** | Non-party who intends to participate and testify. Sazonov Decl. ¶ 2-3. | Non-party who lives outside the jurisdiction in France; not subject to compulsory process. Sazonov Decl. ¶ 1. |
| **Dmitry Rybolovlev** | Intends to participate and testify voluntarily. | Party who lives outside the jurisdiction in Monaco. |
| **Samuel Valette** | Agent of Sotheby's Inc. who regularly travels to New York. Kornstein Decl. Ex. C; *id.* Ex. D ¶¶ 25-26; *id.* Ex. E ¶¶ 1, 4. | Party who lives outside the jurisdiction in the UK. |
| **Alexander Bell** | Agent of Sotheby's Inc. who regularly travels to New York. Kornstein Decl. Ex. D ¶ 25; *id.* Ex. F. | Non-party who lives outside the jurisdiction in the UK; not subject to compulsory process. |
| **Bruno Vinciguerra** *Former Sotheby's employee who lives in N.Y. area* | Non-party subject to compulsory process; more convenient and cheaper. Kornstein Decl. Ex. I. | Not subject to compulsory process; less convenient and more costly. |
| **Marina Phelan** *Possibly former Sotheby's employee; lives in N.Y. area* | Non-party subject to compulsory process; more convenient and cheaper. Kornstein Decl. Ex. J. | Not subject to compulsory process; less convenient and more costly. |

20

| | | |
|---|---|---|
| **Nita Khaitani**<br>*Current Sotheby's employee who lives in N.Y. area* | More convenient and cheaper. | Less convenient and more costly. |
| **Alena Grahn**<br>*Former Sotheby's employee who lives in N.Y. area* | Non-party subject to compulsory process; more convenient and cheaper. Kornstein Decl. Ex. H. | Non-party not subject to compulsory process; less convenient and more costly. |
| **Kelly Pecore**<br>*Current Sotheby's employee who lives in N.Y. area* | More convenient and cheaper. | Less convenient and more costly. |
| **Warren Adelson**<br>*Da Vinci Seller* | Non-party subject to compulsory process; more convenient and cheaper. | Non-party not subject to compulsory process; less convenient and more costly. |
| **Alexander Parish**<br>*Da Vinci Seller* | Non-party subject to compulsory process; more convenient and cheaper. | Non-party not subject to compulsory process; less convenient and more costly. |
| **Robert Simon**<br>*Da Vinci Seller* | Non-party subject to compulsory process; more convenient and cheaper. | Non-party not subject to compulsory process; less convenient and more costly. |
| **Yves Bouvier** | Non-party who has joint defense / cooperation agreement with Sotheby's. | Party who lives outside the jurisdiction in Singapore. |
| **Jean-Marc Peretti** | Non-party who lives in Switzerland; not subject to compulsory process. | Non-party who lives in Switzerland; subject to compulsory process. |

Language. Sotheby's professed concern about translating documents from French to English has no weight. The global nature of this dispute means that significant translation will be required wherever the case is litigated.

The email traffic between Sazonov and Bouvier and between Valette and Bouvier is in French. Plaintiffs rely on those documents to plead their claims in the Amended Complaint because those are the documents they have.[7] *Cf.* Sotheby's Br. 21 n.8.

But Sotheby's *internal* documents—which Sotheby's refused to produce—are in English. They are at least as relevant to this case as its outward-facing communications, if not more so. Valette is a London-based employee in an English-speaking workplace. All of the Sotheby's employees identified as witnesses in this case work in English-speaking workplaces in English-speaking countries. *See* Kornstein Decl. Ex. G. In the § 1782 proceedings, Sotheby's produced several internal emails in English that Valette forwarded on to Bouvier. *See, e.g., id.* Exs. N, O. For instance, in connection with the *Salvator Mundi* transaction, a senior Sotheby's official sent Valette an email, copying Bruno Vinciguerra and two other American Sotheby's officials, with several "[o]pen question[s]" for Valette to discuss with Bouvier. *Id.* Ex. N. Sotheby's English-language internal documents would have to be translated for use in Switzerland. *See* Giroud Decl. ¶ 36. So would its relevant communications with English-speaking third parties such as the da Vinci sellers. *E.g.*, Kornstein Decl. Ex. S.

Mikhail Sazonov will testify in English. Sazonov Decl. ¶ 3. Dmitry Rybolovlev speaks neither English nor French, *see* Sotheby's Br. 21, and his testimony would be translated in either potential forum. To Plaintiffs' knowledge, every Sotheby's employee identified as a witness speaks English.

---

[7] Sotheby's claims that translation issues are "exceptionally weighty" in this case because Plaintiffs' pleadings rely on differences in tone between Valette's private emails to Bouvier and his emails designed to be forwarded to Plaintiffs. Sotheby's Br. 21-22. But the difference between the informal "*tu*" and the formal "*vous*" is one of the first things any beginning student of French learns.

### 2.    Public Interest Factors Favor New York

The four "public interest" factors are mainly irrelevant to this case or favor New York: (1) administrative difficulties associated with court congestion; (2) unfairness of imposing jury duty on a community with no relation to the dispute; (3) "local interest in having localized controversies decided at home"; and (4) avoiding choice-of-law problems or difficulties in applying foreign law. *See DiRienzo*, 294 F.3d at 31.

Court Congestion. Sotheby's offers little evidence concerning court congestion. *See Chigirinskiy*, 2015 WL 1454646, at *12 ("[T]here is no reason to believe that the [Swiss] court would handle this case more expeditiously than this court."). What evidence exists shows the inefficiency of Swiss proceedings. Sotheby's filed its statement of claim in July 2018, but Plaintiffs have not been served with it yet because of a series of intervening rulings unrelated to the merits, or even threshold issues like jurisdiction. *See* Lembo. Decl. ¶¶ 16-21.

Sotheby's argument that this Court would face a difficult task in evaluating credibility without live testimony is misplaced. *See* Sotheby's Br. 25. Limiting live testimony would make the proceedings in New York *more* efficient, not less so, consistent with this Court's practice for non-jury trials. *See* Individual Rules and Practices of Judge Jesse M. Furman § 5(E). And, in any event, the relevant witnesses are more accessible in New York than in Switzerland. *See supra* at 6-9, 19-21.

Jury Duty. Plaintiffs do not demand a jury trial. *See* FAC. No unfairness would exist for Southern District of New York jurors anyway, as this is hardly a "community with no relation to the litigation." *DiRienzo*, 294 F.3d at 31. Sotheby's New York office facilitated the sale of three of twelve relevant works to Bouvier. It resold one of the works for Bouvier's benefit without Plaintiffs' consent. And one of the most important events in the case occurred on Central Park West. *See supra* at 8-9, 13.

Local Interest in Local Controversy. Nothing about this controversy is remotely "localized" to or "at home" in any single jurisdiction. *DiRienzo*, 294 F.3d at 31. Nonetheless, "New York has a cognizable interest in this matter because [Sotheby's] is a U.S.-based multinational corporation that conducts significant operations here." *Ancile Inv. Co.*, 2009 WL 3049604, at *8; *accord Metito (Overseas) Ltd. v. Gen. Elec. Co.*, No. 05-CV-9478, 2006 WL 3230301, at *6 (S.D.N.Y. Nov. 7, 2006). Not only does Sotheby's conduct significant business in New York, but it is also headquartered here, most of its current and former employees who will be witnesses are here, and many of the critical events took place here.

Foreign Law. Sotheby's choice-of-law analysis simply parrots the Singapore Court of Appeal's application of Singaporean choice-of-law principles to a dispute involving different parties without regard for evidence discovered later, including the § 1782 documents. Sotheby's Br. 25. This Court would apply New York conflict-of-laws rules. *See Burns*, 805 F. Supp. 2d at 22. In the event of a conflict concerning the substantive elements of a tort claim, New York conflict-of-laws rules often favor the law of the place of the injury. *See id.* Where, as here, the injury is economic in nature, the place of injury might be the BVI, the jurisdiction in which Plaintiffs reside. *See id.* Alternatively, any conflict might be resolved in favor of the law of the situs of Sotheby's tortious conduct, which was mainly New York and the UK. *See O'Connor v. U.S. Fencing Ass'n*, 260 F. Supp. 2d 545, 555-56 (E.D.N.Y. 2003). Either way, this Court would have an "advantage" over a Swiss court in applying the substantive law of a fellow common-law jurisdiction. *Int'l Equity Invest., Inc. v. Cico*, 427 F. Supp. 2d 503, 506 (S.D.N.Y. 2006).

Sotheby's does not discuss Swiss conflict-of-laws principles and makes no attempt to show that Swiss courts would apply Swiss law to Plaintiffs' claims against Sotheby's. *See* Lembo Decl. (containing no such analysis). No basis exists to conclude that Swiss courts would

have the advantage of applying domestic law rather than the law of New York, England, or the BVI. Giroud Decl. ¶ 34.

The public interest factors therefore favor Plaintiffs' chosen forum in New York. Sotheby's fails to overcome the significant deference that Plaintiffs' legitimate choice warrants. It does not show that Switzerland is even a mildly better forum for this dispute, let alone make the required showing that New York is "genuinely inconvenient" and that Switzerland is "significantly preferable." *Iragorri*, 274 F.3d at 74-75.

## C.      Sotheby's Jurisdictional Games Show the Swiss Forum's Unsuitability

The jurisdictional manipulations in Sotheby's Swiss filings show that Switzerland is not the right forum for this dispute, even if Sotheby's consent to service of process makes it a technically adequate forum. *See infra* § III.A (explaining in more detail).

Based on a disingenuous and misleading request for an adjournment from this Court, Sotheby's rushed to court in Switzerland to block Plaintiffs from suing in England. Elena Rybolovleva never purported to have any claim against Sotheby's. Sotheby's named her as a defendant in Switzerland to make conciliation a mandatory prerequisite to suit. *See* Giroud Decl. ¶ 43. Sotheby's then triggered the Lugano Convention by filing a request for conciliation instead of a statement of claim. Rybolovleva acknowledged at the conciliation that Sotheby's "ha[d] no liability or debt of any kind to her." Lembo Decl. Ex. D at 8.

Sotheby's sued her anyway. *See id.* Ex. H. It did so to try to manufacture jurisdiction by keeping a Swiss resident in the case. *See* Giroud Decl. ¶¶ 24-27. With respect to Plaintiffs, Sotheby's jurisdictional argument is poor: Little if any of its relevant conduct occurred in Switzerland, and neither Plaintiffs nor Dmitry Rybolovlev resided there at the time of Sotheby's relevant conduct. *See id.* ¶¶ 28-35.

Sotheby's resort to these tactics to bring its claim against Plaintiffs in Switzerland reveals the unsuitability of Switzerland as a forum for this dispute.

## II.   THE AMENDED COMPLAINT STATES CLAIMS FOR BREACH OF THE TOLLING AGREEMENT

Sotheby's does not dispute that its Swiss conciliation filing on November 17, 2017, breached the parties' Tolling Agreement unless the Tolling Agreement terminated early. Sotheby's does not—and cannot, on a Rule 12(b)(6) motion—offer any evidence that Plaintiffs intended to terminate the Tolling Agreement early. Sotheby's asks the Court to hold as a matter of law that Plaintiffs inadvertently terminated the Tolling Agreement by filing a letter on ECF in the § 1782 proceedings.

This argument fails because it gives no effect to the parties' definition of a "Notice of Suit": "14 days' written notice ('Notice of Suit'), *as provided in paragraph 8*." Asner Decl. Ex. E ¶ 3 (emphasis added). Paragraph 8 requires service of written notice by overnight courier. *Id.* ¶ 8. These provisions define with a bright line what kind of notice suffices to terminate the Tolling Agreement. Plaintiffs' ECF filing in the § 1782 proceedings was not a Notice of Suit. At the least, the Court cannot hold on this record that it was a Notice of Suit as a matter of law.

Sotheby's premature arguments about the appropriate remedy for its breach of contract and its halfhearted invocation of laches fare no better. The Court should deny Sotheby's motion to dismiss the claims concerning the Tolling Agreement.

### A.   Sotheby's Fails to Give Effect to the Language of the Tolling Agreement

Sotheby's construction of the Tolling Agreement is wrong because it fails to "give full meaning and effect to all of [the Tolling Agreement's] provisions." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016) (quotation marks omitted).

The Tolling Agreement provides that it "shall terminate . . . 14 days after any Party serves a 'Notice of Suit' on any other Party." Asner Decl. Ex. E ¶ 4(a). Contrary to Sotheby's assertion, the Tolling Agreement does not define "Notice of Suit" as mere "written notice." *Cf.* Sotheby's Br. 36. The Tolling Agreement states: "Each Party shall provide at least 14 days' written notice ('Notice of Suit'), *as provided in Paragraph 8*, prior to filing or commencing any . . . legal proceeding against any other Party." Asner Decl. Ex. E ¶ 3 (emphasis added). Paragraph 8 provides: "All notices required hereunder shall be in writing and shall be deemed duly given one (1) business day after being sent to [counsel] by reputable overnight courier service . . . ." *Id.* ¶ 8.

The purpose of requiring "at least 14 days' written notice ("Notice of Suit"), *as provided in paragraph 8*," is to eliminate ambiguity about what kind of notice terminates the agreement. In Sotheby's alternative reality in which Notice of Suit simply means "written notice" of any kind, the parties have no way to know what kind of writing ends their obligations. Would an email to Sotheby's counsel that says "We would like to discuss a potential new lawsuit against Sotheby's" suffice? A newspaper article read by Sotheby's counsel in which a representative of Plaintiffs is quoted as saying "we are going to sue Sotheby's in England"? The Court should give effect to the parties' intent that Notice of Suit be given predictably, "as provided in Paragraph 8." *Id.* ¶ 3; *see Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) ("The primary objective in contract interpretation is to give effect to the intent of the contracting parties as revealed by the language they chose to use." (quotation marks omitted)).

Plaintiffs did not give the notice required by Paragraph 8 because they had no intent to terminate the Tolling Agreement at that time. Plaintiffs sought permission to use the § 1782 documents to "plead" their claims in England because they could not file their complaint without

those materials. Kornstein Decl. Ex. A at 3. Plaintiffs did not know whether or when the Court would grant permission to use the documents. In any event, Plaintiffs expected the Court's ruling to take some time, certainly more than 14 days.

Sotheby's strained attempt to read the language in Paragraph 8 about service by overnight courier as *optional* does not make sense. *Cf.* Sotheby's Br. 37. The parties would have no reason to specify a method of service in the Tolling Agreement if any other method were equally valid. That Notice of Suit "shall be deemed duly given one (1) business day after being sent . . . by a reputable overnight courier" means that Notice of Suit shall *not* be deemed duly given unless so served. Otherwise the words would have no purpose. *See Orchard Hill*, 830 F.3d at 157 (all words must be given effect).

Sotheby's reading of Paragraph 8 also leads to an anomaly: A party would have to wait a day for its Notice of Suit to take effect if it used the method of service specified in the Tolling Agreement, but it could make its notice effective immediately by using other means. And if a party served notice under Paragraph 8 with a courtesy copy by email, the email copy would arguably take effect first. No reason exists to believe that the parties intended that confusing result. It is particularly illogical in the context of a Tolling Agreement designed to make clear the *exact* date on which the parties' obligations expire so they can proceed to court. These anomalous consequences show that Sotheby's reading of Paragraph 8 show is wrong. *See, e.g.*, *Lee v. Marvel Enters., Inc.*, 386 F. Supp. 2d 235, 244 (S.D.N.Y. 2005) (under New York law, contractual provisions must be construed to avoid absurd, unfair, and anomalous results).

At best for Sotheby's, the Tolling Agreement is ambiguous about whether a letter filed on ECF in the § 1782 proceedings constitutes a Notice of Suit. If so, the Court should deny the motion to dismiss and give the parties the opportunity to take discovery and present extrinsic

evidence. *See Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010) ("[W]hen the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal on a Rule 12(b)(6) motion." (quotation marks omitted)).

Case law forgiving strict compliance with contractual notice provisions cannot save Sotheby's. *See* Sotheby's Br. 37-38. The cases cited by Sotheby's stand only for the proposition that a technical defect in another party's clear expression of intent to terminate a contract cannot be exploited to continue holding that party to the contract.[8]

Here, however, Plaintiffs never provided Sotheby's with "actual notice" of their intent to terminate the Tolling Agreement—because they then had no such intent. *Cf. MyPlayCity*, 2012 WL 1107648, at *10. Sotheby's claims that Plaintiffs should be held to have terminated the Tolling Agreement *inadvertently* because their ECF filing in the § 1782 proceedings approximated a "Notice of Suit." It cites no case recognizing such an accidental-termination-by-approximation theory, and Plaintiffs are aware of none.

**B.    Plaintiffs State a Claim for Damages and for an Injunction**

The Amended Complaint adequately pleads plausible claims for damages and an injunction. A declaratory judgment and nominal damages are also available remedies.

Damages. The Court should reject Sotheby's argument that Plaintiffs cannot state a claim for damages without pleading that "Bouvier . . . would not have filed the [Swiss conciliation proceeding] without the Sotheby's Claimants." Sotheby's Br. 38.

---

[8]    *See MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615, 2012 WL 1107648, at *10-11 (S.D.N.Y. Mar. 30, 2012) (rejecting counterparty's argument that typo invalidated defendant's clear notice of termination); *Suarez v. Ingalls*, 282 A.D.2d 599, 600 (2d Dep't 2001) (rejecting counterparty's argument that failure to use certified mail invalidated clear notice of termination); *Ives v. Mars Metal Corp.*, 23 Misc. 2d 1015, 1017 (Sup. Ct. N.Y. Cty. 1960) (rejecting counterparty's argument that mailing to counsel instead of party invalidated clear notice of termination).

That Bouvier would not have filed the Swiss conciliation proceeding without Sotheby's involvement is a reasonable inference from the pleadings. *See Lopez v. JetBlue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (court must draw all reasonable inferences in Plaintiffs' favor). Sotheby's and Bouvier have coordinated a common litigation strategy. *See* FAC ¶ 28. According to Sotheby's, the Swiss conciliation proceeding was filed "in response to the stated intent of [Plaintiffs] to initiate litigation in the U.K." *Id.* ¶ 225. Its purpose was to trigger the Lugano Convention to block Plaintiffs' contemplated suit in England. *Id.* ¶ 224. These facts make it plausible that Bouvier would not have acted without Sotheby's, which is enough at this stage of the case. *See Lopez*, 662 F.3d at 596. Plaintiffs need not plead any magic words.

More important, Plaintiffs are damaged by Sotheby's breach of the Tolling Agreement even if Bouvier would have proceeded alone in Switzerland anyway. Sotheby's involvement in the Swiss case expands the scope of the case. Plaintiffs must respond separately to Sotheby's claim, which presents distinct issues of admissibility, including lack of jurisdiction. *See* Giroud Decl. ¶¶ 22-34. Sotheby's statement of claim—filed exclusively on its own behalf, not Bouvier's—contains allegations pertaining solely to the conduct and knowledge of Sotheby's. *See, e.g.*, Lembo Decl. Ex. H ¶¶ 1-15, 270, 290, 319-320, 333. Plaintiffs must investigate and respond to these allegations. Litigating in Switzerland against Sotheby's and Bouvier is more costly and complicated than litigating against Bouvier alone.

The Court should similarly reject Sotheby's assertion that "Plaintiffs still would have incurred the expense of litigating this dispute" if Sotheby's had not breached the Tolling Agreement. Sotheby's Br. 39. Had Sotheby's not breached the Tolling Agreement, there would have been one litigation in London. Instead there are now two litigations elsewhere.

<u>Injunction</u>. Now is not the time to decide whether an injunction against Sotheby's participation in the Swiss proceedings is an appropriate remedy for its breach of the Tolling Agreement. The two cases cited by Sotheby's involve permanent anti-suit injunctions entered after final judgment; neither involves a motion to dismiss. *See Paramedics Electromedicina Comercial, Ltda. V. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645 (2d Cir. 2004); *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987). The Court should consider the appropriate equitable remedy on a sufficient record once it has determined that Sotheby's breached the Tolling Agreement. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 120-21 (2d Cir. 2007) (considering anti-suit injunction on "extensive" factual record).

Contrary to Sotheby's apparent suggestion, *cf.* Sotheby's Br. 39, nothing prohibits Plaintiffs from pleading breach of contract claims for both damages and injunctive relief. Doing so is hardly unusual. *See, e.g., Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 405 (S.D.N.Y. 2016).

<u>Other remedies</u>. In any event, Sotheby's flawed arguments about remedy would not affect Plaintiffs' ability to get a declaration that the Tolling Agreement has been breached, *see* FAC ¶¶ 130-40, or nominal damages, which are "always available in breach of contract actions" under New York law, *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 95 (1993).

## C.    Laches Does Not Apply

Sotheby's affirmative defense of laches is again premature. *See Bolanos v. Norwegian Cruise Lines Ltd.*, No. 01 Civ.4182, 2002 WL 1465907, at *7 (S.D.N.Y. July 9, 2002) (courts "generally are not inclined" to consider laches on a Rule 12(b)(6) motion because it "involves consideration of fact issues outside the pleadings"). It fails on the merits because Plaintiffs are

31

not "guilty of unreasonable and inexcusable delay that has resulted in prejudice to [Sotheby's]." *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997).

New York law governs the Tolling Agreement. TA ¶ 9. The statute of limitations for a breach of contract claim is six years. CPLR § 213(2). Sotheby's breached the Tolling Agreement on November 17, 2017. FAC ¶ 224. Plaintiffs filed this case ten-and-a-half months later, on October 2, 2018. *See* Dkt. #1. Sotheby's cites no case suggesting that a wait of ten-and-a-half months to file a claim with a six-year limitation period is unreasonable or inexcusable. The law is to the contrary. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014) ("[L]aches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation."); *Compania Sud Americana de Vapores S.A. v. Global Terminal & Container Servs., Inc.*, 509 F. App'x 97, 100 (2d Cir. 2013) (fourteen-month delay "well within the applicable six-year statute of limitations" and not unreasonable).

Sotheby's claim of prejudice is vague and unsubstantiated. It simply claims that it has been "expending time and resources" by attending conferences and making filings in the Swiss proceedings. Sotheby's Br. 40 (citing Lembo Decl. ¶¶ 10-16). That conclusory assertion is not enough to deny Plaintiffs the chance to vindicate their contractual rights. *Cf. Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 101 (S.D.N.Y. 2010) ("requir[ing] a party to invest additional resources in litigation" is not sufficient prejudice to warrant denial of leave to amend).

Regardless, laches cannot defeat Plaintiffs' fourth claim. Laches is not an available defense to breach of contract claims for damages filed within the statute of limitations. *See RST (2005) Inc. v. Research in Motion*, No. 07 Civ. 3737, 2008 WL 5416379, at *7 (S.D.N.Y. Dec.

17, 2008); *Guardian Music Corp. v. James W. Guercio Enters., Inc.*, 459 F. Supp. 2d 216, 223 (S.D.N.Y. 2006).

### III.   NO "EXCEPTIONAL CIRCUMSTANCES" EXIST TO WARRANT INTERNATIONAL COMITY ABSTENTION

The Court has a "virtually unflagging obligation" to exercise its jurisdiction. *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). As a general matter, "concurrent jurisdiction in the United States courts and the courts of a foreign sovereign does not result in conflict." *Royal & Sun Alliance*, 466 F.3d at 92. "Parallel proceedings in the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as *res judicata* in the other." *China Trade & Dev. Corp.*, 837 F.2d at 38.

Only in "exceptional circumstances" should a court abstain from deciding a case properly before it in deference to the courts of a foreign jurisdiction. *Royal & Sun Alliance*, 466 F.3d at 94. "The existence of a parallel action in an adequate foreign jurisdiction must be the beginning, not the end, of a district court's determination of whether abstention is appropriate." *Id.* at 95. The kinds of ordinary issues that arise every time parallel actions are pending in two countries are not enough to justify international comity abstention. *See id.* "[A]dditional circumstances must be present—such as a foreign nation's interest in uniform bankruptcy proceedings—that outweigh the district court's . . . obligation to exercise its jurisdiction." *Id.* The Court's analysis should consider the "totality of the circumstances." *Id.* at 94.

No exceptional circumstances exist here, particularly because Sotheby's breached the Tolling Agreement and admittedly forum-shopped by filing in Switzerland in the first place. The Court should see the Swiss proceedings filed by Sotheby's for what they are: a naked act of

forum-shopping designed to bar Plaintiffs from the most sensible forum for this dispute. They are entitled to no deference.

**A.     Sotheby's Improper Swiss Filing Is Entitled to No Deference**

No doubt exists that Sotheby's filed its Swiss conciliation proceeding to trigger the Lugano Convention and block Plaintiffs from their preferred English forum. Sotheby's admits as much in a filing with the U.S. Securities and Exchange Commission, in which it states that it "filed the Swiss Action in response to the stated intent of Mr. Rybolovlev's counsel to initiate litigation in the U.K." and boasts that "the Lugano Convention effectively precludes Mr. Rybolovlev from sustaining an action in the U.K." Kornstein Decl. Ex. T § 15.

Several facts confirm the improper motive for filing in Switzerland that Sotheby's has effectively acknowledged.

Superiority of the English forum. Sotheby's has never tried to explain why England would be an inadequate forum—or anything other than the single most convenient forum—for Plaintiffs' claims against it. Plaintiffs argued in the § 1782 proceedings that England was the forum "best suited" to adjudicating their claims. *Id.* Ex. U. Sotheby's "[did] not dispute" that point, and this Court so found. *Id.* Sotheby's London was responsible for the sale of seven of the twelve artworks that Bouvier purchased on Plaintiffs' behalf through Sotheby's. Kornstein Decl. ¶ 2. Valette and Bell are both based in London. Sotheby's Br. 10. Sotheby's desire to avoid litigation in England cannot have been motivated by legitimate reasons of convenience.

Perceived tactical advantages of the Swiss forum to Sotheby's. As Sotheby's was surely aware, certain features of Swiss law make Switzerland inhospitable to a civil plaintiff trying to prove a fraud or defeat a request for a negative declaration that no fraud occurred. Pretrial

discovery is functionally nonexistent, and a party must assemble its proof before filing, making it very difficult to bring civil fraud cases like this. Giroud Decl. ¶¶ 20, 38.

Sotheby's jurisdictional deficiencies in Switzerland. To avoid litigating in England, where jurisdiction over it unquestionably existed, Sotheby's filed a jurisdictionally defective proceeding in Switzerland. Jurisdiction over Sotheby's claims will be governed by the Swiss Statute on Private International Law (PILA). Giroud Decl. ¶ 26. Little if any of Sotheby's relevant conduct occurred in Switzerland, and neither Plaintiffs nor Dmitry Rybolovlev nor Bouvier resided in Switzerland at the time of the transactions in which Sotheby's was involved. *See id.* ¶¶ 28-33. Sotheby's tries to rely on Bouvier's conduct as the basis for jurisdiction, but that attempt is improper under Swiss law. *See id.* ¶¶ 28-29. Sotheby's must show an independent basis for jurisdiction over its conduct. *See id.* ¶ 28. It also tries to manufacture jurisdiction by suing Elena Rybolovleva, but she should be dismissed from the proceedings because she has admitted she has no claim. *Id.* ¶¶ 24-25.

Circumstances of the filing. Sotheby's filing occurred under dubious circumstances. Sotheby's got an extension from the Court to respond to Plaintiffs' request for leave to use the § 1782 documents in the contemplated English proceeding, purportedly "[b]ecause of a number of competing commitments of both Sotheby's and its counsel." Kornstein Decl. Ex. B. The day before the extended deadline for its response, Sotheby's filed in Switzerland. Sotheby's could not have prepared a statement of claim against Plaintiffs—a detailed document requiring citations to all relevant evidence—in that short time period. *See* Lembo Decl. Ex. H. It was, however, able to prepare a more bare-bones request for conciliation. Asner Decl. Ex. D; *see* Lembo Decl. ¶ 14.

The request for conciliation triggered the Lugano Convention. But conciliation is mandatory under Swiss law only if a Swiss resident is named as a defendant. *See* Giroud Decl. ¶ 43. That is why Sotheby's named as a defendant Elena Rybolovleva, who lives in Switzerland but is not a real party in interest and never purported to have any potential claim against it. *See id*. Had Sotheby's not improperly named Rybolovleva, conciliation would not have been required.

The breach of the Tolling Agreement. To file in Switzerland, Sotheby's had to take the position that Plaintiffs inadvertently terminated the Tolling Agreement by filing a letter on ECF in the § 1782 proceedings. That aggressive position disregards the parties' clear expression of intent in the Tolling Agreement and is legally meritless. *See supra* at 26-29.

Sotheby's unwillingness to pay costs. In addition to the court costs of 240,000 Swiss francs that Sotheby's refused to pay until ordered to do so on appeal, the non-Swiss Sotheby's claimants who are not exempt by a treaty must provide security for party costs to proceed with their claims in Switzerland. *See* Giroud Decl. ¶¶ 12-13 (discussing Article 99 of the Swiss Code of Civil Procedure). Those party costs are calculated by statute, and in a case worth $380 million, they amount to approximately 2.2 million Swiss francs for each of the three non-Swiss claimants not exempt by treaty. *Id.* ¶ 14. Sotheby's must therefore pay approximately 6.6 million Swiss francs as security to proceed with its claims. It has not committed to do so. *Id.* ¶ 15.

The Court owes Sotheby's manipulative Swiss filing no solicitude.

## B.    None of the Factors Cited by Sotheby's Amount to Exceptional Circumstances

Even apart from the impropriety of its Swiss filing, the factors on which Sotheby's relies fall well short of "additional circumstances" justifying the extraordinary act of abstention. *Royal & Sun Alliance*, 466 F.3d at 95. Arguments for abstention that rely mainly on the identity of the

parties and the issues and the cost or inconvenience of proceeding in two forums usually fail

because those concerns are "common[]" to all parallel litigation. *Kitaru Innovations, Inc. v.*

*Chandaria*, 698 F. Supp. 2d 386, 392 (S.D.N.Y. 2010); *see Klonis v. Nat'l Bank of Greece*, 487

F. Supp. 2d 351, 356 (S.D.N.Y. 2006). Sotheby's offers precisely such a losing argument.

    <u>Identity of the parties and adequacy of the forum</u>. Sotheby's Swiss statement of claim

does include similar parties and address similar issues, but that is hardly enough to merit

abstention. *Royal & Sun Alliance*, 466 F.3d at 95 ("[T]he mere existence of an adequate parallel

action, by itself, does not justify the dismissal of a case on grounds of international comity

abstention."); *see Kitaru Innovations*, 698 F. Supp. 2d at 392; *Klonis*, 487 F. Supp. 2d at 356.

    <u>First-filed case</u>. The temporal sequence in which this case and the Swiss case were filed

is entitled to no weight here.[9] "The first-filed factor . . . does not turn exclusively on the sequence

in which the cases were filed, but rather . . . how much progress has been made in the two

actions." *Kitaru Innovations*, 698 F. Supp. 2d at 391 (quotation marks omitted). The Swiss

proceeding has not "reached a more advanced stage than this action." *Taub v. Marchesi di

Barolo S.p.A.*, No. 09-CV-599, 2009 WL 4910590, at *6 (S.D.N.Y. Dec. 10, 2009). This case is

far ahead of its Swiss counterpart. Sotheby's motion to dismiss this case is almost fully briefed,

but Plaintiffs have not even been served with Sotheby's Swiss claim. No party to this case has

disputed jurisdiction or whether the pleadings state a claim. In Switzerland, Plaintiffs will contest

jurisdiction over Sotheby's claim, challenge the propriety of Sotheby's request for a negative

declaration, and seek security for their costs. This case is ready to proceed to the merits. The

Swiss case is nowhere close.

---

[9]    Contrary to Sotheby's assertion, the relevant Swiss filing is not the November 17, 2017
request for conciliation, but the July 11, 2018 statement of claim—the operative legal document
that forms the basis for the Swiss proceedings now in progress.

Inconvenience and connection to Switzerland. Sotheby's repackages its unsuccessful arguments that Switzerland is a more convenient forum and that this dispute lacks ties to the United States. *See* Sotheby's Br. 31-33. Those arguments fail. Documents and witnesses are more accessible here. *See supra* at 6-11, 18-21. In arguing for connections to Switzerland, Sotheby's focuses almost entirely on *Bouvier's* conduct, not *Sotheby's* tortious conduct for which Plaintiffs now seek to hold it liable. *See* Sotheby's Br. 32-33 (quoting Plaintiffs' criminal allegations against Bouvier and the Singapore Court of Appeal's analysis of Plaintiffs' claims against Bouvier). Sotheby's relevant conduct is more connected to New York than to Switzerland. *See supra* at 12-14. It has not even identified a single Switzerland-based employee who would be a witness in this case.

At best for Sotheby's, this is an ordinary instance of two parallel lawsuits in two countries. The only thing "extraordinary" or "additional" about the present circumstances is Sotheby's brazen gamesmanship in filing the Swiss case. The Court should therefore exercise its jurisdiction and decline to abstain on international comity grounds. If the Court is inclined to abstain, it should stay this case, not dismiss it, so the case can resume if Sotheby's refuses to provide security for party costs or the Swiss court agrees with Plaintiffs' arguments about jurisdiction and forum.

## CONCLUSION

The Court should deny Sotheby's motion in its entirety.

Dated: February 15, 2019
        New York, New York

                                        EMERY CELLI BRINCKERHOFF
                                        & ABADY LLP


                                                     /s/
                                        _____
                                        Daniel J. Kornstein
                                        O. Andrew F. Wilson
                                        Zoe Salzman
                                        Douglas E. Lieb

                                        600 Fifth Avenue, 10th Floor
                                        New York, New York 10020

                                        (212) 763-5000

                                        *Attorneys for Plaintiffs*