# Arnold & Porter

Marcus A. Asner
+1 212.836.7222 Direct
Marcus.Asner@arnoldporter.com

August 26, 2019

**VIA ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007

Re:   *Accent Delight International Ltd. et al. v. Sotheby's et al.*, 18-cv-9011

Dear Judge Furman:

We write respectfully on behalf of Sotheby's and Sotheby's, Inc. (together, "Sotheby's") to request a pre-motion conference regarding Sotheby's need for discovery into a serious matter that has recently come to light: since April 2016, Plaintiffs have possessed and made use of two highly sensitive documents that are Sotheby's attorney work product and attorney-client communications (the "Materials"). We have requested immediate discovery into Plaintiffs' acquisition and use of the Materials, but following an exchange of letters and a meet and confer, the parties have reached an impasse as to the propriety, scope, and timing of such discovery. This has stymied our ability to determine the particulars of Plaintiffs' conduct and the extent of any resulting prejudice.

Sotheby's received copies of the Materials after we submitted a demand to counsel for Yves Bouvier following Intervenors' reference to the Materials in their Memorandum of Law in Support of Motion for Destruction of Documents Obtained Via Section 1782 Petition, filed on July 27, 2019 in *In re Accent Delight Int'l Ltd.*, 16-MC-00125. ECF No. 192 at 16 n.2. The passage stated: "[A] search of a computer possessed by [Tetiana] Bersheda that was authorized by the investigating magistrate in the Monaco criminal proceeding against Rybolovlev, Bersheda, and others determined that Bersheda possessed, and disseminated in or about October 2016 . . . highly confidential and privileged documents stolen from Sotheby's." *Id*. Bouvier's counsel also provided a copy of the October 21, 2016 transmittal email referenced in the footnote. That email is attached hereto as Exhibit A, along with redacted copies of the Materials.

Arnold & Porter prepared the Materials in or about April 2016 in connection with our internal review of Sotheby's role in the transactions at issue here, and as part of our cooperation with a now-closed investigation by the U.S. Attorney's Office for the Southern District of New York. The first document, titled "Sotheby's - Sam Valette Interview Outline," provides a comprehensive roadmap, running nine single-spaced pages, for a meeting with Samuel Valette, the primary contact between Sotheby's UK and Bouvier, before he appeared for questioning at the SDNY. The second document, titled "Grand Jury Subpoena - Blancaflor Sales & Resales Data," summarizes information

**Arnold & Porter**

The Honorable Jesse M. Furman
August 26, 2019
Page 2

gathered concerning artworks listed on a grand jury subpoena. Both documents are clearly marked as attorney-client privileged communications and/or work product. The transmittal email, whose subject line references the "1782 application," shows Plaintiffs' representatives discussing the Materials on October 20-21, 2016,[1] around the time of the October 19 conference in that proceeding at which the Court granted Sotheby's motion limiting discovery to the contours to which Plaintiffs had agreed. *See* ECF No. 68.

Sotheby's has met and conferred with Plaintiffs, unsuccessfully, in an effort to reach agreement on discovery into their acquisition and use of the Materials. The limited information we learned has raised new questions and concerns. Plaintiffs represent that a James Gallon, purportedly an unrelated third party, received the Materials by mistake on April 5-6, 2016 during his stay at the Westbury Hotel in London, whereupon Gallon—after noticing that the documents concerned Rybolovlev—transported them to *Monaco*, where he gave them to an employee of Rybolovlev's affiliate Rigmora Holdings Ltd. named Jonty Buirski, whom Gallon knows socially.[2] On April 19, 2016, Plaintiffs' NY counsel received the Materials from Plaintiffs' lawyer Fedele. NY counsel report that they deleted the Materials immediately upon recognizing what they were. However, Plaintiffs themselves—and other of their agents and lawyers, including Bersheda, the lawyer who was directing and coordinating Plaintiffs' legal claims relating to the Bouvier transactions at the time—continued to possess and use the Materials. We do not yet know the full extent of that use, but have learned from NY counsel: (1) that one of Plaintiffs' lawyers, whose name has not been provided, incorporated the Materials into an internal document; and (2) that Plaintiffs have shared the Materials with the press.

Discovery into all of these areas is warranted. Plaintiffs' NY counsel represent that they have not used the Materials in this action, that Plaintiffs' acquisition and use of the Materials took place abroad, and that the (limited) information provided to us is therefore more than they are obligated to provide. We disagree. Neither we nor Plaintiffs' NY counsel are in a position to know what impact Plaintiffs' possession and use of the Materials has had on proceedings before this Court. Given the sensitive nature of the Materials, and the detailed disclosure of the thought processes and theories of Sotheby's attorneys contained in them, there is at a minimum a real possibility that

---

[1] The transmittal email was sent by Plaintiffs' attorney (and Bersheda's associate) Simona Fedele to Brian Cattell of Harmony International and Sergey Chernitsyn, and copied Bersheda.

[2] The Materials had been delivered to the Westbury Hotel on April 5, 2016, in a sealed envelope marked "CONFIDENTIAL" and addressed to Marcus Asner, who stayed at the hotel that night in advance of the Valette interview. Located across the street from Sotheby's UK's office, it is where Sotheby's lawyers and employees often stay when visiting the office.

**Arnold & Porter**

The Honorable Jesse M. Furman
August 26, 2019
Page 3

Plaintiffs and Bersheda used the Materials and their contents to obtain an unfair advantage in this litigation. Although we accept NY counsel's representation that they have not themselves seen the Materials or (knowingly) used any information contained in them, we have reason to believe that Bersheda, who had the Materials at her disposal for three years, played a central role in directing all of Plaintiffs' litigations. Discovery is needed to determine whether and how Bersheda, Plaintiffs, and their other agents used the Materials. NY counsel have represented that, after receiving our letter regarding the Materials on July 30, 2019, they instructed that the Materials no longer be shared with the press and took action to ensure that lawyers who had the document incorporating the Materials deleted it. But discovery is needed to learn all of the relevant facts regarding what happened *up until July 30, 2019*. We know that, at a minimum, Plaintiffs' representatives used the Materials in connection with the § 1782 proceeding; created an internal document using them; and shared them with the press.

Moreover, Plaintiffs' story about how they obtained the Materials is highly suspect. It is not credible that an innocent third party staying at a hotel in London, having mistakenly received a sealed envelope addressed to someone else and marked confidential, would—instead of returning the package to hotel staff—choose to transport the documents to Monaco and deliver them to a Rybolovlev affiliate. That story cries out to be tested. It is critical that the true facts be revealed, so that Sotheby's may seek any appropriate remedy regarding both the acquisition and subsequent use of the Materials.

Sotheby's seeks immediate, targeted discovery to identify and obtain documents and testimony from: (1) those individuals with knowledge of the circumstances under which the Materials were initially obtained; (2) those individuals who received, transmitted, and used the Materials; and (3) those individuals who created, circulated, and received the internal document that incorporated the Materials. The Court has the authority to order the fact-finding we seek, including targeted discovery into how a party came to possess and/or use its adversary's privileged materials. *See, e.g.*, *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, No. 1:15-CV-2457-GHW, 2019 WL 1244493, at *6 (S.D.N.Y. Mar. 18, 2019) (noting inherent authority to conduct investigation into potentially improper litigation behavior); *Knitting Fever, Inc. v. Coats Holdings Ltd.*, No. CV05-1065 (DRH)(WDW), 2012 WL 13098758, at *1 (E.D.N.Y. Aug. 27, 2012) (court ordered depositions and "directed [plaintiff] to furnish documents and computer hardware for inspection" regarding receipt of privileged materials); *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1296 (D. Utah 2016) (court stayed case so parties could "conduct discovery on the allegations of misconduct and file sanctions motions, if any, based on a more complete record"), *aff'd*, 890 F.3d 868 (10th Cir. 2018); *Ponte v. Sage Bank*, 255 F. Supp. 3d 344, 346 (D.R.I. 2015) (court ordered "limited discovery relating to how [plaintiff] came into possession of the privileged information").

# Arnold & Porter

The Honorable Jesse M. Furman
August 26, 2019
Page 4

    We thank the Court for its consideration of this request.

                                                  Respectfully,

                                                  */s/ Marcus A. Asner*
                                                  Marcus A. Asner

                                                  *Attorneys for Defendants Sotheby's and*
                                                  *Sotheby's, Inc.*

Cc:  All counsel of record (via ECF)