**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ACCENT DELIGHT INTERNATIONAL LTD. and XITRANS FINANCE LTD.,<br><br>                                Plaintiffs,<br><br>                v.<br><br>SOTHEBY'S and SOTHEBY'S, INC.,<br><br>                                Defendants. | No. 1:18-cv-09011-JMF-RWL |

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON
THE TAKING OF EVIDENCE ABROAD IN CIVIL MATTERS
TO OBTAIN EVIDENCE FROM JEAN-MARC PERETTI**

In conformity with Articles 1 and 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), the United States District Court for the Southern District of New York respectfully requests international judicial assistance to obtain evidence from Jean-Marc Peretti ("Mr. Peretti") for use in the above-captioned civil proceeding currently pending before this Court (the "U.S. Action" or "Action"). The assistance requested is for the appropriate judicial authority of Switzerland to compel the appearance of Mr. Peretti to produce documents and give oral testimony relevant to the claims and defenses in the Action.

1. **Sender/Requesting Judicial Authority:**

   The Honorable Jesse M. Furman
   United States District Court for the Southern District of New York
   40 Centre Street, Room 2202
   New York, New York 10007
   United States of America

2. **Central Authority of the Requested State:**

1

Tribunal civil - Tribunal de première instance
Rue de l'Athénée 6-8
Case postale 3736
1211 Genève 3

3. **Persons to Whom the Executed Request Is to be Returned:**

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007
United States of America

4. **Names and Addresses of the Parties and Their Representatives:**

    a. **Plaintiffs:**

Accent Delight International Ltd.
Jipfa Building, 3rd Floor
142 Main Street
Road Town, Tortola
British Virgin Islands

Xitrans Finance Ltd.
Akara Building
24 De Castro Street
Wickhams Cay 1
Road Town
Tortola
British Virgin Islands

Counsel for Plaintiffs:
Daniel Kornstein
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Email: dkornstein@ecbalaw.com
Tel: +1 212 763 5000

Sandrine Giroud
LALIVE
Rue de la Mairie 35
P.O. Box 6569
1211 Geneva 6
Switzerland

Email: sgiroud@lalive.law
Tel: +41 58 105 2000

**b. Defendants:**

Sotheby's
1334 York Avenue
New York, New York 10021
United States of America

Sotheby's, Inc.
1334 York Avenue
New York, New York 10021
United States of America

Counsel for Defendants:
Marcus A. Asner
Sara L. Shudofsky
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Email: Marcus.Asner@arnoldporter.com
Email: Sara.Shudofsky@arnoldporter.com
Tel: +1 212 836 7222

Saverio Lembo
Aurélie Conrad Hari
Bär & Karrer SA
12 quai de la Poste
1211 Geneva 11, Switzerland
Email: Saverio.Lembo@BaerKarrer.ch
Email: Aurelie.ConradHari@BaerKarrer.ch
Tel: +41 58 261 57 00

**5. Nature of the Proceedings and Summary of the Facts:**

The U.S. Action is a civil proceeding in which Plaintiffs allege that Sotheby's and

Sotheby's, Inc. (together, "Sotheby's") aided and abetted an alleged fraud and breach of fiduciary

duty committed by Yves Bouvier ("Mr. Bouvier") and breached its contractual obligations to

Plaintiffs. A copy of the Amended Complaint ("Am. Compl.") and Sotheby's Answer ("Sotheby's

Answer") in the U.S. Action are attached hereto as Exhibits A and B.

3

Plaintiffs' action arises from a longstanding dispute between Mr. Bouvier and Dmitry Rybolovlev ("Mr. Rybolovlev"), a Russian oligarch.  Plaintiffs are companies incorporated in the British Virgin Islands; they are owned by trusts settled by and for the benefit of members of the family of Mr. Rybolovlev.  *See* Am. Compl. ¶¶ 5-6 [Exhibit A].  Mr. Rybolovlev is Plaintiffs' principal.  Plaintiffs contend that Mr. Bouvier defrauded them of over one billion dollars when he served as their art advisor.  *Id.* ¶ 2.  Plaintiffs allege that Plaintiffs and Mr. Bouvier agreed (at a time and in a manner unspecified by Plaintiffs) that Mr. Bouvier would act as their agent to acquire art masterworks on their behalf.  *See id.* ¶ 14.  Mr. Bouvier allegedly purchased 38 art masterworks from private sellers, resold the works to Plaintiffs at markups as high as 145%, and pocketed the difference for himself.  *Id.* ¶ 2.  Plaintiffs assert that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to 14 of the art masterworks;  Mr. Bouvier acquired 12 of those 14 art masterworks from third parties in private sales facilitated by Sotheby's entities before he sold them to Plaintiffs.  *See generally id.*

According to Plaintiffs, Mr. Peretti served as Mr. Bouvier's "associate" and participated in discussions regarding the art masterworks at issue in the Action.  *See id.* ¶ 30.  Specifically, Plaintiffs contend that Mr. Peretti and Mr. Bouvier communicated with one another and with Sotheby's regarding works of art, the quality and importance of the works of art, and appraisals of some of the works.  *Id.*  Plaintiffs attempt to draw inferences about the tone and language used in such discussions to support their claim that Mr. Bouvier was acting on behalf of Plaintiffs in a fiduciary capacity.  *See, e.g.*, *id.* ¶ 94.

In their response to Sotheby's interrogatories in this case, Plaintiffs have identified Mr. Peretti as having: (i) "knowledge or information concerning . . . the allegations in the Complaint"; (ii) "knowledge or information concerning any transaction involving one or more of the Works"

4

at issue in the case; (iii) "knowledge or information concerning the alleged agency or fiduciary relationship between [Plaintiffs] and [Mr.] Bouvier"; (iv) "knowledge or information concerning the alleged fraud committed by [Mr.] Bouvier"; (v) "knowledge of any valuation that [Plaintiffs] obtained or attempted to obtain from [Mr.] Bouvier" concerning the artworks at issue; and (vi) "knowledge or information concerning [Plaintiffs'] alleged reliance on . . . appraisals . . . and other documents Sotheby's created for the[] [artworks]."  Plaintiffs' Responses and Objections to Sotheby's First Set of Interrogatories at 4-6, attached hereto as Exhibit C ("Plaintiffs' Responses to Interrogatories").[1]  Mr. Peretti is therefore in unique possession of information regarding his interactions with Mr. Bouvier as well as Mr. Bouvier's interactions with Plaintiffs and Mr. Rybolovlev on issues that are critical to the claims and defenses in the U.S. Action.

**6.  Evidence to be Obtained or Other Judicial Acts to be Performed:**

This Court seeks, by way of the present Letter of Request, oral testimony and documents from Mr. Peretti for use at trial.  Appendix A sets forth the topics of oral testimony sought from Mr. Peretti.

Mr. Peretti is a critical fact witness in the U.S. Action.  Mr. Bouvier's and Mr. Peretti's interactions with Plaintiffs and Sotheby's are at the heart of Plaintiffs' U.S. Action against Sotheby's.  Mr. Peretti is in unique possession of critical evidence that bears on the essential elements of Plaintiffs' claims and Sotheby's defenses to those claims.

*First*, a threshold element of Plaintiffs' claims against Sotheby's of aiding and abetting fraud and aiding and abetting a breach of fiduciary duty is proof of the alleged underlying fraud

---

[1]  Pursuant to the Protective Order in the U.S. Action, Plaintiffs have designated as "CONFIDENTIAL MATERIAL" certain portions of Plaintiffs' Responses to Interrogatories.  Those portions have been redacted from Exhibit 3 and are not being relied upon in connection with this Letter of Request.

and breach of fiduciary duty by Mr. Bouvier.  Mr. Peretti's testimony and documents are relevant, and indeed critical, to proving or disproving whether Mr. Bouvier committed fraud or breached his alleged fiduciary duty to Plaintiffs, given that, according to Plaintiffs, Mr. Peretti has knowledge and information concerning the transactions involving the artworks at issue in the case; the communications between Mr. Bouvier and Plaintiffs; the valuations concerning the artworks at issue that Plaintiffs obtained or attempted to obtain from Mr. Bouvier; the alleged agency or fiduciary relationship between Plaintiffs and Mr. Bouvier; and the alleged fraud and breach of fiduciary duty committed by Mr. Bouvier.  *See* Plaintiffs' Responses to Interrogatories at 4-6 [Exhibit C].

*Second*, Plaintiffs must show that Sotheby's had the requisite mental state regarding the alleged fraud and breach of fiduciary in order to succeed on the merits of their aiding and abetting claims.  Plaintiffs allege that Sotheby's knew "the fraudulently inflated prices [Mr. Bouvier] charged to Plaintiffs," Am. Compl. ¶ 27 [Exhibit A], but Plaintiffs have not alleged how Sotheby's purportedly came to know this information.  Plaintiffs have not alleged that they had any direct communications with Sotheby's or that Sotheby's was otherwise involved in the sales transactions between Mr. Bouvier (or his affiliated entities) and Plaintiffs.  Further, Sotheby's denies that it had any knowledge of Mr. Bouvier's relationship with Plaintiffs or about what Mr. Bouvier allegedly charged Plaintiffs for any of the artworks at issue.  Accordingly, it is critical to obtain Mr. Peretti's testimony and documents regarding whether he or Mr. Bouvier ever told Sotheby's anything about Plaintiffs, including whether he or Mr. Bouvier told Sotheby's anything about (i) the identity of Plaintiffs, Plaintiffs' principal, or Plaintiffs' representatives; (ii) the relationship between Mr. Bouvier and Plaintiffs; or (iii) the prices Plaintiffs paid for any artworks they bought from Mr. Bouvier that Mr. Bouvier previously acquired in a transaction facilitated by Sotheby's.

*Third*, a central allegation of Plaintiffs' case is that Sotheby's provided valuations of some of the works to Mr. Bouvier, which according to Plaintiffs were intended by Sotheby's to be passed along by Mr. Bouvier to Plaintiffs to justify the higher prices Mr. Bouvier charged Plaintiffs for those works. *See, e.g.*, Am. Compl. ¶ 4. Sotheby's denies those allegations and asserts that it did not know what Mr. Bouvier planned to do with any work of art he acquired in a transaction brokered by Sotheby's and did not know the price that Mr. Bouvier planned to later charge for any work of art, if he did decide to re-sell it. Further, Sotheby's contends—based on information learned long after the events at issue in the Amended Complaint—that Mr. Bouvier sought the valuations from Sotheby's at Plaintiffs' request because, among other reasons, Plaintiffs wanted to use the valuations to secure loans from one or more financial institutions in Singapore, using one or more of the works as collateral. If, in fact, it was Plaintiffs—and not Mr. Bouvier—who wanted these valuations, then Sotheby's provision of the valuations to Mr. Bouvier cannot have aided and abetted any alleged fraud of Plaintiffs or breach of a fiduciary duty to them. Plaintiffs have acknowledged that Mr. Peretti has knowledge concerning valuations that Plaintiffs obtained or attempted to obtain from Mr. Bouvier. *See* Plaintiffs' Responses to Interrogatories at 6 [Exhibit C]. Accordingly, Mr. Peretti's knowledge of and information regarding such valuations is of critical importance to both Sotheby's defenses and Plaintiffs' claims.

While Sotheby's also intends to obtain documents and testimony from Mr. Bouvier and Mr. Rybolovlev, Mr. Peretti is uniquely positioned to provide evidence regarding the communications, representations, and understandings that are central to this dispute.

**7. Identity and Address of the Person to be Examined:**

Jean-Marc Peretti

████████████████

1206 Geneva, Switzerland

7

**8. Questions to be Put to the Person to be Examined or Statement of the Subject Matter About Which They Are to be Examined:**

It is requested that Mr. Peretti be questioned by the *Tribunal de première instance de Genève* in the presence of the counsel of the parties in the present proceedings with respect to the topics set forth in Appendix A.

**9. Documents and Other Property to be Inspected:**

This Court requests that Mr. Peretti produce the following documents (including electronic documents) which are in his possession, custody, or power:

a.    The documents and communications regarding meetings Mr. Peretti attended with Mr. Rybolovlev (Plaintiffs' principal) or any other representatives of Plaintiffs, including but not limited to Mikhail Sazonov, Tetiana Bersheda, and Yuri Bogdanov.

b.    The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Pablo Picasso's *L'Homme Assis Au Verre* in or around March to April 2011.  *See* Am. Compl. ¶¶ 40-52.

c.    The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Aristide Maillol's *La Méditerranée* in or around April 2011.  *See* Am. Compl. ¶¶ 53-60.

8

d.    The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Auguste Rodin's *Le Baiser* in or around April 2011.  *See* Am. Compl. ¶¶ 61-65.

e.    The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Henri Matisse's *Nu au Châle Vert* in or around June 2011 and in or around October 2014.  *See* Am. Compl. ¶¶ 66-75.

f.    The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Auguste Rodin's *L'Éternel Printemps* in or around June and July 2011.  *See* Am. Compl. ¶¶ 76-84.

g.    The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Alberto Giacometti's *Femme de Venise IX* in or around September and October 2011.  *See* Am. Compl. ¶¶ 85-89.

h.    The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives

of Plaintiffs regarding Rene Magritte's *Le Domaine d'Arnheim* in or around August to December 2011. *See* Am. Compl. ¶¶ 90-100.

i.  The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Amedeo Modigliani's *Nu Couché au Coussin Bleu* in or around December 2011 and October 2014 to January 2015. *See* Am. Compl. ¶¶ 101-110.

j.  The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Auguste Rodin's *Eve* in or about January to March 2012 and March to December 2014. *See* Am. Compl. ¶¶ 111-122.

k.  The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Gustav Klimt's *Wasserschlangen II* in or around August and September 2012, July to September 2013, and October 2014. *See* Am. Compl. ¶¶ 123-134.

l.  The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Amedeo Modigliani's *Tête* in or around December 2011,

10

June to September 2012, December 2012, and September to December 2014. *See* Am. Compl. ¶¶ 135-157.

m.   The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Henri de Toulouse-Lautrec's *Au Lit: Le Baiser* in or around October 2012 to February 2013 and December 2014 to March 2015. *See* Am. Compl. ¶¶ 158-165.

n.   The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Leonardo da Vinci's *Christ as Salvator Mundi* in or around March to May 2013, and March 2014 to January 2015. *See* Am. Compl. ¶¶ 166-188.

o.   The communications, including the emails and their attachments, between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding Paul Gauguin's *Otahi (Alone)* in or around October 2014 to February 2015. *See* Am. Compl. ¶¶ 189-193.

p.   The communications between Mr. Bouvier and Mr. Peretti in or about November to December 2014 in which, according to Plaintiffs' allegations in the U.S Action, Mr. Bouvier texted to Mr. Peretti: "I am in the shit. He does not have

11

cash and wants to place all Picasso and Rodin for public sale." Am. Compl. ¶ 180.

q.     The communications between Mr. Peretti and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), (ii) Mr. Rybolovlev (Plaintiffs' principal), or (iii) other representatives of Plaintiffs regarding their efforts to obtain loans from financial institutions, in Singapore and elsewhere, using one or more of the art masterworks as collateral, including the actual or attempted use of any Sotheby's valuations in connection with those efforts.

**10. Any Requirement That the Evidence be Given on Oath or Affirmation and Any Special Form to be Used:**

This Court respectfully requests that Mr. Peretti testify under oath or affirmation in accordance with the applicable procedures of Switzerland. The Court further requests that the testimony be transcribed by a qualified stenographer and that a videographic record be taken of the oral testimony. In the event that the evidence cannot be taken in the manner requested, the Court respectfully requests that the evidence be taken in such manner as provided by local law for the formal taking of evidence.

**11. Special Methods or Procedure to be Followed:**

a.     It is respectfully requested that each party's Swiss and United States lawyers be permitted to attend the oral testimony and ask supplementary questions to the witness.

b.     It is further respectfully requested that an interpreter be present to assist the United States lawyers of each party.

c.     Mr. Peretti shall be permitted to be represented by his own counsel at his own expense at the oral testimony should he wish to do so. Mr. Peretti shall not be required to give

evidence that is privileged against disclosure under the laws of either the United States or Switzerland.

d.      It is respectfully requested that the requested documents be produced by Mr. Peretti at least forty-five days prior to the date of Mr. Peretti's oral testimony, and that copies be provided to:

<u>Counsel for Defendants:</u>
Marcus A. Asner
Sara L. Shudofsky
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Email: Marcus.Asner@arnoldporter.com
Email: Sara.Shudofsky@arnoldporter.com
Tel: +1 212 836 7222

Saverio Lembo
Aurélie Conrad Hari
Bär & Karrer SA
12 quai de la poste
1211 Geneva 11, Switzerland
Email: Saverio.Lembo@baerkarrer.ch
Email: Aurelie.ConradHari@BaerKarrer.ch
Tel: +41 58 261 57 00

<u>Counsel for Plaintiffs:</u>
Daniel Kornstein
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Email: dkornstein@ecbalaw.com
Tel: +1 212 763 5000

Sandrine Giroud
LALIVE
Rue de la Mairie 35
P.O. Box 6569
1211 Geneva 6
Switzerland
Email: sgiroud@lalive.law

e.      It is requested that the oral testimony of the witness be videotaped and recorded verbatim, and that a professional videographer and a professional stenographer be permitted to attend the oral testimony in order to record the testimony.

f.      This Court requests that the oral testimony be allowed to continue until completed, except that the oral testimony shall not exceed seven hours per day, and shall not exceed a total of fourteen hours.

**12. Request for Notification of the Time and Place of Execution of the Request and Identity and Address of Any Person to be Notified:**

It is requested that the oral testimony be taken as soon as can practicably be arranged. It is respectfully requested that the witness and the counsel listed below be notified of the date, time, and place of the testimony as soon as convenient. If possible, it is requested that notice be furnished to the witness and counsel at least thirty days prior to the testimony.

> Counsel for Defendants:
> Marcus A. Asner
> Sara L. Shudofsky
> Arnold & Porter Kaye Scholer LLP
> 250 West 55th Street
> New York, New York 10019
> Email: Marcus.Asner@arnoldporter.com
> Email: Sara.Shudofsky@arnoldporter.com
> Tel: +1 212 836 7222
>
> Saverio Lembo
> Aurélie Conrad Hari
> Bär & Karrer SA
> 12 quai de la Poste
> 1211 Geneva 11, Switzerland
> Email: Saverio.Lembo@BaerKarrer.ch
> Email: Aurelie.ConradHari@BaerKarrer.ch
> Tel: +41 58 261 57 00
>
> Counsel for Plaintiffs:
> Daniel Kornstein
> Emery Celli Brinckerhoff & Abady LLP

14

600 Fifth Avenue, 10th Floor
New York, New York 10020
Email: dkornstein@ecbalaw.com
Tel: +1 212 763 5000

Sandrine Giroud
LALIVE
Rue de la Mairie 35
P.O. Box 6569
1211 Geneva 6
Switzerland
Email: sgiroud@lalive.law

**13. Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request:**

No attendance of United States judicial personnel is requested.

**14. Specification of Privilege or Duty to Refuse to Give Evidence Under the Law of the United States:**

The witness may refuse to give evidence only insofar as he has a privilege or duty to refuse to give evidence under the laws of the United States or the laws of Switzerland.

The parties to the U.S. Action have agreed, and this Court has ordered, that any confidential material produced or disclosed by the parties or any third parties will be kept confidential, according to the Local Rules of the Court and/or any protective order entered in the case.

**15. Fees and Costs:**

The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Convention shall be borne by Sotheby's.

**16. Specification of the Date by which the Requesting Authority Requires Receipt of the Response to the Letter of Request:**

The Requesting Authority requests that the oral testimony be taken as soon as practicable after the Requested State receives this Letter of Request, and that the requested documents be

produced at least forty-five days before the taking of the oral testimony. Expedient treatment of this Letter of Request will allow the parties and the witness to arrange a mutually agreeable date for testimony and avoid disruption to the witness's business or personal plans.

**17. Signature and Seal of the Requesting Authority:**

This Court expresses its appreciation for the assistance and courtesy of the courts of Switzerland in this matter, and states that it shall be ready and willing to assist the courts of Switzerland in a similar manner when required.

Dated: _____, 2019
      New York, New York

Respectfully Submitted,


By: _____

HON. JESSE M. FURMAN
UNITED STATES DISTRICT JUDGE
United States District Court for the
Southern District of New York


**SEAL OF THE COURT**

16

<u>**Appendix A**</u>
<u>**Topics and Questions for Oral Testimony**</u>

**I.    Background Information**

A.    **Introduction:** The below questions seek to obtain general background information.

B.    **Questions:**

1.    Please state your name for the record.

2.    Where do you currently reside?

3.    For the time period of 2003 to 2015, where did you reside?

4.    Describe your education history.

5.    Describe your professional background and experience.

6.    Where do you currently work?

7.    For the time period of 2003 to 2015, were you employed?  If so, by whom or what company?  Did you earn income in any other way during that time period?  If so, how?

**II.    Work with Mr. Bouvier**

A.    **Introduction:** Plaintiffs allege that Mr. Peretti is, or was during the relevant time period, Mr. Bouvier's "associate," but they do not allege any details regarding the relationship or what role Mr. Peretti played with regard to the art masterworks at issue in the U.S. Action.  The following questions are designed to elicit this information.  Such evidence is relevant to whether Mr. Peretti worked for, or with, Mr. Bouvier, as Plaintiffs allege, and whether Plaintiffs can prove that Mr. Bouvier committed fraud and breach of fiduciary duty, which are threshold elements of their claims against Sotheby's.

B.    **Questions:**

1.    When did you first meet Mr. Bouvier?

2.    Are you familiar with any of Mr. Bouvier's companies or affiliated entities?  His business at the Geneva Freeport?  Natural le Coultre?  Blancaflor?  MEI Invest?  Eagle Overseas?  ArteSing?  Arrow Fine Art?

3.    Were you ever employed by Mr. Bouvier or any of his companies or affiliated entities?

a.  If so, when?  What was your position/role?  How were you compensated?  Are you still employed by Mr. Bouvier or any of his companies or affiliated entities?

4.  Did you ever work with Mr. Bouvier or any of his companies or affiliated entities in any capacity?

a.  If so, when?  What was your position/role?  How were you compensated?  Are you still working with Mr. Bouvier or any of his companies or affiliated entities?

5.  Did you ever receive any compensation from Mr. Bouvier or any of his companies or affiliated entities?

a.  If so, how much?  When?  What was it for?

6.  Plaintiffs in the U.S. Action contend that you were Mr. Bouvier's "associate."  Do you agree with this description?

a.  If so, what does it mean?  For what time period were you Mr. Bouvier's "associate"?

b.  If not, why do you not agree with this description?

7.  Did you ever receive compensation or payments from Mr. Bouvier or any of his companies or affiliated entities in connection with the art masterworks at issue in the U.S. Action?

a.  If so, when?  How much?  How was that determined?

8.  Do you have knowledge of Mr. Bouvier's reputation in the art world as of 2003?

a.  If so, what was his reputation?  Do you know whether he was well-known?  Describe the basis for your knowledge.

b.  Do you have knowledge of Mr. Bouvier's reputation in the art world as of 2011?

c.  If so, what was his reputation?  Do you know whether he was well-known?  Describe the basis for your knowledge.

III.  **General Involvement with Plaintiffs, Sotheby's, and the Artworks at Issue in This Case**

A.  **Introduction:**  Plaintiffs contend that Mr. Peretti played a central role in the underlying dispute.  Specifically, they assert that Mr. Peretti participated in

2

discussions regarding "works of art for Bouvier to sell to Plaintiffs," "the[] quality and importance [of the artworks]," and "appraisals [regarding some of the artworks]." Am. Compl. ¶ 30. The following questions are intended to obtain information regarding Mr. Peretti's familiarity with Plaintiffs (and their representatives) and his involvement in the art masterworks at issue in the parties' dispute. Such evidence is relevant to Mr. Peretti's and Mr. Bouvier's interactions with Plaintiffs and Sotheby's, Plaintiffs' allegations that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

**B.    Questions**

1.    Are you familiar with Accent Delight International Ltd., one of the Plaintiffs in the U.S. Action? Have you ever personally had any contact with it or its employees/representatives? If so, when? About what?

2.    Are you familiar with Xitrans Finance Ltd., the other Plaintiff in the U.S. Action? Have you ever personally had any contact with it or its employees/representatives? If so, when? About what?

3.    Do you know Dmitry Rybolovlev (Plaintiffs' principal)? Have you ever personally interacted with him? If so, when? About what?

    a.    Did you ever attend any meetings with him, or participate in calls or electronic communications with him, regarding artworks he was purchasing from Mr. Bouvier? If so, when? Who was present? What was discussed?

4.    Do you know Tetiana Bersheda (a representative of Plaintiffs)? Have you ever personally interacted with her? If so, when? About what?

    a.    Did you ever attend any meetings with her, or participate in calls or electronic communications with her, regarding artworks Plaintiffs were purchasing from Mr. Bouvier? If so, when? Who was present? What was discussed?

5.    Do you know Mikhail Sazonov (a representative of Plaintiffs)? Have you ever personally interacted with him? If so, when? About what?

    a.    Did you ever attend any meetings with him, or participate in any calls or electronic communications with him, regarding artworks Plaintiffs were purchasing from Mr. Bouvier? If so, when? Who was present? What was discussed?

3

6.   Do you know Yuri Bogdanov (a representative of Plaintiffs')?  Have you ever personally interacted with him?  If so, when?  About what?

    a.   Did you ever attend any meetings with him, or participate in any calls or electronic communications with him, regarding artworks Plaintiffs were purchasing from Mr. Bouvier?  If so, when?  Who was present?  What was discussed?

7.   Do you have knowledge of the nature of Mr. Bouvier's relationship with Plaintiffs/Mr. Rybolovlev?

    a.   If so, describe what you know, when you learned it, and the basis for your knowledge.

    b.   Do you know how and/or when Mr. Bouvier first met Mr. Rybolovlev?  Describe what you know, when you learned it, and the basis for your knowledge.

    c.   Did you participate in any communications between Mr. Bouvier and Mr. Rybolovlev?  Describe those communications.

    d.   Do you have knowledge about the relationship between Mr. Bouvier and Plaintiffs/Rybolovlev with respect to Plaintiffs'/Mr. Rybolovlev's acquisitions of works of art?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.   Did Mr. Bouvier ever describe to you the nature of his relationship with Plaintiffs/Mr. Rybolovlev in connection with Plaintiffs/Mr. Rybolovlev's acquisitions of works of art?  If so, describe what he said and when he said it.

    f.   Do you know whether Plaintiffs and Mr. Bouvier ever had a written agreement setting out the details of their relationship with respect to Plaintiffs/Mr. Rybolovlev's art acquisitions?  Describe what you know, when you learned it, and the basis for your knowledge.

    g.   Do you know if Mr. Bouvier received any payments or other compensation from Plaintiffs/Mr. Rybolovlev?  If so, describe what you know about those payments or compensation and when you learned it, what they were for, and the basis for your knowledge.

    h.   For the time period of 2003 to 2015, did you ever hear Yves Bouvier refer to "the Russian"?  If so, do you know who he was

4

referring to?  Describe what you know, when you learned it, and the basis for your knowledge.

i.      For the time period of 2003 to 2015, did you ever hear Samuel Valette refer to "the Russian"?  If so, do you know who he was referring to?  Describe what you know, when you learned it, and the basis for your knowledge.

8.      Do you know Tania Rappo?  How do you know her?  Who is she?  Have you ever personally interacted with her?  If so, describe those interactions and when they took place.

9.      Do you know the nature of any relationship between Ms. Rappo and Plaintiffs/Mr. Rybolovlev?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.     Did Mr. Bouvier ever describe to you the nature of any relationship between Ms. Rappo and Plaintiffs/Mr. Rybolovlev?  If so, describe what he said and when he said it.

11.     Do you know whether Mr. Bouvier ever interacted with Ms. Rappo?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.     Did Mr. Bouvier ever describe to you any interactions he had with Ms. Rappo?  If so, describe what he said and when he said it.

13.     Do you know whether Ms. Rappo was involved in any art acquisitions by Plaintiffs/Mr. Rybolovlev?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.     Did Mr. Bouvier ever describe to you any involvement by Ms. Rappo in any art acquisitions by Plaintiffs/Mr. Rybolovlev?  If so, describe what he said and when he said it.

15.     Do you know whether Ms. Rappo ever received any compensation, reimbursement, or other payments from Mr. Bouvier in connection with Plaintiffs/Mr. Rybolovlev's acquisitions of art?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.     Did Mr. Bouvier ever describe to you the nature of any compensation, reimbursement, or other payments Ms. Rappo received in connection with Plaintiffs/Mr. Rybolovlev's acquisitions of art?  If so, describe what he said and when he said it.

5

17. In the time period relevant to Sotheby's involvement in the U.S. Action—2011 to 2015—what role did you play in connection with the art masterworks at issue in the Action?

    a. Did you communicate with Sotheby's employees, as Plaintiffs allege? If so, with whom did you communicate? When? What was discussed?

    b. Did you communicate with any of Plaintiffs' representatives? If so, with whom did you communicate? When? What was discussed?

18. Do you know anything about Mr. Bouvier's dealings with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

19. Do you know the nature of Mr. Bouvier's relationship with Sotheby's as of 2011?

    a. If so, describe what you know, when you learned it, and the basis for your knowledge.

    b. Do you know how many times, before 2011, Mr. Bouvier acquired art in a transaction facilitated by Sotheby's? Describe what you know, when you learned it, and the basis for your knowledge.

        (i) Do you know what, if anything, Mr. Bouvier intended to do with the works he acquired in those transactions at the time of the transactions? If so, describe what you know, when you learned it, and the basis for your knowledge.

    c. Do you know how many times, before 2011, Mr. Bouvier sold art in a transaction facilitated by Sotheby's? Describe what you know, when you learned it, and the basis for your knowledge.

    d. Do you know how many times, after 2011, Mr. Bouvier acquired art in a transaction facilitated by Sotheby's? Describe what you know, when you learned it, and the basis for your knowledge.

    e. Do you know how many times, after 2011, Mr. Bouvier sold art in a transaction facilitated by Sotheby's? Describe what you know, when you learned it, and the basis for your knowledge.

    f. Do you know if Mr. Bouvier ever paid Sotheby's more for an artwork than Sotheby's had told him it was worth? If so, describe what you know, when you learned it, and the basis for your knowledge.

g.    Do you know whether Sotheby's has ever stored art at Mr. Bouvier's freeport business in Geneva?  How about at his freeport business in Singapore?  Describe what you know, when you learned it, and the basis for your knowledge.

h.    Do you know whether Sotheby's has used Mr. Bouvier/Natural Le Coultre to transport art?  Describe what you know, when you learned it, and the basis for your knowledge.

20.    Do you know Samuel Valette?

a.    If so, who is he?

b.    Do you have any kind of relationship with Mr. Valette?  If so, describe it.

c.    Have you ever met him?  Spoken with him? Emailed with him? Texted with him?

d.    When did you first meet him?

e.    How did you first meet him and how were you introduced?

f.    Do you know how Mr. Valette is compensated by Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

g.    Do you know the nature of the relationship between Mr. Valette and Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

(i)    Do you know how long they have known each other and how they were introduced?  Describe what you know, when you learned it, and the basis for your knowledge.

21.    Do you know Bruno Vinciguerra?

a.    If so, who is he?

b.    Do you have any kind of relationship with Mr. Vinciguerra?  If so, describe it.

c.    Have you ever met him?  Spoken with him? Emailed with him? Texted with him?

d.    When did you first meet him?

7

e.  How did you first meet him and how were you introduced?

f.  Do you have knowledge of the nature of Mr. Vinciguerra's relationship with Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

(i)  Do you know how long have they known each other and how they were introduced?  Describe what you know, when you learned it, and the basis for your knowledge.

22.  Do you know any other Sotheby's employees?

a.  If so, who do you know?

b.  When did you meet them?  How did you meet them?  What were your interactions with them about?

c.  Did you communicate with those persons in connection with any art transactions involving Mr. Bouvier?  If so, describe those transactions and the communications related to them.

23.  Did you ever discuss the identity of Plaintiffs, Plaintiffs' principal (Mr. Rybolovlev), or any other of Plaintiffs' representatives with anyone at Sotheby's?  If so, when?  With whom?  What was discussed?

24.  Did you ever discuss the relationship between Mr. Bouvier and Plaintiffs with anyone at Sotheby's?  If so, when?  With whom?  What was discussed?

25.  Did you ever discuss with anyone at Sotheby's the prices Plaintiffs or Mr. Rybolovlev paid Mr. Bouvier for any of the artworks Mr. Bouvier acquired in a transaction facilitated by Sotheby's?  If so, when?  With whom?  What was discussed?

26.  Did you ever discuss with anyone at Sotheby's the prices that any other person or entity paid Mr. Bouvier for any of the artworks Mr. Bouvier acquired in a transaction facilitated by Sotheby's, irrespective of the buyer's identity?  If so, when?  With whom?  What was discussed?

## IV.  Plaintiffs' Claims Regarding Pablo Picasso's *L'Homme Assis Au Verre*

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

8

**B.** **Questions:**

1. Did you communicate with Mr. Bouvier about this work? If so, describe those communications and when they took place.

2. Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

3. Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

4. Did you communicate with anyone else about this work? If so, describe those communications and when they took place.

5. A copy of a document has been placed in front of you as Exhibit 1. According to this document, on March 18, 2011, Mr. Valette emailed both you and Mr. Bouvier, attaching a description of this artwork and writing in his cover email: "As agreed, here is the note with the expositions, a commentary on its importance, the photos of Picasso and the photos of the 3 comparable paintings in museums."

   a. Do you recall this communication? If so, describe what you recall about it.

   b. Do you know why Mr. Valette emailed you and Mr. Bouvier? If so, describe what you know, when you learned it, and the basis for your knowledge.

   c. According to this document, Mr. Valette wrote "as agreed." Did Mr. Valette communicate with you about this painting prior to sending you this email? If so, describe any such communications and when they took place.

   d. Do you know whether Mr. Valette communicated with Mr. Bouvier about this painting prior to sending this email? If so, describe what you know, when you learned it, and the basis for your knowledge.

   e. Do you know who initiated any conversations about this painting you have described? If so, describe what you know, when you learned it, and the basis for your knowledge.

   f. Do you know why Mr. Valette emailed you this information about this painting? If so, describe what you know, when you learned it, and the basis for your knowledge.

9

6. What did you do with the information and/or materials Mr. Valette provided regarding this work?

   a. Did you give it to anyone else? If so, who?

   b. Do you know whether Mr. Bouvier gave it to anyone else? If so, describe what you know, when you learned it, and the basis for your knowledge.

   c. Did you give this document to Mr. Rybolovlev, Mikhail Sazonov, or anyone working for Plaintiffs or otherwise related to them? If so, describe that communication and when it took place.

   d. Do you know whether Mr. Bouvier gave it to Mr. Rybolovlev, Mikhail Sazonov, or anyone working for Plaintiffs or otherwise related to them? If so, describe what you know, when you learned it, and the basis for your knowledge.

7. A copy of a document has been placed in front of you as Exhibit 2. According to this document, on March 22, 2011, Mr. Bouvier emailed Mr. Valette to ask when he would have a "definitive price" for this work and suggested that "a price in USD would be the best adapted." Valette responded: "Message received about the dollars. We were asking ourselves that question."

   a. Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

   b. Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

   c. Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

   d. Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

   e. Do you know why Mr. Bouvier wrote that "a price in USD would be the best adapted"? If so, describe what you know, when you learned it, and the basis for your knowledge.

8. A copy of a document has been placed in front of you as Exhibit 3. According to this document, on March 24, 2011, Mr. Valette emailed Mr. Bouvier a description of the work, writing in his cover email: "Here is a

10

text on the artwork, more focused on its composition.  We should have the price tomorrow."

    a.    Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

    b.    Did you discuss this communication with Mr. Bouvier?   If so, describe those discussions and when they took place.

    c.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

    d.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.    A copy of a document has been placed in front of you as Exhibit 4.  According to this document, on April 8, 2011, Mr. Valette emailed Mr. Bouvier a description of the artwork, asking Mr. Bouvier: "Please let me know if it works for you."

    a.    Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

    b.    Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

    c.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

    d.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.    Do you know why Mr. Valette asked Mr. Bouvier if the description "works for you"?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.    A copy of a document has been placed in front of you as Exhibit 5.  According to this document, about an hour after the communication you just reviewed (Exhibit 4), Mr. Valette emailed Mr. Bouvier the description as a PDF.

    a.    Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

11

b.      Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.      Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.      Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.      Do you know why Mr. Valette sent this description to Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

(i)     Do you know why Mr. Valette sent the description first in a Word file, and then in a PDF?  If so, describe what you know, when you learned it, and the basis for your knowledge.

f.      Do you know what Mr. Bouvier did with this description?  If so, describe what you know, when you learned it, and the basis for your knowledge.

(i)     Do you know if Mr. Bouvier sent this description to Plaintiffs/Mr. Rybolovlev?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.     Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.     Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.     Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.     Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.     Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12

16. Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

17. Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

18. Did you communicate with any of the following people regarding this artwork:

   a. Dmitry Rybolovlev?

   b. Mikhail Sazonov?

   c. Tetiana Bersheda?

   d. Yuri Bogdanov?

   e. Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f. If so, describe those communications and when they took place.

19. Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

20. Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

21. Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

13

a.      Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

22.    Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork?  If so, describe what you know, when you learned it, and the basis for your knowledge.

23.    Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this artwork?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## V.      Plaintiffs' Claims Regarding Aristide Maillol's *La Méditerranée*

A.      **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.      **Questions:**

1.      Did you communicate with Mr. Bouvier about this work?  If so, describe those communications and when they took place.

2.      Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

3.      Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

4.      Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

5.      A copy of a document has been placed in front of you as Exhibit 6. According to this document, on April 9, 2011, Mr. Valette emailed Mr. Bouvier with a description of Maillol's *La Méditerranée*.  Valette's email begins:  "Here is the information on the Maillol, *La Méditerranée*."

a.      Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.      Did you discuss this communication with Mr. Bouvier?   If so, describe those discussions and when they took place.

14

c.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

6.    A copy of a document has been placed in front of you as Exhibit 7. According to this document, Mr. Valette emailed Mr. Bouvier an attachment of a description of this work, without any cover email.  The attachment appears to be a Word file.

a.    Did you receive this communication or the artwork description attached to it?  If so, describe how and when you received this communication or the artwork description, and who sent it to you.

b.    Did you discuss this communication or the artwork description attached to it with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.    Did you discuss this communication or the artwork description attached to it with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.    Do you know anything about this communication or the artwork description attached to it?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.    A copy of a document has been placed in front of you as Exhibit 8. According to this document, on April 14, 2011, Mr. Valette emailed Mr. Bouvier a PDF description for this artwork.  Mr. Valette wrote: "Does the client want to send his transporters to pick them up or does he prefer that they be delivered to the freeport?  Thanks for letting me know what the client prefers."  This email also refers to Rodin's *Le Baiser*.

a.    Did you receive this communication or the artwork description attached to it?  If so, describe how and when you received this communication or the artwork description, and who sent it to you.

b.    Did you discuss this communication or the artwork description attached to it with Mr. Bouvier?   If so, describe those discussions and when they took place.

15

c.     Did you discuss this communication or the artwork description attached to it with any employee of Sotheby's? If so, describe those discussions and when they took place.

d.     Do you know anything about this communication or the artwork description attached to it? If so, describe what you know, when you learned it, and the basis for your knowledge.

e.     At the time of this email, did you know who "the client" was that Mr. Valette referred to? Did you learn anything about that afterwards? Describe what you know, when you learned it, and the basis for your knowledge.

f.     Do you know why Mr. Valette sent the description first in a Word file, and then as a PDF? If so, describe what you know, when you learned it, and the basis for your knowledge.

8. Do you know whether Mr. Bouvier acquired this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

9. Do you know what Mr. Bouvier paid for this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

10. Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

11. Do you know what Plaintiffs/Mr. Rybolovlev paid for this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

14. Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Did you communicate with any of the following people regarding this artwork:

16

        a.      Dmitry Rybolovlev?

        b.      Mikhail Sazonov?

        c.      Tetiana Bersheda?

        d.      Yuri Bogdanov?

        e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

        f.      If so, describe those communications and when they took place.

16.      Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe those communications and when they took place.

        a.      Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

17.      Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

        a.      Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

18.      Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

        a.      Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

19.      Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

20.      Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this

17

artwork?  If so, describe what you know, when you learned it, and the basis for your knowledge.

**VI.    Plaintiffs' Claims Regarding Auguste Rodin's *Le Baiser***

A.    **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.    **Questions:**

1.    Did you communicate with Mr. Bouvier about this work?  If so, describe those communications and when they took place.

2.    Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

3.    Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

4.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

5.    A copy of a document has been placed in front of you as Exhibit 9. According to this document, on April 4, 2011, Mr. Valette emailed you a description of this artwork.

    a.    Do you recall this communication?  If so, describe what you recall about it.

    b.    Do you know why Mr. Valette emailed you this information?  If so, describe what you know, when you learned it, and the basis for your knowledge.

        (i)    Do you know why he emailed you instead of Mr. Bouvier? If so, describe what you know, when you learned it, and the basis for your knowledge.

    c.    Had you discussed this artwork with Mr. Valette before you received this email?  If so, describe those discussions and when they took place.

        (i)    Do you know whether Mr. Bouvier discussed this artwork with Mr. Valette before this email?  If so, describe what

you know, when you learned it, and the basis for your knowledge.

6.   A copy of a document has been placed in front of you as Exhibit 10. According to this document, on April 9, 2011, Mr. Bouvier emailed Mr. Valette with the subject line "Urgent" and wrote: "I am already seeing my friend tomorrow Sunday." Mr. Bouvier requested more information about the work "so that I have the maximum arguments." According to this document, Mr. Valette subsequently emailed information about the artwork.

   a.   Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

   b.   Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

   c.   Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

   d.   Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

   e.   At the time of this email, did you know who the "friend" was that Mr. Bouvier referred to? Did you learn anything about that afterwards? Describe what you know, when you learned it, and the basis for your knowledge.

   f.   At the time of this email, did you know what Mr. Bouvier meant by having "the maximum arguments"? Did you learn anything about that afterwards? If so, describe what you know, when you learned it, and the basis for your knowledge.

7.   According to this document, Mr. Valette subsequently emailed information about the artwork.

   a.   Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

   b.   Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

   c.   Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

19

d.      Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.      Do you know what Mr. Bouvier did with this information?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   (i)      Do you know whether Mr. Bouvier sent this information to Plaintiffs/Mr. Rybolovlev?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.      Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.      Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.     Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.     Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.     Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.     Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.     Did you communicate with any of the following people regarding this artwork:

a.      Dmitry Rybolovlev?

b.      Mikhail Sazonov?

c.      Tetiana Bersheda?

d.      Yuri Bogdanov?

20

e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

f.    If so, describe those communications and when they took place.

15.    Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

16.    Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe those communications and when they took place.

a.    Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

17.    Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

a.    Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

18.    Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

a.    Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

19.    Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

20.    Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

## VII.    Plaintiffs' Claims Regarding Henri Matisse's *Nu au Châle Vert*

21

A.    **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.    **Questions:**

1.    Did you communicate with Mr. Bouvier about this work?  If so, describe those communications and when they took place.

2.    Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

3.    Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

4.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

5.    A copy of a document has been placed in front of you as Exhibit 11. According to this document, on June 15, 2011, Mr. Valette sent emails to you attaching photos of Matisse's *Nu au Chale Vert*.

    a.    Do you recall these communications?  If so, describe what you recall about them.

    b.    Mr. Valette's cover emails attaching the photos appear to have had no content.  Had you previously discussed this artwork with him? If so, describe those discussions and when they took place.

    c.    Had you previously discussed this artwork with Mr. Bouvier? If so, describe those discussions and when they took place.

    d.    Do you know whether Mr. Valette had previously discussed this artwork with Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.    Do you know why Mr. Valette emailed you photos of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

    f.    Did you ask him to send you the photos?  If so, why?

g.  Do you know why Mr. Valette sent the photos to you instead of to Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

h.  Do you know whether Mr. Valette also emailed Mr. Bouvier with information about this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

i.  Do you know why Mr. Valette sometimes emailed you about artworks and sometimes emailed Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

j.  Do you know what determined who Mr. Valette would contact?  If so, describe what you know, when you learned it, and the basis for your knowledge.

k.  Do you know why Mr. Valette did not always copy you on emails he sent to Mr. Bouvier, and copy Mr. Bouvier on emails he sent to you?  If so, describe what you know, when you learned it, and the basis for your knowledge.

6.  What did you do with the information and/or materials Mr. Valette provided regarding this work?

a.  Did you give it to anyone else?

b.  If so, did you give it to Mr. Rybolovlev?  Or anyone working with him?

7.  Do you know whether Mr. Valette and Mr. Bouvier communicated about arranging access to see this artwork?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.  A copy of a document has been placed in front of you as Exhibit 12.  On June 20, 2011, Mr. Bouvier emailed Mr. Valette: "I thought no one in Geneva was supposed to know about this operation!!!!!!!  I cannot work under these conditions."

a.  Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.  Did you discuss this communication with Mr. Bouvier?   If so, describe those discussions and when they took place.

23

c. Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

d. Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

e. Do you know what the operation was that Mr. Bouvier referred to? If so, describe what you know, when you learned it, and the basis for your knowledge.

f. Do you know why Mr. Bouvier said no one was supposed to know about that operation? If so, describe what you know, when you learned it, and the basis for your knowledge.

g. Did you ever discuss that operation with Mr. Bouvier? If so, describe those discussions and when they took place.

h. Did you ever discuss that operation with Mr. Valette? If so, describe those discussions and when they took place.

9. A copy of a document has been placed in front of you as Exhibit 13. According to this document, Mr. Valette wrote to Mr. Bouvier: "I can also confirm that, other than me, there will be no one else from Sotheby's before, during, or after any of the visits."

a. Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

b. Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

c. Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

d. Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

e. Do you know what "the visits" are that Mr. Valette referred to? If so, describe what you know, when you learned it, and the basis for your knowledge.

10. A copy of a document has been placed in front of you as Exhibit 14. According to this document, on June 20, 2011, the same day as the

24

communication you just looked at (Exhibit 13) was sent, Mr. Valette emailed more information to Mr. Bouvier about this artwork, writing that he was sending it "as promised."

    a.     Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

    b.     Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

    c.     Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

    d.     Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

11.    Do you know whether Mr. Bouvier acquired this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

12.    Do you know what Mr. Bouvier paid for this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

13.    Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

14.    Do you know what Plaintiffs/Mr. Rybolovlev paid for this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

15.    Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

16.    Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

17.    Did you communicate with any of the following people regarding this artwork:

    a.     Dmitry Rybolovlev?

    b.     Mikhail Sazonov?

25

    c.      Tetiana Bersheda?

    d.      Yuri Bogdanov?

    e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.      If so, describe those communications and when they took place.

18.    Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

19.    Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe those communications and when they took place.

    a.      Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

20.    Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

    a.      Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

21.    Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

    a.      Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

22.    Do you know whether Mr. Bouvier obtained a valuation of this work from Sotheby's in 2014? If so, describe what you know, when you learned it, and the basis for your knowledge.

a.   Do you know why Mr. Bouvier obtained a valuation for the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

b.   Did you ever discuss such a valuation with Mr. Bouvier? If so, describe those discussions and when they took place.

c.   Did you ever discuss such a valuation with Mr. Valette? If so, describe those discussions and when they took place.

d.   Were you a party to any discussions between Sotheby's and Mr. Bouvier in this respect? If so, describe those discussions and when they took place.

e.   Were you involved in any communications with Plaintiffs regarding any valuation for this work? If so, describe those communications and when they took place.

23.   A copy of a document has been placed in front of you as Exhibit 15. According to this document, Sotheby's provided Mr. Bouvier with a $85 million valuation for this work.

a.   Did you receive this document? If so, describe how and when you received this document, and who sent it to you.

b.   Did you discuss this document with Mr. Bouvier? If so, describe those discussions and when they took place.

c.   Did you discuss this document with any employee of Sotheby's? If so, describe those discussions and when they took place.

d.   Do you know anything about this document? If so, describe what you know, when you learned it, and the basis for your knowledge.

e.   Do you know whether Mr. Bouvier asked Sotheby's to prepare this valuation of the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

f.   Do you know why Mr. Bouvier obtained a valuation for the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

g.   Were you a party to any discussions between Sotheby's and Mr. Bouvier in this respect? If so, describe those discussions and when they took place.

27

h.    Were you involved in any communications with Plaintiffs regarding any valuation for this work? If so, describe those communications and when they took place.

i.    Do you know why the valuation Mr. Bouvier obtained from Sotheby's does not identify his 2011 acquisition of the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

a.    Did you discuss that with Mr. Valette? If so, describe those discussions and when they took place.

b.    Do you know how Sotheby's calculated the estimated value of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

a.    Did you discuss the work's value with Mr. Valette? If so, describe those discussions and when they took place.

b.    Do you know whether Mr. Bouvier discussed the work's value with Mr. Valette? If so, describe what you know, when you learned it, and the basis for your knowledge.

24.    Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

25.    Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this artwork? If so, describe what you know, when you learned it and the basis for your knowledge.

**Plaintiffs' Claims Regarding Auguste Rodin's *L'Éternel Printemps***

A.    **Introduction:** The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.    **Questions:**

1.    Did you communicate with Mr. Bouvier about this work? If so, describe those communications and when they took place.

28

2.      Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

3.      Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

4.      Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

5.      A copy of a document has been placed in front of you as Exhibit 16. According to this document, on June 15, 2011, Mr. Valette emailed you with information about Rodin's *L'Eternel Printemps*.

      a.      Do you recall this communication?  If so, describe what you recall about it.

      b.      Do you know why Mr. Valette emailed you about this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

      c.      Had you previously discussed it with him?  If so, describe those discussions and when they took place.

      d.      Do you know why he emailed you instead of Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

      e.      Do you know why the attached description was in Word?  If so, describe what you know, when you learned it, and the basis for your knowledge.

6.      A copy of a document has been placed in front of you as Exhibit 17. According to this document, on June 15, 2011, that same day, Mr. Valette sent the same email and attachment to Mr. Bouvier.

      a.      Did you receive this communication?  If so, describe how and when you received this communication or the artwork description, and who sent it to you.

      b.      Did you discuss this communication or the artwork description with Mr. Bouvier?   If so, describe those discussions and when they took place.

      c.      Did you discuss this communication or the artwork description with any employee of Sotheby's?  If so, describe those discussions and when they took place.

29

d.      Do you know anything about this communication or the artwork description?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.      Do you know why Mr. Valette sent the same email and attachment to you and to Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

f.      Was it typical for Mr. Valette to have emailed you and Mr. Bouvier separately regarding the same artworks?

g.      If so, do you know why he did that? If so, describe what you know, when you learned it, and the basis for your knowledge.

h.      According to this document, Mr. Valette refers to you by your first name, "Jean-Marc", in the email he sent to Mr. Bouvier.  Do you know why he did that?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.      A copy of a document has been placed in front of you as Exhibit 18. According to this document, on June 20, 2011, Mr. Valette emailed Mr. Bouvier with a new version of the description for this artwork (still in Word).

a.      Did you receive this communication?  If so, describe how and when you received this communication or the artwork description, and who sent it to you.

b.      Did you discuss this communication or the artwork description with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.      Did you discuss this communication or the artwork description with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.      Do you know anything about this communication or the artwork description?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.      What did you do with the information and/or materials Mr. Valette provided regarding this work?

a.      Did you give it to anyone else?

b.      If so, did you give it to Mr. Rybolovlev?  Or Mikhail Sazonov?  Or anyone working with them?

30

c.      Do you know whether Mr. Bouvier gave it to anyone else? If so, describe what you know, when you learned it, and the basis for your knowledge.

d.      If so, do you know whether Mr. Bouvier gave it to Mr. Rybolovlev? Or Mikhail Sazonov? Or anyone working with them? If so, describe what you know, when you learned it, and the basis for your knowledge.

9.      A copy of a document has been placed in front of you as Exhibit 19. According to this document, on July 11, 2011, Mr. Valette forwarded an email to Mr. Bouvier from Holli Chandler, Sotheby's Business Manager of Impressionist & Modern Art, describing the arrangements to ship the work to Mr. Bouvier's Geneva freeport business.

a.      Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

b.      Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

c.      Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

d.      Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

e.      Do you know Ms. Chandler? Who is she? If so, describe what you know, when you learned it, and the basis for your knowledge

f.      Did you ever communicate with Holli Chandler? If so, describe those communications and when they took place.

g.      At the time of this email, did you know who Ms. Chandler was referring to as "the buyer" in this email? Did you learn anything about that afterwards? Describe what you know, when you learned it, and the basis for your knowledge.

h.      Do you have any knowledge about the viewing in Paris that is referred to? If so, describe what you know, when you learned it, and the basis for your knowledge.

i.      Did you participate in the viewing in Paris that is referred to? If so, describe that viewing and when it took place.

31

10.     A copy of a document has been placed in front of you as Exhibit 20. According to this document, Mr. Valette later emailed Mr. Bouvier that Sotheby's would order the shippers to give Bouvier "free access to the piece so you can position it at your convenience at Vulcan"?

   a.     Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

   b.     Did you discuss this communication with Mr. Bouvier?   If so, describe those discussions and when they took place.

   c.     Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

   d.     Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   e.     Do you know whether Sotheby's often gave free access to pieces for Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   f.     If so, do you know why?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.     A copy of a document has been placed in front of you as Exhibit 21. According to this document, on July 25, 2011, Mr. Valette emailed Mr. Bouvier a PDF file of the description of this work "as promised."

   a.     Did you receive this communication?  If so, describe how and when you received this communication or the artwork description, and who sent it to you.

   b.     Did you discuss this communication or the artwork description with Mr. Bouvier?  If so, describe those discussions and when they took place.

   c.     Did you discuss this communication or the artwork description with any employee of Sotheby's?  If so, describe those discussions and when they took place.

   d.     Do you know anything about this communication or the artwork description?  If so, describe what you know, when you learned it, and the basis for your knowledge.

32

12.     Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.     Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.     Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.     Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.     Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.     Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18.     Did you communicate with any of the following people regarding this artwork:

        a.      Dmitry Rybolovlev?

        b.      Mikhail Sazonov?

        c.      Tetiana Bersheda?

        d.      Yuri Bogdanov?

        e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

        f.      If so, describe the communications and when they took place.

19.     Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20.     Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

33

a.      Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21.     Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier, who was acquiring or would be acquiring this work?  If so describe those communications and when they took place.

a.      Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

22.     Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work?  If so, describe those communications and when they took place.

a.      Do you know whether Mr. Bouvier discussed with Sotheby's the prices paid by any person or entity other than Mr. Bouvier to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

23.     Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

24.     Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this artwork?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## VIII.   Plaintiffs' Claims Regarding Alberto Giacometti's *Femme de Venise IX*

A.      **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.      **Questions:**

1.      Did you communicate with Mr. Bouvier about this work?  If so, describe those communications and when they took place.

34

2.     Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

3.     Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

4.     Did you communicate with anyone else about this work? If so, describe those communications and when they took place.

5.     Do you recall whether, in September and October 2011, Mr. Valette emailed you with information about Giacometti's *Femme de Venise IX*?

        a.     Do you know whether Mr. Valette also emailed Mr. Bouvier during that time period about the same artwork? If so, describe what you know about those communications, when you learned it, and the basis for your knowledge.

        b.     Do you know whether Mr. Valette emailed you and Mr. Bouvier together or separately about this work? Why? Describe what you know, when you learned it, and the basis for your knowledge.

        c.     Did you discuss this artwork with Mr. Valette before September 2011? If so, describe those discussions and when they took place.

        d.     Did you discuss this artwork with Mr. Bouvier before September 2011? If so, describe those discussions and when they took place.

        e.     Do you know whether Mr. Bouvier discussed this artwork with Mr. Bouvier before September 2011? If so, describe what you know, when you learned it, and the basis for your knowledge.

6.     A copy of a document has been placed in front of you as Exhibit 22. According to this document, on October 4, 2011, Mr. Bouvier emailed Mr. Valette, copying you, with the subject line "Urgent." Mr. Bouvier asked Mr. Valette to send him the Giacometti file, specifying that he wanted it as a Word document. Mr. Valette did so.

        a.     Do you recall these communications? If so, describe what you recall about them and when they took place.

        b.     Do you know why Mr. Bouvier copied you on this email? If so, describe what you know, when you learned it, and the basis for your knowledge.

        c.     Do you know why Mr. Bouvier wrote "Urgent" in the subject line? If so, describe what you know, when you learned it, and the basis for your knowledge.

    d.      Did you discuss the subject of this email with Mr. Bouvier before or after he sent the email?  If so, describe those discussions and when they took place.

    e.      Do you know why Mr. Bouvier wanted the file in Word?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.    What did you do with the information and/or materials Mr. Valette provided regarding this work?

    a.      Did you give it to anyone else?

    b.      If so, did you give it to Mr. Rybolovlev?  Or to Mr. Sazonov?  Or anyone working with them?

    c.      Do you know whether Mr. Bouvier gave it to anyone else?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    d.      If so, do you know whether he gave it to Mr. Rybolovlev?  Or to Mr. Sazonov?  Or anyone working with them?  If so, describe what you know, when you learned it, and the basis of your knowledge.

8.    Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.    Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.    Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.    Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.    Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.    Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.  Did you communicate with any of the following people regarding this artwork:

a.  Dmitry Rybolovlev?

b.  Mikhail Sazonov?

c.  Tetiana Bersheda?

d.  Yuri Bogdanov?

e.  Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

f.  If so, describe those communications and when they took place.

15.  Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

16.  Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe those communications and when they took place.

a.  Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

17.  Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

a.  Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

18.  Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

a.  Do you know whether Mr. Bouvier discussed with Sotheby's the prices paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

37

19.     Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

20.     Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

**IX.    Plaintiffs' Claims Regarding Rene Magritte's *Le Domaine d'Arnheim***

A.     **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.     **Questions:**

1.     Did you communicate with Mr. Bouvier about this work? If so, describe those communications and when they took place.

2.     Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

3.     Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

4.     Did you communicate with anyone else about this work? If so, describe those communications and when they took place.

5.     A copy of a document has been placed in front of you as Exhibit 23. According to this document, on August 25, 2011, Mr. Valette emailed you about Magritte's *Le Domaine d'Arnheim*, asking to talk because he had "news."

   a.     Do you recall this communication? If so, describe what you recall about it.

   b.     Do you know what the "news" was? If so, describe what you know, when you learned it, and the basis for your knowledge.

   c.     Do you know why Mr. Valette sent you this email? If so, describe what you know, when you learned it, and the basis for your knowledge.

38

d.    Had you and Mr. Valette discussed this artwork before you received this email?  If so, describe those discussions and when they took place.

6.    A copy of a document has been placed in front of you as Exhibit 24. According to this document, on November 10, 2011, another Sotheby's employee named Isadora Katsis emailed Mr. Bouvier some information about this work.

a.    Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.    Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.    Do you know Ms. Katsis?  Who is she?  If so, describe what you know, when you learned it, and the basis for your knowledge.

f.    Have you communicated with Ms. Katsis?  If so, describe those communications and when they took place.

g.    Ms. Katsis told Mr. Bouvier that the owner would sell this work for $25,000,000.  Did you ever discuss this price with Mr. Valette or anyone at Sotheby's?  If so, describe those communications and when they took place.

h.    Did you ever discuss this price with Mr. Bouvier?  If so, describe those communications and when they took place.

i.    Do you know whether Mr. Valette typically addressed Mr. Bouvier with the informal "tu"?  If so, describe what you know, when you learned it, and the basis for your knowledge.

j.    Did Mr. Valette typically address you with the informal "tu"?

7.    Do you know whether, in November 2011, Mr. Valette communicated with Mr. Bouvier concerning a different Magritte work, *Empire des Lumières*?  If so, describe what you know, when you learned it, and the basis for your knowledge.

39

a.    Do you know whether Mr. Valette ever communicated with Mr. Bouvier concerning the value or potential value of that work? If so, describe what you know, when you learned it, and the basis for your knowledge.

b.    Did you ever discuss *Empire des Lumières* with Mr. Bouvier? If so, describe those discussions and when they took place.

c.    Did you ever discuss *Empire des Lumières* with Mr. Valette? If so, describe those discussions and when they took place.

d.    Do you know how Mr. Valette calculated the different valuations he provided for *Empire des Lumières*? Did you know that as of the date of this email? If so, describe what you know, when you learned it, and the basis for your knowledge.

e.    Did you ever discuss the value or potential value of *Empire des Lumières* or *Domaine d'Arnheim* with Mr. Valette? If so, describe those discussions and when they took place.

f.    Do you know whether Mr. Bouvier discussed the work's value or potential value with Mr. Valette? If so, describe what you know, when you learned it, and the basis for your knowledge.

8.    What did you do with the information and/or materials Mr. Valette provided regarding this work?

a.    Did you give it to anyone else?

b.    If so, did you give it to Mr. Rybolovlev? Or anyone working with him?

9.    A copy of a document has been placed in front of you as Exhibit 25.

a.    Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

b.    Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

c.    Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

d.    Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

40

e.   Do you know whether this communication was ever forwarded to Plaintiffs or their representatives?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.   A copy of a document has been placed in front of you as Exhibit 26. According to this document, on December 2, 2011, Sotheby's employee Holli Chandler wrote to "Sabi (ArteSing SG)" that: "I understand from Sam that the client would very much like to receive the painting at the earliest possible opportunity."  Ms. Chandler referred to "Sabi (ArteSing SG)" as "Nadia."

a.   Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.   Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.   Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.   Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.   Do you know who "Sabi (ArteSing SG)" or "Nadia" is?  If so, who is she?

f.   Do you know whether she is an employee of Mr. Bouvier's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

g.   Have you ever communicated with that person?  If so, describe those communications and when they took place.

h.   At the time of this email, did you know who "the client" was that Ms. Chandler referred to?  Did you learn anything about that afterwards?  Describe what you know, when you learned it, and the basis for your knowledge.

11.   Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

41

13. Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

14. Do you know what Plaintiffs/Mr. Rybolovlev paid for this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

16. Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

17. Did you communicate with any of the following people regarding this artwork:

   a. Dmitry Rybolovlev?

   b. Mikhail Sazonov?

   c. Tetiana Bersheda?

   d. Yuri Bogdanov?

   e. Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f. If so, describe those communications and when they took place.

18. Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

19. Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

42

20. Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

    a. Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

21. Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

    a. Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

22. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

23. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

## X. Plaintiffs' Claims Regarding Amedeo Modigliani's *Nu Couché au Coussin Bleu*

**A. Introduction:** The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

**B. Questions:**

1. Did you communicate with Mr. Bouvier about this work? If so, describe those communications and when they took place.

2. Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

3. Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

43

4.      Did you communicate with anyone else about this work? If so, describe those communications and when they took place.

5.      A copy of a document has been placed in front of you as Exhibit 27. According to this document, on December 21, 2011, Mr. Valette emailed Mr. Bouvier and you, writing "as promised, here is info on the Modigliani." Mr. Valette referred to you as "Jean-Marc" and Mr. Bouvier as "Yves," and signed his name "Sam."

      a.      Do you recall this communication? If so, describe what you recall about it.

      b.      Do you know why Mr. Valette wrote this email to both you and Mr. Bouvier? If so, describe what you know, when you learned it, and the basis for your knowledge.

      c.      Do you know why he did not write to you and Mr. Bouvier separately? If so, describe what you know, when you learned it, and the basis for your knowledge.

      d.      Mr. Valette wrote that he was sending the information "as promised." Had you discussed this work with Mr. Valette before this email? If so, describe those discussions and when they took place.

      e.      Do you know whether Mr. Valette and Mr. Bouvier discussed this work with Mr. Valette before this email? If so, describe what you know, when you learned it, and the basis for your knowledge.

6.      A copy of a document has been placed in front of you as Exhibit 28. According to this document, on December 23, 2011, Mr. Valette sent Mr. Bouvier an email stating that he was providing an analysis of the Modigliani market.

      a.      Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

      b.      Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

      c.      Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

      d.      Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

44

e.  Mr. Valette wrote: "The approximate value of a great *nu couche* by Modigliani with the quality of *nu couche sur un coussin bleu* would likely situate itself between" $70 million and $90 million.

f.  Do you know how Mr. Valette came to write that? If so, describe what you know, when you learned it, and the basis for your knowledge.

7.  A copy of a document has been placed in front of you as Exhibit 29. According to this document, on December 24, 2011, Mr. Bouvier and Mr. Valette communicated by email about "the presentation" of the painting.

a.  Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

b.  Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

c.  Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

d.  Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

e.  Do you know anything about the presentation referred to in this email? If so, describe what you know, when you learned it, and the basis for your knowledge.

f.  Did you ever discuss the presentation with Mr. Valette? If so, describe those discussions and when they took place.

g.  Do you know whether Mr. Bouvier ever discussed the presentation with Mr. Valette? If so, describe what you know, when you learned it, and the basis for your knowledge.

8.  What did you do with the information and/or materials Mr. Valette provided regarding this work?

a.  Did you give it to anyone else?

b.  If so, did you give it to Mr. Rybolovlev? Or anyone working with him?

9.  Do you know whether Mr. Bouvier acquired this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

45

10.     Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.     Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.     Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.     Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.     Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.     Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of Modigliani's *Nu Couché au Coussin Bleu*?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.     Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with that art acquisition?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.     Did you communicate with any of the following people regarding this artwork:

        a.     Dmitry Rybolovlev?

        b.     Mikhail Sazonov?

        c.     Tetiana Bersheda?

        d.     Yuri Bogdanov?

        e.     Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

        f.     If so, describe those communications and when they took place.

18.     Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work?

46

If so, describe what you know, when you learned it, and the basis for your knowledge.

19. Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with this work? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

20. Did you discuss with Sotheby's the identity of any person or entity, other than Mr. Bouvier, who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

21. Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

22. A copy of a document has been placed in front of you as Exhibit 30. According to this document, Sotheby's provided Mr. Bouvier with a $110,000,000 valuation for this work.

   a. Did you receive this document? If so, describe how and when you received this document, and who sent it to you.

   b. Did you discuss this document with Mr. Bouvier? If so, describe those discussions and when they took place.

   c. Did you discuss this document with any employee of Sotheby's? If so, describe those discussions and when they took place.

   d. Do you know anything about this document? If so, describe what you know, when you learned it, and the basis for your knowledge.

e.    Do you know whether Mr. Bouvier asked Sotheby's to prepare this valuation of the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

f.    Do you know why Mr. Bouvier obtained a valuation for the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

g.    Were you a party to any discussions between Sotheby's and Mr. Bouvier in this respect? If so, describe those communications and when they took place.

h.    Were you involved in any communications with Plaintiffs regarding any valuation for this work? If so, describe those communications and when they took place.

i.    Do you know why this valuation does not identify Mr. Bouvier's 2012 acquisition of the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

   (i)    Did you discuss that with Mr. Valette? If so, describe those discussions and when they took place.

c.    Do you know how did Sotheby's calculated the estimated value of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

   a.    Did you discuss the work's value with Mr. Valette? If so, describe those discussions and when they took place.

   b.    Do you know whether Mr. Bouvier discussed the work's value with Mr. Valette? If so, describe what you know, when you learned it, and the basis for your knowledge.

23.    Did you participate in any discussions with Sotheby's about a possible sale of this work at an auction in New York? If so, describe those discussions and when they took place.

a.    Do you know who first had the idea to sell this work at a Sotheby's auction? If so, describe what you know, when you learned it, and the basis for your knowledge.

24.    A copy of a document has been placed in front of you as Exhibit 31. According to this document, on January 9, 2015, Sotheby's Chief Operating Officer Bruno Vinciguerra emailed you and Mr. Valette about

48

Sotheby's possibly selling this work during the spring auction in New York, stating that he anticipated offering a guarantee of up to $70 million.

a.    Do you recall this communication? If so, describe what you recall about it.

b.    Do you know why Sotheby's anticipated offering a guarantee of $70 million? If so, describe what you know, when you learned it, and the basis for your knowledge.

c.    Do you know why Sotheby's anticipated guarantee was not higher? If so, describe what you know, when you learned it, and the basis for your knowledge.

d.    Did you discuss a potential guarantee with Mr. Vinciguerra, Mr. Valette, or anyone at Sotheby's? If so, describe those discussions and when they took place.

e.    Mr. Vinciguerra addressed you as "Jean-Marc" and wrote "we could achieve once again for you an exceptional result."

    (i)    Do you know what "exceptional result" Mr. Vinciguerra is referring to? If so, describe what you know, when you learned it, and the basis for your knowledge.

    (ii)    Had you done business with him before? How many times? If so, describe those instances and when they took place.

## XI.    Plaintiffs' Claims Regarding Auguste Rodin's *Eve*

A.    **Introduction:** The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.    **Questions:**

1.    Did you communicate with Mr. Bouvier about this work? If so, describe those communications and when they took place.

2.    Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

3.    Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

4.    Did you communicate with anyone else about this work? If so, describe those communications and when they took place.

5.    A copy of a document has been placed in front of you as Exhibit 32. According to this document, on January 25, 2012, Mr. Valette emailed you a photo of Rodin's *Eve*. There was no cover note.

    a.    Do you recall this communication? If so, describe what you recall about it.

    b.    Do you know why Mr. Valette sent you this photo? If so, describe what you know, when you learned it, and the basis for your knowledge.

    c.    Had you discussed this artwork with Mr. Valette before you received this email? If so, describe those discussions and when they took place.

        (i)    Do you know whether Mr. Bouvier discussed this artwork with Mr. Valette before this email? If so, describe what you know, when you learned it, and the basis for your knowledge.

6.    A copy of a document has been placed in front of you as Exhibit 33. According to this document, on February 2, 2012, Mr. Valette emailed you a Word file document about the work, asking in his cover email if it "suits you."

    a.    Do you recall this communication? If so, describe what you recall about it.

    b.    Do you know why Mr. Valette sent you this information about the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

    c.    Did you ask Mr. Valette to send you this information in a Word document? If so, describe why and when you did so.

        (i)    If not, do you know whether Mr. Bouvier asked Mr. Valette to send this information to you in Word? If so, describe what you know, when you learned it, and the basis for your knowledge.

50

d.    Did you discuss with Mr. Valette the information he sent to you? If so, describe those discussions and when they took place.

(i)    Do you know whether Mr. Bouvier discussed this information with Mr. Valette before this email? If so, describe what you know, when you learned it, and the basis for your knowledge.

7.    A copy of a document has been placed in front of you as Exhibit 34. Mr. Valette appears to have sent the same information to Mr. Bouvier the next day.

a.    Do you know why Mr. Valette sent you and Mr. Bouvier this information separately? If so, describe what you know, when you learned it, and the basis for your knowledge.

8.    A copy of a document has been placed in front of you as Exhibit 35. According to this document, on February 13, 2012, Mr. Valette emailed both you and Mr. Bouvier with a PDF about the work, writing in his cover email: "Here is a try of a new doc with more photos – thanks for letting me know if it is better."

a.    Do you recall this communication? If so, describe what you recall about it.

b.    Did you ask Mr. Valette for this new document? If so, describe that request and whether you made it by phone or in person, and why.

c.    Do you know whether Mr. Bouvier asked Mr. Valette for this new document? If so, describe what you know, when you learned it, and the basis for your knowledge.

d.    Do you know why Mr. Valette sent the information first in a Word file, and then in a PDF? If so, describe what you know, when you learned it, and the basis for your knowledge.

9.    A copy of a document has been placed in front of you as Exhibit 36. According to this document, on February 14, 2012, Mr. Valette emailed Mr. Bouvier that the work had previously sold in 2008 for $18,969,000.

a.    Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

b.    Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

51

    c.     Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

    d.     Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.     Did you discuss the work's prior sale price with Mr. Bouvier?  If so, describe those discussions and when they took place.

    f.     Did you discuss the work's prior sale price with Mr. Valette?  If so, describe those discussions and when they took place.

10.    A copy of a document has been placed in front of you as Exhibit 37. According to this document, on March 6, 2012, Philippe Capt emailed Mr. Valette and Holli Chandler that "Our client would like us to collect directly the crate in Frankfurt with our truck."

    a.     Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

    b.     Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

    c.     Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

    d.     Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.     Do you know Philippe Capt?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    f.     Do you know whether Philippe Capt is an employee of Mr. Bouvier's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    g.     Have you ever communicated with that person?  If so, describe those communications and when they took place.

    h.     Do you know the person or entity that Philippe Capt referred to as "[o]ur client"?  If so, is that something you knew around the date of this email?  Describe what you know, when you learned it, and the basis for your knowledge.

52

i.      Did you discuss that person or entity with Mr. Valette?  If so, describe those discussions and when they took place.

j.      Did you discuss that person or entity with Ms. Chandler?  If so, describe those discussions and when they took place.

k.      Do you know whether Mr. Bouvier discussed that person or entity with Mr. Valette or Ms. Chandler? If so, describe what you know, when you learned it, and the basis for your knowledge.

11.      What did you do with the information and/or materials Mr. Valette provided regarding this work?

a.      Did you give it to anyone else?

b.      If so, did you give it to Mr. Rybolovlev?  Or anyone working with him?

12.      Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.      Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.      Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.      Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.      Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.      Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18.      Did you discuss with Mr. Bouvier whether he had paid less for the work than it had sold for in 2008?  If so, describe those discussions and when they took place.

19.      Did you communicate with any of the following people regarding this artwork:

53

      a.      Dmitry Rybolovlev?

      b.      Mikhail Sazonov?

      c.      Tetiana Bersheda?

      d.      Yuri Bogdanov?

      e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

      f.      If so, what was the nature of the communications?

20.    Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

21.    Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe those communications and when they took place.

      a.      Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

22.    Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

      a.      Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

23.    Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

      a.      Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

54

24.    A copy of a document has been placed in front of you as Exhibit 38. According to this email, in March 2014, Mr. Valette emailed Mr. Bouvier a description of the work.

a.    Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.    Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.    Do you know why the description of this work does not identify Mr. Bouvier's 2012 acquisition of the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

(i)    Did you discuss that with Mr. Valette?  If so, describe those discussions and when they took place.

25.    A copy of a document has been placed in front of you as Exhibit 39. According to this document, on December 18, 2014, Mr. Valette emailed Mr. Bouvier: "After reflection, my colleagues and I think that the magnificent *Eve* by Rodin that belongs to your client would be particularly shown to advantage at the big sculpture exposition we are preparing…"

a.    Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.    Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

55

e.   Mr. Valette addressed Mr. Bouvier using "vous"—do you know why? If so, describe what you know, when you learned it, and the basis for your knowledge.

26.   A copy of a document has been placed in front of you as Exhibit 40. According to this document, Mr. Valette sent a revised version of the email shown to you as Exhibit 39, an hour and 17 minutes after Mr. Valette had sent the earlier email. Mr. Valette emailed Mr. Bouvier: "After reflection, my colleague Simon Stock, head of sculpture sales at Sotheby's, and I think that the magnificent *Eve* by Rodin that belongs to your client would be particularly shown to advantage at the big sculpture exposition we are preparing…"

a.   Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

b.   Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

c.   Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

d.   Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

e.   Do you know why Mr. Valette revised this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

f.   Did you ever discuss with Mr. Valette the idea of Sotheby's re-selling this work? If so, describe those discussions.

g.   Did you ever discuss that idea with Mr. Bouvier? If so, describe those discussions.

h.   Do you know whether Plaintiffs or their representatives ever received this email? If so, describe what you know, when you learned it, and the basis for your knowledge.

27.   Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

28.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this

56

artwork?  If so, describe what you know, when you learned it, and the basis for your knowledge.

XII.    **Plaintiffs' Claims Regarding Gustav Klimt's** *Wasserschlangen II*

A.      **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.      **Questions:**

1.      Did you communicate with Mr. Bouvier about this work?  If so, describe those communications and when they took place.

2.      Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

3.      Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

4.      Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

5.      Do you recall communicating with Mr. Valette regarding a viewing of the work, *Wasserschlangen II*?  If so, describe those communications and when they took place.

6.      Did you participate in the viewing?  If so, when was it?  Who attended?  What was discussed?  Describe what you know, when you learned it, and the basis for your knowledge.

7.      Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.      Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.      Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.     Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

57

11. Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of Klimt's *Wasserschlangen II*? If so, describe what you know, when you learned it, and the basis for your knowledge.

14. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with that art acquisition? If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Did you communicate with any of the following people regarding this artwork:

   a. Dmitry Rybolovlev?

   b. Mikhail Sazonov?

   c. Tetiana Bersheda?

   d. Yuri Bogdanov?

   e. Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f. If so, describe those communications and when they took place.

16. Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

17. Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

58

18.    Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

19.    Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

20.    Do you know whether Mr. Valette sent Mr. Bouvier any descriptions of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

    a.    Do you know why neither description identified Mr. Bouvier's 2012 acquisition of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

    b.    Did you ever discuss a description for this work with Mr. Bouvier? If so, describe those discussions and when they took place.

    c.    Did you ever discuss a description for this work with Mr. Valette? If so, describe those discussions and when they took place.

21.    Copies of two documents have been placed in front of you as Exhibits 41 and 42. According to these documents, on September 24, 2013, Mr. Valette emailed you an article from *Der Standard* (Austria), one in French and one in German, which reported that Sotheby's had sold the work for $120 million. The first email had no subject line, and neither had a cover note.

    a.    Do you recall these communications? If so, describe what you recall about them.

    b.    Do you know why Mr. Valette sent you this article? If so, describe what you know, when you learned it, and the basis for your knowledge.

59

c.      Do you know why there was no subject line (for the first email) or cover note on either email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.      Did you discuss this article with Mr. Valette on the phone?  If so, describe such conversation(s) and when they took place.  Who was on the call?  Was it before or after Mr. Valette emailed to you?  What did he say?  What did you say?

e.      Did you discuss this article with Mr. Bouvier?  If so, describe those discussions and when they took place.  How did they take place (Email? Phone?)?  What did you say?  What did Mr. Bouvier say?

22.      A copy of a document has been placed in front of you as Exhibit 43. According to this document, in October 2014, Sotheby's provided Mr. Bouvier with a valuation for this work listing the insurance value of the work at $180 million.

a.      Did you receive this document?  If so, describe how and when you received this document, and who sent it to you.

b.      Did you discuss this document with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.      Did you discuss this document with any employee of Sotheby's? If so, describe those discussions and when they took place.

d.      Do you know anything about this document?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.      Do you know whether Mr. Bouvier asked Sotheby's to prepare this valuation of the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

f.      Do you know why Mr. Bouvier obtained a valuation for the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

g.      Were you a party to any discussions between Sotheby's and Mr. Bouvier in this respect?  If so, describe those discussions and when they took place.

h.      Were you involved in any communications with Plaintiffs regarding any valuation for this work?  If so, describe those communications and when they took place.

60

i.      Do you know why the valuation Mr. Bouvier obtained from Sotheby's does not identify his acquisition of the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

(i)      Did you discuss that with Mr. Valette? If so, describe those discussions and when they took place.

d.   Do you know how Sotheby's calculated the estimated value of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

a.   Did you discuss the work's value with Mr. Valette? If so, describe those discussions and when they took place.

b.   Do you know whether Mr. Bouvier discussed the work's value with Mr. Valette? If so, describe what you know, when you learned it, and the basis for your knowledge.

## XIII.   Plaintiffs' Claims Regarding Amedeo Modigliani's *Tête*

A.      **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.      **Questions:**

1.      Did you communicate with Mr. Bouvier about this work? If so, describe those communications and when they took place.

2.      Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

3.      Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

4.      Did you communicate with anyone else about this work? If so, describe those communications and when they took place.

5.      A copy of a document has been placed in front of you as Exhibit 44. According to this document, on June 26, 2012, Mr. Bouvier emailed Mr. Valette to email him the file in "normal format" so that he could include translations.

61

a.      Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.      Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.      Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.      Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.      Do you know why Mr. Bouvier wanted to include translations?  If so, describe what you know, when you learned it, and the basis for your knowledge.

6.    Did Mr. Valette provide you with information and/or materials regarding this work?

a.      If so, did you give them to anyone else?

b.      If so, did you give it to Mr. Rybolovlev?  Or anyone working with him?

7.    Do you know whether Mr. Bouvier provided any information and/or materials from Mr. Valette regarding this work to anyone else?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.    Did you ever discuss with Mr. Bouvier whether he sent any information and/or materials regarding this work that he had received from Mr. Valette to anyone else?  If so, describe those discussions and when they took place.

9.    A copy of a document has been placed in front of you as Exhibit 45. According to this document, on July 9, 2012, Mr. Valette emailed Mr. Bouvier in connection with a presentation of the work.

a.      Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.      Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

62

c.  Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.  Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.  Do you know anything about the presentation referred to in this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

f.  Do you know who the presentation was for?  If so, describe what you know, when you learned it, and the basis for your knowledge.

g.  Did you discuss any presentation with Mr. Valette?  If so, describe those discussions and when they took place.

h.  Did you discuss any presentation with Mr. Bouvier?  If so, describe those discussions and when they took place.

10.  A copy of a document has been placed in front of you as Exhibit 46. According to this document, on July 11, 2012, you wrote to Mr. Valette: "Call me thanks."

a.  Do you recall this communication?  If so, describe what you recall about it.

b.  Did Mr. Valette call you?  If so, describe that conversation and when it took place.

c.  Why did you want to speak on the phone with Mr. Valette as opposed to communicating by email?

11.  Copies of documents have been placed in front of you as Exhibits 47 and 48.  According to Exhibit 47, on July 24, 2012, Mr. Valette emailed Mr. Bouvier a description of the work and estimated that its value would likely be between €70 million to €90 million or "maybe more."  According to Exhibit 48, Mr. Valette then forwarded his email to Mr. Bouvier (Exhibit 47) to you, writing: "Here is the text."

a.  Do you recall this communication?  If so, describe what you recall about it.

b.  Do you know why Mr. Valette sent you this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

63

c.    Do you know why Mr. Valette sent this email (Exhibit 47) to Mr. Bouvier?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.    Do you know why Mr. Valette used the "vous" form in his email? If so, describe what you know, when you learned it, and the basis for your knowledge.

e.    Did you discuss this email with Mr. Valette?  If so, describe those discussions and when they took place.

f.    Do you know whether Mr. Bouvier discussed this email with Mr. Valette?  If so, describe what you know, when you learned it, and the basis for your knowledge.

g.    Do you know how Mr. Valette calculated the estimated value of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

h.    Did you discuss the work's value with Mr. Valette?  If so, describe those discussions and when they took place.

i.    Do you know whether Mr. Bouvier discussed the work's value with Mr. Valette?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.    A copy of a document has been placed in front of you as Exhibit 49. According to this document, the next day, July 25, 2012, Mr. Valette emailed a different version of this email to Mr. Bouvier, this time estimating that the work was likely worth between €80 million to €100 million.

a.    Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.    Did you discuss this communication with Mr. Bouvier?   If so, describe those discussions and when they took place.

c.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

64

e.    Do you know why Mr. Valette increased the estimated value of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

f.    Did you ask Mr. Valette to revise the estimated value?  If so, describe that request and when it was made.

g.    Do you know whether Mr. Bouvier asked Mr. Valette to revise the estimated value of the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

h.    Do you know whether Mr. Bouvier provided this email to anyone else?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.    Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.    Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.    Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.    Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.    Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18.    Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19.    Did you communicate with any of the following people regarding this artwork:

a.    Dmitry Rybolovlev?

b.    Mikhail Sazonov?

c.    Tetiana Bersheda?

d.      Yuri Bogdanov?

e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

f.      If so, describe those communications and when they took place.

20.    Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work? If so, describe what you know, when you learned it, and the basis for your knowledge

21.    Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe those communications and when they took place.

a.      Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

22.    Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

a.      Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

23.    Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

a.      Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

24.    Did you participate in discussions with Sotheby's about a possible sale of this work at an auction in New York? If so, describe those discussions and when they took place.

a.      Do you know whether Mr. Bouvier discussed with Sotheby's the price paid to him by any other person for the artwork? If so, explain what you know, when you learned it, and the basis for your knowledge.

66

25.    A copy of a document has been placed in front of you as Exhibit 50. According to this document, on November 3, 2014, Sotheby's Chief Operating Officer, Bruno Vinciguerra, wrote to you and copied Mr. Valette, writing that Sotheby's "will pay you $25 mil tomorrow" if an unspecified client won the auction.

    a.    Do you recall this communication? If so, describe what you recall about it.

    b.    Do you know why Mr. Vinciguerra sent you this email? If so, explain what you know, when you learned it, and the basis for your knowledge.

    c.    Had you done business with Mr. Vinciguerra before? If so, how many times? Describe those prior instances and when they took place.

    d.    Please describe the transaction referred to in this document and anything you remember about it.

    e.    Did you ever discuss with Sotheby's the ownership of this work? If so, describe those discussions and when they took place.

    f.    Do you know whether Mr. Bouvier ever discussed with Sotheby's the ownership of this work? If so, explain what you know, when you learned it, and the basis for your knowledge.

    g.    Do you know whether Sotheby's ever asked Mr. Bouvier for proof of ownership of this work? If so, explain what you know, when you learned it, and the basis for your knowledge.

        (i)    If not, do you know why not? Describe what you know, when you learned it, and the basis for your knowledge.

26.    Do you know whether Sotheby's sold this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

27.    Do you know the price at which this work sold? If so, describe what you know, when you learned it, and the basis for your knowledge.

28.    Did you ever see the auction catalogue for this work? If so, describe the auction catalogue.

    a.    Do you know whether the auction catalogue referred to Mr. Bouvier's earlier acquisition of the work? Describe what you know, when you learned it, and the basis for your knowledge.

67

b.  Did you ever discuss the auction catalogue for this work with Mr. Valette or Mr. Vinciguerra? If so, describe those discussions and when they took place.

c.  Did you ever discuss with Mr. Valette or Mr. Vinciguerra whether the auction catalogue for this work should refer to Mr. Bouvier's acquisition of it? If so, describe those discussions and when they took place.

d.  Did you ever discuss the auction catalogue for this work with Mr. Bouvier? If so, describe those discussions and when they took place.

e.  Did you ever discuss with Mr. Bouvier whether the auction catalogue for this work should refer to Mr. Bouvier's acquisition of it? If so, describe those discussions and when they took place.

29.  A copy of a document has been placed in front of you as Exhibit 51. According to this document, on December 4, 2014, Mr. Valette emailed "NADIA (ArteSing SG)" or "Nadia" writing that Sotheby's had sent Mr. Bouvier $15 million from the sale of the work.

a.  Do you know who NADIA (ArteSing SG) or Nadia is? If so, who is she?

b.  Do you know whether she an employee of Mr. Bouvier's? If so, describe what you know, when you learned it, and the basis for your knowledge.

c.  Have you ever communicated with that person? If so, describe those communications and when they took place.

d.  Did you receive this communication? If so, describe how and when you received this communication, and who sent it to you.

e.  Did you discuss this communication with Mr. Bouvier? If so, describe those discussions and when they took place.

f.  Did you discuss this communication with any employee of Sotheby's? If so, describe those discussions and when they took place.

g.  Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

68

h.  Did you discuss this payment with Mr. Valette or Mr. Vinciguerra? If so, describe those discussions and when they took place.

i.  Do you know what Mr. Bouvier did with that payment? If so, describe what you know, when you learned it, and the basis of your knowledge.

j.  Did you discuss this payment with Mr. Bouvier? If so, describe those discussions and when they took place.

30. Did you ever discuss Rothko's *No. 6.* with Mr. Bouvier? If so, describe those discussions and when they took place.

31. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

32. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

## XIV.  Plaintiffs' Claims Regarding Henri de Toulouse-Lautrec's *Au Lit: Le Baiser*

A.  **Introduction:** The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.  **Questions:**

1.  Did you communicate with Mr. Bouvier about this work? If so, describe those communications and when they took place.

2.  Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

3.  Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

4.  Did you communicate with anyone else about this work? If so, describe those communications and when they took place.

69

5. A copy of a document has been placed in front of you as Exhibit 52. According to this document, on February 17, 2015, Mr. Valette forwarded you an email he had sent Mr. Bouvier with information about this work.

   a. Do you know why Mr. Valette sent you this information? If so, describe what you know, when you learned it, and the basis for your knowledge.

   b. Did you speak with Mr. Valette on the phone before he sent you this information? If so, describe those communications and when they took place.

   c. What did you do with the information that Mr. Valette sent you about this work? Did you send it Mr. Rybolovlev/Plaintiffs?

6. Do you know whether Mr. Bouvier received information and/or materials from Mr. Valette concerning this work? If so, describe what you know, when you learned it, and the basis of your knowledge.

   a. Do you know what Mr. Bouvier did with any information and/or materials he received from Mr. Valette concerning this work? If so, describe what you know, when you learned it, and the basis of your knowledge.

7. Did you communicate with any of the following people regarding this artwork:

   a. Dmitry Rybolovlev?

   b. Mikhail Sazonov?

   c. Tetiana Bersheda?

   d. Yuri Bogdanov?

   e. Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f. If so, describe those communications and when they took place.

8. Do you know whether Mr. Bouvier acquired this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

9. Do you know what Mr. Bouvier paid for this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

70

10.    Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

11.    Do you know what Plaintiffs/Mr. Rybolovlev paid for this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

12.    Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

13.    Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

14.    Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work?

15.    Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work? If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

16.    Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

17.    Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

71

18. Do you know whether Mr. Valette ever sent Mr. Bouvier an auction catalogue for this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

   a. Do you know whether any auction catalogue for this work referred to Mr. Bouvier's prior acquisition of this work? If so, describe what you know about the auction catalogue, when you learned it, and the basis for your knowledge.

   b. Did you ever discuss an auction catalogue for this work with Mr. Valette, Mr. Vinciguerra, or anyone else at Sotheby's? If so, describe those discussions and when they took place.

   c. Did you ever discuss an auction catalogue for this work with Mr. Bouvier? If so, describe those discussions and when they took place.

19. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

20. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this artwork? If so, describe what you know, when you learned it, and the basis for your knowledge.

## XV. Plaintiffs' Claims Regarding Leonardo da Vinci's *Christ as Salvator Mundi*

A. **Introduction:** The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B. **Questions:**

1. Did you communicate with Mr. Bouvier about this work? If so, describe those communications and when they took place.

2. Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

3. Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

72

4.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

5.    Do you know of any viewings that took place in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

6.    Did you participate in any discussions concerning a viewing for this work?  If so, describe those discussions, including the persons who participated, and when they took place.

7.    Did you attend any viewings of the work, *Christ as Salvator Mundi*?

    a.    If so, when was the viewing?  Who attended?  What was discussed?

8.    Do you know of any meetings in Paris in connection with the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.    Were you part of any discussions about any meetings in Paris in connection with the sale of this work?  If so, describe those discussions, when they took place, and who participated.

10.    Did you ever communicate with Sotheby's regarding this work?  If so, when?  With whom?  What was discussed?

11.    Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.    Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.    Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.    Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.    Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.    Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.    Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of Da Vinci's *Christ as Salvator Mundi*?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18.    Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with that art acquisition?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19.    Did you communicate with any of the following people regarding this artwork:

   a.    Dmitry Rybolovlev?

   b.    Mikhail Sazonov?

   c.    Tetiana Bersheda?

   d.    Yuri Bogdanov?

   e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f.    If so, describe those communications and when they took place.

20.    Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work?

21.    Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

   a.    Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

22.    Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

   a.    Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was

74

acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

23.    Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work?  If so, describe those communications and when they took place.

   a.    Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

24.    A copy of a document has been placed in front of you as Exhibit 53. According to this document, on March 3, 2014, Mr. Vinciguerra emailed you and Mr. Bouvier an article from *The New York Times* stating that the *Salvator Mundi* had been sold for $75 million.  There was no cover note.

   a.    Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

   b.    Did you discuss this communication with Mr. Bouvier?  If so, describe those discussions and when they took place.

   c.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

   d.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   e.    Did you speak with Mr. Vinciguerra about this article?  Describe that conversation and when it took place, including who participated and whether it was by phone or in person.

   f.    Do you know why Mr. Vinciguerra sent you this article?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   g.    Do you know why Mr. Vinciguerra did not include a cover note in his email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

25.    Do you have any knowledge of whether Mr. Rybolovlev or Mr. Sazonov accused Mr. Bouvier of defrauding them in December 2014?  If so, describe what you know, when you learned it, and the basis for your knowledge.

75

a. Was that something you discussed with Mr. Bouvier? If so, describe those discussions, including whether it was over the phone or in person.

26. Do you know whether Mr. Bouvier obtained a valuation of this work from Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

a. If so, do you know why he obtained a valuation for the work?

b. If so, were you a party to the discussions between Sotheby's and Mr. Bouvier in this respect? If so, when? What was discussed?

c. Were you involved in any communications with Plaintiffs regarding any valuation for this work?

27. A copy of a document has been placed in front of you as Exhibit 54. According to this document, on January 27, 2015, Mr. Valette emailed Mr. Bouvier a draft valuation for the work in an amount of $100 million along with a cover letter from Alexander Bell indicating that Mr. Bouvier acquired the work in 2013.

a. Did you receive this communication? If so, describe how and when you received this communication or the draft valuation, and who sent it to you.

b. Did you discuss this communication or the draft valuation with Mr. Bouvier? If so, describe those discussions and when they took place.

c. Did you discuss this communication or the draft valuation with any employee of Sotheby's? If so, describe those discussions and when they took place.

d. Do you know anything about this communication or the draft valuation? If so, describe what you know, when you learned it, and the basis for your knowledge.

28. A copy of a document has been placed in front of you as Exhibit 55. According to this document, on January 28, 2015, Mr. Valette sent Mr. Bouvier a revised valuation of the work in an amount of €100 million.

a. Did you receive this communication? If so, describe how and when you received this communication or the revised valuation, and who sent it to you.

76

b.  Did you discuss this communication or the revised valuation with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.  Did you discuss this communication or the revised valuation with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.  Do you know anything about this communication or the revised valuation?  If so, describe what you know, when you learned it, and the basis for your knowledge.

29. A copy of a document has been placed in front of you as Exhibit 56. According to this document, on January 28, 2015, Mr. Valette sent Mr. Bouvier a revised cover letter from Mr. Bell that does not refer to Mr. Bouvier's acquisition of the work in 2013.

a.  Did you receive this communication?  If so, describe how and when you received this communication or the revised cover letter, and who sent it to you.

b.  Did you discuss this communication or the revised cover letter with Mr. Bouvier?  If so, describe those discussions and when they took place.

c.  Did you discuss this communication or the revised cover letter with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.  Do you know anything about this communication or the revised cover letter?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XVI.  Plaintiffs' Claims Regarding Paul Gauguin's *Otahi (Alone)*

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.  **Questions:**

1. Did you communicate with Mr. Bouvier about this work?  If so, describe those communications and when they took place.

2.    Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

3.    Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

4.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

5.    Do you know whether Mr. Bouvier acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

6.    Do you know what Mr. Bouvier paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.    Do you know whether Plaintiffs/Mr. Rybolovlev acquired this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.    Do you know what Plaintiffs/Mr. Rybolovlev paid for this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.    Do you know whether Mr. Bouvier received any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.   Do you know whether Mr. Bouvier and Plaintiffs had any kind of agreement with respect to this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   Did you communicate with any of the following people regarding this work:

   a.    Dmitry Rybolovlev?

   b.    Mikhail Sazonov?

   c.    Tetiana Bersheda?

   d.    Yuri Bogdanov?

   e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f.    If so, describe communications and when they took place.

78

12. Do you know whether Mr. Bouvier made any representations to Plaintiffs' representatives, including Mr. Rybolovlev, about the price of this work?

13. Did you communicate with Sotheby's about what Mr. Bouvier intended to do, or did, with this work? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier communicated with Sotheby's about what Mr. Bouvier intended to do, or did, with this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

14. Did you discuss with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier discussed with Sotheby's the identity of any person or entity other than Mr. Bouvier who was acquiring or would be acquiring this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Did you discuss with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe those communications and when they took place.

   a. Do you know whether Mr. Bouvier discussed with Sotheby's the price paid by any person or entity other than Mr. Bouvier to acquire this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

16. A copy of a document has been placed in front of you as Exhibit 57. According to this document, on October 24, 2015, Mr. Valette sent Mr. Bouvier a valuation for this work in an amount of $120 million.

   a. Did you receive this document? If so, describe how and when you received this document, and who sent it to you.

   b. Did you discuss this document with Mr. Bouvier? If so, describe those discussions and when they took place.

   c. Did you discuss this document with any employee of Sotheby's? If so, describe those discussions and when they took place.

   d. Do you know anything about this document? If so, describe what you know, when you learned it, and the basis for your knowledge.

79

e.  Do you know whether Mr. Bouvier asked Sotheby's to prepare this valuation of the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

f.  Do you know why Mr. Bouvier obtained a valuation for the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

g.  Were you a party to any discussions between Sotheby's and Mr. Bouvier in this respect? If so, describe those discussions and when they took place.

h.  Were you involved in any communications with Plaintiffs regarding any valuation for this work? If so, describe those communications.

i.  Do you know why this document does not refer to Mr. Bouvier's acquisition of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

    (i)  Did you discuss that with Mr. Valette? If so, describe those discussions.

17.  A copy of a document has been placed in front of you as Exhibit 58. According to this document, on February 19, 2015, Mr. Valette sent Mr. Bouvier a second valuation for this work that valued it at an amount of $140 million.

a.  Did you receive this document? If so, describe how and when you received this document, and who sent it to you.

b.  Did you discuss this document with Mr. Bouvier? If so, describe those discussions and when they took place.

c.  Did you discuss this document with any employee of Sotheby's? If so, describe those discussions and when they took place.

d.  Do you know anything about this document? If so, describe what you know, when you learned it, and the basis for your knowledge.

e.  Do you know whether Mr. Bouvier asked Sotheby's to prepare this second valuation of the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

f.  Do you know why Mr. Bouvier obtained a second valuation for the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

80

g.   Were you a party to any discussions between Sotheby's and Mr. Bouvier in this respect?  If so, describe those discussions and when they took place.

h.   Were you involved in any communications with Plaintiffs regarding any second valuation for this work?  If so, describe those communications and when they took place.

i.   Do you know why this document does not refer to Mr. Bouvier's acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

(i)   Did you discuss that with Mr. Valette?  If so, describe those discussions.

## XVII.  Plaintiffs' Claims Regarding Text Messages

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' allegations concerning certain text message exchanges between you and Mr. Bouvier.  Plaintiffs allege in their Amended Complaint that "[it] has been publicly reported that Bouvier's text messages, produced in the criminal proceedings against him in France, reveal that Bouvier . . . texted Peretti: 'I am in the shit.  He does not have cash and wants to place all Picasso and Rodin for public sale. […] We will talk about that tomorrow.'"  Am. Compl. ¶ 180.  The following questions are designed to elicit evidence relevant to Plaintiffs' claims that, at a certain point in time, they "began to suspect [Mr.] Bouvier had defrauded them."  *Id.* ¶ 179.

B.   Questions:

1.   Do you recall receiving a text message from Mr. Bouvier in which he stated: "I am in the shit.  He does not have cash and wants to place all Picasso and Rodin for public sale. […] We will talk about that tomorrow"?

a.   If so, what were the circumstances surrounding this text message?

b.   What was your understanding of what this text message meant?

c.   Did you have any additional conversations about this with Mr. Bouvier?

(i)   When?  What was discussed?

## XVIII.  Possible Criminal Convictions

81

1.      Have you ever been convicted of a crime?  If so, state the crime for which you were convicted and the jurisdiction in which you were convicted.