| | |
|---|---|
| ACCENT DELIGHT INTERNATIONAL LTD. and XITRANS FINANCE LTD.,<br><br>               Plaintiffs,<br><br>       v.<br><br>SOTHEBY'S and SOTHEBY'S, INC.,<br><br>             Defendants. | No. 1:18-cv-09011-JMF-RWL |

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON
THE TAKING OF EVIDENCE ABROAD IN CIVIL MATTERS
TO OBTAIN EVIDENCE FROM TETIANA M. BERSHEDA**

In conformity with Articles 1 and 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), the United States District Court for the Southern District of New York respectfully requests international judicial assistance to obtain evidence from Tetiana M. Bersheda ("Ms. Bersheda") for use in the above-captioned civil proceeding currently pending before this Court (the "U.S. Action" or "Action"). The evidence is sought by Defendants in the Action, Sotheby's and Sotheby's, Inc. (together, "Sotheby's"). As set forth below, Ms. Bersheda is a critical fact witness whose evidence is relevant to Plaintiffs' allegations in this Action and Sotheby's defenses thereto.

The U.S. Action is a civil proceeding in which Plaintiffs allege that Sotheby's aided and abetted an alleged fraud and breach of fiduciary duty committed by Yves Bouvier ("Mr. Bouvier"). Plaintiffs allege that Plaintiffs and Mr. Bouvier agreed (at a time and in a manner unspecified by Plaintiffs) that Mr. Bouvier would act as their agent to acquire art masterworks on their behalf. Mr. Bouvier allegedly purchased 38 art masterworks from various sellers, resold the works to

Plaintiffs at markups, and pocketed the difference for himself. Plaintiffs assert that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to 14 of the art masterworks, 12 of which Mr. Bouvier acquired from third parties in private sales facilitated by Sotheby's entities before he sold them to Plaintiffs.

At all times relevant to this dispute, Ms. Bersheda served as a representative of Plaintiffs and Plaintiffs' principal, Dmitry Rybolovlev ("Mr. Rybolovlev"), in their interactions with Mr. Bouvier and his representatives. In the course of discovery in this proceeding, Plaintiffs have identified Ms. Bersheda as someone who has first-hand knowledge and documents regarding those communications, which will be critical evidence of the relationship between Plaintiffs (including Mr. Rybolovlev) and Mr. Bouvier and the representations that were made between them. That evidence goes to whether there was an underlying fraud or breach of fiduciary duty, which are essential elements of Plaintiffs' claims against Sotheby's.

The assistance requested is for the appropriate judicial authority of the United Kingdom to compel the appearance of Ms. Bersheda to produce documents and give oral testimony relevant to the claims and defenses in the Action. The evidence is intended for use at trial.

1. **Sender/Requesting Judicial Authority:**

   The Honorable Jesse M. Furman
   United States District Court for the Southern District of New York
   40 Centre Street, Room 2202
   New York, New York 10007
   United States of America

2. **Central Authority of the Requested State:**

   The Senior Master
   Foreign Process Section
   Room E16
   Queen's Bench Division
   Royal Courts of Justice
   Strand

London WC2A 2LL,
England, United Kingdom

**3. Persons to Whom the Executed Request Is to be Returned:**

Marcus A. Asner
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
United States of America

Email: Marcus.Asner@arnoldporter.com
Tel: +1 212 836 7222
Fax: +1 212 836 8689

**4. Names and Addresses of the Parties and Their Representatives:**

    **a. Plaintiffs:**

Accent Delight International Ltd.
Jipfa Building, 3rd Floor
142 Main Street
Road Town, Tortola
British Virgin Islands

Xitrans Finance Ltd.
Akara Building
24 De Castro Street
Wickhams Cay 1
Road Town
Tortola
British Virgin Islands

<u>Counsel for Plaintiffs:</u>
Daniel Kornstein
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Email: dkornstein@ecbalaw.com
Tel: +1 212 763 5000

    **b. Defendants:**

Sotheby's
1334 York Avenue
New York, New York 10021

United States of America

Sotheby's, Inc.
1334 York Avenue
New York, New York 10021
United States of America

<u>Counsel for Defendants:</u>
Marcus A. Asner
Sara L. Shudofsky
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Email: Marcus.Asner@arnoldporter.com
Email: Sara.Shudofsky@arnoldporter.com
Tel: +1 212 836 7222

Jane Wessel
Arnold & Porter Kaye Scholer (UK) LLP
Tower 42
25 Old Broad Street
London EC2N 1HQ
United Kingdom
Email: Jane.Wessel@arnoldporter.com
Tel: +44 (0)20 7786 6260

**5. Nature of the Proceedings and Summary of the Facts:**

The U.S. Action is a civil lawsuit in which Plaintiffs allege that Sotheby's aided and abetted Mr. Bouvier's purported fraud and breach of fiduciary duty, and breached its contractual obligations to Plaintiffs. A copy of the Amended Complaint ("Am. Compl.") and Sotheby's Answer ("Sotheby's Answer") in the U.S. Action are attached hereto as Exhibits 1 and 2.

Plaintiffs' action arises from a longstanding dispute between Mr. Rybolovlev, a Russian oligarch, and Mr. Bouvier. Plaintiffs are companies incorporated in the British Virgin Islands; they are owned by trusts settled by and for the benefit of members of the family of Mr. Rybolovlev. Mr. Rybolovlev is Plaintiffs' principal. Plaintiffs allege that Mr. Bouvier defrauded them of over one billion dollars when he served as their art advisor. According to Plaintiffs, Plaintiffs and Mr.

Bouvier agreed that Mr. Bouvier would act as Plaintiffs' agent to acquire art masterworks on their behalf. Mr. Bouvier allegedly purchased 38 art masterworks from various private sellers, resold the works to Plaintiffs at markups as high as 145%, and pocketed the difference for himself. Plaintiffs assert that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to 14 of the art masterworks; Mr. Bouvier acquired 12 of those 14 art masterworks from third parties in private sales facilitated by Sotheby's entities before he sold them to Plaintiffs. Plaintiffs also allege that Sotheby's breached a Tolling Agreement with Plaintiffs when Sotheby's filed a declaratory judgment action in Switzerland in 2017.

Sotheby's contends that, at all times relevant to this dispute, Ms. Bersheda served as a global business and legal advisor to Plaintiffs and Mr. Rybolovlev; more specifically, Ms. Bersheda served as a liaison on behalf of Mr. Rybolovlev in his dealings with Mr. Bouvier. Ms. Bersheda is thus a critical fact witness. In their response to Sotheby's interrogatories in this case, Plaintiffs have identified Ms. Bersheda as having: (i) "knowledge or information concerning . . . the allegations in the Complaint"; (ii) "communicated with [Mr.] Bouvier on [Plaintiffs'] behalf or at [Plaintiffs'] direction concerning one or more of the Works" at issue in the case; (iii) "knowledge of any valuation that [Plaintiffs] obtained or attempted to obtain from [Mr.] Bouvier" concerning the artworks at issue; and (iv) "knowledge or information concerning [Plaintiffs'] alleged suspicion and discovery that [Mr.] Bouvier had defrauded [them]." *See* Plaintiffs' Responses and Objections to Sotheby's First Set of Interrogatories at 4-7, attached hereto as Exhibit 3 ("Plaintiffs' Responses to Interrogatories").[1]

---

[1] Pursuant to the Protective Order in the U.S. Action, Plaintiffs have designated as "CONFIDENTIAL MATERIAL" certain portions of Plaintiffs' Responses to Interrogatories. Those portions have been redacted from Exhibit 3 and are not being relied upon in connection with this Letter of Request.

Plaintiffs have also identified Ms. Bersheda as having "knowledge or information concerning [Plaintiffs'] initial receipt, and [Plaintiffs'] transmittal, review, discussion, and/or use, of" Sotheby's privileged materials. *Id.* at 7. Specifically, Sotheby's recently learned that, since April 2016, and unbeknownst to Sotheby's at the time, Ms. Bersheda has possessed and made use of Sotheby's attorney work product and attorney-client communications (the "Privileged Materials" or "Materials"). *See* Sotheby's Letter-Motion for Conference Regarding Need for Discovery, Dkt. 75 (Aug. 26, 2019), attached hereto as Exhibit 4 ("Sotheby's Letter-Motion"); Plaintiffs' Letter to Court Regarding Sotheby's Letter-Motion, Dkt. 76 (Aug. 27, 2019), attached hereto as Exhibit 5. The Privileged Materials consist of two documents. The first document is an outline that Sotheby's counsel, Arnold & Porter, created for an interview it conducted with Samuel Valette, an employee of Sotheby's UK who served as the primary contact between Sotheby's UK and Mr. Bouvier. The second document summarizes information gathered concerning the artworks at issue in the U.S. Action. On October 21, 2016, a representative of Plaintiffs, Simona Fedele ("Ms. Fedele"), sent copies of the Privileged Materials—apparently at Ms. Bersheda's direction—to Brian Cattell and Sergey Chernitsyn, as well as to Ms. Bersheda. *See* Sotheby's Letter-Motion at Ex. A [Exhibit 4]. In the October 21, 2016 cover email from Ms. Fedele to Ms. Bersheda and others, Ms. Fedele refers to proceedings (the "1782 proceedings") in this Court in which Plaintiffs sought documents from Sotheby's for use in foreign litigation against Mr. Bouvier concerning the same transactions at issue in the U.S. Action. *See id.* Ms. Bersheda is uniquely situated to provide information regarding whether Plaintiffs obtained the Privileged Materials unlawfully and whether they have used or are using the Privileged Materials in connection with the U.S. Action.

Sotheby's understands that Ms. Bersheda is a lawyer and does not seek to obtain information protected by the attorney-client privilege. Rather, Sotheby's seeks testimony and documents regarding Ms. Bersheda's communications with third parties on Plaintiffs' (including Mr. Rybolovlev's) behalf, which are not privileged. Sotheby's understands that its requests for testimony and documents would be subject to the rules governing privileges and confidentiality in the United Kingdom.

6. **Evidence to be Obtained and Purpose:**

a. **Evidence to be Obtained:**

Sotheby's seeks oral testimony and documents from Ms. Bersheda for use at trial. Specifically, Ms. Bersheda, who engaged in direct communications with Mr. Bouvier and his representatives on behalf of Plaintiffs (including Mr. Rybolovlev), is in unique possession of evidence relevant to Plaintiffs' allegations in the Action and Sotheby's defenses thereto. Appendix A sets forth the topics of oral testimony sought from Ms. Bersheda.

b. **The Evidence Is Sought for Use at Trial:**

This Court understands that the powers of the English High Court of Justice to assist this Court's efforts to obtain evidence in the United Kingdom are listed in Section 2 of the Evidence (Proceedings in Other Jurisdictions) Act 1975, and that such assistance may not be provided when the evidence is sought only to be used for pre-trial purposes. This Court finds that the evidence requested is not being sought for mere pre-trial discovery, but rather is being sought to be used as proof in the actual trial in these proceedings.

c. **Purpose of the Evidence Sought:**

Ms. Bersheda is a critical fact witness in the U.S. Action. She interacted with Mr. Bouvier and his representatives regarding transactions that are the subject of the U.S. Action. *See*

Plaintiffs' Responses to Interrogatories at 5 [Exhibit 3]. Ms. Bersheda was present at multiple meetings between Mr. Rybolovlev and Mr. Bouvier, often serving as a translator between the two businessmen, since they do not have a common language. Mr. Bouvier's interactions with Plaintiffs and Sotheby's, including all of his interactions with Plaintiffs through Ms. Bersheda, are at the heart of Plaintiffs' U.S. Action against Sotheby's. In addition, as Plaintiffs' representative, Ms. Bersheda was in possession of Sotheby's Privileged Materials, and the Materials were disseminated at her direction and on behalf of Plaintiffs and Mr. Rybolovlev to other individuals. *See* Sotheby's Letter-Motion at Ex. A [Exhibit 4].

Ms. Bersheda is in unique possession of critical evidence that bears on the essential elements of Plaintiffs' claims and Sotheby's defenses to those claims.

*First*, a threshold element of Plaintiffs' claims against Sotheby's of aiding and abetting fraud and aiding and abetting a breach of fiduciary duty is proof of the alleged underlying fraud and breach of fiduciary duty by Mr. Bouvier. *See* Sotheby's Answer at 50-51 [Exhibit 2]. Ms. Bersheda's testimony and documents are relevant, and indeed critical, to proving or disproving whether Mr. Bouvier committed fraud or breached his alleged fiduciary duty to Plaintiffs, given that Ms. Bersheda interacted with Mr. Bouvier and his representatives regarding transactions that are the subject of the U.S. Action. *See* Plaintiffs' Responses to Interrogatories at 5 [Exhibit 3].

*Second*, a central allegation of Plaintiffs' case is that Sotheby's provided valuations of some of the works to Mr. Bouvier, which according to Plaintiffs were intended by Sotheby's to be passed along by Mr. Bouvier to Plaintiffs to justify the higher prices Mr. Bouvier charged Plaintiffs for those works. *See, e.g.*, Am. Compl. ¶ 4 [Exhibit 1]. Sotheby's denies those allegations and asserts that it did not know what Mr. Bouvier planned to do with any work of art he acquired in a transaction brokered by Sotheby's and did not know the price that Mr. Bouvier planned to later

charge for any work of art, if he did decide to re-sell it. Further, Sotheby's contends—based on information learned long after the events at issue in the Amended Complaint—that Mr. Bouvier sought the valuations from Sotheby's at Plaintiffs' request because, among other reasons, Plaintiffs wanted to use the valuations to secure loans from one or more financial institutions in Singapore, using one or more of the works as collateral. If, in fact, it was Plaintiffs—and not Mr. Bouvier— who wanted these valuations, then Sotheby's provision of the valuations to Mr. Bouvier cannot have aided and abetted any alleged fraud of Plaintiffs or breach of a fiduciary duty to them. Plaintiffs have acknowledged that Ms. Bersheda communicated with Mr. Bouvier on Plaintiffs' behalf and that she has knowledge concerning valuations that Plaintiffs obtained or attempted to obtain from Mr. Bouvier. *See* Plaintiffs' Responses to Interrogatories at 5-6 [Exhibit 3]. Sotheby's also contends that Ms. Bersheda has knowledge of communications with various financial institutions, including financial institutions in Singapore, regarding obtaining credit, loans, or financing on Plaintiffs' and Mr. Rybolovlev's behalf using the artworks as collateral. Accordingly, Ms. Bersheda's knowledge of and information regarding requests for valuations from Mr. Bouvier and communications with financial institutions are of critical importance to Sotheby's defenses to Plaintiffs' claims.

*Third*, testimony and documents regarding how Plaintiffs came to be in possession of and used the Privileged Materials are relevant to Sotheby's defenses. As a representative of Plaintiffs who possessed and oversaw the dissemination of the Privileged Materials, Ms. Bersheda is uniquely situated to provide information regarding whether Plaintiffs obtained the Privileged Materials unlawfully and have used or are using the Privileged Materials in connection with the U.S. Action. Any such evidence, moreover, would go more fundamentally to the very integrity of the U.S. Action.

While Sotheby's will also depose Mr. Rybolovlev in this Action, Ms. Bersheda's testimony is unique in that she communicated directly with Mr. Bouvier or his representatives on behalf of Plaintiffs and Mr. Rybolovlev, as Mr. Rybolovlev and Mr. Bouvier do not speak a common language. Such communications are direct evidence of whether an agency or fiduciary relationship existed between Plaintiffs and Mr. Bouvier, as Plaintiffs allege, and what representations were made about the prices and valuations of the art masterworks at issue in the U.S. Action, which is directly relevant to whether Plaintiffs can prove an underlying fraud or breach of fiduciary duty. And any communications she had with financial institutions to obtain loans using the artworks as collateral, as discussed above, are also critically relevant to Sotheby's defenses to Plaintiffs' claims, as is her testimony regarding the acquisition and use of the Privileged Materials.

**7. Identity and Address of the Person to be Examined:**

Tetiana M. Bersheda



London
SW1X 0DQ
United Kingdom

**8. Questions to be Put to the Person to be Examined or Statement of the Subject Matter About Which She Is to be Examined:**

It is requested that Ms. Bersheda be questioned by lawyers for Sotheby's with respect to the topics set forth in Appendix A.

**9. Documents and Other Property to be Inspected:**

This Court requests that Ms. Bersheda produce the following documents (including electronic documents) which are in her possession, custody, or power:

  a.  The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr.

Bouvier), or (ii) other third parties regarding Pablo Picasso's *L'Homme Assis Au Verre* in or around March to April 2011. *See* Am. Compl. ¶¶ 40-52.

b. The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Aristide Maillol's *La Méditerranée* in or around April 2011. *See* Am. Compl. ¶¶ 53-60.

c. The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Auguste Rodin's *Le Baiser* in or around April 2011. *See* Am. Compl. ¶¶ 61-65.

d. The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Henri Matisse's *Nu au Châle Vert* in or around June 2011 and in or around October 2014. *See* Am. Compl. ¶¶ 66-75.

e. The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Auguste Rodin's *L'Éternel Printemps* in or around June and July 2011. *See* Am. Compl. ¶¶ 76-84.

f. The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Alberto Giacometti's *Femme de Venise IX* in or around September and October 2011. *See* Am. Compl. ¶¶ 85-89.

g.     The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Rene Magritte's *Le Domaine d'Arnheim* in or around August to December 2011. *See* Am. Compl. ¶¶ 90-100.

h.     The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Amedeo Modigliani's *Nu Couché au Coussin Bleu* in or around December 2011, and October 2014 to January 2015. *See* Am. Compl. ¶¶ 101-110.

i.     The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Auguste Rodin's *Eve* in or about January to March 2012, and March to December 2014. *See* Am. Compl. ¶¶ 111-122.

j.     The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Gustav Klimt's *Wasserschlangen II* in or around August and September 2012, July to September 2013, and October 2014. *See* Am. Compl. ¶¶ 123-134.

k.     The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Amedeo Modigliani's *Tête* in or

around December 2011, June to September 2012, and September to December 2014.  *See* Am. Compl. ¶¶ 135-157.

l.  The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Henri de Toulouse-Lautrec's *Au Lit: Le Baiser* in or around October 2012 to February 2013 and December 2014 to March 2015.  *See* Am. Compl. ¶¶ 158-165.

m.  The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Leonardo da Vinci's *Christ as Salvator Mundi* in or around March to May 2013, and March 2014 to January 2015.  *See* Am. Compl. ¶¶ 166-188.

n.  The communications, including the emails and their attachments and any other communications, between Ms. Bersheda and (i) Mr. Bouvier (or persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding a viewing of Leonardo da Vinci's *Christ as Salvator Mundi* in New York City in 2013.  *See* Am. Compl. ¶ 168.

o.  The communications, including the emails and their attachments, between Ms. Bersheda and (i) Mr. Bouvier (and persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Paul Gauguin's *Otahi (Alone)* in or around October 2014 to February 2015.  *See* Am. Compl. ¶¶ 189-193.

p.  The communications between Ms. Bersheda and Mr. Bouvier (or persons working with or on behalf of Mr. Bouvier), dated January 23-24, 2015 and

February 13, 2015, regarding Plaintiffs' or their representatives' (including Mr. Rybolovlev's) efforts to obtain valuations for the art masterwork, Leonardo da Vinci's *Christ as Salvator Mundi*.

q.  The communications between Ms. Bersheda and C2L Expertises, dated February 2013 and May 2013, regarding Plaintiffs' or their representatives' (including Mr. Rybolovlev's) efforts to obtain valuations and/or appraisals for the art masterworks that Plaintiffs purchased from Mr. Bouvier.

r.  The communications between Ms. Bersheda and Mr. Bouvier, dated December 2014 and February 2015, discussing or attaching a potential escrow agreement relating to the contemplated sale of an apartment and certain of the artworks at issue in this case.

s.  The communications, dated December 2014, between Ms. Bersheda, Mr. Bouvier, and Mr. Yuri Bogdanov regarding Mr. Rybolovlev's cash flow and/or liquidity difficulties.

t.  The communications between Ms. Bersheda and (i) Mr. Bouvier (or persons working with or on behalf of Mr. Bouvier), or (ii) other third parties regarding Plaintiffs' or their representatives' (including Mr. Rybolovlev's) efforts to obtain loans from financial institutions, in Singapore or elsewhere, using one or more of the art masterworks Plaintiffs acquired through Mr. Bouvier as collateral, including the actual or attempted use of any Sotheby's valuations in connection with those efforts.  *See* Plaintiffs' Interrogatory Responses at 6 [Exhibit 3].

u.  The communications between Ms. Bersheda and any financial institution, in Singapore or elsewhere, regarding Plaintiffs' efforts to obtain loans using one or

more of the art masterworks that Plaintiffs acquired through Mr. Bouvier as collateral, including the actual or attempted use of any Sotheby's valuations in connection with those efforts. *See* Plaintiffs' Responses to Interrogatories at 6 [Exhibit 3].

v. The communications and documents concerning the Privileged Materials, including all documents that incorporate, reference, or summarize information obtained from the Privileged Materials. Exhibit 4 shows that Ms. Bersheda had in her possession the Privileged Materials since at least October 21, 2016.

w. The communications between Ms. Bersheda and James Gallon, including communications concerning the Privileged Materials.

x. The communications between Ms. Bersheda and Brian Cattell, including communications concerning the Privileged Materials. *See* Sotheby's Letter-Motion at Ex. A [Exhibit 4].

y. The communications between Ms. Bersheda and Sergey Chernitsyn, including communications concerning the Privileged Materials. *See id.*

**10. Any Requirement That the Evidence be Given on Oath or Affirmation and Any Special Form to be Used:**

This Court respectfully requests that Ms. Bersheda testify under oath or affirmation, that the witness be duly sworn in accordance with the applicable procedures of England, that the testimony be transcribed by a qualified court reporter to be selected by the legal representative of Sotheby's, and that a videographic record be taken of the deposition.

**11. Special Methods or Procedure to be Followed:**

The following is respectfully requested:

a.      That Sotheby's representatives be permitted to attend the deposition and be appointed by the English Court to conduct the deposition (*i.e.*, examine the witness on the topics listed in Appendix A) while an English barrister is present in a supervisory role;

b.      That the other parties to the litigation be permitted to attend the deposition and examine the witness on the topics listed in Appendix A;

c.      That Ms. Bersheda be permitted to be represented by her own counsel at her own expense at the deposition should she wish to do so and that she not be required to give evidence that is privileged against disclosure under the laws of either the United States or England;

d.      That the deposition be taken under the Federal Rules of Civil Procedure of the United States of America ("FRCP"), except to the extent such procedure is incompatible with the law of England;

e.      That the testimony be recorded verbatim by stenographic and videographic means in English, that a stenographer and videographer licensed in the United Kingdom be permitted to attend the deposition in order to record the testimony, and that the parties' representatives be provided with a copy of the transcript and recording;

f.      That there be excluded from the deposition, if permitted under the law of England, all persons other than the attorney conducting the examination of Ms. Bersheda, the attorneys for the parties, the English barrister (referred to in (a) above), the stenographer and videographer, and other officials of the court of England normally present during such proceedings;

g.      That the examination be conducted orally;

h.     That the deposition be allowed to continue until completed, except that the deposition shall not exceed a total of seven hours per day, and shall not exceed a total of fourteen hours;

i.     That Ms. Bersheda be permitted to produce the documents and deposition testimony to the parties to the litigation and certify to the court that she has done so, in place of filing at court;

j.     That Sotheby's be permitted to produce the documents and deposition testimony to the parties to the litigation; and

k.     That the documents of which production is sought be produced by Ms. Bersheda at least forty-five days prior to the date of Ms. Bersheda's deposition, and that copies be provided to:

> Counsel for Defendants:
> Marcus A. Asner
> Sara L. Shudofsky
> Arnold & Porter Kaye Scholer LLP
> 250 West 55th Street
> New York, New York 10019
> Email: Marcus.Asner@arnoldporter.com
> Email: Sara.Shudofsky@arnoldporter.com
> Tel: +1 212 836 7222
>
> Jane Wessel
> Arnold & Porter Kaye Scholer (UK) LLP
> Tower 42
> 25 Old Broad Street
> London EC2N 1HQ
> United Kingdom
> Email: Jane.Wessel@arnoldporter.com
> Tel: +44 (0)20 7786 6260
>
> Counsel for Plaintiffs:
> Daniel Kornstein
> Emery Celli Brinckerhoff & Abady LLP
> 600 Fifth Avenue, 10th Floor
> New York, New York 10020
> Email: dkornstein@ecbalaw.com
> Tel: +1 212 763 5000

**12. Request for Notification of the Time and Place of Execution of the Request and Identity and Address of Any Person to be Notified:**

It is requested that the deposition be taken as soon as can practicably be arranged. It is requested that the deposition be conducted at the London office of Arnold & Porter, or at a location mutually agreed upon by the parties and the witness, and that the witness and the counsel listed below be notified of the date, time, and place of the deposition as soon as convenient. If possible, it is requested that notice be furnished to the witness and counsel at least thirty days prior to the deposition.

> Counsel for Defendants:
> Marcus A. Asner
> Sara L. Shudofsky
> Arnold & Porter Kaye Scholer LLP
> 250 West 55th Street
> New York, New York 10019
> Email: Marcus.Asner@arnoldporter.com
> Email: Sara.Shudofsky@arnoldporter.com
> Tel: +1 212 836 7222
>
> Jane Wessel
> Arnold & Porter Kaye Scholer (UK) LLP
> Tower 42
> 25 Old Broad Street
> London EC2N 1HQ
> United Kingdom
> Email: Jane.Wessel@arnoldporter.com
> Tel: +44 (0)20 7786 6260
>
> Counsel for Plaintiffs:
> Daniel Kornstein
> Emery Celli Brinckerhoff & Abady LLP
> 600 Fifth Avenue, 10th Floor
> New York, New York 10020
> Email: dkornstein@ecbalaw.com
> Tel: +1 212 763 5000

**13. Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request:**

No attendance of United States judicial personnel is requested.

**14. Specification of Privilege or Duty to Refuse to Give Evidence Under the Law of the United States:**

The witness may refuse to give evidence only insofar as she has a privilege or duty to refuse to give evidence under the laws of the United States or the laws of England.

The parties to the U.S. Action have agreed, and this Court has ordered, that any confidential material produced or disclosed by the parties or any third parties will be kept confidential, according to the Local Rules of the Court and/or any protective order entered in the case.

**15. Fees and Costs:**

The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Convention shall be borne by Sotheby's.

**16. Specification of the Date by which the Requesting Authority Requires Receipt of the Response to the Letter of Request:**

The Requesting Authority requests that the deposition take place as soon as practicable after the Requested State receives this Letter of Request, and that the requested documents be produced at least forty-five days prior to the date of the deposition. Expedient treatment of this Letter of Request will allow the parties and the witness to arrange a mutually agreeable date for testimony and avoid disruption to the witness's business or personal plans.

**17. Signature and Seal of the Requesting Authority:**

This Court expresses its appreciation for the assistance and courtesy of the courts of the United Kingdom in this matter, and states that it shall be ready and willing to assist the courts of the United Kingdom in a similar manner when required.

Dated: ___January 3___ , 2020
      New York, New York

Respectfully Submitted,

By: _____
HON. JESSE M. FURMAN
UNITED STATES DISTRICT JUDGE
United States District Court for the
Southern District of New York

**SEAL OF THE COURT**

# Appendix A
# Topics for Oral Testimony

I.     **Background Information**

     A.     **Description:**  General background information.

     B.     **Topics:**

          1.     Name.

          2.     Residence(s).

          3.     Education.

          4.     Professional background and experience.

          5.     Employment.

II.     **Work on Behalf of Plaintiffs and Mr. Rybolovlev in Connection with Artworks at Issue in U.S. Action**

     A.     **Description:** As part of the exchange of information in the U.S. Action, Plaintiffs have represented to Sotheby's that Ms. Bersheda communicated with Mr. Bouvier on Plaintiffs' and Mr. Rybolovlev's behalf regarding the artworks at issue in the U.S. Action, including with respect to valuations Plaintiffs obtained or attempted to obtain from Mr. Bouvier (and which Mr. Bouvier thereafter sought from Sotheby's). *See* Plaintiffs' Responses to Interrogatories at 5-6 [Exhibit 3]. More generally, Plaintiffs have stated that Ms. Bersheda has knowledge and information concerning the allegations in the Amended Complaint. *See id.* at 4. They also have stated that Ms. Bersheda has knowledge and information regarding Plaintiffs' (including Mr. Rybolovlev's) alleged suspicion and discovery that Mr. Bouvier defrauded them. *See id.* at 7.

     B.     **Topics:**

          1.     The nature of Plaintiffs' (and their representatives') relationship with Mr. Bouvier. *See, e.g.*, Am. Compl. ¶¶ 13-19 [Exhibit 1]; Plaintiffs' Responses to Interrogatories at 5 [Exhibit 3].

          2.     Communications with Mr. Bouvier (and his representatives) regarding the artworks at issue in the U.S. Action. *See, e.g.*, Plaintiffs' Responses to Interrogatories at 5 [Exhibit 3].

          3.     Valuations Plaintiffs obtained or attempted to obtain from Mr. Bouvier or other persons or entities for the artworks at issue in the U.S. Action. *See, e.g.*, Plaintiffs' Responses to Interrogatories at 6 [Exhibit 3].

4. Communications with financial institutions regarding the artworks at issue in the U.S. Action. *See, e.g.*, Plaintiffs' Responses to Interrogatories at 5-6 [Exhibit 3].

5. Plaintiffs' (including Mr. Rybolovlev's) discovery of the alleged fraud by Mr. Bouvier. *See, e.g.*, Plaintiffs' Responses to Interrogatories at 7 [Exhibit 3].

## III. Receipt and Use of Privileged Materials

A. **Description:** As set forth in Exhibit 4, since at least as early as October 21, 2016, Ms. Bersheda has possessed and made use of Sotheby's Privileged Materials. On that day, a representative of Plaintiffs, Ms. Fedele, sent copies of the Privileged Materials—apparently at Ms. Bersheda's direction—to Brian Cattell and Sergey Chernitsyn, along with Ms. Bersheda. Plaintiffs have represented to Sotheby's that Ms. Bersheda has knowledge and information concerning Plaintiffs' receipt, transmittal, review, and/or use of Sotheby's Privileged Materials. *See* Plaintiffs' Responses to Interrogatories at 7 [Exhibit 3].

B. **Topics:**

1. How the Privileged Materials were obtained. *See id.*

2. Review and use of the Privileged Materials. *See id.*

3. Transmittal of the Privileged Materials. *See id.*

4. Communications regarding the Privileged Materials. *See id.*