## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ACCENT DELIGHT INTERNATIONAL LTD.
and XITRANS FINANCE LTD.,

Plaintiffs,

v.

SOTHEBY'S and SOTHEBY'S, INC.,

Defendants.

No. 1:18-cv-09011-JMF-RWL

## LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
## PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON
## THE TAKING OF EVIDENCE ABROAD IN CIVIL MATTERS
## TO OBTAIN EVIDENCE FROM YVES CHARLES EDGAR BOUVIER

In conformity with Articles 1 and 3 of the Hague Convention of 18 March 1970 on the

Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), the United

States District Court for the Southern District of New York respectfully requests international

judicial assistance from the Supreme Court of the Republic of Singapore to obtain evidence from

Yves Charles Edgar Bouvier ("Mr. Bouvier") for use in the above-captioned civil proceeding

currently pending before this Court (the "U.S. Action" or "Action").  The evidence is sought by

Defendants in the Action, Sotheby's and Sotheby's, Inc. (together, "Sotheby's").  As set forth

below, Mr. Bouvier is a critical fact witness whose evidence is relevant to Plaintiffs' allegations

in this Action and Sotheby's defenses thereto.

The U.S. Action is a civil proceeding in which Plaintiffs allege that Sotheby's aided and

abetted an alleged fraud and breach of fiduciary duty committed by Mr. Bouvier, an art dealer,

against Plaintiffs.  Mr. Bouvier therefore has documents and first-hand knowledge regarding at

least two critical elements of Plaintiffs' claims against Sotheby's.  *First*, Plaintiffs must prove that

Mr. Bouvier committed the alleged underlying fraud and breach of fiduciary duty. Mr. Bouvier has direct knowledge of his relationship with Plaintiffs and of the entire course of conduct between them, including their communications, interactions, agreements, understandings, and disputes, all of which are relevant to proving or disproving the underlying fraud or breach of fiduciary duty. *Second*, even if Plaintiffs establish that Mr. Bouvier committed fraud or breached his fiduciary duty, they must then establish that Sotheby's aided and abetted that fraud or breach. This claim requires Plaintiffs to prove that Sotheby's acted with the requisite mental state regarding Mr. Bouvier's alleged fraud or breach of fiduciary duty. Given that neither Dmitry Rybolovlev ("Mr. Rybolovlev"), Plaintiffs' principal, nor any other representative of Plaintiffs ever communicated with Sotheby's regarding the artworks in question, a fact Plaintiffs do not dispute, the only possible basis for Sotheby's alleged awareness of Mr. Bouvier's relationship and dealings with Plaintiffs is what Sotheby's purportedly learned from Mr. Bouvier. Sotheby's denies that it had any knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations regarding their relationship with Mr. Bouvier or any alleged defrauding of Plaintiffs by Mr. Bouvier, including what Mr. Bouvier allegedly charged Plaintiffs for any of the artworks at issue. Accordingly, it is critical to Sotheby's defenses in this case to obtain Mr. Bouvier's testimony and documents as to these subject matter areas.

The assistance requested is for the appropriate judicial authority of Singapore to compel the appearance of Mr. Bouvier to produce documents and give oral testimony relevant to the claims and defenses in the Action. The evidence is intended for use at trial.

1. **Sender/Requesting Judicial Authority:**

   The Honorable Jesse M. Furman
   United States District Court for the Southern District of New York
   40 Centre Street, Room 2202
   New York, New York 10007
   United States of America

**2.      Central Authority of the Requested State:**

Registrar of the Supreme Court
Supreme Court of Singapore
1 Supreme Court Lane
Singapore 178879

**3.      Persons to whom the executed request is to be returned:**

Marcus A. Asner
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
United States of America
Email: Marcus.Asner@arnoldporter.com
Tel: +1 212 836 7222
Fax: +1 212 836 8689

**4.      Names and Addresses of the Parties and Their Representatives:**

**a.    Plaintiffs:**

Accent Delight International Ltd.
Jipfa Building, 3rd Floor
142 Main Street
Road Town, Tortola
British Virgin Islands

Xitrans Finance Ltd.
Akara Building
24 De Castro Street
Wickhams Cay 1
Road Town
Tortola
British Virgin Islands

Counsel for Plaintiffs:
Daniel Kornstein
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Email: dkornstein@ecbalaw.com
Tel: +1 212 763 5000

Gerui Lim
Drew & Napier

10 Collyer Quay
10th Floor
Ocean Financial Centre
Singapore 049315
Email: gerui.lim@drewnapier.com
Tel: +65 6531 4120

**b.  Defendants:**

Sotheby's
1334 York Avenue
New York, New York 10021
United States of America

Sotheby's, Inc.
1334 York Avenue
New York, New York 10021
United States of America

<u>Counsel for Defendants:</u>
Marcus A. Asner
Sara L. Shudofsky
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Email: Marcus.Asner@arnoldporter.com
Email: Sara.Shudofsky@arnoldporter.com
Tel: +1 212 836 7222

Herman Jeremiah
Toh Cher Han
Dentons Rodyk & Davidson LLP
80 Raffles Place, #33-00 UOB Plaza 1
Singapore 048624
Email: herman.jeremiah@dentons.com
Email: cherhan.toh@dentons.com
Tel: +65 6885 3614 / +65 6885 2957

**5.  Nature of the Proceedings and Summary of the Facts:**

The U.S. Action is a civil lawsuit in which Plaintiffs allege that Sotheby's aided and abetted

Mr. Bouvier's purported fraud and breach of fiduciary duty, and breached its contractual

obligations to Plaintiffs.  A copy of the Amended Complaint ("Am. Compl.") and Sotheby's

Answer ("Sotheby's Answer") in the U.S. Action are attached hereto as Exhibits 1 and 2.  The

4

Central Authority of Singapore, the Supreme Court of Singapore, already has some familiarity with the relevant facts, as it previously adjudicated a matter arising from the same underlying dispute between Mr. Bouvier and Mr. Rybolovlev. *See Rappo v. Accent Delight Int'l Ltd.*, [2017] SGCA 27.

Plaintiffs' action arises from a longstanding dispute between Mr. Rybolovlev, a Russian oligarch, and an art dealer, Mr. Bouvier. Plaintiffs are companies incorporated in the British Virgin Islands; they are owned by trusts settled by and for the benefit of members of the family of Mr. Rybolovlev. Mr. Rybolovlev is Plaintiffs' principal. Plaintiffs allege that Mr. Bouvier defrauded them of over one billion dollars when he served as their art advisor. According to Plaintiffs, Plaintiffs and Mr. Bouvier agreed that Mr. Bouvier would act as Plaintiffs' agent to acquire art masterworks on their behalf. Mr. Bouvier allegedly purchased 38 art masterworks from various private sellers, resold the works to Plaintiffs at markups as high as 145%, and pocketed the difference for himself. Plaintiffs assert that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to 14 of the art masterworks; Mr. Bouvier acquired 12 of those 14 art masterworks from third parties in private sales facilitated by Sotheby's entities before he sold them to Plaintiffs. Finally, Plaintiffs allege that Sotheby's breached a Tolling Agreement with Plaintiffs when Sotheby's filed a declaratory judgment action in Switzerland in 2017.

In their response to Sotheby's interrogatories in this case, Plaintiffs have identified Mr. Bouvier as having: (i) "knowledge or information concerning . . . the allegations in the Complaint"; (ii) "knowledge or information concerning any transaction involving one or more of the [artworks at issue]"; (iii) "knowledge or information concerning the alleged agency or fiduciary relationship between [Plaintiffs] and [Mr.] Bouvier"; and (iv) "knowledge of any valuation that [Plaintiffs]

obtained or attempted to obtain from [Mr.] Bouvier" concerning the artworks at issue.  *See* Plaintiffs' Responses and Objections to Sotheby's First Set of Interrogatories at 4-7, attached hereto as Exhibit 3 ("Plaintiffs' Responses to Interrogatories").[1]

Plaintiffs do not dispute that Mr. Bouvier communicated directly with Plaintiffs' representatives regarding the art masterworks at issue in the U.S. Action, including with respect to Plaintiffs' purchase of those works and their requests for valuations of some of those works.  Nor do they dispute that Plaintiffs never communicated with Sotheby's regarding any of the art masterworks at issue.   Further, Sotheby's contends that Mr. Bouvier helped facilitate communications with various financial institutions, including financial institutions in Singapore, in an effort to obtain credit, loans, or financing on Plaintiffs' and Mr. Rybolovlev's behalf using the artworks as collateral.  In short, Mr. Bouvier is in unique possession of information regarding all of his interactions with Plaintiffs and Mr. Rybolovlev, and regarding all of his interactions on their behalf and at their direction with third parties, on issues that are critical to the claims and defenses in the U.S. Action.

6.      **Evidence to be Obtained and Purpose:**

a.    **Evidence to be Obtained:**

Sotheby's seeks oral testimony and documents from Mr. Bouvier for use at trial. Specifically, Mr. Bouvier, whose alleged fraud and breach of fiduciary duty are at the heart of Plaintiffs' allegations against Sotheby's, is in unique possession of evidence relevant to those allegations and Sotheby's defenses thereto.  Appendix A sets forth the topics of oral testimony sought from Mr. Bouvier.

---

[1]   Pursuant to the Protective Order in the U.S. Action, Plaintiffs have designated as "CONFIDENTIAL MATERIAL" certain portions of Plaintiffs' Responses to Interrogatories.  Those portions have been redacted from Exhibit 3 and are not being relied upon in connection with this Letter of Request.

**b.    The Evidence Is Sought for Use at Trial:**

This Court understands that the powers of the High Court of Singapore to assist this Court's efforts to obtain evidence in Singapore are listed in Section 4 of the Evidence (Civil Proceedings in Other Jurisdictions) Act (Cap. 98, 2013 Rev Ed).  It also understands that the Supreme Court of Singapore comprises the Court of Appeal and the High Court.  It is also familiar with Singapore's Declarations and Reservations regarding the Hague Convention.  This Court finds that the evidence requested, consisting of testimony and specified documents, is not being sought for mere pre-trial discovery, but rather is being sought to be used as proof in the actual trial in these proceedings.

**c.    Purpose of the Evidence Sought:**

Mr. Bouvier is a critical fact witness in the U.S. Action.  Mr. Bouvier's relationship and interactions with Plaintiffs and Sotheby's, respectively, are at the heart of Plaintiffs' U.S. Action against Sotheby's.  Mr. Bouvier is in unique possession of critical evidence that bears on the essential elements of Plaintiffs' claims and Sotheby's defenses to those claims.

*First*, a threshold element of Plaintiffs' claims against Sotheby's of aiding and abetting fraud and aiding and abetting a breach of fiduciary duty is proof of the alleged underlying fraud and breach of fiduciary duty by Mr. Bouvier.  *See* Sotheby's Answer at 50-51 [Exhibit 2].  Mr. Bouvier's testimony and documents are critical to proving or disproving whether Mr. Bouvier committed fraud or breached his alleged fiduciary duty to Plaintiffs, including whether Mr. Bouvier even owed Plaintiffs any fiduciary duty.

*Second*, even if Plaintiffs can prove Mr. Bouvier's alleged fraud and breach of fiduciary duty, Plaintiffs must show that Sotheby's acted with the requisite mental state regarding that fraud and breach of fiduciary duty to succeed on the merits of their aiding and abetting claims.  Plaintiffs allege that Sotheby's knew "the fraudulently inflated prices [Mr. Bouvier] charged to Plaintiffs,"

Am. Compl. ¶ 27 [Exhibit 1], but Plaintiffs have not alleged how Sotheby's purportedly came to know this information. Plaintiffs have not alleged that they had any direct communications with Sotheby's or that Sotheby's was otherwise involved in the sales transactions between Mr. Bouvier (or his affiliated entities) and Plaintiffs. Further, Sotheby's denies that it had any knowledge of Mr. Bouvier's relationship with Plaintiffs or about what Mr. Bouvier allegedly charged Plaintiffs for any of the artworks at issue. Accordingly, it is critical to Sotheby's defenses in this case to obtain Mr. Bouvier's testimony and documents regarding whether he ever told Sotheby's anything about Plaintiffs, including whether he told Sotheby's anything about (i) the identity of Plaintiffs, Plaintiffs' principal, or Plaintiffs' representatives; (ii) the relationship between Mr. Bouvier and Plaintiffs; or (iii) the prices Plaintiffs paid for any artworks that Mr. Bouvier previously had acquired in a transaction facilitated by Sotheby's.

*Third*, a central allegation of Plaintiffs' case is that Sotheby's provided valuations of some of the works to Mr. Bouvier, which according to Plaintiffs were intended by Sotheby's to be passed along by Mr. Bouvier to Plaintiffs to justify the higher prices Mr. Bouvier charged Plaintiffs for those works. *See, e.g.*, Am. Compl. ¶ 4 [Exhibit 1]. Sotheby's denies those allegations and asserts that it did not know what Mr. Bouvier planned to do with any work of art he acquired in a transaction brokered by Sotheby's and did not know the price that Mr. Bouvier planned to later charge for any work of art, if he did decide to re-sell it. Further, Sotheby's contends—based on information learned long after the events at issue in the Amended Complaint—that Mr. Bouvier sought the valuations from Sotheby's at Plaintiffs' request because, among other reasons, Plaintiffs wanted to use the valuations to secure loans from one or more financial institutions in Singapore, using one or more of the works as collateral. If, in fact, it was Plaintiffs—and not Mr. Bouvier— who wanted these valuations, then Sotheby's provision of the valuations to Mr. Bouvier cannot

have aided and abetted any alleged fraud of Plaintiffs or breach of a fiduciary duty to them. Plaintiffs have acknowledged that Mr. Bouvier has knowledge concerning valuations that Plaintiffs obtained or attempted to obtain from Mr. Bouvier. *See* Plaintiffs' Responses to Interrogatories at 6 [Exhibit 3].

While Sotheby's also intends to obtain documents and testimony from Mr. Rybolovlev, Mr. Bouvier unquestionably sits at the heart of this dispute. Mr. Bouvier is in the best position to provide evidence of (1) whether an agency or fiduciary relationship existed between him and Plaintiffs, as Plaintiffs allege; (2) what representations Mr. Bouvier made to Plaintiffs about the prices and valuations of the art masterworks at issue, which is directly relevant to whether Plaintiffs can prove an underlying fraud or breach of fiduciary duty; and (3) what, if anything, Sotheby's was told about what Mr. Bouvier intended to do or did with any of the art masterworks after purchasing them, including whether he intended to or did resell any of them, the identity(ies) of any subsequent purchaser(s), and the prices paid by such purchaser(s).

**7.      Identity and Address of the Person to be Examined:**

Yves Charles Edgar Bouvier

████████████████████
████████████
Singapore 425303

**8.      Questions to be Put to the Person to be Examined or Statement of the Subject Matter About Which They Are to be Examined:**

It is requested that Mr. Bouvier be questioned by lawyers for Sotheby's with respect to the topics set forth in Appendix A.

**9.      Definitions:**

a.      For purposes of these requests, the term "**Plaintiffs**" encompasses and includes, without limitation, Mr. Rybolovlev (Plaintiffs' principal) and any other

representatives of Plaintiffs, including but not limited to Mikhail Sazonov, Yuri Bogdanov, and Tetiana Bersheda.

b. For purposes of these requests, the term "**Bouvier**" encompasses Mr. Bouvier, individually, and the following individuals or entities affiliated with, employed by, or owned or controlled by Mr. Bouvier: Jean-Marc Peretti, Tania Rappo, Arrow Fine Art L.L.C., Art Family Pte Ltd., Blancaflor Investments Ltd., The Eagle Overseas Co., Ltd., Kinsride Finance Ltd., and MEI Invest Ltd.

c. For purposes of these requests, the term "**Works**" means the following art masterworks, which Plaintiffs claim they purchased or acquired from Bouvier:

(i) Picasso's *Les Noces de Pierrette*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from The Eagle Overseas Co., an entity owned and/or controlled by Mr. Bouvier, in or about October 2004;

(ii) Modigliani's *Nu couché aux bras levés*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from Kinsride Finance Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2006;

(iii) Picasso's *Mousquetaire à la pipe*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about the period March to October 2006;

(iv) A gilded wood table with eight sheath pillars, published in the exhibition catalogue "From Versailles to Paris: The Fate of the Royal Collections,"

10

Paris, 1989, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about March 2007;

(v)     Carved and gilded wood furniture ornamented with flower vases, wreaths, and branches, similar to the work of Georges Jacob, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about July 2007;

(vi)    Modigliani's *Jeune fille blonde en buste*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about October 2007;

(vii)   Modigliani's *Madame Hébuterne aux épaules nues*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about December 2007;

(viii)  Modigliani's *Nu dolent*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about February 2008;

(ix)    Picasso's *La soeur de l'artiste*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans

Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2008;

(x) Degas's *Danseuse en rose*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2008;

(xi) Gauguin's *Te Fare (La Maison)*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about June 2008;

(xii) Modigliani's *Vénus (Nu debout, nu médicis)*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about July 2008;

(xiii) Rothko's No. 1 (Royal Red and Blue), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about August 2008;

(xiv) Monet's *Nymphéas (1897-1898)*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about September 2008;

(xv)    Monet's *Nymphéas (1914-1917)*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about September 2008;

(xvi)    Toulouse-Lautrec's *Le Baiser*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from Art Family Pte Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about December 2009;

(xvii)    Van Gogh's *Paysage avec un olivier* (Landscape with an Olive Tree), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about June 2010;

(xviii)    *Joueur de flûte et femme nue*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about October 2010;

(xix)    Renoir's *Jeunes filles au bord de l'eau*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about November 2010;

(xx)    El Greco's St. Sebastian, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd.

from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about December 2010;

(xxi) Picasso's *L'homme assis au verre*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2011;

(xxii) Maillol's *La Méditerranée* (bronze), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2011;

(xxiii) Rodin's *Le Baiser* (bronze), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2011;

(xxiv) Matisse's *Nu au Châle Vert* (Nude with a Green Shawl), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about June 2011;

(xxv) Rodin's *L'Éternel printemps*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about July 2011;

(xxvi) Giacometti's *Femme de Venise IX*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about October 2011;

(xxvii) Magritte's *Le Domaine d'Arnheim*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about December 2011;

(xxviii) Modigliani's *Nu couché au coussin bleu*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about January 2012;

(xxix) Rodin's *Eve*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about March 2012;

(xxx) El Greco's *Portrait of Madonna and the Child*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about March 2012;

(xxxi) Klimt's *Wasserschlangen II*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l

Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about September 2012;

(xxxii) Modigliani's *Tête*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about January 2013;

(xxxiii) Toulouse-Lautrec's *Au Lit: Le Baiser*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about February 2013;

(xxxiv) Picasso's *Tête de femme*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about March 2013;

(xxxv) Picasso's *Espagnole à l'éventail*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about March 2013;

(xxxvi) Leonardo da Vinci's *Christ as Salvator Mundi*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about May 2013;

(xxxvii)    Gaugin's *Otahi (Alone)*, which—based on facts alleged by

Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent

Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled

by Mr. Bouvier, in or about September 2013; and

(xxxviii)   Rothko's No. 6 (Violet, Green, and Red), which—based on facts

alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff

Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or

controlled by Mr. Bouvier, in or about July 2014.

**10.    Documents and Other Property to be Inspected:**

This Court requests that Mr. Bouvier produce the following documents (including electronic documents) which are in his possession, custody, or power.

a.    **Communications (Including Attachments) with Individuals Affiliated with Bouvier**

(i)    The communications (including attachments) between Bouvier and Tania

Rappo ("Ms. Rappo") regarding Ms. Rappo's alleged introduction of

Plaintiffs to Bouvier.  *See* Am. Compl. ¶¶ 13-14.

(ii)    The communications (including attachments) between Bouvier and Jean-

Marc Peretti ("Mr. Peretti") regarding the Works, including but not limited

to the text message allegedly sent from Mr. Bouvier to Mr. Peretti in or

about November or December 2014 in which Mr. Bouvier wrote:  "I am in

the shit.  He does not have cash and wants to place all Picasso and Rodin

for public sale. . . . We will talk about that tomorrow."  *See* Am. Compl.

¶ 180.

b.     **The Business Relationship Between Bouvier and Plaintiffs**

(i)     The communications (including attachments) between Bouvier and Plaintiffs regarding Tania Rappo.  *See* Am. Compl. ¶¶ 13-14.

(ii)     The documents (including written agreements) and communications (including attachments) evidencing the nature of the business relationship between Bouvier and Plaintiffs.  *See* Am. Compl. ¶ 14; *Rappo v. Accent Delight Int'l Ltd.*, [2017] SGCA 27, ¶¶ 15-19.

(iii)     The documents and communications (including attachments) regarding meetings with Plaintiffs, including but not limited to an alleged meeting in Paris on or about April 10, 2011, and an alleged meeting in New York City at 15 Central Park West in or about March 2013.  *See* Am. Compl. ¶¶ 168, 170-172, 188.

(iv)     The communications (including attachments) between Bouvier and Plaintiffs regarding Plaintiffs' efforts to obtain loans from financial institutions, in Singapore or elsewhere, using one or more of the Works as collateral, including the actual or attempted use of any Sotheby's valuations in connection with those efforts.  *See* Am. Compl. ¶¶ 75, 109, 134, 144, 183-84, 189-190.

(v)     The communications (including attachments) between Bouvier and Plaintiffs regarding Plaintiffs' decision to route Works purchased from Bouvier to Singapore following Mr. Rybolovlev's divorce.

c.     **Purchase and Sales Agreements Between Bouvier and Plaintiffs**

(i)     The written sales and purchase agreements governing Plaintiffs' first four transactions with Bouvier, the first of which was dated on or about July

26, 2003 and the last of which was dated on or about October 16, 2006. *See Rappo v. Accent Delight Int'l Ltd.*, [2017] SGCA 27, ¶ 18.

    (ii)    The invoices governing the remaining transactions between Plaintiffs and Bouvier. *See Rappo v. Accent Delight Int'l Ltd.*, [2017] SGCA 27, ¶ 19.

    (iii)    The communications (including attachments) Bouvier sent to or received from Mikhail Sazonov in or around October 2006 regarding the use of invoices instead of purchase agreements. *See Rappo v. Accent Delight Int'l Ltd.*, [2017] SGCA 27, ¶ 19.

**d.    Communications Between Bouvier and Plaintiffs Regarding the Works**

    (i)    The communications (including attachments) Bouvier sent to or received from Plaintiffs regarding the Works, including but not limited to those regarding valuations, appraisals, or insurance for the Works.

**e.    Documents Relating to Plaintiffs' Confrontation of and Claims Against Bouvier**

    (i)    The communications (including attachments) Bouvier sent to or received from Plaintiffs regarding Plaintiffs' alleged confrontation with Bouvier in or about November 2014, including but not limited to the communications regarding a March 2014 *New York Times* article concerning Leonardo da Vinci's *Christ as Salvator Mundi*. *See* Am. Compl. ¶¶ 177-179.

    (ii)    The documents (including affidavits, exhibits, and addenda thereto) filed, produced, or issued by any party, investigating or judicial authority, or tribunal in the criminal proceeding initiated by Plaintiffs against Bouvier in Monaco in or about January 2015, namely, Dossier n° JI n° Cab 1/15/04, PG n° 2015/000039. *See* Am. Compl. ¶¶ 20-21, 24.

(iii)    The scanned Sotheby's logos and the electronic signatures of Sotheby's UK employees Samuel Valette and Dr. Franka Haiderer that were on the USB flash drive in Mr. Bouvier's possession when he was arrested in Monaco in or about February 2015.  *See* Am. Compl. ¶ 24.

(iv)    The documents (including affidavits, exhibits, and addenda thereto) filed, produced, or issued by any party, investigating or judicial authority, or tribunal in the civil proceedings initiated by Plaintiffs against Bouvier in Singapore in or about March 2015, namely, (1) *Accent Delight Int'l Ltd. and Xitrans Finance Ltd. v. Bouvier, MEI Invest Ltd., and Rappo*, HC/S 236/2015 (High Court of the Republic of Singapore), and Civil Appeal No. 113 of 2016 (Court of Appeal of Singapore), and (2) *Bouvier and MEI Invest Ltd. v. Accent Delight Int'l Ltd. and Xitrans Finance Ltd.*, Civil Appeal Nos. 80 and 81 of 2015 (Court of Appeal of Singapore)  *See* Am. Compl. ¶ 22.

(v)    The documents (including affidavits, exhibits, and addenda thereto) filed, produced, or issued by any party, investigating or judicial authority, or tribunal in the criminal proceeding initiated by Plaintiffs against Bouvier in France in or about April 2015, namely, N° du Parquet 1506500856, N° Instruction 2211/15/23 (Tribunal de Grande Instance de Paris).  *See* Am. Compl. ¶¶ 20-21.

(vi)    The documents (including affidavits, exhibits, and addenda thereto) filed, produced, or issued by any party, investigating or judicial authority, or tribunal in the criminal proceeding initiated by Tania Rappo against Mr.

Rybolovlev and others in Monaco in or about June 2015, namely, n° CAB II/2015/0019.

(vii)   The documents (including affidavits, exhibits, and addenda thereto) filed, produced, or issued by any party, investigating or judicial authority, or tribunal  in the criminal proceeding initiated by Tania Rappo against Mr. Rybolovlev and Ms. Bersheda in Monaco in or about June 2015, namely, n° CAB II/2015/0020.

(viii)  The documents (including affidavits, exhibits, and addenda thereto) filed, produced, or issued by any party, investigating or judicial authority, or tribunal in the civil proceedings initiated by Plaintiffs against Bouvier in Hong Kong in or about August 2015, namely, *Accent Delight Int'l Ltd. and Xitrans Finance Ltd. v. Bouvier and MEI Invest Ltd.*, HCMP 573/2015.

(ix)    The documents (including affidavits, exhibits, and addenda thereto) filed, produced, or issued by any party, investigating or judicial authority, or tribunal in the criminal proceeding initiated by Plaintiffs against Bouvier in Switzerland in or about February 2018, namely, P/15776/2017.  *See* Am. Compl. ¶ 23.

(x)     The communications (including attachments) Bouvier sent to or received from Christie's regarding the purchase, acquisition, auction, valuation, or sale of any of the Works.  *See* Am. Compl. ¶ 144.

**11.     Any Requirement That the Evidence be Given on Oath or Affirmation and Any Special Form to be Used:**

This Court respectfully requests that Mr. Bouvier testify under oath or affirmation in accordance with the applicable procedures of Singapore, that the testimony be transcribed by a qualified court reporter to be selected by the legal representative of Sotheby's, and that a videographic record be taken of the deposition.

**12.     Special Methods or Procedure to be Followed:**

a.     In view of the international and commercial nature of the claims between the Plaintiffs and Sotheby's, and the fact that the evidence requested from Mr. Bouvier would be used at trial in the U.S. Action, this Court requests that the deposition be taken in the Singapore International Commercial Court division of the Singapore High Court, or otherwise as deemed appropriate by the Central Authority, and that the deposition be conducted under the Federal Rules of Civil Procedure of the United States of America ("FRCP"), except to the extent such procedure is incompatible with the law of Singapore.

b.     It is respectfully requested that each party's United States lawyers be permitted to attend and conduct the examination of the witness in accordance with the rules governing depositions under the FRCP.

c.     Mr. Bouvier shall be permitted to be represented by his own counsel at his own expense at the deposition should he wish to do so.  Mr. Bouvier shall not be required to give evidence that is privileged against disclosure under the laws of either the United States or Singapore.

d.  It is respectfully requested that the requested documents be produced by Mr.

Bouvier at least forty-five days prior to the date of Mr. Bouvier's deposition and

that copies be provided to:

Counsel for Defendants:
Marcus A. Asner
Sara L. Shudofsky
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Email: Marcus.Asner@arnoldporter.com
Email: Sara.Shudofsky@arnoldporter.com
Tel: +1 212 836 7222

Herman Jeremiah
Toh Cher Han
Dentons Rodyk & Davidson LLP
80 Raffles Place, #33-00 UOB Plaza 1
Singapore 048624
Email: herman.jeremiah@dentons.com
Email: cherhan.toh@dentons.com
Tel: +65 6885 3614 / +65 6885 2957

Counsel for Plaintiffs:
Daniel W. Kornstein
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Email: dkornstein@ecbalaw.com
Tel: +1 212 763 5000

Gerui Lim
Drew & Napier
10 Collyer Quay
10th Floor
Ocean Financial Centre
Singapore 049315
Email: gerui.lim@drewnapier.com
Tel: +65 6531 4120

e.     It is requested that the testimony of the witness be videotaped and recorded

       verbatim in English, and that a videographer and a stenographer be permitted to

       attend the deposition in order to record the testimony.

f.     This Court requests that the deposition be allowed to continue until completed,

       except that the deposition shall not exceed seven hours per day, and shall not

       exceed a total of fourteen hours.

**13.    Request for Notification of the Time and Place of Execution of the Request
        and Identity and Address of Any Person to be Notified:**

It is requested that the deposition be taken as soon as can practicably be arranged.  It is

requested that the deposition be conducted at a location mutually agreed upon by the parties and

the witness and that the witness and the counsel listed below be notified of the date, time, and

place of the deposition as soon as convenient.  If possible, it is requested that notice be furnished

to the witness and counsel at least thirty days prior to the deposition.

Counsel for Defendants:
Marcus A. Asner
Sara L. Shudofsky
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Email: Marcus.Asner@arnoldporter.com
Email: Sara.Shudofsky@arnoldporter.com
Tel: +1 212 836 7222

Herman Jeremiah
Toh Cher Han
Dentons Rodyk & Davidson LLP
80 Raffles Place, #33-00 UOB Plaza 1
Singapore 048624
Email: herman.jeremiah@dentons.com
Email: cherhan.toh@dentons.com
Tel: +65 6885 3614 / +65 6885 2957

Counsel for Plaintiffs:
Daniel Kornstein
Emery Celli Brinckerhoff & Abady LLP

600 Fifth Avenue, 10th Floor
New York, New York 10020
Email: dkornstein@ecbalaw.com
Tel: +1 212 763 5000

Gerui Lim
Drew & Napier
10 Collyer Quay
10th Floor
Ocean Financial Centre
Singapore 049315
Email: gerui.lim@drewnapier.com
Tel: +65 6531 4120

**14. Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request:**

No attendance of United States judicial personnel is requested.

**15. Specification of Privilege or Duty to Refuse to Give Evidence Under the Law of the United States:**

The witness may refuse to give evidence only insofar as he has a privilege or duty to refuse to give evidence under the laws of the United States or Singapore.

The parties to the U.S. Action have agreed, and this Court has ordered, that any confidential material produced or disclosed by the parties or any third parties will be kept confidential, according to the Local Rules of the Court and/or any protective order entered in the case.

**16. Fees and Costs:**

The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Convention (insofar as they are applicable under Singapore law) shall be borne by the parties in accordance with the laws of Singapore.

**17. Specification of the Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request:**

The Requesting Authority requests that the deposition take place as soon as practicable after the Requested State receives this Letter of Request, and that the requested documents be

produced at least forty-five days prior to the date of the deposition. Expedient treatment of this Letter of Request will allow the parties and the witness to arrange a mutually agreeable date for testimony and avoid disruption to the witness's business or personal plans.

**18. Signature and Seal of the Requesting Authority:**

This Court expresses its appreciation for the assistance and courtesy of the Courts of Singapore in this matter, and states that it shall be ready and willing to assist the Courts of Singapore in a similar manner when required.

Dated:  January 3 , 2020
    New York, New York

Respectfully Submitted,

By: _____
HON. JESSE M. FURMAN
UNITED STATES DISTRICT JUDGE
United States District Court for the
Southern District of New York

**SEAL OF THE COURT**

<u>**Appendix A**</u>
<u>**Topics for Oral Testimony**</u>

**1.      Background Information**

a.      **Description:**  General background information.

b.      **Topics:**

(i)      Name.

(ii)      Residence(s).

(iii)      Education.

(iv)      Professional background and experience.

(v)      Employment.

**2.      Alleged Business Relationship with Plaintiffs and Mr. Rybolovlev in Connection with Artworks at Issue in U.S. Action**

a.      **Description:** The U.S. Action is a civil proceeding in which Plaintiffs allege that Sotheby's aided and abetted an alleged fraud and breach of fiduciary duty committed by Mr. Bouvier, an art dealer, against Plaintiffs.  *See* Am. Compl. ¶ 1 [Exhibit 1].  As part of the exchange of information in the U.S. Action, Plaintiffs have represented to Sotheby's that Mr. Bouvier has (i) "knowledge or information concerning . . . the allegations in the Complaint"; (ii) "knowledge or information concerning any transaction involving one or more of the [artworks at issue]"; (iii) "knowledge or information concerning the alleged agency or fiduciary relationship between [Plaintiffs] and [Mr.] Bouvier"; and (iv) "knowledge of any valuation that [Plaintiffs] obtained or attempted to obtain from [Mr.] Bouvier" concerning the artworks at issue.  *See* Plaintiffs' Responses to Interrogatories at 4-7 [Exhibit 3].

b.      **Topics:**

(i)      Written or oral agreements entered into between Plaintiffs and Bouvier for the Works, including but not limited to commission agreements.

(ii)      The nature of Plaintiffs' relationship with Mr. Bouvier.

(iii)      Communications with Plaintiffs (and their representatives) regarding the Works.

(i)      Bouvier's business dealings with Sotheby's

(ii)      Bouvier's acquisitions and sales of the Works

(iv)    Valuations, appraisals, or insurance for the Works that Plaintiffs obtained or attempted to obtain from Mr. Bouvier or other persons or entities.

(v)    Plaintiffs' efforts to obtain loans from financial institutions, in Singapore or elsewhere, using one or more of the Works as collateral, including the actual or attempted use of any Sotheby's valuations in connection with those efforts.

(vi)    Communications with financial institutions regarding the Works.

(vii)    Plaintiffs' decision to route Works purchased from Bouvier to Singapore following Mr. Rybolovlev's divorce.

**3.    Plaintiffs' Allegations Regarding Tania Rappo**

a.    **Description:** Plaintiffs have alleged in the U.S. Action that Ms. Rappo introduced Plaintiffs to Mr. Bouvier. *See* Am. Compl. ¶¶ 13-14.

b.    **Topics:**

(i)    Mr. Bouvier's alleged introduction to Mr. Rybolovlev by Tania Rappo.

**4.    Alleged Business Relationship with Sotheby's and Sotheby's Affiliates**

a.    **Description:** The U.S. Action is a civil proceeding in which Plaintiffs allege that Sotheby's aided and abetted an alleged fraud and breach of fiduciary duty committed by Mr. Bouvier, an art dealer, against Plaintiffs. *See* Am. Compl. ¶ 1. Plaintiffs claim that Sotheby's (or its affiliates or employees) knew Bouvier was acting as Plaintiffs' agent, knew the prices Bouvier charged to Plaintiffs, and prepared emails and valuations for Bouvier knowing they would be forwarded to Plaintiffs. *See, e.g.*, Am. Compl. ¶¶ 27, 30, 37. Mr. Bouvier's primary contact was Mr. Valette, an employee of Sotheby's UK.

b.    **Topics:**

(i)    The nature of Mr. Bouvier's relationship with Mr. Valette.

(ii)    Bouvier's acquisition of 12 of the Works from private third parties in transactions facilitated by Sotheby's affiliates.

(iii)    The nature of Mr. Valette's relationship with Jean-Marc Peretti, whom Plaintiffs claim was Mr. Bouvier's "associate." *See* Am. Compl. ¶ 30.