UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                          :
ACCENT DELIGHT INTERNATIONAL LTD., et al.,     :
                                          :
                     Plaintiffs,       :
                                          :
                   -v-           :       18-CV-9011 (JMF)
                                        :
SOTHEBY's, et al.,                    :         <u>ORDER</u>
                                          :
                   Defendant.      :
                                          :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       The Court has received the attached correspondence, but because it is in French and is unaccompanied by an English translation, will take no further action in response to it.  If any party believes that further action is required, it shall file a letter seeking such relief no later than **December 4, 2020.**  Any such letter shall be accompanied by a certified English translation of the attached.

       SO ORDERED.

Dated: November 24, 2020
      New York, New York                     _____
                                       JESSE M. FURMAN
                               United States District Judge



République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

Genève, le 1er octobre 2020

CR/14/2020 2 COO XCR

Tribunal de première instance
Rue de l'Athénée 6-8
Case postale 3736
CH - 1211 GENEVE 3

R ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖  [A-PRIORITY]
R P371 89506 7 CH     Avis de réception
*LA POSTE*
Please scan - Signature required
Veuillez scanner - Remise contre
signature

UNITED STATES DISTRICT
COURT FOR THE SOUTHEM
DISTRICT NY
Honorable Jesse M. Furman
40 Centre Street, Room 2202
10007 New York NY
ÉTATS-UNIS

Réf :  **CR/14/2020** 2 COO XCR
à rappeler lors de toute communication

Votre réf : 1 :18-CV-09+011-JMF-RWL

Nous vous remettons ci-joint copie de l'ordonnance dans la cause mentionnée sous rubrique.

CIV_MEM_004
Recommandé accusé recept. A5
Tribunal de première instance - Tél : +41 22 327 66 30
zsz

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**



| |
|---|
| ACCENT DELIGHT INTERNATIONAL LTD. and XITRANS FINANCE LTD., |
| Plaintiffs, |
| v. |
| SOTHEBY'S and SOTHEBY'S, INC., |
| Defendants. |

No. 1:18-cv-09011-JMF-RWL

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**
**PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON**
**THE TAKING OF EVIDENCE ABROAD IN CIVIL MATTERS**
**TO OBTAIN EVIDENCE FROM JEAN-MARC PERETTI**

In conformity with Articles 1 and 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), the United States District Court for the Southern District of New York respectfully requests international judicial assistance to obtain evidence from Jean-Marc Peretti ("Mr. Peretti") for use in the above-captioned civil proceeding currently pending before this Court (the "U.S. Action" or "Action"). The assistance requested is for the appropriate judicial authority of Switzerland to compel the appearance of Mr. Peretti to produce documents and give oral testimony relevant to the claims and defenses in the Action.

1. **Sender/Requesting Judicial Authority:**

   The Honorable Jesse M. Furman
   United States District Court for the Southern District of New York
   40 Centre Street, Room 2202
   New York, New York 10007
   United States of America

2. **Central Authority of the Requested State:**

1

République et canton de Genève
**POUVOIR JUDICIAIRE**
**Tribunal civil**

**COPIE**

Tribunal de première instance
Rue de l'Athénée 6-8
Case postale 3736
1211 GENEVE 3

Réf : **CR/14/2020 - XCR - 2**

à rappeler lors de toute communication

## ORDONNANCE DU 29 SEPTEMBRE 2020

Rendue dans le cadre de l'entraide judiciaire internationale CR/14/2020 - 2

requise par la "UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT NY"

Vu la procédure, de nature commerciale, opposant ACCENT DELIGHT INTERNATIONAL LTD et XITRANS FINANCE LTD, parties demanderesses, à SOTHEBY'S et SOTHEBY'S, INC., parties défenderesses, par-devant le UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT NY (no. 1:18-CV09011-JMF-RWL).

Vu la demande d'entraide judiciaire formée par la Cour précitée le 3 janvier 2020.

Vu l'ordonnance d'exécution rendue le 5 juin 2020, non contestée et, partant, entrée en force.

Vu l'ordonnance du 13 août 2020, prolongeant le délai initialement imparti à Jean-Marc PERETTI pour la production des pièces sollicitées au 30 septembre 2020.

Vu la "requête commune de modification de l'ordonnance du 5 juin 2020" adressée le 24 août 2020 au Tribunal par les conseils des parties à la procédure new-yorkaise.

Vu le courrier adressé le 23 septembre 2020 au Tribunal par le conseil de Jean-Marc PERETTI, aux termes duquel il sollicite, notamment, un délai supplémentaire de deux mois pour la production des documents requis par ordonnance du 5 juin 2020.

Considérant qu'en matière civile ou commerciale, l'autorité judiciaire d'un Etat contractant peut, conformément aux dispositions de sa législation, demander par commission rogatoire à l'autorité compétente d'un autre Etat contractant de faire tout acte d'instruction, ainsi que d'autres actes judiciaires (art. 1, al. 1 CLaH70).

Que l'autorité judiciaire qui procède à l'exécution d'une commission rogatoire applique les lois de son pays en ce qui concerne les formes à suivre (article 9 al. 1 CLaH 70).

2

Considérant par ailleurs qu'en Suisse, l'article 160 al. 1 du Code de procédure civile (CPC) dispose que les parties et les tiers à une procédure sont tenus de collaborer à l'administration des preuves, notamment de produire les documents requis.

Qu'à teneur de l'article 144 al. 2 CPC, les délais fixés judiciairement peuvent être prolongés pour des motifs suffisants, lorsque la demande en est faite avant leur expiration.

Qu'un tiers, tel qu'une personne en mains de qui des pièces sont requises et auquel le Tribunal a imparti un délai, peut aussi en solliciter la prolongation pour des motifs importants (TAPPY, CR CPC, 2ème éd., Bâle 2019, n. 19 ad art. 144 CPC).

Qu'en l'espèce, vu le nombre de documents dont la production est requise en mains du témoin Jean-Marc PERETTI et le contexte particulier dans lequel s'inscrit le présent litige, notamment le fait que, selon les explications du témoin ses locaux tant professionnels que privés ont fait l'objet de perquisitions, ses ordinateurs ayant en particulier été saisis dans ce cadre, la prolongation requise par le tiers, sollicitée avant l'expiration du délai précédemment accordé, sera octroyée.

Qu'au surplus, les modalités de son audition seront réglées – dans la mesure où elles ne l'ont pas déjà été à teneur de l'ordonnance précitée du 5 juin 2020, entrée en force – par ordonnance lorsque Jean-Marc PERETTI sera convoqué par le présent Tribunal.

Que, dans l'intervalle, les conseils des parties seront expressément invités à ne pas plaider le dossier par téléphone auprès du greffe du Tribunal, procédé qui, nullement prévu par le Code de procédure civile, est dénué d'effets.

Considérant enfin que si le dispositif d'une décision est peu clair, contradictoire ou incomplet ou qu'il ne correspond pas à la motivation, le Tribunal procède, sur requête ou d'office, à l'interprétation ou à la rectification de la décision, la requête indiquant les passages contestés ou les modifications demandées (art. 334 al. 1 CPC).

Qu'il y a matière à interprétation non seulement quand le dispositif est contradictoire en lui-même, mais aussi quand le dispositif, apparemment univoque, entre en contradiction avec les motifs qui le sous-tendent (SCHWEIZER, CR CPC, 2ème éd., Bâle 2019, n. 7 ad art. 334 CPC; TF, arrêt du 13 septembre 2007, 4G_1/2007).

Qu'en revanche, il n'y a lieu à rectification qu'en lien avec une question tranchée par le juge qui serait exprimée de manière erronée dans le dispositif du jugement ("*Die Berichtigung kann sich nur auf eine vom Gericht bereits entschiedene Frage beziehen, die im Urteilsdispositiv fehlerhaft ausgedrückt wird*") (HERZOG, BSK ZPO, 3ème éd., Bâle 2017, n. 8 ad art. 334 CPC).

Qu'*a contrario*, les considérants du jugement ne peuvent être attaqués par la voie de la rectification, mais uniquement par les voies de recours usuelles (HERZOG, *op. cit.*, n. 8 ad art. 334 CPC et références citées).

Qu'en l'espèce, les parties sollicitent la "rectification" du chiffre 1p de l'ordonnance susvisée du 5 juin 2020, aux termes duquel il était ordonné à Jean-Marc PERETTI de produire:

"Les communications entre M. BOUVIER et M. PERETTI entre novembre et décembre 2014, dans lesquelles, conformément aux allégations des parties demanderesses, M. BOUVIER aurait écrit dans un texte adressé à M. PERETTI: "*Je suis dans l'embarras. Il*

3

*n'a pas d'argent et veut vendre tous les PICASSOs et les RODINs aux enchères publiques".*

Que, comme déjà relevé, dite ordonnance n'a pas été contestée et est entrée en force.

Qu'en tout état, son chiffre 1p ne comprenait aucune "erreur" au sens de l'article 334 CPC,

Que le Tribunal s'est contenté de retranscrire les termes de la traduction fournie par l'Autorité requérante, en précisant expressément qu'il s'agissait "d'allégations des parties demanderesses", en utilisant le temps du conditionnel et en mettant de surcroît la phrase concernée entre guillemets.

Qu'en l'absence d'erreur, il n'y pas matière à rectification, de sorte que les conseils des parties seront déboutés des fins de leur requête.

*   *   *

4

**Par ces motifs,**

**LE TRIBUNAL :**

1.   Prolonge au <u>vendredi 30 novembre 2020</u> le délai fixé à Jean-Marc PERETTI pour la production des documents visés dans l'ordonnance du 5 juin 2020.

2.   Rappelle que ces documents listés devront être fournis au Tribunal en triple exemplaire.

3.   Rejette la requête en rectification formée par les conseils des parties le 24 août 2020.

4.   Réserve la suite de la procédure à l'issue du délai ainsi prolongé.

Joëlle COTTIER
Juge

*Conformément aux articles 319 ss du Code de procédure civile (CPC), la présente décision peut faire l'objet d'un recours par devant la Cour de justice, Place du Bourg-de-Four, case postale 3108, 1211 Genève 3, dans les 10 jours qui suivent sa notification (art. 321 al. 2 CPC).*

La présente ordonnance est communiquée pour notification à Me Didier BOTTGE par le greffe le  30 SEP. 2020

Copie en est transmise à l'autorité requérante, ainsi qu'à Me Sandrine GIROUD, Me Aurélie CONRAD HARI et Me Saverio LEMBO

---

Tribunal de première instance





**COPIE**

**Bottge & Associés**
Avocats au barreau de Genève

Didier Bottge
Jamil Soussi
Romain Stampfli
Louise de La Baume

Madame Joëlle COTTIER
Juge
TRIBUNAL DE PREMIÈRE INSTANCE
Rue de l'Athénée 6-8
Case postale 3736
1211 Genève

Genève, le 23 septembre 2020

Concerne :     CR/14/2020 – XCR – 2
                M. Jean-Marc PERETTI

Madame la Juge,

Vous me savez intervenir en qualité de conseil de M. Jean-Marc PERETTI dans le cadre de la procédure notée en marge.

Référence est faite à votre ordonnance du 13 août 2020 impartissant à mon mandant un délai au 30 septembre 2020 pour produire les documents visés dans l'ordonnance du 5 juin 2020, ainsi qu'à la lettre qui vous a été réservée par les conseils des parties à la procédure américaine, datée du 13 août 2020.

A ce stade, le conseil soussigné – qui lit la presse – a compris que les sociétés demanderesses sont en mains du dénommé Dmitri RYBOLOVLEV dans le cadre de son conflit avec M. Yves BOUVIER.

M. Jean-Marc PERETTI, dans le cadre de l'exécution d'une commission rogatoire à Genève, en provenance du juge d'instruction de Monaco, a vu ses locaux professionnel et privé entièrement perquisitionnés, y compris la saisie de l'ensemble de ses ordinateurs. Il est dès lors particulièrement étrange qu'une requête porte sur des éléments qui sont déjà en mains de juridictions pénales auxquels les sociétés précitées ont eu accès.

Les entreprises SOTHEBY'S et SOTHEBYS'S, INC. ajoutent encore de l'incompréhension à la situation puisqu'elles possèdent nécessairement les communications et/ou documents relatifs aux œuvres qui furent traitées à travers elles et qui semblent être le sujet du litige dont elles sont l'objet de la part de M. Dmitri RYBOLOVLEV.

2

Pour ces simples motifs déjà, force est de constater que la commission rogatoire est purement chicanière et inutile et n'a probablement que pour seul objectif d'ouvrir ou d'étendre un dossier contre une personne qui a déjà été entendue, de manière exhaustive et sur la base de pièces saisies, par différentes autorités judiciaires, dans le cadre de procédures parfaitement connues de XITRANS FINANCE LTD et ACCENT DELIGHT INTERNATIONAL LTD.

Par ailleurs, mon mandant conteste fermement qu'une audition puisse avoir lieu selon les volontés invoquées par les conseils des parties à la procédure américaine.

En effet, un témoin est exhorté à dire la vérité, soit à ne pas mentir, et est rendu attentif aux conséquences pénales d'un faux témoignage au sens de l'article 307 CP. Cela étant, l'assermentation, assortie de peines très lourdes, n'est pas tolérée par notre Constitution (CR CPC-SCHWEIZER Philippe, art. 171 CPC N 2,3), de sorte que l'exception prévue par l'art. 9 al. 2 CLaH70 n'autorise aucunement l'audition de mon mandant sous serment.

Au surplus, et le cas échéant, il appartenait aux parties de contester l'ordonnance rendue le 5 juin 2020 par la voie du recours auprès de la Cour de justice.

En tout état de cause, je vous saurais gré de bien vouloir accorder <u>une prolongation de délai de deux mois</u> à M. Jean-Marc PERETTI pour qu'il puisse se déterminer sur des sujets juridiques que les parties requérantes s'appliquent à complexifier.

En effet, ce dernier doit, d'une part, encore procéder à des vérifications quant à l'existence des documents sollicités. D'autre part, dans le cas où le Tribunal devait réserver une suite favorable à la requête du 13 août 2020 des parties susmentionnées, il conviendra qu'il puisse se déterminer de manière complémentaire sur les arguments et bases légales de droit étranger (notamment américain) et supranationales invoquées d'une même voix par les parties au litige.

En tout état, le Tribunal ne saurait leur prêter main-forte, en dehors du strict cadre légal qui s'applique à l'exécution d'une commission rogatoire civile.

Vous remerciant par avance de donner à la présente la suite qu'elle comporte, je vous prie de croire, Madame la Juge, à l'assurance de ma parfaite considération.

Didier BOTTGE

CC : Me Sandrine GIROUD
Me Saverio LEMBO

# LALIVE

LALIVE SA
Rue de la Mairie 35
Case postale 6569
1211 Genève 6 - Suisse
T +41 58 105 2000
F +41 58 105 2060
www.lalive.law

Madame Joëlle Cottier
Présidente
Tribunal de première instance
Rue de l'Athénée 6-8
Case postale 3736
1211 Genève 3

Sandrine Giroud
Associée
sgiroud@lalive.law



**Par recommandé**



Genève, le 13 août 2020

**CR/14/2020 – Requête commune de modification de l'ordonnance du Tribunal de première instance du 5 juin 2020**

Madame la Présidente,

Vous nous savez représenter les intérêts de Xitrans Finance Ltd (« **Xitrans** ») et Accent Delight International Ltd (« **Accent** ») dans la procédure citée sous rubrique.

Nous nous référons à votre ordonnance du 5 juin 2020 (l'« **Ordonnance d'exécution** ») rendue à la suite de la requête d'entraide judiciaire internationale formée le 3 janvier 2020 par la *United States District Court for the Southern District NY* (l' « **Autorité requérante** ») sur la base de la Convention de La Haye du 18 mars 1970 sur l'obtention des preuves à l'étranger en matière civile ou commerciale (« **CLaH 70** ») en lien avec la procédure civile pendante par devers elle et opposant nos mandantes à Sotheby's et Sotheby's, INC. (les « **Parties à la procédure new-yorkaise** »).

Dans sa requête d'entraide, l'Autorité requérante a sollicité le Tribunal de première instance de mener l'audition de Jean-Marc Peretti selon une forme spéciale (art. 9 al. 2 CLaH 70), à savoir :

- recueillir le témoignage de Jean-Marc Peretti sous serment (art. 3 let. h CLaH 70) ;

- utiliser un sténographe agréé pour retranscrire *verbatim* son audition (art. 3 let. i CLaH 70) ; et

- procéder à un enregistrement vidéographique de l'audience (art. 3 let. i CLaH 70) (Ordonnance d'exécution, p. 5).

Le Tribunal de céans a refusé de donner suite à la demande d'utiliser un sténographe et à celle d'enregistrer vidéographiquement l'audience au motif qu'« *aux termes de l'article 176 al. 2 CPC, de telles mesures sont possibles, mais non obligatoires pour le juge* » (Ordonnance d'exécution, p. 6). Le Tribunal de céans ne s'est pour le surplus pas prononcé sur la demande de recueillir le témoignage de Jean-Marc Peretti sous serment.

Pour les motifs exposés ci-après, les Parties à la procédure new-yorkaise vous prient conjointement et respectueusement de bien vouloir :

- rectifier l'erreur de traduction au ch. 1p du dispositif de l'Ordonnance d'exécution (**section 1.1**) ;

- reconsidérer votre décision et procéder à l'audition de Jean-Marc Peretti selon les formes spéciales requises par l'Autorité requérante (**section 1.2**) ;

- autoriser la tenue de l'audition de Jean-Marc Peretti par vidéoconférence afin de permettre aux conseils américains des différentes parties d'assister à l'audition et d'y participer depuis les Etats-Unis compte tenu de la situation sanitaire prévalant et les restrictions de déplacement en résultant (**section 1.3**).

LALIVE

## 1  MOTIFS

### 1.1  Rectification de l'erreur de traduction figurant au ch. 1p de l'Ordonnance d'exécution

1  L'Ordonnance d'exécution ordonne à Jean-Marc Peretti de produire une série de documents d'ici au 21 août 2020, dont notamment :

> « *Les communications entre M. BOUVIER et M. PERETTI entre novembre et décembre 2014, dans lesquelles, conformément aux allégations des parties demanderesses, M. BOUVIER aurait écrit dans un texte adressé à M. PERETTI: "Je suis dans l'embarras. Il n'a pas d'argent et veut vendre tous les PICASSOs et les RODINs aux enchères publiques* » (mise en évidence ajoutée) (Ordonnance d'exécution, ch. 1p du dispositif).

2  Ce texte est en réalité une traduction française de la requête d'entraide judiciaire internationale rédigée en anglais et provient d'un message originairement rédigé en français qui a notamment été reproduit dans un Article de la Tribune de Genève du 25 novembre 2017 dont copie jointe. L'extrait correct de la citation est ainsi :

> « *Je suis dans la merde. Il n'a plus de cash et veut mettre en vente publique [les] Pic[asso] et Rodin. Il ne comprend pas pourquoi il est le seul à ne pas gagner avec œuvres […] en gros je suis mort et ferai mieux de disparaître.* » (mise en évidence ajoutée) (**Pièce 1**).

3  En raison des traductions successives (du français vers l'anglais, puis à nouveau vers le français), le texte original du message envoyé par Yves Bouvier à Jean-Marc Peretti a été légèrement altéré. Les Parties à la procédure new-yorkaise sollicitent dès lors respectueusement du Tribunal de céans que celui-ci corrige cette erreur de traduction dans son ordonnance afin de s'assurer que Jean-Marc Peretti produise bien les documents sollicités en lien avec cette déclaration.

### 1.2  Les formes spéciales requises pour l'audition de Jean-Marc Peretti

4  L'art. 9 al. 1 CLaH70 prévoit que « *l'autorité judiciaire qui procède à l'exécution d'une commission rogatoire applique les lois de son pays en ce qui concerne les*

3

LALIVE

---

*formes à suivre* ». En Suisse, il s'agit des lois d'organisation judiciaire cantonales et du Code de procédure civile[1].

5   En vertu de l'art. 9 al. 2 CLaH70, il est toutefois déféré à la demande de l'autorité requérante tendant à ce qu'il soit procédé suivant une forme spéciale, à moins que celle-ci ne soit incompatible avec la loi de l'État requis, ou que son application ne soit pas possible, soit en raison des usages judiciaires de l'État requis, soit de difficultés pratiques. Le juge de l'État requis doit ainsi, sur demande de l'autorité requérante, procéder selon une forme spéciale dans la mesure où celle-ci n'est pas contraire respectivement incompatible avec son droit[2].

6   Le Tribunal fédéral a eu l'occasion de confirmer cette interprétation de l'art. 9 al. 2 CLaH70 dans son ATF 142 III 116 : « [*l]es prescriptions spéciales de la CLaH 70 ont toutefois la priorité. **Ainsi, il doit être déféré à la demande de l'autorité requérante tendant à ce qu'il soit procédé suivant une forme spéciale, à moins que celle-ci ne soit incompatible avec la loi de l'État requis, ou que son application ne soit pas possible**, soit en raison des usages judiciaires de l'État requis, soit de difficultés pratiques* »[3] (mise en évidence ajoutée). En utilisant la formulation « *il doit être déféré* », le Tribunal fédéral a clairement indiqué qu'une demande spéciale de l'Autorité requérante ne doit pas être traitée de manière facultative (« *Kannvorschrift* ») mais doit obligatoirement être autorisée (« *Mussvorschrift* ») si aucune exception prévue par l'art. 9 al. 2 CLaH70 n'est réalisée.

7   La doctrine précise que les exceptions prévues par l'art. 9 al. 2 CLaH70 permettant au juge de suisse de ne pas procéder selon la forme spéciale requise doivent être interprétées de manière restrictive. Il y aurait en effet contrariété, respectivement incompatibilité, uniquement lorsque l'exécution de la demande violerait des dispositions impératives du droit de l'État requis relevant de son ordre public[4]. Il doit ainsi s'agir d'une vraie impossibilité et donc de difficultés

---

[1] Office fédéral de la justice, Entraide judiciaire internationale en matière civile, 3ème éd., 2013, Lignes directrices, p. 24.

[2] GAUTHEY/MARKUS, N 732.

[3] ATF 142 III 116, consid. 3.3.1.

[4] GAUTHEY/MARKUS, N 644 et références citées.

LALIVE

insurmontables d'ordre pratique ou relevant des « usages judiciaires » de l'Etat requis[5].

8   En l'espèce, les formes spéciales sollicitées par l'Etat requérant ne sauraient être refusées :

- Il ne peut être valablement argumenté qu'une **audition sous serment** soit incompatible avec le droit suisse. En effet, l'art. 11a al. 3 LDIP prévoit explicitement la possibilité de recevoir des déclarations sous serment selon les formes du droit étranger. Dans la mesure où une loi fédérale prévoit cette forme d'audition, elle ne peut être considérée comme incompatible avec le droit suisse. On ne voit en outre pas quelles difficultés insurmontables une telle audition pourrait présenter. La doctrine ne considère en tout état pas qu'une telle audition puisse présenter des « difficultés insurmontables »[6].

- Un **enregistrement audio et/ou vidéo d'une audition** ne saurait non plus relever de l'exception de l'art. 9 al. 2 CLaH70 puisque l'art. 176 al. 2 CPC prévoit expressément cette possibilité. La comptabilité avec la conception suisse du droit de la procédure civile de l'enregistrement (audio et/ou vidéo) de l'audition ou encore de l'établissement d'un **procès-verbal** *verbatim* semble d'ailleurs être unanimement acceptée en doctrine[7]. Elle est même désormais expressément prévue dans l'Ordonnance Covid-19 justice et droit procédural du 16 avril 2020 (art. 4 let. b).

9   L'Autorité requérante sollicite l'audition de Jean-Marc Peretti selon une forme spéciale (Ordonnance d'exécution, p. 6) à savoir en recueillant son témoignage sous serment, en présence d'un sténographe agréé pour retranscrire *verbatim* son audition et en procédant à un enregistrement vidéographique de celle-ci. Tel qu'exposé supra ch. 8, les modalités requises ne sont pas en contrariété avec le droit suisse, ni ne présentent des difficultés pratiques. Mener l'audition de Jean-Marc Peretti sous serment implique en effet seulement d'obtenir une déclaration de ce dernier avant de commencer son audition, en utilisant la formule « *Pursuant to 28 USC Section 1746, I declare under penalty of perjury under of*

---

[5] *Ibid.*, N 645.

[6] GAUTHEY/MARKUS, N 646 : « *Ne sont pas incompatibles avec le droit suisse respectivement ne devraient pas présenter des difficultés insurmontables : [...] la réception de déclaration par affirmation ou sous serment* ».

[7] GAUTHEY/MARKUS, N 646.

LALIVE

*the laws of the United States of America that the testimony I am about to give will be the truth, the whole truth, and nothing but the truth* ».

10   S'agissant de l'enregistrement vidéo de l'audition ainsi que sa transcription par un sténographe agréé, ces modalités ne présentent pas non plus de difficultés insurmontables. La présence d'un sténographe n'entrave pas le déroulement de l'audience et ne présente aucune difficulté technique. L'enregistrement vidéo non plus, ce d'autant que le Tribunal de première instance a récemment eu l'occasion, dans le cadre de la crise sanitaire actuelle, de procéder à un certain nombre d'audiences par vidéoconférence avec enregistrement. Le Tribunal de céans est ainsi équipé et l'enregistrement vidéo de l'audition ne présente donc aucune difficulté particulière.

11   A cela s'ajoute que les Parties à la procédure new-yorkaise s'accordent, en l'espèce, à ce que les frais liés à l'enregistrement vidéo ainsi qu'à la transcription par un sténographe agréé soient supportés à parts égales entre elles. L'éventuelle difficulté d'ordre budgétaire du Tribunal de céans ne peut dès lors pas représenter un obstacle à la demande de l'Autorité requérante.

12   Au vu de ce qui précède, il se justifie de faire droit à la demande de reconsidération des Parties à la procédure new-yorkaise et de procéder selon la forme spéciale requise par l'Autorité requérante, soit en receuillant le témoignage de Jean-Marc Peretti sous serment, en procédant à une transcription de l'audition par un sténographe agréé et en prenant un enregistrement vidéographique de l'audience.

### 1.3   La tenue de l'audience par vidéoconférence pour les conseils américains

13   L'Autorité requérante sollicite expressément dans sa requête d'entraide judiciaire (la « **Requête** ») que les conseils américains des Parties à la procédure new-yorkaise puissent participer à l'audition de Jean-Marc Peretti[8]. Ainsi, l'Autorité requérante demande expressément à ce que les avocats américains constitués dans la procédure new-yorkaise puissent se rendre à Genève et assister à l'audience[9].

---

[8] Requête, p. 8 : « *It is requested that Mr. Peretti be questioned by the Tribunal de première instance de Genève in the presence of the counsel of the parties* ».

[9] Requête, p. 13.

6

14   Indépendemment du sort qui sera réservé à l'enregistrement vidéo ainsi qu'à la transcription par un sténographe agréé de l'audition de Jean-Marc Peretti, les Parties à la procédure new-yorkaise sollicitent respectueusement du Tribunal de céans que celui-ci accepte, le cas échéant, de permettre aux conseils américains des différentes parties de participer à l'audition de Jean-Marc Peretti par vidéoconférence, au lieu de se rendre à Genève.

15   Cette manière de procéder permettrait à ces derniers d'éviter de voyager depuis les Etats-Unis, notamment tant que la crise sanitaire actuelle entrave toujours les déplacements, *a fortiori* transatlantiques. Elle est par ailleurs en ligne avec les mesures récemment mises en place par le Pouvoir judiciaire compte tenu de la siutation sanitaire prévalant.

## 2   CONCLUSIONS

Sotheby's, Sotheby's, INC., Accent et Xitrans requièrent respectueusement à ce que le Tribunal de première instance :

1. Annule le chiffre 1p de l'ordonnance du 5 juin 2020 rendue dans la cause CR/14/2020.

   **Cela fait**

2. Modifie le chiffre 1p de l'ordonnance du 5 juin 2020 comme suit : « Les communications entre M. BOUVIER et M. PERETTI entre novembre et décembre 2014, dans lesquelles, conformément aux allégations des parties demanderesses, M. BOUVIER aurait écrit dans un texte adressé à M. PERETTI: « *Je suis dans la merde. Il n'a plus de cash et veut mettre en vente publique [les] Pic[asso] et Rodin* » ~~Je suis dans l'embarras. Il n'a pas d'argent et veut vendre tous les PICASSOs et les RODINs aux enchères publiques »~~.

3. Dit que l'audition de Jean-Marc Peretti sera menée sous serment, en ce sens que ce dernier sera exhorté à déclarer avant son audition : « *Pursuant to 28 USC Section 1746, I declare under penalty of perjury under of the laws of the United States of America that the testimony I am about to give will be the truth, the whole truth, and nothing but the truth* ».

4. Dit que les conseils américains de Sotheby's, Sotheby's, INC., Accent et Xitrans pourront participer à l'audition de Jean-Marc Peretti par vidéoconférence.

LALIVE

5. Dit que le Tribunal de première instance procèdera à une transcription de l'audition de Jean-Marc Peretti par un sténographe agréé, ainsi qu'à un enregistrement vidéographique.

6. Donne acte à Sotheby's, Sotheby's, INC., Accent et Xitrans de ce qu'elles s'engagent à prendre en charge les frais relatifs aux modalités spéciales d'audition du témoin Jean-Marc Peretti telles que décrites supra ch. 4 et 5 ci-dessous à parts égales.

7. Dit que l'ordonnance du 5 juin 2020 est maintenue pour le surplus.

8. Dit que la présente ordonnance est rendue sans frais, subsidiairement que les frais de justice sont répartis à parts égales entre les parties.

9. Dit que chaque partie supporte ses propres dépens.

* * *

16  Les conseils suisses et américains de Sotheby's, Sotheby's, INC., Me Saverio Lembo, Me Aurélie Conrad Hari, Marcus A. Asner et Sara L. Shudofsky, ainsi que le conseil américain de Accent et Xitrans, Daniel Kornstein, contresignent la présente pour marquer l'accord de leurs mandants.

En vous remerciant de l'attention que vous porterez à la présente, nous vous prions de croire, Madame la Présidente, à nos sentiments respectueux.

Sandrine Giroud

**Annexe** : Bordereau de preuves

**Copie à** : Me Didier Bottge

LALIVE

Pour Sotheby's et Sotheby's, INC.

Aurélie Conrad Hari

Saverio Lembo

Marcus A. Asner

Sara L. Shudofsky

Pour Accent et Xitrans

Daniel Kornstein

9

**Tribunal de première instance**            13 août 2020
**Cause CR/14/2020**                  AO 1135

---



### BORDEREAU DE PREUVES

pour

**Xitrans Finance Ltd**, société avec siège à Akara Building, 24 De Castro Street, Wickhams Cay 1, Road Town, Tortola, Iles Vierges Britanniques ;

**Accent Delight International Ltd**, société avec siège à Jipfa Building, 3rd floor, 142 Main Street, Road Town, Tortola, Iles Vierges Britanniques.

Elisant domicile en l'Etude LALIVE SA, 35, rue de la Mairie, 1207 Genève, et comparant par Me Sandrine Giroud.

et

**Sotheby's**, société avec siège à 1334 New York Avenue, NY 10021, Etats-Unis d'Amérique ;

**Sotheby's, INC.**, société avec siège à 1334 New York Avenue, NY 10021, Etats-Unis d'Amérique.

Elisant domicile en l'Etude Bär & Karrer SA, Quai de la Poste 12, 1204 Genève, et comparant par Me Saverio Lembo et Me Aurélie Conrad Hari

\*\*\*

Pièce 1          Article de la Tribune de Genève, Le divorce du siècle hante l'affaire Bouvier, du 25 novembre 2017

9/11/2019                    Économie: Le divorce du siècle hante l'affaire Bouvier - Économie - tdg.ch            L A L I V E

                                                                                                                    Pièce 1

# Le divorce du siècle hante l'affaire Bouvier

**Économie** La séparation de l'oligarque Rybolovlev aurait joué un rôle clef dans la constitution de sa fabuleuse collection – et dans la fraude qui l'aurait entourée.



**25.11.2017**

Acheté 127 millions de dollars en 2013, le «Salvator Mundi», un Christ de la fin du XVe siècle attribué à Léonard de Vinci, est parti pour 450 millions de francs en salle de vente, chez Christie's à New York. Ce tableau est un des éléments du contentieux qui court depuis 2015 entre le roi des Ports francs, le marchand d'art genevois Yves Bouvier, et Dmitri Rybolovlev, l'ex-oligarque et président du club de football AS Monaco.
Image: AFP

Une enchère record sur un mystérieux Léonard de Vinci partant pour 450 millions de francs et voilà toute l'affaire tenant en haleine le monde de l'art qui repart. La revente de ce Salvator Mundi vient de permettre à son propriétaire, l'oligarque Dmitri Rybolovlev, de faire trois fois sa mise initiale. De quoi nuancer les accusations d'escroquerie proférées à l'encontre d'Yves Bouvier, son fournisseur de toiles attitré. Le grief? Il lui a fourni cette œuvre unique pour 127 millions de dollars le 10 avril 2013, alors qu'il venait de l'obtenir pour 80 millions auprès de ses anciens propriétaires. Mensonge et arnaque, accuse le camp de l'oligarque installé à Monaco. «Je retiens une marge de 40 millions sur un tableau, c'est le scandale; M. Rybolovlev gagne 320 millions sur la même œuvre, tout le monde applaudit», grince Yves Bouvier. Pour ses avocats, la cause est entendue, «il n'y a plus d'affaire Bouvier».

ADVERTISING

### «Si c'est immoral, alors c'est tout le commerce qui est immoral»

Contacté à Singapour, Yves Bouvier revient sur les circonstances dans lesquelles il a fourni l'oligarque en toiles de maîtres après le «divorce du siècle».

Le divorce de Dmitri Rybolovlev a marqué une rupture dans la constitution de sa collection. En avez-vous profité?
Non. En réalité, il a toujours eu le même comportement d'achat compulsif, avant et après le divorce. La seule chose qui a changé, c'est l'identité de sa société-écran enregistrée aux BVI (ndlr: îles Vierges). Accent Delight a remplacé Xitrans, pour masquer les transactions aux yeux de son ex-femme. Si les œuvres étaient plus onéreuses, cela reflétait le fait qu'il avait vendu ses parts dans son groupe minier, Uralkali.

**N'étiez-vous pas censé être son principal conseiller, un proche chargé de réunir sa collection?**

9/11/2019                          Économie: Le divorce du siècle hante l'affaire Bouvier - Économie - tdg.ch



### Débusqué par Me Bonnant

Pourtant la guerre judiciaire continue, deux ans et demi après l'arrestation du Genevois au pied de la résidence monégasque du Russe, puis son incarcération trois jours durant. Quelle raison pousse Dmitri Rybolovlev – qui estime avoir été lésé à hauteur de près d'un milliard – à ne pas négocier une solution, comme lors de son divorce? Des documents auxquels a eu accès la Tribune de Genève permettent de comprendre dans quelles conditions ce christ de la fin du XVe siècle a été fourni par Yves Bouvier, aux côtés de trente-six autres chefs-d'œuvre, pour un total de plus de 2 milliards de francs. Ces éléments font réapparaître, sous le vernis de cette collection hors norme, une affaire tout aussi retentissante: le divorce «du siècle».

Retour en arrière. Entre la fin de 2008 et juin 2015, sa séparation monopolise toute l'attention du magnat, qui a refait sa vie à Monaco en laissant Elena sur les bords du Léman. Défendue par Marc Bonnant, celle qui l'a rencontrée sur une autre planète – dans une fac de médecine aux confins de l'URSS – exige la moitié de sa fortune. Elle obtient, dès le début des hostilités, la saisie de la villa de Cologny – le chantier de son extension défigurera la colline la plus huppée du Léman durant des années – ainsi que de douze toiles obtenues du temps de leur vie commune, déjà par l'intermédiaire d'Yves Bouvier. En juin 2014, la pression monte. Madame décroche un premier jugement genevois qui lui accorde 4 milliards. L'ex-baron des mines de l'Oural, qui conteste la décision, voit soudain sa fortune traquée, ses transactions épiées. L'agrandissement de sa collection se poursuit pourtant, dans la clandestinité. Toujours sur les conseils du Genevois et d'une amie de longue date, Tania Rappo. Picasso, Gauguin, Giacometti, Klimt, Modigliani, Rodin… tous les maîtres sont convoqués dans cette frénésie d'achats dans laquelle «Dima» – le surnom affectueux donné par cette proche au magnat impavide – n'apparaît jamais.

### Ne le dis à personne

Ses fournisseurs n'ont de cesse de lui rappeler de ne jamais se signaler auprès des anciens propriétaires des œuvres. «Comme expliqué par oral à Tetiana Bersheda, si Maître Bonnant apprend que Rybolovlev dépense ce montant pour un tableau, ce sera le scandale! Il sera ravi d'utiliser cet argument par rapport au non-paiement du divorce», inscrit Yves Bouvier dans une fiche résumant ses efforts pour obtenir N° 6 (Violet, Green and Red), ce Rothko sera la dernière œuvre obtenue pour l'oligarque; celle qui déclenchera ses foudres et conduira à l'interpellation d'Yves Bouvier, le 25 février 2015.

La fiche est envoyée par courriel le 21 février à Tania Rappo. Deux jours plus tard, cette amie qui lui veut du bien prévient «Dima» chez lui. «Ce qui était le plus grave, c'est que l'homme a dit que cette histoire doit se terminer sinon [ils] vont dire beaucoup à [leur] avocat Bonnant; Yves est presque tombé [par terre]», assure Tania Rappo dans cet entretien en russe. Enregistré à son insu, il vaudra par la suite à l'avocate de l'oligarque d'être poursuivie.

En clair, toute tentative de contact avec l'ancien propriétaire du Rothko – une vieille famille du Bordelais qui l'a cédé pour 83,5 millions à Yves Bouvier – revient à se jeter dans la gueule du loup. Mais le loup n'y était pas. Dans une lettre récemment envoyée au clan Rybolovlev, Marc Bonnant certifie qu'il n'a «jamais représenté le propriétaire de [ce] Rothko» et qu'il n'a «jamais participé à une négociation portant sur sa vente». Autre élément troublant, une lettre trouvée sur Yves Bouvier, lors de son interpellation à Monaco, alors qu'il vient convaincre l'oligarque de lui régler les dizaines de millions qu'il vise sur l'achat-revente du Rothko. Datée de la veille et signée d'une avocate genevoise, la mise en demeure à son attention lui ordonne de régler d'urgence les derniers 36,2 millions d'euros du Rothko à une mystérieuse société nommée Blancafor. Il s'avérera par la suite que cette société, loin d'appartenir

Je n'ai jamais été son courtier – il n'y a jamais eu aucun contrat en ce sens. Si tel avait été le cas – comme il le prétend – alors rien ne l'aurait empêché d'exiger des détails sur les anciens propriétaires des œuvres, pour ses montants. Il ne l'a jamais fait. Même en 2013, quand une expertise indépendante de sa collection a conclu que cette dernière avait perdu 40% de sa valeur. Ceci montre bien que, à ses yeux, je n'étais pas un employé à son service, mais un marchand. C'est moi qui trouvais et achetais les œuvres – c'est le cas neuf fois sur dix pour les marchands d'art – avant de les lui proposer. Quand il n'en voulait pas, c'était tant pis pour moi.

### Le principal grief du clan Rybolovlev reste les mensonges servis lors de l'achat de ces toiles…

Dans une discussion avec un vendeur, ce sont les arguments commerciaux qui prévalent. Dans une foire de l'art, combien de fois un marchand dira au sujet d'un Picasso pour lequel on propose 10 millions qu'il a déjà un acheteur – imaginaire – prêt à en donner 11 millions. Quand vous vendez votre vieille voiture, ne faites-vous jamais semblant d'hésiter sur le prix en disant: «Il faut que j'en parle à ma femme»? Si c'est immoral, alors c'est tout le commerce qui est immoral…

### Et cette lettre prétendant que l'ancien propriétaire du Rothko attendait 36 millions, alors qu'il avait été intégralement payé?

C'était le moyen ultime que j'avais trouvé, en sollicitant une avocate genevoise, pour récupérer ce qu'il me devait depuis des mois. Le jeu devenait très dur, il fallait répondre.

### Et Madame Rappo? Elle vous présente un Russe à Genève en 2003 et reçoit pour cela 100 millions?

En moyenne, elle a touché 5,6% des transactions. Cela reste la rémunération d'un apporteur d'affaires, en général de 10% dans le marché de l'art. Cette commission est souvent versée par le marchand à chaque fois que le client revient chez lui. Histoire de l'inciter à

Économie: Le divorce du siècle hante l'affaire Bouvier - Économie - tdg.ch

au vendeur bordelais de la toile, n'était que l'une des sociétés écrans utilisées par l'homme d'affaires genevois.

### À menteur, menteur et demi?

ADVERTISING



inRead invented by Teads

«Cette escroquerie s'appuyait sur plusieurs manœuvres frauduleuses dont l'une était l'exploitation de la vulnérabilité de Dmitri Rybolovlev – son divorce en cours», indique-t-on aujourd'hui dans l'entourage du milliardaire. Il aurait donc été dans l'intérêt du marchand d'art que la séparation s'éternise. Comme dans celui de son associée, l'ex-meilleure amie des Rybolovlev, à qui il a reversé près de 100 millions. Qu'en pense celle qui fut choisie par le couple comme marraine de l'un de leur fille? Démentant tout rôle occulte, Tania Rappo répète, en étalant des papiers dans un tea-room genevois, que son rôle se limite «à celui d'un intermédiaire qui a présenté deux personnes qui ont fait des affaires ensemble pour 2 milliards et qui a retenu une commission de quelques pour-cent». Et puis, Dmitri Rybolovlev n'a-t-il pas lui-même déclaré à la police monégasque que l'élégante Tania «n'était pas impliquée dans la décision d'acheter [une toile] ou dans les arrangements [en] découlant»? Difficile pourtant, de chasser le souvenir de ce divorce retentissant. Il réapparaît dans un document de justice américaine que les trois quarts des marges secrètes du marchand d'art genevois ont été prises sur la vingtaine d'œuvres apportées au Russe après sa séparation.

La réponse du camp Bouvier est cinglante. «Durant toute la procédure de divorce, Monsieur Rybolovlev a toujours dit à sa femme que le patrimoine qu'elle revendiquait dépendait de «trusts» dont le contrôle lui échappait; or là, soudain, surgit l'excuse selon laquelle sa situation matrimoniale aurait été instrumentalisée contre lui? Cela ne tient pas la route», s'étonne David Bitton, chef d'orchestre de la défense d'Yves Bouvier. «Admettons qu'en réalité ce patrimoine était bien le sien, dans ce cas il cherchait, avec ces achats de tableaux, à le soustraire en secret à la menace d'un partage avec sa femme», martèle l'avocat genevois. «Et c'est bien là la première raison qui expliquerait son obsession de ne pas apparaître sur les écrans radars», poursuit-il. C'est donc mensonges (de l'oligarque à sa femme) contre mensonges (du marchand à l'oligarque).

### Un mystérieux service refusé

Yves Bouvier était-il l'homme qui en savait trop? Peut-être. Problème, cela n'a plus guère d'importance: l'ex-baron des mines de potasse, propriétaire du groupe Uralkali, a depuis longtemps convaincu Madame de le quitter pour 500 millions. Pourtant, la chasse à courre judiciaire continue de s'intensifier et passe désormais par Londres. Yves Bouvier répète que cet acharnement tient à un «service» qu'il aurait refusé de rendre. Le clash aurait eu lieu le 22 novembre 2014, jour de l'anniversaire du milliardaire, précise même Paris Match. Quel était le secret? Le marchand genevois ne veut rien en dire. Obtenu par la Tribune de Genève, un SMS envoyé par Yves Bouvier à un de ses associés – le galeriste Jean-Marc Peretti – lors de la soirée organisée ce soir-là par l'oligarque montre à quel point il sent sa vie va basculer. «Je suis dans la merde. Il n'a plus de cash et veut mettre en vente publique

ne pas emmener ce client voir ailleurs. Ainsi le veut la vie des affaires.

**Hormis la plus-value sur le De Vinci, le clan Rybolovlev déplore des pertes sur la revente des autres œuvres que vous lui avez obtenues...**

Depuis le départ, toute la collection a été constituée, selon ses vœux, dans une optique de long terme. Si le but avait été spéculatif, je l'aurais orienté sur d'autres œuvres, par exemple des artistes chinois. Sans ce scandale, si nous avions commencé à faire tourner sa collection dans des musées, elle en aurait valu le double.

**Ce scandale vous a-t-il forcé à vendre à prix cassé Natural LeCoultre, votre société familiale?**

Entre la fin de 2014 et sa vente, il y a un mois, la valeur que l'on pouvait en attendre a plongé de près de 50%, en raison du dégât d'image.

**P.-A.SA.**

---

## Articles en relation

### Le Christ vendu, «il n'y a plus d'affaire Bouvier»

**Justice** L'oligarque Rybolovlev a vendu pour 445 millions la toile «Salvator Mundi», au cœur de son accusation contre le marchand d'art genevois. L'avocat de ce dernier estime que la plainte ne tient plus. Plus...

ABO+ Par Pierre-Alexandre Sallier , Gabriel Sassoon
16.11.2017

### Le christ du scandale Bouvier est en vente

**Justice** Le milliardaire Rybolovlev va céder une toile de Vinci au cœur de son accusation du marchand genevois. Plus...

Par Pierre-Alexandre Sallier 14.11.2017

### L'affaire Bouvier revient là où tout a commencé

**Marché de l'art** Après avoir viré au «Monacogate», le bras de fer à un milliard entre le marchand d'art genevois et un ex-oligarque russe se jouera en Suisse. Deux plaintes sont déposées, dont une auprès du Parquet fédéral. Plus...

ABO+ Par Pierre-Alexandre Sallier 02.10.2017

### L'affaire Bouvier pousse une avocate au centre du ring

9/11/2019                          Économie: Le divorce du siècle hante l'affaire Bouvier - Économie - tdg.ch

[les] Pic[asso] et Rodin. Il ne comprend pas pourquoi il est le seul à ne pas gagner avec œuvres […] en gros je suis mort et ferai mieux de disparaître. »

Créé: 25.11.2017, 15h33

## Votre avis

Avez-vous apprécié cet article?

Oui

Non

**Justice** Descente de police au domicile monégasque de l'avocate du magnat russe en guerre contre un marchand d'art genevois. Plus...

**ABO+** Par Pierre-Alexandre Sallier 30.09.2017

## Genève pourrait réclamer plus de 100 millions à Yves Bouvier

**Fisc** Le maire Rémy Pagani relance l'offensive à l'encontre du marchand d'art genevois. Plus...

Par Marie Prieur 05.09.2017