```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                    :
ACCENT DELIGHT INTERNATIONAL LTD., et al.,          :
                                                    :
                              Plaintiffs,           :
                                                    :         18-CV-9011 (JMF)
         -v-                                        :
                                                    :         OPINION AND ORDER
SOTHEBY'S, et al.,                                  :
                                                    :
                              Defendants.           :
                                                    :
---------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

The question presented here — which has spawned surprisingly little and, in this Circuit at least, conflicting law — is whether a party seeking to discover materials relating to a private confidential mediation must satisfy a heightened standard of need. The question arises in a lawsuit between Plaintiffs Accent Delight International Ltd. and Xitrans Finance Ltd. and Defendants Sotheby's and Sotheby's, Inc. (collectively "Sotheby's") over Sotheby's role in an alleged scheme by Yves Bouvier, an art dealer who is not a party to this case, to defraud Plaintiffs of approximately one billion dollars in connection with the purchase of a world-class art collection, including Leonardo da Vinci's *Christ as Salvator Mundi*. In a private mediation subject to an agreement of confidentiality, Sotheby's settled separate litigation with the original sellers of *Salvator Mundi*, and Plaintiffs here now move to compel disclosure of materials relating to that mediation. For the reasons that follow, the Court holds that a heightened standard does apply to that request and that Plaintiffs fail to satisfy it. Accordingly, the motion is denied.

## BACKGROUND

The Court has issued many opinions in connection with Plaintiffs' claims against Sotheby's and Bouvier, in this and a related case, familiarity with which is presumed. *See, e.g.*,

*Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399 (S.D.N.Y. 2019) (largely denying Sotheby's motion to dismiss Plaintiffs' claims in this case); *see also In re Application of Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2016 WL 5818597 (S.D.N.Y. Oct. 5, 2016) (granting discovery for use in certain foreign proceedings pursuant to 28 U.S.C. § 1782), *aff'd sub nom. In re Accent Delight Int'l Ltd.,* 869 F.3d 121 (2d Cir. 2017), *and aff'd sub nom. In re Accent Delight Int'l Ltd.*, 696 F. App'x 537 (2d Cir. 2017) (summary order); *In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2017 WL 6568059 (S.D.N.Y. Dec. 22, 2017) (authorizing earlier Section 1782 materials to be used in separate proceedings in Switzerland and the United Kingdom); *In re Accent Delight Int'l Ltd.*, Nos. 16-MC-125 (JMF) & 18-MC-50 (JMF), 2018 WL 2849724 (S.D.N.Y. June 11, 2018) (authorizing earlier Section 1782 materials to be used in a separate Swiss criminal proceeding, and granting in part and denying in part another Section 1782 petition), *aff'd*, 791 F. App'x 247 (2d Cir. 2019) (summary order).

In brief, Plaintiffs (and their principal, a Russian billionaire named Dmitry Rybolovlev) hired Bouvier in or about 2003 to assist them in purchasing a world-class art collection. *See* ECF No. 66 ("Am. Compl."), ¶¶ 13-15. Plaintiffs allege that, over the next twelve years, although Bouvier purported to act as their agent, he was also, improperly and secretly, acting as a dealer, buying the art himself and selling it to Plaintiffs at a higher price. *See id.* ¶¶ 16-19. *Christ as Salvator Mundi*, one of only about fifteen authenticated paintings by da Vinci that exist today, is one of the artworks at issue. *See id.* ¶¶ 166-88. Plaintiffs allege that, in May 2013, Sotheby's facilitated the sale of the painting from a group of sellers (the "da Vinci Sellers") to Bouvier for $83 million. *See id.* ¶¶ 166-73. Based on Bouvier's false representations about the true purchase price, however, Plaintiffs paid Bouvier $127.5 million — "a markup of 53.62%." *Id.* ¶¶ 172, 175. Plaintiffs allege that Sotheby's "assist[ed]" Bouvier in this fraud and that, when they began

to develop suspicions, Sotheby's "help[ed]" Bouvier in his efforts "to justify the fraudulent price" he had charged Plaintiffs.  *Id.* ¶¶ 175, 182-85.

As it happens, Plaintiffs are not the only ones who, upon learning about Bouvier's markup, felt aggrieved about Sotheby's role in the *Christ as Salvator Mundi* transaction.  On November 21, 2016, Sotheby's filed a separate lawsuit against the da Vinci Sellers seeking a declaratory judgment that it did not breach its obligations to them in connection with the sale of the painting.  *See Sotheby's Inc. v. R.W. Chandler, LLC*, No. 16-CV-9043 (ALC) (S.D.N.Y.).  As Plaintiffs allege in their Amended Complaint here, "Sotheby's claimed" in that lawsuit — which was assigned to the Honorable Andrew L. Carter — that it had been "unaware of Bouvier's relationship with Rybolovlev when it arranged for Rybolovlev to view" the painting.  Am. Compl. ¶ 186.  With the assistance of a private mediator, former District Judge Barbara Jones (the "Mediator"), Sotheby's and the da Vinci Sellers "quickly" resolved their disagreement and entered into a confidential settlement.  *Id.*; *see* ECF No. 201 ("Defs.' Letter"), at 1.  Notably, the mediation (the "Mediation") began even before Sotheby's filed its lawsuit.  In September 2016, Sotheby's, the da Vinci Sellers, and the Mediator signed an engagement letter providing that the Mediation "was a settlement negotiation deemed private and confidential."  Defs.' Letter 1.  At no point did Judge Carter order mediation or address the confidentiality of the parties' private mediation.  (Indeed, from a review of the docket, there is no indication that Judge Carter was even aware that the parties were engaged in the Mediation.)

In May 2020, Plaintiffs in this case served the da Vinci Sellers with subpoenas seeking their confidential settlement agreement with Sotheby's and other documents relating to the Mediation, which Sotheby's then sought to quash.  *See* ECF No. 182, at 1-2.  The Court, after reviewing the settlement agreement *in camera*, granted Sotheby's motion to quash as to the

3

settlement agreement, ECF No. 190, but declined to do so as to the remaining requests, subject to any objections Sotheby's might raise, ECF No. 189.  Thereafter, the da Vinci Sellers "produced their mediation statement, as well as other documents, but Sotheby's blocked the Sellers' production of communications that, according to the DaVinci Sellers, are 'otherwise responsive' and 'directly relate to the mediation.'"  ECF No. 200 ("Pls.' Letter"), at 2.  Plaintiffs now seek the blocked materials as well as Sotheby's "own mediation statement and communications about the mediation" (together, the "Mediation Materials").  *See id.*  In total, Plaintiffs seek approximately 250 withheld documents, including communications (along with attachments) between Sotheby's counsel and counsel for the da Vinci Sellers and communications (along with attachments) between Sotheby's counsel and the Mediator.  *See id.*; Defs.' Letter 1.

## DISCUSSION

The threshold question for purposes of determining whether Plaintiffs are entitled to the Mediation Materials is whether such materials are subject to the heightened standard adopted by the Second Circuit in *In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011).  In that case, the Court affirmed denial of a motion to compel disclosure of materials relating to a mediation conducted subject to a court order providing for confidentiality of the mediation process.  *See id.* at 56-57, 62.  "A party seeking disclosure of confidential mediation materials," the Court held, must meet three requirements: It "must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality."  *Id.* at 58.

The Court tethered this heightened standard to the importance of confidentiality to "the mediation and other alternative dispute resolution processes":

> Confidentiality is an important feature of the mediation and other alternative
> dispute resolution processes.  Promising participants confidentiality in these

4

> proceedings "promotes the free flow of information that may result in the settlement of a dispute," *In re Grand Jury Subpoena Dated Dec. 17, 1996,* 148 F.3d 487, 492 (5th Cir. 1998), and protecting the integrity of alternative dispute resolution generally, *see e.g., In re Cnty. of Los Angeles,* 223 F.3d 990, 993 (9th Cir. 2000); *Clark v. Stapleton Corp.,* 957 F.2d 745, 746 (10th Cir. 1992) (per curiam); *Sheldone v. Pa. Tpk. Comm'n,* 104 F. Supp. 2d 511, 517 (W.D. Pa. 2000); *Fields-D'Arpino v. Rest. Assocs., Inc.,* 39 F. Supp. 2d 412, 417 (S.D.N.Y. 1999); *Folb v. Motion Picture Indus. Pension & Health Plans,* 16 F. Supp. 2d 1164, 1170-80 (C.D. Cal. 1998), *aff'd* 216 F.3d 1082 (9th Cir. 2000); *Bernard v. Galen Grp., Inc.,* 901 F. Supp. 778, 784 (S.D.N.Y. 1995). We vigorously enforce the confidentiality provisions of our own alternative dispute resolution, the Civil Appeals Management Plan ("CAMP"), because we believe that confidentiality is "essential" to CAMP's vitality and effectiveness.

*Id.* at 57-58. More specifically, the Court explained that it drew the heightened standard for disclosure of confidential mediation materials "from the sources" on which the lower court had relied, including "the Uniform Mediation Act . . . , the Administrative Dispute Resolution Act of 1996 . . . , and the Administrative Dispute Resolution Act of 1998 . . . ." *Id.* at 58 (footnotes omitted). "Each of these" sources, the Court reasoned, "recognizes the importance of maintaining the confidentiality of mediation communications and provides for disclosure in only limited circumstances." *Id.* The standards adopted by these sources, the Court noted, were "also consistent with the standard governing modification of protective orders entered under Federal Rule of Civil Procedure 26(c)." *Id.* at 59 (citing *SEC v. TheStreet.Com,* 273 F.3d 222, 229 (2d Cir. 2001); *FDIC v. Ernst & Ernst,* 677 F.2d 230, 232 (2d Cir. 1982) (per curiam)).

Since *Teligent*, there have been only two decisions in this District addressing whether the Circuit's holding applies to private mediations subject to a confidentiality agreement not otherwise blessed by any court order. *See Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461 (S.D.N.Y. 2019); *Dandong v. Pinnacle Performance Ltd*., No. 10-CV-8086 (LBS), 2012 WL 4793870 (S.D.N.Y. Oct. 9, 2012). In *Dandong*, upon which Sotheby's relies here, Judge Sand held that *Teligent* does apply to private mediations. He cited three reasons for drawing that conclusion. First, "nothing in the opinion limits the test to mediations

5

ordered to be kept confidential by a court or government agency. By its own terms, the test applies to all situations in which a 'party seek[s] disclosure of confidential mediation communications.'" 2012 WL 4793870, at *4 (alteration in original) (quoting *Teligent*, 640 F.3d at 58). Second, "[t]he Second Circuit's policy basis for the test" — quoted at length above — "applies with as much force to private mediations as it does to court-sponsored mediations." *Id.* (quoting *Teligent*, 640 F.3d at 57-58). And third, "the Second Circuit used sources that referred to both public and private mediation. To support its policy argument, the Second Circuit cited at least two cases" — *Sheldone* and *Fields-D'Arpino* — "that were about private mediations . . . . To support its test, the Second Circuit also relied on the Uniform Mediation Act, which applies to private mediation." *Id.*[1]

By contrast, in *Rocky Aspen*, upon which Plaintiffs rely here, Magistrate Judge Gorenstein concluded that *Dandong* was "wrongly decided" and that "the heightened test articulated in *In re Teligent* applies to situations in which there has been a prior court promise of confidentiality — not to discussions between parties without court involvement and not to a settlement agreement with a private promise to maintain its confidentiality." 394 F. Supp. 3d at 463-65.[2] Beyond observing that *Teligent* itself "did not involve a private mediation," he too offered several reasons for his conclusion. *Id.* at 464. "First," he reasoned, "there is a significant

---

[1] Not long after Judge Sand's decision, *Dandong* was coincidentally reassigned to the undersigned, and the defendants moved for reconsideration of his decision. The Court denied the motion without addressing the issue of whether *Teligent* applies to a private mediation. *See Dandong v. Pinnacle Performance Ltd.*, No. 10-CV-8086 (JMF), 2012 WL 6217646, at *1-2 (S.D.N.Y. Dec. 3, 2012).

[2] Ironically, the initial decision in *Dandong* that the *Teligent* standard applied to a private mediation was made by Magistrate Judge Gorenstein, to whom Judge Sand had referred the case. *See id.* at 463 n.1 ("The *Dandong* case decided objections to an oral ruling by this Court that also assumed the *In re Teligent* standard applied. . . . [T]his Court now believes that the *In re Teligent* standard did not in fact apply.").

difference between parties who proceed under a court order of confidentiality and parties who engage in private discussions or who insert a confidentiality provision into a settlement agreement.  *In re Teligent* specifically adverted to the fact that there had been a 'promis[e]' made by a court to participants in the settlement process to keep matters confidential.  *In re Teligent*'s rationale thus rested on the notion that the court had an obligation to honor to some degree its promise of confidentiality." *Id.* at 463 (alteration in original) (quoting *Teligent*, 640 F.3d at 57). Second, the fact that the Second Circuit had relied on sources relating to private mediations was "of no significance." *Id.*  The sources were merely "used by *In re Teligent* to explain the importance of confidentiality in the mediation process," and the cases cited that involved private mediation did not themselves "appl[y] a heightened standard to discovery." *Id.* at 463-64.  And finally, "in a slew of cases — many of which were decided before *Dandong* — courts have recognized that the 'good cause' standard of Rule 26(c) . . . is the proper test to govern discovery disputes involving the disclosure of settlement discussions and settlement agreements where there was no promise of confidentiality by a court.  Related case law has made clear that confidentiality provisions inserted by parties into private settlement agreements do not immunize those agreements from discovery." *Id.* at 464 (citations omitted).

So which decision is right?  The question is a close one, but the Court ultimately concludes that the heightened standard applies to confidential private mediations too.  First and foremost, although this fact was ignored by the *Rocky Aspen* Court (and is not cited by the parties here), the Second Circuit itself has applied the heightened *Teligent* standard in relation to a confidential private mediation.  *See In re Tremont Sec. Law, State Law & Ins. Litig.*, 699 F.

App'x 8, 15 (2d Cir. 2017) (summary order).³  Second, although Magistrate Judge Gorenstein is undoubtedly correct that there is a significant difference between parties who rely on a judicial promise of confidentiality and parties who forge a private agreement of confidentiality, the *Teligent* Court's rationale did not rest solely "on the notion that the court had an obligation to honor to some degree its promise of confidentiality." *Rocky Aspen*, 394 F. Supp. 3d at 463.  It rested equally, if not more, on the rationale that promising confidentiality in mediation "promotes the free flow of information that may result in the settlement of a dispute." *Teligent*, 640 F.3d at 57 (internal quotation marks omitted).  Indeed, later in its decision — in a line overlooked or ignored by the *Rocky Aspen* Court — the *Teligent* Court reiterated that "[w]ere courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether." *Id.* at 59-60.  That rationale, Judge Sand correctly observed, "applies with as much force to private mediations as it does to court-sponsored mediations." *Dandong*, 2012 WL 4793870, at *4.

Additionally, the relevant question is ultimately not — as *both* the *Dandong* and *Rocky Aspen* Courts framed it — whether the *Teligent* Court actually held that a heightened standard applies to confidential private mediations.  On that narrow question, *Rocky Aspen* may well have the better of the argument because *Teligent*, of course, "did not involve a private mediation." *Rocky Aspen*, 394 F. Supp. 3d at 464.  Instead, assuming *arguendo* that *Teligent* did not settle the

---

³       To be sure, *Tremont* was a non-precedential summary order.  "But a district judge is not at liberty to disregard, let alone contradict, a Second Circuit ruling squarely on point merely because it was rendered in a summary order." *Boone v. United States*, Nos. 02-CR-1185 (JMF) & 13-CV-8603 (JMF), 2017 WL 398386, at *1 (S.D.N.Y. Jan. 30, 2017) (internal quotation marks, ellipsis, and alteration omitted); *see also United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) ("[D]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases").

matter with respect to confidential private mediations, the question is whether the heightened standard that it adopted for court-ordered mediations should *also* apply to confidential private mediations. When the question is framed that way, there are strong reasons beyond those offered by the *Teligent* and *Dandong* Courts to conclude that the answer should be yes. Among other things, providing weaker protections to communications during a confidential private mediation than to communications during a court-sponsored mediation would discourage parties from agreeing to engage in private mediation. But in many cases, particularly more complex cases, private mediation (which is often conducted with a paid, highly experienced mediator who can devote more time to the matter) may be preferable to, and more likely to succeed than, court-ordered or -sponsored mediation. Incentivizing private mediations (or, to be more precise, not *dis*incentivizing them) benefits not only the parties in such cases, but also the court system generally, both because it alleviates the burdens on court-sponsored mediation programs (which are often thinly staffed by unpaid volunteers) and because, when successful, it lightens the court's docket. *Cf. Sheldone*, 104 F. Supp. 2d at 514 (noting that disclosing confidential mediation communications would "threaten[] the well established public needs of encouraging settlement and reducing court dockets").

Granted, parties interested in engaging in private mediation could ask the presiding court to enter an order providing for confidentiality. In that instance, the mediation, although "private," would be conducted pursuant to a court order or promise of confidentiality, and even *Rocky Aspen* would provide for heightened protection. But that presumes that there *is* a presiding court, which underscores a major downside of differentiating between private mediations and court-ordered mediations: It would discourage what the parties did here, namely turning to mediation prior to, and as a potential substitute for, commencing litigation. That is, to

9

secure a stronger assurance of confidentiality, parties who might otherwise have been able and willing to settle a dispute without burdening the courts might feel they have no choice but to file a lawsuit.  In short, applying the same standards to confidential private mediations and to court-ordered mediations is likely to "facilitate settlement, which courts are bound to encourage." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004).[4]

Finally, extending a heightened standard to disclosure of information or materials from a confidential private mediation finds support in case law outside of Second Circuit.  *See, e.g.*, *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009) ("Parties seeking to discover [confidential settlement] communications must make a heightened, more particularized showing of relevance."); *Lesal Interiors, Inc. v. Resol. Tr. Corp.*, 153 F.R.D. 552, 562 (D.N.J. 1994) (holding that, in light of Rule 408 of the Federal Rules of Evidence, a party seeking settlement documents must make a "particularized showing that the evidence sought is relevant and calculated to lead to the discovery of admissible evidence" (internal quotation marks omitted)); *see also United States ex rel. Strauser v. Stephen L. Lafrance Holdings, Inc.*, No. 18-CV-673 (GKF) (FHM), 2019 WL 6012850, at *2 (N.D. Okla. Nov. 14, 2019) (citing

---

[4]  Additionally, the "slew" of cases cited by Magistrate Judge Gorenstein in which courts applied "the 'good cause' standard of Rule 26(c)" has only limited relevance.  *Rocky Aspen*, 394 F. Supp. 3d at 464.  Only three of these cases were decided after *Teligent*, and in none was the court asked to apply the *Teligent* standard.  *See Kent v. The N.Y. State Pub. Emps. Fed'n, AFL-CIO*, No. 17-CV-268 (GTS) (CFH), 2019 WL 457544, at *6-7 (N.D.N.Y. Feb. 5, 2019); *King Cnty. v. IKB Deutsche Industriebank AG*, No. 09-CV-8387 (SAS), 2012 WL 3553775, at *3-4 (S.D.N.Y. Aug. 17, 2012); *Small v. Nobel Biocare USA, LLC*, 808 F. Supp. 2d 584, 586-87 (S.D.N.Y. 2011).  On top of that, most of the cited cases involved disclosure of settlement agreements produced by a mediation, not communications during the mediation process.  *See Rocky Aspen*, 394 F. Supp. 3d at 464.  The Court need not and does not decide the matter here, but it is not obvious that the standards applicable to a request for mediation communications should apply to a request for a settlement agreement, as disclosure of the latter would not necessarily inhibit the parties from engaging in a frank and forthcoming negotiation during the mediation itself.

*Teligent* and holding that settlement negotiation communications were not discoverable because, *inter alia*, the requesting party showed no "special need" for the information or that it would be "unfair" to deny him access). In fact, some courts have gone so far as to adopt an explicit federal mediation privilege that protects communications made in connection with a mediation — private or otherwise — from discovery. *See, e.g.*, *Spruce Env't Techs., Inc. v. Festa Radon Techs., Co.*, 370 F. Supp. 3d 275, 278-79 (D. Mass. 2019); *ACQIS, LLC v. EMC Corp.*, No. 14-CV-13560 (ADB), 2017 WL 2818984, at *2 (D. Mass. June 29, 2017); *Folb*, 16 F. Supp. 2d at 1181; *Sheldone*, 104 F. Supp. 2d at 513; *In re RDM Sports Grp., Inc.*, 277 B.R. 415, 430 (Bankr. N.D. Ga. 2002); *see also Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 977 (6th Cir. 2003) (holding that statements made in furtherance of settlement are privileged and protected from third-party discovery). Although these cases do not all follow *Teligent* itself and adopt varying standards, they all share, and support, the view that a heightened standard should apply to mediations generally.

In short, whether *Teligent* itself compels the conclusion or not, the Court concludes that its heightened standard should and does apply to private mediations in which there was an explicit promise of confidentiality.[5] Applying that standard here, the Court concludes, substantially for the reasons provided by Sotheby's, *see* Defs.' Letter 3, that Plaintiffs' request for the Mediation Materials falls short. There is no dispute that the subject matter of the Mediation — the sale of *Christ as Salvator Mundi* — is relevant to Plaintiffs' claims; that sale is one of transactions on which Plaintiffs' claims are based. *See* Am. Compl. ¶¶ 166-88. But the

---

[5] To decide the present case, there is no need define the precise metes and bounds of what qualifies as "mediation" for purposes of this rule. Whatever they may be, there is no dispute that what occurred between Sotheby's and the da Vinci Sellers — negotiations under the auspices of a former District Judge pursuant to a written agreement providing that the negotiations were "private and confidential," Defs.' Letter 1 — qualifies.

11

fact that the Mediation Materials concern one of the transactions at issue in this case does not, by itself, establish a "special need," "resulting unfairness," or that "the need for the evidence outweighs the interest in maintaining confidentiality." *Teligent*, 640 F.3d at 58; *see In re Teligent, Inc.*, 417 B.R. 197, 208 (Bankr. S.D.N.Y. 2009) ("The party seeking discovery of confidential mediation communications must show more than mere relevance to a pending action."), *aff'd sub nom*. *In re Teligent Servs., Inc.*, No. 09-CV-9674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010), *aff'd sub nom*. *In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011).  Nor can Plaintiffs meet their burden by arguing tautologically that they will be "otherwise" unable to obtain the Mediation Materials.  Pls.' Letter 3.  They provide no basis for their conclusory assertion that the materials contain "party admissions."  *Id.*  And if Plaintiffs were correct that the inability to obtain the specific *documents* at issue was dispositive, the *Teligent* test would be met in virtually every case.  Instead, the relevant inquiry is whether the party seeking discovery can otherwise obtain the *information* in withheld documents, and here there is no question that Plaintiffs can (or already have).  Indeed, Plaintiffs not only have access to those who were involved in, and the documents from, the underlying transaction; even without the Mediation Materials, they are privy to the theory of Sotheby's case against the da Vinci Sellers from the declaratory judgment complaint that Sotheby's publicly filed after the initial attempts at mediation failed.  *Cf. Pasternak v. Dow Kim*, No. 10-CV-5045 (LTS) (JLC), 2013 WL 1729564, at *4 & n.6 (S.D.N.Y. Apr. 22, 2013) (denying a request for testimony from a confidential arbitration where the requesting party "had access to many (if not most) of the same witnesses who testified in the . . . . Arbitration, could have taken discovery from them during the discovery period, and in fact secured testimony" from many of them).

## CONCLUSION

In short, the Court holds that Plaintiffs' request for the Mediation Materials is subject to the heightened standard adopted in *Teligent*, even though the Mediation was a private affair. And applying the heightened standard, the Court concludes that Plaintiffs are not entitled to the Mediation Materials.[6]  Accordingly, Plaintiffs' motion to compel production of the Mediation Materials is DENIED.  The Clerk of Court is directed to terminate Docket No. 200.

SO ORDERED.

Dated: December 8, 2020
       New York, New York

JESSE M. FURMAN
United States District Judge

---

[6] In light of that conclusion, the Court need not and does not reach Sotheby's alternative argument that a subset of the Mediation Materials — namely, the sixteen documents that were shared with the Mediator, but not with the da Vinci Sellers — are protected by the work-product doctrine.  *See* Defs.' Letter 2-3; *see also* Fed. R. Civ. P. 26(b)(3)(A).  That said, there is reason to believe that they are.  *See, e.g.*, *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, No. 11-CV-1299 (HB), 2011 WL 6074275, at *3 (S.D.N.Y. Dec. 6, 2011) (finding materials created in preparation for mediation to be protected by the work-product doctrine); *In re Lake Lotawana Cmty. Improvement Dist.*, 563 B.R. 909, 922 (Bankr. W.D. Mo. 2016) (finding that disclosure of mediation materials to a mediator does not waive work-product protections).