# Arnold & Porter

**Sara L. Shudofsky**
+1 212.836.7922 Direct
Sara.Shudofsky@arnoldporter.com

April 16, 2021

**VIA ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007

  Re: *Accent Delight Int'l Ltd. et al. v. Sotheby's*, 18 Civ. 9011

Dear Judge Furman:

 We write respectfully in response to Plaintiffs' April 12, 2021 letter requesting a discovery conference. *See* ECF No. 245. We address each of Plaintiffs' arguments below.

***Production from Samuel Valette's Personal Accounts and Devices***

 Plaintiffs' letter mischaracterizes or omits many relevant facts. Sotheby's did not on April 7, 2021 "tell Plaintiffs for the first time" that it did not have custody or control over Mr. Valette's personal accounts. Sotheby's email of February 27, 2020 explained clearly that it "does not have possession, custody, or control over the personal email accounts of its employees and former employees, or those of its foreign affiliates," and advised that Mr. Valette had voluntarily agreed to a search of his Gmail. Nor did Plaintiffs learn "for the first time" on April 7, 2021 that Mr. Valette is represented by individual counsel in the U.K. Plaintiffs have known of the representation since May 29, 2020, when Sotheby's produced documents referencing that counsel in connection with Mr. Valette's interview by the U.S. Attorney's Office. And whatever device Thomas Bompard may have used—including when Mr. Bompard was no longer a Sotheby's employee—has nothing to do with *Mr. Valette*'s communications. Similarly, that Mr. Bompard—who was in the U.S. at the time referenced in Plaintiffs' letter—agreed that Sotheby's counsel could accept service, rather than be served by a process server, is beside the point.

 Plaintiffs also omit that in July 2015, Plaintiffs sent a letter to Sotheby's asking that documents related to Sotheby's transactions with Bouvier be preserved. As we told Plaintiffs, Mr. Valette's personal Gmail account did not contain email prior to March 25, 2015 because of his then practice of regular email deletion as part of routine account maintenance. The documents in his personal Gmail account post-dating March 25, 2015 were not responsive, as Sotheby's informed Plaintiffs. Plaintiffs are of course free to inquire about Mr. Valette's practices at his deposition. (Plaintiffs' aspersions here are particularly rich given Dmitry Rybolovlev's claim that he never used a single device or account of *any* kind to communicate with *anyone* during the entire relevant time period.)

Hon. Jesse M. Furman
April 16, 2021
Page 2

Putting to the side their mischaracterizations, Plaintiffs did not seek information from Mr. Valette's personal devices or accounts (other than his Gmail account) until February 2021—after the parties had substantially completed the document discovery phase of the case. It is very late in the day for them to be raising this issue now. However, upon Sotheby's consultation with Mr. Valette and his counsel, Mr. Valette has consented to search for and produce any responsive, non-privileged documents from any other of his personal devices and accounts.

*Sotheby's Common Interest Agreement with Bouvier*

The Court has already addressed Plaintiffs' application for Arnold & Porter's communications with Bouvier's counsel. In their December 2019 letter, Plaintiffs challenged Sotheby's position that it would not produce or log those communications, describing Sotheby's position as a "maximalist assertion" that "all such communications are protected by a common interest privilege." *See* ECF No. 125. The Court denied Plaintiffs' application, ruling that "to the extent that communications between counsel and Bouvier are relevant, they are likely protected by the common-interest privilege" and that "[i]n either case, . . . requiring Sotheby's to produce or log the communications at issue would not be 'proportional to the needs of the case.'" *See* ECF No. 134 (citing Fed. R. Civ. P. 26(b)(1)). Plaintiffs' current letter repackages that request. While conceding that privileged communications need not be logged pursuant to the prior ruling, Plaintiffs again request that Sotheby's undertake the review of all communications and produce whatever is not privileged. Any such communications, however, are not relevant to the parties' claims or defenses in this case, and to search for and produce those communications would in any event "not be 'proportional to the needs of the case.'" *See id.* Nor is Plaintiffs' request for production of a common interest agreement new; that request was the subject of meet and confer discussions between the parties from October to December 2019, culminating in Plaintiffs' December 2019 letter. Plaintiffs did not raise that issue then, and their attempt to raise it now, more than a year later, as part of an attempt to repackage the same application should be rejected.

*Documents Not Captured by ESI Terms*

As a threshold matter, Plaintiffs misleadingly suggest that Sotheby's has refused to produce any documents that "were not captured by the original ESI search terms and custodians." As Plaintiffs know, Sotheby's agreed during the recent meet and confer to produce multiple categories of documents beyond those parameters. Their request for Sotheby's communications through counsel with the purchaser of Lautrec's *Au Lit, Le Baiser*, however, should be denied. In April 2015, the purchaser of that painting requested an extension of time to pay for the work based on concerns about Plaintiffs' then-recent allegations against Bouvier. The payment question was resolved when Plaintiffs agreed not to challenge the purchaser's title to the painting and Sotheby's agreed to place in escrow the remaining funds due to Bouvier. The purchaser's request for extended payment terms is not relevant to any claim in this case. Moreover, Plaintiffs have known about this issue for many years, but have not sought this discovery until now, after the substantial completion of document production. Notwithstanding Plaintiffs' claim in March 2021 that they had only just learned of the purchaser's request, Plaintiffs have been aware of this issue since at least June 2015, when (as per the above) Plaintiffs themselves wrote to Sotheby's and the purchaser about it, leading to months of

correspondence between counsel. Further discovery on this irrelevant issue is not proportional to the needs of the case.

Plaintiffs mischaracterize the negotiation over what Plaintiffs describe as a "freestanding confidentiality agreement" between Sotheby's and Bouvier. Sotheby's is not aware of any such agreement, and has instead referred Plaintiffs to its agreements with Bouvier imposing obligations of confidentiality in connection with specific transactions. Plaintiffs are free of course to inquire about Sotheby's obligations of confidentiality to Bouvier at depositions.

*Assertions of Privilege*

Plaintiffs assert without basis that all the communications sent and received by Sotheby's former Chief Global Compliance Counsel, Jane Levine, regarding her inquiries into Bouvier's business dealings are not privileged. Ms. Levine regularly conducted inquiries into Sotheby's clients and potential clients for the purpose of giving legal advice concerning potential legal risks of particular transactions or transacting with particular people. Ms. Levine made such inquiries into Mr. Bouvier's business in early 2013, to advise her client. The communications she sent and received, "ascertaining the factual background and sifting through the facts with an eye to the legally relevant," are protected by the attorney-client privilege. *Pearlstein v. BlackBerry Ltd.*, No. 13-CV-7060 (CM) (KHP), 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019) ("[F]actual investigations conducted or directed by an attorney fall within the attorney-client rubric.") (citations omitted). While a compliance lawyer, like any lawyer, might at times provide business advice, Plaintiffs' argument that Ms. Levine's communications cannot be privileged is wrong, and the cases cited do not support their position. Further, Plaintiffs' allegation that Ms. Levine's inquiries were conducted in furtherance of a crime is outrageous. That Plaintiffs are alleging fraud against Sotheby's here does not trigger the crime-fraud exception. *See United States v. Levin*, No. 15-CR-101 (KBF), 2015 WL 5838579, at *3 (S.D.N.Y. Oct. 5, 2015) ("There is no basis in the law to find that a complaint asserting fraud or other wrongdoing automatically vitiates the privilege."). The "party seeking to vitiate the [attorney-client] privilege must show probable cause that a crime or fraud has been committed and that the communications were in furtherance thereof." *Id.* Plaintiffs do not acknowledge or come close to supporting this burden before asserting that Ms. Levine—a former federal prosecutor and faculty member of Columbia Law School—acted in furtherance of a crime or fraud.

Although their argument is difficult to discern, Plaintiffs' vague assertion that Sotheby's cannot claim privilege over "documents concerning the Da Vinci showing logistics" seems to reference a handful of communications listed on Sotheby's privilege log relating to that viewing. Those communications conveyed information to a Sotheby's attorney concerning the then-owners' grant of authority for Sotheby's to temporarily possess the work and arrange for its viewing, and solicited the attorney's review of a draft agreement on that topic. Accordingly, the documents were appropriately withheld as privileged.

*Plaintiffs' Letter-Motion to Seal*

As stated in Plaintiffs' letter-motion to seal, Sotheby's "did not consent" to Plaintiffs' filing of their letter in unredacted form. *See* ECF No. 244. That is because Sotheby's had not yet seen the contents of the letter. Having now reviewed the references to Sotheby's documents

Hon. Jesse M. Furman
April 16, 2021
Page 4

contained in Plaintiffs' letter, Sotheby's does not seek to maintain that letter under seal.  *See* ECF No. 245.

*   *   *

We thank the Court for its consideration of this letter.

Respectfully,

*/s/ Sara L. Shudofsky*
Sara L. Shudofsky

cc: All counsel of record (via ECF)