UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACCENT DELIGHT INTERNATIONAL LTD. and
XITRANS FINANCE LTD.,

                      Plaintiffs,

      -against-

SOTHEBY'S and SOTHEBY'S, INC.,

                      Defendants.

18 Civ. 9011 (JMF)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR LEAVE TO AMEND COMPLAINT**

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL, LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

Attorneys for Plaintiffs

Having recently learned new facts from document discovery, Plaintiffs move for leave to amend their First Amended Complaint filed in November 2018. The proposed Second Amended Complaint, with changes highlighted at ¶¶ 158, 163-5; 192-226, is annexed as Ex. A to the accompanying Declaration of Daniel J. Kornstein. The proposed amendment sets forth additional facts and damages in connection with one of the transactions at issue. Defendants do not object to the proposed amendment.

Plaintiffs' motion should be granted because the amendment causes no prejudice, is not futile, is not the product of bad faith, and results in no undue delay.

## NATURE OF AMENDMENT

Plaintiffs seek leave to amend their complaint to plead new allegations concerning the resale of a red painting by Toulouse-Lautrec called *Au Lit: Le Baiser* (the "Red Toulouse-Lautrec"). Plaintiffs do not seek to add another claim; they merely seek to add factual allegations regarding another art transaction embraced by the first two claims of (1) aiding and abetting fraud and (2) aiding and abetting breach of fiduciary duty. Discovery has revealed that Sotheby's re-sold the Red Toulouse-Lautrec, then gave Bouvier some of the proceeds, even after his fraud was publicly exposed and froze the rest. Sotheby's misconduct deprived Plaintiffs of the £9,500,000 sale proceeds from the Red Toulouse-Lautrec.

Plaintiffs owned two works by the same artist with the same name—both called *Au Lit: Le Baiser*, both by Toulouse Lautrec, both purchased through their agent Yves Bouvier. The First Amended Complaint pled allegations concerning one of these works (the "Green Toulouse-Lautrec") at ¶¶ 158 et seq. of the Amended Complaint but did not clearly plead any separate allegations concerning the Red Toulouse-Lautrec. The proposed Second Amended Complaint

seeks to remove any possible confusion between the two paintings and also to explicitly plead allegations concerning the Red Toulouse-Lautrec.

## PROPOSED NEW FACTS TO BE PLEADED

Plaintiffs bought the Red Toulouse-Lautrec through Bouvier in 2009. Prop. Am. Compl. ¶ 192. Plaintiffs paid €18,000,000 for this work, believing that to be its true purchase price, but in fact Bouvier had only paid €13,500,000 and had pocketed the €4,500,000 (33.33%) markup for himself. *Id.* ¶¶ 193-94.

In 2014, Bouvier arranged with Sotheby's to re-sell the Red Toulouse-Lautrec at an auction on February 3, 2015. *Id.* ¶¶ 196 & 207.

***The Red Toulouse-Lautrec Caper.*** As he did for other works at issue in this case, Samuel Valette (Sotheby's Vice Chairman of Private Sales and Bouvier's primary contact at Sotheby's) conspired with Bouvier to deceive Plaintiffs. First, Valette wrote a phony, formal email to Bouvier, designed to be forwarded to Plaintiffs, which expressed Sotheby's interest in selling the Red Toulouse-Lautrec. *Id.* ¶ 198. Bouvier forwarded Valette's formal email to Plaintiffs, to convince them to agree to re-sell the Red Lautrec through Sotheby's. *Id.* ¶ 200.

***Inflating the True Value.*** Then, in a further effort to deceive Plaintiffs as to the true value of the work and convince them to agree to re-sell it through Sotheby's, Valette inflated the estimated value of the work at Bouvier's request, from between £9,000,000-£ 12,000,000 to £10,000,00-£15,000,000 and crafted additional phony, formal emails designed for Bouvier to forward to Plaintiffs, which he did. *Id.* ¶¶ 202-05 & 207-09.

***The Sale.*** On February 3, 2015, Sotheby's sold the Red Toulouse-Lautrec at auction for £9,500,000 (notably, less than the inflated estimate Valette had crafted at Bouvier's request to deceive Plaintiffs). *Id.* ¶ 210.

*__Bouvier's Arrest.__* On February 25, 2015, Bouvier was arrested and his fraud on Plaintiffs was made public in the international press, which Valette and other Sotheby's employees received. *Id.* ¶ 213.

*__Sotheby's Speeds Up Payment to Bouvier__*. Five days later, on March 2, 2015, with full knowledge of the now public fraud, Sotheby's agreed to accelerate a payment to Bouvier of £4,000,000 from the sale of the Red Toulouse-Lautrec and other works, a month sooner than it was due before the fraud was public. *Id.* ¶ 214. Bruno Vinciguerra, Sotheby's Chief Operating Officer, then went even further and authorized an even earlier payment to Bouvier of £2,000,000. *Id.* ¶ 215.

*__The Buyer's Concern.__* On March 9, 2015, the buyer of the Red Toulouse-Lautrec wrote to Sotheby's to express concern that the work he had bought was part of the now public Bouvier fraud. Sotheby's falsely denied this. *Id.* ¶ 216.

*__The Buyer Pays First Installment.__* Six days later, on or about March 15, 2015, the buyer of the Red Toulouse-Lautrec paid Sotheby's £1,152,180, his first installment for the work. *Id.* ¶ 218. Despite its knowledge of the now public fraud, Sotheby's did not place any hold on these funds or conduct any due diligence into whether it should transfer these funds to Bouvier. *Id.* ¶ 219.

*__Sotheby's Gives Bouvier £4,000,000.__* Instead, the next day, March 16, 2015, Sotheby's gave Bouvier £4,000,000. *Id.* ¶ 220. Bouvier never paid any of this money to Plaintiffs. *Id.* ¶¶ 223-24.

*__Sotheby's Falsely Denies Involvement.__* Meanwhile, Sotheby's continued to falsely tell the buyer of the Red Toulouse-Lautrec that it was not involved in the Bouvier fraud. *Id.* ¶ 221.

3

***Sotheby's Refuses to Pay Plaintiffs.*** Sotheby's later finally froze the rest of the sale proceeds but refused to give them to Plaintiffs without a court order or Bouvier's consent. *Id.* ¶ 225.

As a result of Sotheby's misconduct, Plaintiffs have never received any of the £9,500,000 sale proceeds from the Red Toulouse-Lautrec. *Id.* ¶ 226.

## GOVERNING STANDARD:
## LEAVE SHOULD BE "FREELY GIVE[N]"

Leave to amend a complaint should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "The rule in [the Second] Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993). Refusal to grant leave to amend must be justified by grounds such as undue delay, bad faith, or futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). "[R]efusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules,'" *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234 (2d Cir. 1995) (quoting *Foman,* 371 U.S. at 182), and "[t]he party opposing the amendment has the burden of showing prejudice," *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 764 F. Supp. 747, 757 (N.D.N.Y. 1991), *modified on reconsideration,* 148 F.R.D. 474 (N.D.N.Y. 1993), *aff'd,* 42 F.3d 135 (2d Cir. 1994).

Applying these standards, the Court should grant Plaintiffs' motion to amend.

## ARGUMENT

### I.   Defendants Cannot Show Prejudice

Defendants will not be prejudiced by the proposed amendment, which is based on documents produced by Defendants themselves. In evaluating potential prejudice to a defendant, courts consider whether the amendments will: "(i) require the opponent to expend significant

4

additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350. None of these considerations bar amendment here.

Amendment will not cause Defendants to engage in any discovery they have not already agreed to. Defendants previously agreed to give Plaintiffs discovery into an agreed-upon list of Works, which includes the Red Toulouse-Lautrec. Kornstein Decl. ¶ 4. Amendment will not prolong the discovery period or delay trial.

## II.     Plaintiff's Proposed Amendment Is Not Futile

Plaintiffs' proposed amendment is neither frivolous nor legally deficient. *See Chimarev v. TD Waterhouse Investor Svcs., Inc.*, 233 F. Supp. 2d 615, 617 (S.D.N.Y. 2002). "Unless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend." *Lerman v. Chuckleberry Publ'g., Inc.*, 544 F. Supp. 966, 968, *rev'd on other grounds sub nom Lerman v. Flynt Distrib. Co.*, 745 F.2d 123 (2d Cir. 1984).

Amendment here is supported by the discovery produced to date. It is the opposite of frivolous or deficient. Discovery has made it clear that, even when the Bouvier fraud was made public in the press, Sotheby's still connived with Bouvier to accelerate the payment to him of some of the sale proceeds of the Red Toulouse-Lautrec and then held on to the rest, thereby depriving Plaintiffs of the £9,500,000 they should have received from the sale of their work.

## III.    Plaintiffs Did Not Act in Bad Faith

Plaintiffs have acted in good faith in not previously asserting these allegations. The prior § 1782 production Plaintiffs received before filing this case did not include all the documents

5

which have now been produced in this case and which reveal Sotheby's agreement to accelerate payment to Bouvier even though his fraud had been exposed.

### IV.    Plaintiffs Did Not Act with Undue Delay

Rule 15 sets forth no deadline by which motions to amend must be filed, and the discovery deadline in this case is four and a half months away. Sotheby's said its huge document production (now 17,742 documents totaling over 60,000 pages) was completed on February 4, 2021 (and has continued to produce documents since then). Kornstein Decl. ¶ 5. Plaintiffs promptly moved to amend after reviewing those documents.

### CONCLUSION

Plaintiffs' motion for leave to file the proposed Amended Complaint should be granted.

Dated: May 7, 2021
       New York, NY

                                        Respectfully submitted,

                                        EMERY CELLI BRINCKERHOFF
                                        ABADY WARD & MAAZEL LLP


                                        By:    /s/ Daniel J. Kornstein
                                               Daniel J. Kornstein
                                               Zoe Salzman
                                               O. Andrew F. Wilson

                                        600 Fifth Avenue, 10th Floor
                                        New York, New York 10020
                                        (212) 763-5000

                                        *Attorneys for Plaintiffs**

*Julian Oppenheimer, who has passed the bar exam and is awaiting admission to the Bar, assisted in preparing this brief.