**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ACCENT DELIGHT INTERNATIONAL LTD. and XITRANS FINANCE LTD., <br><br>        Plaintiffs, <br><br>    v. <br><br> SOTHEBY'S and SOTHEBY'S, INC., <br><br>        Defendants. | No. 1:18-cv-09011-JMF-RWL |

## ANSWER AND JURY DEMAND OF
## DEFENDANTS SOTHEBY'S AND SOTHEBY'S, INC.

Defendants Sotheby's and Sotheby's, Inc. (collectively, "Sotheby's"),[1] by and through their undersigned counsel, answer the Second Amended Complaint (the "Second Amended Complaint") filed by Plaintiffs Accent Delight International Ltd. and Xitrans Finance Ltd. (collectively, "Plaintiffs") on May 11, 2021, as follows:

The headings of the Second Amended Complaint set forth Plaintiffs' characterization of this action, to which no response is required. To the extent a response is required to the headings of the Second Amended Complaint, the allegations in the headings of the Second Amended Complaint are denied.

## NATURE OF THE ACTION

1.　　Denies the allegations in paragraph 1 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations

---

[1] The Second Amended Complaint generally uses the word Sotheby's without specifying the specific entity to which any particular allegation applies, and it is apparent that in multiple instances the word is used to reference an entity that is not one of the two Defendants in this action. This Answer uses the defined term "Sotheby's" to refer to the two Defendants in this action.

1

regarding Plaintiffs' corporate structure, Plaintiffs' relationship to Yves Bouvier,[2] or any alleged defrauding of Plaintiffs by Bouvier, and avers as follows:  Although Sotheby's and its affiliated entities were generally aware that Bouvier could either be the ultimate purchaser, or one of a group of investors, or purchasing with the intent to resell to another, Sotheby's and its affiliated entities at no point knew what Bouvier ultimately planned to do with any work of art he acquired in a transaction brokered by Sotheby's, Inc. or its affiliated entities.  Nor did Sotheby's or its affiliated entities know the price that Bouvier planned to later charge for any work of art, if he did decide to re-sell it.  While Sotheby's and its affiliated entities later learned through press reports, court filings, and other means that Bouvier subsequently sold certain pieces to Dmitry Rybolovlev by way of Plaintiffs, Sotheby's and its affiliated entities were not aware of any re-sales at the time they took place; nor did Sotheby's or its affiliated entities know the prices that Plaintiffs claim Bouvier charged them at the time of such re-sales.  If Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's and its affiliated entities had no knowledge of any such fraud or breach of fiduciary duty, and have no liability whatsoever to Plaintiffs.

2.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Second Amended Complaint.

3.      Denies the allegations in paragraph 3 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' relationship to Bouvier and any alleged defrauding of Plaintiffs by Bouvier.

---

[2] Consistent with Plaintiffs' definition of "Bouvier" set forth in paragraph 12 of the Second Amended Complaint, for purposes of this Answer the term "Bouvier" refers to Yves Bouvier and persons and entities acting on his behalf and under his control.

4.     Denies the allegations in paragraph 4 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' relationship to Bouvier and any alleged defrauding of Plaintiffs by Bouvier.

## PARTIES

5.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Second Amended Complaint.

6.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Second Amended Complaint.

7.     Denies the allegations in the first sentence of paragraph 7 of the Second Amended Complaint, except admits that Defendant Sotheby's is a publicly traded corporation incorporated under the laws of Delaware with its principal place of business at 1334 York Avenue, New York, New York.  Denies the allegations in the second sentence of paragraph 7 of the Second Amended Complaint, except admits that Defendant Sotheby's is affiliated with and a successor to its original auction house business founded in 1744, and is in the business of brokering and facilitating sales of, among other things, fine and decorative art, jewelry, and collectibles, among other lines of business.  Denies the allegations in the third sentence of paragraph 7 of the Second Amended Complaint, except admits that Sotheby's, Inc. and its affiliated entities provide their clients with professional appraisals of artworks by experts, among other client services.  Denies the allegations in the fourth sentence of paragraph 7 of the Second Amended Complaint, except admits that Defendant Sotheby's and its affiliated entities do business as one of the world's oldest and most prestigious art auction houses.  Denies the allegations in the fifth sentence of paragraph 7 of the Second Amended Complaint.

8.      Admits the allegations in paragraph 8 of the Second Amended Complaint, but averts that the accurate quotations from the referenced excerpts of the Sotheby's Code of Business are: (1) "your guide to conducting our business with integrity and in keeping with our core values.  Sotheby's is committed to operating with clear and firm ethical standards every day, at every auction, in every transaction, no matter where we are"; and (2) "Directors, Officers and managers are required to:  Serve as models of ethical behavior and lead by setting a positive example."

9.      The allegations in paragraph 9 of the Second Amended Complaint state conclusions of law to which no response is required.  To the extent a response is required, denies the allegations in paragraph 9 of the Second Amended Complaint, except admits that Defendant Sotheby's, Inc. is an indirect, wholly-owned subsidiary of Defendant Sotheby's.

## JURISDICTION AND VENUE

10.      The allegations in paragraph 10 of the Second Amended Complaint state conclusions of law to which no response is required.  To the extent a response is required, denies knowledge or information sufficient to form a belief as to Plaintiffs' citizenship.

11.      The allegations in paragraph 11 state conclusions of law to which no response is required.

## FACTS

12.      Denies the allegations in the first and third sentences of paragraph 12 of the Second Amended Complaint.  The second sentence of paragraph 12 of the Second Amended Complaint creates a defined term to which no response is required, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding what persons or entities have acted on Bouvier's behalf and/or under his control.

*Bouvier's Fraudulent Scheme*

13.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Second Amended Complaint.

14.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Second Amended Complaint.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Second Amended Complaint.

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Second Amended Complaint.

17.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Second Amended Complaint.

18.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Second Amended Complaint.

19.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Second Amended Complaint.

*Plaintiffs Attempt to Bring Bouvier to Justice*

20.     The allegations in the first sentence of paragraph 20 of the Second Amended Complaint state conclusions of law to which no response is required.  To the extent a response is required, denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 20 of the Second Amended Complaint.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of paragraph 20 of the Second Amended Complaint.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Second Amended Complaint.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Second Amended Complaint.

23.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Second Amended Complaint.

24.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Second Amended Complaint.

***Sotheby's Aids and Abets Bouvier's Fraud***

25.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Second Amended Complaint.

26.     Denies the allegations in paragraph 26 of the Second Amended Complaint, except admits that the quotations contained in the second and fourth sentences of the paragraph were included in the brief referenced in the third sentence of the paragraph, and avers that the quotation contained in the second sentence of the paragraph should have instead provided that "Sotheby's, Inc. and/or its affiliated entities facilitated the sale of 12 of the 38 [w]orks to Bouvier and consigned for auction 2 of the [w]orks on Bouvier's behalf (1 of which Sotheby's UK previously sold him), while Sotheby's UK conducted valuations for 5 of the [works] (3 of which it and/or its affiliated entities previously sold him)."

27.     Denies the allegations in paragraph 27 of the Second Amended Complaint.

28.     Denies the allegations in paragraph 28 of the Second Amended Complaint and avers that Sotheby's, Inc. and affiliated entities filed a joint submission with Bouvier in a civil proceeding in Geneva, Switzerland in November 2017 and that it seeks in that proceeding a

6

judgment declaring that it has no liability whatsoever to the defendants in the proceeding (which include Plaintiffs). Further avers as follows: Although Sotheby's and its affiliated entities were generally aware that Bouvier could either be the ultimate purchaser, or one of a group of investors, or purchasing with the intent to resell to another, Sotheby's and its affiliated entities at no point knew what Bouvier ultimately planned to do with any work of art he acquired in a transaction brokered by Sotheby's, Inc. or its affiliated entities. Nor did Sotheby's or its affiliated entities know the price that Bouvier planned to later charge for any work of art, if he did decide to re-sell it. While Sotheby's and its affiliated entities later learned through press reports, court filings, and other means that Bouvier subsequently sold certain pieces to Rybolovlev by way of Plaintiffs, Sotheby's and its affiliated entities were not aware of any re-sales at the time they took place; nor did Sotheby's and its affiliated entities know the prices that Plaintiffs claim Bouvier charged them at the time of such re-sales. If Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's and its affiliated entities had no knowledge of any such fraud or breach of fiduciary duty, and have no liability whatsoever to Plaintiffs.

29.    Denies the allegations in paragraph 29 of the Second Amended Complaint, except admits that Samuel Valette has the title and specialty referenced in the paragraph and that he maintained a professional business relationship with Bouvier over several years.

30.    Denies the allegations in the first and second sentences of paragraph 30 of the Second Amended Complaint. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 30 of the Second Amended Complaint.

31.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Second Amended Complaint.

32.     Denies the allegations in paragraph 32 of the Second Amended Complaint, except admits that Alexander Bell and Bruno Vinciguerra communicated on one or more occasions with Bouvier and his affiliate Jean-Marc Peretti and that their titles are accurately listed.

33.     The allegations in paragraph 33 of the Second Amended Complaint state conclusions of law to which no response is required.  To the extent a response is required, denies the allegations in paragraph 33 of the Second Amended Complaint, and avers that during the time period covered in the Second Amended Complaint, Vinciguerra was employed by Defendant Sotheby's, and Bell and Valette were employed by Sotheby's United Kingdom-based affiliate, Sotheby's ("Sotheby's UK").

34.     Admits the allegations in the first sentence of paragraph 34 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 34 of the Second Amended Complaint, except admits that Bouvier was at one time a major player in the art world.  Admits the allegations in the third sentence of paragraph 34 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether Bouvier continues to be associated with freeport businesses where fine art can be stored tax-free.  Denies the allegations in the fourth sentence of paragraph 34 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding Bouvier's interactions with Plaintiffs concerning any work of art that Bouvier acquired in a transaction brokered by Sotheby's, Inc. or its affiliated entities, and avers that Sotheby's, Inc. and its affiliates earned fees with respect to the 14 transactions identified in the Second Amended Complaint as negotiated and agreed on a

8

transaction-by-transaction basis, as Sotheby's, Inc. and its affiliates do for any transaction they broker.  Denies the allegations in the fifth sentence of paragraph 34 of the Second Amended Complaint.

35.     Denies the allegations in paragraph 35 of the Second Amended Complaint, except admits that Bouvier was formerly a business contact of Sotheby's and its affiliated entities.

36.     Denies the allegations in paragraph 36 of the Second Amended Complaint and avers that Sotheby's, Inc.'s and its affiliated entities' contractual confidentiality obligations to Bouvier's affiliated entity Blancaflor prevented them from providing the documents Plaintiffs sought in their proceeding under 28 U.S.C. § 1782 absent court order, and that Sotheby's, Inc. provided those documents to Plaintiffs pursuant to such order.

37.     Denies the allegations in paragraph 37 of the Second Amended Complaint.

38.     Denies the allegations in paragraph 38 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiffs relied upon or believed in connection with their relationship to Bouvier.

39.     Denies the allegations in paragraph 39 of the Second Amended Complaint.

Picasso's <em>L'Homme Assis Au Verre</em>

40.     Denies the allegations in paragraph 40 of the Second Amended Complaint.

41.     Admits the allegations in the first sentence of paragraph 41 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 41 of the Second Amended Complaint, except admits that certain emails exchanged between Valette and Bouvier in March 2011 contained the less formal word "tu" to connote "you," and were signed using first names.

9

42.     Denies the allegations in paragraph 42 of the Second Amended Complaint, except admits that on March 18, 2011 Valette emailed Bouvier and Peretti a cataloguing for the artwork and that in sum and substance the translation contained in the paragraph of the excerpted portion of the email into English is accurate.

43.     Admits the allegations in paragraph 43 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portions of the email into English are accurate.

44.     Denies the allegations in paragraph 44 of the Second Amended Complaint, except admits that Valette emailed Bouvier on March 23, 2011, that in sum and substance the translation contained in the first sentence of the paragraph of the excerpted portion of the email into English is accurate, and that the quotation from the Sotheby's Code of Business Conduct contained in the second sentence of the paragraph is accurate.

45.     Denies the allegations in paragraph 45 of the Second Amended Complaint, except admits that Valette emailed Bouvier on March 24, 2011 and included a detailed description of the work, and that in sum and substance the translation of the excerpted portion of the email into English is accurate.

46.     Denies the allegations in paragraph 46 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether Bouvier forwarded Valette's description of the work to Plaintiffs' representative.

47.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Second Amended Complaint.

48.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 of the Second Amended Complaint.

49.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Second Amended Complaint.

50.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 50 of the Second Amended Complaint, except admits that Sotheby's, Inc.'s Switzerland-based affiliate Sotheby's S.A. brokered the sale of Picasso's *L'Homme Assis Au Verre* to Bouvier's affiliated entity Blancaflor on April 1, 2011 for $62 million.  Denies the allegations in the second sentence of paragraph 50 of the Second Amended Complaint, except admits that Valette signed the contract of sale on behalf of Sotheby's S.A.  Denies the allegations in the third sentence of paragraph 50 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether or what Bouvier charged Plaintiffs for the work and what any corresponding markup was.

51.     Denies the allegations in paragraph 51 of the Second Amended Complaint, except admits that Valette emailed Bouvier on April 8, 2011 attaching a letter in Word discussing the artwork addressed to "M. Yves Bouvier" and containing the more formal word "vous" to connote "you," and that in sum and substance the translation of the excerpted portion of Valette's email into English is accurate.

52.     Denies the allegations in paragraph 52 of the Second Amended Complaint, except admits that approximately one hour later Valette emailed Bouvier the letter discussing the work in PDF, and that in sum and substance the translation of the excerpted portion of the email into English is accurate.

Malliol's [sic] *La Méditerranée*

53.     Admits the allegations in paragraph 53 of the Second Amended Complaint, except avers that the correct spelling of the artist's name is Maillol, and with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.

54.     Admits the allegations in paragraph 54 of the Second Amended Complaint, except avers that the correct spelling of the artist's name is Maillol.

55.     Denies the allegations in paragraph 55 of the Second Amended Complaint, except admits that Valette also emailed Bouvier a cataloguing for the work in Word.

56.     Denies the allegations in paragraph 56 of the Second Amended Complaint, except admits that on April 14, 2011, Bouvier agreed to buy the work for €5.7 million in a sale brokered by Sotheby's, Inc., and that Sotheby's, Inc. signed the sales agreement for the work.

57.     Denies the allegations in paragraph 57 of the Second Amended Complaint, except admits that Valette emailed Bouvier two letters in PDF format on April 14, 2011 for the Maillol and Rodin's *Le Baiser*, confirming their location in New York; admits that in sum and substance the translation of the first, third, and fourth sentences of the excerpted portion of the email into English is accurate; and avers that the correct spelling of the artist's name is Maillol and that the correct translation of the second sentence of the excerpted portion of the email into English is that "[t]he two artworks are currently at Sotheby's in New York."

58.     Denies the allegations in paragraph 58 of the Second Amended Complaint, except admits that on April 15, 2011, an employee of Sotheby's UK provided Bouvier with additional references about the work.

59.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 59 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 59 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding markup was.

60.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the Second Amended Complaint.

Rodin's <em>Le Baiser</em>

61.     Admits the allegations in paragraph 61 of the Second Amended Complaint.

62.     Denies the allegations in paragraph 62 of the Second Amended Complaint, except admits that Bouvier emailed Valette on April 9, 2011, that in sum and substance the translation of the excerpted portions of the email into English is accurate, and that Valette subsequently responded with the information Bouvier requested.

63.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the Second Amended Complaint.

64.     Denies the allegations in paragraph 64 of the Second Amended Complaint, except admits that Sotheby's, Inc. brokered the sale of Rodin's <em>Le Baiser</em> to Bouvier's affiliated entity Blancaflor on April 14, 2011 for €4.23 million and that Sotheby's, Inc. signed the contract of sale, and denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding markup was.

65.     Denies the allegations in paragraph 65 of the Second Amended Complaint, except admits that on April 14, 2011, Valette emailed Bouvier a letter in PDF format confirming the location of the work in New York, and that in sum and substance the translation of the excerpted portion of the email into English is accurate.

Matisse's <em>Nu au Châle Vert</em>

66.     Admits the allegations in the first sentence of paragraph 66 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 66 of the Second Amended Complaint, except admits that Valette's emails to Peretti contained no content, and states that the remaining allegations in the second sentence of paragraph 66 of the Second Amended Complaint are characterizations of Valette's emails to which no response is required and that the documents at issue speak for themselves.

67.     Denies the allegations in paragraph 67 of the Second Amended Complaint, except admits that on June 16, 2011 Valette emailed Bouvier various documents concerning the work, and that those documents included PDF excerpts from catalogues and a Word document describing the work.

68.     Admits the allegations in paragraph 68 of the Second Amended Complaint.

69.     Denies the allegations in paragraph 69 of the Second Amended Complaint, except admits that Bouvier forwarded an email to Valette on June 20, 2011, and that in sum and substance the translation of the excerpted portion of the email into English is accurate and relates to a request from Bouvier that he be given access to the work.

70.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 of the Second Amended Complaint, except admits that in sum and substance the translation of the excerpted portion of the email into English is accurate.

71.     Denies the allegations in paragraph 71 of the Second Amended Complaint, except admits that Valette responded to Bouvier later that morning, and that in sum and substance the translation of the excerpted portion of the email into English is accurate.

72.     Admits the allegations in paragraph 72 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.

73.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 of the Second Amended Complaint.

74.     Denies the allegations in paragraph 74 of the Second Amended Complaint, except admits that Sotheby's UK brokered the sale of Matisse's *Nu au Châle Vert* to Bouvier's affiliated entity Blancaflor on June 27, 2011 for $60 million and that Valette signed the contract of sale on behalf of Sotheby's UK, and denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding markup was.

75.     Denies the allegations in paragraph 75 of the Second Amended Complaint, except admits that Valette emailed Bouvier on October 24, 2014, that in sum and substance the translation of the excerpted portion of the email into English is accurate, and that Valette attached to the email an insurance valuation for the work identifying its retail replacement value at $85 million.

15

Rodin's *L'Éternel Printemps*

76.     Admits the allegations in paragraph 76 of the Second Amended Complaint.

77.     Denies the allegations in paragraph 77 of the Second Amended Complaint, except admits that on June 16, 2011, Valette emailed Peretti noting that the seller of the work wished to sell it for $12.5 million, and that Valette's email attached a Word version of a cataloguing for the work.

78.     Denies the allegations in paragraph 78 of the Second Amended Complaint, except admits that Valette sent the same email and attachment to Bouvier on the same day and that in sum and substance the translation of the excerpted portion of the email into English is accurate.

79.     Denies the allegations in paragraph 79 of the Second Amended Complaint, except admits that Valette emailed Bouvier on June 20, 2011, that in sum and substance the translation of the excerpted portion of the email into English is accurate, and that Valette sent Bouvier a revised Word version of the cataloguing for the work.

80.     Admits the allegations in the first and third sentences of paragraph 80 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 80 of the Second Amended Complaint, except admits that the contract was signed by Valette on behalf of Sotheby's UK.

81.     Denies the allegations in the first sentence of paragraph 81 of the Second Amended Complaint, except admits that on July 11, 2011, Valette forwarded an email to Bouvier from Holli Chandler, Sotheby's UK's Business Manager of Impressionist & Modern Art, and that Chandler's email discussed arrangements to ship the work to the Rodolphe Haller Freeport in Geneva, Switzerland.  As to the second sentence of paragraph 81 of the Second Amended Complaint, admits that in sum and substance the translation of the excerpted portion of the email

into English is accurate, but denies that the translated words "the buyer" are italicized in the original French version.  Denies the allegations in the third sentence of paragraph 81 of the Second Amended Complaint.

82.     Denies the allegations in paragraph 82 of the Second Amended Complaint, except admits that Valette later emailed Bouvier regarding access to the piece and avers that the correct translation of the excerpted portion of the email into English is "free access to the piece which you will be able to position to your liking at Vulcan."

83.     Denies the allegations in paragraph 83 of the Second Amended Complaint, except admits that on July 25, 2011 Valette emailed Bouvier a PDF file of the cataloguing for the work, and that in sum and substance the translation of the excerpted portion of the email into English is accurate.

84.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first and third sentences of paragraph 84 of the Second Amended Complaint. Denies the allegations in the second sentence of paragraph 84 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding markup was.

## Giacometti's *Femme de Venise IX*

85.     Admits the allegations in the first sentence of paragraph 85 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 85 of the Second Amended Complaint.

86.     Admits the allegations in the first and second sentences of paragraph 86 of the Second Amended Complaint, with the qualification that, with respect to the translation of the

referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.  Denies the allegations in the third sentence of paragraph 86 of the Second Amended Complaint, except admits that Valette sent a responsive email to Bouvier on October 4, 2011 and included the requested cataloguing for the work as a Word file.

87.    Admits the allegations in the first sentence of paragraph 87 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 87 of the Second Amended Complaint, except admits that Valette signed the contract on behalf of Sotheby's UK.

88.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first and third sentences of paragraph 88 of the Second Amended Complaint. Denies the allegations in the second sentence of paragraph 88 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding markup was.

89.    Admits the allegations in paragraph 89 of the Second Amended Complaint, except denies that the referenced document was a "Sotheby's contract" and avers that the contract was signed by Valette on behalf of Sotheby's UK.

<u>Magritte's *Le Domaine d'Arnheim*</u>

90.    Admits the allegations in paragraph 90 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.

18

91.     Denies the allegations in paragraph 91 of the Second Amended Complaint, except admits that Isadora Katsis emailed Bouvier on November 10, 2011, that the email, written in French,     contains the less formal word "tu" and not the word "vous" to connote "you," and avers that in sum and substance the translation of the excerpted portion of the email into English is accurate.

92.     Denies the allegations in paragraph 92 of the Second Amended Complaint, except admits that Valette emailed Bouvier on November 11, 2011 describing Magritte's *Empire des Lumières*, and that the email, written in French, contains the more formal word "vous" and not the word "tu" to connote "you" and is addressed to "Monsieur Bouvier" from "Sam Valette," including his title, and avers that the correct translation of the excerpted portion of the email into English is "It was a pleasure to discuss with you the current market for Surrealist artworks and those of Magritte in particular."

93.     Admits the allegations in the first and second sentences of paragraph 93 of the Second Amended Complaint.  Denies the allegations in the third sentence of paragraph 93 of the Second Amended Complaint, except admits that Valette's email also estimated that the work might sell for around $40 to $60 million but did not refer to a sale at auction.  Denies the allegations in the fourth and fifth sentences of paragraph 93 of the Second Amended Complaint, and states that Plaintiffs' allegations in those sentences are characterizations of Valette's emails to which no response is required and that the documents at issue speak for themselves.

94.     Denies the allegations in paragraph 94 of the Second Amended Complaint, except admits that Valette emailed Bouvier and Peretti concerning Magritte's *Le Domaine d'Arnheim* on November 11, 2011 and that Valette was trying to sell that work to Bouvier.

95.     Denies the allegations in paragraph 95 of the Second Amended Complaint, except admits that on November 14, 2011 Valette emailed Bouvier a revised version of the email he previously had sent him, with a change in estimate to €40 million, and states that the allegations in the fourth sentence of paragraph 95 are characterizations of Valette's emails to which no response is required and that the documents at issue speak for themselves.

96.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96 of the Second Amended Complaint.

97.     Denies the allegations in paragraph 97 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiffs relied on or trusted and why they may have done so.

98.     Denies the allegations in paragraph 98 of the Second Amended Complaint, except admits that Chandler sent an email to Bouvier's assistant on December 2, 2011, and that in sum and substance the translation of the excerpted portion of the email into English is accurate but denies that the original French included any italicization.

99.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 of the Second Amended Complaint.

100.     Denies the allegations in the first sentence of paragraph 100 of the Second Amended Complaint, except admits that Sotheby's UK brokered the sale of the work to Bouvier's affiliated entity Blancaflor on December 8, 2011 for $24.1 million.  Denies the allegations in the second sentence of paragraph 100 of the Second Amended Complaint, except admits that Valette signed the sales agreement on behalf of Sotheby's UK.  Denies the allegations in the third sentence of paragraph 100 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations

regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding markup was.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of paragraph 100 of the Second Amended Complaint.

Modigliani's <em>Nu Couché au Coussin Bleu</em>

101.     Denies the allegations in paragraph 101 of the Second Amended Complaint, except admits that Valette emailed Bouvier and Peretti on December 21, 2011, that the email uses less formal salutations, and that in sum and substance the translation of the excerpted portion of the email into English is accurate.

102.     Denies the allegations in the first sentence of paragraph 102 of the Second Amended Complaint, except admits that Valette emailed Bouvier on December 23, 2011, and that the translation into English of the excerpted portion of the email is in sum and substance accurate.  Denies the allegations in the second sentence of paragraph 102 of the Second Amended Complaint, except admits that the email, written in French, begins with the greeting "Dear Mr. Bouvier," contains the more formal word "vos" to connote "your," and contains Valette's complete name and title in the signature.  Admits the allegations in the third sentence of paragraph 102 of the Second Amended Complaint.  Denies the allegations in the fourth sentence of paragraph 102 of the Second Amended Complaint, except admits that Valette's email referred to the high demand for Modigliani's <em>Nu</em>'s on the art market.  Denies the allegations in the fifth sentence of paragraph 102 of the Second Amended Complaint.

103.     Denies the allegations in the first sentence of paragraph 103 of the Second Amended Complaint, except admits that Bouvier sent an email to Valette on December 24, 2011, that the email, written in French, refers to Valette by his first name and is signed by Bouvier using his first name, that it contains the less formal word "tu" and not the word "vous" to

21

connote "you," and that in sum and substance the translation of the excerpted portion of the email into English is accurate.  Denies the allegations in the second sentence of paragraph 103 of the Second Amended Complaint.  Denies the allegations in the third sentence of paragraph 103 of the Second Amended Complaint, except admits that Valette responded to Bouvier's email and that the email refers to Bouvier by his first name and is signed by Valette using his first name and contains the less formal word "tu" and not the word "vous" to connote "you."

104.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 of the Second Amended Complaint.

105.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105 of the Second Amended Complaint.

106.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106 of the Second Amended Complaint.

107.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 107 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 107 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding markup was.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 107 of the Second Amended Complaint.

108.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 of the Second Amended Complaint.

109.    Denies the allegations in the first sentence of paragraph 109 of the Second Amended Complaint, except admits that on October 24, 2014, Sotheby's UK provided Bouvier

an insurance valuation for the work, delivered by Valette.  Denies the allegations in the second sentence of paragraph 109 of the Second Amended Complaint, except admits that the insurance valuation provided to Bouvier was signed by Valette on the letterhead of Sotheby's UK and was addressed to "Mr. Confidential Client One Hundred and Thirty Four."  Denies the allegations in the third sentence of paragraph 109 of the Second Amended Complaint, except admits that Sotheby's UK assessed the retail replacement value of the work at $110 million and that the insurance valuation did not refer to a 2012 sale to Bouvier or its purchase price.

110.    Denies the allegations in the first sentence of paragraph 110 of the Second Amended Complaint, except admits that on January 9, 2015 Vinciguerra emailed Peretti and Valette about possibly selling the work during the May auction in New York, stating that Sotheby's, Inc. anticipated offering a guarantee of $70 million following inspection of the work. Admits the allegations in the second sentence of paragraph 110 of the Second Amended Complaint.  Denies the allegations in the third sentence of paragraph 110 of the Second Amended Complaint, except admits that the quoted excerpt of the email is accurate, and states that the remaining allegations in the third sentence of paragraph 110 are characterizations of Vinciguerra's email to which no response is required and that the document at issue speaks for itself.

<u>Rodin's *Eve*</u>

111.    Admits the allegations in paragraph 111 of the Second Amended Complaint.

112.    Denies the allegations in paragraph 112 of the Second Amended Complaint, except admits that on February 2, 2012, Valette emailed Peretti a document in Word about the work, and avers that the correct translation of the excerpted portion of the email into English is "works for you."

113.    Denies the allegations in paragraph 113 of the Second Amended Complaint, except admits that the following day Valette sent to Bouvier the same document in Word he previously emailed Peretti (with a typographical error corrected), along with two other PDF documents.

114.    Admits the allegations in paragraph 114 of the Second Amended Complaint, except avers that the correct translation of the excerpted portion of the email into English is "Here is an attempt of a new doc with more photos - thank you for telling me if it is better."

115.    Admits the allegations in paragraph 115 of the Second Amended Complaint.

116.    Denies the allegations in the first sentence of paragraph 116 of the Second Amended Complaint, except admits that on March 6, 2012, after a series of emails about arranging to bring the work to Geneva, an individual identified as an employee of Fine Arts Transport Natural le Coultre SA wrote an email to Chandler, and avers that the accurate quotation from the referenced email is "Our client would like us to collect directly the crate in Frankfurt with our truck."  Denies the allegations in the second sentence of paragraph 116 of the Second Amended Complaint.

117.    Admits the allegations in the first sentence of paragraph 117 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 117 of the Second Amended Complaint, except admits that Valette signed the contract of sale on behalf of Sotheby's UK.  Denies the allegations in the third sentence of paragraph 117 of the Second Amended Complaint.  The allegations in the fourth sentence of paragraph 117 of the Second Amended Complaint state conclusions of law to which no response is required.  Denies the allegations in the fifth sentence of paragraph 117 of the Second Amended Complaint.

118.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 118 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 118 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding markup was.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 118 of the Second Amended Complaint.

119.     Denies the allegations in the first sentence of paragraph 119 of the Second Amended Complaint, except admits that on March 21, 2014, Valette emailed Bouvier a cataloguing for the work.  Denies the allegations in the second sentence of paragraph 119 of the Second Amended Complaint, except admits that Valette emailed a description of the work and that the description did not refer to a 2012 sale to Bouvier, which Valette had brokered.

120.     Admits the allegations in the first sentence of paragraph 120 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.  Denies the allegations in the second sentence of paragraph 120 of the Second Amended Complaint.  Denies the allegations in the third sentence of paragraph 120 of the Second Amended Complaint, except admits that the email contains the more formal word "votre" to connote "your," and includes Valette's signature block after his name.

121.     Denies the allegations in paragraph 121 of the Second Amended Complaint, except admits that Valette sent an email to Bouvier approximately one hour later, which included some of the same information, identified Simon Stock as Sotheby's UK's head of sculpture sales

and stated that Stock was in agreement with Valette, and states that the remaining allegations in

paragraph 121 of the Second Amended Complaint are characterizations of Valette's emails to

which no response is required and that the documents at issue speak for themselves.

122.     Denies knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 122 of the Second Amended Complaint.

Klimt's <em>Wasserschlangen II</em>

123.     Admits the allegations in paragraph 123 of the Second Amended Complaint.

124.     Admits the allegations in paragraph 124 of the Second Amended Complaint.

125.     Denies the allegations in the first sentence of paragraph 125 of the Second

Amended Complaint, except admits that on September 11, 2012 Bouvier signed a contract of

sale for the work on behalf of his affiliated entity Blancaflor with Sotheby's, Inc.'s Austria-based

affiliate Sotheby's Kunstauktionen Gesellschaft M.B.H, with a sale price of $126 million.

Denies the allegations in the second sentence of paragraph 125 of the Second Amended

Complaint, except admits that Valette helped facilitate four contract extensions on behalf of

Sotheby's Kunstauktionen Gesellschaft M.B.H. due to delays in obtaining an export license from

the Austrian government.

126.     Denies knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 126 of the Second Amended Complaint.

127.     Denies knowledge or information sufficient to form a belief as to the truth of the

allegations in the first sentence of paragraph 127 of the Second Amended Complaint.  Denies the

allegations in the second sentence of paragraph 127 of the Second Amended Complaint, except

denies knowledge or information sufficient to form a belief as to the truth of the allegations

regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding

26

markup was.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 127 of the Second Amended Complaint.

128.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128 of the Second Amended Complaint.

129.    Admits the allegations in paragraph 129 of the Second Amended Complaint.

130.    Denies the allegations in paragraph 130 of the Second Amended Complaint, except admits that on July 16, 2013 Valette emailed Bouvier a cataloguing for the work and later provided a certificate from the Art Loss Register, and that neither document referred to Bouvier's acquisition of the work.

131.    Admits the allegations in paragraph 131 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French emails, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.

132.    Denies the allegations in paragraph 132 of the Second Amended Complaint, except admits that Valette separately sent different versions of an article from *Der Standard* reporting that Sotheby's Kunstauktionen Gesellschaft M.B.H. had sold the work for $120 million and that the emails contained no subject or cover note, and that the version sent to Bouvier was in French while the version sent to Peretti was in German, and states that the remaining allegations in the second sentence of paragraph 132 are characterizations of Valette's emails to which no response is required and that the documents at issue speak for themselves.

133.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 133 of the Second Amended Complaint.

134.     Denies the allegations in the first sentence of paragraph 134 of the Second Amended Complaint, except admits that on October 24, 2014, Sotheby's UK provided Bouvier an insurance valuation for the work, delivered by Valette.  Denies the allegations in the second sentence of paragraph 134 of the Second Amended Complaint, except admits that the insurance valuation was signed by Valette on letterhead for Sotheby's UK, and was addressed to "Mr. Confidential Client One Hundred and Thirty Four."  Denies the allegations in the third sentence of paragraph 134 of the Second Amended Complaint, except admits that Sotheby's UK assessed the retail replacement value of the work at $180 million and that the insurance valuation did not refer to Bouvier's acquisition of the work, which Valette had brokered.

Modigliani's <em>Tête</em>

135.     Admits the allegations in paragraph 135 of the Second Amended Complaint.

136.     Admits the allegations in the first sentence of paragraph 136 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.  Denies the allegations in the second sentence of paragraph 136 of the Second Amended Complaint, except admits that Bouvier requested additional information about comparable sales on the list Valette previously had sent him, and that Valette complied with that request.

137.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137 of the Second Amended Complaint.

138.     Admits the allegations in paragraph 138 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits

28

only that in sum and substance the translation of the excerpted portion of the email into English is accurate.

139.   Admits the allegations in the first sentence of paragraph 139 of the Second Amended Complaint.  Admits the allegations in the second sentence of paragraph 139 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.  Denies the allegations in the third sentence of paragraph 139 of the Second Amended Complaint.

140.   Admits the allegations in paragraph 140 of the Second Amended Complaint.

141.   Admits the allegations in the first sentence of paragraph 141 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 141 of the Second Amended Complaint, except admits that Peretti wrote back "Call me thank you."

142.   Denies the allegations in the first sentence of paragraph 142 of the Second Amended Complaint, except admits that on July 24, 2012, Valette sent Bouvier an email describing the work and estimating its worth as between €70 and €90 million or maybe more, and that in sum and substance the translation of the excerpted portion of the email into English is accurate.  Denies the allegations in the second sentence of paragraph 142 of the Second Amended Complaint, except admits that Valette had by this point arranged for delivery of the sculpture to Bouvier's freeport.  Admits the allegations in the third sentence of paragraph 142 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.  Denies the allegations in the fourth sentence of paragraph 142 of the Second Amended Complaint.

143.     Denies the allegations in the first sentence of paragraph 143 of the Second Amended Complaint, except admits that on July 25, 2012, Valette emailed a different version of the email he previously had sent Bouvier describing the work, and that Valette's July 25, 2012 email estimated the value of the work to be between €80 and €100 million.  Denies the allegations in the second sentence of paragraph 143 of the Second Amended Complaint, and states that Plaintiffs' allegations concerning differences between Valette's emails are characterizations of those emails to which no response is required and that the documents at issue speak for themselves.

144.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 144 of the Second Amended Complaint.

145.     Admits the allegations in the first sentence of paragraph 145 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 145 of the Second Amended Complaint.

146.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first through fifth sentences of paragraph 146 of the Second Amended Complaint. Denies the allegations in the sixth sentence of paragraph 146 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether or what Bouvier charged Plaintiffs for the work and what any corresponding markup was.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the seventh and eighth sentences of paragraph 146 of the Second Amended Complaint.

147.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 147 of the Second Amended Complaint.

30

148.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 148 of the Second Amended Complaint.

149.     Denies the allegations in the first sentence of paragraph 149 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiffs knew or may have learned from Bouvier. Denies the allegations in the second sentence of paragraph 149 of the Second Amended Complaint, except admits that a consignment agreement between Bouvier's affiliated entity Blancaflor and Sotheby's, Inc. was signed on September 15, 2014.

150.     Denies the allegations in the first sentence of paragraph 150 of the Second Amended Complaint, except admits that Vinciguerra wrote to Peretti, copying Valette, that Sotheby's, Inc. would the next day pay $25 million to Bouvier followed by payments of $15 million and $10 million if an unspecified client won the auction.  Denies the allegations in the second sentence of paragraph 150 of the Second Amended Complaint.

151.     Admits the allegations in paragraph 151 of the Second Amended Complaint.

152.     Denies the allegations in paragraph 152 of the Second Amended Complaint, except admits that the catalogue entry for the auction of the work did not state that Bouvier's affiliated entity Blancaflor previously had purchased the work.

153.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 153 of the Second Amended Complaint regarding what Bouvier did or did not do with respect to Plaintiffs, admits that Sotheby's had no contact with Plaintiffs regarding the sale of the work, denies that it had any knowledge regarding Plaintiffs' relationship to the work or that it had any obligation to seek or obtain Plaintiffs' permission regarding the sale of the work, and avers that Bouvier represented to it that he had authority to sell the work.

154.    Denies the allegations in the first sentence of paragraph 154 of the Second Amended Complaint.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 154 of the Second Amended Complaint

155.    Admits the allegations in the first sentence of paragraph 155 of the Second Amended Complaint, and avers that at all relevant times Sotheby's and its affiliated entities abided by the Sotheby's Code of Business Conduct.  Denies the allegations in the second sentence of paragraph 155 of the Second Amended Complaint, except admits that the quoted excerpt from Defendant Sotheby's 2017 Annual Report is accurate.

156.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 156 of the Second Amended Complaint.

157.    Admits the allegations in paragraph 157 of the Second Amended Complaint.

Toulouse-Lautrec's Green <em>Au Lit: Le Baiser</em>

158.    Denies the allegations in the first and second sentences of paragraph 158 of the Second Amended Complaint, except admits that Sotheby's UK brokered the sale of Toulouse-Lautrec's *Au Lit: Le Baiser* to Bouvier's affiliated entity Blancaflor on October 8, 2012 for $7.5 million, and that Valette signed the contract of sale on behalf of Sotheby's UK.  Admits the allegations in the third sentence of the Second Amended Complaint relating to the coloring of the Green Toulouse-Lautrec and the Red Toulouse-Lautrec, and states that the remaining allegations in the third sentence of paragraph 158 of the Second Amended Complaint describe Plaintiffs' naming conventions for the two artworks to which no response is required.

159.    Denies the allegations in paragraph 159 of the Second Amended Complaint, except admits that on December 11, 2012, Valette emailed Peretti information about the work.

160.    Admits the allegations in paragraph 160 of the Second Amended Complaint.

161.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 161 of the Second Amended Complaint.

162.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 162 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 162 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether or what Bouvier charged Plaintiffs for the work and what any corresponding markup was.

163.    [paragraph empty]

### Da Vinci's *Christ as Salvator Mundi*

164.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 164 of the Second Amended Complaint.

165.    Admits the allegations in paragraph 165 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.

166.    Denies the allegations in paragraph 166 of the Second Amended Complaint.

167.    Denies the allegations in paragraph 167 of the Second Amended Complaint.

168.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 168 of the Second Amended Complaint.

169.    Denies the allegations in the first sentence of paragraph 169 of the Second Amended Complaint, except admits that Valette, Peretti, and one of the Da Vinci sellers met in

Paris on April 10, 2013.  Admits the allegations in the second sentence of paragraph 169 of the Second Amended Complaint.

170.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 170 of the Second Amended Complaint.

171.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 171 of the Second Amended Complaint.

172.    Denies the allegations in paragraph 172 of the Second Amended Complaint, except admits that Sotheby's, Inc. brokered the sale of Da Vinci's *Christ as Salvator Mundi* to Bouvier's affiliated entity Blancaflor on May 2, 2013 for $83 million, the date on which the contract of sale was signed.

173.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of paragraph 173 of the Second Amended Complaint.  Denies the allegations in the third sentence of paragraph 173 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether and what Bouvier charged Plaintiffs for the work and what any corresponding markup was.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of paragraph 173 of the Second Amended Complaint.

174.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 174 of the Second Amended Complaint.

175.    Admits the allegations in paragraph 175 of the Second Amended Complaint.

176.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 176 of the Second Amended Complaint.

177.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 177 of the Second Amended Complaint.

178.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 178 of the Second Amended Complaint.

179.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 179 of the Second Amended Complaint.

180.    Denies the allegations in paragraph 180 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether and when Plaintiffs' representative confronted Bouvier and admits that Sotheby's UK agreed to provide an insurance valuation of the work upon Bouvier's request.

181.    Denies the allegations in paragraph 181 of the Second Amended Complaint, except admits that on January 27, 2015, Valette emailed Bouvier a draft insurance valuation for the work provided by Sotheby's UK identifying its retail replacement value at $100 million, along with a cover letter from Bell indicating that Bouvier had acquired the work in 2013, and that in sum and substance the translation of the excerpted portion of the email into English is accurate.

182.    Denies the allegations in the first sentence of paragraph 182 of the Second Amended Complaint, except admits that on January 28, 2015, Valette emailed Bouvier a revised insurance valuation for the work identifying its retail replacement value at €100 million.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 182 of the Second Amended Complaint.  Admits the allegations in the third sentence of paragraph 182 of the Second Amended Complaint.

183.    Denies the allegations in paragraph 183 of the Second Amended Complaint.

184.    Denies the allegations in the first sentence of paragraph 184 of the Second Amended Complaint, except admits that, on November 21, 2016, Sotheby's, Inc. filed an action seeking a declaratory judgment that it did not breach its obligations to the sellers of *Christ as Salvator Mundi*, and that the case citation following this sentence is accurate.  Denies the allegations in the second sentence of paragraph 184 of the Second Amended Complaint, except admits that Sotheby, Inc.'s declaratory action was settled and that the settlement is confidential. Denies the allegations in the third sentence of paragraph 184 of the Second Amended Complaint and refers the Court to the referenced complaint for a complete and accurate statement of its contents.  Denies the allegations in the fourth sentence of paragraph 184 of the Second Amended Complaint.

185.    Denies the allegations in paragraph 185 of the Second Amended Complaint, except admits that the quotation from the Sotheby's Code of Business Conduct is accurate.

186.    Denies the allegations in the first sentence of paragraph 186 of the Second Amended Complaint.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of paragraph 186 of the Second Amended Complaint.  Denies the allegations in the fourth sentence of paragraph 186 of the Second Amended Complaint.

### Gauguin's *Otahi*

187.    Denies the allegations in the first sentence of paragraph 187 of the Second Amended Complaint, except admits that on October 24, 2014 Sotheby's UK provided Bouvier with an insurance valuation for Gauguin's *Otahi Seule* identifying its retail replacement value at $120 million.  Admits the allegations in the second sentence of paragraph 187 of the Second Amended Complaint.

188.     Admits the allegations in the first sentence of paragraph 188 of the Second Amended Complaint, with the qualification that, with respect to the translation of the referenced French email, it admits only that in sum and substance the translation of the excerpted portion of the email into English is accurate.  Denies the allegations in the second sentence of paragraph 190 of the Second Amended Complaint, except admits that the second insurance valuation of the work identified its retail replacement value at $140 million.  Denies the allegations in the third sentence of paragraph 188 of the Second Amended Complaint, and states that the allegations in that sentence are characterizations of Valette's emails to which no response is required and that the documents at issue speak for themselves.

189.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 189 of the Second Amended Complaint.

190.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 190 of the Second Amended Complaint.

191.     Denies the allegations in paragraph 191 of the Second Amended Complaint, except admits that the insurance valuations provided to Bouvier did not refer to Bouvier's acquisition of the work.

### Resale of the Red Toulouse-Lautrec, Au Lit, Le Baiser

192.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 192 of the Second Amended Complaint.

193.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 193 of the Second Amended Complaint.

194.     Denies the allegations in the first sentence of paragraph 194 of the Second Amended Complaint, except admits that the Toulouse-Lautrec is primarily red in color, and

states that Bouvier forwarded information about the Red Toulouse-Lautrec to Peretti, who subsequently forwarded Bouvier's email to Valette.  Admits the allegations in the second sentence of paragraph 194 of the Second Amended Complaint.

195.    Denies the allegations in paragraph 195 of the Second Amended Complaint, except admits that Sotheby's UK and Blancaflor subsequently agreed that Sotheby's UK would facilitate the sale of the Red Toulouse-Lautrec at auction.

196.    Denies the allegations in paragraph 196 of the Second Amended Complaint.

197.    Denies the allegations in the first sentence of paragraph 197 of the Second Amended Complaint, except admits that on December 18, 2014, Valette sent Bouvier an email about the Red Toulouse-Lautrec stating the team's opinion that the work was exceptional, recommending selling it in London rather than New York, and stating that the team was working on a catalog presentation that would be ready the next day.  Denies the allegations in the second sentence of paragraph 197 of the Second Amended Complaint.

198.    Denies the allegations in paragraph 198 of the Second Amended Complaint, except admits that on December 18, 2014, Valette sent Bouvier a series of emails concerning the four works referenced in this paragraph and that an email regarding Rodin's *Eve* contained the excerpted portion, the translation of which in sum and substance is accurate.

199.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 199 of the Second Amended Complaint.

200.    Denies the allegations in the first sentence of paragraph 200 of the Second Amended Complaint, except admits that on December 19, 2014, Valette sent Bouvier a draft of the catalogue entry for the Red Toulouse-Lautrec, which provided an auction estimate for the

work of between £9,000,000 and £12,000,000.  Admits the allegations in the second sentence of paragraph 200 of the Second Amended Complaint.

201.     Denies the allegations in paragraph 201 of the Second Amended Complaint, except admits that approximately two hours later, Valette emailed Bouvier a draft catalogue entry for the Red Toulouse-Lautrec, which provided an auction estimate for the Red Toulouse-Lautrec of between £10,000,000 and £15,000,000 (or €12.59 million to €18.89 million, or $15.68 million to $23.52 million), that the email, written in French, contains the less formal word "toi" and not the word "vous" to connote "you," and that in sum and substance the translation of the excerpted portion of the email into English is accurate.

202.     Denies the allegations in paragraph 202 of the Second Amended Complaint, except admits that approximately ten minutes later, Valette sent Bouvier an email attaching the draft catalogue entry providing an auction estimate for the Red Toulouse-Lautrec of between £10,000,000 and £15,000,000.

203.     Denies the allegations in paragraph 203 of the Second Amended Complaint, except admits that Valette and Bouvier exchanged additional emails on the same email chain.

204.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 204 of the Second Amended Complaint.

205.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 205 of the Second Amended Complaint.

206.     Denies the allegations in paragraph 206 of the Second Amended Complaint, except admits that on December 24, 2014, Sotheby's UK and Blancaflor signed a contract consigning the Red Toulouse-Lautrec for sale at auction on February 3, 2015.

207.     Denies the allegations in paragraph 207 of the Second Amended Complaint, except admits that the contract included an auction estimate for the Red Toulouse-Lautrec of between £9,000,000 and £12,000,000.

208.     Denies the allegations in paragraph 208 of the Second Amended Complaint.

209.     Denies the allegations in paragraph 209 of the Second Amended Complaint, except admits that at the February 3, 2015 auction, Sotheby's facilitated the sale of the Red Toulouse-Lautrec for £9,500,000.

210.     Admits the allegations in paragraph 210 of the Second Amended Complaint.

211.     Denies the allegations in the first sentence of paragraph 211 of the Second Amended Complaint, except admits that Valette emailed Bouvier on February 17, 2015 with a breakdown of the work's auction estimate, pro-rata guarantee, hammer price, buyer's premium, and consignment fee due to the seller, and that Valette's email contained the more formal word "votre" to connote "your."  Denies the allegations in the second sentence of paragraph 211 of the Second Amended Complaint, except admits that Valette subsequently forwarded his email to Peretti.  Denies the allegations in the third sentence of paragraph 211 of the Second Amended Complaint.

212.     Denies the allegations in paragraph 212 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations that on February 25, 2015, Bouvier was arrested in Monaco.

213.     Denies the allegations in paragraph 213 of the Second Amended Complaint, except admits that on March 2, 2015, Sotheby's agreed to modify the schedule of payments to Blancaflor from the sale of the Red Toulouse-Lautrec and other works, from scheduled payments

of £5,000,000 on May 9, 2015 and £4,008,991 on August 3, 2015 to scheduled payments of £4,000,000 on March 16, 2015 and £5,008,991 on August 3, 2015.

214.    Denies the allegations in paragraph 214 of the Second Amended Complaint, except admits that (a) Vinciguerra subsequently wrote by email that he was fine with making an advance payment of $2,000,000 from the $4,000,000 due to Blancaflor on March 16, 2015, and (b) the quoted excerpt of Vinciguerra's email is accurate, and states that the advance payment discussed by Vinciguerra was not made.

215.    Denies the allegations in the first sentence of paragraph 215 of the Second Amended Complaint, except admits that on March 9, 2015, the purchaser of the Red Toulouse-Lautrec wrote to Sotheby's to express concern that the work he had purchased was mentioned in an article about Plaintiffs' allegations against Bouvier.  Denies the allegations in the second sentence of paragraph 215 of the Second Amended Complaint.

216.    Denies the allegations in paragraph 216 of the Second Amended Complaint, except admits that Valette met in person with Bouvier on March 12, 2015.

217.    Admits the allegations in paragraph 217 of the Second Amended Complaint.

218.    Denies the allegations in paragraph 218 of the Second Amended Complaint.

219.    Denies the allegations in paragraph 219 of the Second Amended Complaint, except admits that on March 16, 2015, Sotheby's UK paid Blancaflor £4,000,000 in accordance with the payment terms as amended on March 2, 2015.

220.    Denies the allegations in paragraph 220 of the Second Amended Complaint.

221.    Denies the allegations in the first sentence of paragraph 221 of the Second Amended Complaint, except admits that on March 18, 2015, Bouvier emailed Valette to request a breakdown by artwork of the global guarantee extended to Blancaflor in connection with its

41

February 3, 2015 auction of artworks, including the Red Toulouse-Lautrec, and that Bouvier stated he needed these details for the Red Toulouse-Lautrec because the proceeds were to be deducted from a debt.  Denies the allegations in the second sentence of paragraph 221 of the Second Amended Complaint, except admits that Valette provided Bouvier with the requested information.

222.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 222 of the Second Amended Complaint.

223.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 223 of the Second Amended Complaint.

224.     Denies the allegations in paragraph 224 of the Second Amended Complaint, except admits that in October 2015 Sotheby's informed counsel for Plaintiff Xitrans Finance Ltd. and counsel for Blancaflor that, in light of their competing claims to the remaining proceeds from the sale of the Red Toulouse-Lautrec, Sotheby's would hold the remainder of the proceeds until Sotheby's received either (i) a written joint instruction from, or on behalf of, Xitrans and Blancaflor; or (ii) a final order from a Court of competent jurisdiction which is binding on Sotheby's.

225.     Denies the allegations in paragraph 225 of the Second Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiffs' receipt of any proceeds from the sale of the Red Toulouse-Lautrec.

### *Sotheby's Functions as One Single Entity*

226.     Denies the allegations in paragraph 226 of the Second Amended Complaint.

227.    Denies the allegations in paragraph 227 of the Second Amended Complaint, except admits that, at times, the subsidiaries of Defendant Sotheby's may have been referred to colloquially as "offices or "locations."

228.    Admits the allegations in the first sentence of paragraph 228 of the Second Amended Complaint.  Denies the allegations in the second sentence of paragraph 228 of the Second Amended Complaint.

229.    Admits the allegations in the first sentence of paragraph 229 of the Second Amended Complaint.  Denies the allegations in the second through fourth sentences of paragraph 229 of the Second Amended Complaint.  Denies the allegations in the fifth sentence of paragraph 229 of the Second Amended Complaint, except admits that the headquarters of Defendant Sotheby's is in New York.

230.    Denies the allegations in paragraph 230 of the Second Amended Complaint, except admits that some of the sales contracts for works referenced in the Second Amended Complaint were signed by Sotheby's, Inc., others by Sotheby's UK, and others by Sotheby's S.A. or Sotheby's Kunstauktionen Gesellschaft M.B.H.

231.    Denies the allegations in paragraph 231 of the Second Amended Complaint.

232.    Denies the allegations in paragraph 232 of the Second Amended Complaint and refers the Court to the referenced complaint for a complete and accurate statement of its contents.

233.    Denies the allegations in paragraph 233 of the Second Amended Complaint and refers the Court to the referenced complaint for a complete and accurate statement of its contents.

234.    Denies the allegations in paragraph 234 of the Second Amended Complaint and refers the Court to the referenced declaration for a complete and accurate statement of its contents.

235.    Denies the allegations in paragraph 235 of the Second Amended Complaint.

236.    Admits the allegations in paragraph 236 of the Second Amended Complaint, except avers that Valette is employed not by Defendant Sotheby's but by Sotheby's UK, which has not fired or disciplined him, and that there was no basis for doing so.

237.    Denies the allegations in paragraph 237 of the Second Amended Complaint, except admits that the quoted portions of the Sotheby's Code of Conduct are accurate and avers that at all relevant times it has complied with the Code of Conduct.

238.    Admits that the quoted portions of the Sotheby's Code of Conduct are accurate and avers that at all relevant times it has complied with the Code of Conduct.

239.    Denies the allegations in paragraph 239 of the Second Amended Complaint.

## FIRST CLAIM
### Aiding and Abetting Fraud

240.    In response to the allegations in paragraph 240 of the Second Amended Complaint, repeats each response contained in paragraphs 1 through 239 of the Second Amended Complaint as if fully set forth herein.

241.    Denies the allegations in paragraph 241 of the Second Amended Complaint and avers as follows:  Although Sotheby's and its affiliated entities were generally aware that Bouvier could either be the ultimate purchaser, or one of a group of investors, or purchasing with the intent to resell to another, Sotheby's and its affiliated entities at no point knew what Bouvier planned to do with any work of art he acquired in a transaction brokered by Sotheby's, Inc. or its affiliated entities.  Nor did Sotheby's or its affiliated entities know the price that Bouvier planned to later charge for any work of art, if he did decide to re-sell it.  While Sotheby's and its affiliated entities later learned through press reports, court filings, and other means that Bouvier subsequently sold certain pieces to Rybolovlev by way of Plaintiffs, Sotheby's and its affiliated

entities were not aware of any re-sales at the time they took place; nor did Sotheby's or its affiliated entities know the prices that Plaintiffs claim Bouvier charged them at the time of such re-sales.  If Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's and its affiliated entities had no knowledge of any such fraud or breach of fiduciary duty, and have no liability whatsoever to Plaintiffs.

242.     Denies the allegations in paragraph 242 of the Second Amended Complaint.

243.     Denies the allegations in paragraph 243 of the Second Amended Complaint.

244.     Denies the allegations in paragraph 244 of the Second Amended Complaint.

## SECOND CLAIM
### Aiding and Abetting Breach of Fiduciary Duty

245.     In response to the allegations in paragraph 245 of the Second Amended Complaint, repeats each response contained in the preceding paragraphs as if fully set forth herein.

246.     Denies the allegations in the first sentence of paragraph 246 of the Second Amended Complaint.  Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the remaining sentences of paragraph 246 of the Second Amended Complaint and avers as follows:  Although Sotheby's and its affiliated entities were generally aware that Bouvier could either be the ultimate purchaser, or one of a group of investors, or purchasing with the intent to resell to another, Sotheby's and its affiliated entities at no point knew what Bouvier planned to do with any work of art he acquired in a transaction brokered by Sotheby's, Inc. or its affiliated entities.  Nor did Sotheby's or its affiliated entities know the price that Bouvier planned to later charge for any work of art, if he did decide to re-sell it.  While Sotheby's and its affiliated entities later learned through press reports, court filings, and other means that Bouvier subsequently sold certain pieces to Rybolovlev by way of Plaintiffs,

Sotheby's and its affiliated entities were not aware of any re-sales at the time they took place; nor did Sotheby's and its affiliated entities know the prices that Plaintiffs claim Bouvier charged them at the time of such re-sales.  If Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's and its affiliated entities had no knowledge of any such fraud or breach of fiduciary duty, and have no liability whatsoever to Plaintiffs.

247.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 247 of the Second Amended Complaint.

248.    Denies the allegations in paragraph 248 of the Second Amended Complaint.

249.    Denies the allegations in paragraph 249 of the Second Amended Complaint.

250.    Denies the allegations in paragraph 250 of the Second Amended Complaint.

## THIRD CLAIM
### Breach of Contract – Declaratory Judgment

251.    In response to the allegations in paragraph 251 of the Second Amended Complaint, repeats each response contained in the preceding paragraphs as if fully set forth herein.

252.    Admits the allegations in paragraph 252 of the Second Amended Complaint.

253.    Admits the allegations in paragraph 253 of the Second Amended Complaint.

254.    Denies the allegations in paragraph 254 of the Second Amended Complaint, except admits that the quote contained in the paragraph is accurate and refers the Court to the full Tolling Agreement for a complete and accurate statement of its contents.

255.    Denies the allegations in paragraph 255 of the Second Amended Complaint, except admits that the quote contained in the paragraph is accurate and refers the Court to the full Tolling Agreement for a complete and accurate statement of its contents.

256.     Denies the allegations in the first and second sentences of paragraph 256 of the
Second Amended Complaint, except admits that Sotheby's, Inc., Sotheby's UK, Sotheby's
Kunstauktionen Gesellschaft M.B.H., and Sotheby's S.A. filed a civil proceeding in Geneva,
Switzerland on November 17, 2017 against Plaintiffs and others.  The allegations in the third and
fourth sentences of paragraph 256 of the Second Amended Complaint state conclusions of law to
which no response is required.

257.     Denies the allegations in paragraph 257 of the Second Amended Complaint,
except admits that the quote contained in the paragraph is accurate.

258.     The allegations in paragraph 258 of the Second Amended Complaint state
conclusions of law to which no response is required.  To the extent a response is required, denies
the allegations in paragraph 258 of the Second Amended Complaint and avers that Plaintiffs
terminated the Tolling Agreement prior to the filing of the Swiss civil proceeding.

259.     Denies the allegations in paragraph 259 of the Second Amended Complaint.

260.     Denies the allegations in paragraph 260 of the Second Amended Complaint.

261.     Denies the allegations in paragraph 261 of the Second Amended Complaint.

## FOURTH CLAIM
### Breach of Contract – Damages

262.     In response to the allegations in paragraph 262 of the Second Amended
Complaint, repeats each response contained in the preceding paragraphs as if fully set forth
herein.

263.     Denies the allegations in paragraph 263 of the Second Amended Complaint.

## FIFTH CLAIM
### Breach of Contract – Injunction

264.    In response to the allegations in paragraph 264 of the Second Amended

Complaint, repeats each response contained in the preceding paragraphs as if fully set forth

herein.

265.    Denies the allegations in paragraph 265 of the Second Amended Complaint and

avers that this Fifth Claim was dismissed by the Court by decision dated June 25, 2019;

accordingly, there is no claim for this relief pending in this action.

266.    Denies the allegations in paragraph 266 of the Second Amended Complaint and

avers that this Fifth Claim was dismissed by the Court by decision dated June 25, 2019;

accordingly, there is no claim for this relief pending in this action.

267.    Denies the allegations in paragraph 267 of the Second Amended Complaint and

avers that this Fifth Claim was dismissed by the Court by decision dated June 25, 2019;

accordingly, there is no claim for this relief pending in this action.

## DEFENSES AND AFFIRMATIVE DEFENSES

Sotheby's asserts the following defenses without admitting or conceding that they are

affirmative defenses for which Sotheby's carries the burden of proof, and without waiving or

conceding any argument that Plaintiffs must satisfy the burden of proof under the applicable law.

Sotheby's reserves the right to assert any additional defenses to the extent permitted by applicable

law as and when discovery and/or further investigation show that such defenses are applicable.

## FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs lack standing.

## SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs lack capacity to sue.

## THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs are not the real party or parties in interest.

## FOURTH DEFENSE

The Second Amended Complaint fails to state a claim upon which relief can be granted.

## FIFTH DEFENSE

The Second Amended Complaint fails to set forth Plaintiffs' claims with particularity as required under Federal Rule of Civil Procedure 9(b).

## SIXTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations, statutes of repose, and any other statutory or common law defense based on the passage of time.

## SEVENTH DEFENSE

Plaintiffs' Fifth Claim was dismissed by the Court by decision dated June 25, 2019; accordingly, there is no claim for this relief pending in this action.

## EIGHTH DEFENSE

Plaintiffs have failed to join one or more necessary and indispensable parties, including, without limitation, Dmitry Rybolovlev; Yves Bouvier; persons or entities acting on behalf of or under the employment, control, direction, or ownership of Rybolovlev or Bouvier; and other third parties who engaged in or unreasonably failed to prevent the alleged misconduct and alleged injuries that form the basis of Plaintiffs' Second Amended Complaint.

## NINTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of collateral estoppel, res judicata, waiver, and/or laches.

## TENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Sotheby's conduct was not a cause of the harm, injuries, and/or damages alleged by Plaintiffs.

## ELEVENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because none of Sotheby's acts, conduct, omissions, or statements alleged in the Second Amended Complaint provided any, much less substantial, assistance to the alleged fraud by Bouvier.

## TWELFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the alleged culpable conduct of Sotheby's, none being admitted, was so insubstantial as to be insufficient to be a proximate or substantial contributing cause of Plaintiffs' damages or losses.

## THIRTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of unclean hands and estoppel.  Should discovery show that Plaintiffs or its agents acted inequitably in responding to the alleged harms, such conduct should be taken into account in assessing Plaintiffs' claims and whether, and to what extent, they are entitled to relief in this action.

## FOURTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate damages. Plaintiffs have failed to take appropriate and necessary steps to mitigate any alleged damages. Among other things, they failed to take adequate steps to monitor or limit any alleged wrongful overcharging by Bouvier.

## SIXTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the economic loss doctrine and/or the doctrine of remoteness.

## SEVENTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they are speculative and remote and because of the impossibility of ascertaining and allocating the damages alleged.

## EIGHTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs knew or reasonably should have known the characteristics and quality of each work of art at issue and therefore could not have justifiably relied on the alleged misrepresentations or omissions set forth in the Second Amended Complaint.

## NINETEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' alleged claims and/or damages were caused by persons and/or entities other than Sotheby's.  Accordingly, Plaintiffs may not recover against Sotheby's.  Alternatively, any assessment of liability against Sotheby's must be reduced in proportion to the relative fault of such other persons and/or entities, whether or not such persons and/or entities have been named in any litigation or proceeding, and whether or not such persons and/or entities have settled with Plaintiffs or otherwise have had judgment entered against them.

## TWENTIETH DEFENSE

The alleged injuries asserted by Plaintiffs are too speculative, derivative, and/or remote from the alleged wrongful conduct to be a basis for liability as a matter of law and due process.

## TWENTY-FIRST DEFENSE

The alleged conduct of Sotheby's was not the but-for, proximate, or legal cause of Plaintiffs' purported injuries, harm, or damages.  Plaintiffs' alleged injuries, if any, were the result of superseding and/or intervening causes, including but not limited to the acts and omissions of third parties acting separately and independently from Sotheby's, over which Sotheby's had no control and for which Sotheby's was not responsible.  Moreover, the claims set forth in the Second Amended Complaint are barred, in whole or in part, because the purported injuries, harm, or damages (if any) were caused, in whole or in part, by Plaintiffs' own conduct, and/or that of its contractors or agents, which constitutes superseding and intervening cause(s).

## TWENTY-SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, because any harm to or reliance by Plaintiffs caused by misconduct alleged in the Second Amended Complaint was caused by the intervening acts, superseding negligence, and/or subsequent conduct or fault on the part of a person or entity over whom Sotheby's had neither control nor a right of control, and therefore Sotheby's is entitled to an apportionment of any damages accordingly.

## TWENTY-THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent they seek to recover for the acts or omissions of third parties, because any third party engaging in the acts alleged by Plaintiffs was not acting as Sotheby's agent or servant, at the instruction of Sotheby's, or within Sotheby's control.

## TWENTY-FOURTH DEFENSE

Plaintiffs' claims are barred by the terms and conditions of the agreements they entered into with Sotheby's and/or third parties.

### TWENTY-FIFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable provisions of the United States Constitution or the Constitution of the State of New York.  These provisions include, but are not limited to, the First Amendment to the United States Constitution and Article I, Section 8 of the Constitution of the State of New York, which protect Sotheby's commercial speech because it was neither false nor misleading.

### TWENTY-SIXTH DEFENSE

The representations or statements alleged to have been made were true and accurate at the time made and/or otherwise were made in good faith, with a reasonable belief as to their validity and accuracy and with a reasonable belief that all conduct was lawful.

### TWENTY-SEVENTH DEFENSE

Plaintiffs' claims are barred by lack of privity.

### TWENTY-EIGHTH DEFENSE

Plaintiffs did not rely to their detriment upon any lawful statement in determining whether to purchase the works of art at issue.

### TWENTY-NINTH DEFENSE

To the extent Plaintiffs seek to impose liability for broad, general statements regarding the value or quality of products that were made to and reasonably understood by Plaintiffs as opinion, such statements cannot constitute aiding and abetting fraud or aiding and abetting breach of fiduciary duty as a matter of law.

## THIRTIETH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the alteration, modification, and illicit and/or illegal use or misuse by third parties of communications made or documents prepared by Sotheby's.

## THIRTY-FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent they seek to recover any damages, restitution, costs, or other payments that have been paid or borne by other persons or entities.  Any verdict of judgment that might be recovered must be reduced by those amounts that already have been or will in the future, with reasonable certainty, be paid to Plaintiffs by others or indemnify Plaintiffs.

## THIRTY-SECOND DEFENSE

Sotheby's is entitled to a credit, set-off, or offset for all sums of money received or available from or on behalf of any tortfeasor(s) for the same injuries alleged in Plaintiffs' Second Amended Complaint, including but not limited to any and all settlements Plaintiffs may reach with any tortfeasor(s).

## THIRTY-THIRD DEFENSE

Sotheby's alleged liability, if any, must be limited in accordance with the percentage of fault allocated to it by the ultimate trier of fact and/or law.  A defendant may only be severally liable for any injuries or expenses.  Plaintiffs' alleged damages are not indivisible but comprise separate and discrete costs.

## THIRTY-FOURTH DEFENSE

Plaintiffs' claims for punitive damages, statutory damages, civil penalties, and other relief are prohibited under the Fifth, Eighth, and Fourteenth Amendments of the United States

Constitution, and Article 1, Section 5 of the New York Constitution. Plaintiffs' claims for punitive damages, statutory damages, civil penalties, and other relief:

a.      have no basis in law or fact;

b.      are not recoverable because the Second Amended Complaint's allegations are legally insufficient to support or allow the imposition of punitive damages or other relief against Sotheby's consistent with the United States Constitution, the New York Constitution, New York law, or any other applicable law;

c.      cannot be sustained because the laws setting forth the standard(s) for determining liability for, and the amount(s) of, punitive damages or other relief fail to give Sotheby's prior notice of the conduct for which punitive damages or other relief may be imposed and the severity of the penalty that may be imposed, and are void for vagueness in violation of Sotheby's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article 1, Section 5 of the New York Constitution;

d.      cannot be sustained because any award of punitive damages or other relief exceeding the limits authorized by law would violate Sotheby's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article 1, Sections 5 and 6 of the New York Constitution and would be improper under the laws or common law of New York or under any other applicable law;

e.      cannot be sustained because any award of punitive damages or other relief without the apportionment of the award separately and severally between or among the alleged joint tortfeasors, as determined by the percentage of the wrong(s) allegedly committed by each tortfeasor, would violate Sotheby's due process and equal protection rights guaranteed by the

Fifth and Fourteenth Amendments to the United States Constitution and by Article 1, Sections 5, 6, and 11 of the New York Constitution; and

      f.      cannot be sustained because subjecting Sotheby's to punitive damages, statutory damages, civil penalties, or other relief that is penal in nature without the same protections accorded to criminal defendants would violate Sotheby's rights guaranteed by, *inter alia,* the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and by Article 1, Sections 5, 6, 11, and 12 of the New York Constitution.

## THIRTY-FIFTH DEFENSE

Plaintiffs is not entitled to any relief in the form of restitution or rescission because they cannot restore the *status quo ante.*

## THIRTY-SIXTH DEFENSE

To the extent Plaintiffs seek equitable relief, such claims are barred because Plaintiffs have an adequate remedy at law and cannot otherwise satisfy the elements for equitable relief.

## THIRTY-SEVENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs cannot establish facts sufficient to support the requisite elements of a claim for aiding and abetting fraud under New York law, if that law is applicable, including, without limitation, (1) the existence of an alleged underlying fraud under the applicable law, (2) Sotheby's actual knowledge of the alleged underlying fraud, and (3) acts by Sotheby's that substantially assisted the alleged underlying fraud.

## THIRTY-EIGHTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs cannot establish facts sufficient to support the requisite elements of a claim for aiding and abetting breach of fiduciary

duty under New York law, if that law is applicable, including, without limitation, (1) the existence of an alleged underlying breach of fiduciary duty under the applicable law, (2) Sotheby's actual knowledge of the alleged underlying breach of fiduciary duty, and (3) acts by Sotheby's that substantially assisted the alleged underlying breach of fiduciary duty.

### THIRTY-NINTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs cannot establish facts sufficient to support the requisite elements of a claim for aiding and abetting fraud under the laws of New York, the United Kingdom, Switzerland, Monaco, and/or Singapore, if the law of one or more of those jurisdictions is applicable, or under the laws of any other jurisdiction(s) whose laws may be applicable to Plaintiffs' First Claim of Aiding and Abetting Fraud.

### FORTIETH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs cannot establish facts sufficient to support the requisite elements of a claim for aiding and abetting breach of fiduciary duty under the laws of New York, the United Kingdom, Switzerland, Monaco, and/or Singapore, if the laws of one or more of those jurisdictions is applicable, or under the laws of any other jurisdiction(s) whose laws may be applicable to Plaintiffs' Second Claim of Aiding and Abetting Breach of Fiduciary Duty.

### FORTY-FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs cannot establish facts sufficient to support the requisite elements of a claim for breach of contract.

### FORTY-SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the Tolling Agreement is not enforceable.

### FORTY-THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Sotheby's performance under the Tolling Agreement was excused.

### FORTY-FOURTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the Tolling Agreement terminated on or about October 27, 2017.

### FORTY-FIFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Sotheby's has complied with any and all applicable statutes, regulations, and/or laws and has acted in good faith and without malice.

### FORTY-SIXTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Sotheby's treated Bouvier in the same responsive and professional manner it treats all of its clients, including by responding promptly to client requests and attempting to serve the client's business needs to the extent possible and permissible.

### FORTY-SEVENTH DEFENSE

Sotheby's relies upon all defenses contained in any applicable state statute or law.

### FORTY-EIGHTH DEFENSE

Sotheby's intends to rely upon any other defense that may become available or appear during the course of investigation, preparation, or discovery and hereby reserves the right to amend this Answer to assert any such defense.  Sotheby's also reserves the right to assert other and related defenses as may become available upon a determination of the law applicable to the action or any part thereof or claim therein.

Sotheby's is currently without knowledge or information sufficient to form a belief as to whether other defenses or affirmative defenses apply in this matter.  Accordingly, Sotheby's expressly reserves the right to raise any additional defenses or affirmative defenses that may be applicable to this case.

## DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, Defendants Sotheby's and Sotheby's, Inc. deny all of Plaintiffs' prayer for relief and respectfully request judgment in their favor and against Plaintiffs:

a.   Denying all of the relief requested by Plaintiffs in the Second Amended Complaint and dismissing the Second Amended Complaint with prejudice;

b.   Awarding Defendants their reasonable attorneys' fees and costs; and

c.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants Sotheby's and Sotheby's, Inc. hereby demand a trial by jury on all issues so triable.

Dated:  June 1, 2021
        New York, New York

                              Respectfully submitted,

                              ARNOLD & PORTER KAYE SCHOLER LLP

                              By:     */s/ Marcus A. Asner*
                                      Marcus A. Asner
                                      Sara L. Shudofsky
                                      Benjamin C. Wolverton
                                      250 West 55th Street
                                      New York, NY  10019-9710
                                      T:  (212) 836-8000
                                      F:  (212) 836-8689
                                      Marcus.Asner@arnoldporter.com
                                      Sara.Shudofsky@arnoldporter.com
                                      Benjamin.Wolverton@arnoldporter.com


                                      *Attorneys for Defendants Sotheby's and
                                      Sotheby's, Inc.*