**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ACCENT DELIGHT INTERNATIONAL LTD.
and XITRANS FINANCE LTD.,

                              Plaintiffs,

        v.                                              No. 1:18-cv-09011-JMF-RWL

SOTHEBY'S and SOTHEBY'S, INC.,

                              Defendants.

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**
**PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON**
**THE TAKING OF EVIDENCE ABROAD IN CIVIL MATTERS**
**TO OBTAIN EVIDENCE FROM YVES CHARLES EDGAR BOUVIER**

In conformity with Articles 1 and 3 of the Hague Convention of 18 March 1970 on the

Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), the United

States District Court for the Southern District of New York respectfully requests international

judicial assistance to obtain evidence from Yves Charles Edgar Bouvier ("Mr. Bouvier") for use

in the above-captioned civil proceeding currently pending before this Court (the "U.S. Action" or

"Action").  The evidence is sought by Defendants in the Action, Sotheby's and Sotheby's, Inc.

(together, "Sotheby's").  As set forth below, Mr. Bouvier is a critical fact witness whose evidence

is relevant to Plaintiffs' allegations in this Action and Sotheby's defenses thereto.

This Court previously requested international judicial assistance to obtain evidence from

Mr. Bouvier, in a request that was filed with the Tribunal de Première Instance of the Canton of

Geneva (the "Tribunal") on June 17, 2020, and which was denied by the Tribunal on August 4,

2020.  In its decision denying this Court's request, the Tribunal declared that it was incompetent

*ratione loci* to hear this Court's request.  A copy of the Tribunal's August 4, 2020 Order is attached

hereto as Exhibit A.  Mr. Bouvier has since provided to Sotheby's a letter dated May 27, 2021, in which he represents that although he "enjoys permanent resident status in Singapore and is domiciled at [address in] Singapore," he "is currently and for the next few months residing at his habitual abode at [address in] Geneva (lease agreement for his apartment attached), due in particular to the need to participate in the procedures underway in Switzerland and the strict quarantine measures in place in Singapore."  Mr. Bouvier has further represented that he "agrees to be heard as a witness by the Court of First Instance of Geneva within the framework of the execution of the request for civil assistance which would be sent to Switzerland by the New York Court, provided that his hearing is governed by the applicable Swiss civil procedure law."  A copy of Mr. Bouvier's letter to Sotheby's counsel, including the lease agreement for his apartment in Geneva (containing his full address there), is attached hereto as Exhibit B.

In addition to its requests to the Tribunal, this Court has also previously requested international judicial assistance from the High Court of the Republic of Singapore to obtain evidence from Mr. Bouvier (the "Singapore Court").  The Singapore Court granted this Court's request to obtain evidence from Mr. Bouvier on August 13, 2020.  By order of the Singapore Court on December 16, 2020, Sotheby's served Mr. Bouvier with a copy of the Singapore Court's Order dated August 13, 2020 at his address in Singapore and by email on his U.S. counsel.  Thereafter, on April 20 and May 4, 2021, Mr. Bouvier's counsel represented to the Examiner in Singapore that "[u]nder Swiss law, Mr. Bouvier may not lawfully participate from Switzerland in the deposition sought by Sotheby's" but that he "consents to appear in Switzerland at a deposition to be conducted under applicable Swiss procedures."   Subsequently, as noted above, by letter dated May 27, 2021, and submitted to this Court on June 4, 2021, Mr. Bouvier has represented that he is currently and for the next few months residing in Switzerland at his "habitual abode" in Geneva,

and as such is prohibited under Article 271 of the Swiss Code of Criminal Procedure from producing documents or testifying in response to the Singapore Court's August 13, 2020 Order. This Court is now renewing its Letter of Request in light of these developments.

The U.S. Action is a civil proceeding in which Plaintiffs allege that Sotheby's aided and abetted an alleged fraud and breach of fiduciary duty committed by Mr. Bouvier, an art dealer, against Plaintiffs. Mr. Bouvier therefore has documents and first-hand knowledge regarding at least two critical elements of Plaintiffs' claims against Sotheby's. *First*, Plaintiffs must prove that Mr. Bouvier committed the alleged underlying fraud and breach of fiduciary duty. Mr. Bouvier has direct knowledge of his relationship with Plaintiffs and of the entire course of conduct between them, including their communications, interactions, agreements, understandings, and disputes, all of which are relevant to proving or disproving the underlying fraud or breach of fiduciary duty. *Second*, even if Plaintiffs establish that Mr. Bouvier committed fraud or breached his fiduciary duty, they must then establish that Sotheby's aided and abetted that fraud or breach. This claim requires Plaintiffs to prove that Sotheby's acted with the requisite mental state regarding Mr. Bouvier's alleged fraud or breach of fiduciary duty. Mr. Bouvier has direct knowledge of his communications with Sotheby's and about the nature of his relationship and dealings with Plaintiffs. Sotheby's denies that it had any knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations regarding their relationship with Mr. Bouvier or any alleged defrauding of Plaintiffs by Mr. Bouvier, including what Mr. Bouvier allegedly charged Plaintiffs for any of the artworks at issue. Accordingly, it is critical to Sotheby's defenses in this case to obtain Mr. Bouvier's testimony and documents as to these subject matter areas.

The assistance requested is for the appropriate judicial authority of Switzerland to compel the appearance of Mr. Bouvier to produce documents and give oral testimony relevant to the claims and defenses in the Action.  The evidence is intended for use at trial.

1.      **Sender/Requesting Judicial Authority:**

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007
United States of America

2.      **Central Authority of the Requested State:**

Tribunal civil - Tribunal de première instance
Rue de l'Athénée 6-8
Case postale 3736
1211 Genève 3

3.      **Persons to Whom the Executed Request Is to be Returned:**

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007
United States of America

4.      **Names and Addresses of the Parties and Their Representatives:**

a.      **Plaintiffs:**

Accent Delight International Ltd.
Jipfa Building, 3rd Floor
142 Main Street
Road Town, Tortola
British Virgin Islands

Xitrans Finance Ltd.
Akara Building
24 De Castro Street
Wickhams Cay 1
Road Town
Tortola
British Virgin Islands

4

<u>Counsel for Plaintiffs:</u>
Daniel Kornstein
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Email: dkornstein@ecbalaw.com
Tel: +1 212 763 5000

Sandrine Giroud
LALIVE
Rue de la Mairie 35
P.O. Box 6569
1211 Geneva 6
Switzerland
Email: sgiroud@lalive.law
Tel: +41 58 105 2000

**b.    Defendants:**

Sotheby's
1334 York Avenue
New York, New York 10021
United States of America

Sotheby's, Inc.
1334 York Avenue
New York, New York 10021
United States of America

<u>Counsel for Defendants:</u>
Marcus A. Asner
Sara L. Shudofsky
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Email: Marcus.Asner@arnoldporter.com
Email: Sara.Shudofsky@arnoldporter.com
Tel: +1 212 836 7222

Saverio Lembo
Aurélie Conrad Hari
Bär & Karrer SA
12 quai de la Poste
1211 Geneva 11, Switzerland
Email: Saverio.Lembo@BaerKarrer.ch
Email: Aurelie.ConradHari@BaerKarrer.ch
Tel: +41 58 261 57 00

5.      **Nature of the Proceedings and Summary of the Facts:**

The U.S. Action is a civil lawsuit in which Plaintiffs allege that Sotheby's aided and abetted Mr. Bouvier's purported fraud and breach of fiduciary duty, and breached its contractual obligations to Plaintiffs.   A copy of the Second Amended Complaint ("Am. Compl.") and Sotheby's Answer to the Second Amended Complaint ("Sotheby's Answer") in the U.S. Action are attached hereto as Exhibits C and D.

Plaintiffs' action arises from a longstanding dispute between Plaintiffs Accent Delight International Ltd. and Xitrans Finance Ltd. and an art dealer, Mr. Bouvier.  Plaintiffs are companies incorporated in the British Virgin Islands; they are owned by the trust settled by and for the benefit of members of the family of Dmitry Rybolovlev.  Plaintiffs contend that, during the relevant time period, Mr. Rybolovlev was acting only as their representative.  Plaintiffs allege that Mr. Bouvier defrauded them of over one billion dollars when he served as their art advisor.  According to Plaintiffs, Plaintiffs and Mr. Bouvier agreed that Mr. Bouvier would act as Plaintiffs' agent to acquire art masterworks on their behalf.  Mr. Bouvier allegedly purchased 38 art masterworks from various private sellers, transferred the works to Plaintiffs at markups as high as 145%, and pocketed the difference for himself.  Plaintiffs assert that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to 14 of the art masterworks; Mr. Bouvier acquired 12 of those 14 art masterworks from third parties in private sales facilitated by Sotheby's entities before he transferred them to Plaintiffs.  Finally, Plaintiffs allege that Sotheby's breached a Tolling Agreement with Plaintiffs when Sotheby's filed a declaratory judgment action in Switzerland in 2017.

In their response to Sotheby's interrogatories in this case, Plaintiffs have identified Mr. Bouvier as having:  (i) "knowledge or information concerning . . . the allegations in the

Complaint"; (ii) "knowledge or information concerning any transaction involving one or more of the [artworks at issue]"; (iii) "knowledge or information concerning the alleged agency or fiduciary relationship between [Plaintiffs] and [Mr.] Bouvier"; and (iv) "knowledge of any valuation that Plaintiffs obtained or attempted to obtain from [Mr.] Bouvier" concerning the artworks at issue. *See* Plaintiffs' Responses and Objections to Sotheby's First Set of Interrogatories at 4-7, attached hereto as Exhibit C ("Plaintiffs' Responses to Interrogatories").[1]

Plaintiffs do not dispute that Mr. Bouvier communicated directly with Plaintiffs' representatives regarding the art masterworks at issue in the U.S. Action, including with respect to Plaintiffs' purchase of those works and their requests for valuations of some of those works. Sotheby's contends that Plaintiffs never directly communicated with Sotheby's regarding the art masterworks at issue in this case. Sotheby's further contends that Mr. Bouvier helped facilitate communications with various financial institutions, including financial institutions in Singapore, in an effort to obtain credit, loans, or financing on Plaintiffs' and Mr. Rybolovlev's behalf using the artworks as collateral. In short, Mr. Bouvier is in unique possession of information regarding all of his interactions with Plaintiffs and Mr. Rybolovlev and regarding all of his interactions on their behalf and at their direction with third parties. Mr. Bouvier is also in possession of information regarding all of his interactions with Sotheby's. This information is directly relevant to issues that are critical to the claims and defenses in the U.S. Action.

---

[1]   Pursuant to the Protective Order in the U.S. Action, Plaintiffs have designated as "CONFIDENTIAL MATERIAL" certain portions of Plaintiffs' Responses to Interrogatories. Those portions have been redacted from Exhibit C and are not being relied upon in connection with this Letter of Request.

**6.      Evidence to be Obtained or Other Judicial Acts to be Performed:**

This Court seeks, by way of the present Letter of Request, oral testimony and documents from Mr. Bouvier for use at trial. Appendix A sets forth the topics of oral testimony sought from Mr. Bouvier.

Mr. Bouvier is a critical fact witness in the U.S. Action.  Mr. Bouvier's relationship and interactions with Plaintiffs and Sotheby's, respectively, are at the heart of Plaintiffs' U.S. Action against Sotheby's. Mr. Bouvier is in unique possession of critical evidence that bears on the essential elements of Plaintiffs' claims and Sotheby's defenses to those claims.

*First*, a threshold element of Plaintiffs' claims against Sotheby's of aiding and abetting fraud and aiding and abetting a breach of fiduciary duty is proof of the alleged underlying fraud and breach of fiduciary duty by Mr. Bouvier. *See* Sotheby's Answer at 50-51 [Exhibit B]. Mr. Bouvier's testimony and documents are critical to proving or disproving whether Mr. Bouvier committed fraud or breached his alleged fiduciary duty to Plaintiffs, including whether Mr. Bouvier even owed Plaintiffs any fiduciary duty.

*Second*, even if Plaintiffs can prove Mr. Bouvier's alleged fraud and breach of fiduciary duty, Plaintiffs must show that Sotheby's acted with the requisite mental state regarding that fraud and breach of fiduciary duty to succeed on the merits of their aiding and abetting claims. Plaintiffs allege that Sotheby's knew "the fraudulently inflated prices [Mr. Bouvier] charged to Plaintiffs," Am. Compl. ¶ 27 [Exhibit A]. Sotheby's denies that it had any knowledge of Mr. Bouvier's relationship with Plaintiffs or about what Mr. Bouvier allegedly charged Plaintiffs for any of the artworks at issue. Accordingly, it is critical to Sotheby's defenses in this case to obtain Mr. Bouvier's testimony and documents regarding whether he ever told Sotheby's anything about Plaintiffs, including whether he told Sotheby's anything about: (i) the identity of Plaintiffs,

Plaintiffs' beneficiaries, or Plaintiffs' representatives (including Mr. Rybolovlev); (ii) the relationship between Mr. Bouvier and Plaintiffs; or (iii) the prices Plaintiffs paid Mr. Bouvier for any artworks at issue in this litigation.

*Third*, a central allegation of Plaintiffs' case is that Sotheby's provided valuations of some of the works to Mr. Bouvier, which according to Plaintiffs were intended by Sotheby's to be passed along by Mr. Bouvier to Plaintiffs to justify the higher prices Mr. Bouvier charged Plaintiffs for those works. *See, e.g.*, Am. Compl. ¶ 4 [Exhibit A].  Sotheby's denies those allegations and asserts that it did not know what Mr. Bouvier planned to do with any work of art he acquired in a transaction brokered by Sotheby's and did not know the price that Mr. Bouvier planned to later charge for any work of art, if he did decide to re-sell it. Further, Sotheby's contends—based on information learned long after the events at issue in the Amended Complaint—that Mr. Bouvier sought the valuations from Sotheby's at Plaintiffs' request because, among other reasons, Plaintiffs wanted to use the valuations to secure loans from one or more financial institutions in Singapore, using one or more of the works as collateral. Plaintiffs dispute this characterization of the creation of and purpose for these valuations. Sotheby's contends that if, in fact, it was Plaintiffs—and not Mr. Bouvier—who wanted these valuations, then Sotheby's provision of the valuations to Mr. Bouvier cannot have aided and abetted any alleged fraud of Plaintiffs or breach of a fiduciary duty to them. Plaintiffs have acknowledged that Mr. Bouvier has knowledge concerning valuations that Plaintiffs received (and which Sotheby's contends Plaintiffs requested) from Mr. Bouvier. *See* Plaintiffs' Responses to Interrogatories at 6 [Exhibit C].

While Sotheby's also intends to obtain documents and testimony from Mr. Rybolovlev, Mr. Bouvier unquestionably sits at the heart of this dispute. Mr. Bouvier is in the best position to provide evidence of: (i) whether an agency or fiduciary relationship existed between him and

Plaintiffs, as Plaintiffs allege; (ii) what representations Mr. Bouvier made to Plaintiffs about the prices and valuations of the art masterworks at issue, which is directly relevant to whether Plaintiffs can prove an underlying fraud or breach of fiduciary duty; and (iii) what, if anything, Sotheby's was told about Plaintiffs, Mr. Bouvier's relationship with Plaintiffs, or what Mr. Bouvier intended to do or did with any of the art masterworks after purchasing them, including whether he intended to or did resell any of them, the identity(ies) of any subsequent purchaser(s), and the prices paid by such purchaser(s).

      **7.**     **Identity and Address of the Person to be Examined:**

> Yves Charles Edgar Bouvier
> [residential address contained in Bouvier's letter and lease]
> CH-1204 Geneva
> Switzerland

     a.    Mr. Bouvier has agreed to be heard as a witness consistent with this Letter of Request, provided that his hearing is governed by the applicable Swiss civil procedure law.  Mr. Bouvier has further represented that he currently and for the next few months has his "habitual abode" at the above address in Switzerland.  *See* Ex. B.

     b.    Questions to be Put to the Person to be Examined or Statement of the Subject Matter About Which They Are to be Examined:  Please see Appendix A.

    **8.**    **Definitions:**

     a.    For purposes of these requests, the term "**Plaintiffs**" encompasses and includes, without limitation, Plaintiffs Accent Delight International Ltd. and Xitrans Finance Ltd., Mr. Rybolovlev, and any other representatives

of Plaintiffs, including but not limited to Mikhail Sazonov, Yuri

Bogdanov, and Tetiana Bersheda.

b.    For purposes of these requests, the term "**Bouvier**" encompasses Mr.

Bouvier, individually, and the following entities alleged to be owned or

controlled by Mr. Bouvier:  Arrow Fine Art L.L.C., Art Family Pte Ltd.,

Blancaflor Investments Ltd., The Eagle Overseas Co., Ltd., Kinsride

Finance Ltd., and MEI Invest Ltd.

c.    For purposes of these requests, the term "Sotheby's" encompasses

Defendants Sotheby's and Sotheby's, Inc., their agents and employees,

and their affiliated entities and the agents and employees of those entities,

including Samuel Valette, Thomas Bompard, Bruno Vinciguerra, William

Ruprecht, Melanie Clore, Holli Chandler, Gregoire Billault, Dario

Tabladini, Jane Levine, and Alexander Bell.

d.    For purposes of these requests, the term "**Works**" means the following art

masterworks, which Plaintiffs claim they purchased or acquired from

Bouvier:

(i)    Picasso's *Les Noces de Pierrette*, which—based on facts

alleged by Plaintiffs and Bouvier—was purchased or acquired

by Plaintiff Xitrans Finance Ltd. from The Eagle Overseas Co.,

an entity owned and/or controlled by Mr. Bouvier, in or about

October 2004;

(ii)    Modigliani's *Nu couché aux bras levés*, which—based on facts

alleged by Plaintiffs and Bouvier—was purchased or acquired

11

by Plaintiff Xitrans Finance Ltd. from Kinsride Finance Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2006;

(iii)   Picasso's *Mousquetaire à la pipe*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about the period March to October 2006;

(iv)   A gilded wood table with eight sheath pillars, published in the exhibition catalogue "From Versailles to Paris:  The Fate of the Royal Collections," Paris, 1989, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about March 2007;

(v)   Carved and gilded wood furniture ornamented with flower vases, wreaths, and branches, similar to the work of Georges Jacob, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about July 2007;

(vi)   Modigliani's *Jeune fille blonde en buste*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or

acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about October 2007;

(vii)     Modigliani's *Madame Hébuterne aux épaules nues*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about December 2007;

(viii)    Modigliani's *Nu dolent*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about February 2008;

(ix)      Picasso's *La soeur de l'artiste*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2008;

(x)       Degas's *Danseuse en rose*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2008;

(xi)      Gauguin's *Te Fare (La Maison)*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired

13

by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an
entity owned and/or controlled by Mr. Bouvier, in or about
June 2008;

(xii)     Modigliani's *Vénus (Nu debout, nu médicis)*, which—based on
facts alleged by Plaintiffs and Bouvier—was purchased or
acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest
Ltd., an entity owned and/or controlled by Mr. Bouvier, in or
about July 2008;

(xiii)    Rothko's *No. 1 (Royal Red and Blue)*, which—based on facts
alleged by Plaintiffs and Bouvier—was purchased or acquired
by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an
entity owned and/or controlled by Mr. Bouvier, in or about
August 2008;

(xiv)     Monet's *Nymphéas (1897-1898)*, which—based on facts
alleged by Plaintiffs and Bouvier—was purchased or acquired
by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an
entity owned and/or controlled by Mr. Bouvier, in or about
September 2008;

(xv)      Monet's *Nymphéas (1914-1917)*, which—based on facts
alleged by Plaintiffs and Bouvier—was purchased or acquired
by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an
entity owned and/or controlled by Mr. Bouvier, in or about
September 2008;

(xvi)     Toulouse-Lautrec's *Au Lit: Le Baiser* (Red), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from Art Family Pte Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about December 2009;

(xvii)    Van Gogh's *Paysage avec un olivier* (Landscape with an Olive Tree), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Xitrans Finance Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about June 2010;

(xviii)   Picasso's *Joueur de flûte et femme nue*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about October 2010;

(xix)     Renoir's *Jeunes filles au bord de l'eau*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about November 2010;

(xx)      El Greco's *St. Sebastian*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity

15

owned and/or controlled by Mr. Bouvier, in or about December 2010;

(xxi)     Picasso's *L'homme assis au verre*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2011;

(xxii)    Maillol's *La Méditerranée* (bronze), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2011;

(xxiii)   Rodin's *Le Baiser* (bronze), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about April 2011;

(xxiv)    Matisse's *Nu au Châle Vert* (Nude with a Green Shawl), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about June 2011;

(xxv)    Rodin's *L'Éternel printemps*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about July 2011;

(xxvi)   Giacometti's *Femme de Venise IX*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about October 2011;

(xxvii)  Magritte's *Le Domaine d'Arnheim*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about December 2011;

(xxviii) Modigliani's *Nu couché au coussin bleu*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about January 2012;

(xxix)   Rodin's *Eve*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about March 2012;

17

(xxx)     El Greco's *Portrait of Madonna and the Child*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about March 2012;

(xxxi)    Klimt's *Wasserschlangen II*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about September 2012;

(xxxii)   Modigliani's *Tête*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about January 2013;

(xxxiii)  Toulouse-Lautrec's *Au Lit: Le Baiser* (Green), which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about February 2013;

(xxxiv)   Picasso's *Tête de femme*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity

owned and/or controlled by Mr. Bouvier, in or about March 2013;

(xxxv)   Picasso's *Espagnole à l'éventail*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about March 2013;

(xxxvi)   Leonardo da Vinci's *Christ as Salvator Mundi*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about May 2013;

(xxxvii)   Gaugin's *Otahi (Alone)*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about September 2013; and

(xxxviii)   Rothko's *No. 6 (Violet, Green, and Red)*, which—based on facts alleged by Plaintiffs and Bouvier—was purchased or acquired by Plaintiff Accent Delight Int'l Ltd. from MEI Invest Ltd., an entity owned and/or controlled by Mr. Bouvier, in or about July 2014.

9.    **Documents and Other Property to be Inspected:**

This Court requests that Mr. Bouvier produce the following documents (including electronic documents) which are in his possession, custody, or power.

> A.    Communications (Including Attachments) with Individuals Affiliated with Bouvier
>
>> (i)    The communications (including attachments) between Bouvier and Tania Rappo ("Ms. Rappo") regarding Plaintiffs, including Ms. Rappo's alleged introduction of Plaintiffs to Bouvier.  *See* Am. Compl. ¶¶ 13-14.
>>
>> (ii)   The communications (including attachments) between Bouvier and Jean-Marc Peretti ("Mr. Peretti") regarding the Works or Plaintiffs, including but not limited to the text message allegedly sent from Mr. Bouvier to Mr. Peretti in or about November or December 2014 in which Mr. Bouvier wrote:  "I am in the shit.  He does not have cash and wants to place all Picasso and Rodin for public sale. . . . We will talk about that tomorrow." *See* Am. Compl. ¶ 180.Accent Delight and Xitrans' criminal complaint (including the exhibits attached thereto) in CH.
>
> B.    The Business Relationship Between Bouvier and Plaintiffs
>
>> (i)    The documents and communications (including attachments) regarding meetings with Plaintiffs, including but not limited to an alleged meeting in Paris on or about April 10, 2011, and an alleged meeting in New York City at 15 Central Park West in or about March 2013, other than communications between Bouvier and Plaintiffs or between Bouvier and Sotheby's.  *See* Am. Compl. ¶¶ 168, 170-172, 188.
>
> C.    Documents Relating to Plaintiffs' Confrontation of and Claims Against Bouvier
>
>> (i)    The scanned Sotheby's logos and the electronic signatures of Sotheby's UK employees Samuel Valette and Dr. Franka Haiderer that were on the USB flash drive in Mr. Bouvier's possession when he was arrested in Monaco in or about February 2015. *See* Am. Compl. ¶ 24.
>>
>> (ii)   Affidavits, including exhibits filed by or on behalf of Yves Bouvier or MEI Invest Ltd. in the civil proceedings

initiated by Plaintiffs against Bouvier in Singapore in or about March 2015, namely: (1) *Accent Delight Int'l Ltd. and Xitrans Finance Ltd. v. Bouvier, MEI Invest Ltd., and Rappo*, HC/S 236/2015 (High Court of the Republic of Singapore), and Civil Appeal No. 113 of 2016 (Court of Appeal of Singapore), and (2) *Bouvier and MEI Invest Ltd. v. Accent Delight Int'l Ltd. and Xitrans Finance Ltd.*, Civil Appeal Nos. 80 and 81 of 2015 (Court of Appeal of Singapore), except such affidavits and exhibits that were only permitted to be used in connection with litigation regarding a *Mareva* injunction and except any such documents, or parts of such documents, that consist of, or refer to, document D56 and all subsequent documents from Monaco Dossier n° JI n° Cab 1/15/04, PG n° 2015/000039. *See* Am. Compl. ¶ 22.

(iii)   The documents (including affidavits, exhibits, and addenda thereto) filed by or on behalf of Yves Bouvier or MEI Invest Ltd. in the criminal proceeding initiated by Plaintiffs against Bouvier in Switzerland in or about February 2018, namely, P/15776/2017, except any such documents that consist of, or refer to, documents D56 and all subsequent documents from Monaco Dossier n° JI n° Cab 1/15/04, PG n° 2015/000039. *See* Am. Compl. ¶ 23.

(iv)   The communications (including attachments) between Bouvier and Christie's regarding the purchase, acquisition, auction, valuation, or sale of any of the Works. *See* Am. Compl. ¶ 144.

## 10. Any Requirement That the Evidence be Given on Oath or Affirmation and Any Special Form to be Used:

This Court respectfully requests that Mr. Bouvier testify under oath or affirmation in accordance with the applicable procedures of Switzerland. The Court further requests that the testimony be transcribed by a qualified stenographer and that a videographic record be taken of the oral testimony. In the event that the evidence cannot be taken in the manner requested, the Court respectfully requests that the evidence be taken in such manner as provided by local law for the formal taking of evidence.

11.     **Special Methods or Procedure to be Followed:**

a.      It is respectfully requested that each party's Swiss and United States lawyers be permitted to attend the oral testimony and be permitted to ask supplementary questions to the witness.

b.      It is further respectfully requested that each party's Swiss and United States lawyers be permitted to participate by video conference pursuant to the enclosed Optional Form For Video-Link Evidence.

c.      It is further respectfully requested that an interpreter be present to assist the United States lawyers of each party with the costs borne equally by the parties.

d.      Mr. Bouvier shall be permitted to be represented by his own counsel at his own expense at the oral testimony should he wish to do so.  Mr. Bouvier shall not be required to give evidence that is privileged against disclosure, or may not be lawfully disclosed, under the laws of either the United States, Singapore, Monaco, France, or Switzerland, insofar as such invocation of privilege is permitted under Swiss law and procedure.

e.      It is respectfully requested that the requested documents be produced by Mr. Bouvier at least forty-five days prior to the date of Mr. Bouvier's oral testimony, and that copies be provided to:

> Counsel for Defendants:
> Marcus A. Asner
> Sara L. Shudofsky
> Arnold & Porter Kaye Scholer LLP
> 250 West 55th Street
> New York, New York 10019
> Email: Marcus.Asner@arnoldporter.com
> Email: Sara.Shudofsky@arnoldporter.com
> Tel: +1 212 836 7222
>
> Saverio Lembo
> Aurélie Conrad Hari

22

Bär & Karrer SA
12 quai de la poste
1211 Geneva 11, Switzerland
Email: Saverio.Lembo@baerkarrer.ch
Email: Aurelie.ConradHari@BaerKarrer.ch
Tel: +41 58 261 57 00

<u>Counsel for Plaintiffs:</u>
Daniel Kornstein
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
Email: dkornstein@ecbalaw.com
Tel: +1 212 763 5000

Sandrine Giroud
LALIVE
Rue de la Mairie 35
P.O. Box 6569
1211 Geneva 6
Switzerland
Email: sgiroud@lalive.law

f.      It is requested that the oral testimony of the witness be videotaped and recorded

verbatim, and that a professional videographer and a professional stenographer be permitted to

attend the oral testimony in order to record the testimony, with all of the associated costs to be

equally born by the parties.

g.      Any oral testimony by Mr. Bouvier is not to exceed fourteen hours, and shall not

exceed seven hours per day. For the avoidance of doubt, the limit of fourteen hours shall apply

without regard to whether all questions set forth in Appendix A have been asked and answered.

**12.     Request for Notification of the Time and Place of Execution of the Request
and Identity and Address of Any Person to be Notified:**

It is requested that the oral testimony be taken as soon as can practicably be arranged. It is

respectfully requested that the witness and the counsel listed below be notified of the date, time,

23

and place of the testimony as soon as convenient. If possible, it is requested that notice be furnished

to the witness and counsel at least thirty days prior to the testimony.

> <u>Counsel for Defendants</u>:
> Marcus A. Asner
> Sara L. Shudofsky
> Arnold & Porter Kaye Scholer LLP
> 250 West 55th Street
> New York, New York 10019
> Email: Marcus.Asner@arnoldporter.com
> Email: Sara.Shudofsky@arnoldporter.com
> Tel: +1 212 836 7222
>
> Saverio Lembo
> Aurélie Conrad Hari
> Bär & Karrer SA
> 12 quai de la Poste
> 1211 Geneva 11, Switzerland
> Email: Saverio.Lembo@BaerKarrer.ch
> Email: Aurelie.ConradHari@BaerKarrer.ch
> Tel: +41 58 261 57 00
>
> <u>Counsel for Plaintiffs</u>:
> Daniel Kornstein
> Emery Celli Brinckerhoff Abady Ward & Maazel LLP
> 600 Fifth Avenue, 10th Floor
> New York, New York 10020
> Email: dkornstein@ecbalaw.com
> Tel: +1 212 763 5000
>
> Sandrine Giroud
> LALIVE
> Rue de la Mairie 35
> P.O. Box 6569
> 1211 Geneva 6
> Switzerland
> Email: sgiroud@lalive.law

**13.    Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request:**

No attendance of United States judicial personnel is requested.

24

**14.     Specification of Privilege or Duty to Refuse to Give Evidence Under the Law of the United States:**

The witness may refuse to give evidence that is privileged against disclosure, or may not be lawfully disclosed, under the laws of the United States, Singapore, Monaco, France, or Switzerland, insofar as such invocation of privilege is permitted under Swiss law and procedure.

The parties to the U.S. Action have agreed, and this Court has ordered, that any confidential material produced or disclosed by the parties or any third parties will be kept confidential, according to the Local Rules of the Court and/or any protective order entered in the case. Notwithstanding the terms of any protective order entered in this case, any materials produced in response to this Letter of Request or any testimony taken pursuant to this Letter of Request shall be kept confidential and shall be used solely for purposes of the prosecution or defense of this Action, and any appeals thereto, and for no other purpose.

**15.     Fees and Costs:**

The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Hague Convention shall be borne by Sotheby's.

**16.     Specification of the Date by which the Requesting Authority Requires Receipt of the Response to the Letter of Request:**

The Requesting Authority requests that the oral testimony be taken as soon as practicable after the Requested State receives this Letter of Request, and that the requested documents be produced at least forty-five days before the taking of the oral testimony. Expedient treatment of this Letter of Request will allow the parties and the witness to arrange a mutually agreeable date for testimony and avoid disruption to the witness's business or personal plans.

**17.     Signature and Seal of the Requesting Authority:**

This Court expresses its appreciation for the assistance and courtesy of the courts of Switzerland in this matter, and states that it shall be ready and willing to assist the courts of Switzerland in a similar manner when required.

Dated: ___July 27___, 2021
       New York, New York

Respectfully Submitted,

By: _____

HON. JESSE M. FURMAN
UNITED STATES DISTRICT JUDGE
United States District Court for the
Southern District of New York

**SEAL OF THE COURT**

<u>Appendix A</u>
<u>Topics and Questions for Oral Testimony</u>

I.      **Background Information**

A.   **Introduction:**  The below questions seek to obtain general background
         information.

B.   Questions:

    1.     Please state your name for the record.

    2.     Where do you currently reside?

    3.     For the time period of 2003 to 2015, where did you reside?

    4.     Describe your education history.

    5.     Describe your professional background and experience.

    6.     Where do you currently work?

    7.     For the time period of 2003 to 2015, were you employed?  If so, by whom
             or what company?  Did you earn income in any other way during that time
             period?  If so, how?

II.     **General Involvement with Plaintiffs, Sotheby's, and the Artworks at Issue in
        This Case**

A.   **Introduction:**  Plaintiffs contend that they were the victims of "the largest art
         fraud in history," which Mr. Bouvier allegedly "masterminded."  Am. Compl. ¶
         1.  The following questions are intended to obtain information regarding Mr.
         Bouvier's familiarity with Plaintiffs (and their representatives) and his
         involvement in the art masterworks at issue in the parties' dispute.  Such
         evidence is relevant to Mr. Bouvier's interactions with Plaintiffs and with
         Sotheby's, to Plaintiffs' allegations that Sotheby's aided and abetted Mr.
         Bouvier's alleged fraud and breach of fiduciary duty, and to Sotheby's defense
         that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them,
         Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and
         has no liability whatsoever to Plaintiffs.

B.   Questions

    1.     Are you familiar with Accent Delight International Ltd., one of the
             Plaintiffs in the U.S. Action?  Have you ever personally had any contact
             with it or its employees/representatives?  If so, when?  About what?

2. Are you familiar with Xitrans Finance Ltd., the other Plaintiff in the U.S. Action?  Have you ever personally had any contact with it or its employees/representatives?  If so, when?  About what?

3. Do you know Dmitry Rybolovlev?  Have you ever personally interacted with him?  If so, when?  About what?

   a. Did you ever attend any meetings with him, or participate in calls or electronic communications with him, regarding artworks he was purchasing?  If so, when?  Who was present?  What was discussed?  What were the artworks?

4. Do you know Tetiana Bersheda (a representative of Plaintiffs)?  Have you ever personally interacted with her?  If so, when?  About what?

   a. Did you ever attend any meetings with her, or participate in calls or electronic communications with her, regarding artworks Plaintiffs were purchasing?  If so, when?  Who was present?  What was discussed?  What were the artworks?

5. Do you know Mikhail Sazonov (a representative of Plaintiffs)?  Have you ever personally interacted with him?  If so, when?  About what?

   a. Did you ever attend any meetings with him, or participate in any calls or electronic communications with him, regarding artworks Plaintiffs were purchasing?  If so, when?  Who was present?  What was discussed?  What were the artworks?

6. Do you know Yuri Bogdanov (a representative of Plaintiffs')?  Have you ever personally interacted with him?  If so, when?  About what?

   a. Did you ever attend any meetings with him, or participate in any calls or electronic communications with him, regarding artworks Plaintiffs were purchasing?  If so, when?  Who was present?  What was discussed?  What were the artworks?

7. Do you know Elena Rybolovleva?  Have you ever personally interacted with her?  If so, when?  About what?

   a. Did you ever attend any meetings with her, or participate in any calls or electronic communications with her, regarding artworks Plaintiffs were purchasing?  If so, when?  Who was present?  What was discussed?  What were the artworks?

8. Do you know Ekaterina Rybolovleva?  Have you ever personally interacted with her?  If so, when?  About what?

2

     a.     Did you ever attend any meetings with her, or participate in any calls or electronic communications with her, regarding artworks Plaintiffs were purchasing?  If so, when?  Who was present?  What was discussed?  What were the artworks?

9.     Describe your relationship with Plaintiffs/Mr. Rybolovlev.

     a.     How and when did you first meet Mr. Rybolovlev?  Describe the meeting and when it occurred.  Who was present?  What was discussed?

     b.     Describe your relationship with Plaintiffs/Mr. Rybolovlev with respect to Plaintiffs'/Mr. Rybolovlev's acquisitions of works of art.

     c.     Did you ever have a written agreement with Plaintiffs setting out the details of your relationship with respect to Plaintiffs'/Mr. Rybolovlev's art acquisitions?  If so, describe all such agreements, the parties to those agreements, the terms of those agreements, and when those agreements were entered into.

     d.     Did you ever have an oral agreement with Plaintiffs setting out the details of your relationship with respect to Plaintiffs'/Mr. Rybolovlev's art acquisitions?  If so, describe all such agreements, the parties to those agreements, the terms of those agreements, and when those agreements were entered into.

     e.     Did you receive any payments or other compensation from Plaintiffs/Mr. Rybolovlev?  If so, describe those payments or compensation, including the amounts, when you received them, and why you received them.

10.    In the Statement of Claim you filed in the Swiss Civil Proceeding (Ref No. C/27203/2017 2OOC (Tribunal of First Instance, Canton of Geneva, Switzerland)), you allege that ███████████████████████████████
████████████████████████████████████████
████████████████████████████████

     a.     What is your basis for this allegation?  Describe what you know, when you learned it, and the basis for your knowledge.

     b.     In your Statement of Claim, you continue that ███████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████

       c.      What is your basis for this allegation?  Describe what you know, when you learned it, and the basis for your knowledge.

11.    Do you know Tania Rappo?  How do you know her?  Who is she?  Have you ever personally interacted with her?  If so, describe those interactions and when they took place.

12.    Do you know the nature of any relationship between Ms. Rappo and Plaintiffs/Mr. Rybolovlev?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.    Do you know whether Ms. Rappo was involved in any art acquisitions by Plaintiffs/Mr. Rybolovlev?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.    Did Ms. Rappo ever receive any compensation, reimbursement, or other payments from you in connection with Plaintiffs'/Mr. Rybolovlev's acquisitions of art?  If so, describe those payments or compensation, including the amounts, when Ms. Rappo received them, and why she received them.

15.    In the time period relevant to Sotheby's involvement in the U.S. Action—2011 to 2015—what role did you play in connection with the art masterworks at issue in the Action?

       a.      Did you communicate with Sotheby's employees about those works?  If so, with whom did you communicate?  When?  What was discussed?

       b.      Did you communicate with any of Plaintiffs' representatives about those works?  If so, with whom did you communicate?  When?  What was discussed?

16.    What was the nature of your relationship with Sotheby's as of 2011?

       a.      A copy of a document has been placed in front of you as Exhibit 1A. ███████████████████████████

           (i)    ████████████████████████████████

           (ii)   Describe what, if anything, you did with the works acquired by these entities at the time of the transactions.

(iii)   Describe what, if anything, you did with the works acquired by these entities three months after those transactions.

(iv)   Describe what you know about the source of funds used to purchase these works, and the basis for your knowledge.

(v)   In connection with these transactions, did you act as an agent for a buyer or seller not listed on this chart?  If so, how many transactions?  Did you disclose that role to Sotheby's in connection with any of those transactions?  If so, describe what you told Sotheby's and when you did so.

(vi)   Describe who owned the works these entities sold through Sotheby's two months before Sotheby's facilitated the sale of those works.

(vii)   Describe what, if anything, you did with the proceeds of the sale of works sold by these entities at the time of the transactions.

b.   

c.   Did you ever have an agreement with Sotheby's or an agent or employee of Sotheby's to acquire certain art or a certain number of artworks through transactions facilitated by Sotheby's?  If so, what were the terms of this agreement?  With whom did you communicate about this agreement?

d.   Did you ever pay Sotheby's more for an artwork than Sotheby's had told you it was worth?  If so, describe all such transactions,

including the titles of the artworks, what you paid for the artworks, and what Sotheby's had told you they were worth.

e.  Did Sotheby's ever change the estimated value of an artwork over the course of your interactions with Sotheby's regarding acquiring that artwork?  If so, when?  What were the circumstances?

f.  Has Sotheby's ever stored art at your freeport business in Geneva?  How about at your freeport business in Singapore?  If so, describe what art was stored, where it was stored, and when it was stored.

g.  Has Sotheby's ever used you/Natural Le Coultre to transport art?  If so, describe what art was transported, where it was transported, and when it was transported.

17.  Do you know Samuel Valette?

a.  If so, who is he?

b.  Have you ever met him?  Spoken with him?  Emailed with him?  Texted with him?

c.  When did you first meet him?

d.  How did you first meet him and how were you introduced?

e.  Do you have any kind of relationship with Mr. Valette?  If so, describe it.

(i)  How and when did you first meet Mr. Valette?  Describe the meeting and when it occurred.  Who was present?  What was discussed?

(ii)  Describe your relationship with Mr. Valette with respect to your acquisitions of works of art.

(iii)  Did you ever have a written or oral agreement with Mr. Valette setting out the details of your relationship with respect to your art acquisitions?  If so, describe all such agreements, the parties to those agreements, the terms of those agreements, and when those agreements were entered into.

f.  Do you know whether Mr. Valette ever met Mr. Rybolovlev or any of his family or employees?  Were they ever present at the same event or gathering?  If yes, describe the circumstances, including the number of occasions, when and where they took place, who was present, the purpose of the occasion, and whether Mr. Valette

6

and Mr. Rybolovlev (or his family member or employee) interacted, and what, if anything, was said.

g.    Do you know how Mr. Valette is compensated by Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

h.    Did you ever provide any compensation, reimbursement, or other payment to Mr. Valette in connection with the artworks you acquired from Sotheby's, aside from what you paid Sotheby's for the works?  If so, describe that compensation, reimbursement, or other payment.

i.    Did you provide Mr. Valette with any gifts? If so, describe those gifts, their value, the circumstances in which they were given, why they were given, and how Mr. Valette responded.

j.    Did you invest in any businesses with Mr. Valette? If so, describe those businesses, their nature, the size of your investment, and your involvement in their operation.

k.    Did you enter into any business projects with Mr. Valette in 2011? If so, describe those projects and their nature, and you and Mr. Valette entered into those projects.

l.    Did you invite Mr. Valette to your home or to any of your properties (including your yacht)? If so, describe when and why you extended such invitations (including invitations that were not accepted), the nature of any such visits, when they took place, and whether Mr. Valette provided any compensation or reimbursement to you in exchange for his visits.

m.    Did Mr. Valette ever give you any gifts or pay you any compensation in exchange for the quantity of business you did with Sotheby's?

n.    Did you ever receive from Mr. Valette a gift of wine in connection with any transaction with Sotheby's?  If so, describe what you know about that circumstance, including the basis for your knowledge.  Did you reciprocate with a gift of your own?

o.    Are you familiar with the concept of a "Key Client Manager" or KCM at Sotheby's? Do you know whether you had a KCM at Sotheby's?  If so, describe what you know and the basis for your knowledge.  Do you know whether that person's role as KCM impacted their compensation?  If so, describe what you know and the basis for your knowledge.

p.      Do you know whether Mr. Rybolovlev had a KCM at Sotheby's? If so, describe what you know and the basis for your knowledge.

q.      Are you familiar with Caroline Lang? If so, describe what you know about her and the basis for your knowledge. Have you ever met with Ms. Lang?

r.      A copy of a document has been placed in front of you as Exhibit 7A.



s.      A copy of a document has been placed in front of you as Exhibit 8A. This is an email to Mr. Valette from his colleagues at Sotheby's on October 5, 2012 regarding developing business with Mr. Rybolovlev because Mr. Valette was Mr. Rybolovlev's KCM. Did Mr. Valette ever contact you regarding developing business between Sotheby's and? If so, what did he say and what did you say? Did you instruct Mr. Valette to take any action or to refrain from taking any action in reaching out to Mr. Rybolovlev or his family?

t.      A copy of a document has been placed in front of you as Exhibit 9A. Did Mr. Valette contact you regarding developing business between Sotheby's and Mr. Rybolovlev in between March and May 2013? Did you instruct Mr. Valette to take any action or to refrain from taking any action in reaching out to Mr. Rybolovlev or his family? If so, what did you say and what did he say?

u.      A copy of a document has been placed in front of you as Exhibit 10A.

8

v.    A copy of a document has been placed in front of you as Exhibit 11A.  Do you know why Mr. Valette wrote to his colleague that Sotheby's could not deal with Mark Rothko's *No. 1*?  If so, describe what you know and the basis for your knowledge.  Did Mr. Valette contact you in May 2014 regarding that painting to discuss a potential transaction for the work? If so, describe those discussions.

w.    A copy of a document has been placed in front of you as Exhibit 12A.  Do you know why Mr. Valette wrote that "[t]he fact that we would again have a channel to Rybolovlev is good of course?"  If so, describe what you know and the basis for your knowledge.

18.  Do you know Bruno Vinciguerra?

a.    If so, who is he?

b.    Have you ever met him?  Spoken with him?  Emailed with him?  Texted with him?

c.    When did you first meet him?

d.    How did you first meet him and how were you introduced?

e.    Do you have any kind of relationship with Mr. Vinciguerra?  If so, describe it.

(i)    How and when did you first meet Mr. Vinciguerra?  Describe the meeting and when it occurred.  Who was present?  What was discussed?

(ii)    Describe your relationship with Mr. Vinciguerra with respect to your acquisitions of works of art.

(iii)    Did you ever have a written or oral agreement with Mr. Vinciguerra setting out the details of your relationship with respect to your art acquisitions?  If so, describe all such agreements, the parties to those agreements, the terms of those agreements, and when those agreements were entered into.

f.    Do you know how Mr. Vinciguerra was compensated by Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

(i)    Did you ever provide any compensation, reimbursement, or other payment to Mr. Vinciguerra in connection with the artworks you acquired from Sotheby's, aside from what

9

you paid Sotheby's for the works?  If so, describe that compensation, reimbursement, or other payment.

19.  Do you know Alexander Bell?

   a.   If so, who is he?

   b.   Have you ever met him?  Spoken with him?  Emailed with him?  Texted with him?

   c.   When did you first meet him?

   d.   How did you first meet him and how were you introduced?

   e.   Do you have any kind of relationship with Mr. Bell?  If so, describe it.

      (i)    How and when did you first meet Mr. Bell?  Describe the meeting and when it occurred.  Who was present?  What was discussed?

      (ii)   Describe your relationship with Mr. Bell with respect to your acquisitions of works of art.

      (iii)  Did you ever have a written or oral agreement with Mr. Bell setting out the details of your relationship with respect to your art acquisitions?  If so, describe all such agreements, the parties to those agreements, the terms of those agreements, and when those agreements were entered into.

   f.   Do you know how Mr. Bell was compensated by Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

      (ii)   Did you ever provide any compensation, reimbursement, or other payment to Mr. Bell in connection with the artworks you acquired from Sotheby's, aside from what you paid Sotheby's for the works?  If so, describe that compensation, reimbursement, or other payment.

20.  Do you know Thomas Bompard?

   a.   If so, who is he?

   b.   Have you ever met him? Spoken with him? Emailed with him? Texted with him?

10

c. Do you have any kind of relationship with Mr. Bompard?  If so, describe it.

    (i) How and when did you first meet Mr. Bompard?  Describe the meeting and when it occurred.  Who was present?  What was discussed?

    (ii) Describe your relationship with Mr. Bompard with respect to your acquisitions of works of art.

    (iii) Did you ever have a written or oral agreement with Mr. Bompard setting out the details of your relationship with respect to your art acquisitions?  If so, describe all such agreements, the parties to those agreements, the terms of those agreements, and when those agreements were entered into.

d. Do you have any understanding of what Mr. Bompard has said publicly about whether you were an investor in Galerie Gradiva, an art gallery in Paris that he ran?  Describe what you know and the basis for your knowledge.

    (i) What was your relationship, if any, to the Galerie Gradiva?  Were you an investor?  If so, What was the nature of your investment? How much of an ownership interest, if any, did you hold in that Galerie during the period Mr. Bompard was employed by the Galerie?

    (ii) What was Mr. Bompard's role in the Galerie Gradiva? How was Mr. Bompard compensated by the Galerie? Did you have any role in determining Mr. Bompard's compensation at the Galerie? Did you approve Mr. Bompard's compensation at the Galerie?

    (iii) Mr. Bompard left the Galerie Gradiva in 2015, after your arrest in Monaco. Are you aware of why Mr. Bompard left the Galerie? If so, describe what you know and the basis for your knowledge.  Are you aware of any press reporting about Mr. Bompard's departure from the Galerie?  If so, describe what you know and the basis for your knowledge. Did you discuss what Mr. Bompard should tell journalists regarding his reasons for leaving the Galerie? If so, what did you say and what did he say?

    (iv) After Mr. Bompard left the Galerie Gradiva, how often did you communicate with him and what were the topics you would discuss with him?

11

       (v)     Did you discuss the allegations in the present lawsuit with Mr. Bompard? If so, what was the first time you raised these allegations with him? What was the content of these conversations? What was the content of subsequent conversations with Mr. Bompard regarding the allegations in this lawsuit?

   e.    Do you know how Mr. Bompard was compensated by Sotheby's? If so, describe what you know, when you learned it, and the basis for your knowledge.

       (i)     Did you ever provide any compensation, reimbursement, or other payment to Mr. Bompard in connection with the artworks you acquired from Sotheby's, aside from what you paid Sotheby's for the works? If so, describe that compensation, reimbursement, or other payment.

21.   Do you know Jane Levine?

   a.    If so, who is she? Describe what you know about her.

   b.    Have you ever met her? Spoken with her? Emailed with her? Texted with her?

   c.    When did you first meet her?

   d.    How did you first meet her and how were you introduced? Who was present? What was discussed?

   e.    A copy of a document has been placed in front of you as Exhibit 13A. Describe what you know about this document.  This document references a "business opportunity of mutual interest" to your entity (Euroasia Invest) and Sotheby's.

       (i)     Describe the nature of this business opportunity.

       (ii)    What was the purpose of this document?

       (iii)   A copy of a document has been placed in front of you as Exhibit 14A. What do you know about this document?

       (iv)   Describe what you know about this meeting, including why it took place when it did.

       (v)    Describe the meeting you had with Ms. Levine. How long was the meeting? Who was present? What was said?

(vi) To your knowledge, did Sotheby's carry out a Know Your Customer investigation into you or your entities? If so, describe it and the basis for your knowledge. What kinds of materials were you asked to provide Sotheby's? Who did you communicate with? What communications did you have regarding any such investigation? What did you say and what did Sotheby's employees say?

(vii) To your knowledge, did Sotheby's carry out an anti-money laundering investigation into you or your entities? If so, describe it. What kinds of materials were you asked to provide Sotheby's? Who did you communicate with? What communications did you have regarding any such investigation? What did you say and what did Sotheby's employees say?

(viii) After Ms. Levine signed this NDA, did or your staff provide her with anything?  If so, describe what was provided and when, and why it was provided. Did you provide any other documents to Ms. Levine?

(ix) Did you ever meet or speak to or email with Ms. Levine after June 2013? If so, describe when these conversations occurred, what she said, and what you said.

(x) Have you ever corresponded with anyone else who worked in the Sotheby's compliance department? If so, describe the circumstances of any such meeting or any correspondence, the identity of who you met, and the content of any such conversations.

f. Did you discuss the allegations in the present lawsuit with Ms. Levine? If so, what was the first time you raised these allegations with him? What was the content of these conversations? What was the content of subsequent conversations with Ms. Levine regarding the allegations in this lawsuit?

22. Do you know any other Sotheby's employees?

a. If so, who do you know?

b. When did you meet them?  How did you meet them?  What were your interactions with them about?

c. Did you communicate with those persons in connection with any art transactions?  If so, describe those transactions and the communications related to them.

13

    d.       Did you ever have a written or oral agreement with any Sotheby's employee setting out the details of your relationship with respect to your art acquisitions?  If so, describe all such agreements, the parties to those agreements, the terms of those agreements, and when those agreements were entered into.

    e.       Did you ever provide any compensation, reimbursement, or other payment to any Sotheby's employee in connection with the artworks you acquired from Sotheby's, aside from what you paid Sotheby's for the works?  If so, describe that compensation, reimbursement, or other payment.

23.    Did you ever discuss Plaintiffs, Mr. Rybolovlev, or any other of Plaintiffs' representatives with anyone else at Sotheby's?  If so, when?  With whom? What was discussed?

24.    Did you ever discuss the relationship between you and Plaintiffs, Mr. Rybolovlev, or any other of Plaintiffs' representatives with anyone else at Sotheby's?  If so, when?  With whom?  What was discussed?

25.    Did you ever discuss with anyone else at Sotheby's the prices Plaintiffs or Mr. Rybolovlev paid you for any of the artworks you acquired in a transaction facilitated by Sotheby's?  If so, when?  With whom?  What was discussed?

26.    Did you discuss with any Sotheby's employees whether they were permitted to be present when works at issue in this case were shown to Mr. Rybolovlev, members of his family, or agents of the Plaintiffs?

27.    A copy of a document has been placed in front of you as Exhibit 13.  On June 20, 2011, you emailed Mr. Valette:  "I thought no one in Geneva was supposed to know about this operation!!!!!!!  I cannot work under these conditions."

    a.       Do you recall this communication?  If so, describe what you recall about it.

    b.       Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

    c.       What was the "operation" you referred to?

    d.       Why did you say that no one was supposed to know about that "operation"?

14

e.      Did you ever discuss that "operation" with Mr. Valette around the time of this email?  If so, describe those discussions and when they took place.

f.      Why did you write "I cannot work under these conditions"?

g.      Why did you use several exclamation points in this email?

h.       Did you discuss this document or its subject matter with any Sotheby's employees?  If so, describe those discussions, when they took place, and what was discussed.

i.      Did you ever discuss with Sotheby's employees the need for confidentiality concerning your transactions with Sotheby's?  If so, describe those discussions and when they took place.  Did you ever discuss with them the need for confidentiality in connection with Sotheby's Geneva office in particular?  If so, describe those discussions and when they took place.

j.      A copy of a document has been placed in front of you as Exhibit 16A.  This is an email from Holli Chandler to other employees at Sotheby's stating "it is absolutely imperative that no one from the Swiss offices is directly involved with the release" of Rodin's *L'Eternal Printemps*.  Do you know why Ms. Chandler wrote that "it is absolutely imperative that no one from the Swiss offices is directly involved with the release" of Rodin's *L'Eternal Printemps*?  If so, describe what you know and the basis for your knowledge.  Did you ever speak with Mr. Valette or Holli Chandler regarding any need to ensure that no employee from Sotheby's Swiss offices was involved in your transactions with Sotheby's?  If so, what did you say and what did they say?

28.     A copy of a document has been placed in front of you as Exhibit 18A.  Do you know why Mr. Valette wrote to his colleagues that "no one in Switzerland is to be made aware" of this viewing?  If so, describe what you know and the basis for your knowledge.  Do you know why Mr. Valette wrote "ok for Dom to condition check on arrival (no Sotheby's t shirt or logo!)?"  If so, describe what you know and the basis for your knowledge.  Did you ever discuss with Mr. Valette any need to prevent Sotheby's employees from wearing clothing that would identify them as such? If so, why?

29.     Did you ever discuss with anyone else at Sotheby's the prices that any other person or entity paid you for any of the artworks you acquired in a transaction facilitated by Sotheby's, irrespective of the buyer's identity?  If so, when?  With whom?  What was discussed?

15

30. Did you ever discuss the valuations of the artworks you acquired in a transaction facilitated by Sotheby's with anyone else at Sotheby's?  If so, when?  With whom?  What was discussed?

31. Did you discuss the allegations in the present lawsuit with anyone Sotheby's, not including those persons you were asked about previously?  If so, when? With whom? What was the content of these conversations?

III.    **Plaintiffs' Claims Regarding Pablo Picasso's *L'Homme Assis Au Verre***

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.  Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4. Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5. Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6. A copy of a document has been placed in front of you as Exhibit 1. According to this document, on March 18, 2011, Mr. Valette emailed both you and Mr. Peretti, attaching a description of this work and writing in his cover email:  "As agreed, here is the note with the expositions, a commentary on its importance, the photos of Picasso and the photos of the 3 comparable paintings in museums."

   a.  Do you recall this communication or work description?  If so, describe what you recall about it.

   b.  Do you know why Mr. Valette emailed you and Mr. Peretti?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16

c.    According to this document, Mr. Valette wrote "as agreed."  Did Mr. Valette communicate with you about this painting prior to sending you this email?  If so, describe any such communications and when they took place.

d.    Do you know who initiated any conversations about this painting you have described?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.    Do you know why Mr. Valette emailed you this information about this painting?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.    What did you do with the information and/or materials Mr. Valette provided regarding this work?

a.    Did you give it to anyone else?  If so, who?

b.    Do you know whether Mr. Peretti gave it to anyone else?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.    Did you give this document to Mr. Rybolovlev, Mikhail Sazonov, or anyone working for Plaintiffs or otherwise related to them?  If so, describe that communication and when it took place.

d.    Do you know whether Mr. Peretti gave it to Mr. Rybolovlev, Mikhail Sazonov, or anyone working for Plaintiffs or otherwise related to them?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.    A copy of a document has been placed in front of you as Exhibit 2. According to this document, on March 22, 2011, you emailed Mr. Valette to ask when he would have a "definitive price" for this work and suggested that "a price in USD would be the best adapted."  Mr. Valette responded:  "Message received about the dollars.  We were asking ourselves that question."

a.    Do you recall these communications?  If so, describe what you recall about them.

b.    Did you and Mr. Valette communicate about the price for this artwork prior to these communications?  If so, when?  What was discussed?

c.    Did you discuss these communications with any other employee of Sotheby's?  If so, describe those discussions and when they took place.

17

  d. Why did you write that "a price in USD would be the best adapted"?  Did you discuss your thinking about this with Mr. Valette?  If so, describe those discussions and when they took place.

9. A copy of a document has been placed in front of you as Exhibit 3.  According to this document, on March 23, 2011, Mr. Valette emailed you to assure you he was negotiating in dollars "as we agreed" and was trying to make sure "the price would be reasonable."

  a. Do you recall this communication?  If so, describe what you recall about it.

  b. Did you and Mr. Valette discuss a "reasonable" price for this artwork prior to this communication?  If so, describe those discussions and when they took place.

  c. Do you know why Mr. Valette said he would make sure the "price would be reasonable"?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10. A copy of a document has been placed in front of you as Exhibit 4.  According to this document, on March 24, 2011, Mr. Valette emailed you a description of the work, writing in his cover email:  "Here is a text on the artwork, more focused on its composition.  We should have the price tomorrow."

  a. Do you recall this communication or work description?  If so, describe what you recall about it.

  b. Did you and Mr. Valette discuss getting more information about the composition of the artwork prior to this communication?  If so, describe that communication and when it took place.

  c. Did you provide this text to Mr. Rybolovlev, Mikhail Sazonov, or anyone working for Plaintiffs or otherwise related to them?  If so, describe those communications and when they took place.

  d. Did you discuss this communication or work description with any other employee of Sotheby's?  If so, describe those discussions and when they took place.

11. A copy of a document has been placed in front of you as Exhibit 20A.  Who is the "client" to whom you refer in this document?  Does your use of that term reflect any understanding on your part that you were acting as Plaintiffs' agent?  Explain.

12. A copy of a document has been placed in front of you as Exhibit 21A. According to this document, Wildenstein invoiced MEI for Gauguin's *Te Fare*, correct?

13. A copy of a document has been placed in front of you as Exhibit 23A. Describe what you know about this document, including why you received it. Did Sotheby's ever ask you for similar information? If so, describe when it did so and how you responded.

14. A copy of a document has been placed in front of you as Exhibit 24A. Describe what you know about this document. Why you mentioned Mr. Rybolovlev and Xitrans in this document? Did you act as their agent in connection with this transaction?

15. A copy of a document has been placed in front of you as Exhibit 5. According to this document, on April 8, 2011, Mr. Valette emailed you a letter and description of the work, asking: "Please let me know if it works for you."

   a. Do you recall this communication or work description? If so, describe what you recall about it.

   b. Did you discuss this letter and description with Mr. Valette prior to this email? If so, describe those discussions and when they took place.

   c. Did you discuss this communication or work description with any other employee of Sotheby's? If so, describe those discussions and when they took place.

   d. In the letter attached to this email, Mr. Valette uses the formal "you" (the French "vous"), but in the email itself, Mr. Valette uses the informal "you" (the French "tu"). Do you know why the letter uses the formal "you"? If so, describe what you know, when you learned it, and the basis for your knowledge.

      (i) Do you have any understanding of whether Mr. Valette intended this letter to be shown to someone else besides yourself? If so, to whom? Describe what you know, when you learned it, and the basis for your understanding.

   e. Do you know why Mr. Valette asked you if the letter "works for you"? If so, describe what you know, when you learned it, and the basis for your knowledge.

16. A copy of a document has been placed in front of you as Exhibit 6. According to this document, about an hour after the communication you

just reviewed (Exhibit 5), Mr. Valette emailed you the description as a PDF.

    a.    Do you recall this communication or work description?  If so, describe what you recall about it.

    b.    Did you speak with Mr. Valette in between the sending of these two emails?  If so, what did you discuss?

    c.    Did you discuss this communication or work description with any other employee of Sotheby's?  If so, describe those discussions and when they took place.

    d.    Do you know why Mr. Valette sent this description to you?  If so, describe what you know, when you learned it, and the basis for your knowledge.

        (i)    Do you know why Mr. Valette sent the description first in a Word file, and then in a PDF?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.    What did you do with this description?

        (i)    Did you send this description to Plaintiffs/Mr. Rybolovlev?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.    Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18.    What did you pay for this work?

19.    Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20.    Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21.    Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

22.    Did you communicate with any of the following people regarding this work:

      a.     Dmitry Rybolovlev?

      b.     Mikhail Sazonov?

      c.     Tetiana Bersheda?

      d.     Yuri Bogdanov?

      e.     Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

      f.     If so, describe those communications and when they took place.

23.    Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

      a.     Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

24.    Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

      a.     Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

25.    Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

      a.     Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

26.    Do you know if Sotheby's received any compensation or payment for its role in the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

      a.     Do you know if Mr. Valette received any compensation or payment related to the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

27. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

28. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## IV.   Plaintiffs' Claims Regarding Aristide Maillol's *La Méditerranée*

A. **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B. Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4. Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5. Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6. A copy of a document has been placed in front of you as Exhibit 7. According to this document, on April 9, 2011, Mr. Valette emailed you with a description of Maillol's *La Méditerranée*.  Valette's email begins: "Here is the information on the Maillol, *La Méditerranée*."

   a. Do you recall this communication or work description?  If so, describe what you recall about it.

   b. Did you discuss this artwork or the description of the artwork with Mr. Valette prior to this email?  If so, when?  What was discussed?

22

      c.      Did you discuss this communication or work description with any employee of Sotheby's?  If so, describe those discussions and when they took place.

7.    A copy of a document has been placed in front of you as Exhibit 8. According to this document, Mr. Valette emailed you an attachment of a description of this work, without any cover email.  The attachment appears to be a Word file.

      a.      Do you recall this communication or work description?  If so, describe what you recall about it.

      b.      Did you discuss this communication or work description with any employee of Sotheby's?  If so, describe those discussions and when they took place.

8.    A copy of a document has been placed in front of you as Exhibit 9. According to this document, on April 14, 2011, Mr. Valette emailed you a PDF description for this work.  Mr. Valette wrote:  "Does the client want to send his transporters to pick them up or does he prefer that they be delivered to the freeport?  Thanks for letting me know what the client prefers."  This email also refers to Rodin's *Le Baiser*.

      a.      Do you recall this communication or work description?  If so, describe what you recall about it.

      b.      Did you discuss this communication or work description with any employee of Sotheby's?  If so, describe those discussions and when they took place.

      c.      At the time of this email, did you know who "the client" was that Mr. Valette referred to?  Describe what you know, when you learned it, and the basis for your knowledge.

      d.      At the time of this email, had you discussed "the client" with Mr. Valette?  If so, describe those discussions and when they took place.

      e.      Do you know why Mr. Valette sent the description first in a Word file, and then as a PDF?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.    Following this communication, did anyone at Sotheby's provide you with additional information about the artwork?  If so, when?  Who provided you with this information?  Do you know why they provided you with additional information?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.   Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   What did you pay for this work?

12.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   Did you communicate with any of the following people regarding this work:

   a.   Dmitry Rybolovlev?

   b.   Mikhail Sazonov?

   c.   Tetiana Bersheda?

   d.   Yuri Bogdanov?

   e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f.   If so, describe those communications and when they took place.

16.   Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

   a.   Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.   Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

   a.   Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring

24

or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18. Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

   a. Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19. Do you know if Sotheby's received any compensation or payment for its role in the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

   a. Do you know if Mr. Valette received any compensation or payment related to the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

20. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## V.  Plaintiffs' Claims Regarding Auguste Rodin's *Le Baiser*

A. **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B. Questions:

   1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

   2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

   3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

25

4.  Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.  Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6.  A copy of a document has been placed in front of you as Exhibit 10. According to this document, on April 4, 2011, Mr. Valette emailed Mr. Peretti a description of this work.

    a.  Did you receive this communication or work description?  If so, describe how and when you received this document, and who sent it to you.

    b.  Do you know anything about this communication or work description?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    c.  Do you know why Mr. Valette emailed Mr. Peretti this information?  If so, describe what you know, when you learned it, and the basis for your knowledge.

        (i)  Do you know why Mr. Valette emailed Mr. Peretti instead of you?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    d.  Had you discussed this work with Mr. Valette before this email?  If so, describe those discussions and when they took place.

        (i)  Do you know whether Mr. Peretti discussed this work with Mr. Valette before this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.  A copy of a document has been placed in front of you as Exhibit 11. According to this document, on April 9, 2011, you emailed Mr. Valette with the subject line "Urgent" and wrote:  "I am already seeing my friend tomorrow Sunday."  You requested more information about the work "so that I have the maximum arguments."  According to this document, Mr. Valette subsequently emailed information about the work.

    a.  Do you recall these communications?  If so, describe what you recall about it.

    b.  Did you discuss these communications with any employee of Sotheby's?  If so, describe those discussions and when they took place.

26

c.    Do you know anything about these communications?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.    Who was the "friend" that you referred to?

e.    Did you discuss the "friend" that you referred to with Mr. Valette around the time of this email?  If so, describe those discussions and when they took place.

f.    Did you discuss the "friend" that you referred to with Mr. Valette at some point after you sent this email?  If so, describe those discussions and when they took place.

g.    At the time of this email, did you have any understanding of whether Mr. Valette knew who your "friend" was?  If so, describe what you know, when you learned it, and the basis for your knowledge.

h.    At the time of this email, did you have any understanding of whether Mr. Valette knew what you were planning to do with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

i.    What did you mean by having "the maximum arguments"?

j.    Did you discuss with Mr. Valette what you meant by having "the maximum arguments" aside from this email?  If so, describe those discussions and when they took place.

8.    According to this document, Mr. Valette subsequently emailed you information about the work.

a.    Do you recall this communication?  If so, describe what you recall about it.

b.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

c.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.    What did you do with this information?

         (i)      Did you send this information to Plaintiffs/Mr. Rybolovlev?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.     Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.    What did you pay for this work?

11.    Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.    Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.    Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.    Did you communicate with any of the following people regarding this work:

      a.     Dmitry Rybolovlev?

      b.     Mikhail Sazonov?

      c.     Tetiana Bersheda?

      d.     Yuri Bogdanov?

      e.     Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

      f.     If so, describe those communications and when they took place.

15.    Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

      a.     Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16. Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

    a. Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17. Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

    a. Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18. Do you know if Sotheby's received any compensation or payment for its role in the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    a. Do you know if Mr. Valette received any compensation or payment related to the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

**VI.**     **Plaintiffs' Claims Regarding Henri Matisse's *Nu au Châle Vert***

A. **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.    Questions:

29

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4. Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5. Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6. A copy of a document has been placed in front of you as Exhibit 12. According to this document, on June 15, 2011, Mr. Valette sent emails to Mr. Peretti attaching photos of Matisse's *Nu au Châle Vert*.

   a. Did you receive this communication and photos?  If so, describe how and when you received this document, and who sent it to you.

   b. Do you know anything about this communication and photos?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   c. Mr. Valette's cover emails attaching the photos appear to have had no content.  Had you previously discussed this work with him?  If so, describe those discussions and when they took place.

   d. Had you previously discussed this work with Mr. Peretti?  If so, describe those discussions and when they took place.

   e. Do you know whether Mr. Valette had previously discussed this work with Mr. Peretti?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   f. Do you know why Mr. Valette emailed Mr. Peretti photos of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   g. Do you know whether Mr. Peretti asked Mr. Valette to send him the photos?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   h. Did you ask Mr. Valette to send Mr. Peretti the photos?  If so, why?

30

    i.       Do you know why Mr. Valette sent the photos to Mr. Peretti instead of to you?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    j.       Did Mr. Valette also email you with information about this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    k.      Do you know why Mr. Valette sometimes emailed you about works and sometimes emailed Mr. Peretti?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    l.       Do you know what determined who Mr. Valette would contact?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    m.    Do you know why Mr. Valette did not always copy Mr. Peretti on emails he sent to you, and copy you on emails he sent to Mr. Peretti?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.    Do know what Mr. Peretti did with the information and/or materials Mr. Valette provided regarding this work?

    a.      Did he give it to anyone else?

    b.      If so, did he give it to Mr. Rybolovlev?  Mr. Sazonov? Or anyone working with them?

8.    Did you do anything with the information and/or materials Mr. Valette provided regarding this work?  If so, describe what you did and when you did it.

    a.      Did you give it to anyone else?

        (i)     If so, did you give it to Mr. Rybolovlev? Mr. Sazonov?  Or anyone working with them?

9.    A copy of a document has been placed in front of you as Exhibit 14.  According to this document, Mr. Valette wrote back to you:  "I can also confirm that, other than me, there will be no one else from Sotheby's before, during, or after any of the visits."

    a.      Do you recall this communication?  If so, describe what you recall about it.

      b.      Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

      c.      Do you know what "the visits" are that Mr. Valette referred to?  If so, describe what you know, when you learned it, and the basis for your knowledge.

      d.      Did you discuss "the visits" with Mr. Valette around the time of this email?  If so, describe those discussions and when they took place.

10.     A copy of a document has been placed in front of you as Exhibit 15. According to this document, on June 20, 2011, the same day as the communication you just looked at (Exhibit 14) was sent, Mr. Valette emailed more information to you about this work, writing that he was sending it "as promised."

      a.      Do you recall this communication?  If so, describe what you recall about it.

      b.      Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

      c.      Do you know what Mr. Valette meant when he wrote "as promised" in this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

      d.      Did you discuss Mr. Valette sending this information with Mr. Valette or any other Sotheby's employee prior to this communication?

      e.      What did you do with the information Mr. Valette provided?

           (i)      Did you give the information to Plaintiffs or their representatives?  If so, describe those communications and when they took place.

11.     Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.     What did you pay for this work?

13.     Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14. Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16. Did you communicate with any of the following people regarding this work:

   a. Dmitry Rybolovlev?

   b. Mikhail Sazonov?

   c. Tetiana Bersheda?

   d. Yuri Bogdanov?

   e. Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f. If so, describe those communications and when they took place.

17. Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

   a. Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18. Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

   a. Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19. Do you know if Sotheby's received any compensation or payment for its role in the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

33

   a.   Do you know if Mr. Valette received any compensation or
        payment related to the sale of this work? If so, describe what you
        know, when you learned it, and the basis for your knowledge.

20.  Did you discuss with Sotheby's the price paid by any person or entity
     other than you to acquire this work?  If so, describe those communications
     and when they took place.

   a.   Do you know whether Mr. Peretti discussed with Sotheby's the
        price paid by any person or entity other than you to acquire this
        work?  If so, describe what you know, when you learned it, and the
        basis for your knowledge.

21.  Did you obtain a valuation of this work from Sotheby's in 2014?

   a.   Why did you obtain a valuation for the work?

   b.   Did you ever discuss such a valuation with Mr. Valette?  If so,
        describe those discussions and when they took place.

   c.   Were you involved in any communications with Plaintiffs
        regarding any valuation for this work?  If so, describe those
        communications and when they took place.

   d.   In your Statement of Claim in the Swiss Civil Proceeding, you
        allege the following:



   e.   What is your basis for this allegation?  Describe what you know,
        when you learned it, and the basis for your knowledge.

22.  A copy of a document has been placed in front of you as Exhibit 16.
     According to this document, Sotheby's provided you with an $85 million
     valuation for this work.

   a.   Did you receive this document?  If so, describe how and when you
        received this document, and who sent it to you.

   b.   Did you discuss this document with any employee of Sotheby's?
        If so, describe those discussions and when they took place.

   c.   Did you ask Sotheby's to prepare this valuation of the work?

     d.     Do you know why the valuation you obtained from Sotheby's does not identify your 2011 acquisition of the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

          (i)     Did you discuss that with Mr. Valette?  If so, describe those discussions and when they took place.

     e.     Do you know how Sotheby's calculated the estimated value of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

          (i)     Did you discuss the work's value with Mr. Valette?  If so, describe those discussions and when they took place.

     f.     The valuation is addressed to "Mr. Confidential Client One Hundred and Thirty Four." Do you know who "Mr. Confidential Client One Hundred and Thirty Four" is?  If so, describe what you know, when you learned it, and the basis for your knowledge.

     g.     Did you discuss this document with Plaintiffs?  If so, describe those discussions and when they took place.

     h.     Do you know whether Plaintiffs used this document to obtain or attempt to obtain a loan or other financing?  If so, describe what you know, when you learned it, and the basis for your knowledge.

23.     Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

24.     Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it and the basis for your knowledge.

## VII.     Plaintiffs' Claims Regarding Auguste Rodin's *L'Éternel Printemps*

A.     **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.     Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6.   A copy of a document has been placed in front of you as Exhibit 17. According to this document, on June 16, 2011, Mr. Valette emailed Mr. Peretti with information about Rodin's *L'Eternel Printemps*.

    a.   Did you receive this communication?  If so, describe how and when you received this communication or the work description, and who sent it to you.

    b.   Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    c.   Do you know why Mr. Valette emailed Mr. Peretti about this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    d.   Do you know whether Mr. Peretti previously discussed it with him?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.   Had you previously discussed it with him?  If so, describe those discussions and when they took place.

    f.   Do you know why he emailed Mr. Peretti instead of you?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    g.   Do you know why the attached description was in Word?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.  A copy of a document has been placed in front of you as Exhibit 18. According to this document, on June 16, 2011, that same day, Mr. Valette sent the same email and attachment to you.

    a.  Do you recall these communications?  If so, describe what you recall about them.

    b.  Did you discuss these communications or the work description with Mr. Peretti?   If so, describe those discussions and when they took place.

    c.  Did you discuss this communication or the work description with any employee of Sotheby's?  If so, describe those discussions and when they took place.

    d.  Do you know anything about this communication or the work description?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.  Do you know why Mr. Valette sent the same email and attachment to you and to Mr. Peretti?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    f.  Was it typical for Mr. Valette to have emailed you and Mr. Peretti separately regarding the same works?

    g.  If so, do you know why he did that?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    h.  In this email, Mr. Valette suggests that you see the work with "Jean-Marc [Peretti]." Do you know why Mr. Valette suggested that you and Peretti see the work together? If so, describe what you know, when you learned it, and the basis for your knowledge.

    i.  According to this document, Mr. Valette refers to Mr. Peretti by his first name, "Jean-Marc," in the email he sent to you.  Do you know why he did that?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.  A copy of a document has been placed in front of you as Exhibit 19. According to this document, on June 20, 2011, Mr. Valette emailed you with a new version of the description for this work (still in Word).

    a.  Do you recall this communication or work description?  If so, describe what you recall about it.

      b.     Did you discuss this communication or the work description with Mr. Peretti?  If so, describe those discussions and when they took place.

      c.     Did you discuss this communication or the work description with any employee of Sotheby's?  If so, describe those discussions and when they took place.

      d.     d.  Do you know anything about this communication or the work description?  If so, describe what you know, when you learned it, and the basis for your knowledge.

      e.     Do you know why Mr. Valette emailed you a new version of the description for this work? If so, describe what you know, when you learned it and the basis for your knowledge.

9.    What did you do with the information and/or materials Mr. Valette provided regarding this work?

      a.     Did you give it to anyone else?

         (i)     If so, did you give it to Mr. Rybolovlev?  Or Mikhail Sazonov?  Or anyone working with them?

      b.     Do you know whether Mr. Peretti gave it to anyone else?  If so, describe what you know, when you learned it, and the basis for your knowledge.

         (i)     If so, do you know whether Mr. Peretti gave it to Mr. Rybolovlev?  Or Mikhail Sazonov?  Or anyone working with them?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.   A copy of a document has been placed in front of you as Exhibit 20. According to this document, on July 11, 2011, Mr. Valette forwarded an email to you from Holli Chandler, Sotheby's Business Manager of Impressionist & Modern Art, describing the arrangements to ship the work to your Geneva freeport business.

      a.     Do you recall this communication?  If so, describe what you recall about it.

      b.     Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

c.      Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.      Do you know Ms. Chandler?  Who is she?  If so, describe what you know, when you learned it, and the basis for your knowledge

e.      Did you ever communicate with Holli Chandler?  If so, describe those communications and when they took place.

f.      At the time of this email, did you know who Ms. Chandler was referring to as "the buyer" in this email?  Describe what you know, when you learned it, and the basis for your knowledge.

g.      Did you discuss "the buyer" with any Sotheby's employees?  If so, describe those communications and when they took place.

h.      Do you have any knowledge about the viewing in Paris that is referred to?  If so, describe what you know, when you learned it, and the basis for your knowledge.

i.      Do you know what the purpose was for the viewing in Paris? Do you know who it was for?  If so, describe what you know, when you learned it, and the basis for you knowledge.

j.      Did you discuss the viewing in Paris with any Sotheby's employees?  If so, describe those communications and when they took place.

k.      Did you participate in the viewing in Paris that is referred to?  If so, describe that viewing and when it took place.

11.  A copy of a document has been placed in front of you as Exhibit 21. According to this document, Mr. Valette later emailed you that Sotheby's would order the shippers to give you "free access to the piece so you can position it at your convenience at Vulcan?"

a.      Do you recall this communication?  If so, describe what you recall about it.

b.      Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

c.      Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

39

d.      Do you know what the purpose was for placing the work at the Vulcan?  Do you know whether that was for a viewing of the work?  If so, who was it for?  Describe what you know, when you learned it, and the basis for your knowledge.

e.      Did you discuss wanting to position this piece at Vulcan with Mr. Valette? If so, describe those discussions and when they took place.

f.      Did you discuss having "free access" to this work with Mr. Valette?  If so, describe those discussions and when they took place.

g.      Did Sotheby's often give you free access to pieces?  If so, describe when they did so, for which works they did so, and why they did so.

12.   A copy of a document has been placed in front of you as Exhibit 22. According to this document, on July 25, 2011, Mr. Valette emailed you a PDF file of the description of this work "as promised."

a.      Do you recall this communication or work description?  If so, describe what you recall about it.

b.      Do you know what Mr. Valette meant when he wrote the description was "as promised"?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.      Did you discuss this description with Mr. Valette before he sent you this email?  If so, describe those discussions and when they took place.

d.      Did you discuss this communication or the work description with any employee of Sotheby's?  If so, describe those discussions and when they took place.

13.   Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.   What did you pay for this work?

15.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17. Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18. Did you communicate with any of the following people regarding this work:

    a.    Dmitry Rybolovlev?

    b.    Mikhail Sazonov?

    c.    Tetiana Bersheda?

    d.    Yuri Bogdanov?

    e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.    If so, describe those communications and when they took place.

19. Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20. Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21. Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

41

22. Do you know if Sotheby's received any compensation or payment for its role in the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

   a. Do you know if Mr. Valette received any compensation or payment related to the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

23. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

24. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

VIII. **Plaintiffs' Claims Regarding Alberto Giacometti's *Femme de Venise IX***

A. **Introduction:** The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B. Questions:

1. Did you communicate with Plaintiffs or their representatives about this work? If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work? If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

4. Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

5. Did you communicate with anyone else about this work? If so, describe those communications and when they took place.

6. Do you recall whether, in September and October 2011, Mr. Valette emailed you with information about this work?

   a. Do you know whether Mr. Valette also emailed Mr. Peretti during that time period about this work? If so, describe what you know

about those communications, when you learned it, and the basis for your knowledge.

b. Do you know whether Mr. Valette emailed you and Mr. Peretti together or separately about this work?  Why?  Describe what you know, when you learned it, and the basis for your knowledge.

c. Did you discuss this work with Mr. Valette before September 2011?  If so, describe those discussions and when they took place.

d. Did you discuss this work with Mr. Peretti before September 2011?  If so, describe those discussions and when they took place.

e. Do you know whether Mr. Peretti discussed this work with Mr. Valette before September 2011?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7. A copy of a document has been placed in front of you as Exhibit 23. According to this document, on October 4, 2011, you emailed Mr. Valette, copying Mr. Peretti, with the subject line "Urgent."  You asked Mr. Valette to send you the Giacometti file, specifying that you wanted it as a Word document.  Mr. Valette did so.

a. Do you recall these communications?  If so, describe what you recall about them and when they took place.

b. Why did you copy Mr. Peretti on this email?

c. Why did you write "Urgent" in the subject line?

d. Did you discuss the subject of this email with Mr. Valette before or after you sent the email? If so, describe those discussions and when they took place.

e. Did you discuss the subject of this email with Mr. Peretti before or after you sent the email?  If so, describe those discussions and when they took place.

f. Why did you want the file in Word?  Did you explain your reason to Mr. Valette?  Did Mr. Valette ever ask you why you wanted the file in Word?  If so, describe those discussions and when they took place.

8. What did you do with the information and/or materials Mr. Valette provided regarding this work?

a. Did you make changes to the Word document sent to you by Mr. Valette?  If so, describe those changes and why you made them.

43

          (i)      Do you know if Mr. Peretti made changes to the Word document sent to you by Mr. Valette?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    b.      Did you give it to anyone else?

          (i)      If so, did you give it to Mr. Rybolovlev?  Or to Mr. Sazonov?  Or anyone working with them?

    c.      Do you know whether Mr. Peretti gave it to anyone else?  If so, describe what you know, when you learned it, and the basis for your knowledge.

          (i)      If so, do you know whether Mr. Peretti gave it to Mr. Rybolovlev?  Or to Mr. Sazonov?  Or anyone working with them?  If so, describe what you know, when you learned it, and the basis of your knowledge.

9.     Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.    What did you pay for this work?

11.    Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.    Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.    Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.    Did you communicate with any of the following people regarding this work:

    a.      Dmitry Rybolovlev?

    b.      Mikhail Sazonov?

    c.      Tetiana Bersheda?

    d.      Yuri Bogdanov?

      e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

      f.      If so, describe those communications and when they took place.

15. Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

      a.      Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16. Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

      a.      Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17. Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

      a.      Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18. Do you know if Sotheby's received any compensation or payment for its role in the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

      a.      Do you know if Mr. Valette received any compensation or payment related to the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

19. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

45

IX.     **Plaintiffs' Claims Regarding Rene Magritte's** *Le Domaine d'Arnheim*

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6.   A copy of a document has been placed in front of you as Exhibit 24. According to this document, on August 25, 2011, Mr. Valette emailed Mr. Peretti about Magritte's *Le Domaine d'Arnheim*, asking to talk because he had "news."

a.   Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.   Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.   Do you know what the "news" was?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.   Do you know why Mr. Valette sent Mr. Peretti this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.   Do you know whether Mr. Peretti previously discussed this work with Mr. Valette?  If so, describe what you know, when you learned it, and the basis for your knowledge.

46

f.   Had you previously discussed this work with Mr. Valette?  If so, describe those discussions and when they took place.

g.   Do you know why he emailed Mr. Peretti instead of you?  If so, describe what you know, when you learned it, and the basis for your knowledge.

h.   Do you know if Mr. Peretti subsequently spoke with Mr. Valette about this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

i.   Do you know why the attached description was in Word?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.   A copy of a document has been placed in front of you as Exhibit 25. According to this document, on November 10, 2011, another Sotheby's employee named Isadora Katsis emailed you some information about this work.

a.   Do you recall this communication?  If so, describe what you recall about it.

b.   Did you discuss this communication with Mr. Peretti?  If so, describe those discussions and when they took place.

c.   Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.   Do you know Ms. Katsis?  Who is she?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.   Have you communicated with Ms. Katsis?  If so, describe those communications and when they took place.

f.   Ms. Katsis told you that the owner would sell this work for $25,000,000.  Did you ever discuss this price with Mr. Valette or anyone at Sotheby's?  If so, describe those communications and when they took place.

g.   Did you ever discuss this price with Mr. Peretti?  If so, describe those communications and when they took place.

h.   Did Mr. Valette typically address you with the informal "tu"?

(i)   Did other Sotheby's employees typically address you with the informal "tu"?

47

       i.       Did Mr. Valette typically address Mr. Peretti with the informal "tu"?

8.    Did you communicate with Mr. Valette in November 2011 concerning a different Magritte work, *Empire des Lumières*?  If so, describe those communications and when they took place.

     a.     Did you ever discuss *Empire des Lumières* with Mr. Valette?  If so, describe those discussions and when they took place.

     b.     Did you ever discuss *Empire des Lumières* with Plaintiffs or their representatives?  If so, describe those discussions and when they took place.

     c.     Do you know how Mr. Valette calculated the different estimates he provided for *Empire des Lumières*?  Did you know that as of November 2011?  If so, describe what you know, when you learned it, and the basis for your knowledge.

     d.     Did you ever discuss the value or potential value of *Empire des Lumières* or *Domaine d'Arnheim* with Mr. Valette?  If so, describe those discussions and when they took place.

9.    What did you do with the information and/or materials Mr. Valette provided regarding this work?

     a.     Did you give it to anyone else?

        (i)     If so, did you give it to Mr. Rybolovlev?  Or anyone working with him?

10.   A copy of a document has been placed in front of you as Exhibit 26.  According to this document, on December 2, 2011, Sotheby's employee Holli Chandler wrote to "Sabi (ArteSing SG)" that:  "I understand from Sam that the client would very much like to receive the painting at the earliest possible opportunity."  Ms. Chandler referred to "Sabi (ArteSing SG)" as "Nadia."

     a.     Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

     b.     Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

     c.     Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    d.      Do you know who "Sabi (ArteSing SG)" or "Nadia" is?  If so, who is she?  Is she an employee of yours?

    e.      Have you ever communicated with that person?  If so, describe those communications and when they took place.

    f.      Do you know who "the client" was that Ms. Chandler referred to?  Describe what you know, when you learned it, and the basis for your knowledge.

    g.      Do you know if Mr. Valette or Ms. Chandler knew who "the client" was at the time of this email?  Describe what you know, when you learned it, and the basis for your knowledge.

    h.      Did you discuss "the client" with any employees of Sotheby's around the time of this email?  If so, describe those communications and when they took place.

    i.      Did you discuss "the client" with any employees of Sotheby's at some point after the time of this email?  If so, describe those communications and when they took place.

11.    Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.    What did you pay for this work?

13.    Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.    Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.    Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.    Did you communicate with any of the following people regarding this work:

    a.      Dmitry Rybolovlev?

    b.      Mikhail Sazonov?

    c.      Tetiana Bersheda?

    d.     Yuri Bogdanov?

    e.     Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.     If so, describe those communications and when they took place.

17. Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

    a.     Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18. Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

    a.     Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19. Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

    a.     Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20. Do you know if Sotheby's received any compensation or payment for its role in the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    a.     Do you know if Mr. Valette received any compensation or payment related to the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

21. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

22. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this

work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

X.      **Plaintiffs' Claims Regarding Amedeo Modigliani's** *Nu Couché au Coussin Bleu*

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6.   A copy of a document has been placed in front of you as Exhibit 27. According to this document, on December 21, 2011, Mr. Valette emailed you and Mr. Peretti, writing "as promised, here is info on the Modigliani." Mr. Valette referred to you as "Yves" and Mr. Peretti as "Jean-Marc," and signed his name "Sam."

a.   Do you recall this communication?  If so, describe what you recall about it.

b.   Do you know why Mr. Valette wrote this email to both you and Mr. Peretti?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.   Do you know why he did not write to you and Mr. Peretti separately?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.   Mr. Valette wrote that he was sending the information "as promised."  Had you discussed this work with Mr. Valette before

51

this email?  If so, describe those discussions and when they took place.

e.     Do you know whether Mr. Peretti discussed this work with Mr. Valette before this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.     A copy of a document has been placed in front of you as Exhibit 28. According to this document, on December 23, 2011, Mr. Valette sent you an email stating that he was providing an analysis of the Modigliani market.

a.     Do you recall this communication?  If so, describe what you recall about it.

b.     Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

c.     Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.     Mr. Valette wrote:  "The approximate value of a great *nu couche* by Modigliani with the quality of *nu couche sur un coussin bleu* would likely situate itself between" $70 million and $90 million.

e.     Do you know how Mr. Valette came to write that?  If so, describe what you know, when you learned it, and the basis for your knowledge.

f.     This communication uses the formal "vous" and addresses you as "Mr. Bouvier."  Do you  know why Mr. Valette did so?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.     A copy of a document has been placed in front of you as Exhibit 29. According to this document, on December 24, 2011, you and Mr. Valette communicated by email about "the presentation" of the painting.

a.     Do you recall this communication?  If so, describe what you recall about it.

b.     Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

c.      Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.      Do you know anything about the presentation referred to in this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.      Did you ever discuss the presentation with Mr. Valette around the time of this email?  If so, describe those discussions and when they took place.

f.      Did you attend the presentation discussed in this email?  If so, describe the presentation, who was there, and when it took place.

9.    What did you do with the information and/or materials Mr. Valette provided regarding this work?

      a.      Did you give it to anyone else?

           (i)      If so, did you give it to Mr. Rybolovlev?  Or anyone working with him?

10.    Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.    Who did you acquire this work from?

12.    Why did you decide to acquire this work from someone other than Sotheby's?

13.    What did you pay for this work?

14.    Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.    Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.    Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.    Did you communicate with any of the following people regarding this work:

    a.      Dmitry Rybolovlev?

    b.      Mikhail Sazonov?

    c.      Tetiana Bersheda?

    d.      Yuri Bogdanov?

    e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.      If so, describe those communications and when they took place.

18.    Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

    a.      Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19.    Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

    a.      Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20.    Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

    a.      Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21.    Do you know if Sotheby's received any compensation or payment for its role in the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    a.      Do you know if Mr. Valette received any compensation or payment related to the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

22. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

23. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with that art acquisition?  If so, describe what you know, when you learned it, and the basis for your knowledge.

24. A copy of a document has been placed in front of you as Exhibit 30. According to this document, Sotheby's provided you with a $110,000,000 valuation for this work.

   a. Did you receive this document?  If so, describe how and when you received this document, and who sent it to you.

   b. Did you discuss this document with any employee of Sotheby's? If so, describe those discussions and when they took place.

   c. Do you know anything about this document?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   d. Did you ask Sotheby's to prepare this valuation of the work?

   e. Why did you obtain a valuation for the work?

   f. Were you involved in any communications with Plaintiffs regarding any valuation for this work?  If so, describe those communications and when they took place.

   g. Do you know why this valuation does not identify your 2012 acquisition of the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

      (i) Did you discuss that with Mr. Valette?  If so, describe those discussions and when they took place.

   h. Do you know how Sotheby's calculated the estimated value of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

      (i) Did you discuss the work's value with Mr. Valette?  If so, describe those discussions and when they took place.

   i. Did you discuss this document with Plaintiffs?  If so, describe those discussions and when they took place.

j.     Do you know whether Plaintiffs used this document to obtain or attempt to obtain a loan or other financing?  If so, describe what you know, when you learned it, and the basis for your knowledge.

25.   Did you participate in any discussions with Sotheby's about a possible sale of this work at an auction in New York?  If so, describe those discussions and when they took place.

26.   Do you know whether Mr. Peretti participated in any discussions with Sotheby's about a possible sale of this work at an auction in New York?  If so, describe what you know, when you learned it, and the basis for your knowledge.

a.     Do you know who first had the idea to sell this work at a Sotheby's auction?  If so, describe what you know, when you learned it, and the basis for your knowledge.

27.   A copy of a document has been placed in front of you as Exhibit 31. According to this document, on January 9, 2015, Sotheby's Chief Operating Officer Bruno Vinciguerra emailed Mr. Peretti and Mr. Valette about Sotheby's possibly selling this work during the spring auction in New York, stating that he anticipated offering a guarantee of up to $70 million.

a.     Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.     Do you know why Sotheby's anticipated offering a guarantee of $70 million?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.     Do you know why Sotheby's anticipated guarantee was not higher?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.     Do you know whether Mr. Peretti discussed a potential guarantee with Mr. Vinciguerra, Mr. Valette, or anyone at Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.     Did you discuss a potential guarantee with Mr. Vinciguerra, Mr. Valette, or anyone at Sotheby's?  If so, describe those discussions and when they took place.

f.     Mr. Vinciguerra addressed Mr. Peretti as "Jean-Marc" and wrote "we could achieve once again for you an exceptional result."

(i)    Do you know what "exceptional result" Mr. Vinciguerra is referring to?  If so, describe what you know, when you learned it, and the basis for your knowledge.

(ii)    Had Mr. Peretti done business with him before?  How many times?  If so, describe those instances and when they took place.

(iii)    Who was the owner of this artwork at the time of the potential auction in New York?  If the owner was someone other than you, did you obtain permission from the owner to sell the artwork at this auction?  If so, describe those discussions and when they took place.  Did you ever discuss that with Sotheby's?  If so, describe those discussions and when they took place.

## XI.    Plaintiffs' Claims Regarding Auguste Rodin's *Eve*

A.    **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.    Questions:

1.    Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.    Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.    Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.    Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6.    A copy of a document has been placed in front of you as Exhibit 32.  According to this document, on January 25, 2012, Mr. Valette emailed Mr. Peretti a photo of Rodin's *Eve*.  There was no cover note.

a.    Did you receive this communication or photo?  If so, describe how and when you received this document, and who sent it to you.

57

b.      Do you know anything about this communication or photo?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.      Do you know why Mr. Valette sent Mr. Peretti this photo?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.      Had you discussed this work with Mr. Valette before you received this email?  If so, describe those discussions and when they took place.

        (i)     Do you know whether Mr. Peretti discussed this work with Mr. Valette before this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.  A copy of a document has been placed in front of you as Exhibit 33. According to this document, on February 2, 2012, Mr. Valette emailed Mr. Peretti a Word document about the work, asking in his cover email if it "suits you."

a.      Did you receive this communication or attached document?  If so, describe how and when you received this document, and who sent it to you.

b.      Do you know anything about this communication or attached document?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.      Do you know why Mr. Valette sent Mr. Peretti this information about the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.      Do you know why Mr. Valette asked Mr. Peretti if this information "suits you"?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.      Did you ask Mr. Valette to send Mr. Peretti this information in a Word document?  If so, describe why and when you did so.

        (i)     If not, do you know whether Mr. Peretti asked Mr. Valette to send him this information in Word?  If so, describe what you know, when you learned it, and the basis for your knowledge.

58

g.      Did you discuss with Mr. Valette the information he sent to Mr. Peretti?  If so, describe those discussions and when they took place.

      (i)      Do you know whether Mr. Peretti discussed this information with Mr. Valette before this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

8.      A copy of a document has been placed in front of you as Exhibit 34.  Mr. Valette appears to have sent the same information to you the next day.

a.      Do you recall this communication?  If so, describe what you recall about it.

b.      Do you know why Mr. Valette sent you and Mr. Peretti this information separately?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.      A copy of a document has been placed in front of you as Exhibit 35. According to this document, on February 13, 2012, Mr. Valette emailed both you and Mr. Peretti with a PDF about the work, writing in his cover email:  "Here is a try of a new doc with more photos – thanks for letting me know if it is better."

a.      Do you recall this communication or attached document?  If so, describe what you recall about it.

a.      Did you ask Mr. Valette for this new document?  If so, describe that request and whether you made it by phone or in person, and why.

b.      Do you know whether Mr. Peretti asked Mr. Valette for this new document?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.      Do you know why Mr. Valette sent the information first in a Word file, and then in a PDF?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.      A copy of a document has been placed in front of you as Exhibit 36. According to this document, on February 14, 2012, Mr. Valette emailed you that the work had previously sold in 2008 for $18,969,000.

a.      Do you recall this communication?  If so, describe what you recall about it.

b.      Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

c.      Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.      Did you discuss the work's prior sale price with Mr. Valette?  If so, describe those discussions and when they took place.

11.   A copy of a document has been placed in front of you as Exhibit 37. According to this document, on March 6, 2012, Philippe Capt emailed Mr. Valette and Holli Chandler that "Our client would like us to collect directly the crate in Frankfurt with our truck."

a.      Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

b.      Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

c.      Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.      Do you know Philippe Capt?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.      Is Philippe Capt an employee of yours?

f.      Have you ever communicated with that person?  If so, describe those communications and when they took place.

g.      Do you know the person or entity that Philippe Capt referred to as "[o]ur client"?  Describe what you know, when you learned it, and the basis for your knowledge.

h.      Do you know if anyone at Sotheby's knew the identity of the person referred to as "[o]ur client" at the time of this email? Describe what you know, when you learned it, and the basis for your knowledge.

i.      Did you discuss that person or entity with Mr. Valette around the time of this email?  If so, describe those discussions and when they took place.

60

      j.     Did you discuss that person or entity with Ms. Chandler around the time of this email?  If so, describe those discussions and when they took place.

12.    What did you do with the information and/or materials Mr. Valette provided regarding this work?

      a.     Did you give it to anyone else?

          (i)     If so, did you give it to Mr. Rybolovlev?  Or anyone working with him?

13.    Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.    What did you pay for this work?

15.    Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.    Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.    Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18.    Did you communicate with any of the following people regarding this work:

      a.     Dmitry Rybolovlev?

      b.     Mikhail Sazonov?

      c.     Tetiana Bersheda?

      d.     Yuri Bogdanov?

      e.     Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

      f.     If so, describe those communications and when they took place.

19.    Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20.    Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21.    Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

22.    Do you know if Sotheby's received any compensation or payment for its role in the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    a.    Do you know if Mr. Valette received any compensation or payment related to the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

23.    A copy of a document has been placed in front of you as Exhibit 38. According to this email, in March 2014, Mr. Valette emailed you a description of the work.

    a.    Do you recall this communication?  If so, describe what you recall about it.

    b.    Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

    c.    Do you know why the description of this work does not identify your 2012 acquisition of the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

        (i)    Did you discuss that with Mr. Valette?  If so, describe those discussions and when they took place.

24.   A copy of a document has been placed in front of you as Exhibit 39. According to this document, on December 18, 2014, Mr. Valette emailed you: "After reflection, my colleagues and I think that the magnificent *Eve* by Rodin that belongs to your client would be particularly shown to advantage at the big sculpture exposition we are preparing…"

   a.   Do you recall this communication?  If so, describe what you recall about it.

   b.   Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

   c.   Do you know the person or entity referred to in this communication as "your client"?  If so, describe what you know, when you learned it, and the basis for your knowledge.

       (i)   Do you know if Mr. Valette knew the identity of the person or entity referred to as "your client" at the time of this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   d.   Mr. Valette addressed you using "vous"—do you know why?  If so, describe what you know, when you learned it, and the basis for your knowledge.

25.   A copy of a document has been placed in front of you as Exhibit 40. According to this document, Mr. Valette sent a revised version of the email shown to you as Exhibit 39, an hour and 17 minutes after Mr. Valette had sent the earlier email.  Mr. Valette emailed you: "After reflection, my colleague Simon Stock, head of sculpture sales at Sotheby's, and I think that the magnificent *Eve* by Rodin that belongs to your client would be particularly shown to advantage at the big sculpture exposition we are preparing…"

   a.   Do you recall these communications?  If so, describe what you recall about it.

   b.   Did you discuss these communications with any employee of Sotheby's?  If so, describe those discussions and when they took place.

   c.   Do you know why Mr. Valette revised this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    d.      Did you ever discuss with Mr. Valette the idea of Sotheby's re-selling this work?  If so, describe those discussions.

    e.      Do you know whether Plaintiffs or their representatives ever received this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

26.   Do you know if Sotheby's received any compensation or payment for its role in the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    a.      Do you know if Mr. Valette received any compensation or payment related to the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

27.   Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

28.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XII.    Plaintiffs' Claims Regarding Gustav Klimt's *Wasserschlangen II*

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.  Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6.   Do you recall communicating with Mr. Valette regarding a viewing of this work?  If so, describe those communications and when they took place.

7.   Do you know whether Mr. Peretti communicated with Mr. Valette regarding a viewing of this work?  Describe what you know, when you learned it, and the basis for your knowledge.

8.   Did you participate in the viewing?  If so, when was it?  Who attended?  What was discussed?  Describe what you know, when you learned it, and the basis for your knowledge.

9.   Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.   What did you pay for this work?

11.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.   Did you communicate with any of the following people regarding this work:

    a.   Dmitry Rybolovlev?

    b.   Mikhail Sazonov?

    c.   Tetiana Bersheda?

    d.   Yuri Bogdanov?

    e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.   If so, describe those communications and when they took place.

15. Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

   a. Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16. Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

   a. Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17. Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

   a. Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18. Do you know if Sotheby's received any compensation or payment for its role in the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   a. Do you know if Mr. Valette received any compensation or payment related to the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21. Did Mr. Valette send you any descriptions of this work?  If so, describe those descriptions and when they were sent.

66

a.    Do you know whether those descriptions identified your 2012 acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

b.    Did you ever discuss a description for this work with Mr. Valette?  If so, describe those discussions and when they took place.

22.    Copies of two documents have been placed in front of you as Exhibits 41 and 42.  According to these documents, on September 24, 2013, Mr. Valette emailed Mr. Peretti an article from *Der Standard* (Austria), one in French and one in German, which reported that Sotheby's had sold the work for $120 million.  The first email had no subject line, and neither had a cover note.

a.    Did you receive these communications?  If so, describe how and when you received this document, and who sent it to you.

b.    Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.    Do you know why Mr. Valette sent Mr. Peretti this article?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.    Do you know why there was no subject line (for the first email) or cover note on either email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.    Did you discuss this article with Mr. Valette on the phone?  If so, describe such conversation(s) and when they took place.  Who was on the call?  Was it before or after Mr. Valette emailed to you?  What did he say?  What did you say?

f.    Did you discuss this article with Mr. Peretti?  If so, describe those discussions and when they took place.  Did they take place by email, phone, or other means?  What did you say?  What did Mr. Peretti say?

23.    A copy of a document has been placed in front of you as Exhibit 43.  According to this document, in October 2014, Sotheby's provided you with a valuation for this work listing the insurance value of the work at $180 million.

a.    Did you receive this document?  If so, describe how and when you received this document, and who sent it to you.

b.      Do you know anything about this document?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.      Did you discuss this document with any employee of Sotheby's? If so, describe those discussions and when they took place.

d.      Did you ask Sotheby's to prepare this valuation of the work?

e.      Why did you obtain a valuation for the work?

f.      Did you communicate with Sotheby's in this respect?  If so, describe those communications and when they took place.

g.      Were you involved in any communications with Plaintiffs regarding any valuation for this work?  If so, describe those communications and when they took place.

h.      Do you know why the valuation you obtained from Sotheby's does not identify your acquisition of the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

        (i)     Did you discuss that with Mr. Valette?  If so, describe those discussions and when they took place.

i.      Do you know how Sotheby's calculated the estimated value of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

        (i)     Did you discuss the work's value with Mr. Valette?  If so, describe those discussions and when they took place.

        (ii)    Did you discuss the work's value with Mr. Valette?  If so, describe those discussions and when they took place.

j.      Did you discuss this document with Plaintiffs?  If so, describe those discussions and when they took place.

k.      Do you know whether Plaintiffs used this document to obtain or attempt to obtain a loan or other financing?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XIII.    Plaintiffs' Claims Regarding Amedeo Modigliani's *Tête*

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any

fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6.   A copy of a document has been placed in front of you as Exhibit 44. According to this document, on June 26, 2012, you asked Mr. Valette to email you the file in "normal format" so that you could include translations.

   a.   Do you recall this communication?  If so, describe what you recall about it.

   b.   Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

   c.   Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   d.   Why did you want to include translations?

   e.   Why did you ask Mr. Valette to email you the file in "normal format"?  What did you mean by "normal format"?

7.   Did Mr. Valette provide you with information and/or materials regarding this work?

   a.   If so, did you give them to anyone else?

      (i)   If so, did you give it to Mr. Rybolovlev?  Or anyone working with him?

69

8.  Do you know whether Mr. Peretti provided any information and/or materials from Mr. Valette regarding this work to anyone else?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.  Did you ever discuss with Mr. Peretti whether you or he had sent any information and/or materials regarding this work that you or he had received from Mr. Valette to anyone else?  If so, describe those discussions and when they took place.

10. A copy of a document has been placed in front of you as Exhibit 45. According to this document, on July 9, 2012, Mr. Valette emailed you in connection with a "presentation" of the work.

    a.  Do you recall this communication?  If so, describe what you recall about it.

    b.  Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

    c.  Do you know anything about the presentation referred to in this email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    d.  Do you know who the presentation was for?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.  Did you discuss any presentation with Mr. Valette around the time of this email?  If so, describe those discussions and when they took place.

    f.  Did you attend the presentation discussed in this email?  If so, describe the presentation and when it took place.

11. A copy of a document has been placed in front of you as Exhibit 46. According to this document, on July 11, 2012, Mr. Peretti wrote to Mr. Valette:  "Call me thanks."

    a.  Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

    b.  Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

70

c. Do you know whether Mr. Valette called Mr. Peretti?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d. Do you know why Mr. Peretti wanted to speak on the phone with Mr. Valette as opposed to communicating by email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Copies of documents have been placed in front of you as Exhibits 47 and 48.  According to Exhibit 47, on July 24, 2012, Mr. Valette emailed you a description of the work and estimated that its value would likely be between €70 million to €90 million or "maybe more."  According to Exhibit 48, Mr. Valette then forwarded his email to you (Exhibit 47) to Mr. Peretti, writing:  "Here is the text."

a. Do you recall these communications?  If so, describe what you recall about them.

b. Do you know why Mr. Valette sent Mr. Peretti this email (Exhibit 47)?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c. Do you know why Mr. Valette forwarded this email (Exhibit 47) to you?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d. Do you know why Mr. Valette used the "vous" form in his email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e. Did you discuss this email with Mr. Peretti?  If so, describe those discussions and when they took place.

f. Did you discuss this email with Mr. Valette?  If so, describe those discussions and when they took place.

g. Do you know how Mr. Valette calculated the estimated value of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

h. Did you discuss the work's value with Mr. Valette?  If so, describe those discussions and when they took place.

i. Do you know whether Mr. Peretti discussed the work's value with Mr. Valette?  If so, describe what you know, when you learned it, and the basis for your knowledge.

71

13.   A copy of a document has been placed in front of you as Exhibit 49. According to this document, the next day, July 25, 2012, Mr. Valette emailed a different version of this email to you, this time estimating that the work was likely worth between €80 million to €100 million.

    a.   Do you recall this communication?  If so, describe what you recall about it.

    b.   Did you discuss this communication with Mr. Peretti?  If so, describe those discussions and when they took place.

    c.   Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

    d.   Do you know why Mr. Valette increased the estimated value of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    e.   Did you ask Mr. Valette to revise the estimated value?  If so, describe that request and when it was made.

    f.   Do you know whether Mr. Peretti asked Mr. Valette to revise the estimated value of the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    g.   Did you provide this email to anyone else?  If so, did you provide it to Mr. Rybolovlev?  Or anyone working with him?

    h.   Do you know whether Mr. Peretti provided this email to anyone else?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.   Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   What did you pay for this work?

16.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If

so, describe what you know, when you learned it, and the basis for your knowledge.

19. Did you communicate with any of the following people regarding this work:

    a.      Dmitry Rybolovlev?

    b.      Mikhail Sazonov?

    c.      Tetiana Bersheda?

    d.      Yuri Bogdanov?

    e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.      If so, describe those communications and when they took place.

20. Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

    a.      Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21. Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

    a.      Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

22. Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

    a.      Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

23. Do you know if Sotheby's received any compensation or payment for its role in the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

    a. Do you know if Mr. Valette received any compensation or payment related to the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

24. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

25. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

26. Did you participate in discussions with Sotheby's about a possible sale of this work at an auction in New York? If so, describe those discussions and when they took place.

    a. Do you know whether Mr. Peretti discussed with Sotheby's the price paid to him by any other person for the work? If so, explain what you know, when you learned it, and the basis for your knowledge.

27. A copy of a document has been placed in front of you as Exhibit 50. According to this document, on November 3, 2014, Sotheby's Chief Operating Officer, Bruno Vinciguerra, wrote to Mr. Peretti and copied Mr. Valette, writing that Sotheby's "will pay you $25mil tomorrow" if an unspecified client won the auction.

    a. Did you receive this communication? If so, describe how and when you received this document, and who sent it to you.

    b. Do you know anything about this communication? If so, describe what you know, when you learned it, and the basis for your knowledge.

    c. Do you know why Mr. Vinciguerra sent Mr. Peretti this email? If so, explain what you know, when you learned it, and the basis for your knowledge.

    d. Had Mr. Peretti done business with Mr. Vinciguerra before? If so, how many times? Describe those prior instances and when they took place.

74

e.     Please describe the transaction referred to in this document and anything you remember about it.

f.     Did you ever discuss with Sotheby's the ownership of this work? If so, describe those discussions and when they took place.

g.     Do you know whether Mr. Peretti ever discussed with Sotheby's the ownership of this work?  If so, explain what you know, when you learned it, and the basis for your knowledge.

h.     Did Sotheby's ever ask you for proof of ownership of this work? If so, explain what was asked, when it was asked, and by whom.

(i)     If not, do you know why not?  Describe what you know, when you learned it, and the basis for your knowledge.

i.     Do you know whether Sotheby's ever asked Mr. Peretti for proof of ownership of this work?   If so, explain what you know, when you learned it, and the basis for your knowledge.

28.   Do you know whether Sotheby's facilitated an auction of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

29.   Do you know the price at which this work sold?  If so, describe what you know, when you learned it, and the basis for your knowledge.

30.   Did you ever see the auction catalogue for this work?  If so, describe the auction catalogue.

a.     Do you know whether the auction catalogue referred to your earlier acquisition of the work?  Describe what you know, when you learned it, and the basis for your knowledge.

b.     Did you ever discuss the auction catalogue for this work with Mr. Valette or Mr. Vinciguerra?  If so, describe those discussions and when they took place.

c.     Did you ever discuss with Mr. Valette or Mr. Vinciguerra whether the auction catalogue for this work should refer to your acquisition of it?  If so, describe those discussions and when they took place.

d.     Did you ever discuss the auction catalogue for this work with Mr. Peretti?  If so, describe those discussions and when they took place.

75

e.      Did you ever discuss with Mr. Peretti whether the auction catalogue for this work should refer to you acquisition of it?  If so, describe those discussions and when they took place.

31.     A copy of a document has been placed in front of you as Exhibit 51. According to this document, on December 4, 2014, Mr. Valette emailed "NADIA (ArteSing SG)" or "Nadia" writing that Sotheby's had sent you $15 million from the sale of the work.

a.      Do you know who NADIA (ArteSing SG) or Nadia is?  If so, who is she?

b.      Is she an employee of yours?

c.      Have you ever communicated with that person?  If so, describe those communications and when they took place.

d.      Did you receive this communication?  If so, describe how and when you received this communication, and who sent it to you.

e.      Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

f.      Did you discuss this communication with Mr. Peretti?  If so, describe those discussions and when they took place.

g.      Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

h.      Did you discuss this payment with Mr. Valette or Mr. Vinciguerra? If so, describe those discussions and when they took place.

i.      What did you do with that payment?

j.      Did you discuss this payment with Mr. Peretti?  If so, describe those discussions and when they took place.

32.     Did you ever discuss Rothko's *No. 6.* with Plaintiffs?  If so, describe those discussions and when they took place.

33.     Plaintiffs allege that "on August 4, 2014, Plaintiffs were attempting to purchase another painting, Rothko's *No. 6,* through Bouvier.  Bouvier falsely stated to Plaintiffs that the sellers of the Rothko would sell the painting for €80 million plus Modigliani's *Tête* valued at €60 million, for what Bouvier told Plaintiffs was a total purchase price for the Rothko of €140 million.  This followed another series of fabricated negotiations that

76

Bouvier misrepresented to Plaintiffs had occurred with the Rothko sellers."

    a.    Do you have any information about Plaintiffs' allegations? Describe what you know, when you learned it, and the basis for your knowledge.

    b.    Did you have any communications with the Rothko sellers?  If so, describe those communications and when they took place.  Did the Rothko sellers ever express an interest in Modigliani's *Tête*?  If so, describe those discussions and when they took place.

## XIV.    Plaintiffs' Claims Regarding Henri de Toulouse-Lautrec's *Au Lit: Le Baiser (Red)*

A.    **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.    Questions:

    1.    Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

    2.    Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

    3.    Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

    4.    Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

    5.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

    6.    A copy of a document has been placed in front of you as Exhibit 52. According to this document, on February 17, 2015, Mr. Valette forwarded Mr. Peretti an email he had sent you with information about this work.

        a.    Did you receive this communication?  If so, describe how and when you received this document, and who sent it to you.

b.     Do you know anything about this communication?  If so, describe what you know, when you learned it, and the basis for your knowledge.

c.     Do you know why Mr. Valette sent Mr. Peretti this information?  If so, describe what you know, when you learned it, and the basis for your knowledge.

d.     Do you know why Mr. Valette forwarded you this information?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.     Did you speak with Mr. Valette on the phone before he sent you this information?  If so, describe those communications and when they took place.

f.     What did you do with the information that Mr. Valette sent you about this work?  Did you send it Mr. Rybolovlev/Plaintiffs?

7.    Do you know whether Mr. Peretti received information and/or materials from Mr. Valette concerning this work?  If so, describe what you know, when you learned it, and the basis of your knowledge.

a.     Do you know what Mr. Peretti did with any information and/or materials he received from Mr. Valette concerning this work?  If so, describe what you know, when you learned it, and the basis of your knowledge.

8.    Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

9.    What did you pay for this work?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.   Did you communicate with any of the following people regarding this work:

78

    a.       Dmitry Rybolovlev?

    b.       Mikhail Sazonov?

    c.       Tetiana Bersheda?

    d.       Yuri Bogdanov?

    e.       Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.       If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16. Did Mr. Valette ever send you an auction catalogue for this work?

    a.       Do you know whether any auction catalogue for this work referred to your prior acquisition of this work?  If so, describe what you know about the auction catalogue, when you learned it, and the basis for your knowledge.

        (i)      If the auction catalogue did not refer to your prior acquisition of this work, do you know why not?  Describe what you know, when you learned it, and the basis for your knowledge.

    b.       Did you ever discuss an auction catalogue for this work with Mr. Valette, Mr. Vinciguerra, or anyone else at Sotheby's?  If so, describe those discussions and when they took place.

    c.       Do you know whether Mr. Peretti discussed an auction catalogue for this work with Mr. Valette, Mr. Vinciguerra, or anyone else at Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    d.       Did you ever discuss an auction catalogue for this work with Mr. Peretti?  If so, describe those discussions and when they took place.

e.      Did you ever send an auction catalogue sent to you by Mr. Valette or someone else at Sotheby's to Plaintiffs or Mr. Rybolovlev or anyone working on their behalf?

f.      Sotheby's ultimately sold this work at auction on February 3, 2015 for £9,500,000 million. On February 25, 2015, you were arrested in Monaco and your arrest made international news. Did anyone at Sotheby's contact you to discuss your arrest? If so, who? When? How did they contact you? What did they say? What did you say?

g.      A copy of a document has been placed before you as Exhibit 45A. Did you ever discuss with Sotheby's whether it could make an advance payment of $2,000,000 to you in connection with this work before Sotheby's was due to? If so, describe those discussions and when they took place.

XV.    **Plaintiffs' Claims Regarding Leonardo da Vinci's *Christ as Salvator Mundi***

A.   **Introduction:** The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work? If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work? If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work? If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work? If so, describe those communications and when they took place.

5.   Did you communicate with anyone else about this work? If so, describe those communications and when they took place.

6.   Do you know of any viewings that took place in connection with this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

7.   Did you participate in any discussions concerning a viewing for this work? If so, describe those discussions, including the persons who participated, and when they took place.

8.   Did you attend any viewings of the work, *Christ as Salvator Mundi*?

    a.   If so, when was the viewing?  Where was the viewing?  Who attended?  What was discussed?

9.   Do you know of any meetings in Paris in connection with the sale of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.   Were you part of any discussions about any meetings in Paris in connection with the sale of this work?  If so, describe those discussions, when they took place, and who participated.

11.   Did you ever communicate with Sotheby's regarding this work?  If so, when?  With whom?  What was discussed?

12.   Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.   What did you pay for this work?

14.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

17.   Did you communicate with any of the following people regarding this work:

    a.   Dmitry Rybolovlev?

    b.   Mikhail Sazonov?

    c.   Tetiana Bersheda?

    d.   Yuri Bogdanov?

e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

f.   If so, describe those communications and when they took place.

18.   Did you communicate with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe those communications and when they took place.

a.   Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19.   Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

a.   Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

20.   Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

a.   Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21.   Do you know if Sotheby's received any compensation or payment for its role in the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

a.   Do you know if Mr. Valette received any compensation or payment related to the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

22.   Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

23.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

24.   A copy of a document has been placed in front of you as Exhibit 53. According to this document, on March 3, 2014, Mr. Vinciguerra emailed you and Mr. Peretti an article from *The New York Times* stating that the *Salvator Mundi* had been sold for $75 million.  There was no cover note.

   a.   Do you recall this communication?  If so, describe what you recall about it.

   b.   Did you discuss this communication with Mr. Peretti?  If so, describe those discussions and when they took place.

   c.   Did you discuss this communication with any employee of Sotheby's?  If so, describe those discussions and when they took place.

   d.   Did you speak with Mr. Vinciguerra about this article?  Describe that conversation and when it took place, including who participated and whether it was by phone or in person.

   e.   Do you know whether Mr. Peretti spoke with Mr. Vinciguerra about this article?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   f.   Do you know why Mr. Vinciguerra sent you this article?  If so, describe what you know, when you learned it, and the basis for your knowledge.

   g.   Do you know why Mr. Vinciguerra did not include a cover note in his email?  If so, describe what you know, when you learned it, and the basis for your knowledge.

25.   Did Mr. Rybolovlev or Mr. Sazonov accuse you of defrauding them in December 2014?  If so, describe those accusations and when they took place.

   a.   Was that something you discussed with Mr. Peretti?  If so, describe those discussions, including whether it was over the phone or in person.

26.   Did you obtain a valuation of this work from Sotheby's?

   a.   If so, why did you obtain a valuation for the work?

   b.   If so, did you communicate with Mr. Peretti in this respect?  If so, describe those communications and when they took place.

   c.   If so, did you communicate with Sotheby's in this respect?  If so, describe those communications and when they took place.

d. Do you know whether Mr. Peretti communicated with Sotheby's in this respect?  If so, describe those communications and when they took place.

e. Were you involved in any communications with Plaintiffs regarding any valuation for this work?  If so, describe those communications and when they took place.

27. A copy of a document has been placed in front of you as Exhibit 54. According to this document, on January 27, 2015, Mr. Valette emailed you a draft valuation for the work in an amount of $100 million along with a cover letter from Alexander Bell indicating that you acquired the work in 2013.

a. Do you recall this communication or the draft valuation?  If so, describe what you recall about it.

b. Did you discuss this communication or the draft valuation with Mr. Peretti?  If so, describe those discussions and when they took place.

c. Did you discuss this communication or the draft valuation with any employee of Sotheby's?  If so, describe those discussions and when they took place.

28. A copy of a document has been placed in front of you as Exhibit 46A. Did you speak with Mr. Valette concerning the currency in which Sotheby's valuation would be issued?  Did you ask him to change the currency listed in the valuation?  If so, why?  Did you ask him to remove the reference to your having acquired the painting in 2013? If so, why? What did you say and what did he say?  Did you speak with anyone else at Sotheby's on that day?  If so, describe those discussions.

29. A copy of a document has been placed in front of you as Exhibit 55. According to this document, on January 28, 2015, Mr. Valette sent you a revised valuation of the work in an amount of €100 million.

a. Do you recall this communication or the revised valuation?  If so, describe what you recall about it.

b. Did you discuss this communication or the revised valuation with Mr. Peretti?  If so, describe those discussions and when they took place.

c. Did you discuss this communication or the revised valuation with any employee of Sotheby's?  If so, describe those discussions and when they took place.

84

d.    Do you know anything about this communication or the revised valuation?  If so, describe what you know, when you learned it, and the basis for your knowledge.

e.    Did you ask Sotheby's to prepare this valuation of the work?

f.    Why did you obtain a valuation for the work?

g.    Did you communicate with Sotheby's in this respect?  If so, describe those communications and when they took place.

h.    Do you know why Mr. Valette changed the currency of the valuation from U.S. dollars to Euros?  If so, describe what you know, when you learned it, and the basis for your knowledge.

i.    Were you involved in any communications with Plaintiffs regarding any valuation for this work?  If so, describe those communications and when they took place.

j.    Do you know why the valuation you obtained from Sotheby's does not identify your acquisition of the work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    (i)    Did you discuss that with Mr. Valette?  If so, describe those discussions and when they took place.

k.    Do you know how Sotheby's calculated the estimated value of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    (i)    Did you discuss the work's value with Mr. Valette?  If so, describe those discussions and when they took place.

    (ii)    Did you discuss the work's value with Mr. Valette?  If so, describe those discussions and when they took place.

l.    Did you discuss this document with Plaintiffs?  If so, describe those discussions and when they took place.

m.    Do you know whether Plaintiffs used this document to obtain or attempt to obtain a loan or other financing?  If so, describe what you know, when you learned it, and the basis for your knowledge.

30.    A copy of a document has been placed in front of you as Exhibit 56. According to this document, on January 28, 2015, Mr. Valette sent you a revised cover letter from Mr. Bell that does not refer to your acquisition of the work in 2013.

a.     Do you recall this communication or the revised cover letter?  If so, describe what you recall about it.

b.     Do you know why Mr. Bell revised the letter to remove the reference to your acquisition of the work? If so, describe what you know, when you learned it, and the basis for your knowledge.

c.     Did you discuss this communication or the revised cover letter with any employee of Sotheby's?  If so, describe those discussions and when they took place.

d.     Do you know anything about this communication or the revised cover letter?  If so, describe what you know, when you learned it, and the basis for your knowledge.

**XVI.**     **Plaintiffs' Claims Regarding Paul Gauguin's *Otahi (Alone)***

A.     **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Sotheby's aided and abetted Mr. Bouvier's alleged fraud and breach of fiduciary duty with respect to this work of art, and Sotheby's defense that, if Mr. Bouvier defrauded Plaintiffs or breached any fiduciary duty to them, Sotheby's had no knowledge of any such fraud or breach of fiduciary duty, and has no liability whatsoever to Plaintiffs.

B.     Questions:

1.     Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.     Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.     Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.     Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.     Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

6.     Did you acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

7.     What did you pay for this work?

8.     Who did you acquire this work from?

86

9.  Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

10.  Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.  Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.  Did you communicate with any of the following people regarding this work:

    a.  Dmitry Rybolovlev?

    b.  Mikhail Sazonov?

    c.  Tetiana Bersheda?

    d.  Yuri Bogdanov?

    e.  Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.  If so, describe those communications and when they took place.

13.  Did you communicate with Sotheby's about what you intended to do, or did, with the work after you acquired it?  If so, describe those communications and when they took place.

    a.  Do you know whether Mr. Peretti communicated with Sotheby's about what you intended to do, or did, with the work after the transaction with Sotheby's?  If so, describe what you know, when you learned it, and the basis for your knowledge.

14.  Did you discuss with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe those communications and when they took place.

    a.  Do you know whether Mr. Peretti discussed with Sotheby's the identity of any person or entity other than you who was acquiring or would be acquiring this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Did you discuss with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe those communications and when they took place.

    a.    Do you know whether Mr. Peretti discussed with Sotheby's the price paid by any person or entity other than you to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

16. Do you know if Sotheby's received any compensation or payment for its role in the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

    a.    Do you know if Mr. Valette received any compensation or payment related to the sale of this work? If so, describe what you know, when you learned it, and the basis for your knowledge.

17. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

18. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

19. A copy of a document has been placed in front of you as Exhibit 57. According to this document, on October 24, 2014, Mr. Valette sent you a valuation for this work in an amount of $120 million.

    a.    Did you receive this document?  If so, describe how and when you received this document, and who sent it to you.

    b.    Did you discuss this document with any employee of Sotheby's? If so, describe those discussions and when they took place.

20. Did you ask Sotheby's to prepare this valuation of the work?

    a.    If so, why did you obtain a valuation for the work?

    b.    If so, did you communicate with Sotheby's in this respect?  If so, describe those communications and when they took place.

    c.    Were you involved in any communications with Plaintiffs regarding any valuation for this work?  If so, describe those communications.

    d.       Do you know why this document does not refer to your acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

         (i)      Did you discuss that with Mr. Valette?  If so, describe those discussions.

    e.       Did you discuss this document with Plaintiffs?  If so, describe those discussions and when they took place.

    f.       Do you know whether Plaintiffs used this document to obtain or attempt to obtain a loan or other financing?  If so, describe what you know, when you learned it, and the basis for your knowledge.

21.    A copy of a document has been placed in front of you as Exhibit 58. According to this document, on February 19, 2015, Mr. Valette sent you a second valuation for this work that valued it at an amount of $140 million.

    a.       Did you receive this document?  If so, describe how and when you received this document, and who sent it to you.

    b.       Did you discuss this document with any employee of Sotheby's? If so, describe those discussions and when they took place.

    c.       Do you know anything about this document?  If so, describe what you know, when you learned it, and the basis for your knowledge.

    d.       Why did you obtain a second valuation for the work?

    e.       Did you communicate with Sotheby's in this respect?  If so, describe those communications and when they took place.

    f.       Were you involved in any communications with Plaintiffs regarding any second valuation for this work?  If so, describe those communications and when they took place.

    g.       Do you know why this document does not refer to your acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

         (i)      Did you discuss that with Mr. Valette?  If so, describe those discussions.

    h.       Did you discuss this document with Plaintiffs?  If so, describe those discussions and when they took place.

       i.      Do you know whether Plaintiffs used this document to obtain or attempt to obtain a loan or other financing?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XVII.     Plaintiffs' Acquisition of Pablo Picasso's *Les Noces de Pierrette*

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Did you communicate with any of the following people regarding this work:

   a. Dmitry Rybolovlev?

   b. Mikhail Sazonov?

   c. Tetiana Bersheda?

   d. Yuri Bogdanov?

   e. Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f. If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

**XVIII.   Plaintiffs' Acquisition of Amadeo Modigliani's *Nu couché aux bras levés***

A. **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B. Questions:

   1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

   2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

   3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

   4. Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

   5. Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.  Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.  Did you acquire this work?  If so, describe your acquisition of this work.

8.  What did you pay for this work?

9.  Who did you acquire this work from?

10. Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11. Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Did you communicate with any of the following people regarding this work:

    a.  Dmitry Rybolovlev?

    b.  Mikhail Sazonov?

    c.  Tetiana Bersheda?

    d.  Yuri Bogdanov?

    e.  Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.  If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

92

XIX.     **Plaintiffs' Acquisition of Pablo Picasso's *Mousquetaire à la pipe***

A.   **Introduction:**  The following questions are designed to elicit evidence that is
relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a
fiduciary duty to Plaintiffs with respect to this work of art.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this
work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe
those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe
those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this
work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so,
describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe
those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you
know, when you learned it, and the basis for your knowledge.

11.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so,
describe what you know, when you learned it, and the basis for your
knowledge.

12.   Did you receive any other compensation, reimbursement, or other
payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If
so, describe what you know, when you learned it, and the basis for your
knowledge.

13.   Did you communicate with any of the following people regarding this
work:

a.      Dmitry Rybolovlev?

93

b.      Mikhail Sazonov?

c.      Tetiana Bersheda?

d.      Yuri Bogdanov?

e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

f.      If so, describe those communications and when they took place.

14.    Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.    Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XX.    Plaintiffs' Acquisition of a gilded wood table with eight sheath pillars, published in the exhibition catalogue "From Versailles to Paris: The Fate of the Royal Collections," Paris, 1989

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.   Questions:

1.    Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.    Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.    Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.    Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.    Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.    Did you acquire this work?  If so, describe your acquisition of this work.

8.    What did you pay for this work?

9.    Who did you acquire this work from?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.   Did you communicate with any of the following people regarding this work:

      a.    Dmitry Rybolovlev?

      b.    Mikhail Sazonov?

      c.    Tetiana Bersheda?

      d.    Yuri Bogdanov?

      e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

      f.    If so, describe those communications and when they took place.

14.   Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

XXI.     **Plaintiffs' Acquisition of carved and gilded wood furniture ornamented with flower vases, wreaths, and branches, similar to the work of Georges Jacob**

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.  Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.  Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.  Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.  Did you communicate with any of the following people regarding this work:

96

a.    Dmitry Rybolovlev?

b.    Mikhail Sazonov?

c.    Tetiana Bersheda?

d.    Yuri Bogdanov?

e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

f.    If so, describe those communications and when they took place.

14.   Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

XXII.    **Plaintiffs' Acquisition of Amadeo Modigliani's *Jeune fille blonde en buste***

A.    **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.    Questions:

1.    Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.    Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.    Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.    Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.    Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.    Did you acquire this work?  If so, describe your acquisition of this work.

8.    What did you pay for this work?

9.    Who did you acquire this work from?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.   Did you communicate with any of the following people regarding this work:

      a.    Dmitry Rybolovlev?

      b.    Mikhail Sazonov?

      c.    Tetiana Bersheda?

      d.    Yuri Bogdanov?

      e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

      f.    If so, describe those communications and when they took place.

14.   Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

XXIII.   **Plaintiffs' Acquisition of Amadeo Modigliani's *Madame Hébuterne aux épaules nues***

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.  Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.  Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.  Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.  Did you communicate with any of the following people regarding this work:

       a.       Dmitry Rybolovlev?

       b.       Mikhail Sazonov?

       c.       Tetiana Bersheda?

       d.       Yuri Bogdanov?

       e.       Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

       f.       If so, describe those communications and when they took place.

14.   Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXIV.   Plaintiffs' Acquisition of Amadeo Modigliani's *Nu dolent*

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.  Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.  Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.  Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.  Did you communicate with any of the following people regarding this work:

   a.   Dmitry Rybolovlev?

   b.   Mikhail Sazonov?

   c.   Tetiana Bersheda?

   d.   Yuri Bogdanov?

   e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f.   If so, describe those communications and when they took place.

14.  Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.  Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXV.  Plaintiffs' Acquisition of Pablo Picasso's *La soeur de l'artiste*

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

101

B.    Questions:

1.    Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.    Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.    Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.    Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.    Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.    Did you acquire this work?  If so, describe your acquisition of this work.

8.    What did you pay for this work?

9.    Who did you acquire this work from?

10.    Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.    Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.    Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.    Did you communicate with any of the following people regarding this work:

    a.    Dmitry Rybolovlev?

    b.    Mikhail Sazonov?

    c.    Tetiana Bersheda?

    d.    Yuri Bogdanov?

102

      e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

      f.      If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXVI.    Plaintiffs' Acquisition of Edgar Degas's *Danseuse en rose*

A.    **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.    Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4. Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5. Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6. Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7. Did you acquire this work?  If so, describe your acquisition of this work.

8. What did you pay for this work?

9. Who did you acquire this work from?

10. Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11. Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Did you communicate with any of the following people regarding this work:

    a.    Dmitry Rybolovlev?

    b.    Mikhail Sazonov?

    c.    Tetiana Bersheda?

    d.    Yuri Bogdanov?

    e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.    If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXVII. Plaintiffs' Acquisition of Paul Gauguin's *Te Fare* (*La Maison*)

A. **Introduction:** The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B. Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.   Did you communicate with any of the following people regarding this work:

    a.   Dmitry Rybolovlev?

    b.   Mikhail Sazonov?

    c.   Tetiana Bersheda?

    d.   Yuri Bogdanov?

    e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.   If so, describe those communications and when they took place.

105

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXVIII.   Plaintiffs' Acquisition of Amadeo Modigliani's *Vénus* (*Nu debout, nu médicis*)

A. **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B. Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4. Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5. Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6. Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7. Did you acquire this work?  If so, describe your acquisition of this work.

8. What did you pay for this work?

9. Who did you acquire this work from?

10. Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11. Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Did you communicate with any of the following people regarding this work:

    a.    Dmitry Rybolovlev?

    b.    Mikhail Sazonov?

    c.    Tetiana Bersheda?

    d.    Yuri Bogdanov?

    e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.    If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXIX.    Plaintiffs' Acquisition of Mark Rothko's *No. 1 (Royal Red and Blue)*

A.    **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.    Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.  Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.  Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.  Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.  Did you communicate with any of the following people regarding this work:

     a.   Dmitry Rybolovlev?

     b.   Mikhail Sazonov?

     c.   Tetiana Bersheda?

     d.   Yuri Bogdanov?

     e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

     f.   If so, describe those communications and when they took place.

14.  Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXX.   Plaintiffs' Acquisition of Claude Monet's *Nymphéas* (1897-98)

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.  Questions:

1.  Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.  Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.  Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.  Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.  Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.  Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.  Did you acquire this work?  If so, describe your acquisition of this work.

8.  What did you pay for this work?

9.  Who did you acquire this work from?

10. Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11. Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Did you communicate with any of the following people regarding this work:

    a.    Dmitry Rybolovlev?

    b.    Mikhail Sazonov?

    c.    Tetiana Bersheda?

    d.    Yuri Bogdanov?

    e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.    If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

**XXXI.**    **Plaintiffs' Acquisition of Claude Monet's *Nymphéas* (1914-1917)**

A. **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B. Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4. Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5. Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.   Did you communicate with any of the following people regarding this work:

    a.   Dmitry Rybolovlev?

    b.   Mikhail Sazonov?

    c.   Tetiana Bersheda?

    d.   Yuri Bogdanov?

    e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.   If so, describe those communications and when they took place.

14.   Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

XXXII.   **Plaintiffs' Acquisition of Henri de Toulouse-Lautrec's *Le Baiser* (Green)**

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.   Did you communicate with any of the following people regarding this work:

a.   Dmitry Rybolovlev?

112

       b.      Mikhail Sazonov?

       c.      Tetiana Bersheda?

       d.      Yuri Bogdanov?

       e.      Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

       f.      If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXXIII.  Plaintiffs' Acquisition of Vincent Van Gogh's *Paysage avec un olivier* (Landscape with an Olive Tree)

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.  Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4. Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5. Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6. Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7. Did you acquire this work?  If so, describe your acquisition of this work.

8.  What did you pay for this work?

9.  Who did you acquire this work from?

10. Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11. Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Did you communicate with any of the following people regarding this work:

    a.  Dmitry Rybolovlev?

    b.  Mikhail Sazonov?

    c.  Tetiana Bersheda?

    d.  Yuri Bogdanov?

    e.  Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.  If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

**XXXIV.  Plaintiffs' Acquisition of Pablo Picasso's *Joueur de flûte et femme nue***

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.  Questions:

114

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.  Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.  Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.  Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.  Did you communicate with any of the following people regarding this work:

     a.   Dmitry Rybolovlev?

     b.   Mikhail Sazonov?

     c.   Tetiana Bersheda?

     d.   Yuri Bogdanov?

115

e.    Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

f.    If so, describe those communications and when they took place.

14.   Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXXV.    Plaintiffs' Acquisition of Auguste Renoir's *Jeunes filles au bord de l'eau*

A.    **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.    Questions:

1.    Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.    Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.    Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.    Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.    Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.    Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.    Did you acquire this work?  If so, describe your acquisition of this work.

8.    What did you pay for this work?

9.    Who did you acquire this work from?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

116

11. Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Did you communicate with any of the following people regarding this work:

   a. Dmitry Rybolovlev?

   b. Mikhail Sazonov?

   c. Tetiana Bersheda?

   d. Yuri Bogdanov?

   e. Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f. If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

**XXXVI. Plaintiffs' Acquisition of El Greco's *St. Sebastian***

A. **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B. Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.  Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.  Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.  Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.  Did you communicate with any of the following people regarding this work:

a.   Dmitry Rybolovlev?

b.   Mikhail Sazonov?

c.   Tetiana Bersheda?

d.   Yuri Bogdanov?

e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

f.   If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXXVII. Plaintiffs' Acquisition of El Greco's *Portrait of Madonna and the Child*

A. **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B. Questions:

1. Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2. Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3. Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4. Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5. Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6. Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7. Did you acquire this work?  If so, describe your acquisition of this work.

8. What did you pay for this work?

9. Who did you acquire this work from?

10. Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11. Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12. Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13. Did you communicate with any of the following people regarding this work:

   a.   Dmitry Rybolovlev?

   b.   Mikhail Sazonov?

   c.   Tetiana Bersheda?

   d.   Yuri Bogdanov?

   e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

   f.   If so, describe those communications and when they took place.

14. Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15. Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

## XXXVIII.  Plaintiffs' Acquisition of Pablo Picasso's *Tête de femme*

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.  Questions:

   1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

   2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

   3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

120

4.  Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.  Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.  Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.  Did you acquire this work?  If so, describe your acquisition of this work.

8.  What did you pay for this work?

9.  Who did you acquire this work from?

10.  Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.  Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.  Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.  Did you communicate with any of the following people regarding this work:

    a.  Dmitry Rybolovlev?

    b.  Mikhail Sazonov?

    c.  Tetiana Bersheda?

    d.  Yuri Bogdanov?

    e.  Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.  If so, describe those communications and when they took place.

14.  Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.   Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

**XXXIX.   Plaintiffs' Acquisition of Pablo Picasso's *Espagnole à l'éventail***

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.   Questions:

1.   Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.   Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.   Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.   Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.   Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.   Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.   Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.   Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.  Did you communicate with any of the following people regarding this work:

    a.  Dmitry Rybolovlev?

    b.  Mikhail Sazonov?

    c.  Tetiana Bersheda?

    d.  Yuri Bogdanov?

    e.  Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.  If so, describe those communications and when they took place.

14.  Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.  Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

**XL.**  **Plaintiffs' Acquisition of Mark Rothko's *No. 6 (Violet, Green, and Red)***

A.  **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' claims that Mr. Bouvier defrauded and breached a fiduciary duty to Plaintiffs with respect to this work of art.

B.  Questions:

1.  Did you communicate with Plaintiffs or their representatives about this work?  If so, describe those communications and when they took place.

2.  Did you communicate with Mr. Peretti about this work?  If so, describe those communications and when they took place.

3.  Did you communicate with Mr. Valette about this work?  If so, describe those communications and when they took place.

4.  Did you communicate with any other Sotheby's employees about this work?  If so, describe those communications and when they took place.

5.  Did you communicate with Elena Rybolovleva about this work?  If so, describe those communications and when they took place.

123

6.   Did you communicate with anyone else about this work?  If so, describe those communications and when they took place.

7.   Did you acquire this work?  If so, describe your acquisition of this work.

8.   What did you pay for this work?

9.   Who did you acquire this work from?

10.  Did Plaintiffs/Mr. Rybolovlev acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

11.  Do you know what, if anything, Plaintiffs paid to acquire this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

12.  Did you receive any other compensation, reimbursement, or other payment from Plaintiffs/Mr. Rybolovlev in connection with this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

13.  Did you communicate with any of the following people regarding this work:

    a.   Dmitry Rybolovlev?

    b.   Mikhail Sazonov?

    c.   Tetiana Bersheda?

    d.   Yuri Bogdanov?

    e.   Anyone else affiliated with, related to, or working with/for Mr. Rybolovlev?

    f.   If so, describe those communications and when they took place.

14.  Do you know whether Ms. Rappo was involved in Plaintiffs' acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

15.  Do you know whether Ms. Rappo received any compensation, reimbursement, or other payment in connection with the acquisition of this work?  If so, describe what you know, when you learned it, and the basis for your knowledge.

XLI.   **Plaintiffs' Claims Regarding Text Messages**

A.   **Introduction:**  The following questions are designed to elicit evidence that is relevant to Plaintiffs' allegations concerning certain text message exchanges between you and Mr. Peretti.  Plaintiffs allege in their Amended Complaint that "[it] has been publicly reported that Bouvier's text messages, produced in the criminal proceedings against him in France, reveal that Bouvier . . . texted Peretti:  'I am in the shit.  He does not have cash and wants to place all Picasso and Rodin for public sale. […] We will talk about that tomorrow.'"  Am. Compl. ¶ 180.  The following questions are designed to elicit evidence relevant to Plaintiffs' claims that, at a certain point in time, they "began to suspect [Mr.] Bouvier had defrauded them." *Id.* ¶ 179.

B.   Questions:

1.   Do you recall sending a text message to Mr. Peretti in which you stated: "I am in the shit.  He does not have cash and wants to place all Picasso and Rodin for public sale. […] We will talk about that tomorrow? "

     a.   If so, what were the circumstances surrounding this text message?

     b.   What was your understanding of what this text message meant?

     c.   Did you have any additional conversations about this with Mr. Peretti?

          (i)   When?  What was discussed?

XLII.   **Work with Mr. Peretti**

A.   **Introduction:**  Plaintiffs allege that Mr. Peretti is, or was during the relevant time period, your "associate" and generally contend that Mr. Peretti played a central role in the underlying dispute by, among other things, participating in discussions regarding "works of art for Bouvier to sell to Plaintiffs," "the[] quality and importance [of the works]," and "appraisals [regarding some of the works]." Am. Compl. ¶ 30.  However, Plaintiffs do not allege any details regarding the relationship or what role Mr. Peretti played with regard to the art masterworks at issue in the U.S. Action.  The following questions are designed to elicit this information.  Such evidence is relevant to whether Mr. Peretti worked for, or with, you, as Plaintiffs allege, and whether Plaintiffs can prove that you committed fraud and breach of fiduciary duty, which are threshold elements of their claims against Sotheby's.

B.   **Questions:**

1.   When did you first meet Mr. Peretti?

2.   Describe your relationship with Mr. Peretti.

125

3. Are you familiar with any companies or entities affiliated with Mr. Peretti?  If so, describe what you know, when you learned it, and the basis for your knowledge.

4. Was Mr. Peretti ever employed by you or any of your companies or affiliated entities?

   a. If so, when?  What was his position/role?  How was he compensated?  Is he still employed by you or any of your companies or affiliated entities?

5. Did Mr. Peretti ever work with you or any of your companies or affiliated entities in any capacity?

   a. If so, when?  What was his position/role?  How was he compensated?  Is he still working with you or any of your companies or affiliated entities?

6. Did Mr. Peretti ever receive any compensation from you or any of your companies or affiliated entities?

   a. If so, how much?  When?  What was it for?

7. Plaintiffs in the U.S. Action contend that Mr. Peretti was your "associate."  Do you agree with this description?

   a. If so, what does it mean?  For what time period was Mr. Peretti your "associate"?

   b. If not, why do you not agree with this description?

8. Did Mr. Peretti ever receive compensation or payments from you or any of your companies or affiliated entities in connection with the art masterworks at issue in the U.S. Action?

   a. If so, when?  How much?  How was that determined?

9. Do you have knowledge of Mr. Peretti's reputation in the art world as of 2003?

   a. If so, what was his reputation?  Do you know whether he was well-known?  Describe the basis for your knowledge.

   b. Do you have knowledge of Mr. Peretti's reputation in the art world as of 2011?

   c. If so, what was his reputation?  Do you know whether he was well-known?  Describe the basis for your knowledge.

**XLIII.**       **Possible Criminal Convictions**

    1.    Have you ever been convicted of a crime?  If so, state the crime for which you were convicted and the jurisdiction in which you were convicted.