EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK  10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

July 19, 2022

**By ECF**

Hon. Jesse M. Furman
United States District Judge
40 Foley Square
New York, New York 10007

Re:     *Accent Delight Int'l Ltd. et al. v. Sotheby's et al.*, No. 18 Civ. 9011

Dear Judge Furman:

This Court having previously "reserve[d] judgment on whether or to what extent *any* portion of the transcript, including the disputed portions, would be admissible in this case," ECF No. 454 (emphasis in original); *see also* ECF Nos. 457, 489, Plaintiffs now move, in connection with the pending summary judgment motions and potential trial, to strike the oral deposition of non-party Yves Bouvier, *see* Declaration of Daniel J. Kornstein, July 19, 2022, Ex. A ("Ex. A"), together with the written answers he submitted, *see id.*, Ex. B ("Ex. B"). The motion should be granted because: (1) On direct examination, Bouvier read from a 274-page script he and his lawyers wrote, which Sotheby's wants to include in the deposition record; and (2) On cross-examination by Plaintiffs' lawyers on the same topics, Bouvier repeatedly and selectively refused to answer questions by invoking the privilege against self-incrimination.

I.     **SINCE BOUVIER IMPROPERLY RELIED ON A SCRIPT OF PREPARED WRITTEN ANSWERS, BOTH HIS ORAL DEPOSITION AND HIS WRITTEN ANSWERS SHOULD BE STRICKEN**

Bouvier was the mastermind of the underlying misconduct and Sotheby's co-conspirator, with whom he has a common interest collaboration agreement. Throughout the deposition, Bouvier, over Plaintiffs' objection, had a binder with a script open in front of him, asked his lawyers to guide him to the appropriate answer, and frequently read from the thick, 274-page book of answers he and his lawyers had prepared in advance of the deposition, *see* Ex. B, all the questions for which were available on ECF. Sotheby's request to include these written answers in the record should be denied and the oral deposition testimony based on them should be stricken.

The written answers should be excluded from the record. The Swiss judge left it to this Court to decide whether to include these written answers in the deposition record. ECF No. 454 at 11. Including them would be improper. The Hague request was for "oral testimony." ECF No.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 2

323-2 at 4. "[I]t has often, and appropriately, been observed that depositions on written questions are a generally inadequate substitute for an oral deposition since there is no meaningful possibility of follow-up questioning and the inquiring party is denied any opportunity to assess the demeanor, and thus the credibility, of the witness in responding to [a] specific question." *Bromfield v. Bronx Lebanon Special Care Ctr., Inc., et al.*, No. 16 Civ. 10047, 2021 WL 5847404, at \*4-5 (S.D.N.Y. Dec. 9, 2021); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 n.2 (2d Cir. 2003) (same, collecting cites); *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 125 (S.D.N.Y. 2015) (same).

The oral testimony based on the written answers should also be stricken. A witness cannot testify by reading "specially prepared extensive testimonial notes." *N. L. R. B. v. Fed. Dairy Co.*, 297 F.2d 487, 489 (1st Cir. 1962). "The evil of this practice hardly merits discussion." *Goings v. United States*, 377 F.2d 753, 760 (8th Cir. 1967) ("if a party can offer a previously given statement to substitute for a witness's testimony under the guise of 'refreshing recollection,' the whole adversary system of trial must be revised").

Bouvier violated this rule. For example, when the Swiss judge asked Bouvier what he knew about the source of funds his entities used to acquire artworks through Sotheby's, Bouvier asked her to repeat the question, so he could identify it in his notes, stating, ███████████ Ex. A at 32:3-9; *see also, e.g.*, *id.* at 130:24-131:4, 140:10-19, 156:11-13, 215:17-23, 217:8-19, 236:24-237:4. Bouvier often read from his script before the Swiss judge had even finished asking her question. *See, e.g., id.* at 56:21-57:11. Bouvier sometimes stated he did not know the answer to a question and was only relying on the lawyer-written script. *See, e.g., id.* at 99:11-20 (██████████████████

███████████████ (emphasis added)).

Bouvier's lawyers steered him through their prepared script. After the Court directed Bouvier to the first exhibit, for instance, Bouvier responded: ████████████████

*Id.* at 31:1-5; *see also, e.g.*, *id.* at 221:1-3 (Bouvier indicating to his counsel that he was ████████████ ); *id.* at 228:15-19 (court asking question about Bouvier's communications with Peretti, and Bouvier responding by asking his counsel ████████ ); *id.* at 250:4-8 (Bouvier responding to a question about a Sotheby's-brokered transaction and then asking ████ ); *id.* at 256:1-10 (Bouvier responding to question regarding communications with Sotheby's employees by asking his counsel ████████ ); *id.* at 271:1-3 (Bouvier asking his counsel which question the court was reviewing).

This misconduct was a form of witness coaching far more extreme than impermissible speaking objections that suggest answers to a witness. *See, e.g.,* Fed. R. Civ. P. 30(c)(2) ("An objection must be stated in a . . . nonsuggestive manner."); *Applebaum v. Nat'l Westminster Bank*, No. 07 Civ. 916, 2011 WL 8771843, at \*4 (E.D.N.Y. Oct. 5, 2011) (court "most troubl[ed]" by "speaking objections in which [counsel] appeared to suggest to the witness how to answer a question").

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 3

Bouvier's entire deposition should be stricken because it is based on his lawyers' script, which should also be excluded.

## II.     SINCE BOUVIER SELECTIVELY INVOKED HIS SELF-INCRIMINATION PRIVILEGE, HIS ENTIRE DEPOSITION SHOULD BE STRICKEN

Bouvier's deposition should also be stricken because he selectively invoked his right against self-incrimination. On direct, Bouvier gave self-serving answers that had been scripted in advance by his attorneys; on cross by Plaintiffs' attorneys, he refused to answer questions on the same topics, asserting the privilege against self-incrimination under Article 166(1)(a) of the Swiss Civil Procedure Code, which provides:

." *See* Ex. A at 289:24-290:2.

*Id.* at 326:13-14. Bouvier repeatedly said he would not answer <u>any</u> questions posed by Plaintiffs' counsel. *See, e.g., id.* at 67:12-68:17, 325:21-326:14, 327:3-10. Bouvier's selective use of the self-incrimination privilege deprived Plaintiffs of full and fair cross-examination on many core issues, including:

A. **Bouvier's misrepresentations to Plaintiffs about the prices he paid.** After Plaintiffs' counsel told Bouvier that he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to Plaintiffs, Bouvier recycled his pre-written explanation of his due diligence services, made the conclusory statement that he was not Plaintiffs' agent, and then invoked the self-incrimination privilege and refused to answer any additional questions from Plaintiffs' counsel:

*Id.* at 326:16-327:10; *see also* 325:21-326:14.

B. **Bouvier's course of dealing with Plaintiffs before their acquisition of the Sotheby's Works.** In addition to disputing the existence of an oral agency agreement, the parties dispute whether Plaintiffs' course of dealing with Bouvier independently established a fiduciary relationship. *See* ECF No. 414 at 21-24; ECF No. 438 at 26-36. Bouvier routinely dodged both Plaintiffs' and the Swiss judge's questions about his interactions with Plaintiffs before the Sotheby's-brokered transactions, denying them cross-examination on his conclusory assertions that there was no agency relationship.

1. <u>Bouvier's involvement in the first work bought by Plaintiffs.</u> On direct examination, the Swiss judge asked Bouvier about the first time he met Rybolovlev, and Bouvier read from his script that he met Rybolovlev in the context of a Chagall transaction, where Bouvier's only role was ▮▮▮▮▮▮▮ Ex. A at 20:21-21:14. On cross-examination, Plaintiffs' counsel asked Bouvier about the nature of his involvement in this transaction and what he meant by ▮▮▮▮▮▮▮ *Id.* at 20:21-26, 69:18-25. Bouvier refused to answer, denying Plaintiffs cross on the key issue of their first interaction with him. *Id.* at 70:1-6.

2. <u>Significance of the four written contracts.</u> Between 2003 and 2006, Plaintiffs bought four artworks using written sales contracts. *See* ECF No. 415 at ¶ 20. Sotheby's relies heavily

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 4

on these contracts to dispute the agency relationship. *See* ECF No. 438 at 30-31. Although Bouvier read from his script on Day 1 to answer limited questions about two of these four artworks (without any opportunity for cross-examination by Plaintiffs), *see* Ex. A at 18:7-9, 23:11-25:5, 80:14-81:8, he refused on Day 2 to answer <u>any</u> questions about those transactions, invoking his right against self-incrimination. *Id.* at 288:16-291:13, 291:11-26, 292:2-21, 301:1-13. Bouvier invoked the self-incrimination privilege with tactical precision, occasionally stepping out from behind the privilege whenever it suited him. When asked about Picasso's *Mousquetaire à la Pipe*, for example, Bouvier invoked his right against self-incrimination to refuse to answer any questions about his communications with Plaintiffs concerning the work, then proffered certain other details about the work, before stating,                          *Id.* at 292:2-21.

3. <u>All non-Sotheby's Works transactions.</u> Although Bouvier gave scripted, conclusory denials that he acted as Plaintiffs' agent, *see, e.g.*, *id.* at 81:5-8, he refused to answer <u>any</u> questions about the transactions that preceded the Sotheby's Works, *id.* at 288:16-297:13, 301:1-304:2. Plaintiffs argue that these transactions evidence the agency relationship they agreed to with Bouvier, and, in the alternative, that they establish a fiduciary duty through course of dealing. *See* ECF No. 414 at 19-24.

C. **Bouvier's relationship with Sotheby's.** The Bouvier-Sotheby's relationship is central to this case, but Bouvier invoked his self-incrimination privilege to block Plaintiffs' cross-examination on his common interest collaboration agreement with Sotheby's. Ex. A at 67:13-15. First, he refused to answer, *id.* at 67:21-25, 68:12-13                 ), next he described the relationship in a way he thought helped him and his co-conspirator, Sotheby's, and then he re-invoked the self-incrimination privilege to refuse to answer any additional questions, *id.* at 68:14-69:11.

D. **Bouvier's relationship with Jean-Marc Peretti.** On direct examination, Bouvier read from his script about his relationship with his associate Peretti, who dealt with Sotheby's on his behalf, *see id.* at 315:8-318:17, but when the question of Peretti's compensation arose, Bouvier refused to answer additional questions on the basis of self-incrimination, *id.* at 318:18-319:28                          ). The invocation only lasted a moment, because the Swiss judge asked a question Bouvier liked, *id.* at 320:2-5            ), but when Plaintiffs' counsel began cross-examination, he invoked the privilege again, *id.* at 320:21-25                , until he again heard a question he liked, *id.* at 321:1-8                       ).

An "individual may not use the [self-incrimination privilege] as both a shield and a sword, *answering some questions related to a particular topic in a given proceeding and avoiding others*, as dictated by whim or self-interest," because a policy allowing such conduct would be a "'a positive invitation to mutilate the truth a party offers to tell.'" *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 262 F. Supp. 2d 302, 307-08 (S.D.N.Y. 2003) (emphasis added) (quoting *Brown v. United States*, 356 U.S. 148, 156 (1958)).

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 5

Without the benefit of "full and fair" cross-examination—what Wigmore famously called "the greatest engine ever developed for the discovery of truth"—Bouvier's deposition is inadmissible. *See* Fed. R. Evid. 801(c), 802, 804(b)(1); *United States v. Carneglia*, 256 F.R.D. 366, 372 (E.D.N.Y. 2009) (only "*cross-examined*, sworn testimony of an unavailable witness" may be admitted as an exception to the rule against hearsay (emphasis added)); *Antonucci v. Morgan Stanley Dean Witter & Co.*, No. 02 Civ. 5246, 2005 WL 627556, at *4 (S.D.N.Y. Jan. 11, 2005), *report and rec. adopted*, 2005 WL 5300159 (S.D.N.Y. May 23, 2005) (under Rule 804(b)(1), where "the opportunity to cross-examine [is] lacking, the prior testimony must be excluded" (quoting *United States v. Jackson,* 335 F.3d 170, 177 (2d Cir. 2003)).

Bouvier's "refusal to answer the questions of the cross-examiner frustrate[d] the purpose of" the deposition requested by this Court and striking his deposition is "the only appropriate remedy." *Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir. 1988). "Courts often strike testimony where a witness refuses to submit to cross-examination." *CFPB v. Access Funding, LLC*, No. 16 Civ. 3759, 2021 WL 2915118, at *21 (D. Md. July 12, 2021), *recon. denied*, 2022 WL 252953 (D. Md. Jan. 26, 2022) (collecting cases, and noting that "cross-examination of a witness is a matter of right" (cleaned up)); *see also, e.g.*, *In re Inofin Inc.*, 219 F. Supp. 3d 265, 271 (D. Mass. 2016) (holding that because a party was "not afforded an adequate opportunity to cross examine" a witness, that witness's "testimony will be stricken from the summary judgment record"); *United States v. One Parcel of Real Prop. Commonly Known as 901 N.E. Lakewood Drive, Newport, Or.*, 780 F. Supp. 715, 722 (D. Or. 1991); *cf. S.E.C. v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987) (refusing on summary judgment to consider evidence on topics over which civil defendant had asserted the Fifth Amendment). Bouvier cherry-picked the questions he wanted to answer, and "flatly refuse[d]" to answer the rest. *Inofin*, 219 F. Supp. 3d at 270. In *Du Beau v. Smither & Mayton, Inc.*, the D.C. Circuit court struck an entire deposition transcript based only on the witness's refusal to answer questions about his place of residence or occupation, because his refusal "was a substantial deprivation of the right of cross-examination" that denied a party the opportunity to examine his credibility. 203 F.2d 395, 397 (D.C. Cir. 1953).

So too here. Bouvier's refusal to answer questions on cross bearing on his credibility denied Plaintiffs the ability to challenge the credibility of the rest of his testimony.

\*             \*             \*

Bouvier's deposition should be stricken, and his written answers excluded from the record. They should not be considered on the pending motions for summary judgment or at trial.

Respectfully,

/s/
Daniel J. Kornstein

cc.    All counsel of record (via ECF)