UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACCENT DELIGHT INTERNATIONAL LTD.,

Plaintiff,

-*against*-

SOTHEBY'S and SOTHEBY'S INC.,

Defendants.

Case No. 18-cv-9011(JMF)

## **JOINT PROPOSED JURY INSTRUCTIONS**

The parties, by and through their undersigned counsel, submit the enclosed proposed jury instructions pursuant to the Court's Individual Rule 6(D).

Because the parties did not reach sufficient material agreement as to the language of any charge other than Instruction No. 1, making a redline of the proposed charges impractical to work with, the parties have set forth for every topic Plaintiff's proposed charge, followed by Defendants' proposed charge, followed by each side's statement explaining its objections to the opposing side's charge.

The parties reserve the right to modify and make further requests for jury charges at the conclusion of trial, if warranted.

Dated: August 31, 2023
       New York, New York

| | |
|---|---|
| EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP | ARNOLD & PORTER KAYE SCHOLER LLP |
| By: */s/ Daniel J. Kornstein* | By: */s/ Marcus A. Asner* |
| Daniel J. Kornstein | Marcus A. Asner |
| O. Andrew F. Wilson | Sara L. Shudofsky |
| Zoe Salzman | Benjamin C. Wolverton |
| Vasudha Talla | Yiqing Shi |
| Sarah MacDougall | Sahrula Kubie |
| 600 Fifth Avenue, 10th Floor | 250 W. 55th Street |
| New York, NY 10020 | New York, NY 10019-9710 |
| (212) 763-5000 | (212) 836-8000 |
| *Attorneys for Plaintiff* | *Attorneys for Defendants Sotheby's and Sotheby's, Inc.* |

**I.**     **JURY INSTRUCTIONS FOR THE BEGINNING OF TRIAL (Plaintiff's proposal)**

1. Opening instructions
2. Order of trial
3. Province of judge and jury
4. Jury conduct
5. Notetaking-permitted
6. Evidence in the case
7. Direct and circumstantial evidence
8. Credibility of witnesses
9. What is not evidence
10. Official translation (French and Russian are the languages other than English)

**Authority:** *See generally* 3 Fed. Jury Prac. & Instr. §§ 101:01-101:50 (6th ed.).

II.    **JURY INSTRUCTIONS FOR THE END OF TRIAL**

    **A.  PROPOSED STANDARD INSTRUCTIONS (Plaintiff's Proposal)**

1. General introduction
2. Use of notes
3. All parties equal before the law—Organizations
4. Evidence in the case
5. Inferences
6. Use of depositions as evidence
7. Impeachment-inconsistent statement or conduct
8. Official translation (French and Russian are the languages other than English)
9. Expert witness (Guy Stair Sainty, Robert Wittman, Harry Smith)
10. Standard of proof – preponderance of the evidence
11. Standard of proof – clear and convincing evidence
12. Direct and Circumstantial Evidence
13. Election of foreperson-General verdict

**Authority:** *See generally* 3 Fed. Jury Prac. & Instr. §§ 103:01-106:04 (6th ed.).

    **B.  PROPOSED STANDARD INSTRUCTIONS (Defendants' Proposal)**

1. General introduction
2. Province of judge and jury
3. Use of notes
4. All persons equal before the law—Organizations
5. Evidence in the case
6. Inferences
7. Official translation
8. Expert witness
9. Evidence admitted for a limited purpose only
10. Use of depositions as evidence
11. Impeachment—Inconsistent statement or conduct
12. Effect of prior inconsistent statements or conduct
13. Effect of refusal of witness to answer
14. All available witnesses or evidence need not be produced
15. Direct and Circumstantial Evidence
16. Election of foreperson-General verdict

Authority:  3 Fed. Jury Prac. & Instr. (6th ed.).

**<u>Plaintiff's Statement in Support of Its Proposed Standard Instructions:</u>**

The Court should instruct the jury on "Preponderance of the evidence." *See* 3 Fed. Jury Prac. & Instr. § 104:01. This is the standard of proof applicable to Plaintiff's claim of aiding and abetting breach of fiduciary duty and the equitable estoppel issue. The pattern jury instruction proposed by Plaintiff makes clear that "This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case," unlike the language contained in Defendants' proposed Charge No. 7 on equitable estoppel.

The Court should instruct the jury on "clear and convincing evidence." *See* 3 Fed. Jury Prac. & Instr. § 104:02. This is the standard of proof applicable to Plaintiff's claim of aiding and abetting fraud. The pattern instruction is clear and concise, while Defendants' proposed Charges Nos. 4 and 6 repeats the "high probability" language several times, impermissibly tilting the jury against Plaintiff.

The Court should instruct the jury on "Election of foreperson-General verdict." *See* 3 Fed. Jury Prac. & Instr. § 106:04. This will provide the jury guidance on the process to follow while deliberating and upon conclusion of their deliberations.

The Court should *not* use the standard instruction on "Consideration of the evidence—Corporate party's agents and employees" proposed by Defendants. Instead, Plaintiff proposes a case-specific adaptation of this instruction so that the jury understands which witnesses and individuals this instruction applies to. *See infra* Instruction No. 2 (Plaintiff's proposal).

**<u>Defendants' Objections to Plaintiff's Proposed Standard Instructions:</u>**

Defendants object to Plaintiff's Proposed Standard Instructions Nos. 10 and 11. Given that different standards of proof will apply to different issues to be resolved by the jury in this case, Defendants respectfully submit that the instructions to the jury on the applicable standards of proof will provide more useful guidance if given as part of the instructions to the jury on the relevant issues, as Defendants have proposed below.

## C.  **PROPOSED CASE-SPECIFIC INSTRUCTIONS**

**Instruction No. 1.**          **Parties (Joint Proposal)**

The parties in this case are Plaintiff Accent Delight International Ltd. and Defendants Sotheby's and Sotheby's, Inc.

Plaintiff Accent Delight International Ltd., or Accent Delight for short, is an entity incorporated in the British Virgin Islands.  It purchased each of the four artworks at issue in this case.  Accent Delight is owned by a trust established for a man named Dmitry Rybolovlev and his family.  Prior to the incorporation of Accent Delight, the trust and its beneficiaries acted through a different entity, Xitrans Finance Ltd. (or Xitrans for short), with regard to their purchases of artworks.

Defendant Sotheby's is a Delaware-based holding company that is the parent company of Defendant Sotheby's, Inc. and other companies.  Defendant Sotheby's, Inc. is a New York-based company and is itself the parent company of various companies that operate overseas.  The overseas companies that are owned by Defendants Sotheby's and Sotheby's, Inc. include, among others, Sotheby's A.G. in Switzerland, Sotheby's Kunstauktionen GmbH in Austria, and Sotheby's in the United Kingdom.

**Instruction No. 2.**          **Representatives of a Corporation (Plaintiff's Proposal)**

Defendants Sotheby's and Sotheby's, Inc. are corporations. Plaintiff Accent Delight Inc. is a corporation. A corporation can act only through natural persons as its representatives or employees. Representatives or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their employment or the authority delegated to them by the corporation.

In this case, Defendants Sotheby's and Sotheby's Inc. acted through various employees and representatives, including Samuel Valette, Bill Ruprecht, and Bruno Vinciguerra. Plaintiff Accent Delight Inc. acted through various employees and representatives, including Dmitry Rybolovlev, Mikhail Sazonov, and Yuri Bogdanov.

Corporations are treated as possessing the collective knowledge of their employees and other representatives. When someone is employed to perform certain duties for their employer and acquires knowledge material to those duties, the employee's knowledge is imputed to their employer. That means that Sotheby's knowledge here is the sum of the knowledge of all its employees and representatives.

Accent is not required to show that all Sotheby's employees knew about Bouvier's fraud or breach of fiduciary duty, or even that certain Sotheby's employees knew. Sotheby's is responsible for the collective knowledge of all its employees and representatives.

Authority: 3 Fed. Jury Prac. & Instr. § 108:01 (6th ed.); Restatement (Third) of Agency § 5.03 (2006); *First Equity Corp. of Fla. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988), *aff'd*, 869 F.2d 175 (2d Cir. 1989); *Apollo Fuel Oil v. United States*, 195 F.3d 74, 76 (2d Cir. 1999).

**Instruction No. 2.**          <u>**Corporate Representatives (Defendants' Proposal)**</u>

All parties in this case are corporations.  The law considers a corporation a person, but a corporation can only act through its directors, officers, employees, or other agents.  The law therefore holds a corporation responsible for all acts of its representatives, provided the acts are done within the scope of their authority, as would usually be the case if done in the ordinary course of their employment or in the ordinary course of the corporation's business.

Authority to act for a corporation in a particular matter, or in a particular way or manner, may be inferred from the surrounding facts and circumstances shown by the evidence in the case. Authority to act for a corporation need not be established by direct evidence, but may be established by indirect or circumstantial evidence.

Generally, knowledge of an agent or officer of a corporation acquired in the ordinary discharge of their duties for the corporation is imputed to the corporation.  However, to impute the wrongful conduct of an agent or officer to the corporation, a party must prove that an individual agent or officer of a corporation both had knowledge of the facts in dispute and performed the act that was made wrongful by the knowledge.  For instance, in a fraud case, it is not enough for a plaintiff to prove that one individual had the knowledge that would make another individual's statement false.  There must be some connection within the corporation between a misstatement and the requisite knowledge of its falsity.  Plaintiff may satisfy its burden of proving that connection by showing that a sufficiently senior director or officer with oversight had knowledge of falsity and did not intervene.

Moreover, one corporation's knowledge is not automatically imputed to a different, affiliated corporation.  In order to impute a corporation's knowledge to its affiliate, Plaintiff must show that the corporation's employee who possessed the knowledge was under a duty to report that information to the affiliate.

<u>Authority</u>:  3A Fed. Jury Prac. & Instr. § 150:2 (6th ed.); 14A N.Y. Jur. 2d Business Relationships § 677; *George v. Equifax Mortg. Servs.*, 375 F. App'x 76, 78 (2d Cir. 2010); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 440 (S.D.N.Y. 2017); *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc*., 531 F.3d 190, 195 (2d Cir. 2008).

**Plaintiff's Statement in Support of Its Proposed Charge No. 2:**

The Court should adopt Plaintiff's proposed instruction, which adapts the pattern instruction on "Consideration of the evidence—Corporate party's agents and employees. *See* 3 Fed. Jury Prac. & Instr. § 108:01 (6th ed.). Plaintiff has added the names of the individuals who acted on behalf of Plaintiff and Defendants as employees and representative-agents, which is crucial for the jury to understand what this instruction means in this case. Further, given that Defendants' actual knowledge is an element of Plaintiff's claims, the jury should be instructed that a corporation possesses the "knowledge" of its representatives-agents and employees, including the "knowledge" of a single employee or agent that is material to their duties. *See* Restatement (Third) of Agency § 5.03 (2006); *Apollo Fuel Oil v. United States*, 195 F.3d 74, 76 (2d Cir. 1999); *First Equity Corp. of Fla. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988), *aff'd*, 869 F.2d 175 (2d Cir. 1989).

The Court should reject Defendants' proposed Charge No. 2 as incorrect and complicated. Defendants cite the pattern instruction for Sherman Act claims instead of the general instruction on this issue. *See* 3A Fed. Jury Prac. & Instr. § 150:2 (6th ed.). Further, in the third paragraph of Defendants' proposed Charge No. 2, Defendants conflate the standard for imputing knowledge to a corporation with the standard to impute wrongful conduct to a corporation, thereby incorrectly instructing the jury that "wrongful conduct" is necessary for a corporation to possess the "knowledge" of its employees or agents. Defendants also include language relevant only to corporate scienter in fraud cases ("For instance, in a fraud case . . . ). *See Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 440 (S.D.N.Y. 2017); *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). That is improper: corporate scienter is not only irrelevant to the breach of fiduciary duty claim, but also irrelevant to the aiding and abetting fraud claim against Defendants. To the extent that scienter is relevant, it is Bouvier's scienter, not Defendants' scienter. Finally, Defendants cite no authority for the last paragraph of their proposed Charge No. 2. While Defendants cite 14A N.Y. Jur. 2d Business Relationships § 677 and *George v. Equifax Mortg. Servs.*, 375 F. App'x 76, 78 (2d Cir. 2010), these do not provide authority for their proposed language.

**Defendants' Objections to Plaintiff's Proposed Charge No. 2:**

Defendants object to Plaintiff's Proposed Charge No. 2 as inappropriate, inaccurate, and unduly prejudicial to Defendants.  Defendants respectfully request that the Court accept their alternative Proposed Charge No. 2 above.

First, Plaintiff's proposed charge directs the jury to assume that Samuel Valette acted as an agent for Defendants even though that is a disputed issue at trial with respect to two transactions:  Plaintiff's purchase of Magritte's *Domaine d'Arnheim* and Plaintiff's purchase of Modigliani's *Tête*.

Second, Plaintiff's proposed charge provides no guidance to the jury as to how to determine whether a representative or employee acted on behalf of a corporation.

Third, Plaintiff's proposed charge fails to instruct the jury as to how to determine whether wrongful and/or fraudulent conduct (as is alleged here) should be imputed to a corporation.  *See Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 440 (S.D.N.Y. 2017).

Fourth, Plaintiff's proposed charge incorrectly suggests that information imputed to one of Defendants' subsidiaries (such as Defendants' overseas subsidiaries) should automatically be imputed to a Defendant, without providing any guidance as to how the jury should determine whether information obtained by one corporate entity should be imputed on an affiliated entity.

**Instruction No. 3.**          **Claims in this case (Plaintiff's Proposal)**

As you are aware, the plaintiff in this case is Accent Delight International Limited, which I will call Accent. The defendants are Sotheby's and Sotheby's Incorporated. I will refer to both defendants together as "Sotheby's."

Accent has two claims against Sotheby's. First, Accent asserts that Sotheby's aided and abetted Yves Bouvier to commit fraud relating to the purchase of four works of art and the auction of one of them, and that conduct caused Accent to suffer damages.

Second, Accent asserts that Sotheby's aided and abetted Yves Bouvier to commit a breach of his fiduciary duty to Accent when Accent purchased one of the same works, Da Vinci's *Salvator Mundi*, and that conduct caused Accent to suffer damages.

Accent claims that Sotheby's helped Bouvier cheat it by buying artworks for one price, lying to Accent about the price he paid, and charging Accent another price that was significantly higher than the price he paid.  Accent claims that Sotheby's aided and abetted Bouvier by, among other things, creating documents and making statements about the artworks that helped convince Accent to trust the prices quoted by Bouvier.

Sotheby's contests and denies Accent's allegations.  Sotheby's argues that it was not reasonable for Accent to rely on the lies Bouvier told the Plaintiff about the prices he paid to buy the artworks without asking for any kind of documentation about how much Bouvier paid for the art, and therefore Accent cannot prove that it was defrauded, which is a necessary first step in proving any aiding and abetting claims against Sotheby's.  Sotheby's also argues that they did not have any knowledge of Bouvier's alleged fraud or breach of fiduciary duty against Accent, and specifically about any of Bouvier's lies to the Plaintiff about the prices he paid to acquire the art, and that they did not assist Bouvier in any such misconduct.

**Instruction No. 3.**          **Claims (Defendants' Proposal)**

I will now instruct you on the specific legal claims in this lawsuit.  There are a total of six legal claims in this lawsuit.

Accent Delight alleges that Yves Bouvier committed fraud against it, and that Defendants aided and abetted that alleged fraud, with respect to five of Accent Delight's art transactions:

- Its purchase of Rene Magritte's *Domaine d'Arnheim* on December 5, 2011;

- Its purchase of Gustav Klimt's *Wasserschlangen II* on September 13, 2012;

- Its purchase of Amedeo Modigliani's *Tête* on January 7, 2013;

- Its purchase of Leonardo da Vinci's *Salvator Mundi* on May 3, 2013;

- Its decision to trade-in Amedeo Modigliani's *Tête* on September 8, 2014 as partial payment to purchase a different artwork, Mark Rothko's *No. 6*, and Bouvier's subsequent auction of Modigliani's *Tête*.

Accent Delight also alleges that Yves Bouvier owed Accent Delight a fiduciary duty and breached that fiduciary duty, and that Defendants aided and abetted that alleged breach of fiduciary duty, with respect to one of the aforementioned art transactions:

- Its purchase of Leonardo Da Vinci's *Salvator Mundi* on May 3, 2013.

Defendants deny all of Accent Delight's claims and contend that they did not aid and abet any misconduct by Yves Bouvier.

Accent Delight bears the burden of proving that Yves Bouvier committed the alleged misconduct and that one or both Defendants are liable for aiding and abetting that misconduct.  I will go into greater detail regarding Accent Delight's burden of proof shortly.  In deciding whether Accent Delight has met its burden, you must consider each of Accent Delight's claims individually.  For Accent Delight's claims regarding the Magritte, Klimt, and Modigliani transactions, that means you must decide whether Accent Delight has proven that Defendants aided and abetted fraud with respect to each of those transactions.  For Da Vinci's *Salvator Mundi*, that means you must decide whether Accent Delight has proven that Defendants aided and abetted fraud with respect to that transaction, and also whether Accent Delight has proven that Defendants aided and abetted a breach of fiduciary duty with respect to that transaction, each of which is a separate theory of liability.

If you find that Accent Delight has or has not carried the required burden of proof on any one transaction or theory of liability with regard to one or both Defendants, that finding should not affect your finding on any other transaction or theory of liability.

**Plaintiff's Statement in Support of Its Proposed Charge No. 3:**

The Court should accept Plaintiff's proposed Charge No. 3 because it is clear, concise, and neutral. Defendants' proposed Charge No. 3 repeatedly emphasizes that Plaintiff bears the burden of proof in a manner that is redundant and designed to tilt the jury against Plaintiff.

**Defendants' Objections to Plaintiff's Proposed Charge No. 3:**

Defendants object to Plaintiff's Proposed Charge No. 3 as inappropriate, inaccurate, and unduly prejudicial to Defendants. Defendants respectfully request that the Court accept their alternative Proposed Charge No. 3 above.

First, Plaintiff's proposed charge, which quotes from the general case summary that the parties have proposed be given to potential jurors before voir dire, provides a quasi-closing statement that is incomplete. Nor should any such statement be delivered by the Court to the jury just after the parties have delivered their closing arguments.

Second, Plaintiff's proposed charge will confuse the jury to Plaintiff's benefit by referring to Defendants as "Sotheby's" (the global brand name for Defendants and their affiliated entities) notwithstanding each Defendant's defense that it is not liable for two of the transactions at issue in this case and that different affiliates of each Defendant and its employees were involved in different facts at issue in this case.

Third, Plaintiff's proposed charge, which quotes from the general case summary that the parties have proposed be given to potential jurors before *voir dire*, *see* JPTO at Part VI, is imprecise and unclear as it provides insufficient guidance on which of Plaintiff's claims apply to which transactions, suggesting that all of the fraud claims involve an auction and giving no guidance as to how the jury should approach the *Salvator Mundi* transaction (for which Plaintiff has two distinct claims).

Fourth, Plaintiff's proposed charge provides no direction to the jury to consider each of Plaintiff's claims separately, misleadingly suggesting that the jury should consider all of Plaintiff's claims as a whole.

**Instruction No. 4.**          <u>**Aiding and abetting Fraud (Plaintiffs' Proposal)**</u>

I will now instruct you on the law for Accent's first claim against Sotheby's for aiding and abetting fraud. For this claim, Accent must prove three things by clear and convincing evidence.

First, you have heard a stipulation that Yves Bouvier made certain fraudulent statements about negotiation and prices to Accent and its representatives. Accent must prove that it was reasonable to rely on those fraudulent statements. In the absence of information that would cause a reasonable person to inquire further, Accent would be entitled to rely on Bouvier's statements about negotiations and prices.

Second, Accent must prove that Sotheby's knew of Bouvier's fraud. Whether Sotheby's knew of Bouvier's fraud may be established by circumstantial evidence, and does not need to be based on Sotheby's explicitly acknowledging or admitting Bouvier's fraud. If it appears that a certain condition has existed for a substantial period of time, and that Sotheby's had regular opportunities to observe the condition, then you may draw the inference that Sotheby's had knowledge of the condition.

You may also infer Sotheby's had actual knowledge if you find that Valette suspected Bouvier was defrauding Plaintiff, realized the high probability of fraud, but refrained from confirming it in order to later be able to deny knowledge.

Third, Accent must prove that Sotheby's provided substantial assistance to Bouvier. Substantial assistance exists where the defendant affirmatively assists or helps conceal the fraud, and those actions caused the plaintiff to suffer harm. An act is considered a cause of an injury if it was a substantial factor in bringing about the injury, that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

It has already been established that Sotheby's provided substantial assistance to Bouvier's fraud in the following two transactions: Accent's purchase of Modigliani's *Head*, and Accent's purchase of Magritte's *The Domain of Arnheim*. You only need to decide whether Sotheby's provided substantial assistance to Bouvier's fraud in the following three transactions: when Accent purchased Klimt's *Water Serpents II*, when Accent purchased Da Vinci's *Salvator Mundi*, and when Bouvier auctioned Modigliani's *Head*.

**Authorities:**   MSJ Order (ECF No. 510) at 43-46, 58 n.18; Mem. of Law in support of Sotheby's Mot. for Summ. J. (ECF No. 438) at 4; 3 Fed. Jury Prac. & Instr. § 123:30 (6th ed.); 3 Fed. Jury Prac. & Instr. § 104:24 (6th ed.); N.Y. Pattern Jury Instruction 2:70 (Proximate Cause-In General); *Nathel v. Siegal*, 592 F. Supp. 2d 452, 468-69 (S.D.N.Y. 2008); *Oster v. Kirschner*, 77 A.D.3d 51, 55-56 (1st Dep't 2010); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 487 (S.D.N.Y. 2018); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018); *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005); *United States v. Boothe*, 994 F.2d 63, 69 (2d Cir. 1993); *United States v. Pierre*, 285 Fed. App'x 828, 830 (2d Cir. 2008); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–70 (2011); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007).

**Instruction No. 4.**          **Claims for Aiding and Abetting Fraud (Defendants' Proposal)**

As you have heard, Plaintiff Accent Delight seeks damages from Defendants for injuries it claims were caused by fraud committed by a third party, Yves Bouvier. Accent Delight must prove three elements to prevail on its aiding-and-abetting fraud claims: (1) the existence of an underlying fraud by Yves Bouvier; (2) Defendants' knowledge of that fraud; and (3) substantial assistance by Defendants in achieving that fraud.

Accent Delight must prove each of these three elements of aiding and abetting fraud by clear and convincing evidence. Clear and convincing evidence means evidence that satisfies you that there is a high probability that (1) Yves Bouvier committed fraud, (2) Defendants had knowledge of that fraud, and (3) Defendants substantially assisted Yves Bouvier in achieving that fraud. To decide for Accent Delight by clear and convincing evidence, it is not enough to find that the evidence makes it more probable than not that Accent Delight's version of events is correct. Instead, for each of the three elements Plaintiff must prove, Accent Delight must satisfy you that the evidence makes it highly probable that what it claims happened is what actually happened. If, based upon all the evidence, you are satisfied that there is a high probability that (1) there was fraud, (2) Defendants had knowledge of that fraud, and (3) Defendants substantially assisted that fraud, then you must decide for Accent Delight. If you are not satisfied that there is a high probability that each of those things happened, you must decide for Defendants.

I'll now describe each of these elements in more detail.

**1.      Existence of a fraud:**

To prove the first element of its fraud claims, the existence of a fraud, Accent Delight must prove by clear and convincing evidence that: (1) Yves Bouvier made a statement of material fact; (2) the statement was false; (3) Yves Bouvier knew that the statement was false; (4) Yves Bouvier made the statement to convince Accent Delight to rely upon it; (5) Accent Delight did rely on Yves Bouvier's statement; (6) Accent Delight's reliance on Yves Bouvier's statement was reasonable; and (7) Accent Delight sustained damages because of its reliance on Yves Bouvier's statement.

The parties have agreed that Yves Bouvier made certain statements relating to purported negotiations between Yves Bouvier and the sellers of the artworks that never happened, and that those statements were therefore false. Accent Delight also claims that Yves Bouvier made certain other statements that also were false.

You must analyze the statements Yves Bouvier made and decide whether the statements were material in connection with Accent Delight's decision to purchase or trade-in the artwork at issue for a given transaction. A statement of fact is material if a reasonable person would consider it important. If you decide that none of Yves Bouvier's statements were material in connection with a given transaction, you need proceed no further on the claim of fraud with respect to that transaction.

If you decide that any of these statements was material, you must next decide whether the statements were false, unless the parties have already agreed that they were false. A statement is

false if, taken as a whole, it communicates something that is untrue when considered from the viewpoint of an ordinary person.  If you decide that any of the statements Accent Delight claims were false were in fact true, those statements cannot support a finding that a fraud took place.

If you decide that a material statement was false, you must next decide whether Yves Bouvier knew that it was false.  If you decide that Yves Bouvier did not know that the statement was false, that statement cannot support a finding that a fraud took place for a given transaction.

If you decide that Yves Bouvier did know that the statement was false, you must next decide whether the statement was made to convince Accent Delight to purchase or trade-in the artwork at issue.  If you decide that Yves Bouvier did not make the statement in order to convince Accent Delight to purchase or trade-in the artwork at issue, that statement cannot support a finding that a fraud took place for a given transaction.

If you decide that Yves Bouvier did make the statement in order to convince Accent Delight to purchase or trade-in the artwork at issue, you must next decide whether Accent Delight relied on the statement in purchasing or trading-in that artwork.  If you decide that Accent Delight did not rely on Yves Bouvier's statement in acquiring or trading-in the artwork, that statement cannot support a finding that a fraud took place for a given transaction.

If you decide that Accent Delight did rely on Yves Bouvier's statement in acquiring or trading-in the artwork at issue, you must next decide whether Accent Delight was reasonable in relying on the statement.  In assessing the reasonableness of any reliance, you must consider the entire context of the transaction at issue.  Whether a person is reasonable in relying on a statement depends on whether a reasonable person would accept that statement as true without further effort to determine the truth or accuracy of the statement.  In determining whether reasonable reliance existed, you should consider:  (1) the knowledge and experience of the person claiming to have been defrauded; (2) the existence of a relationship of trust or confidence, or superior knowledge or means of knowledge on the part of the person making the representation; and (3) any known disability on the part of the person claiming to have been deceived.  A person has not reasonably relied on a person's misrepresentations where the person had available means of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation.  A party cannot claim reliance on a misrepresentation when he or she could have discovered the truth with due diligence.  Moreover, a person cannot have reasonably relied on statements that are mere puffery, opinions of value (rather than false statements of value), or future expectations.  On the other hand, if the party took reasonable steps to protect itself against deception, its reliance on a misrepresentation was not unreasonable merely because hindsight suggests that it might have been possible to detect the fraud when it occurred.

When the plaintiff is sophisticated and advised by lawyers, a heightened degree of diligence is required to show that the plaintiff reasonably relied on a representation.  Sophisticated parties cannot rely on representations about business transactions without making inquiries to determine the accuracy of the representations.  To establish justifiable reliance, a sophisticated plaintiff must have made use of the means of verification that were available to it.

If you decide that Accent Delight was not justified in relying on Yves Bouvier's statements in connection with a given transaction, you need proceed no further on the claim of fraud for that transaction. If you decide that Accent Delight acted reasonably in relying on misrepresentations by Yves Bouvier, you will proceed to consider the next two elements that Accent Delight must prove to succeed on its aiding and abetting fraud claims against Defendants.

Authority: N.Y. Pattern Jury Instr.--Civil 3:20; *Benjamin v. Yeroushalmi*, 178 A.D.3d 650 (N.Y. App. Div. 2019); *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 NY.3d 269, 278–79 (2011); *Ventur Grp., LLC v. Finnerty*, 68 A.D.3d 638, 638–39 (N.Y. App. Div. 2009); *Glob. Mins. & Metals Corp. v. Holme*, 35 A.D.3d 93, 100–01 (N.Y. App. Div. 2006); *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y.3d 147, 154–55 (2010).

## 2.  Knowledge of the fraud:

If you conclude that Yves Bouvier committed fraud against Accent Delight with respect to a given transaction, you must then consider whether Accent Delight has proven by clear and convincing evidence that Defendants had actual knowledge of Yves Bouvier's fraud regarding that transaction.

Accent Delight must prove that Defendants had actual knowledge of Yves Bouvier's fraud. This means that the evidence must be clear and convincing that Defendants actually knew that Yves Bouvier was committing a fraud. Constructive knowledge—which means the possession of information that would cause a reasonable person in Defendants' position to become aware of the fraud—is not enough to hold Defendants liable. Mere suspicion of impropriety is not the same as actual knowledge. Facts that are consistent with normal, lawful business practices do not show actual knowledge. Evidence that Defendants processed atypical transactions on behalf of an alleged perpetrator of a fraud is, without more, insufficient to prove actual knowledge. Similarly, facts showing that Defendants should have known about the fraud, or that Defendants ignored obvious red flags or warning signs that a fraud was taking place, are not enough to establish actual knowledge.

Actual knowledge can, however, be established through circumstantial evidence. This means that Accent Delight does not need to prove that Defendants explicitly acknowledged in documents or elsewhere that fraud was taking place. Rather, Accent Delight can prove Defendants' knowledge from the facts and circumstances taken as a whole.

Authority:  New York Pattern Jury Instruction--Civil 3:20; *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL 2307179, at *19, 45, 53–54 (S.D.N.Y. Mar. 1, 2023); *Krys v. Pigott*, 749 F.3d 117, 127, 132 (2d Cir. 2014); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 487 (S.D.N.Y. 2018); *Rosner v. Bank of China*, No. 06-cv-13562, 2008 WL 5416380, at *5–12 (S.D.N.Y. Dec. 18, 2008).

## 3.  Substantial assistance in the fraud:

In addition to proving that Defendants had actual knowledge of fraud by Yves Bouvier, Accent Delight also must prove by clear and convincing evidence that Defendants' conduct substantially assisted Yves Bouvier in achieving that fraud. This element requires Accent

Delight to prove an affirmative act on the part of Defendants that provided a substantial contribution to Yves Bouvier's perpetration of the fraud. Inaction does not qualify as substantial assistance, even if Defendants could have, but failed to, prevent the fraud. Defendants' performance of routine business services for the alleged perpetrator of the fraud, Yves Bouvier, is also not proof of substantial assistance.

      To prove substantial assistance, Accent Delight also must show that the actions of Defendants proximately caused Accent Delight's harms. Proximate cause means that Accent Delight's injury must have been a direct or reasonably foreseeable result of Defendants' conduct. If the primary violation is a misrepresentation in a document, Accent Delight must prove that Defendants gave substantial assistance to the making and dissemination of that document. If Defendants did not assist in the making or dissemination of that document, Accent Delight cannot claim that its injury from the use of that document was proximately caused by Defendants' conduct.

<u>Authority</u>:  N.Y. Pattern Jury Instruction—Civil 3:20; *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL 2307179, at \*24 (S.D.N.Y. Mar. 1, 2023); *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 473 (2d Cir. 1995); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 497 (S.D.N.Y. 2018); *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 256 (S.D.N.Y. 2005); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 371–72 (S.D.N.Y. 2007).

**Instruction No. 4.**　　　　**(A) Conscious Avoidance [Defendant's Proposal: Conditional on the Court's determination at the close of the evidence that the charge is supported]**

In determining whether Defendants had actual knowledge of Yves Bouvier's fraud or breach of fiduciary duty, you may consider whether Defendants "consciously avoided" learning about that misconduct.  To prove conscious avoidance, Accent Delight must prove by clear and convincing evidence that Defendants (1) were aware of a high probability that Yves Bouvier was engaged in fraud or breach of fiduciary duty, and (2) nevertheless deliberately avoided learning of it.  Conscious avoidance cannot be established by demonstrating that Defendants were merely negligent, foolish, or mistaken.  Further, if you find that Defendants actually believed that Bouvier was conducting legitimate transactions, you cannot find that Defendants had actual knowledge of Yves Bouvier's fraud or breach of fiduciary duty.

It is entirely up to you decide whether there is clear and convincing evidence to support a finding that Defendants consciously avoided learning of Yves Bouvier's fraud or breach of fiduciary duty.

Authority:  1 Modern Federal Jury Instructions-Criminal ¶ 3A.01 (2023); *United States v. Svoboda*, 347 F.3d 471, 476 n.5 (2d Cir. 2003); *United States v. Fofanah*, 765 F.3d 141, 144–45 (2d Cir. 2014); *United States v. Kaiser*, 609 F.3d 556, 566 (2d Cir. 2010).

**Plaintiff's Statement in Support of Its Proposed Charge No. 4:**

The Court should adopt Plaintiff's proposed Charge No. 4. It is clear, concise, and easy for the jury to understand. First, the jury is instructed that, with respect to Bouvier's underlying fraud, the only issue for them to decide is "reasonable reliance," the definition of which is drawn from relevant authority. *See* 3 Fed. Jury Prac. & Instr. § 123:30 (6th ed.). As Plaintiff argues in its motion in limine, the other elements of fraud have already been established; therefore, the jury need not be instructed on these other elements. *See* MSJ Order (ECF No. 510) at 58 n.18. Second, the jury is instructed on the element of Defendants' "actual knowledge" of the fraud, including that knowledge may be established by circumstantial evidence, drawing from relevant authority. *See* 3 Fed. Jury Prac. & Instr. § 104:24 (6th ed.) (defining how knowledge can be established through circumstantial evidence); *Nathel v. Siegal*, 592 F. Supp. 2d 452, 468-69 (S.D.N.Y. 2008) (no need of explicit acknowledgment); *Oster v. Kirschner*, 77 A.D.3d 51, 55-56 (1st Dep't 2010) (circumstantial evidence); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 487 (S.D.N.Y. 2018) (circumstantial evidence). Plaintiff proposes language on conscious avoidance drawn from the Court's summary judgment order and relevant caselaw. *See* MSJ Order (ECF No. 510) at 43-44; *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007) (recognizing conscious avoidance in the context of aiding and abetting); *United States v. Boothe*, 994 F.2d 63, 69 (2d Cir. 1993); *United States v. Pierre*, 285 Fed. App'x 828, 830 (2d Cir. 2008); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–70 (2011). Third, the jury is instructed on the element of Defendants' "substantial assistance" in the fraud, including proximate cause, drawing from relevant authority. *See* N.Y. Pattern Jury Instruction 2:70 (Proximate Cause-In General); *Nathel v. Siegal*, 592 F. Supp. 2d 452, 468-69 (S.D.N.Y. 2008); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 487 (S.D.N.Y. 2018). Because Sotheby's has not disputed that it provided substantial assistance with respect to two transactions, an instruction is appropriate to streamline the issues for the jury. *See* Mem. of Law in support of Sotheby's Mot. for Summ. J. (ECF No. 438) at 4.

The Court should reject Sotheby's proposed Charge No. 5. First, Defendants incorrectly characterize Plaintiff as seeking damages from Defendants for "injuries it claims were caused by fraud committed by a third party," when in fact Plaintiff is seeking damages caused by *Defendants' conduct*. Second, the excessive repetition of the "clear and convincing" standard of proof is redundant and tilts the jury against Plaintiff. Third, Defendants have no basis to dispute that all elements of Bouvier's fraud, with the exception of reasonable reliance, have already been established; the jury need not be instructed on these elements. Fourth, the instruction on reasonable reliance goes far beyond the federal and New York pattern jury instruction and misstates the law in several respects. *See* N.Y. Pattern Jury Instr.--Civil 3:20. Sotheby's cites the principle, "A person has not reasonably relied on a person's misrepresentations where the person had available means of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation," but omits the condition that it applies only "if the facts represented are not matters peculiarly within the [fraudster's] knowledge." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 278 (2011). Defendants are wrong that "opinions of value" and "future expectations" may not be relied upon. *See N. Fork Partners Inv. Holdings, LLC v. Bracken*, No. 20-CV-2444 (LJL), 2021 WL 4124950, at *6 (S.D.N.Y. Sept. 9, 2021) (opinion actionable in fraud if speaker subjectively did not believe the opinion); *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 286 (1987) (financial projections made knowing they were false are actionable in fraud). Defendants cite no authority

for the first three sentences in the paragraph beginning "When the plaintiff is sophisticated . . .," does not define what "sophisticated" means, and improperly instructs the jury to assume that Plaintiff is "sophisticated." Fifth, the instruction on "actual knowledge" primarily includes only instructions on how actual knowledge *cannot* be proven, impermissibly tilting the jury against Plaintiff. Sixth, the instruction on "substantial assistance" is also riddled with incomplete and inaccurate statements of the law. The instruction that an "affirmative act" is required misstates the definition of substantial assistance as action that "affirmatively assists, [or] helps conceal." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 256 (S.D.N.Y. 2005). The instruction that "performance of routine business services" is not proof of substantial assistance is contradicted by the Court's order and the case Sotheby's cites. MSJ Order (ECF No. 510) at 55; *Winnick*, 406 F. Supp. 2d at 256 (routine business activities could constitute substantial assistance); *Primavera Familienstiftung v. Askin*, 130 F.Supp.2d 450, 511-512 (S.D.N.Y.2001), *abrogated in part on unrelated grounds by Casey v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011) ("executing transactions, even ordinary course transactions, can constitute substantial assistance under some circumstances, such as where there is an extraordinary motivation to aid the fraud" and collecting cases). The instruction beginning "If the primary violation is a misrepresentation in a document" improperly confines Plaintiff's claims as ones based on documentary misrepresentations, when in fact, Bouvier made misrepresentations in a number of ways.

The Court should reject Defendants' proposed instruction on conscious avoidance. The instruction that conscious avoidance cannot be demonstrated by negligent, foolish, or mistaken behavior is redundant with the instruction that conscious avoidance cannot be demonstrated where Defendants actually believed that Bouvier was conducting legitimate transactions. *See United States v. Kaiser*, 609 F.3d 556, 566 (2d Cir. 2010). The instruction that it is "entirely up to [the jury] to decide . . ." is superfluous and merely another way for Defendants to improperly emphasize the clear and convincing burden of proof.

**Defendants' Objections to Plaintiff's Proposed Charge No. 4:**

Defendants object to Plaintiff's Proposed Charge No. 4 as inappropriate, inaccurate, and unduly prejudicial to Defendants. Defendants respectfully request that the Court accept their alternative Proposed Charge No. 4 above.

First, Plaintiff's proposed charge fails to instruct the jury on the elements of Plaintiff's underlying claims of fraud against Yves Bouvier, notwithstanding that it is Plaintiff's burden to prove each of those elements by clear and convincing evidence. *See* N.Y. Pattern Jury Instr.--Civil 3:20.

Second, Plaintiff's proposed charge mentions only in passing the requirement that Plaintiff must prove it was reasonable to rely on Bouvier's false statements, and offers almost no guidance as to how to assess that element other than in a single sentence that is misleading without further guidance.

Third, Plaintiff's proposed charge incorrectly states that the parties have stipulated that certain statements made by Yves Bouvier were fraudulent, when in fact the parties have stipulated only that certain statements by Bouvier were false. The ultimate determination of

fraud, including as to whether Plaintiff's reliance was reasonable, is an issue to be resolved by the jury.

Fourth, Plaintiff's proposed charge ignores that Plaintiff likely will argue that additional statements made by Bouvier were false aside from the statements to which the parties have stipulated. The jury will need to determine the falsity of those statements. For example, Defendants have not stipulated to the falsity of any statement made with respect to the *Tête* auction. Plaintiff's proposed charge inaccurately suggests to the jury that any statement Plaintiff argues was false has been stipulated by the parties to be false.

Fifth, Plaintiff's proposed charge offers no guidance as to how the jury should assess whether Defendants had actual knowledge of Bouvier's alleged fraud, aside from a single statement that the jury can consider circumstantial evidence and an inapplicable statement of law (as discussed below), notwithstanding that actual knowledge is a critical issue in the case that Defendants contest.

Sixth, Plaintiff's proposed charge would instruct the jury that if "a certain condition has existed for a substantial period of time, and [if] Sotheby's had regular opportunities to observe the condition, then you may draw the inference that Sotheby's had knowledge of the condition." Such an instruction applies to determining whether a party had knowledge of a fact in negligence cases where there was a duty to inquire. 3 Fed. Jury Prac. & Instr. § 104:24 (6th ed.). The charge is not appropriate here.

Seventh, Plaintiff's proposed jury charge misstates the standard of conscious avoidance by omitting the instruction that the individual at issue must have "deliberately" avoided learning of the facts in dispute. *United States v. Svoboda*, 347 F.3d 471, 476 n.5 (2d Cir. 2003). Further, the proposed charge instructs on the issue of conscious avoidance without explaining how the jury should determine whether conscious avoidance might apply and improperly directs the jury to decide that actual knowledge can be imputed to Defendants if it finds that Valette consciously avoided knowing about the fraud or breach, thereby conflating the law of corporate responsibility with actual knowledge of an individual. The proposed charge also injects inflammatory language regarding motivation. Defendants have proposed a conditional instruction on this issue at Defendants' Instruction No. 4(A) which should be adopted if, and only if, the evidence introduced at trial supports such a charge.

Eighth, Plaintiff's proposed charge offers insufficient guidance as to how the jury should determine whether Defendants substantially assisted in Bouvier's fraud, and provides no guidance on the issue of proximate causation (which Plaintiff also must prove).

Ninth, Plaintiff's proposed charge states inaccurately that substantial assistance has already been determined with respect to Accent Delight's purchases of Modigliani's *Tête* and Magritte's *Domaine d'Arnheim* (citing to the Court's decision at summary judgment). Defendants did not seek summary judgment on the element of substantial assistance for either of these transactions. With respect to other transactions, the Court found only that "[d]rawing all inferences in favor of Plaintiffs, a jury *could find* that Sotheby's actions substantially assisted Bouvier's fraud." *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL

2307179, at *24 (S.D.N.Y. Mar. 1, 2023) (emphasis added).  Substantial assistance is a question for the jury to resolve regarding all five transactions at issue.

**Instruction No. 5.**          <u>**Parent Company Responsibility for Subsidiaries (Plaintiff's**</u>
                                <u>**Proposal)**</u>

Defendants Sotheby's and Sotheby's Inc. are parent companies for other Sotheby's entities that are called subsidiaries. Sotheby's asserts that it is not liable for the actions of its three subsidiaries in Europe that were involved in the following transactions: the purchase of Magritte's *The Domain of Arnheim*, the purchase of Klimt's *Water Serpents II*, and the purchase of Modigliani's *Head*. Sotheby's does not make this argument for the purchase of Da Vinci's *Salvator Mundi* or the auction of Modigliani's *Head*.

Accent asserts that Defendants Sotheby's are responsible for the actions taken by their subsidiaries and Valette in these three transactions.

A parent company may be liable to a third party, such as Accent, that is harmed by a subsidiary acting on the parent company's behalf.

There is no rigid rule for determining whether a parent company is responsible for its subsidiary. The most important factor is whether the parent company has the right to control the manner in which the subsidiary performs its work. A parent company's right to control its subsidiaries may be determined by the way in which the parent company structures itself, its authority over the subsidiaries' activities, and its level of control over the manner in which the subsidiary companies conduct their activities.

In deciding whether Defendants Sotheby's are liable for the actions of its subsidiaries and Valette in these three transactions, you should consider (1) whether Sotheby's exerted high levels of control over its subsidiaries; (2) whether Sotheby's controlled its subsidiaries' business decisions, including which transactions would go through which subsidiaries; (3) whether Sotheby's treated its subsidiaries like independent businesses it had to negotiate and contract with, or whether it treated them like part of the parent company; (4) whether Sotheby's reported its income, expenses, and other financials all together with its subsidiaries' financials, without distinguishing among them, in filings with the Securities and Exchange Commission; (5) whether the subsidiaries used Sotheby's money or assets as if it were its own, including whether employees of the subsidiaries could be compensated with shares in Sotheby's; (6) whether Sotheby's and the subsidiaries shared the same, worldwide policies and codes of conduct; (7) whether CEO Bill Ruprecht and COO Bruno Vinciguerra of Sotheby's were involved in these three transactions and provided directions to the subsidiaries about them; (8) whether Sotheby's High Value Lot Committee, Compliance Department, and CEO Ruprecht approved these transactions; and (9) whether employees of the Defendants Sotheby's worked on these transactions.

If you decide that the Defendants Sotheby's is responsible for its subsidiaries or Samuel Valette in Accent's purchase of Magritte's *The Domain of Arnheim*, the purchase of Klimt's *Water Serpents II*, and the purchase of Modigliani's *Head*, then you will find that Defendants Sotheby's is liable for these transactions.

**Authorities:** MSJ Order (ECF No. 510) at 38-41, 55-57, 58 n.18, 59 n.19; *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 226 (S.D.N.Y. 2013); *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 451-452 (S.D.N.Y. 2009); Restatement (Third) of Agency § 7.03(2)(a) (2006).

**Instruction No. 5.**      <u>**Defendants' Liability for Employees of Its Subsidiaries**</u>
                           <u>**(Defendants' Proposal)**</u>

As you have heard, Accent Delight claims that Defendants Sotheby's and Sotheby's Inc. should be held responsible for the acts of employees of Sotheby's UK, a UK-based subsidiary of both Defendants.  Accent Delight does not claim that Defendants are automatically liable for all the acts of their UK subsidiary or the subsidiary's employees.  Rather, Accent Delight claims that employees of Defendants' overseas subsidiaries, such as Samuel Valette, acted on Defendants' behalf with regard to the five transactions at issue in this case.

Defendants assert that the employees of their UK subsidiary were not acting as Defendants' agents with respect to the private sale of Magritte's *Domaine d'Arnheim* or the private sale of Modigliani's *Tête*, and that Defendants therefore cannot be held liable for the conduct of those employees of their UK subsidiary regarding either of those two transactions. Defendants do not raise this defense with regard to the private sale of Klimt's *Wasserschlangen II*, the private sale of Da Vinci's *Salvator Mundi*, or the public auction of Modigliani's *Tête*.

As a general rule, a corporate parent is not liable for the actions of its subsidiaries. Defendant Sotheby's and Defendant Sotheby's, Inc. can only be liable if plaintiff establishes by a preponderance of the evidence that the employees of Defendants' UK subsidiary who handled the private sale of Magritte's *Domaine d'Arnheim* and the private sale of Modigliani's *Tête* were acting as agents for either of the Defendants.

An agency relationship exists when there is an agreement between a principal and an agent that the agent will act for the principal, and the principal retains direction and control over the agent.  Also critical is the agent's power to alter legal relations between the principal and third persons, for example to enter into contracts on the principal's behalf.

A corporate parent's ownership interest in a subsidiary, standing alone, is insufficient to demonstrate an agency relationship with the subsidiary.  This means that the normal relationship between a parent and its subsidiary, without more, does not amount to an agency relationship. Even where the parent invests in the subsidiary, does business with the subsidiary, advises the subsidiary on profitability, or shares corporate officers and directors with a subsidiary, those facts alone do not create an agency relationship.  Similarly, a subsidiary's employee is not the agent of a parent corporation unless, separately, an agency relationship has been created between the employee and the parent corporation.

Accent Delight must prove, with respect to the private sale of Magritte's *Domaine d'Arnheim* and the private sale of Modigliani's *Tête*, that the employees of Defendants' subsidiaries whose conduct is established as wrongful, if any, were acting as agents of Defendants.  In deciding whether at the time of the transactions Defendants had direction and control of these employees and the work they were performing on the private sales of Magritte's *Domaine d'Arnheim* and Modigliani's *Tête*, you may consider the following factors:  what was the employment relationship of the relevant employees to the Defendants at that time; who paid the employee's wages, social security, and unemployment taxes and carried workers' compensation insurance covering that employee; who had the right to discharge the employee;

and who in fact gave orders to the employee as to how the transaction was to be conducted and how the work was to be done. Accent Delight must also prove that Defendants had primary direction and control over the details and ultimate results of the employee's work. Indicia showing general oversight, such as required approval of policy decisions, is not enough by itself to show direction and control.

No single one of these factors is decisive. If on consideration of all the evidence you find that with respect to the relevant transaction Defendants had direction and control over both the details and the ultimate results of the employee's work, you should find that Defendants are responsible for the employees' actions with respect to the two private sales at issue. If, however, you find based on all the evidence that Sotheby's UK had primary control and direction over both the details of the work the employee was doing and its ultimate results, you should find that Defendants are not responsible for the employee's actions.

Authority: N.Y. Pattern Jury Instr.--Civil 2:238; Restatement (Third) Of Agency § 1.01 (2006); 2A N.Y. Jur. 2d Agency § 2; *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL 2307179, at *36–38 (S.D.N.Y. Mar. 1, 2023); *Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 422 (S.D.N.Y. 2007); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175–76 (2d Cir. 2012) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459–62 (2d Cir. 1995)).

**Plaintiff's Statement in Support of Its Proposed Charge No. 5:**

The Court should adopt Plaintiff's proposed Charge No. 5. It is clear, concise, and draws on the Court's summary judgment order and relevant caselaw. MSJ Order (ECF No. 510) at 38-41, 55-57, 58 n.18, 59 n.19; *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 226 (S.D.N.Y. 2013); *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 451-452 (S.D.N.Y. 2009); Restatement (Third) of Agency § 7.03(2)(a) (2006). The instruction reflects both Plaintiff's theory that Defendants are responsible for the actions of its subsidiaries, as well as Plaintiff's theory that Defendants are responsible for actions of Valette. It also articulates which facts are relevant to determining this question.

The Court should reject Defendants' proposed Charge No. 5. The instruction entirely omits Plaintiff's theory of liability premised on Defendants' liability for the acts of their subsidiaries, which the Court recognized as valid. *See* MSJ Order (ECF No. 510) at 38-41 (citing *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 451-452 (S.D.N.Y. 2009)). The instruction does not reference any of the factors that the Court identified as relevant in assessing whether an agency relationship between the subsidiaries and Defendants existed—i.e., common reporting of financials, compensation with Defendants' shares, common policies, control over specific transactions, directing which subsidiaries would handle transactions, and whether Key Client Managers operated companywide. *See* MSJ Order (ECF No. 510) at 38-40. Defendants focus only on the narrow issue of whether Defendants controlled Valette's work activities. Defendants' only authority for the factors to be considered on this issue ("what was the employment relationship of the relevant employees to the Defendants . . .") is N.Y. Pattern Jury Instr.—Civil 2:238. But that instruction is irrelevant because it relates to an employer's liability for an employee temporarily assigned to it by another employer, which is not the issue presented here.

**Defendants' Objections to Plaintiff's Proposed Charge No. 5:**

Defendants object to Plaintiff's Proposed Charge No. 5 as inappropriate, inaccurate, and unduly prejudicial to Defendants. Defendants respectfully request that the Court accept their alternative Proposed Charge No. 5 above.

First, Plaintiff's proposed charge incorrectly states that Defendants have asserted that they cannot be held liable for their subsidiary's actions in connection with Klimt's *Wasserschlangen II*. Defendants are not asserting this defense with respect to the Klimt.

Second, Plaintiff's proposed charge misleadingly implies that a normal parent-subsidiary relationship is sufficient to find that the subsidiary acted as an agent for the parent and ignores the general principle that a corporate parent is not liable for the actions of its subsidiaries, absent evidence that shows "more than the usual concomitants" of the relationship between a parent and a subsidiary. *Bigio v. Coca Cola Co.*, 675 F.3d 163, 175–76 (2d Cir. 2012); *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL 2307179, at *17 (S.D.N.Y. Mar. 1, 2023).

Third, Plaintiff's proposed charge incorrectly suggests that a Defendant can be held liable for the conduct of its subsidiaries and their employees based on a finding that the subsidiaries and employees were *at any time* the agents of such Defendant and without regard to the specific facts of each transaction. *See id.* at *18 (finding that, in cases where there was no specific

involvement of Defendants' executives in a subsidiary's transaction, that subsidiary was not acting as an agent for the parent company).

Fourth, Plaintiff's proposed charge simply states that a parent company's right to control may be determined "by the way in which the parent company structures itself, its authority over the subsidiaries' activities, and its level of control over the manner in which the subsidiary companies conduct their activities," without providing guidance as to how those factors should be analyzed.

Fifth, Plaintiff's proposed charge marshals evidence that Plaintiff contends supports a finding that Defendants were liable for the actions of their subsidiaries and for Valette in particular in the manner of a closing statement, rather than charging the jury as to the law in a neutral manner.

**Instruction No. 6.**          <u>**Aiding and abetting breach of fiduciary duty (Plaintiff's Proposal)**</u>

I will now instruct you on the law for Accent's second claim, aiding and abetting a breach of fiduciary duty in Accent's purchase of Da Vinci's *Salvator Mundi*. For this claim, Accent must prove two things by a preponderance of evidence.

First, Accent must prove that Yves Bouvier had a fiduciary relationship with Accent. Accent asserts that Bouvier served as its agent in Accent's purchase of artwork, and that Bouvier owed Accent a fiduciary duty.

Because Accent is a corporation, it acts through its employees or representatives. Here, Accent asserts that it gave a "power of attorney" authorizing Dmitry Rybolovlev to buy art on its behalf and that Rybolovlev hired Yves Bouvier to act as its art agent, thereby creating a fiduciary relationship between Bouvier and Accent.

A fiduciary relationship exists between two people or entities when one of them is under a duty to act for or to give advice for the benefit of the other upon matters within the scope of that relationship. A fiduciary relationship may exist where one party has confidence in another and reasonably relies on the other's superior expertise or knowledge. Negotiating on another's behalf is an example of a fiduciary relationship. An agent is one kind of fiduciary. An agent owes his principal undivided and unqualified loyalty and must act in the best interests of the principal. An agent is required to make truthful and complete disclosures to those to whom the agent owes a fiduciary duty. The agent is forbidden from obtaining an improper advantage at the other's expense.

Second, Accent must prove that Sotheby's knowingly induced or participated in Bouvier's breach of fiduciary duty. If you find that Sotheby's provided substantial assistance to Bouvier's fraud, you will also find that Sotheby's knowingly induced or participated in Bouvier's breach of fiduciary duty. However, if you find that Sotheby's did not provide substantial assistance to Bouvier's fraud, you are still permitted to find that Sotheby's knowingly induced or participated in Bouvier's breach of fiduciary duty.

**Authorities:**    MSJ Order (ECF No. 510) at 42-46, 55, 59 fn.19; *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006); *Yukos Cap. S.A.R.L.*, 977 F.3d 216, 241 (2d Cir. 2020); *Roni LLC v Arfa*, 18 N.Y.3d 846, 848 (2011); Restatement (Third) of Agency §§ 8.01, 8.02, 8.11 (2006).

**Instruction No. 6.**          <u>**Claim for Aiding and Abetting Breach of Fiduciary Duty**</u>
                               <u>**(Defendants' Proposal)**</u>

As I previously instructed you, you may consider Accent Delight's claim for aiding and abetting breach of fiduciary duty in connection with the purchase of Da Vinci's *Salvator Mundi* only if you have decided that equitable estoppel saves that claim.  As a reminder, Accent Delight claims that Defendants aided and abetted the breach of a fiduciary duty with respect to only their purchase of Da Vinci's *Salvator Mundi*.  You have not been asked to decide whether Defendants aided and abetted a breach of fiduciary duty with respect to any of the other artwork transactions we have been discussing.  To prove its claim, Accent Delight must establish three elements:  (1) that Yves Bouvier breached a fiduciary duty owed to Accent Delight with regard to the purchase of Da Vinci's *Salvator Mundi*; (2) that Defendants knowingly induced or participated in the breach; and (3) that Accent Delight suffered damage as a result of the breach.

Accent Delight must prove each of these three elements by a preponderance of the evidence.  This is a different burden of proof than the one which applies to Accent Delight's aiding and abetting fraud claims.  A preponderance of the evidence means the greater weight of the evidence.  To establish by a preponderance of the evidence means that Accent Delight's evidence must convince you that its version of events is more probable than not.

To satisfy this standard, you must find that Accent Delight has introduced evidence showing that it is more likely than not that each of the following is true:  (1) Yves Bouvier breached a fiduciary duty to Accent Delight, (2) Defendants had knowledge of that breach of fiduciary duty and knowingly induced or participated in it, and (3) Accent Delight suffered damages as a result.  If, based upon all the evidence, you are satisfied that it is more likely than not that Yves Bouvier did breach a fiduciary duty to Accent Delight, that Defendants had knowledge of that breach of fiduciary duty and knowingly induced or participated in it, and that Accent Delight suffered damages as a result, then you must decide for Accent Delight.  If you are not satisfied that it is more likely than not that each of those events happened, you must decide for Defendants.

I'll now describe each of these elements in more detail.

**1. Breach of fiduciary duty:**

Accent Delight must first prove that Yves Bouvier breached a fiduciary duty owed to it with regard to the purchase of Da Vinci's *Salvator Mundi*.  To prove a breach of fiduciary duty, Accent Delight must prove the existence of a fiduciary relationship and conduct by Yves Bouvier that violated his fiduciary duty.

A fiduciary relationship exists between an agent and a principal.  Accent Delight claims that Yves Bouvier agreed to act as its agent for the purchase of artworks, including for Da Vinci's *Salvator Mundi*.  An agency relationship exists when there is an agreement between the principal and the agent that the agent will act for the principal, and the principal retains control over the agent.  An essential element of an agency relationship is the principal's right to control the agent's actions.  If a purported principal lacks control over a purported agent, there is no agency relationship.  Also critical is the agent's power to alter legal relations between the

principal and third persons, for example to enter into contracts on the principal's behalf. If you conclude that Accent has not shown the existence of an agency relationship between itself and Yves Bouvier with regard to the transaction for the *Salvator Mundi* by a preponderance of the evidence, then you need not proceed any further on Accent Delight's claim.

If you conclude that a preponderance of the evidence shows that Yves Bouvier acted as an agent for Accent Delight in its purchase of Da Vinci's *Salvator Mundi*, then you may proceed to consider whether Yves Bouvier breached his fiduciary duty to Accent Delight. A fiduciary owes his or her principal undivided and unqualified loyalty and may not act in any manner contrary to the interests of the principal. A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary duty is owed and the fiduciary is forbidden from obtaining an improper advantage at the principal's expense.

Accent Delight claims that Yves Bouvier did not act in good faith or in the best interests of Accent Delight in connection with Accent Delight's purchase of Da Vinci's *Salvator Mundi*. If you find that Yves Bouvier did not breach his fiduciary duty to Accent Delight, you need proceed no further. If you find that Yves Bouvier did breach his fiduciary duty to Accent Delight, you must then decide whether Defendants knowingly induced or participated in that breach and whether that breach directly caused Accent Delight to sustain damages.

Authority:  N.Y. Pattern Jury Instr.--Civil 3:59; *Ne. Gen. Corp. v. Wellington Adver., Inc*., 82 N.Y.2d 158, 162–65 (1993); *HF Mgmt. Servs. LLC v. Pistone*, 34 A.D.3d 82, 84–85 (N.Y. App. Div. 2006); *Cuomo v. Mahopac Nat. Bank*, 5 A.D.3d 621, 622 (N.Y. App. Div. 2004); *Atkins Nutritionals, Inc. v. Ernst & Young, LLP*., 301 A.D.2d 547, 548–49 (N.Y. App. Div. 2003); *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529 (N.Y. App. Div. 2001).

## 2.    Knowing inducement or participation in the breach:

If Accent Delight establishes a fiduciary breach by Yves Bouvier with regard to the purchase of Da Vinci's *Salvator Mundi*, Accent Delight must also establish by a preponderance of the evidence that Defendants knowingly induced or participated in Yves Bouvier's breach of duty. Accent Delight must establish that Sotheby's had actual knowledge of the breach of duty. The claim necessarily fails if Defendants did not know of Yves Bouvier's fiduciary duty. It is not enough to show that Defendants had constructive knowledge of the breach, that Defendants ignored warning signs about the breach, or that Defendants should have known of the breach under the circumstances. But as with Accent Delight's claims for aiding and abetting fraud, circumstantial evidence can be sufficient to support a finding that Defendants had actual knowledge of a fiduciary relationship between Accent Delight and Yves Bouvier.

In addition, as with claims for aiding and abetting fraud, a defendant knowingly participates in a breach of fiduciary duty only when the defendant provides substantial assistance to the one who committed the breach of duty. Substantial assistance occurs when a defendant affirmatively assists or helps conceal the breach and thereby enables the breach to occur. Failure to prevent a breach alone cannot qualify as substantial assistance. Thus, Defendants can only be found to have substantially assisted in Yves Bouvier's breach of fiduciary duty regarding the purchase of Da Vinci's *Salvator Mundi* if Defendants affirmatively assisted in the breach or helped conceal the breach, and thereby enabled the breach to occur.

If you find by a preponderance of the evidence that Defendants knowingly induced or participated in Yves Bouvier's breach of a fiduciary duty against Accent Delight, you must then proceed to the instructions I will give you on damages.

Authority:  N.Y. Pattern Jury Instr.--Civil 3:59; *People ex rel. Cuomo v. Coventry First LLC*, 13 N.Y.3d 108, 115 (2009); *Wallkill Med. Dev., LLC v. Catskill Orange Orthopaedics, P.C.*, 178 A.D.3d 987, 988 (N.Y. App. Div. 2019).

**Plaintiff's Statement in Support of Its Proposed Charge No. 6:**

The Court should adopt Plaintiff's proposed Charge No. 6. It is clear, concise, and easy for the jury to understand. First, the jury is instructed that, with respect to Bouvier's underlying breach of fiduciary duty, the only issue for them to decide is whether Plaintiff had a fiduciary duty with Bouvier, the definition of which is drawn from relevant authority. *See* Restatement (Third) of Agency §§ 8.01, 8.02, 8.11 (2006); *Roni LLC v Arfa*, 18 N.Y.3d 846, 848 (2011); *Yukos Cap. S.A.R.L.*, 977 F.3d 216, 241 (2d Cir. 2020). As Plaintiff argues in its motion in limine, the other elements of breach of fiduciary duty have already been established; therefore, the jury need not be instructed on these other elements. *See* MSJ Order (ECF No. 510) at 59 n. 19. Second, the jury is instructed that the second element of aiding and abetting breach of fiduciary duty is whether the defendants knowingly induced or participated in the breach. *See* MSJ Order (ECF No. 510) at 42; *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006). As the Court recognized the "knowing inducement" element of aiding and abetting breach of fiduciary duty is substantially similar to the "substantial assistance" element of aiding and abetting fraud. Therefore, the jury is instructed that if they find "substantial assistance" on the fraud claim, they can find "knowing inducement" on the fiduciary duty claim.

The Court should reject Defendants' proposed instruction for aiding and abetting breach of fiduciary duty. First, Defendants ask the jury to decide equitable estoppel before deciding the merits of the claim, but equitable estoppel relates to a defense. The jury should be instructed on this defense after it is instructed on the claim itself. Second, Defendants ask the jury to decide whether Bouvier breached his fiduciary duty, but as Plaintiff contends, this element has already been established in this case and the jury need not be instructed on it. Third, the instruction on knowing inducement is repetitive and states at least three times that Plaintiff must prove that Defendants provided substantial assistance. Defendants do not cite any authority for the instruction "Failure to prevent a breach alone cannot qualify as substantial assistance."

**Defendants' Objections to Plaintiff's Proposed Charge No. 6:**

Defendants object to Plaintiff's Proposed Charge No. 6 as inappropriate, inaccurate, and unduly prejudicial to Defendants. Defendants respectfully request that the Court accept their alternative Proposed Charge No. 6 above.

First, Plaintiff's proposed instruction fail to instruct the jury on the element of the existence of a fiduciary duty, implicitly assuming that Bouvier was in fact Accent Delight's agent in regard to the disputed transactions. The instruction should instruct the jury that the jury must decide whether Bouvier acted as Accent Delight's agent, and should provide clear and complete guidance as to how to determine the existence of an agency relationship, as set forth in Defendants' proposed charge.

Second, the proposed charge incorrectly states that "[i]f you find that Sotheby's provided substantial assistance to Bouvier's fraud, you will also find that Sotheby's knowingly induced or participated in Bouvier's breach of fiduciary duty." The proposed instruction improperly conflates substantial assistance in a fraud (the causal element of Plaintiff's fraud claim) with a Defendant's *knowledge* of the breach of a fiduciary duty, and nonsensically tells the jury that if Plaintiff has proven causation on its fraud claim then it must find that the Defendant had

knowledge of Bouvier's breach of fiduciary duty and assisted in the breach.  If Plaintiff meant to suggest that substantial assistance of a breach of fiduciary duty is enough to prove knowing inducement or participation, that too is incorrect.  Substantial assistance is one part of this element—*i.e.*, to find knowing inducement or participation, the jury must first find that the Defendant provided substantial assistance.  If the jury does not find substantial assistance, Plaintiff has failed to prove this element.  N.Y. Pattern Jury Instr.--Civil 3:59; *see also Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 464 (N.Y. App. Div. 2007) ("a person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator") (citing *Kaufman v. Cohen*, 307 A.D.2d 113, 126 (N.Y. App. Div. 2003)).

**Instruction No. 7.**         **Statute of limitations (Plaintiff's Proposal)**

Sotheby's asserts that the statute of limitations bars Accent's claim for aiding and abetting a breach of fiduciary duty relating to its purchase of Leonardo Da Vinci's *Salvator Mundi*. This issue is not in dispute for the other works in the case.

A statute of limitations is a law requiring a plaintiff to bring a case within a prescribed period of time. Here, Accent was required to file its claim against Sotheby's for aiding and abetting a breach of fiduciary duty within three years of when Accent discovered, or could reasonably have discovered, that Sotheby's aided and abetted a breach of fiduciary duty in Accent's purchase of the Da Vinci.

Accent asserts that Sotheby's fraudulently concealed its alleged wrongdoing when Sotheby's worked with Bouvier to inflate the valuation for the Da Vinci and concealed Bouvier's purchase of the work. Accent must show that Sotheby's made an actual misrepresentation or concealed facts it was required to disclose, that Accent relied on Sotheby's misrepresentation, and that caused Accent to delay in filing a lawsuit against Sotheby's.

Accent asserts that it did not discover Sotheby's role until November 2016, although it had earlier suspicions. Accent asserts it was only when it received documents from Sotheby's in November 2016 that it learned of the extent of Sotheby's involvement in the valuation of the Da Vinci, including that Sotheby's had increased the valuation at Bouvier's request by increasing the amount and by changing the currency from dollars to euros, even over the objections of Sotheby's Old Masters expert Alexander Bell, and by omitting Bouvier from the provenance section of the valuation and deleting the mention of Bouvier's purchase from the cover letter.

If you find that Accent only learned of Sotheby's role in November 2016, you will find for Accent on its claim against Sotheby's for aiding and abetting a breach of fiduciary duty in the purchase of the Da Vinci.

**Authorities:**   MSJ Order (ECF No. 510) at 29-32, 35; 3 Fed. Jury Prac. & Instr. § 107:01 (6th ed.); *Koral v. Saunders*, 36 F.4th 400, 409-410 (2d Cir. 2022).

**Instruction No. 7.**         **Equitable Estoppel (Defendants' Proposal)**

For the purchase of Da Vinci's *Salvator Mundi* only, Accent Delight claims that
Defendants aided and abetted the breach of a fiduciary duty Yves Bouvier owed to Accent
Delight. But Defendants assert as a defense to Accent Delight's claim for aiding and abetting
breach of a fiduciary duty in connection with the purchase of Da Vinci's *Salvator Mundi* that the
statute of limitations bars the claim since Accent Delight did not bring the claim within three
years of its purchase of the artwork. A statute of limitations is a law providing that a suit is
barred if a plaintiff does not bring it within a prescribed period of time. Under the statute of
limitations for breach of fiduciary duty, Accent Delight was required to file its claim in
connection with its May 3, 2013 purchase of Da Vinci's *Salvator Mundi* by May 3, 2016.
Accent Delight did not file the claim by that date.

Accent Delight asserts that its claim for breach of fiduciary duty regarding its purchase of
Da Vinci's *Salvator Mundi* is made timely by the doctrine of equitable estoppel. Equitable
estoppel is an extraordinary remedy that prolongs the statute of limitations. It applies where the
defendant has concealed from the plaintiff that the plaintiff has a cause of action against the
defendant.

Accent Delight's claim for aiding and abetting breach of a fiduciary duty in connection
with the purchase of Da Vinci's *Salvator Mundi* is time-barred unless you determine that
equitable estoppel makes that claim timely. To do so, you must find that Accent Delight has
proven by a preponderance of the evidence that equitable estoppel applies to its claim (and
thereby extends the statute of limitations beyond May 3, 2016). A preponderance of the
evidence means the greater weight of the evidence. To establish by a preponderance of the
evidence means that Accent Delight's evidence must convince you that its version of events is
more probable than not.

To invoke equitable estoppel, Accent Delight must prove by a preponderance of the
evidence that an affirmative misrepresentation or act of concealment by Defendants prevented
Accent Delight from timely filing this lawsuit. The alleged misrepresentation or concealment
underlying the estoppel claim cannot be the same misrepresentation or concealment that is a
basis for Accent Delight's underlying claim for aiding and abetting a breach of fiduciary
duty. In other words, an estoppel claim can only be established by evidence other than evidence
supporting the alleged aiding and abetting of a breach. Accent Delight also must show that it
relied on Defendants' misrepresentation or concealment, and that its reliance caused Accent
Delight to miss its deadline for bringing a timely lawsuit against Defendants.

Accent Delight also bears the burden of proving that it was diligent in seeking the facts
underlying its claim. Equitable estoppel does not extend a limitations period where a plaintiff
has timely knowledge sufficient to place it under a duty to make inquiry and ascertain all the
relevant facts before the statute of limitations expires.

If you find by a preponderance of the evidence (1) that a Defendant misled Accent
Delight through an affirmative misrepresentation or act of concealment that prevented Accent
Delight from filing suit before May 3, 2016, and (2) that Accent Delight was diligent in seeking
the facts underlying its aiding and abetting breach of fiduciary duty claim, you must find that

Accent Delight's claim for aiding and abetting a breach of fiduciary duty is timely. But if you find that Defendants did not mislead Accent Delight through an affirmative misrepresentation or act of concealment, or that Accent Delight was not diligent in seeking the facts underlying its claim, you must find that Accent Delight's claim for aiding and abetting a breach of fiduciary duty is time-barred and find in Defendants' favor on this claim.

Authority:  3 Fed. Jury Prac. & Instr. § 107:01 (6th ed.); 3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.); N.Y. Pattern Jury Instr.--Civil 3:59; *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL 2307179, at *13 (S.D.N.Y. Mar. 1, 2023); *Kaufman v. Cohen*, 307 A.D.2d 113, 122–23 (N.Y. App. Div. 2003); *Marincovich v. Dunes Hotels and Casinos, Inc.*, 41 A.D.3d 1006, 1010–11 (N.Y. App. Div. 2007); *Cusimano v. Schnurr*, 137 A.D.3d 527, 532 (N.Y. App. Div. 2016); *Central General Hosp. v. Bramex Ltd.*, 174 A.D.2d 556, 556–57 (N.Y. App. Div. 1991); *Koral v. Saunders*, 36 F.4th 400, 409–10 (2d Cir. 2022); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012); *Wei Su v. Sotheby's, Inc.*, 490 F. Supp. 3d 725, 730 (S.D.N.Y. 2020); *Smith v. Smith*, 830 F.2d 11, 12 (2d Cir. 1987).

**<u>Plaintiff's Statement in Support of Its Proposed Charge No. 7:</u>**

The Court should adopt Plaintiff's proposed Charge No. 7. The instruction draws from the Court's order, the pattern jury instruction, and relevant caselaw. *See* MSJ Order (ECF No. 510) at 29-32, 35; 3 Fed. Jury Prac. & Instr. § 107:01 (6th ed.); *Koral v. Saunders*, 36 F.4th 400, 409-410 (2d Cir. 2022).

The Court should reject Defendants' proposed Charge No. 7. First, Defendants misstate the law on diligence. Diligence here means that the "the action must be brought within reasonable time after the facts giving rise to estoppel have ceased." *Wei Su v. Sotheby's, Inc.*, 490 F. Supp. 3d 725, 731 (S.D.N.Y. 2020). Second, Defendants cite no authority for their instruction imposing a duty of inquiry before the statute of limitations expires (let alone before the facts giving rise to estoppel have ceased): "Accent Delight also bears the burden of proving that it was diligent in seeking the facts underlying its claim. Equitable estoppel does not extend a limitations period where a plaintiff has timely knowledge sufficient to place it under a duty to make inquiry and ascertain all the relevant facts before the statute of limitations expires."

**<u>Defendants' Objections to Plaintiff's Proposed Charge No. 7:</u>**

Defendants object to Plaintiff's Proposed Charge No. 7 proposed charge as inappropriate, inaccurate, and unduly prejudicial to Defendants. Defendants respectfully request that the Court accept their alternative Proposed Charge No. 7 above.

First, Plaintiff's proposal that the Court charge the jury on equitable estoppel (or "statute of limitations") after instructing the jury on Plaintiff's claim for aiding and abetting a breach of fiduciary duty would be confusing. The jury should be given the equitable estoppel charge first, so that it understands that if it finds that equitable estoppel does not apply, it must find in Defendants' favor on Plaintiff's breach of fiduciary duty claim.

Second, Plaintiff's proposed charge incorrectly states that Plaintiff was required to file its claim "within three years of when Accent discovered, or could reasonably have discovered, that Sotheby's aided and abetted a breach of fiduciary duty in Accent's purchase of the Da Vinci." The statute of limitations for breach of fiduciary duty claims is three years from the date of injury unless Plaintiff's claim is equitably tolled. That statute of limitations, unlike the statute of limitations for fraud, has no discovery rule. *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL 2307179, at *11 (S.D.N.Y. Mar. 1, 2023).

Third, Plaintiff's proposed charge misstates the elements of equitable estoppel when it asserts that Plaintiff must "show that Sotheby's made an actual misrepresentation or concealed facts it was required to disclose, that Accent relied on Sotheby's misrepresentation, and that caused Accent to delay in filing a lawsuit against Sotheby's." To get the benefit of equitable estoppel, Accent Delight must prove by a preponderance of the evidence that an affirmative misrepresentation or act of concealment by a Defendant prevented Accent Delight from filing suit before the statute of limitations ran, not that it simply delayed Plaintiff in filing suit. *Id.* at *13.

Fourth, Plaintiff's proposed charge also fails to instruct the jury that, in order for equitable estoppel to apply, Plaintiff must also establish that it was diligent in seeking the facts underlying its claim. Equitable estoppel does not extend a limitations period where a plaintiff, if diligent, could have timely filed its claim. *Id*.

Fifth, Plaintiff's proposed charge fails to identify for the jury the relevant date (May 3, 2016) by which Plaintiff was required to have filed its claims. The jury cannot assess whether any misrepresentation or concealment by a Defendant caused Plaintiff to miss that deadline, or whether Plaintiff through diligence could have sought out the facts underlying its claims, unless it is instructed by what date Plaintiff needed to file its claim. The standard is not whether Plaintiff learned of its claims in November 2016 (as Plaintiff claims); the standard is whether Plaintiff was prevented from filing suit before May 3, 2016 because of a misrepresentation or concealment by a Defendant.

Sixth, Plaintiff's proposed charge fails to instruct the jury that the misrepresentation or concealment that Plaintiff claims misled it into not filing suit on time cannot be the same misrepresentation or concealment that is a basis for Accent Delight's underlying claim for aiding and abetting a breach of fiduciary duty. Plaintiff's omission of this requirement misleadingly suggests that Defendants' alleged conduct in aiding-and-abetting an alleged breach of fiduciary duty could support a finding that equitable estoppel applies.

Seventh, Plaintiff's proposed charge improperly summarizes Plaintiff's allegations with respect to this charge in the manner of a quasi-closing statement.

**Instruction No. 8.**          **Compensatory Damages (Plaintiff's Proposal)**

If you decide that Accent sustained harm as a result of either Sotheby's aiding and abetting fraud or as a result of Sotheby's aiding and abetting a breach of fiduciary duty, you must next determine the damages that Accent sustained.

Accent has two claims related to the purchase of the Da Vinci: aiding and abetting fraud and aiding and abetting breach of fiduciary duty. The fiduciary duty claim has a different calculation for damages than the fraud claim.

Fraud calculation: For Accent's claim of aiding and abetting fraud, you will determine the amount of actual monetary loss that Accent sustained in connection with each of five transactions. For Accent's purchase of Magritte's *The Domain of Arnheim*, the purchase of Klimt's *Water Serpents II*, the purchase of Modigliani's *Head*, and the purchase of Da Vinci's *Salvator Mundi*, damages consist of: (1) the amount of the markup secretly added by Bouvier to the price, plus (2) the amount of the commission paid by Accent to Bouvier on the markup only. For the auction of Modigliani's *Head*, the amount of Accent's damages consists of the amount that Bouvier made from the auction and did not give to Accent.

Breach of fiduciary duty calculation: For Accent's breach of fiduciary duty claim, damages consist of: (1) the amount of the markup secretly added by Bouvier to the price, plus (2) the amount of the commission paid by Accent to Bouvier, plus (3) the amount of the commission received by Sotheby's.

If you do not award damages to Accent for Sotheby's aiding and abetting fraud on the Da Vinci, you may still choose to award damages to Accent for Sotheby's aiding and abetting breach of fiduciary duty on the Da Vinci and you will do that using this breach of fiduciary duty calculation.

Similarly, if you do not award damages to Accent for Sotheby's aiding and abetting breach of fiduciary duty on the Da Vinci, you may still choose to award damages to Accent for Sotheby's aiding and abetting fraud on the Da Vinci and you will do that using the fraud calculation.

If you find in favor of Accent on both of its claims regarding Da Vinci's *Salvator Mundi*, you must calculate the damages for each claim separately. The Court will award the higher of the two damage awards as the compensatory damages for Accent Delight's purchase of Da Vinci's *Salvator Mundi*.

**Authorities:** N.Y. Pattern Jury Instr. Civil § 3:20; *Reno v. Bull*, 226 N.Y. 546, 553 (1919); *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007); *Hanlon v. Macfadden Publications*, 302 N.Y. 502, 511 (1951) (quoting Restatement (First) of Torts § 549(a)); *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 202-203 (2d Cir. 2003) (citing *Murray v. Beard*, 102 N.Y. 505, 508 (2d Cir. 1886)); *Lamdin v. Broadway Surface Advert. Corp.*, 272 N.Y. 133, 138 (1936); *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241

(2d Cir. 2020); *Westwood Chem. Co. v. Kulick*, 570 F. Supp. 1032, 1038 (S.D.N.Y. 1983); *Interpool Ltd. v. Patterson*, 874 F. Supp. 616, 620 (S.D.N.Y. 1995).

**Instruction No. 8.**        **Compensatory Damages (Defendants' Proposal)**

My charges to you on the law of damages must not be taken as a suggestion that you should find for Accent Delight.  It is for you to decide on the evidence presented and the rules of law I have given you whether Accent Delight is entitled to recover from Defendants.  If you decide that Accent Delight is not entitled to recover from Defendants, you need not consider damages.  If you decide that Accent Delight is entitled to recover, you will consider the measure of damages.

Authority:  N.Y. Pattern Jury Instr.--Civil 2:277.

If you find that Accent Delight is entitled to recover from Defendants on any of its aiding-and-abetting fraud claims, you must render a verdict in a sum of money that will justly and fairly compensate Accent Delight for all losses resulting from the injuries it sustained as a result of Defendants' actions.

Accent Delight is required to show that it incurred "out of pocket" damages in connection with its aiding and abetting fraud claims.  To establish out of pocket damages, Accent Delight must prove two things.  First, Accent Delight must prove the actual value of the consideration it received, meaning that in instances where it received an artwork it must prove the actual value of the artwork it received, and in instances where it received services it must prove the actual value of the services it received.  Second, Accent Delight must prove that Yves Bouvier's fraud caused Accent Delight to agree to deliver consideration that was greater than the value of the received consideration.  If Accent Delight fails to establish both the value of the artwork or services it received and that Accent Delight paid an amount to Yves Bouvier that exceeded the value of what Accent Delight received, you may not award Accent Delight damages on its aiding and abetting fraud claims.

If you determine that Accent Delight has established that it incurred "out of pocket" damages, you should calculate its damages based on the difference between the value of the consideration Accent Delight gave Yves Bouvier and the value of the consideration Accent Delight received in return.  Accordingly, in determining the amount of damages Accent Delight sustained on its aiding and abetting fraud claims, you should consider only the difference between (1) the actual amount that Accent Delight spent in reliance on Yves Bouvier's false statement or statements and (2) the value of any artwork or services Accent Delight received in return.  You should not consider any lost profits or other amounts that Accent Delight did not receive because Yves Bouvier's statements were false.

Authority:  N.Y. Pattern Jury Instr.--Civil 3:20; *Kumiva Grp., LLC v. Garda USA Inc.*, 146 A.D.3d 504, 506–08 (N.Y. App. Div. 2017); *Danco Enterprises, LLC v. LiveXLive Media, Inc.*, 209 A.D.3d 428, 429 (N.Y. App. Div. 2022); *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996); *Continental Cas. Co. v. Pricewaterhouse Coopers, LLP*, 15 N.Y.3d 264, 271 (2010); *Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG) (HBP), 2016 WL 5417880, at *7–9 (S.D.N.Y. July 21, 2016), *report and recommendation adopted*, No. 12 Civ. 2313 (PGG) (HBP), 2016 WL 5468298 (S.D.N.Y. Sept. 28, 2016).

For its claim of aiding and abetting breach of fiduciary duty regarding Da Vinci's *Salvator Mundi*, Accent Delight's damages consist of (1) the difference between Accent Delight's purchase price and Yves Bouvier's purchase price, plus (2) the amount of the fees paid by Accent Delight to Yves Bouvier on the difference between the two purchase prices.

Should you find in favor of Accent Delight on both of its claims regarding Da Vinci's *Salvator Mundi*, you must calculate the damages for each claim separately. The Court will award the higher of the two damage awards as the compensatory damages for Accent Delight's purchase of Da Vinci's *Salvator Mundi*.

<u>Authority</u>: N.Y. Pattern Jury Instr.--Civil 3:59.

In calculating the damages for the aiding and abetting fraud claims and the aiding and abetting breach of fiduciary duty claim, you should use the currency in which the transaction occurred. In other words, if you find Defendants liable for the sale of Modigliani's *Tête*, you should calculate the damages in Euros. For the other transactions, if you find Defendants liable, you should calculate the damages in U.S. Dollars.

<u>Authority</u>: N.Y. Judiciary Law § 27(b); *Ladas Foods S.A. v. Castella Imports, Inc.*, No. 20CV00570JMAAYS, 2021 WL 619742, at *1 (E.D.N.Y. Jan. 5, 2021); *Ramgoolie v. Ramgoolie*, No. 16CV03345VECSN, 2021 WL 8013769, at *7 (S.D.N.Y. Nov. 24, 2021), *report and recommendation adopted*, No. 16CV3345VECSN, 2022 WL 669868 (S.D.N.Y. Mar. 4, 2022).

**<u>Plaintiff's Statement in Support of Its Proposed Charge No. 8:</u>**

The Court should adopt Plaintiff's proposed Charge No. 8. As outlined Plaintiff's statement of damages in the joint pretrial order and its motion in limine, compensatory damages for the fraud consist of Plaintiff's out of pocket loss (the difference between what Plaintiff paid and what Bouvier paid for the artwork, as well as the commission paid by Plaintiff to Bouvier on the markup only). On breach of fiduciary duty, compensatory damages consist of Bouvier's secret markup, the entirety of Bouvier's compensation (i.e., commission), and the entirety of Sotheby's compensation (i.e., commission).

The Court should reject Defendants' proposed Charge No. 7. With respect to damages for fraud, much of Defendants' instruction has no basis in the caselaw cited or the facts of this action. First, there is no basis to instruct the jury to assess the "actual value of the services [Plaintiff] received," since the compensatory damages arise from the purchase and auction of artwork, not services. Second, Defendants go beyond the New York pattern jury instruction describing the out-of-pocket loss rule for fraud claims. *See* N.Y. Pattern Jury Instr.--Civil 3:20. References to "consideration given" and "consideration received" does not follow the plain English of the pattern jury instruction and will confuse the jury. On the damages for breach of fiduciary duty, Defendants are wrong to limit Plaintiff's recovery to only "the amount of the fees paid by Accent Delight to Yves Bouvier on the difference between the two purchase prices." Plaintiff is entitled to recover all of the compensation paid to its faithless servant, not just the compensation paid on the secret markup. *See Lamdin v. Broadway Surface Advert. Corp.*, 272 N.Y. 133, 138 (1936). Finally, although the *Tête* sale and commission were in Euros, for purposes of a judgment, they should be converted into U.S. dollars at the rate of exchange prevailing on the date the underlying tort was committed. *Hoppe vv. Russo-Asiatic Bank,* 235 N.Y. 37, 39 (1923); *Vishipco Line v. Chase Manhattan Bank,* 660 F.2. 854, 867 n. 7 (2d Cir. 1981).

**<u>Defendants' Objections to Plaintiff's Proposed Charge No. 8:</u>**

Defendants object to Plaintiff's Proposed Charge No. 8 as inappropriate, inaccurate, and unduly prejudicial to Defendants.  Defendants respectfully request that the Court accept their alternative Proposed Charge No. 8 above.

First, Plaintiff's proposed charge does not clarify that the Court is not, by virtue of the damages instruction, suggesting that the jury should find in Plaintiff's favor on liability.

Second, Plaintiff's proposed charge wholly omits that the applicable measure of damages for Plaintiff's fraud claims is "out of pocket" damages and does not instruct the jury as to how to assess such damages.  The proposed instruction incorrectly suggests to the jury that its role is nothing more than to act as a calculator.  It is the province of the jury to determine what amount will compensate Plaintiff in the event it succeeds on its claims, and to do so the jury must be instructed on the standard that applies to the determination of damages.  Plaintiff's instruction equates "out of pocket" damages with the markup Bouvier charged Plaintiff, ignoring that it is Plaintiff's burden to prove the value of the consideration it paid and the value of the consideration it received in each of its transactions with Bouvier.  Defendants' objections to Plaintiff's instruction are set out more fully in their motion *in limine* on compensatory damages.

Third, Plaintiff's proposed charge uses language that is biased to Plaintiff when it describes the difference between what Bouvier paid and what Plaintiff paid as "secret markups."

**Instruction No. 9.**         <u>**Punitive Damages (Plaintiff's Proposal)**</u>

If you find that Defendants Sotheby's acted willfully or wantonly in aiding and abetting Bouvier in a fraud or breach of fiduciary duty, then you may award an amount of damages that you agree is proper beyond the actual amount of damages sustained by Accent. The purpose of punitive damages is not to compensate Accent, but rather to punish Sotheby's, and to deter Sotheby's and others from aiding and abetting such acts in the future.

An act is willfully done if done voluntarily and intentionally and with the specific intent to commit such an act.

An act is wantonly done if done in careless disregard of, or indifference to, the rights of the injured party.

**Authority:** 3 Fed. Jury Prac. & Instr. § 129:40 (6th ed.).

**Instruction No. 9.**          **<u>Punitive Damages (Defendants' Proposal)</u>**

If you decide to not award compensatory damages to Accent Delight on either their claims of aiding and abetting fraud or their claim of aiding and abetting a breach of fiduciary duty, then you should not proceed any further.  If you award damages to compensate Accent Delight for injuries, you may, but you are not required to, also award Accent Delight punitive damages if you find that they are warranted.  Punitive damages may be awarded only for conduct that represents a high degree of immorality and shows such wanton dishonesty as to imply a criminal indifference to civil obligations.  If you have awarded compensatory damages, it should be presumed that Accent Delight has been made whole by compensatory damages, so punitive damages should be awarded only if you deem Defendants' culpability to be so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

To determine whether to award punitive damages, you should consider whether:  the harm caused was physical as opposed to economic; the conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct was financially vulnerable; the conduct involved repeated actions of a similar type or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.  If you find that one or more of these factors weighs in favor of Accent Delight, you may, but need not, award punitive damages.  The absence of all of these factors weighs heavily against an award of punitive damages.

<u>Authority</u>:  N.Y. Pattern Jury Instr.--Civil 2:278; *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

**<u>Plaintiff's Statement in Support of Its Proposed Charge No. 9:</u>**

The Court should adopt Plaintiff's proposed Charge No. 9 as it draws from the pattern instruction. 3 Fed. Jury Prac. & Instr. § 129:40 (6th ed.).

The Court should reject Defendants' proposed Charge No. 9. Defendants have altered the New York pattern instruction to remove the twin purposes of punitive damages. *See* N.Y. Pattern Jury Instr.--Civil 2:278 ("The purpose of punitive damages is not to compensate the plaintiff but to punish the defendant for (wanton and reckless, malicious) acts and thereby to discourage the defendant and other (people, companies) from acting in a similar way in the future"); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492–93 (2008).

**<u>Defendants' Objections to Plaintiff's Proposed Charge No. 9:</u>**

Defendants object to Plaintiff's Proposed Charge No. 9 as inappropriate, inaccurate, and unduly prejudicial to Defendants. Defendants respectfully request that the Court accept their alternative Proposed Charge No. 9 above.

First, the proposed charge does not instruct that punitive damages are only available in the event that the jury also awards compensatory damages. If the jury does not award compensatory damages, it cannot award punitive damages. N.Y. Pattern Jury Instr.--Civil 2:278.

Second, the charge misleadingly states that "willful" conduct alone is sufficient to merit punitive damages. The law requires conduct representing "a high degree of immorality." *Id*. The Supreme Court has laid out the factors to be considered in awarding punitive damages, which show the high bar required for awarding such damages. *State Farm Mut. Co. Auto. Ins. v. Campbell*, 538 U.S. 408, 419 (2003). Plaintiff's proposed charge does not instruct the jury as to those factors.

**Instruction No. 10.**          **Adverse Inference (Plaintiff's Proposal)**

A witness has the right to refuse to answer questions on the basis that the testimony may be self-incriminating. This is called a privilege. Yves Bouvier invoked this privilege during his testimony and did not answer certain questions asked of him. He could have waived the privilege and answered the questions, but he did not. You may, but are not required to, conclude that had Bouvier answered the questions, he would have admitted the evidence against him on the issues of fraud or breach of fiduciary duty, or he would not have supported Sotheby's position on these issues. Additionally, you may, but are not required to, draw the strongest inference against Sotheby's on these issues that the evidence permits.

**Authority:** N.Y. Pattern Jury Instr.--Civil 1:76; 3 Fed. Jury Prac. & Instr. § 104:28 (6th ed.); *LiButti v. United States,* 107 F.3d 110, 121 (2d Cir. 1997); *John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F. Supp. 2d 462, 471 (S.D.N.Y. 2000).

**Instruction No. 10.**        **<u>Invocation by Yves Bouvier of Right Not to Answer
(Defendants' Proposal)</u>**

You have heard Yves Bouvier decline to answer certain questions on the grounds that Accent Delight is pursuing claims against him in Switzerland and/or that Yves Bouvier believed the questions were not relevant to Accent Delight's claims against Defendants.  Bouvier invoked his right to refuse to answer questions under Article 166 of the Swiss Civil Procedure Code.  Article 166 allows a witness who is not a party to a proceeding to refuse to cooperate in establishing facts that could expose him to liability.  For the particular questions Yves Bouvier chose not to answer, and only for those particular questions, you are permitted, but not required, to draw the inference that the withheld information would have been unfavorable to Yves Bouvier.  You may not, however, draw the inference that the withheld information would have been unfavorable to Defendants.  For the questions Yves Bouvier did answer, you may not draw an inference that he withheld any information that would have been unfavorable to him simply because he refused to answer some other question.

<u>Authority</u>:  4 Modern Federal Jury Instructions-Civil P 75.01; *LiButti v. United States*, 107 F.3d 110, 123–24 (2d Cir. 1997); *S.E.C. v. McGinn, Smith & Co.*, 752 F. Supp. 2d 194, 209, 211–12 (N.D.N.Y.), *order vacated in other part on reconsideration sub nom. S.E.C. v. Wojeski*, 752 F. Supp. 2d 220 (N.D.N.Y. 2010); *Willingham v. Cty. of Albany*, 593 F. Supp. 2d 446, 453 (N.D.N.Y. 2006).

**Plaintiff's Statement in Support of Its Proposed Charge No. 10:**

The Court should adopt Plaintiff's proposed Charge No. 10 because it establishes that an adverse inference may be drawn against Defendants from Bouvier's refusal to answer certain questions. An adverse inference is appropriate here because Bouvier and Defendants acted together to commit the fraud and breach of fiduciary duty, possessed a close business relationship, and share a common interest in the preventing a finding of liability on the aiding and abetting claims and the underlying torts (as evidenced by a common interest agreement between Bouvier and Defendants). *See LiButti v. United States,* 107 F.3d 110, 123-124 (2d Cir. 1997); *John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 106 F. Supp. 2d 462, 471 (S.D.N.Y. 2000).

The Court should reject Defendants' proposed Charge No. 10 because it precludes an adverse inference from being drawn against Defendants. Defendants cite *Willingham v. Cty. of Albany*, 593 F. Supp. 2d 446, 453 (N.D.N.Y. 2006), but in fact that court drew an adverse inference from one party's invocation of the Fifth Amendment privilege against other parties whose interests were intertwined with invoking party. The court declined to draw an adverse inference a party whose interests were not aligned in any significant way with the invoking party, unlike Bouvier and Sotheby's. *S.E.C. v. McGinn, Smith & Co.*, 752 F. Supp. 2d 194, 209, 211–12 (N.D.N.Y.) also supports Plaintiff's position as the court permitted adverse inferences to be drawn against two defendants based on another defendant's invocation of the privilege.

**Defendants' Objections to Plaintiff's Proposed Charge No. 10:**

Defendants object to Plaintiff's Proposed Charge No. 10 as inappropriate, inaccurate, and unduly prejudicial to Defendants. Defendants respectfully request that the Court accept their alternative Proposed Charge No. 10 above.

Defendants have pending a motion *in limine* seeking to exclude the portions of Bouvier's deposition testimony in which he invoked his right not to answer questions under Swiss law. If the Court grants that motion, this charge is not necessary. In the alternative, the motion proposes the specific inference that should be drawn from Bouvier's failure to answer each question and sets forth why the inference should be drawn only against Bouvier and not against Defendants.

Plaintiff's proposed charge is also incorrect because Bouvier, a Swiss citizen who testified at a Swiss tribunal, invoked his right under Article 166 of the Swiss Civil Procedure Code, which allows a witness to refuse to answer questions not only on the basis that the testimony may be "self-incriminating," but also because the answer might expose the witness or a close associate to civil liability. Plaintiff's charge misleadingly implies that Bouvier's answers would have exposed him to criminal liability, when in fact Bouvier invoked the privilege partly based on potential civil exposure to Plaintiff. Moreover, Bouvier's refusal to answer does not mean that he would have "admitted the evidence against him on the issues of fraud or breach of fiduciary duty," had he answered. The charge also unfairly allows the jury to draw an inference (in fact, "the strongest inference") against Defendants from Bouvier's invocation, even though it was Bouvier, and not Defendants, who invoked the privilege, and without specifying the specific factual matters as to which any such inference should be drawn.

Should the Court include any instruction on this topic, Defendants request that the Court adopt Defendants' Proposed Instruction No. 10, which correctly cites the privilege as it applies under Swiss law and does not allow for an inference to be drawn against Defendants.

**Instruction No. 11.**   <u>**Limiting Instruction:  Evidence Regarding Valuations Provided by Defendants [Proposed by Defendants only if their *motion in limine* on this issue is not successful]**</u>

You have heard evidence regarding insurance valuations issued by Defendants' U.K. subsidiary, Sotheby's UK, at the request of Yves Bouvier regarding [insert artworks].  You may only consider these valuations in determining whether Defendants had knowledge of Yves Bouvier's alleged fraud or breach of fiduciary duty at the time the valuations were issued.  The valuations are not evidence of any knowledge Defendants did or did not have prior to the date the valuations were issued.

<u>Authority</u>:  *Accent Delight Int'l Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2023 WL 2307179, at *49 n.13, 52 (S.D.N.Y. Mar. 1, 2023).

<u>**Plaintiff's Objections to Defendants' Proposed Charge No. 11:**</u>

The Court should reject Defendants' instruction. It does not make sense: it instructs the jury BOTH 1) to consider the valuations as evidence of Defendants' knowledge "at the time the valuations were issued," but also 2) NOT to consider the valuations as "evidence of any knowledge did or did not have prior to the date the valuations were issued." That is internally inconsistent and will confuse the jury. Plaintiff anticipates further objections to this instruction after reviewing Defendants' forecasted motion.