UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ACCENT DELIGHT INTERNATIONAL LTD.,

               Plaintiff,

    *-against-*

SOTHEBY'S and SOTHEBY'S INC.,

               Defendants.

Case No. 18-cv-9011(JMF)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OMNIBUS MOTION IN LIMINE

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiff*

<u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>

WHY THE MOTION SHOULD BE GRANTED ........................................................................1

I.     MOST ELEMENTS OF FRAUD AND BREACH OF FIDUCIARY DUTY
ARE ESTABLISHED AND NEED NOT BE DECIDED BY THE JURY ..............1

II.    THE "PRIVILEGED DOCUMENTS" SIDE-SHOW HAS NO PLACE
IN THIS TRIAL.............................................................................................................3

    A.    The Court Expressed Skepticism about the Privileged Documents..............3

    B.    Sotheby's Should Not Be Allowed to Prejudice Plaintiff with Baseless
Speculation About Its Acquisition of the Privileged Documents ................5

    C.    Sotheby's Cannot Use the Privilege as a Sword and a Shield ......................6

III.   THE COURT SHOULD PRECLUDE SOTHEBY'S FROM USING
PRIVILEGE AS BOTH A SWORD AND A SHIELD RELATING TO JANE
LEVINE'S TESTIMONY ...........................................................................................7

IV.   THE COURT SHOULD PRECLUDE DEFENSE COUNSEL FROM USING
THEIR OWN CREDIBILITY OR PROFESSIONAL EXPERIENCE
TO BOLSTER THE CREDIBILITY OF DEFENSE WITNESSES OR
EVIDENCE..................................................................................................................10

V.    THE COURT SHOULD PRECLUDE SOTHEBY'S USE OF LATE-
DISCLOSED DOCUMENTS AND TESTIMONY ABOUT NON-WORK
TRANSACTIONS .......................................................................................................11

VI.   THE COURT SHOULD PRECLUDE DEFENDANTS' LATE-DISCLOSED
WITNESSES FROM TESTIFYING .........................................................................15

VII.  IRRELEVANT AND PREJUDICIAL DETAILS ABOUT DMITRY
RYBOLOVLEV SHOULD BE PRECLUDED..........................................................16

    A.    Rybolovlev's Source of Wealth and Estate Planning ..................................16

    B.    Rybolovlev's Past Life in Russia .................................................................18

    C.    Sotheby's Should be Barred from Using Slurs .............................................19

    D.    Rybolovlev's Divorce ..................................................................................20

VIII.  EVIDENCE FROM FOREIGN LEGAL PROCEEDINGS IS INADMISSIBLE ....22

A.     The Monaco Court of Appeals Decision is Inadmissible and this Court's Ruling on It Precludes Most of Sotheby's Other Exhibits...............23

B.     Testimony Invoking the Privilege in Foreign Proceedings is Inadmissible ...........................................................................................24

C.     Sotheby's Excerpts from Foreign Cases Should Also Be Precluded............25

IX.     "RESALE" EVIDENCE SHOULD BE EXCLUDED ...............................................25

A.     Resale Evidence Is Irrelevant to Compensatory Damages ...........................26

       1.     Fraud Damages Are "Out-of-Pocket" Damages ...............................26

       2.     Aiding and Abetting Breach of Fiduciary Duty................................28

B.     Resale Evidence Includes Sales and Information Beyond Works at Issue .........................................................................................................30

C.     Resale Evidence Contains Speculative and Irrelevant Remarks on Value that Risk Confusing the Jury ..............................................................31

CONCLUSION.......................................................................................................................31

<u>TABLE OF AUTHORITIES</u>

<u>PAGE NO.</u>

**Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
   692 F.3d 34 (2d Cir. 2012) ........................................................... 28

*AmTrust N. Am., Inc. v. KF&B, Inc.*,
   No. 17-CV-5340, 2020 WL 5513458 (S.D.N.Y. Sept. 14, 2020) ............................. 2

*Arlio v. Lively*,
   474 F.3d 46 (2d Cir. 2007) ..................................................... 22, 23, 25

*Byrd v. Janssen Pharm., Inc.*,
   333 F. Supp. 3d 111 (N.D.N.Y. 2018) ...................................................... 11

*Campbell v. City of New York*,
   No. 16-CV-8719, 2021 WL 826899 (S.D.N.Y. Mar. 4, 2021) .................................. 2

*Cmty. Ass'n of the E. Harlem Triangle, Inc. v. Butts*,
   200 A.D.3d 599 (1st Dep't 2021) .................................................... 27, 28

*Coursen v. A.H. Robins Co.*,
   764 F.2d 1329 (9th Cir. 1985) ....................................................... 24

*Coursen v. A.H. Robins Co.*,
   773 F.2d 1049 (9th Cir. 1985) ....................................................... 24

*Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*,
   No. 12-CV-05803, 2013 WL 978980 (S.D.N.Y. Mar. 12, 2013) ............................. 28

*D'Iorio v. Winebow, Inc.*,
   68 F. Supp. 3d 334 (E.D.N.Y. 2014) ...................................................... 2

*Diamond v. Oreamuno*,
   24 N.Y.2d 494 (1969) ............................................................... 30

*Downey v. Adloox Inc.*,
   No. 16-CV-1689 (JMF), 2018 WL 794592 (S.D.N.Y. Feb. 8, 2018) ..................... 13, 15

*Ernst v. HB Aspen, Inc.*,
   No. 07-CV-01070, 2008 WL 11337009 (C.D. Cal. Feb. 4, 2008) ......................... 20

*Est. of Jaquez v. Flores*,
   No. 10-CV-2881, 2016 WL 1060841 (S.D.N.Y. Mar. 17, 2016) ........................... 14

*Eurochem N. Am. Corp. v. Ganske*,
  No. 18-CV-16, 2020 WL 747008 (W.D. Wis. Feb. 14, 2020) ................................................. 19

*Fed. Housing Fin. Agency v. Nomura Hldg. Am., Inc.*,
  68 F. Supp. 3d 499 (S.D.N.Y. 2014) ................................................................................... 1

*Gen. Motors LLC*, No. 14-MD-2543 (JMF), 2015 WL 9480477 (S.D.N.Y. Dec. 29, 2015) ......... 6

*Gilster v. Primebank*,
  747 F.3d 1007 (8th Cir. 2014) ................................................................................... 11

*Ginger Root Off. Assocs., LLC v. Advanced Packaging & Prod. Co.*,
  No. 07-CV-05568, 2009 WL 10672775 (C.D. Cal. Feb. 18, 2009) ........................................ 17

*Grand Jury Proc.*,
  219 F.3d 175 (2d Cir. 2000) .......................................................................................... 6

*Grand Jury Proceedings*,
  219 F.3d 175 (2d Cir. 2000) .......................................................................................... 8

*Hanlon v. Macfadden Publications*,
  302 N.Y. 502 (1951) ................................................................................................... 26

*Hart v. RCI Hosp. Holdings, Inc.*,
  90 F. Supp. 3d 250 (S.D.N.Y. 2015) ............................................................................... 23

*In re Claus von Bulow*,
  828 F.2d 94 (2d Cir. 1987) ............................................................................................ 8

*In re Gen. Motors LLC Ignition Switch Litig.*,
  No. 14-MD-2543 (JMF), 2017 WL 2880882 (S.D.N.Y. July 5, 2017) .................................... 13

*Interpool Ltd. v. Patterson*,
  874 F. Supp. 616 (S.D.N.Y. 1995) ................................................................................. 29

*John Doe Co. v. United States*,
  350 F.3d 299 (2d Cir. 2003) ........................................................................................... 7

*Kinetic Concepts, Inc. v. Bluesky Med. Corp.*,
  No. SA-03-CA-0832, 2006 WL 6505348 (W.D. Tex. May 31, 2006) ..................................... 17

*Kinsey v. Cendant Corp.*,
  588 F. Supp. 2d 516 (S.D.N.Y. 2008) ................................................................... 17, 18, 30

*L–3 Commc'ns Corp. v. OSI Sys., Inc.*,
  No. 02-CV-9144, 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006) ............................................. 30

*Lamdin v. Broadway Surface Advert. Corp.*,
  272 N.Y. 133 (1936) ................................................................................................... 29

*Levick v. Maimonides Med. Ctr.*,
   No. 08-CV-03814, 2011 WL 1673782 (E.D.N.Y. May 3, 2011 ............................................ 20

*Linde v. Arab Bank, PLC*,
   No. 04-CV-2799, 2013 WL 4516778 (E.D.N.Y. Aug. 23, 2013)............................................ 19

*Loreley Fin. v. Wells Fargo Sec.*,
   13 F.4th 247 (2d Cir. 2021) ................................................................................................... 2

*Lujan v. Cabana Mgmt., Inc.*,
   284 F.R.D. 50 (E.D.N.Y. 2012) ........................................................................................... 16

*Marcoux v. Farm Serv. & Supplies, Inc.*,
   290 F. Supp. 2d 457 (S.D.N.Y. 2003)................................................................................... 10

*McBeth v. Porges*,
   No. 15-CV-2742 (JMF), 2018 WL 5997918 (S.D.N.Y. Nov. 15, 2018)................................ 18

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007).................................................................................................. 27

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017)................................................................................... 25

*Pappas v. Middle Earth Condo. Ass'n*,
   963 F.2d 534 (2d Cir. 1992) .................................................................................................. 11

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006).............................................................................................. 13, 15

*People of State of N.Y. v. Sotheby's, Inc.*,
   No. 452192/2020 (Sup. Ct. N.Y. Cnty.) ............................................................................... 19

*Plaza Hotel Assocs. v. Wellington Assocs.*,
   37 N.Y.2d 273 (1975) ........................................................................................................... 28

*Radecki v. Dahl*,
   No. 20-CV-814, 2023 WL 4231017 (W.D. Wis. June 28, 2023) ........................................... 17

*Regeneron Pharms., Inc. v. Merus B.V.*,
   144 F. Supp. 3d 530 (S.D.N.Y. 2015)................................................................................. 8, 9

*Regeneron Pharms., Inc. v. Merus N.V.*,
   864 F.3d 1343 (Fed. Cir. 2017).............................................................................................. 8

*Reno v. Bull*,
   226 N.Y. 546 (1919) ............................................................................................................. 26

*Schulhof v. Jacobs*,
 54 N.Y.S.3d 613 (Sup. Ct. N.Y. Cnty. Feb. 27, 2017) ................................. 26, 28, 29

*Schulhof v. Jacobs*,
 70 N.Y.S.3d 462 (1st Dep't 2018) ............................................................... 26

*Shady Hills Energy Ctr., LLC v. Seminole Elec. Coop., Inc.*,
 No. 8:20-CV-81, 2023 WL 1768348 (M.D. Fla. Feb. 3, 2023) ............................ 20

*Sowers v. R.J. Reynolds Tobacco Co.*,
 975 F.3d 1112 (11th Cir. 2020) ................................................................. 20

*Stephens v. Rheem Mfg. Co.*,
 220 F.3d 882 (8th Cir. 2000) ................................................................... 21

*Texas Instruments Inc. v. Powerchip Semiconductor Corp.*,
 No. 06-CV-2305, 2007 WL 1541010 (S.D.N.Y. May 24, 2007) ......................... 13

*U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*,
 112 F. Supp. 3d 122 (S.D.N.Y. 2015) ........................................................... 1

*United States v. Blizerian*,
 926 F.2d 1285 (2d Cir. 1991) ...................................................................... 6

*United States v. Massino*,
 546 F.3d 123 (2d Cir. 2008) ........................................................................ 1

*United States v. Nobles*,
 422 U.S. 225 (1975) .................................................................................. 7

*United States v. Ranochak*,
 No. 2:17-CR-73, 2022 WL 4298568 (N.D. Ind. Sept. 19, 2022) ......................... 11

*United States v. Stahl*,
 616 F.2d 30 (2d Cir. 1980) ......................................................................... 17

*United States v. Taubman*,
 No. 01-CR-429, 2002 WL 548733, ECF No.88 (S.D.N.Y. Apr. 23, 2002) ............ 19

*United States v. Watts*,
 934 F. Supp. 2d 451 (E.D.N.Y. 2013) ........................................................ 20

*W. T. Grant Co. v. Srogi*,
 52 N.Y.2d 496 (1981) .............................................................................. 28

*Watchous Enterprises, LLC v. Pac. Nat'l Cap.*,
 No. 16-CV-1432, 2020 WL 6078170 (D. Kan. Oct. 15, 2020) ............................. 2

vi

*Westwood Chem. Co. v. Kulick*,
    570 F. Supp. 1032 (S.D.N.Y. 1983).........................................................................29

*Yukos Cap. S.A.R.L. v. Feldman*,
    977 F.3d 216 (2d Cir. 2020)............................................................................3, 29

**Statutes**

Fed. R. Civ. P. 37 ..........................................................................................13, 15

Fed. R. Evid. 402 ...................................................................................................1

Fed. R. Evid. 403 ............................................................................................1, 20

**Other Authorities**

N.Y. Pattern Jury Instr. Civil § 3:20 .............................................................26, 27

Plaintiff moves *in limine* to bar Defendants (collectively "Sotheby's") from introducing

inadmissible evidence at trial that is either irrelevant or whose "probative value is substantially

outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 402, 403. In

general, "'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure

the factfinder into rendering its verdict on a ground different from proof specific to the claims

brought." *Fed. Housing Fin. Agency v. Nomura Hldg. Am., Inc.*, 68 F. Supp. 3d 499, 505

(S.D.N.Y. 2014) (quoting *United States v. Massino*, 546 F.3d 123, 133 (2d Cir. 2008)).[1] Unfairly

prejudicial evidence is improperly offered by a party with the intent "to prove some adverse fact

not properly in issue or unfairly excite emotions against the opposing party." *Id.*; *see also U.S.*

*Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 139 (S.D.N.Y. 2015)

(noting that evidence "that a jury would undoubtedly find distasteful" risked leading to a verdict

not based on relevant evidence, "the very sort of prejudice against which Rule 403 guards"). The

Court should grant the motion for the following reasons.

## WHY THE MOTION SHOULD BE GRANTED

## I.    MOST ELEMENTS OF FRAUD AND BREACH OF FIDUCIARY DUTY ARE ESTABLISHED AND NEED NOT BE DECIDED BY THE JURY

The Court should deem established certain elements of Bouvier's underlying fraud and

breach of fiduciary duty. The Court has already recognized the undisputed evidence supporting

these elements, stating it may be appropriate to "treat these elements as 'established' pursuant to

Rule 56(g) of the Federal Rules of Civil Procedure." MSJ Order at 58–59, n. 18–19. Inasmuch as

Sotheby's has refused to stipulate to these elements, Plaintiff moves for such a finding under

Rule 56(g).

---

[1] Unless otherwise noted, all citations in this brief have been "cleaned up."

Courts routinely use Rule 56(g) to "streamline the litigation process by narrowing the triable issues" and "salvage some of the judicial effort involved in the denial of a motion for summary judgment." *D'Iorio v. Winebow, Inc.*, 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014). For example, in *AmTrust N. Am., Inc. v. KF&B, Inc.*, No. 17-CV-5340, 2020 WL 5513458, at *2 (S.D.N.Y. Sept. 14, 2020), the court denied defendants' motion for summary judgment, but found no genuine dispute over certain facts—such as whether defendants provided certain information to plaintiffs and whether defendants breached a contract—and deemed them as established in the case. *See also, e.g.*, *Campbell v. City of New York*, No. 16-CV-8719, 2021 WL 826899, at *8 (S.D.N.Y. Mar. 4, 2021) (finding as established that plaintiffs' overtime compensation rate did not include certain payments, but leaving for trial a determination of the amounts owed as damages); *Watchous Enterprises, LLC v. Pac. Nat'l Cap.*, No. 16-CV-1432, 2020 WL 6078170, at *4 (D. Kan. Oct. 15, 2020) (issuing instruction to jury that it should deem certain facts contained in summary judgment order—including defendants' false statements and omissions—as established pursuant to Rule 56(g)).

Here, except for reasonable reliance, the Court has already concluded that Sotheby's does not dispute, and the record supports, the other elements of fraud: (1) a material misrepresentation or omission of fact (2) made by Bouvier with knowledge of their falsity (3) and intent to defraud (4) that resulted in damage to Plaintiff. MSJ Order at 58 n. 18; *Loreley Fin. v. Wells Fargo Sec.*, 13 F.4th 247, 259 (2d Cir. 2021). On summary judgment, Plaintiff submitted evidence demonstrating (1) material misrepresentations or omission of fact with respect to the works and transactions at issue, *see* Pl.'s 56.1 Stmt., ECF No. 415, ¶¶ 30, 34–35, (2) made by Bouvier with knowledge of their falsity with an intent to defraud, *id.* ¶¶ 30, 34–35, 46, and (3) that resulted in damage to Plaintiff, *id.* ¶¶ 45, 46, 60. While Sotheby's disputed that the facts established an

agency relationship and reasonable reliance, it did not dispute that these facts could establish these four elements of fraud. *See* Def.'s 56.1 Resp., ECF No. 444, ¶¶ 30(a), 34(a), 35(a), 45(a), 46(a), 60(a). For trial, Sotheby's has stipulated that Bouvier made false statements (JPTO at IX(A)), but still refuses to concede these elements of the claim are established.

Except for a fiduciary or agency relationship, the Court concluded that Sotheby's did not dispute, and the record supports, the other elements of breach of fiduciary duty: (1) misconduct by Bouvier, and (2) damages directly caused by that misconduct. *See* MSJ Order at 59 n. 19; *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020). On summary judgment, Plaintiff submitted evidence demonstrating (1) misconduct by Bouvier, *see* Pl.'s 56.1 Stmt., ECF No. 415, ¶¶ 30, 34–35, 46, and (2) damages directly caused by that misconduct. *Id.* ¶¶ 45, 46, 60. Sotheby's did not dispute the facts supporting each of these elements. *See* Def.'s 56.1 Resp., ECF No. 444, ¶¶ 30(a), 34(a), 35(a), 45(a), 46(a), 60(a).

To streamline the trial, the Court should deem these elements of fraud and breach of fiduciary duty established under Fed. R. Civ. P. 56(g).

## II.    THE "PRIVILEGED DOCUMENTS" SIDE-SHOW HAS NO PLACE IN THIS TRIAL

The Court should preclude all evidence concerning the so-called "privileged documents."

### A.    The Court Expressed Skepticism about the Privileged Documents

In August 2019, the Court denied Sotheby's motion for immediate discovery into the privileged documents issue, explaining: "In light of Plaintiff['s] counsel's representations that they have not directly used the documents at issue in this case in any manner, the Court is skeptical that this is the proper forum in which to litigate Sotheby's concerns, however colorable they may be." ECF No. 78.

Sotheby's had sought immediate discovery into Plaintiff's prior foreign counsel's receipt of two Sotheby's documents protected by attorney work product and attorney-client privileges (the "privileged documents."). *See* ECF No. 75. We responded to explain that (1) the documents had never been reviewed or used by us and (2) the documents were inadvertently received by a third party (James Gallon) who was staying at the same London hotel as Sotheby's chief litigation counsel (Marcus Asner), and who forwarded the documents on to an acquaintance, who in turn passed them on to Plaintiff's then-foreign counsel. *See* ECF No. 76.

After the Court rejected Sotheby's demand, Sotheby's obtained discovery and took deposition testimony on this matter from Plaintiff, Plaintiff's prior foreign counsel (Tetiana Bersheda), and Gallon. *See*, *e.g.*, ECF No. 126 (Hague discovery orders for Bersheda and Gallon). To avoid having us see the privileged documents or learn of their contents, all of this discovery (document review, privilege log, meet and confer with Sotheby's, deposition testimony on this topic, etc.) was handled by a separate taint team of lawyers. Kornstein Decl. Ex. 1. To date, Plaintiff's litigation team has not seen the privileged documents or reviewed testimony about them. *Id.*

Dissatisfied with the information it received, Sotheby's moved this Court for additional, far-reaching discovery into the privileged documents. ECF No. 148. We opposed, explaining again that "Plaintiff['s] litigation counsel has not reviewed the Privileged Documents," much less used them in this case, but despite their irrelevance to this case, Plaintiff had nevertheless "agreed to provide discovery into the tailored question of how these documents came to be in Plaintiff['s] possession." ECF No. 150.

The Court ruled against Sotheby's again, finding that "Defendants' requests, as currently framed, are not proportionate to the needs of this case." ECF No. 162. The Court ruled that

Sotheby's was entitled to "some discovery into the relationship, if any, with Mr. Gallon and Plaintiff['s] use, if any, of the allegedly privileged documents" and to have Brian Cattell (Plaintiff's PR agent) as a document custodian. *Id.* Such discovery then continued.

### B.    Sotheby's Should Not Be Allowed to Prejudice Plaintiff with Baseless Speculation About Its Acquisition of the Privileged Documents

Plaintiff's acquisition of the privileged documents is irrelevant to the questions for the jury. But Sotheby's seeks to introduce an email from Plaintiff's foreign counsel to a PR person that attached the privileged documents, DX-142, which are entirely redacted in the proposed trial exhibit, as well as the privilege log prepared by Plaintiff's taint team, DX-148, and its 30(b)(6) deposition notice to Plaintiff which lists the privileged documents as a topic and Plaintiff's 30(b)(6) preparation notes in response to the same, DX-169 at 9 & P0042026-27. Sotheby's has also designated deposition testimony from Plaintiff's 30(b)(6) witness and its prior foreign counsel about the privileged documents.[2] None of this evidence is relevant. None of it should be admitted.

In a similar situation in a different case, this Court precluded the use at trial of "lawyer reports" into "anonymous letters" received by the defendant, because "the effect of the letters on the recipients at [defendant] two months after Plaintiff's accident has limited or no relevance to the issues in this trial . . . In any event, any limited probative value of the letters is substantially outweighed by the dangers of unfair prejudice, wasting time, and juror confusion, as jurors might — even with limiting instructions — treat the unsubstantiated and anonymous allegations in the letters as true and [the defendant] would be entitled to address the contents of the letters and to

---

[2]  Pl. 30(b)(6) Tr. 237:2–237:3, 238:23–238:24, 239:2–239:11, Tr. 240:17–241:4; Bersheda Tr. 521:12–521:14, 565:2–565:14. Plaintiff's litigation counsel has not reviewed this deposition testimony, to avoid learning through it the content of the privileged documents themselves. The taint team which attended and reviewed these portions of the depositions has informed us that they are relevant to the privileged documents, but has not discussed the substance of the transcripts with us. Kornstein Decl. Ex. 1.

prove what it did to investigate them (potentially by introducing the two lawyer reports)." *In re: Gen. Motors LLC*, No. 14-MD-2543 (JMF), 2015 WL 9480477, at *1 (S.D.N.Y. Dec. 29, 2015).

The same is true here. The privileged documents were created years after the fact, by Sotheby's litigation team in this case, and they were never used by us in this case.

Sotheby's only purpose in introducing this issue is to prejudice Plaintiff by suggesting to the jury, without any evidence, that Plaintiff improperly acquired the privileged documents. We are aware of no evidence to support any such speculation. Allowing this issue into the trial would create a sideshow that will at best confuse the jury and at worst prejudice Plaintiff.

### C.    Sotheby's Cannot Use the Privilege as a Sword and a Shield

If Sotheby's is allowed to introduce evidence about the privileged documents, then it must be deemed to have waived the privilege and must produce the unredacted documents to Plaintiff's litigation team so we can review them, examine witnesses about them, and make arguments to the jury about what the documents do or do not establish. DX-142 currently redacts the privileged documents in their entirety.

Sotheby's cannot "use the privilege both as 'a shield and a sword.' In other words, [Sotheby's] cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by [the plaintiff]." *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000).

For example, in *United States v. Blizerian*, the Second Circuit held that the defendant's testimony about the legal advice he received waived the privilege over his attorney-client communications, explaining "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." 926 F.2d 1285, 1292 (2d Cir. 1991). Similarly, in *United States v. Nobles*, the Supreme Court held that, when a party

elicited testimony from its investigator about interviews he had conducted, it waived the work-product privilege over the portions of his report about those interviews. 422 U.S. 225, 239–40 (1975). The Court found the waiver ruling correctly "prevented respondent from presenting to the jury a partial view of the credibility issue by adducing the investigator's testimony and thereafter refusing to disclose the contemporaneous report that might offer further critical insights." *Id.* at 241. "Forfeiture of this type is premised on the *unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *John Doe Co. v. United States*, 350 F.3d 299, 304 (2d Cir. 2003), *as amended* (Nov. 25, 2003).

Here, if Sotheby's is permitted to argue to the jury that Plaintiff's knowledge of the contents of the privileged documents affected Plaintiff's conduct of this case, then it has waived privilege over the documents and they must be produced in unredacted form to Plaintiff's litigation team so that we can "effectively contest or impeach" Sotheby's claim, *John Doe Co.*, 350 F.3d at 303, by reviewing the documents, cross-examining witnesses about them, and disputing Sotheby's arguments about them.

The issue of the "privileged documents" should be precluded from trial.[3]

## III.    THE COURT SHOULD PRECLUDE SOTHEBY'S FROM USING PRIVILEGE AS BOTH A SWORD AND A SHIELD RELATING TO JANE LEVINE'S TESTIMONY

The Court should preclude Sotheby's from introducing at trial testimony from Jane Levine, a lawyer and the former Head of Compliance at Sotheby's, other than relating to events from April 1, 2013 through July 1, 2013—the date range Sotheby's used for her document discovery—and the limited issues Sotheby's allowed her to testify about at her deposition.

---

[3] Specifically, the Court should preclude the following exhibits and testimony, as well as any other similar evidence or argument: DX-142, 148, and 169; Pl. 30(b)(6) Tr. 237:2–237:3, 238:23–238:24, 239:2–239:11, Tr. 240:17–241:4; Bersheda Tr. 521:12–521:14, 565:2–565:14.

Attorney-client and work-product privilege cannot be used as both a sword and a shield. *See supra* Section II.C. This is due to "the essential unfairness in disclosing part, but not all, of an attorney-client communication[.]" *Regeneron Pharms., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 589 (S.D.N.Y. 2015), *aff'd sub nom. Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343 (Fed. Cir. 2017) (citing *In re Claus von Bulow*, 828 F.2d 94, 101, 102–03 (2d Cir. 1987)). Where a party has attempted to use privilege as both a sword and a shield, "the required remedy should be addressed to that particular unfairness." *Id.* (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000)). In *Regeneron*, during discovery, the plaintiff withheld as privileged documents regarding its obligation to disclose prior art to the U.S. Patent office. Plaintiff then attempted to waive privilege over testimony in an affidavit submitted at trial on the same topic. *Id.* The court granted the defendant's motion to preclude the affidavit testimony at trial, holding that "to allow into evidence at trial [testimony] from witnesses to whom [the withheld discovery] relate could only occur—in fairness—if there was a wholesale re-opening of discovery." *Id.* at 594.

Throughout discovery, Sotheby's maintained that Levine's communications, documents, and even knowledge of events relating to this litigation were overwhelmingly protected by attorney client or work product privileges. Sotheby's refused to produce documents from Levine's custody except for the limited date range of April 1, 2013 through July 1, 2013, due to concerns over privilege. Kornstein Decl., Ex. 1 (ESI Protocol) at 12. Then, at her deposition, Levine testified carefully—and counsel for Sotheby's carefully monitored her testimony—to avoid disclosing any information it viewed as privileged. *See, e.g.*, Levine Tr. 34:1–15 ("MR. ASNER: . . . we litigated the issue of Ms. Levine's privilege, and, in fact, with your team we negotiated a relatively limited production of things that we deemed not to be privileged, and you

can ask all the questions you want about that, but you're going into privileged information and you know that."); 22:2–8: ("A. I worked as a lawyer in-house at Sotheby's and I'm not intending in any way to waive the attorney-client privilege and discuss under this deposition communications that I had with my internal clients. So I really prefer to decline to answer that question."). Levine answered questions about meetings that she had in June 2013 with Bouvier and Peretti in Switzerland, but refused to testify about anything else. For example, Levine invoked privilege rather than answer questions about when she first heard the name Bouvier, Tr. 22:15–25, whether she knew that Valette was the assigned KCM for Rybolovlev, *id.* at 48:20–50:3, why she set up the June 2013 meetings with Bouvier and Peretti in the first place, *id.* at 162:4–17, and why her investigation included Rybolovlev, *id.* at 26:1–27:10.

This discovery strategy now limits how Sotheby's can use Levine at trial: "In maintaining its assertion of privilege on [all other] topics, [Sotheby's] used the protections of the Federal Rules of Civil Procedure to shield [Levine's] documents [and testimony] relating to those topics from disclosure." *Regeneron*, 144 F. Supp. 3d at 593. "This was a choice that was within [Sotheby's] discretion—but not a choice that allows them to have it both ways at trial." *Id.* "By making the choice to maintain the privilege and withhold the documents" and testimony, Sotheby's "chose the tactical path" of shielding anything harmful to Defendants' case that Levine may have known in discovery. *Id.*

In violation of this rule, Sotheby's now seeks to have Levine testify at trial about a broad range of topics outside the limited issues it allowed in discovery. *See* JPTO at 26. For example, Sotheby's seeks to have Levine testify about "Sotheby's interactions Plaintiff's/Xitrans Finance Ltd.'s counsel Tetiana Bersheda <u>in 2015</u> following Plaintiff's/Xitrans Finance Ltd.'s filing of claims against Yves Bouvier" and "the provenance and authentication of Sotheby's Privileged

Documents"—an issue that is well outside the April to June 2013 date range Sotheby's imposed in discovery (and which is also inadmissible on other grounds, *see supra* Section II). Sotheby's also intends to have Levine testify about "her lack of any knowledge about any representations or misrepresentations Yves Bouvier made to Dmitry Rybolovlev or his affiliates," even though Sotheby's invoked the privilege and refused to allow her to testify about why she investigated Bouvier in 2013, Levine Tr. 26:1–10, 152:10–25, or why that investigation included Rybolovlev, *id.* 26:12–27:10. Sotheby's also seeks to have Levine testify about "Sotheby's policies, practices, and efforts to comply with all applicable laws," a broad topic that necessarily implicates issues outside the narrow April to June 2013 date range and which again conflicts with the privilege assertions Sotheby's repeatedly made throughout her deposition, *see e.g.*, *id.* 26:17–28:9, 39:23–42:24, 134:13–136:13, 156:9–162:17.

The Court should not allow Defendants to use as a sword anything it deems helpful that Levine may have known and hide everything else behind the shield of privilege. All these topics should be precluded. Levine can testify only about what Sotheby's allowed in discovery: events in April–June 2013 and, consistent with her deposition, only about what was said during her meetings with Bouvier and Peretti in that time.

## IV.    THE COURT SHOULD PRECLUDE DEFENSE COUNSEL FROM USING THEIR OWN CREDIBILITY OR PROFESSIONAL EXPERIENCE TO BOLSTER THE CREDIBILITY OF DEFENSE WITNESSES OR EVIDENCE

The Court should preclude counsel for Sotheby's from misusing argument to improperly bolster the credibility of their witnesses by referring to their own experience or opinions or other facts not in evidence. "[I]t is improper for attorneys to place their own credibility in issue or vouch for their clients or witnesses." *Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 467 (S.D.N.Y. 2003) (collecting cases). This includes where "the attorney refers to [their] personal opinions regarding the evidence in the case, the truthfulness of the witnesses or the

liability of a party[.]" *Byrd v. Janssen Pharm., Inc.*, 333 F. Supp. 3d 111, 132–33 (N.D.N.Y. 2018). Attorney bolstering is grounds for a new trial because "the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict[.]" *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992).

Specifically, the Court should preclude defense counsel from "referring to their experience as former prosecutors to bolster the testimony of their witnesses." *United States v. Ranochak*, No. 2:17-CR-73, 2022 WL 4298568, at *2 (N.D. Ind. Sept. 19, 2022).

The Court should also preclude defense counsel from describing their participation in, opinions of, and conclusions about a pre-litigation, internal investigation they conducted for Sotheby's, and their representation of Defendants in a federal criminal investigation into Sotheby's dealings with Bouvier. Counsel's involvement in these matters—and, importantly, their opinions of witness or evidence that defense counsel developed during them—cannot be allowed to prejudice the jury's role as factfinder at trial. So, for example, Sotheby's lawyers cannot tell the jury their opinions about their witnesses' demeanor or credibility during their internal investigation or FBI interviews, or seek to improperly sway the jury by telling them that their internal investigation found no wrongdoing or that they convinced the federal authorities not to bring charges. "[C]ounsel's recounting of [their] personal experience—facts that were not in evidence—[would be] aimed at enhancing [their] client[s'] credibility." *Gilster v. Primebank*, 747 F.3d 1007, 1011 (8th Cir. 2014). A jury instruction that such argument is not evidence is not sufficient to cure the prejudice. *Id.* at 1012.

## V.    THE COURT SHOULD PRECLUDE SOTHEBY'S USE OF LATE-DISCLOSED DOCUMENTS AND TESTIMONY ABOUT NON-WORK TRANSACTIONS

The Court should preclude Sotheby's from introducing into evidence, offering testimony about, or otherwise using DX-593 through DX-597, which are cherry-picked, untimely

documents not concerning the artworks Bouvier obtained on Plaintiff's behalf, as well as DX-678, which is a set of never-before-produced photographs labeled as Samuel Valette's. The Court should also preclude Sotheby's witnesses from testifying about any non-Work transactions or valuations, because Sotheby's denied Plaintiff discovery into those topics.

On June 14, 2023, almost two years after the close of fact discovery, Sotheby's produced documents that it later marked as trial exhibits DX-593 through DX-597. ECF No. 229 (setting a final fact discovery deadline of August 31, 2021, with the exception of three limited extensions for particular depositions). These documents are emails and attachments concerning several of Sotheby's clients other than Bouvier, and concerning Sotheby's valuation of Magritte's *Blood Will Tell* and *Empire des Lumieres*, neither of which is a Work ever at issue in this case. Sotheby's concedes that these documents were "not responsive to Plaintiffs' discovery requests," Kornstein Decl., Ex. 2, and they do not fall into any document category disclosed as relevant to its claims and defenses, Kornstein Decl., Ex. 3. On August 24, 2023, Sotheby's also produced for the first time photographs marked as DX-678, which they labeled as Valette's but which Plaintiff never had the opportunity to ask about during Valette's deposition.

The Court should preclude use of DX-593 through DX-597 and DX-678 at trial because Sotheby's late disclosure was not "substantially justified" or "harmless" under the four *Patterson* factors: (i) Sotheby's provided no explanation for its failure to disclose the documents or produce them during discovery; (ii) according to Sotheby's own discovery positions (see below), DX-593 through DX-597 are not relevant to any claim or defense in this case, so cannot be important; (iii) Plaintiff is prejudiced by the failure to disclose because it has not had the opportunity to ask Valette about the DX-678 photographs or depose the email senders or recipients of DX-593–597 about the content or context of the documents; and (iv) a continuance—which would require

voluminous additional discovery of thousands of documents concerning non-Work transactions

and additional depositions to put DX-593–97 into context and permit cross-examination about

them—would be impractical, if not impossible, at this late stage in the litigation. *See Patterson v.*

*Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *see also* Fed. R. Civ. P. 37(c)(1). "By waiting

until" almost two years after discovery to disclose and produce these documents, Sotheby's

"essentially sandbagged" Plaintiff and so must be precluded from using them at trial. *Downey v.*

*Adloox Inc.*, No. 16-CV-1689 (JMF), 2018 WL 794592, at *1– 3 (S.D.N.Y. Feb. 8, 2018). *See*

*also, e.g.*, *Texas Instruments Inc. v. Powerchip Semiconductor Corp.*, No. 06-CV-2305, 2007

WL 1541010, at *10 (S.D.N.Y. May 24, 2007) (precluding documents "produced . . . after the

close of discovery"); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF),

2017 WL 2880882, at *2–5 (S.D.N.Y. July 5, 2017) (precluding use of evidence disclosed during

trial preparation).

   Moreover, from the outset of discovery, Sotheby's has taken the position that *only*

documents that relate directly to Plaintiff and the Works are relevant and discoverable in this

case; Sotheby's refused to produce other categories of documents, including documents

concerning non-Work transactions and other Sotheby's clients such as DX-593–597. *See, e.g.*,

Kornstein Decl., Ex. 4, at Response to Request No. 4 (Sotheby's objecting to Plaintiff's request

for communications between Sotheby's and Bouvier "to the extent it calls for communications

concerning works of art other than the Works, as *not relevant to any party's claims or defenses*"

and agreeing to provide only documents that "concern one or more of the Works" (emphasis

added)); *id.* at Response to Requests No. 7–8 (Sotheby's refusing to produce documents

concerning transactions and valuations that "identify third parties with whom Sotheby's or an

affiliated entity contracted other than BOUVIER"); Kornstein Decl., Ex. 5 at Response to

Request No. 2 (Sotheby's objecting on the basis that "documents and communications concerning BOUVIER that do not also concern Plaintiff[ ] or any Work" are "*not relevant to any party's claims or defenses*" (emphasis added)); ECF No. 193 (Sotheby's representing to the Court that even transactions involving Bouvier "are <u>not</u> relevant to this case" if they do not also concern Plaintiff or a Work (emphasis in original)). Sotheby's went so far as to redact the names of other artworks and clients from otherwise responsive documents produced in discovery. *See, e.g.*, PX-253 (redacting all artworks for which Valette received a commission from transactions in which Bouvier was not involved). When Plaintiff sought additional information about non-Work transactions, Sotheby's opposed, arguing that "Plaintiff[ ] should be held to the bargain they struck," and should be limited to the information in the chart Sotheby's produced and Plaintiff has marked PX-286. ECF No. 194 at 3.

Sotheby's should be held to the same bargain. After limiting discovery to documents concerning Plaintiff and the Works, Sotheby's cannot now cherry-pick documents that do *not* relate to Plaintiff or the Works, such as DX-593 through DX-597, to support their defenses at trial. Sotheby's "proceeded at their peril when they decided not to furnish [documents and information about non-Work transactions and other Sotheby's clients] during discovery. They now must live with that tactical choice." *Est. of Jaquez v. Flores*, No. 10-CV-2881, 2016 WL 1060841, at *8 (S.D.N.Y. Mar. 17, 2016).

The Court should therefore preclude Sotheby's from using DX-678 and DX-593 through DX-597 at trial, and, to the extent that Sotheby's witnesses intend to testify about non-Works, they should be limited to testifying about the information provided in the chart marked as PX-286 and other documents produced before the fact discovery deadline.

## VI.    THE COURT SHOULD PRECLUDE DEFENDANTS' LATE-DISCLOSED WITNESSES FROM TESTIFYING

The Court should preclude Sotheby's from calling three witnesses whom it did not disclose until the eve of trial, almost two years after the close of fact discovery: Daisy Edelson, Simon Shaw, and Michael Macaulay. *See* Kornstein Decl., Ex. 3 (Defendants' initial disclosures, omitting all three witnesses); ECF No. 229; Kornstein Decl., Ex. 6 (disclosing the witnesses for the first time on June 29, 2023).

Sotheby's failure to disclose them was not "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). The four familiar *Patterson* factors all weigh in favor of preclusion. *See Patterson*, 440 F.3d at 117.

First, Sotheby's has offered no explanation for their failure to disclose these three witnesses; the fact that their names appear in some documents is irrelevant because "knowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if [Sotheby's] informed [Plaintiff] that [they] might call the witness in support of its claims or defenses." *Downey*, 2018 WL 794592, at *1.

Second, the witnesses are minor players who are so unimportant Sotheby's did not even list them on its preliminary witness list. *See* Kornstein Decl., Ex. 7.

Third, Plaintiff is prejudiced by the failure to disclose; Plaintiff did not depose any of them, and two of them were not even included as ESI document custodians. *See* Kornstein Decl., Ex. 1 at 12.

Finally, a continuance is not warranted. Sotheby's "should not be permitted to upset a discovery schedule which was extremely liberal and to which [Plaintiff] adhered." *Downey*, 2018 WL 794592, at *2 (precluding witnesses disclosed just before summary judgment motions were due and the case had already been pending for twenty-three months).

Nor can Sotheby's cure its failure to disclose Macaulay by labeling him an "impeachment witness only." *See* Kornstein Decl., Ex. 6. at 11 Even witnesses relied on "solely for rebuttal purposes" are subject to Rule 26(a)'s disclosure requirement. *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 73–74 (E.D.N.Y. 2012). Sotheby's has also repeatedly represented that Macaulay has no knowledge relevant to any claim or defense in this case, and vehemently opposed Plaintiff's motion to include him as an ESI document custodian. Sotheby's represented to the Court that there was "no shred of information to suggest that [Macaulay] had any involvement in any of the issues relevant to this case." *See* ECF No. 147. Based on that representation, the Court denied Plaintiff's motion to include Macaulay as an ESI custodian. ECF No. 149. Sotheby's previously argued Plaintiff should not be permitted to list Elena Rybolovleva because she was not an ESI custodian; the same is true for Macaulay. ECF No. 529.

## VII.    IRRELEVANT AND PREJUDICIAL DETAILS ABOUT DMITRY RYBOLOVLEV SHOULD BE PRECLUDED

The Court should preclude irrelevant and unduly prejudicial evidence about Rybolovlev's wealth and estate planning, his early life in Russia, pejorative terms such as "oligarch" and "shell company," and his divorce.

### A.    Rybolovlev's Source of Wealth and Estate Planning

Sotheby's seeks to improperly introduce irrelevant and prejudicial evidence about Rybolovlev's wealth and estate planning, including hearsay exhibits and deposition testimony about Rybolovlev's prior business holdings, the sale of those holdings, and the trusts and entities his lawyers established. *See* Rybolovlev Tr. 59:2–4, 60:17–62:10, 64:12–68:4; DX-114, 115, 130. Equally irrelevant is Sotheby's designated Plaintiff 30(b)(6) testimony on the same topics. *See* Pl. 30(b)(6) Tr. 144:13–22, 151:12–24, 186:11–25, 189:21–190:8, 193:24–194:20, 196:7–

197:5, 205:16–206:8, 206:22–207:10, 208:9–210:6, 218:3–18, 254:4–257:23; *see also* DX-169 (preparation notes from 30(b)(6)).

None of these details is relevant to the issue at trial—whether Sotheby's helped Bouvier defraud Plaintiff. Sotheby's only purpose is prejudice.

Attempts to prejudice a jury against a wealthy party are "improper and have no place in a courtroom." *United States v. Stahl*, 616 F.2d 30, 32–33 (2d Cir. 1980). In *Stahl*, for example, the Court of Appeals reversed because the prosecutor "did in fact intend to arouse prejudice against the defendant because of his wealth and engaged in calculated and persistent efforts to arouse such prejudice throughout the trial," including referring to him as "a multi-millionaire businessman" in summation. *Id*. at 32. The Court concluded that "the prosecutor's trial strategy . . . obviously included a persistent appeal to class prejudice" and remanded for a new trial. *Id.* at 32–33.

Courts routinely preclude evidence about the plaintiff's finances as irrelevant and prejudicial.[4] In *Kinsey v. Cendant Corp*., for example, the court granted a motion in limine in a fraud case to preclude evidence about the plaintiff's compensation package, despite the defendant's argument that such evidence "demonstrates that [the plaintiff] is a sophisticated businessperson and is therefore relevant to the reasonableness of his asserted reliance." 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008). The court concluded: "Even assuming that [the plaintiff's] compensation package and negotiations with [his employer] are of some limited relevance, that

---

[4] *See*, *e.g.*, *Ginger Root Off. Assocs., LLC v. Advanced Packaging & Prod. Co.*, No. 07-CV-05568, 2009 WL 10672775, at *3 (C.D. Cal. Feb. 18, 2009) (granting motion in limine because "evidence of [plaintiff's] finances is irrelevant, as it has no bearing on the liability of any party on the claims or counterclaims asserted in this action . . . [and] would also invite the jury improperly to consider [the plaintiff's] ability to pay for remediation in determining defendants' liability"); *Radecki v. Dahl*, No. 20-CV-814, 2023 WL 4231017, at *3 (W.D. Wis. June 28, 2023) ("delving into [the plaintiff's father's] net worth needlessly risks creating an irrelevant sideshow and wasting the jury's valuable time"); *Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, No. SA-03-CA-0832, 2006 WL 6505348, at *2 (W.D. Tex. May 31, 2006) (precluding "[a]ny reference regarding the wealth, net worth, salary, or debts owed by such [plaintiff's] officers, directors, or employees" with one narrow exception).

relevance is outweighed by the unfair prejudice that would result from its admission. The parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices." *Id.*

Exactly so here. Since it is undisputed that Rybolovlev is a wealthy and sophisticated businessman, (*e.g.*, ECF No. 444 at 2; *id.* at 47 ¶ 62), Sotheby's does not need, and should not be permitted, to introduce all the irrelevant and prejudicial details about his finances that it has designated. In response to a similar issue in *McBeth v. Porges*, this Court allowed only limited evidence that the plaintiff "is wealthy — including that he had 'millions' of dollars in investments," but precluded "more specific evidence of [plaintiff's] wealth (including but not limited to the precise size of his investments or the amount of money that he earned from the sale of a company), as the probative value of such evidence is substantially outweighed by the danger of unfair prejudice." No. 15-CV-2742 (JMF), 2018 WL 5997918, at *3 (S.D.N.Y. Nov. 15, 2018).

It is already established, and the nature of this lawsuit demonstrates, that Rybolovlev is wealthy; details beyond that are unnecessary and unduly prejudicial. That is particularly true because <u>none</u> of Sotheby's designated evidence shows that Rybolovlev had any sophistication in the art market before meeting Bouvier; whatever success he has had in other fields of business is, at best, of limited relevance to this case and is "substantially outweighed by the danger of unfair prejudice." *Id.*

### B.    Rybolovlev's Past Life in Russia

Sotheby's also improperly designates testimony from its co-conspirator Yves Bouvier, in which Bouvier made false and irrelevant allegations about Rybolovlev's past, including a mine collapse in Russia. *E.g.*, Bouvier Tr. 25:16–26:20. Bouvier also has no personal knowledge about these events and his malicious musings lack any foundation.

In addition, Sotheby's seeks to introduce three exhibits, prepared long ago for various PR or legal reasons, about Rybolovlev's past life that discuss the same mine accident and other irrelevant details about Rybolovlev's personal and professional history. DX-114, 115, 130. Sotheby's has agreed to redact some portions of these exhibits, but the remaining portions are still irrelevant and unduly prejudicial.

If Sotheby's can introduce such irrelevant allegations about Rybolovlev's past, then we should be allowed to tell the jury that Sotheby's is currently being prosecuted for tax fraud by the New York State Attorney General (*People of State of N.Y. v. Sotheby's, Inc.*, No. 452192/2020 (Sup. Ct. N.Y. Cnty.)), previously paid $512 million (together with Christie's) to settle the Justice Department's claims it engaged in price-fixing, and saw its chairman sent to prison for the same misconduct.[5] The Court should not allow Sotheby's to open the door into this "sideshow [that] will swallow up the circus." *Linde v. Arab Bank, PLC*, No. 04-CV-2799, 2013 WL 4516778, at *1 (E.D.N.Y. Aug. 23, 2013).

### C.    Sotheby's Should be Barred from Using Slurs

Sotheby's should also be prohibited from using the term "oligarch," as it has tried to do before, (*e.g.* ECF No. 444 at 47, ¶ 62), or from using other similarly pejorative slurs such as "shell" or "sham" company to refer to Plaintiff.

"Not only do the terms 'oligarch' and 'mother Russia' pander to anti-Russian sentiment and have the potential to prejudice the jury against the [plaintiff], but they have no probative value to the [defendants]." *Eurochem N. Am. Corp. v. Ganske*, No. 18-CV-16, 2020 WL 747008, at *8 (W.D. Wis. Feb. 14, 2020) (granting motion in limine).

---

[5] *See United States v. Taubman*, No. 01-CR-429, 2002 WL 548733, ECF No.88 (S.D.N.Y. Apr. 23, 2002); https://www.nytimes.com/2002/04/23/nyregion/ex-chairman-of-sotheby-s-gets-jail-time.html#:~:text=Alfred%20Taubman%2C%20the%20principal%20owner,of%20more%20than%20%24100%20million.

Nor should Sotheby's be allowed to refer to Plaintiff as a "shell" or "sham" corporation, equally pejorative terms without relevance or evidentiary basis. *See United States v. Watts*, 934 F. Supp. 2d 451, 482 (E.D.N.Y. 2013) ("direct[ing] that the government and any of its witnesses refrain from using the terms 'shell corporation' or 'shell company'" because those "could be perceived to have a pejorative meaning" and "a more useful description" was "holding company"); *Shady Hills Energy Ctr., LLC v. Seminole Elec. Coop., Inc.*, No. 8:20-CV-81, 2023 WL 1768348, at *1 (M.D. Fla. Feb. 3, 2023) (prohibiting defendant from referring to plaintiff as a "shell company" because the term is "misleading and unfairly prejudicial").

### D.    Rybolovlev's Divorce

Evidence about Rybolovlev's divorce similarly has no relevance to the trial and could prejudice the jury. The Court previously denied Sotheby's discovery into Rybolovlev's divorce. *See* ECF No. 127 at 3 (Sotheby's motion); ECF No 133 at 2–3 (Plaintiff opposition); ECF No. 134 at 2 (Court Order denying Sotheby's discovery). If Rybolovlev's divorce did not meet the low bar for discovery, it necessarily falls short of the heightened requirements for evidence to be presented to a jury. *See Levick v. Maimonides Med. Ctr.*, No. 08-CV-03814, 2011 WL 1673782, at *3 (E.D.N.Y. May 3, 2011) (distinguishing the standards for admissibility and discoverability).

Courts exclude discussions of divorce proceedings under Rule 403, recognizing that parties may try to raise the specter of divorce to improperly influence the jury against their opponents, or to stoke the tabloid press. *See Ernst v. HB Aspen, Inc.*, No. 07-CV-01070, 2008 WL 11337009, at *2 (C.D. Cal. Feb. 4, 2008) (excluding evidence of divorce and prior legal proceedings because such evidence may improperly suggest the plaintiff is "litigious"); *Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1122 (11th Cir. 2020) (affirming exclusion of divorce and marriage evidence even where relevant to the claim under Fed. R. Evid. 403);

*Stephens v. Rheem Mfg. Co.*, 220 F.3d 882, 885 (8th Cir. 2000) (excluding "salacious rumor-based evidence" in a sexual harassment case).

The Court should likewise preclude the evidence Sotheby's seeks to introduce about Rybolovlev's divorce. For example, Sotheby's wants to use multiple exhibits and introduce testimony about a decision not to loan the Magritte to the MOMA because some lawyers were concerned it could become embroiled in Rybolovlev's ongoing divorce proceedings. *See* DX-53–56; Bouvier Tr. 15:21–16:1. Sotheby's also seeks to introduce evidence about foreign injunctions issued during the divorce proceedings. DX-16, DX-560. None of this has anything to do with the issues on trial here and Sotheby's seeks to use this evidence only to prejudice the jury against Plaintiff and create a mini trial designed to confuse the jury by forcing us to relitigate complex, irrelevant matters already litigated and settled in the divorce case.

Other documents that mention the divorce should be similarly precluded. DX-18, for example, merely consists of Bouvier expressing his concern that a judgment in the divorce proceedings "is not too restrictive" for Rybolovlev. Neither this, nor any of Sotheby's other exhibits that refer to the divorce—DX-16, 17, 18, 53, 54, 55, 56, 114, and 560—relate to the issues for the jury. For similar reasons, Bouvier's malevolent speculation about the divorce should be excluded. *See* Bouvier Tr. 12:1–2, 14:4–15:27, 25:6–26:20, 44:19–45:13, 237:15–24, 238:3–11, 264:10–19, 278:1–5.

Sotheby's insinuation that Rybolovlev sought to sell art owned by the Plaintiff to pay his ex-wife an initial award in the divorce case in May 2014 is both irrelevant and false. As Rybolovlev explained in his deposition and as has been widely reported, an appellate court later reduced the judgment and the parties then resolved the matter in a settlement. *See* Rybolovlev Tr. 42:22–43:20, 43:13–44:2. Plaintiff's reasons for exploring the resale of some artworks in 2014

do not bear on whether Sotheby's previously helped Bouvier negotiate one price for the art from the original sellers and then charge Plaintiff a secretly inflated price.

Nor should Sotheby's be permitted to argue to the jury, as it has unsuccessfully tried to do to this Court before, that Rybolovlev was engaged in efforts to hide his assets during the divorce proceeding. *See* ECF No. 127 at 3. No evidence supports this conspiracy theory. It is illogical: If Rybolovlev was trying to conceal his assets, he would not transform liquid, easily moveable cash into highly recognizable, traceable masterpieces. This argument flies in the face of Sotheby's own position that Plaintiff was seeking inflated valuations of the works in the fall of 2014 in order to use them as collateral in obtaining cash loans. *See* Rybolovlev Tr. 43:22–50:16.

The Court should preclude Sotheby's from introducing evidence, eliciting testimony, or arguing all the above issues.[6]

## VIII.   EVIDENCE FROM FOREIGN LEGAL PROCEEDINGS IS INADMISSIBLE

Bouvier's fraud "has spawned litigation around the world." MSJ Order at 1. Sotheby's seeks to use evidence about these foreign proceedings that is inadmissible. Most of this evidence is precluded by a prior decision of this Court; all of it is irrelevant and unduly prejudicial. "Admitting evidence about previous cases inevitably results in trying those cases before the jury, and the merits of the other cases would become inextricably intertwined with the case at bar." *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) (remanding for new trial due to admission of evidence about other cases).

---

[6] Specifically, the Court should preclude DX-15–18, 53–56, 114, 115, 130, 169, 560; Rybolovlev Tr. 42:22–43:20, 43:13–44:2, 59:2–4, 60:17–62:10, 64:12–68:4; Pl. 30(b)(6) Tr. 144:13–22, 151:12–24, 186:11–25, 189:21–190:8, 193:24–194:20, 196:7–197:5, 205:16–206:8, 206:22–207:10, 208:9–210:9, 218:3–18, 254:4–257:23; Bouvier Tr. 12:1–2, 14:4–15:27, 15:21–16:1, 25:16–26:20, 44:19–45:13, 237:15–24, 238:3–11, 264:10–19, 278:1–5.

**A.    The Monaco Court of Appeals Decision is Inadmissible and this Court's Ruling on It Precludes Most of Sotheby's Other Exhibits**

First, Sotheby's cannot show the jury a 2019 decision of the Monaco Court of Appeals that dismissed Plaintiff's claims against Bouvier in Monaco, DX-59. "District courts must assiduously guard juries against the siren song of irrelevant and prejudicial prior determinations." *Arlio*, 474 F.3d at 53; *see also*, *e.g.*, *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 276–77 (S.D.N.Y. 2015) (precluding court decisions).

Second, this Court previously ruled that Plaintiff's representative's statements to the Monaco police were not discoverable because: "There is no dispute that the minutes at issue are subject to the Monaco Court of Appeals's ruling. [. . .] Although the meaning of that ruling is not crystal clear, the Court concludes that its broad sweep does extend to Plaintiffs' disclosure of the minutes in this litigation. If the evidence at issue were more critical to this litigation, the need for that evidence might outweigh the comity owed to the Monaco Court of Appeals. [. . .] But given that Sotheby's was able to depose the witness at issue, and seeks the minutes at issue solely for impeachment purposes, the Court concludes that the Monaco Court of Appeals decision should control." ECF No. 357 (citations omitted).

This Court's decision precludes Sotheby's from using DX-199 (an excerpt of the interview records at issue in ECF No. 357, part of exhibit D58 in the Monaco file) and DX-200 (an excerpt of similar interview records for another Plaintiff representative, part of exhibit D59 in the Monaco file), which Sotheby's seeks to use at trial "solely for impeachment purposes," exactly what this Court already forbade. ECF No. 357. For the same reason, Sotheby's should not be permitted to use deposition testimony authenticating and discussing these Monaco records, including Bogdanov Tr. 235:11–235:12, 236:12–237:10, 237:21–239:24, 245:2–245:15.

**B.      Testimony Invoking the Privilege in Foreign Proceedings is Inadmissible**

Sotheby's also cannot introduce deposition testimony about irrelevant, pending, foreign criminal investigations into Bouvier's counterclaims against Plaintiff. The Court previously found that this issue did not even merit discovery, ECF No. 349; it certainly does not merit the jury's time. Sotheby's seeks to prejudice the jury by designating extensive portions where Plaintiff's witnesses had to invoke the privilege against self-incrimination due to these pending criminal investigations. Those investigations concern allegations by Bouvier about <u>facts that all occurred after his fraud was discovered</u>; they are of no relevance to the facts in this case; and they are highly prejudicial because they could, falsely, suggest to the jury that Plaintiff's representatives engaged in some collateral wrongdoing, when the truth is that these proceedings are ongoing, Plaintiff's witnesses have maintained their innocence, and full exoneration is expected. *See Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1335 (9th Cir. 1985), *opinion corrected,* 773 F.2d 1049 (9th Cir. 1985) ("The district court did not abuse its discretion in concluding, [ ] that prejudice and confusion would be generated by innuendos of collateral misconduct."). All such testimony is inadmissible, including Rybolovlev Tr. 123:5–123:6, 123:9–123:9, 127:14–127:20, 128:5–128:8, 128:10–128:12, 129:5–129:15, 130:16–130:20.

Because these pending foreign criminal proceedings arise out of Bouvier's accusations of misconduct in the Monaco case Plaintiff brought against him, Plaintiff's witnesses also had to invoke the privilege concerning questions about the details of that case. Plaintiff agreed to Sotheby's request to stipulate to the date Plaintiff filed the Monaco case against Bouvier. JPTO at 17. Sotheby's has no need to introduce details about that case. Those details are irrelevant and risk prejudice, especially if Plaintiff's witnesses have to invoke the privilege due to ongoing investigations into Bouvier's allegations. This includes: Rybolovlev Tr. 131:5–131:7, 131:9–131:10, 131:12–131:15, 132:20–132:23,133:3–133:12, 133:15–133:16. It also includes DX-100

and 101, which are emails Bouvier has alleged improperly "lured" him to Monaco where he was

arrested, an allegation which is at issue in the pending foreign criminal investigations.

### C.    Sotheby's Excerpts from Foreign Cases Should Also Be Precluded

Sotheby's should also not be permitted to introduce exhibits concerning the Singapore

case, DX-247 and DX-250, or a filing made in Switzerland, DX-192. These documents are

inadmissible because "evidence regarding prior litigation, including pleadings and interrogatory

responses, is inadmissible under Rule 403." *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers

LLP*, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017); *see also Arlio*, 474 F.3d at 53. Both DX-250

and DX-192 are so heavily redacted as to be almost incomprehensible. All of these documents

will confuse the jury and lead to speculation about unrelated foreign proceedings.

The Court should preclude all evidence and argument about the foreign proceedings.[7]

## IX.    "RESALE" EVIDENCE SHOULD BE EXCLUDED

Evidence relating to Accent's resale of artwork after it discovered Bouvier's fraud is

irrelevant, confusing, and prejudicial. That covers: (1) Accent's resale of artwork, including  its

consignment of artwork for sale and activities related to resale;[8] (2) resale prices ;[9] and (3)

---

[7] Specifically, the Court should preclude: DX-59, DX-100, DX-101, DX-192, DX-199, DX-200, DX-247, DX-250; Bogdanov Tr. 235:11–235:12, 236:12–237:10, 237:21–239:24, 245:2–245:15; Rybolovlev Tr. 123:5–123:6, 123:9–123:9, 127:14–127:20, 128:5–128:8, 128:10–128:12, 129:5–129:15, 130:16–130:20, 131:5–131:7, 131:9–131:10, 131:12–131:15, 132:20–132:23,133:3–133:12, 133:15–133:16.

[8] *See* DX-93, DX-110, DX-112, DX-116–138, DX-175–176, DX-187, DX-190, DX-194, DX-203, DX-248, DX-581, DX-588, DX-673, DX-674; Plaintiffs' 30(b)(6) Tr. 95:14–95:20, 95:23–96:6, 96:9–96:21, 96:24–96:25, 97:3–97:8, 100:24–100:25, 101:8–101:20, 101:23–102:3, 102:5–102:6, 111:25–112:2; Bogdanov Tr. 191:15–192:17, 193:2– 193:10, 193:12–193:21, 193:23–194:3, 194:5–194:23, 194:25–195:21, 195:23–196:8, 196:10–196:11, 196:19–196:21, 197:1–197:12, 197:18–197:22, 198:8–198:15, 198:21–199:7; Clore Tr. 258:8–258:17; Heller Tr. 15:1–15:15, 17:15–19:4, 19:7–19:15, 19:20–20:14, 23:2–23:16, 23:18–23:21, 24:2–24:7, 24:17–24:23, 25:1–25:8, 54:22–55:22, 94:24–95:3, 95:5–95:16, 95:18–95:18, 115:24–115:25, 118:22–119:2, 122:3–122:4, 122:14–125:18, 125:20–125:22, 125:24–126:12, 126:14–126:18, 126:20–126:24, 127:3–128:6, 128:8–128:17, 129:8–129:9, 134:24– 135:1, 135:3–135:21, 137:5–137:6, 140:2–140:4, 140:11–140:24, 159:1–159:2, 159:13–160:18, 162:3–162:19, 162:21–163:2, 163:4–163:12, 163:16–163:17, 164:1–164:12, 165:25–166:5, 166:7–166:7, 168:1–169:13, 177:2– 179:17, 179:19–180:1, 180:3–180:18; Peretti Tr. 225:11–225:16; Rybolovlev Tr. 51:19–51:20, 51:22–52:16, 52:18– 52:25, 53:3–53:3, 53:5–53:8, 53:10–53:15, 72:12–73:13, 77:15–77:18, 77:20–77:25, 78:3–78:4. Plaintiff's trial exhibits PX-378 and PX-369 would be introduced only if the Court does not exclude evidence relating to Accent's resale of artworks.

valuations of artwork for resale and insurance by parties other than Sotheby's.[10] This evidence

has no bearing on Accent's compensatory damages, goes beyond the Works at issue, confuses

the jury about the claims and proper assessment of damages, and is not proffered  for any

legitimate purpose other than to sway the jury against a wealthy party and wrongly suggest that

Accent suffered no loss.

### A.    Resale Evidence Is Irrelevant to Compensatory Damages

#### 1.    Fraud Damages Are "Out-of-Pocket" Damages

Accent's compensatory damages on its aiding and abetting fraud claim consist of the

traditional "out-of-pocket" damages resulting from fraud. *See Reno v. Bull*, 226 N.Y. 546, 553

(1919). Here, those damages are the difference between the prices paid by Bouvier, and the

prices paid by Accent, that is, "the difference between the value of the thing bought . . . and its

purchase price." *Hanlon v. Macfadden Publications*, 302 N.Y. 502, 511 (1951). "In determining

the amount of damages [Accent] sustained, you should consider only . . . the difference between

the actual amounts that [Accent] spent in reliance on [Bouvier]'s false statement and the value . .

. of the [artwork] at the time [Accent] received it." N.Y. Pattern Jury Instr. Civil § 3:20.

This damage formula drives the case law. For example, in an analogous art fraud case,

*Schulhof v. Jacobs*, an art agent sold a painting for $6.5 million, remitted only $5.45 million to

the seller, and secretly kept $1 million in addition to the agent's $50,000 commission. 54

N.Y.S.3d 613, *3 (Sup. Ct. N.Y. Cnty. Feb. 27, 2017), *aff'd* 70 N.Y.S.3d 462 (1st Dep't 2018).

The court found that the seller's fraud damages consisted of the $1 million in secret profits. *Id.* In

another similar recent fraud case, a fraud claim for out-of-pocket damages of $3 million was

---

[9] *See* DX-109, DX-120, DX-128, DX-129, DX-131–132, DX-135, DX-169, DX-175, DX-187, DX-190; Plaintiffs'
30(b)(6) Tr. 111:25–112:2, 112:5–112:5, 112:20–112:21, 112:24–113:20, 113:23–114:6, 115:2–115:9; Clore Tr.
258:8–258:17; Rybolovlev Tr. 72:12–73:13, 75:4–75:21; Heller Tr. 118:22–119:2, 159:1–159:2, 159:13–160:18.
[10] *See* DX-94, DX-109, DX-135, DX-173, DX-188, DX-190, DX-246, DX-673–674; Heller Tr. 141:9–141:10,
141:25–143:11, 143:13–144:1, 144:11–145:3, 145:6–146:6, 146:22–147:13, 150:3–152:3, 152:18–155:21, 155:23–
156:2, 156:4–156:9, 156:11–156:18, 156:20–157:13, 157:15–158:17, 158:20–158:25.

affirmed where defendants fraudulently concealed "an offer to buy the property at issue for $42 million" and instead convinced the plaintiff to accept an offer for $39 million for the property. Damages were "the $3 million difference or the difference between the value of the property at the time of the sale [$42 million] and the $39 million purchase price paid." *Cmty. Ass'n of the E. Harlem Triangle, Inc. v. Butts*, 200 A.D.3d 599, 599 (1st Dep't 2021).

For Accent's four purchases, the compensatory damages will be: (1) the amount of the markup secretly added by Bouvier to the price, plus (2) the amount of the commission paid by Accent to Bouvier on the markup only.[11] For the Modigliani *Tête* auction, the compensatory damages will be the proceeds of the auction that Bouvier kept. *See* MSJ Order at 56 ("[T]he auction of the Modigliani proximately caused Plaintiff['s] injuries; Plaintiff [was] damaged because Bouvier kept the proceeds of the auction instead of using the Modigliani to offset the cost of a Rothko painting, so the auction was the necessary step in enabling Bouvier to reap those profits.").

Proof of later resale is irrelevant. Evidence that the Magritte was resold in February 2017 (over five years after Accent bought it in December 2011), the Da Vinci was resold in November 2017 (almost four and a half years after Accent bought it in May 2013), and the Klimt was resold in November 2015 (over three years after Accent bought it in September 2012) fails to establish the value of those works when Accent bought them, which is all that can be considered in assessing the "out-of-pocket" damages.

Fraud damages are calculated based on the value at the time of the fraudulent transaction. The calculation of out-of-pocket damages looks to the "value" of the artwork "at the time [Accent] received it." N.Y. Pattern Jury Instr. Civil § 3:20; *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 182–83 (2d Cir. 2007) (fraud damages consisted of

---

[11] Accent is also entitled to statutory prejudgment interest.

difference between inflated price Allegheny paid to purchase company as a result of fraudulent misrepresentations and value of company on date of purchase). "The true value of what the plaintiffs received is measured as of the date of purchase." *Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, No. 12-CV-05803, 2013 WL 978980, at *11 (S.D.N.Y. Mar. 12, 2013) (citing *Acticon AG v. China N. E. Petroleum Holdings Ltd.,* 692 F.3d 34, 38 (2d Cir. 2012)).

The value of the artwork for damages is established by the prices that Bouvier negotiated and paid for those same pieces. These transactions—which occurred almost simultaneously with Accent's purchases—establish the value of the work: the "purchase price set in the course of an arm's length transaction of recent vintage, if not explained away as abnormal in any fashion, is evidence of the 'highest rank' to determine the true value of the property at that time." *W. T. Grant Co. v. Srogi*, 52 N.Y.2d 496, 511 (1981) (quoting *Plaza Hotel Assocs. v. Wellington Assocs.,* 37 N.Y.2d 273, 277 (1975)). In *Schulhof*, for example, the court ruled that fraud damages consisted of the difference between the fraudulent transaction (i.e., the $5.45 million remitted by the art agent to the seller of the painting) and the price of the actual sale of painting by the art agent (i.e., $6.5 million). 54 N.Y.S.3d 613, at *3. And in *Butts*, the actual value of the property was the $42 million offer the defendants had fraudulently concealed, as compared to the $39 million purchase price paid in reliance on defendants' fraud. 200 A.D.3d at 599.

### 2.    Aiding and Abetting Breach of Fiduciary Duty

As for the breach of fiduciary duty claim for Da Vinci's *Salvator Mundi*, Accent's damages are: (1) the amount of the markup secretly added by Bouvier to the price, plus (2) the

<u>entire</u> amount of the commission paid by Accent to Bouvier, <u>plus</u> (3) the commission received by Sotheby's.[12]

On this claim alone, Accent is entitled to recover the entire commission paid to Bouvier and to Sotheby's (unlike in the fraud claims) because, in breach of fiduciary duty cases, New York law awards all the faithless servant's secret profits and compensation as damages. In *Lamdin v. Broadway Surface Advert. Corp.*, 272 N.Y. 133, 138 (1936), the Court held that, where a principal seeks to recover compensation from an unfaithful servant, "[n]ot only must the . . . agent account to his principal for secret profits[,] but he also forfeits his right to compensation for services rendered by him if he proves disloyal." *See also Yukos Cap. S.A.R.L.*, 977 F.3d at 241; *Westwood Chem. Co. v. Kulick*, 570 F. Supp. 1032, 1038 (S.D.N.Y. 1983). In *Schulhof*, the art agent who retained a secret profit when selling a painting on behalf of her principal was required to pay damages consisting not only of the secret profit, but also "to forfeit the $50,000 in compensation earned for the sale." 2017 WL 825863, at *4. In addition, Accent is entitled to recover the commission Sotheby's received for aiding and abetting Bouvier's breach of fiduciary duty. *See Interpool Ltd. v. Patterson*, 874 F. Supp. 616, 620 (S.D.N.Y. 1995) (instructing jury that plaintiff was entitled to recover any profits realized as a result of the breach of fiduciary duty by the person who breached his duty and anyone who aided and abetted him).

Out of pocket loss is irrelevant to Accent's entitlement to damages for a faithless servant's breach of fiduciary duty, or the calculation of those damages. Evidence about the resale of the Da Vinci has no bearing on whether Accent should receive the secret profits and compensation of its faithless servant and those who aided and abetted him. "[T]he function of such [a breach of fiduciary duty] action, unlike an ordinary tort or contract case, is not merely to

---

[12] Accent is also entitled to statutory prejudgment interest. If a jury awards damages for both aiding and abetting fraud and aiding and abetting a breach of fiduciary duty with respect to Da Vinci's *Salvator Mundi*, Accent will seek only the higher award.

compensate the plaintiff for wrongs committed by the defendant but . . . to prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others, or to which their agency or trust relates." *Diamond v. Oreamuno*, 24 N.Y.2d 494, 498 (1969). The resale of the Da Vinci is irrelevant to Bouvier's profits and therefore irrelevant to the breach of fiduciary duty claim.

### B.    Resale Evidence Includes Sales and Information Beyond Works at Issue

Resale Evidence is also irrelevant, confusing, and unduly prejudicial because it contains resale of and negotiations to sell many other works Accent bought that are not at issue. For example, DX-131 and DX-132 are charts listing the status of and resale prices for dozens of works that were sold after the discovery of Bouvier's fraud. In DX-120, Accent's representatives describe negotiations for the sale of a work not at issue following the summary judgment decision. DX-121 to DX-124 are consignment agreements for the sale of works no longer at issue, while DX-128 and DX-129 are sales agreements for two Picassos not at issue.

Resale of these works is irrelevant to Accent's compensatory damages, see *supra*, and risks confusing the jury about the amount of out-of-pocket damages sustained by Accent. Moreover, a chart listing the substantial sums of money paid for these works is unduly prejudicial because it plays to jurors' economic prejudices that a party with substantial financial resources does not need compensatory damages. "[P]arties are not permitted to argue to the fact finder's potential economic sympathies or prejudices." *Kinsey*, 588 F. Supp. 2d at 518; *see also L–3 Commc'ns Corp. v. OSI Sys., Inc.,* No. 02-CV-9144, 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006).

C.    **Resale Evidence Contains Speculative and Irrelevant Remarks on Value that Risk Confusing the Jury**

Resale Evidence also contains irrelevant, confusing, and prejudicial speculation about artwork value that should be excluded. At different points in 2015 and later years, various parties commented on and assigned values to the four works at issue, as well as works not at issue, for resale and insurance purposes and otherwise. For example, the chart in DX-135 lists approximately twenty works of art together with insurance values and "Sandy's value[s]." Such later valuations are irrelevant to the claims for aiding and abetting Bouvier's fraud years before.

Sotheby's should not be permitted to use valuations done by third parties later in time, for different purposes, to get through the back door the fact that Accent resold the artwork or that the artwork was later valued at a certain number.

## CONCLUSION

For these reasons, the Court should grant Plaintiff's omnibus motion in limine. Specifically, it should:

1. Deem the elements of fraud and breach of fiduciary duty established, except for the reasonable reliance and agency elements;

2. Preclude Sotheby's from entering evidence relating to the "privileged documents" side-show;

3. Preclude Sotheby's from using Jane Levine's testimony relating to issues on which she refused to testify at her deposition on the basis of privilege and withheld document discovery;

4. Preclude Sotheby's counsel from using their own credibility and professional status to bolster their evidence;

5. Preclude Sotheby's from introducing late-disclosed documents and testimony about non-Work transactions;

6. Preclude Defendants' late-disclosed witnesses from testifying;

7. Preclude Sotheby's from introducing into evidence irrelevant and prejudicial details about Dmitry Rybolovlev;

8.  Preclude Sotheby's from introducing evidence from foreign proceedings; and

9.  Preclude Sotheby's from introducing "resale" evidence.

Dated:  August 31, 2023
New York, New York

Respectfully submitted,

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

/s/ Daniel J. Kornstein
Daniel J. Kornstein
O. Andrew F. Wilson
Zoe Salzman
Vasudha Talla
Sarah Mac Dougall
600 Fifth Avenue, 10th Floor
New York, NY 10020
Tel. No.: (212) 763-5000
Fax No.: (212) 763-5001

*Attorneys for Plaintiff*