# Arnold & Porter

Sara L. Shudofsky
+1 212.836.7922 Direct
Sara.Shudofsky@arnoldporter.com

December 15, 2023

<u>VIA ECF</u>

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007

      Re:    *Accent Delight International Ltd. v. Sotheby's et al.*, 18 Civ. 9011

Dear Judge Furman:

      We write on behalf of Defendants Sotheby's and Sotheby's, Inc. to seek an order precluding Plaintiff from pursuing a completely new damages theory regarding the *Tête* auction on the eve of trial, born of Plaintiff's just-reported settlement of its claims against Yves Bouvier. Plaintiff's attempt to switch out its old theory of damages and substitute a completely new theory of damages three weeks before trial should be rejected.

## I.    <u>The Just-Reported Settlement and Plaintiff's New Theory</u>

      On December 7, 2023, news outlets reported that Plaintiff and Rybolovlev have settled their dispute with Bouvier.[1] The press has not reported any details of the settlement. It is clear, however, that Plaintiff obtained free-and-clear title to the Rothko *No. 6* painting that had been the subject of a long-running dispute between Plaintiff and Bouvier. That fact is made evident by Plaintiff's attempt to introduce a new damages theory into this trial based entirely on the Rothko, as set forth in Plaintiff's proposed revision to the Joint Pretrial Order filed today with the Court.

      As discussed more fully below, Plaintiff has been claiming from the outset of this case that its damages regarding the November 2014 *Tête* auction are the proceeds Bouvier received from that auction, which are $63 million. Plaintiff is now trying to substitute a new theory of damages: that it is entitled to the difference between the value of Rothko's *No. 6* and the amount that Plaintiff paid for the Rothko. It wants to withdraw its damages claim for the proceeds of the *Tête* auction and in fact has removed from its trial exhibits documents showing the auction results and the proceeds amount received by Bouvier. *See* PX-18, 274. In its new theory spun this week, Plaintiff claims that it paid Bouvier for the Rothko by trading in the *Tête* and giving him €25 million in cash. Under its new theory, Plaintiff wants to recover the difference between the value of the Rothko (which it says should be $80 million) and the aggregate of what it paid, meaning the *Tête*

---

[1] *See, e.g.*, Financial Times, Swiss art dealer and Russian oligarch settle feud over collection, https://www.ft.com/content/25a8e77c-3c3d-4fe0-8a4b-6d169b8972a8 (Dec. 7, 2023).

Arnold & Porter

The Honorable Jesse M. Furman
December 15, 2023
Page 2

(which it claims should be valued at €60 million, rather than the $70.7 million that the buyer paid at the auction, or $63 million, which were the auction proceeds) plus €25 million in cash.  The Court should preclude Plaintiff from pursing this new theory at trial.

## II.     The Court Should Preclude Plaintiff's New Damages Theory

From the beginning of this case, Plaintiff has asserted with respect to its *Tête* auction claim that its damages for that claim are the proceeds from the *Tête* auction of $63 million, having been deceived by Bouvier into trading in the *Tête* in September 2014 as partial payment for Rothko's *No. 6*.  In its original complaint, Plaintiff alleged that Bouvier convinced Plaintiff to trade in the *Tête*, that Defendants thereafter sold the work at auction either knowing that "Bouvier lacked the authority to sell it" or "never verifying whether he did," and that "Bouvier kept the auction proceeds for himself."  Compl., ECF No. 1, ¶¶ 68–71.  In its two amended complaints, Plaintiff continued to claim the *Tête* auction proceeds as its damages:  it alleged that "[n]either Sotheby's nor Bouvier obtained Plaintiff['s] permission to sell this work at auction" and that "Bouvier has never accounted to Plaintiff[] for the proceeds of the auction and has never given Plaintiff[] the Rothko painting they purchased."  Am. Compl., ECF No. 66, ¶¶ 153, 156; Second Am. Compl., ECF No. 285, ¶¶ 153, 156.

After discovery, Plaintiff continued to insist that its damages for the *Tête* auction claim were the auction proceeds.  Indeed, Plaintiff unsuccessfully sought summary judgment for damages that included the $63 million in proceeds from the *Tête* auction.  ECF No. 414, at 25 ("Bouvier and Sotheby's also did not remit to Plaintiff[] $63 million, the proceeds from the re-sale of *Tête* by Sotheby's at auction in November 2014[.]"); ECF No. 415, ¶ 60 ("Bouvier obtained Modigliani's *Tête* from Plaintiff[] under false pretenses and then sold it through Sotheby's for $70.725 million ($63 million net to the seller), but did not give any of this money to Plaintiff[].").[2]  And the Court, in denying Defendants' motion for summary judgment with respect to substantial assistance, noted Plaintiff's articulation of its *Tête* auction damages:  "[T]he auction of the Modigliani proximately caused Plaintiff['s] injuries; Plaintiffs were damaged because Bouvier kept the proceeds of the auction instead of using the Modigliani to offset the cost of a Rothko painting."  ECF No. 510, at 56.

Thereafter, consistent with the articulation of its position throughout the case, Plaintiff stated in the Joint Pretrial Order filed on August 31, 2023 that its damages for its

---

[2] Defendants disputed this statement in response to Plaintiff's Rule 56.1 Statement.  *See* ECF No. 444, ¶ 60.a ("Sotheby's disputes the characterization of 'false pretenses,' as Bouvier told Plaintiff[] they would get a $60 [sic] million credit towards the price for Rothko's *No. 6* and did receive the credit.  Plaintiff[] do[es] not explain why they should receive the proceeds from the auction instead.").

**Arnold & Porter**

The Honorable Jesse M. Furman
December 15, 2023
Page 3

*Tête* auction claim are the auction proceeds of $63 million. ECF No. 548, at 61. Moreover, and consistent with that position, Plaintiff sought in a motion *in limine* to exclude evidence proffered by Defendants showing that Plaintiff had asserted an ownership interest in the Rothko, *see* ECF No. 561, at 27–28 (Defendants' explanation of the relevance of the evidence to Plaintiff's damages on the *Tête*), asserting—once again—that "[f]or the Modigliani *Tête* auction, the compensatory damages will be the proceeds of the auction that Bouvier kept," ECF No. 550, at 25, 27. Even after Defendants further explained the relevance of the proffered evidence, Plaintiff continued to assert in its reply brief—under the heading "**Rothko's *No. 6* Is Not at Issue Here**"—that "**Rothko's *No. 6* is irrelevant to calculating damages for the *Tête* auction claim,**" because "Bouvier's fraud was to use false pretenses to persuade Accent to deliver the *Tête* to him as part payment of another painting." ECF No. 566, at 10 (emphases added).

Never before had Plaintiff asserted a claim with respect to the Rothko, or suggested that its decision to purchase the Rothko had anything to do with Defendants, or indicated that it was seeking the €25 million in cash it paid Bouvier for the Rothko along with the *Tête*. Plaintiff's current turnabout smacks of gamesmanship: Before Plaintiff obtained free-and-clear title to the Rothko, Plaintiff insisted that the Rothko had nothing at all to do with its claim regarding the *Tête* auction and it sought exclusion of any evidence showing that it had a claim over the Rothko. Plaintiff's clear intention was to recover *both* the auction proceeds (of $63 million) from the U.S. litigation and also the Rothko at whatever point in time its claim to the Rothko was determined by a foreign court or otherwise. But now, belatedly conceding ownership of the Rothko going back to September 2014, *see* Dec. 15, 2023 Joint Pretrial Order, ECF No. 588, at 33–34, Plaintiff is attempting to argue that its fraud claim regarding the *Tête* auction is *all about* the Rothko and has nothing to do with the auction proceeds. Not coincidentally, Plaintiff's ownership of the Rothko will wipe out Plaintiff's damages under its old theory, since the Rothko's value in 2014 was greater than the $63M in proceeds Bouvier received from the *Tête* auction.

Having gambled for a bigger award (the $63 million auction proceeds) and "[h]aving lost that gamble" because Plaintiff obtained title to the Rothko, which vitiates Plaintiff's damages under its old theory, "Plaintiff is not entitled at this late stage to a re-do and an opportunity to come up with a new theory when the parties are in their last stages of preparing for the long-awaited trial." *King v. Wang*, No. 14-CV-7694 (LJL), 2021 WL 5299917, at *2 (S.D.N.Y. Nov. 15, 2021).

Where a plaintiff fails to disclose its damages theory as required under Rule 26, "[p]reclusion [of that damages theory] is 'automatic' unless the non-disclosure was substantially justified or harmless, or unless the district court in its discretion chooses an

The Honorable Jesse M. Furman
December 15, 2023
Page 4

alternative sanction as provided in Rule 37(c)(1)." *24/7 Recs., Inc. v. Sony Music Ent., Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008). "In considering whether to exclude evidence under this standard, courts refer to a nonexclusive list of four factors: (1) the party's explanation for its failure to disclose, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party, and (4) the possibility of a continuance." *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013).

These factors weigh heavily in favor of preclusion here. *First*, as explained above, Plaintiff is where it is because it made the tactical choice from the beginning of the case and through the last five years to pursue a damages theory that it thought might result in a higher award, namely $63 million. Having only now realized the weakness of that claim (because Plaintiff has always claimed ownership of the Rothko, while consistently denying that the Rothko has any relevance to its claim in this case), Plaintiff is now trying to pivot to a theory that could yield *some* amount of damages, eschewing exhibits it previously designated that would undermine and ultimately vitiate its alleged loss. Plaintiff's gamesmanship is made further evident by the fact that Plaintiff has never asserted a claim that Defendants aided and abetted a fraud with respect to Plaintiff's purchase of the Rothko and it has never claimed that it bought the Rothko and paid €25 million in cash as a result of anything Defendants did. Plaintiff cannot change its damages theory in a scramble to salvage its claim relating to the *Tête* auction. *See Pike Co., Inc. v. Universal Concrete Prod., Inc.*, No. 6:17-CV-06365 EAW, 2022 WL 2301780, at *2 (W.D.N.Y. June 27, 2022) (finding first factor to weigh heavily in favor of preclusion where, "when it became obvious to [plaintiff] that some of the damages it was seeking were not legally viable, it scrambled to attempt to maintain the value of its alleged financial losses by substituting an entirely new category of damages"); *King*, 2021 WL 5299917, at *2 (finding that plaintiff's "failure to make any such disclosure earlier smacks of gamesmanship").

*Second*, that Plaintiff can no longer recover under its previous damages theory, because its decision to trade in the *Tête* did not cause it any harm, does not entitle Plaintiff to pursue a new damages theory. *See Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 CIV. 3698 LAP, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (finding the other three factors outweigh the importance of damages evidence "even though ATA may be denied any recovery as a result").

*Third*, Defendants would be prejudiced by the extremely late disclosure of Plaintiff's new damages theory. Had Defendants known that Plaintiff was asserting a claim regarding the Rothko or seeking the recovery of the €25 million it paid Bouvier, Defendants would have explored Plaintiff's decision to purchase the Rothko at €140 million in discovery. For instance, one of the topics Defendants designated at Plaintiff's

**Arnold & Porter**

The Honorable Jesse M. Furman
December 15, 2023
Page 5

30(b)(6) deposition was Plaintiff's "decision to acquire" the works over which Plaintiff was asserting a claim against Defendants, "including the persons involved in making such decisions, the reasons [Plaintiff] decided to acquire [the work], any documents or oral representations relied upon by [Plaintiff] in making such decision." Defendants would have included the Rothko as one of the works covered in this topic if Plaintiff had asserted any claim regarding the Rothko. Defendants also would have explored at depositions the events surrounding Plaintiff's payments to Bouvier totaling €25 million. Further, Defendants could have sought expert opinion on the value of the Rothko. While Plaintiff is now trying to claim that it was worth only $80 million, Plaintiff's own art advisor, Sanford Heller, contemporaneously valued the Rothko at more than $100 million, *see* DX-257, 258. Plaintiff's failure to disclose its new damages theory foreclosed Defendants' ability to obtain relevant discovery. *See Agence France Presse*, 293 F.R.D. at 685 (finding defendants were prejudiced because they may "have chosen not to engage in fact discovery" with respect to certain issues because of plaintiff's undisclosed damages theory); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 160 (S.D.N.Y. 2012) ("Defendants undoubtedly would have pressed for additional documents and asked additional deposition questions of fact witnesses, had this disclosure been made prior to the depositions.").

Nor does it help Plaintiff that some of the underlying facts were known to Defendants prior to Plaintiff's announcement of its new damages theory. "[A] party's own production of documents supporting its theory of damages cannot excuse that party from its separate obligation to disclose a damages computation—an obligation that extends to supplementing and amending that computation if it changes materially." *Agence France Presse*, 293 F.R.D. at 684–85; *King*, 2021 WL 5299917, at *3 ("[W]hether or not the allegations were part of the case and the evidence that the Plaintiff would use to support its theory has been disclosed, the damages theory was not disclosed. . . . Defendants were entitled to rely on the theory and the categories of damages disclosed by Plaintiff in the Rule 26(a)(1) statement to make strategic decisions and to decide not to pursue discovery on the subsequent auction results."). And mere references to the Rothko during discovery are no substitute for giving Defendants the opportunity to explore what has now become Plaintiff's proposed claim based on the Rothko. *Ritchie*, 280 F.R.D. at 160 (finding that, "even assuming that [d]efendants did conduct fact discovery regarding certain aspects of [the new damages theory]," they did not conduct discovery that "directly relate to" the new theory). Nor can Plaintiff argue that the additional €25 million claim is immaterial to Defendants' discovery interest. *See id.* at 158 (finding that "the $12–plus million that Plaintiffs now claim" may be "a drop in the bucket" compared to the total claim in the hundreds of millions, but it is "still inherently a large sum" and "Plaintiffs should have made it clear to Defendants that such damages were being sought").

The Honorable Jesse M. Furman
December 15, 2023
Page 6

*Finally*, there is no possibility of a continuance as trial is scheduled to begin in three weeks. Where, as here, the three factors outlined above weigh heavily in favor of preclusion, courts have consistently precluded the new damages theory disclosed shortly before trial. *See King*, 2021 WL 5299917, at *4 ("The Court finds that having to defend against the disgorgement damages theory—which Plaintiff first disclosed as a damages theory it sought to pursue at trial less than *three weeks* before trial is set to begin . . . — would risk significant prejudice to Defendants. The only possible relief is preclusion.") (emphasis added); *Agence France Presse*, 293 F.R.D. at 684 (excluding plaintiff's damages demand for 527 statutory violations, disclosed for the first time in the joint pretrial order *four months* before trial, where it had before only demanded damages for 16 statutory violations based on the same copyright); *Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93 CIV. 4001 (NRB), 2002 WL 31856951, at *3 (S.D.N.Y. Dec. 19, 2002) (excluding new damage theory raised "shortly before a scheduled trial"); *Spotnana, Inc.*, No. 09 CIV. 3698 LAP, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (excluding plaintiff's damages calculation disclosed *four months* after close of discovery); *Roberts v. Ground Handling, Inc.*, No. 04 CIV. 4955 (WCC), 2007 WL 2753862, at *4 (S.D.N.Y. Sept. 20, 2007) (excluding damages theory that plaintiff failed to disclose at summary judgment and only disclosed when defendants sought to limit the damages); *Pike*, 2022 WL 2301780, at *2–3 (excluding new damages theory disclosed *three months* before trial, where the other three factors outweighed the importance of the evidence).

Plaintiff made a tactical choice to pursue the damages theory it has been pursuing for five years, right up through summary judgment, submission of the Joint Pretrial Order, submission of *in limine* motions, and practically up to the eve of trial. It should have to live with that choice, even if it recovers nothing under its current damages theory at trial. Nothing prevented Plaintiff from pursuing a different theory of damages at the appropriate prior stage of discovery in this case. It should have to live with its choice.[3]

### III.   The Terms of the Settlement

In the event the jury awards any damages against Defendants, the jury award should be adjusted by the Court based on the settlement value Plaintiff received from Bouvier. "[W]hen a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages." *Singer v. Olympia Brewing Co.*, 878 F.2d 596,

---

[3] If the Court allows Plaintiff to substitute its new theory, which it should not do, Defendants respectfully seek permission to move for summary judgment on the new claim on the grounds that there is no evidence supporting the elements of either actual knowledge or substantial assistance with respect to the new claim.

**Arnold & Porter**

The Honorable Jesse M. Furman
December 15, 2023
Page 7

600 (2d Cir. 1989); *accord Twenty First Century L.P. I v. LaBianca*, No. 92-CV-2913 (ILG), 2001 WL 761163, at *6 (E.D.N.Y. May 2, 2001); *see also In re Platinum Beechwood Litig.*, No. 18-CV-06658 (JSR), 2023 WL 6210626, at *1 (S.D.N.Y. Sept. 25, 2023) ("Under New York General Obligations Law Section 15-108, a jury award rendered against a defendant must be adjusted where a 'release or a covenant not to sue . . . is given to' another person or entity who is 'liable or claimed to be liable in tort for the same injury.'"). To the extent the claims that Plaintiff settled with Bouvier do not overlap with the claims Plaintiff is allowed to pursue against Defendants, the Court could "make an independent determination of what the proper apportionment of settlement proceeds should be, based on the monetary value of each cause of action." *In re Platinum Beechwood Litig.*, 2023 WL 6210626, at *3.

   Defendants recognize that any offset in damages would be briefed by the parties and calculated by the Court after an award of damages, if any, at trial. We raise the issue now so that the Court is aware of it. Although we do not know any details of the settlement, which have not been made public, we expect that some of the monetary terms are substantial, including with respect to the highly valuable Rothko *No. 6* obtained by Plaintiff in the settlement. Should the time come, Defendants expect to argue that the painting should be appraised (if it is still in Plaintiff's possession at that time) or, if Plaintiff has sold it, that Defendants and the Court should learn the price at which the painting was sold in order to determine the proper amount for offset of any jury award.

   We thank the Court for its consideration of this letter.

              Respectfully,

              */s/ Sara L. Shudofsky*
              Sara L. Shudofsky


cc: All Counsel of Record