# Arnold & Porter

Sara L. Shudofsky
+1 212.836.7922 Direct
Sara.Shudofsky@arnoldporter.com

December 21, 2023

**VIA ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007

   Re: *Accent Delight International Ltd. v. Sotheby's et al.*, 18 Civ. 9011

Dear Judge Furman:

  We write respectfully to request an order precluding Plaintiff from offering for their truth any out-of-court statements that Yves Bouvier made to Dmitry Rybolovlev in French which were then allegedly translated for him into Russian by out-of-court declarants, as well as any statements that Rybolovlev was told were delivered to Bouvier in French.  As detailed below, Rybolovlev speaks only Russian, and by his own admission did not understand any statement Bouvier made to him at any point during their relationship.  Yet Plaintiff would have Rybolovlev testify regarding Bouvier's out-of-court statements as if he heard and understood them himself, when in fact he would simply be repeating the out-of-court statements of his alleged translators.  Such statements are plainly offered for their truth (*i.e*., to prove that Bouvier made the statements), are hearsay, and should be excluded.  If Plaintiff identifies a relevant non-hearsay purpose for Rybolovlev's testimony, the testimony should only be admitted subject to a limiting instruction that the jury cannot consider the statements for their truth.

**I.** **Plaintiff's Proffered Testimony from Rybolovlev**

  At the core of Plaintiff's claims in this case is its allegation that Rybolovlev and Bouvier reached an oral agreement in 2002 or 2003 in which Bouvier agreed to be Plaintiff's agent in acquiring artworks for a 2% commission.  *See* ECF No. 285, ¶¶ 2, 13–14.  Bouvier disputes that allegation and testified that he never agreed to be Plaintiff's agent.  *See* Bouvier Tr. 81:5-8, 250:13–19, 325:7–10.  Plaintiff will seek to prove the alleged agreement (and other statements by Bouvier) in large part through Rybolovlev's testimony regarding statements that Bouvier allegedly made to him beginning in 2002 or 2003.  ECF No. 418, ¶ 2 ("In this declaration, I explain how I met Bouvier [and] how we agreed he would act as an art agent for entities associated with me (*i.e.*, Plaintiffs)[.]").

  Statements that Bouvier allegedly made at that early-in-time meeting include:  (1) that Bouvier "was uniquely positioned" to "help [Rybolovlev] buy artworks using his unique knowledge [of others' art dealings] and by making direct connections to the sellers[], without going through middlemen who just charged additional fees," *id*. ¶ 15;

**Arnold & Porter**

The Honorable Jesse M. Furman
December 21, 2023
Page 2

(2) that Bouvier "would take a commission of 2% of the sales price of each artwork he negotiated on [Rybolovlev's] behalf," *id*. ¶ 16; and (3) that Bouvier "was proposing to act as an intermediary at the art market, to negotiate on [Rybolovlev's] behalf with the sellers to secure the lowest possible price," *id*. ¶ 17. Plaintiff also wants Rybolovlev to testify that Bouvier "did not describe himself as an art dealer" and "never said, in that first meeting or in any of the other many discussions [they] had over the course of more than a decade, that he would be the actual seller of the artworks." *Id.* ¶ 17. The testimony Plaintiff apparently plans to elicit is also replete with other statements Rybolovlev allegedly heard Bouvier make over the years. *See id*. ¶ 30 ("In all these interactions with Bouvier, from when I first met him in about 2002 until the end of 2014, he was always explicit and clear that he was acting as Plaintiffs' 'agent,' in their best interests. He never told me he was taking a markup on the prices."); *see also id.* ¶¶ 6, 14, 21, 24–29, 33, 35–37. As is clear from Plaintiff's summary judgment papers, Plaintiff will proffer the above alleged statements to show that Bouvier agreed to be Plaintiff's agent, instructed Rybolovlev on how to go about acquiring art, and agreed to be compensated with a 2% commission. *See, e.g.*, ECF No. 415, ¶¶ 11, 15, 17.

Rybolovlev, however, cannot testify that Bouvier made *any* of those statements—because he has no first-hand knowledge of what Bouvier actually said. At his critical initial meeting with Bouvier, Rybolovlev had to rely entirely on a third-party to translate Bouvier's alleged statements. According to Rybolovlev, Rappo, a Bulgarian family friend, told Rybolovlev what Bouvier had (allegedly) said. ECF No. 418, ¶ 12 ("Bouvier spoke in French, and Rappo acted as the translator between him and me because I do not speak French."); Rybolovlev Tr. 18:23–19:5 ("I would also like to point out that I did not speak French, and it was difficult for me to form an independent impression of Mr. Bouvier. It was Tania who interpreted during the meeting, and this image of Mr. Bouvier was formed based on his demeanor and Tania Rappo's interpretation."). While Plaintiff wants Rybolovlev to testify that Bouvier was "always explicit and clear" about their relationship, *see* ECF No. 418, ¶ 30, Rybolovlev in fact can say no more than what Rappo told him Bouvier said based on Rappo's out-of-court translations. *See United States v. Ghailani*, 761 F. Supp. 2d 114, 121 (S.D.N.Y. 2011) ("[T]he FBI agents were competent to testify only to what they were told in English by the interpreters and not to what the witnesses said to the interpreters in Swahili."); *see also United States v. Da Silva*, 725 F.2d 828, 832 (2d Cir. 1983) ("The specter of hearsay arises because Tripicchio could testify only to what [the translator] said [the original declarant] had said."). Such testimony from Rybolovlev—which by his own admission simply repeats what Rappo said Bouvier said—is inadmissible hearsay. *See* Fed. R. Evid. 802.

**Arnold & Porter**

The Honorable Jesse M. Furman
December 21, 2023
Page 3

### II. Out-of-Court, Alleged Translations of Bouvier's Statements Do Not Fall Into Any Exception to the Rule Against Hearsay

Although courts in the Second Circuit have on occasion admitted out-of-court translations under the "language conduit" theory that an interpreter who faithfully translates a conversation is merely a conduit and therefore "his translation does not create an additional level of hearsay," *see United States v. Lopez*, 937 F.2d 716, 724 (2d Cir. 1991) (cleaned up), that exception cannot apply to Rappo's informal translations. *Ghailani*, 761 F. Supp. 2d at 120 (excluding out-of-court translations where court "was not satisfied that they were purely mechanistic converters of Swahili into English and *vice versa*"). Cases applying the "language conduit" exception have "rested on one or more of the following []: (1) the interpreter had no motive to mislead and there was no reason to question the accuracy of the translation, (2) the interpreter was [a party's] agent or co-conspirator, (3) the defendant was bilingual, was present when the out-of-court statement was made, and failed to object to the translation at the time, and (4) the defendant's statement was not offered for its truth." *Id.* at 119–20. None apply here.

First, there is no basis to determine that Rappo's purported interpretation was accurate and that she had no motive to deceive Rybolovlev or take liberties with Bouvier's statements. Rybolovlev claims that Rappo "received, over time and without my knowledge, approximately $100 million from Bouvier for promoting him to Plaintiffs and me," suggesting that she had her own pecuniary reasons to present Bouvier's statements as a "proposal" that would entice Rybolovlev. ECF No. 418, ¶¶ 10, 18 (stating that "Rappo again and again urged me to meet with Bouvier to hear his proposal" and "praised [it] as a unique opportunity"). Indeed, Rybolovlev, who testified that he did not understand what Bouvier said, conceded that Rappo "possibly added some details, but they were all to support her idea that Yves is a serious person and is – he's trustworthy and it was worth a try[.]" Rybolovlev Tr. 18:6–9. Rappo's own interests and her apparent editorializing alone are sufficient to bar admission of her statements for their truth (*i.e.*, to prove that Bouvier said what Rybolovlev says Rappo told him Bouvier said). *See Ghailani*, 761 F. Supp. 2d at 120 (rejecting translations where "[i]t is equally or perhaps more plausible that [foreign law enforcement officers] at least in part conducted their own interrogations and informed the FBI as to what they perceived to have been the substance and import of the witnesses' statements"); *see also United States v. Sanchez–Godinez*, 444 F.3d 957, 960–61 (8th Cir. 2006) ("Because [the interpreter] was not merely acting as a 'language conduit,' but rather initiated at least some of the questions posed in the interview, his out-of-court statements raise hearsay concerns.").

Further, there is no basis to determine that Rappo (a native Bulgarian) was qualified to interpret accurately, as an official interpreter would be. Any claim from

**Arnold & Porter**

The Honorable Jesse M. Furman
December 21, 2023
Page 4

Plaintiff regarding Rappo's purported qualifications would be self-serving; it cannot simply be assumed that Rappo accurately translated, let alone that she did so word-for-word. *See United States v. Diaz*, 986 F.3d 202, 210 n.3 (2d Cir. 2021) (rejecting argument "analogizing" unofficial translator to interpreter even under relaxed evidentiary rules on ground that, "[b]ecause [the translator] did not testify, there is no evidence supporting the assertion that she was only relaying Melo's statements, let alone word-for-word"); *United States v. Martinez-Gaytan*, 213 F.3d 890, 892–93 (5th Cir. 2000) (excluding translator's statements "absent in-court testimony by [the translator] that will help the court assess his reliability as a translator and give Appellant an opportunity to attack the quality of the translation"). Nor is there any witness who could verify the accuracy of her alleged translations, and the person who made the statements in French, Bouvier, disputes the substance of the translations.[1] *See Martinez–Gaytan,* 213 F.3d at 892 (finding accuracy of translation less reliable where declarant "asserted in court that what [the interviewing agent] claimed to have heard [from the translator] differed in some respects from what Appellant actually said"); *United States v. Koskerides*, 877 F.2d 1129, 1135 (2d Cir. 1989) (finding "harmless error" where professional interpreter's statements were admitted for their truth since witness who was present for conversation "testified at trial and was fully subject to cross-examination"); *Da Silva*, 725 F.2d at 832 ("Since . . . the substance of Stewart's translation, which was independently confirmed, was apparently accurate, Da Silva's hearsay objection was properly overruled.").

*Ghailani*'s other potential exceptions plainly do not apply. Bouvier is not a party, so Plaintiff cannot claim that Rappo's statements were made as a party's "agent or co-conspirator." Indeed, the "language conduit" exception in the vast majority of cases has been applied where the original (untranslated) statement was made by a criminal defendant and the interpreter acted as the defendant's (*i.e.*, a party's) authorized agent, and there is reason to doubt whether the exception applies to non-party declarants at all. *See Da Silva*, 725 F.2d at 832 (admitting translation under Rule 801(d) as opposing party's statement); *Ghailani*, 761 F. Supp. 2d at 119–20 (cases admitting translations involved statements "usually by defendants"); *see also* 30B Charles Alan Wright, *et al.*, Federal Practice and Procedure § 7044 (2023 ed.) (reasoning that "language conduit" exception would create an impermissible "court-created hearsay exception" if applied outside Rule 801(d) and is "probably illegitimate and should be discarded"). Even

---

[1] Plaintiff withdrew Elena Rybolovleva, the only other adult present at the initial meeting, from its list of witnesses after Defendants sought permission to move to exclude her, arguing that Plaintiff's failure to disclose her as a witness deprived them of the opportunity to take any discovery from her and seeking her deposition and document discovery if she were not excluded. *See* ECF Nos. 529, 532. Rybolovlev has suggested that his "daughter Ekaterina, who was approximately 12 or 13 at the time, may also have been present," *see* ECF No. 418, ¶ 12, but any testimony from her about the accuracy of a translation made twenty years earlier when she was a pre-teen could not verify that Rappo's alleged translation was accurate.

**Arnold & Porter**

The Honorable Jesse M. Furman
December 21, 2023
Page 5

assuming the exception could apply to a non-party declarant, there is no evidence that Rappo was in fact Bouvier's co-conspirator or agent, only Plaintiff's unproven allegations (which should not be allowed into evidence at this trial).

Further, Plaintiff cannot claim that either Rybolovlev or Bouvier had the ability to correct any unfaithful translations Rappo made. *See Lopez*, 937 F.2d at 724 ("Both defendants spoke English and were present when Betancourt translated their conversation to Boisvert, and it stands to reason that if she had distorted their conversation, they would have noticed it and corrected her."); *Ghailani*, 761 F. Supp. 2d at 121 ("Neither the witness-declarants nor the FBI agents, however, were in a position to correct a mistranslation at the time of the interview because neither knew the others' language."). And finally, Plaintiff plainly seeks to admit Rappo's purported translations for their truth, *i.e.*, to prove that Bouvier actually said what Rybolovlev says Rappo reported to him. None of these hearsay statements should come in for their truth.

### III.   Other Translations Are Similarly Inadmissible Hearsay

The above analysis applies equally to any other out-of-court translation Plaintiff seeks to offer regarding any alleged statement made by Bouvier to Rybolovlev, and also to any statement Rybolovlev allegedly made to Bouvier which he was told by an out-of-court declarant was delivered in French (or English) to Bouvier. On the latter point, for example, Rybolovlev's testimony that Rappo told him she conveyed a statement to Bouvier in French is hearsay, and should not be admitted to prove what Rappo actually said to Bouvier. Rybolovlev can testify as to what he told Rappo in Russian, but Rappo's statement that she conveyed something in French to Bouvier cannot be admitted to prove the truth of what she actually said to Bouvier. Further, although Rybolovlev has never said he relied on his ex-wife's translations, *see* ECF No. 418, ¶ 12; Rybolovlev Tr. 18:23–19:5, any purported translations by her would suffer from the same deficiencies as Rappo's, since Rybolovleva is not a professional translator and is not in court and subject to cross-examination regarding her motives or accuracy.

\*   \*   \*   \*

For all these reasons, the Court should not allow Rybolovlev's testimony regarding translations provided by out-of-court declarants like Rappo into evidence to prove that Bouvier actually made or heard any such statements. The Court should issue a limiting instruction that any testimony by Rybolovlev about an alleged conversation with Bouvier that purportedly was translated into Russian for Rybolovlev's benefit cannot be considered for its truth, *i.e.*, to prove that the statements were actually made.

Arnold & Porter

The Honorable Jesse M. Furman
December 21, 2023
Page 6

We thank the Court for its consideration of this letter.

                Respectfully,

                */s/ Sara L. Shudofsky*
                Sara L. Shudofsky

cc:  All Counsel of Record