# Arnold & Porter

Sara L. Shudofsky
+1 212.836.7922 Direct
Sara.Shudofsky@arnoldporter.com

December 22, 2023

**VIA ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007

Re: *Accent Delight International Ltd. v. Sotheby's et al.*, 18-cv-9011

Dear Judge Furman:

We write respectfully on behalf of Defendants Sotheby's and Sotheby's, Inc. to request preclusion at trial of any reference to (1) allegations of criminal conduct by Jean-Marc Peretti; (2) certain allegations against Tania Rappo; and (3) alleged efforts by Bouvier to sell Plaintiff's artworks in 2014.

### 1. Unsubstantiated Allegations Against Jean-Marc Peretti

Plaintiff should be precluded at trial from attempting to smear Jean-Marc Peretti by questioning Defendants' witnesses regarding unsubstantiated rumors of criminal activity or introducing hearsay news media articles or book excerpts to support those smears. Plaintiff has repeatedly suggested that Bouvier's and Defendants' business associations with Peretti were suspect based on unsubstantiated allegations of criminal activity. *See, e.g.*, ECF No. 474, at 4 ("Bouvier often used Jean-Marc Peretti when dealing with Sotheby's. [] Peretti, who owned a small art gallery in Geneva, had been investigated by the authorities for ties to organized crime and illegal gambling."); ECF No. 285, ¶ 30 ("Peretti has been the subject of criminal investigations in France, including a 2009 investigation for running an illegal gambling ring, according to *The New Yorker* magazine.").

Plaintiff has no admissible evidence to support these allegations. It included as a trial exhibit an article from 2009 in *Le Journal du Dimanche*, which states that "[f]ive people – including the Peretti brothers, attached to the management of the circle, Samy Souied and Sebastien Szwarc – are put in examination [by a French agency], in particular for money laundering and illegal exercise of the profession of banker in an organized gang. . . All are released without judicial control." PX-320 (ellipses in original). There is no evidence that Jean-Marc Peretti is one of "the Peretti brothers" referenced in the

**Arnold & Porter**

The Honorable Jesse M. Furman
December 22, 2023
Page 2

article or confirming the existence, nature, or outcome of any alleged investigation. The article is rank hearsay and inadmissible to prove that any investigation of Jean-Marc Peretti took place. *See United States v. Donziger*, No. 19-CR-561 (LAP), 2021 WL 3141893, at *58 (S.D.N.Y. July 26, 2021) (ruling that news articles are "obviously hearsay statements that cannot be considered for their truth"); *Holmes v. Gaynor*, 313 F. Supp. 2d 345, 358 n.1 (S.D.N.Y. 2004) ("The newspaper article, however, is hearsay and inadmissible for proving the truth of the matters asserted therein."). Similarly, Plaintiff confronted various of Defendants' witnesses at deposition with a passage from a 2019 book referring to Peretti as a "shady Corsican" alleged to have been involved in criminal activity. *See*, *e.g.*, Levine Tr. 147:17–23 ("Q. Are you aware that in that book on page 242, Mr. Lewis described Mr. Peretti as a shady Corsican who had been the subject of a series of criminal investigations in France since 2004, involv[ing] alleged money laundering and illegal gambling?"). This book is rank hearsay as well, and 2019 is also long after the time period relevant to this case. In short, there is no admissible evidence of any investigation, criminal or otherwise, of Jean-Marc Peretti.

Plaintiff presumably wants to argue that Defendants' awareness of even unsubstantiated allegations of criminal activity on Peretti's part is relevant to Defendants' decision to do business with him, citing to the "red flag" referenced in Sotheby's Worldwide Anti-Money Laundering, Combating Terrorist Financing Policy and Anti-Tax Evasion Facilitation Policy. *See* PX-221, at 13 ("You believe or suspect that a client is under current investigation for or has been convicted of any felony or serious criminal offence[.]"). But an unsubstantiated rumor of a criminal investigation is not grounds to "believe or suspect" that an investigation is taking place, and there is no evidence that any of Defendants' witnesses had even heard such allegations at any time relevant to this case. *See* Vinciguerra Tr. 182:2–183:2 (testifying that he had read something "sort of peripherally consistent" with Plaintiff's allegations in *Le Point*, in an apparent reference to an article published in March 2015 after Plaintiff's allegations against Bouvier became public);[1] Levine Tr. 147:4–149:9 (testifying that she had read a 2016 New Yorker article that referred to an investigation into Peretti but was not aware of any investigation during the relevant time period); Valette Tr. 106:18–111:7 (testifying that he had heard of an investigation at some point, but could not recall when he heard it: "Again, I did not know that Peretti was under criminal investigation[,] but that's what you said."). Plaintiff cannot prove that Defendants ignored a "red flag" by showing that various of

---

[1] Ian Hamel, *Les trafics d'oeuvres d'art font éternuer les paradis fiscaux*, Le Point, Mar. 16, 2015, https://www.lepoint.fr/societe/les-trafics-d-oeuvres-d-art-font-eternuer-les-paradis-fiscaux-16-03-2015-1912996_23.php.

The Honorable Jesse M. Furman
December 22, 2023
Page 3

Defendants' witnesses read or heard unsubstantiated hearsay statements at unidentified or irrelevant points in time.

Examination of Defendants' witnesses on this subject would suggest to the jury without any basis that Peretti is a criminal and that Defendants' business affiliation with him was suspect, which would be highly inflammatory and prejudicial to Defendants. *See Iverson v. Surber*, 800 F. App'x 50, 52 (2d Cir. 2020) (excluding under Rule 403 allegations of prior use of excessive force on ground that "that the probative value of the uncorroborated complaints was low in relation to the prejudice those accusations would create"); *Dicks v. United States*, No. CR 03-266, 2010 WL 11484356, at *6 (E.D. Pa. Sept. 8, 2010) (precluding cross-examination of witnesses based on "unproven allegations in an unrelated internal investigation and three civil lawsuits" as "entirely remote and speculative" where proponent "failed to establish a fact critical [to] his theory, namely that [the witness] had any knowledge of the [] investigation"). The Court should preclude any reference to allegations of criminal activity by Peretti or to any investigation of Peretti, criminal or otherwise.

2. **Unsubstantiated Allegations Against Tania Rappo**

Plaintiff has alleged that Rappo was Bouvier's co-conspirator and received "about $100 million in kickbacks for her role in [Bouvier's] scheme." ECF No. 285, ¶ 19; *see also* ECF No. 414, at 3 ("Rybolovlev later came to learn that Bouvier paid Rappo kickbacks totaling $100 million for her help in conning Rybolovlev into trusting Bouvier."). No admissible evidence supports those allegations. First, none of Plaintiff's witnesses can testify regarding Rappo's supposed "kickbacks" and "help in conning Rybolovlev," because they lack personal knowledge and could only testify based on the inadmissible hearsay statements of others. *See* ECF No. 418, ¶ 18 (Rybolovlev Decl.) ("Years later, after Bouvier's fraud and fiduciary breach came to light, I learned that Rappo had received, over time and without my knowledge, approximately $100 million from Bouvier for promoting him to Plaintiffs and me."); ECF No. 416, ¶ 101 (Sazonov Decl.) ("I have also learned that Bouvier paid approximately $100 million to Rappo[.]"). Second, Plaintiff has proffered Bouvier's testimony that he paid Rappo a "finder's fee" in connection with each transaction, for bringing in Rybolovlev's business, totaling $100 million over the years. Bouvier Tr. 27:13–16 ("I told Mrs. Rappo that if she could bring me Mr. Rybolovlev as a client, she would receive a finder's fee for the business, something that I kept throughout the 37 artworks my company sold."); *id.* 70:8–17. Evidence that Rappo was paid a "finder's fee" is, at most, evidence that she had her own financial incentive in promoting Bouvier to Rybolovlev. It is not evidence that she had any knowledge of, or participated in, Bouvier's alleged fraud or breach of fiduciary duty. Plaintiff has never alleged that Rappo was involved in any of Plaintiff's transactions with

**Arnold & Porter**

The Honorable Jesse M. Furman
December 22, 2023
Page 4

Bouvier, aside from the advice she purportedly gave Rybolovlev at the beginning of the relationship. And there is no evidence to suggest that Rappo was aware that Bouvier planned to engage in misconduct when she allegedly gave Rybolovlev that advice, and no evidence that she was aware of any of the misrepresentations that Bouvier later made.

Defendants are not seeking to preclude Bouvier's testimony regarding his "finder's fee" payments to Rappo. But Plaintiff should be precluded from referring to Rappo as Bouvier's co-conspirator or suggesting that she had knowledge of his alleged misconduct. Plaintiff should also be precluded from describing the payments she received from Bouvier as "kickbacks." There is no admissible evidence to support introduction of any of these allegations at trial.

### 3. Bouvier's Alleged Statements About His Resale Efforts

Plaintiff should be precluded from eliciting from its witnesses any statement allegedly made by Bouvier in 2014 that he was unable to resell Plaintiff's works at or above the prices Plaintiff paid to acquire them. *See* ECF No. 416, ¶ 87 ("In 2014, Mr. Rybolovlev and I asked Bouvier to sell some of the artworks. [] Over the course of approximately the next six months, Bouvier was unable to sell the works at or above the prices Plaintiffs paid for them."); ECF No. 418, ¶ 33 ("In 2014, Plaintiffs were trying to sell some of the artworks. I was surprised when Bouvier was unable to sell any of the works for what Plaintiffs had paid or more."). These and similar statements regarding Bouvier's alleged inability to resell the artworks are inadmissible hearsay when offered to prove (as Plaintiff's witnesses allege) that Bouvier was in fact unable to resell the works.

Further, this evidence cannot be used to support Plaintiff's argument that the actual value of the art when it was purchased by Plaintiff was less than the price it paid. As the Court ruled at the parties' November 28 pretrial conference, any testimony or documents regarding an artwork's resale price must be premised on an appropriate expert foundation linking the resale price to the time period of Plaintiff's purchase. *See* ECF No. 581, at 28:6–12. The same principle should apply to Bouvier's alleged inability to sell an artwork at a particular price in 2014. The works at issue were bought by Plaintiff in December 2011 (*Domaine d'Arnheim*), September 2012 (*Wasserschlangen II*), January 2013 (*Tête*), and May 2013 (*Salvator Mundi*). Plaintiff should not be permitted to suggest to the jury, in the absence of appropriate linking evidence (which Plaintiff has never proffered and cannot now proffer) that Bouvier's alleged statements in 2014 reflect at all on the actual values of the pieces at the time of Plaintiff's purchases.

Plaintiff may claim that Bouvier's alleged statements are relevant to its witnesses' states of mind in coming to suspect Bouvier's fraud (and therefore are admissible for a

The Honorable Jesse M. Furman
December 22, 2023
Page 5

non-hearsay purpose). As a threshold matter, Rybolovlev's own statement belies that argument. *See* ECF No. 418, ¶ 33 (stating that, even when Bouvier was allegedly unable to sell the artworks, Rybolovlev "still did not suspect Bouvier of pocketing a secret markup for himself, I just began to doubt whether he was as good a negotiator as he had always claimed."). Plaintiff continues to claim that it discovered Bouvier's alleged misconduct when Sandy Heller revealed the sale price for Modigliani's *Nu Couché au Coussin Bleu* on New Year's Eve at the end of 2014/beginning of 2015. ECF No. 418, ¶ 39. Plaintiff's witnesses will also presumably proffer evidence that they saw a newspaper article in November 2014 reflecting Bouvier's lower purchase price for the *Salvator Mundi*. *Id.* ¶¶ 34–35.

But the way in which Plaintiff came to learn of Bouvier's alleged misconduct is of minimal, if any, relevance to the issues to be decided at trial. On the other hand, allowing Plaintiff's witnesses to tell the jury that Bouvier was unable to resell the artworks for the prices Plaintiff paid—even if offered for a relevant non-hearsay purpose—would be highly prejudicial to Defendants, precisely because the jury could draw the very inference Plaintiff is looking for: that the artworks were worth less than Plaintiff paid for them. The actual value of Plaintiff's artworks on the dates Plaintiff acquired them will be a hotly contested issue at trial, with potential exposure to Defendants in the hundreds of millions of dollars. *See* ECF No. 550, at Part IX; ECF No. 553, at Part III; ECF Nos. 585, 594; *see also* ECF No. 592, at Part XIII (Plaintiff's Statement of Damages). Even if offered with a limiting instruction, the jury cannot be expected to hear Plaintiff's testimony about Bouvier's alleged statements regarding his inability to resell the artworks and then set aside the inference that the artworks Plaintiff acquired were not worth what Plaintiff paid, particularly given that it is for the jury to determine what each artwork was worth. *See United States v. Reyes*, 18 F.3d 65, 71 (2d Cir. 1994) (excluding hearsay statement offered for non-hearsay purposes when statements were "relevant to the history of the investigation" but not relevant to liability of defendant); *United States v. Midyett*, 256 F.R.D. 332 (E.D.N.Y. 2009) (excluding statement offered for non-hearsay purpose where relevant only to placing defendant's actions "in context" and where "the needed explanation of background" could "be adequately communicated with other less prejudicial evidence"). Out-of-court statements by Bouvier that could speak to the purported value of Plaintiff's artworks pose too great a risk of prejudice to Defendants to outweigh any thinly relevant purpose for which Plaintiff may proffer them.

# Arnold & Porter

The Honorable Jesse M. Furman
December 22, 2023
Page 6

    We thank the Court for its consideration of this letter.

                                                             Respectfully,

                                                 */s/ Sara L. Shudofsky*
                                                 Sara L. Shudofsky

Cc:    All counsel of record (via ECF)