# Arnold & Porter

Sara L. Shudofsky
+1 212.836.7922 Direct
Sara.Shudofsky@arnoldporter.com

January 1, 2024

**VIA ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Centre Street, Room 2202
New York, New York 10007

   Re: *Accent Delight International Ltd. v. Sotheby's et al.*, 18 Civ. 9011

Dear Judge Furman:

   We write respectfully on behalf of Defendants Sotheby's and Sotheby's, Inc. in response to Plaintiff's motion to preclude in part the testimony of Defendants' expert Harry Smith. *See* ECF No. 602. Plaintiff's motion should be denied.

   To begin, Plaintiff's motion violates Rule 4(I) of the Court's Individual Rules and Practices in Civil Cases, which provides that "motions to exclude testimony of experts . . . must be made by the deadline for dispositive motions and should not be treated as motions *in limine*." Plaintiff is also challenging one of the same opinions that Plaintiff sought unsuccessfully to preclude in its *Daubert* motion. *See* ECF No. 399, at 14–21 (challenging as unsupported Smith's opinion that "Sotheby's Valuations 'conform to the professional standards of the industry'"). The Court has already rejected that challenge. *See* ECF No. 510, at 73 ("Based on his analysis, Smith's conclusion that Sotheby's valuations 'conform to the professional standards of the industry,' Smith Rep 20, is also well supported and reliable.").

   Plaintiff's current motion, which misconstrues the Court's *Daubert* rulings as well as Smith's opinions and the proper bounds of expert opinion, should be denied in full. Smith will offer his expert opinions within the proper bounds and will not assume either the jury's or counsel's role. As discussed below, Plaintiff's suggestion that Smith's testimony somehow mirrored Sainty's now-excluded testimony is wrong, and any suggestion that Smith based his analysis on "the [same] factual record" that was the source of Sainty's improper opinions, *see* ECF No. 602, at 2–3, is similarly wrong. Smith appropriately reviewed the valuations and the files containing the market data that Sotheby's UK relied on in reaching the valuations, and based his analysis on those files. *See* ECF No. 397-3, ¶ 56. Smith only reviewed the internal Sotheby's correspondence relied on by Sainty and Wittman to offer his rebuttal to the "opinions" of Plaintiff's experts, who improperly opined on what Defendants' witnesses did and thought when they prepared the valuations and estimates at issue in the case. Aside from his rebuttal of Sainty's and Wittman's improper expert opinions, Smith did not base his analysis on any

**Arnold & Porter**

The Honorable Jesse M. Furman
January 1, 2024
Page 2

internal Sotheby's correspondence at all. *Compare id.* (citing valuations and valuation files), *with* ECF No. 371-3, at 36 (listing "[c]ase-related documents").

***Smith's Opinions on the Insurance Valuations***. Smith's opinions as to whether Sotheby's UK selected appropriate comparable works for the insurance valuations, and whether the insurance valuations conformed to industry standards, do not usurp the role of the jury and will be helpful to the jury in making its determinations. As the court found in *Sec. & Exch. Comm'n v. Yorkville Advisors, LLC*, which Plaintiff itself cited in its first motion to preclude Smith's testimony, *see* ECF No. 399, at 15, an expert may opine on the quality of a valuation by "looking at [documents and other valuations] and saying [] they adequately support the number that has been arrived at or not; if not, [identifying] what has to change in order to reflect what is in those documents." 305 F. Supp. 3d 486, 507 (S.D.N.Y. 2018) (citation omitted). Smith's opinion that Sotheby's UK's insurance valuation for *Salvator Mundi* was appropriate even though it was not made with reference to any specific comparable (because there was none), and that the valuation conforms to industry standards, is consistent with appropriate expert analysis, does not impinge on the fact finder's role, and will be helpful to the jury in analyzing a type of document that is "beyond the ken of the average juror." *See United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991). The same is true of Smith's analysis of the comparables cited for the four insurance valuations prepared by Sotheby's UK in October 2014 and his conclusions that the related valuation files reflected thorough research, opinions that will be introduced only if the Court grants Plaintiff's motion to allow reference to those valuations at trial, which it should not. As Defendants explained in its *Daubert* submission, Smith does not usurp the jury's function and does not opine on whether Sotheby's U.K. provided the valuations in good faith or with the intent to assist in Bouvier's alleged fraud. *See* ECF No. 411, at 19 n.11. Defendants explained:

> Plaintiffs suggest that Smith's opinions amount to a wholesale blessing of the manner in which Sotheby's conducted its insurance valuations, and attack Smith for reaching that conclusion without reviewing Sotheby's internal communications and policies relating to the valuations at issue. But that is not what Smith concluded, and not what he would testify to at trial. While Sainty (and Wittman) reviewed internal Sotheby's materials and offer to opine on Sotheby's conduct and thought processes, that is not the proper role of an expert. In contrast, Smith properly reviewed Sotheby's insurance valuations themselves, the valuation files, and the comparables cited in those files to opine that Sotheby's identified correct comparables, reached defensible values, and produced insurance valuations that conform to industry standards.

**Arnold & Porter**

The Honorable Jesse M. Furman
January 1, 2024
Page 3

*Id.*

Further, as Defendants explained in their own *Daubert* motion to preclude portions of Sainty's opinions, Sainty is free to opine that the insurance valuations fell below market standards, including that they were unreasonable given Bouvier's purchase prices.[1] *See* ECF No. 370-1, at 1 ("Plaintiffs offer Sainty to provide expert testimony on . . . the reasonableness of certain Sotheby's valuations and estimates. These are proper subjects for expert testimony."); ECF No. 585, at 6 n.2. But the argument Plaintiff is making here—that if Smith is allowed to testify based on the files he reviewed that the decision not to include a comparable work for *Salvator Mundi* was correct, then Sainty should be allowed to testify that "from the documents [he] reviewed [] Sotheby's was merely acquiescing to Bouvier's demand for the price," *see* ECF No. 602, at 2—is way off base. The "reviewed" documents are not equivalent, and the opinion from Sainty that Plaintiff wants to offer is exactly the type of opinion about Defendants' state of mind that the Court has excluded. *See* ECF No. 510, at 68. Smith, on the other hand, reviewed the valuations and files for those valuations and opined only on those valuations and files, not on what any witness thought or did. Smith did not know or profess to opine on how Sotheby's UK came to issue the valuations that it did.

**Smith's Opinion on Valette's Estimates**. Defendants did not seek to exclude Sainty's opinions on the reasonableness of Valette's estimates for Magritte's *Empire des Lumières* or Modigliani's *Tête*, which were contained in emails Valette sent to Bouvier. *See* ECF No. 370-1, at 1 ("Plaintiffs offer Sainty to provide expert testimony on certain standards and practices in the art market, as well as the reasonableness of certain Sotheby's valuations and estimates. Those are proper subjects for expert testimony."); *id.* at 4 ("Sainty should be allowed to testify only on what he claims are the proper practices for art valuations generally and on the reasonableness of the Sotheby's valuations and estimates in the case."); *see, e.g.*, ECF No. 371-3, at 23 (Sainty opining that there is no basis to claim that the *Empire* "was worth more than four times what another large version of a painting of the same title sold for"). Defendants did, however, move to preclude Sainty from "reach[ing] factual disputes and mouth[ing] Plaintiff's arguments about what the facts show" in connection with those emails, ECF No. 370-1, at 23, a

---

[1] Plaintiff requests that, in the event Smith is allowed to testify that the insurance valuations conformed to industry standards, Sainty should be allowed to testify "in rebuttal" that those valuations fell below industry standards. Plaintiff, however, did not offer any rebuttal opinion to Smith's opinions; it did not serve a rebuttal expert report. Although Sainty opined on the reasonableness of the insurance valuations for *Salvator Mundi*, Gauguin's *Otahi*, Matisse's *Nu au Châle Vert*, and Modigliani's *Nu Couche au Coussin Bleu*, Sainty has never offered an opinion on Klimt's *Wasserschlangen II*. Accordingly, if Plaintiff is arguing that Sainty should be allowed to rebut Smith's opinion about the Klimt, the Court should exclude this belated and undisclosed opinion.

**Arnold & Porter**

The Honorable Jesse M. Furman
January 1, 2024
Page 4

motion the Court granted. ECF No. 510, at 67 ("Nor may [Sainty] do counsel's job in summation and simply rehash the facts of the case or summarize evidence, as he does, for example, when he … recites the contents of emails between Valette and Bouvier discussing the value of works by Magritte and Modigliani.").

Plaintiff did not challenge Smith's opinions regarding these estimates in its *Daubert* motion, and there is no basis to exclude those opinions now. As discussed in more detail in Defendants' December 30, 2023 Letter, ECF No. 606, Smith will offer his opinions on the reasonableness of estimating the *Empire* at $40-60 million or €40 million in 2011 and the reasonableness of estimating the *Tête* at €70-90 million or €80-100 million in 2012. He will not recite Valette's emails or opine on anyone's state of mind.[2] Because Smith's rebuttal report gave Plaintiff full notice of Smith's opinions on Valette's estimates, and because Plaintiff had a full opportunity to depose Smith about those opinions, Defendants can offer them at trial even if Plaintiff elects not to have Sainty also opine on the estimates. *See In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 255–57 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) ("Plaintiffs' procedural argument—that, because they chose to withdraw their accounting expert on the same topics, there is no role for the Auditors' rebuttal experts— is misguided. If plaintiffs were correct, then the sequence of exchanging expert reports would grant plaintiff a unilateral veto right over the type of proof the Auditors may offer in their own defense.").

***Smith's Opinion on Due Diligence Practices***. Smith will explain the art market norms and requirements for due diligence practices during the relevant time period, including what art market participants needed to know about their clients and whether the "red flags" Sainty proffers were indeed red flags that required additional investigation by art market participants. Contrary to what Plaintiff claims, ECF No. 602, at 2, Smith does not "opine that Sotheby's actions constituted 'due diligence' and were consistent with the art market norms and standards." Plaintiff does not cite to *any* part of Smith's expert reports in seeking to preclude such an opinion, citing only Sainty's excluded opinion. *See id.* at 3 ("Similarly, if Smith testifies that Sotheby's satisfied market expectations and norms on due diligence, Sainty should be permitted to offer his own opinion on that

---

[2] Indeed, when rebutting Sainty's opinion, Smith repeatedly made clear that he (and Sainty) could not reliably comment on anyone's state of mind or knowledge. *See, e.g.*, ECF No. 397-10, ¶ 35 ("[N]either I nor Mr Sainty can opine with credibility on what was known to a particular art market participant[.]"). Smith only referred to the content of Valette's emails to correct Sainty's contention that Valette's estimate was for the *Domaine d'Arnheim*, when it was an estimate for the *Empire*. *See id.* ¶ 61. As Sainty is now precluded from characterizing Valette's emails, Smith will not offer any testimony about the content of Valette's emails other than to give his opinions that Valette's estimates were reasonable given the market data at the time (including the market data included in Valette's emails).

Arnold & Porter

The Honorable Jesse M. Furman
January 1, 2024
Page 5

issue.  [Sainty Rep.] at 1-2, 13-20.").  Smith did not opine on whether Defendants conducted an appropriate level of due diligence on Bouvier and will not offer such an opinion at trial.

        We thank the Court for its consideration of this letter.

                                              Respectfully,

                                              */s/ Sara L. Shudofsky*
                                              Sara L. Shudofsky

cc:  All Counsel of Record